**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC.,<br>d/b/a VYNE DENTAL<br><br>                    Plaintiff,<br><br>         - against –<br><br>HENRY SCHEIN ONE, LLC,<br><br>                    Defendant. | Case No. 1:25-cv-03246-MJM |

**DEFENDANT HENRY SCHEIN ONE, LLC'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Henry Schein One, LLC ("HSOne") moves pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the District of Utah, where HSOne's case against National Electronic Attachment, Inc., d/b/a Vyne Dental ("Vyne") is pending (no. 2:25-cv-00883-AMA-JCB, filed October 3, 2025).  A transfer serves the convenience of the parties and witnesses and upholds the interest of justice.

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..............................................................................................1

II.   FACTUAL BACKGROUND.............................................................................2

    A.    HSOne is an Innovative Dental Software Provider that Leads The Industry in Openness, Data Access, and Security.....................................................2

    B.    Despite HSOne's Efforts to Provide Data Access, Vyne Chooses Instead to Hack HSOne's Software Systems and Database Without Authorization...........4

    C.    Vyne Rushed to this Court in Anticipation of HSOne's Utah Lawsuit in an Apparent Attempt to Forum Shop.........................................................5

III.  SECTION 1404(A) LEGAL STANDARD ......................................................7

IV.   ARGUMENT .....................................................................................................8

    A.    The Heart of Vyne's Lawsuit is in Utah. .........................................................8

    B.    Vyne's Apparent Pursuit of a Perceived Favorable Fourth Circuit Precedent in a Forum Unconnected to the Heart of the Dispute Constitutes Impermissible Forum Shopping.........................................................10

    C.    Anticipatory Filings and Forum Shopping Counsel Against Strict Adherence to the First-To-File Rule....................................................11

    D.    All Factors Considered Under Section 1404(a) Favor Transfer ............................12

        1.    Factor One: Vyne's choice of forum deserves little weight because Maryland is not Vyne's home and does not bear a material connection to the controversy. ................................................13
        2.    Factor Two: The convenience of the witnesses favors a transfer. ............13
        3.    Factor Three: Party convenience favors a transfer. ...................................14
        4.    Factor Four: A transfer to Utah serves the interest of justice. .................15

    E.    Expedited Briefing Schedule on These Issues Could Efficiently Resolve These Proceedings. ..............................................................16

V.    CONCLUSION...............................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aetna Casualty & Surety Co. v. Quarles*,
    92 F.2d 321 (4th Cir. 1937) ....................................................................................12

*April Ademiluyi v. Nat'l Bar Ass'n*,
    GJH-15-02947, 2016 WL 4705536 (D. Md. Sept. 8, 2016) ....................................9

*Cain v. N.Y. State Bd. of Elections*,
    630 F. Supp. 221 (E.D.N.Y. 1986) .......................................................................15

*Capitol Payment Sys. v. Di Donato*,
    No. ELH-16-882, 2017 U.S. Dist. LEXIS 77864 (D. Md. May 23, 2017)........12, 13, 15

*Coastal Labs., Inc. v. Jolly*,
    502 F. Supp. 3d 1003 (D. Md. 2020) .....................................................................11

*Corp. Universe, Inc. v. Emry Cap. Grp., Inc.*,
    No. ELH-20-2925, 2021 WL 3603040 (D. Md. Aug. 12, 2021) ..............................7

*Evans v. Ariz. Cardinals Football Club, LLC*,
    No. WMN-15-1457, 2016 U.S. Dist. LEXIS 23525, (D. Md. Feb. 25, 2016).........13

*First Nationwide Mortg. Corp. v. FISI Madison, LLC*,
    219 F. Supp. 2d 669 (D. Md. 2002) .......................................................................12

*Fuentes Ayala v. U.S. Citizenship & Immigr. Servs.*,
    No. 24-cv-00550-LKG, 2024 WL 4165272 (D. Md. July 30, 2024).........................7

*H.L. Green Co. v. MacMahon*,
    312 F.2d 650 (2d Cir. 1962)....................................................................................11

*Laios v. MTM Builder/Developer, Inc.*,
    No. GJH-20-337, 2021 WL 4478712 (D. Md. Sept. 30, 2021) ................................9

*Learning Network, Inc. v. Discovery Comms., Inc.*,
    11 Fed. App'x 297 (4th Cir. 2001) ........................................................................12

*LegalForce, Inc. v. LegalZoom.com, Inc.*,
    No. 2:18-cv-06147-ODW-GJS, 2018 U.S. Dist. LEXIS 200634, 2018 WL
    6179319 (C.D. Cal. Nov. 27, 2018)........................................................................15

*LWRC Int'l., LLC v. Mindlab Media, LLC*,
    838 F.Supp.2d 330 (D. Md. 2011)..........................................................................11

*Lynch v. Vanderhoef Builders*,
    237 F. Supp. 2d 615 (D. Md. 2002) .......................................................................13

*M & N Plastics, Inc. v. Sebelius*,
    997 F. Supp. 2d 19 (D.D.C. 2013) .........................................................................10

*Mazzarino v. Prudential Ins. Co. of Am.*,
    955 F. Supp. 2d 24 (D.D.C. 2013) ........................................................................8

*Meza v. P&G*,
    No. EDCV 23-91 JGB (SHKx), 2023 U.S. Dist. LEXIS 81376, (C.D. Cal.
    Apr. 27, 2023) ........................................................................................................13

*MTGLQ Invs., L.P. v. Guire*,
    286 F. Supp. 2d 561 (D. Md. 2003) .......................................................................10

*Nazemi v. Arco Petroleum Prods. Co.*,
    No. 88 CV 8428 (KMW), 1989 U.S. Dist. LEXIS 8438, (S.D.N.Y. July 21,
    1989) .......................................................................................................................10

*Paratek Microwave, Inc. v. Agile Materials & Techs., Inc.*,
    No. WMN-04-2534, 2005 U.S. Dist. LEXIS 37688, (D. Md. June 7, 2005) ..........15

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235, 102 S. Ct. 252 (1981) ......................................................................14

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
    131 F.4th 205 (4th Cir. 2025) ..................................................................................2

*Remington Arms Co. v. Alliant Techsystems, Inc.*,
    No. 1:03CV1051, 2004 U.S. Dist. LEXIS 3848, 2004 WL 444574 (M.D.N.C.
    Feb. 25, 2004) .........................................................................................................12

*United States ex rel. Salomon v. Wolff*,
    268 F. Supp. 3d 770 (D. Md. 2017) ..........................................................................7

*Samsung Elecs. Co. v. Rambus, Inc.*,
    386 F. Supp. 2d 708 (E.D. Va. 2005) .....................................................................12

*Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
    791 F.3d 436 (4th Cir. 2015) ....................................................................................7

## Federal Statutes

28 U.S.C. § 1391(b)(2) ........................................................................................................9

28 U.S.C. § 1404 ..................................................................................................................7

28 U.S.C. § 1404(a) .........................................................................................................1, 7

## Other Authorities

https://www.henryscheinone.com/about-us/press-release/henry-schein-one-at-
    chicago-midwinter/?utm_source=chatgpt.com (Press Release, February 20,
    2025) ........................................................................................................................3

https://www.paycomonline.net/v4/ats/web.php/jobs/ViewJobDetails?job=287851
    &clientkey=24453CF3643AA69726FFAF7E52330EC1 ........................................1

## I.    INTRODUCTION

HSOne is a Utah-headquartered company.  The conduct Vyne challenges occurred in Utah.  Vyne has an office in Utah and Vyne's own executives—its Chief Executive Officer, President, and Chief Technology Officer—live in Utah.  Indeed, both Vyne's senior executive declarants used to work for HSOne and its predecessor entity for years in Utah.  Both executed their declarations in support of Vyne's request for early injunctive relief in Utah, where they live and work now.[1]  Before this litigation commenced, the parties negotiated a tolling agreement with District of Utah venue.  Vyne knew that HSOne was planning to file its own case for Vyne's violations of multiple federal hacking and circumvention laws in the District of Utah, because HSOne's Chief Executive Officer communicated to Vyne's CEO that a filing was imminent on September 30, 2025.  Mere hours later, Vyne filed this anticipatory action.  Within two days of being served on October 1, HSOne filed its own Complaint in Utah on October 3, 2025.

These are the sorts of circumstances that merit venue transfer pursuant to 28 U.S.C. § 1404(a).  Vyne's choice of this venue does not reflect any geographic benefit or other convenience to either party.  Nor does it reflect Maryland's ties to the underlying dispute.  Vyne is not at home in Maryland.  It is incorporated in Delaware.  Its principal place of business is in Georgia.  Vyne references 170 clients in Maryland in its Complaint.  But Vyne and HSOne have many thousands of clients across the United States, in every state.  Maryland does not stand apart.

Vyne appears to be forum shopping.  The only discernible reason Vyne filed its anticipatory

---

[1] *See* ECF No. 6-2, 6-3 (Declarations of Vyne's CEO and CTO).  Vyne also has a Chief of Staff to the CEO job posted on its careers page at the moment.  The person, who will be based in Vyne's Lindon, Utah, office, will be "driving operational excellence, ensuring smooth day-to-day business execution, and enabling the CEO to focus on long-term strategy, growth, and organizational vision."  *See* https://www.paycomonline.net/v4/ats/web.php/jobs/ViewJobDetails?job=287851&clientkey=24453CF36 43AA69726FFAF7E52330EC1.

Complaint in Maryland is due to a Fourth Circuit case, which Vyne cites dozens of times in its brief.[2]  Regardless of whether this case is apposite, and HSOne believes it is not, courts disfavor forum shopping of this kind.  Further, Vyne's anticipatory filing is often a basis for transfer as well.

Here, Utah would be more convenient for all parties.  The witnesses are there, including Vyne's leadership.  The debates and decisions over API access and HSOne's security measures, extending back to when Vyne's leadership used to work at HSOne, occurred in Utah.  Utah law is relevant to the dispute, both with respect to Vyne's claims and HSOne's claims.  Because HSOne's case is there, a transfer would avoid duplicative litigation, inconsistent injunctive orders, and expenditure of judicial resources.

For these reasons, and so as not to reward Vyne's apparent forum shopping and anticipatory filing, the interest of justice merits transferring this case to the District of Utah.

## II.    FACTUAL BACKGROUND

### A.    HSOne is an Innovative Dental Software Provider that Leads The Industry in Openness, Data Access, and Security.

HSOne lays out the details of its relationship with Vyne and this dispute in its Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction, filed in Utah.  (ECF Nos. 1, 14, attached as Exs. 1, 2 to Barros Decl.)  HSOne is a leading dental software provider.  HSOne's software systems, called Dentrix and Dentrix Ascend, help dentist offices manage their patient records so they can focus on patient care.  HSOne invests significant resources in making

---

[2] The case, *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205 (4th Cir. 2025), does not even help Vyne and supports HSOne's positions, including denial of Vyne's TRO and PI.  HSOne will have an opportunity to address this in its forthcoming TRO and PI Opposition brief.  But whether the case helps or hurts Vyne is of no import.  The attempt to forum shop is what matters because, under Fourth Circuit law, it reduces the deference appropriate to the first-filer's choice of forum.

its Dentrix platform open and transparent and has developed 750 Application Programming Interface ("API") endpoints to that end.  Over 100 vendors participate in HSOne's API Exchange. Those vendors use HSOne's API to integrate with their own applications.  Vyne, a billing point solution, refuses to use the Dentrix API.  Vyne also refuses to do a direct integration with HSOne. (Declaration of HSOne's CEO Brian Weatherly ("CEO Decl.") ¶ 3.)

In addition to interoperability, HSOne also invests significantly in security.  HSOne's CEO, who took the role in January 2025, was tasked with ushering the strengthening and overhaul of HSOne's cybersecurity infrastructure, with a particular focus on security and integration control. (CEO Decl. ¶ 4.)  Indeed, on February 20, 2025, HSOne issued a press release stating that "[w]ith its continued momentum toward the most connected platform, [HSOne] [will be] enhancing security, driving innovation, and creating automated synergies for common dental workflows." (Ex. 3 to Barros Decl. (Press Release)).[3]  To that end, HSOne sought to eliminate unauthorized integrations, enforce approved APIs only, and deploy security patches and upgrades.  (CEO Decl. ¶ 4.)

These implementations began in the summer of 2025 and involved technical and policy changes affecting third-party connectivity.  (*Id*. ¶ 5.)  Some measures adopted by HSOne involved the restriction of outdated backchannels and unapproved APIs, such as Vyne's legacy unauthorized integrations.  *Id*.  HSOne's measures are consistent with its publicly stated objectives and are meant to ensure a safe and compliant customer data environment where the platform can allow access and integration securely.  *Id*.  HSOne applies its policies across the board, not just in the case of Vyne.  *Id*.

---

[3] https://www.henryscheinone.com/about-us/press-release/henry-schein-one-at-chicago-midwinter/?utm_source=chatgpt.com  (Press Release, February 20, 2025).

**B.     Despite HSOne's Efforts to Provide Data Access, Vyne Chooses Instead to Hack HSOne's Software Systems and Database Without Authorization.**

In the face of repeated offers from HSOne this year, Vyne has not seriously considered the API or an integration on reasonable commercial terms.  This appears to be because Vyne has developed a complex set of hacking software to gain the read and write access it seeks to HSOne's software and database without authorization or integration.  Vyne's scheme goes far beyond what it describes in its Complaint in this action and what it has represented to the public.  HSOne has uncovered Vyne's hacks through forensic investigation and telemetry it deployed into its Dentrix systems on customer premises.

Vyne's conduct is outlined in detail in the sworn declarations of HSOne's Chief Security Officer, submitted to the district court in Utah.  (Exs. 4 and 5 to Barros Decl.)  Vyne, among other things, misappropriates decryption keys and credentials, escalates its own privileges in HSOne's software, intercepts network traffic, injects data into HSOne's settings files, overrides HSOne's security patches and upgrades, among other things.  These techniques appear to have been newly deployed and, indeed, Vyne is deploying multiple new versions of its exploit software weekly to thousands of HSOne's customers.

HSOne has attempted to explain to Vyne that its workflow is unauthorized and poses security and privacy risks.  HSOne does not target or single out Vyne; indeed HSOne has also put other vendors on notice who circumvent technical barriers and access HSOne's software and database without authorization.  HSOne has made repeated offers to Vyne to join its API Exchange or integrate directly, like others.  Vyne has not engaged in these negotiations in good faith, escalating its hacking while engaging in commercial discussions with HSOne.

Vyne claims it has used its methods for 20 years.  This is not accurate, as Vyne is deploying multiple workarounds and exploits on a weekly basis, and has executed complex hacks with

software code that HSOne believes was developed within the last year. Even if Vyne's claim was accurate that its method of access was twenty years old, this would also raise concerns. The software and security landscape has evolved significantly in the last two decades—which is part of why HSOne is constantly updating its platform security controls to protect its customers' patient data.

To support its conduct, Vyne also invokes the Cures Act publicly and in this Court. But the Cures Act is not a license to violate the Computer Fraud and Abuse Act (CFAA), the Electronic Communications Privacy Act (ECPA), and Digital Millennium Copyright Act (DMCA). HSOne, for its part, does not violate the Cures Act in any way as its forthcoming TRO opposition will show. Now, Vyne seeks the District of Maryland to issue a TRO blocking HSOne from securing its software, deployed at tens of thousands of dentist offices nationwide. Absent HSOne's security controls, those offices' sensitive patient records are vulnerable to a myriad of hacks not only from Vyne but also from countless other malicious actors who seek to exfiltrate patient data.

### C.    Vyne Rushed to this Court in Anticipation of HSOne's Utah Lawsuit in an Apparent Attempt to Forum Shop.

When it became clear that Vyne would not stop its hacks, HSOne sent a cease-and-desist letter on August 26, 2025. (CEO Decl. ¶ 6.) HSOne demanded that Vyne immediately stop its hacking and circumvention methods, which were causing service disruptions and creating a cybersecurity risk. *Id.*; (Ex. 6 to Barros Decl. (HSOne C&D). Vyne retained counsel, who responded to HSOne's letter on September 6, 2025. (CEO Decl. ¶ 6.)

In the meantime and since its response, Vyne has not stopped its unauthorized access. (CEO Decl. ¶ 7.) Despite this, HSOne kept engaging in good faith to try and reach a commercial resolution and avoid judicial intervention. *Id.* From the date of the cease and desist to Vyne's filing of the Complaint, HSOne presented Vyne with several commercial options, including a Term

Sheet, sent on September 18, 2025 that the parties were actively discussing when Vyne filed suit. *Id.*

The parties' CEOs have met several times to discuss these topics. (CEO Decl. ¶ 8.) Since the first meeting in late 2024, there have been multiple meetings between the CEOs. *Id.* These discussions culminated in the last CEO meeting on September 30, 2025. *Id.* HSOne's CEO expressed his concern about Vyne's apparent unrelenting escalating hacking campaign. HSOne's CEO in that meeting conveyed to Vyne's CEO that litigation was likely imminent, and stating to Vyne that HSOne's lawyers had a near-final Complaint drafted. *Id.* Mere hours later, Vyne sued in Maryland. (Ex. 7 to Barros Decl. (Counsel Email Thread.)

Vyne's lawyers explained its rationale in an email to HSOne's counsel. In the morning of October 1, 2025, Vyne's counsel Mr. Vincent Levy wrote: "HS[One] CEO made it very clear that HS[One] had zero interest in reaching an amicable and reasonable resolution in short order, and threatened to initiate a lawsuit. . . . [and] [g]iven the software attacks of last week and what HS[One]'s CEO said yesterday, HS[One] left Vyne with no choice but to initiate a lawsuit, which Vyne did *yesterday evening*." (Ex. 9 (Counsel Email Thread) at 1) (emphasis added).

In Vyne's Complaint, it asserts that it has less than 200 customers in Maryland. Vyne and HSOne share multiple thousands of customers, however, outside of Maryland. (CEO Decl. ¶ 9.) Vyne also cites a particular Fourth Circuit case dozens of times in its TRO brief, suggesting that its rationale for filing in Maryland has to do with this precedent (even though HSOne intends to show that the precedent is not actually favorable to Vyne).

After Vyne sued in Maryland on September 30, 2025, HSOne filed its own Complaint against Vyne in Utah. (Ex. 1.) HSOne alleges that Vyne violates the CFAA, ECPA, DMCA, Lanham Act, and Utah wiretapping law, among other common law claims. HSOne has sought a

TRO and preliminary injunctive relief in Utah.  (Ex. 4.)  The court in Utah has denied HSOne's TRO without prejudice to refiling, pending this Court in the District of Maryland's determination of whether venue is more appropriate here in Maryland or in Utah.  (ECF No. 18, attached as Ex. 8 to Barros Decl.)  HSOne has filed a motion to reconsider the ruling in Utah, which is pending, but this Court can moot the issue by transferring this case to Utah. (ECF No. 20, attached as Ex. 9 to Barros Decl.)

## III.    SECTION 1404(A) LEGAL STANDARD

Under 28 USC § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice" this Court has the discretion to transfer this civil matter to the district court in Utah.  (28 U.S.C. § 1404(a).)  Courts in the Fourth Circuit "consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).  A party moving to transfer under Section 1404 must show: "(1) that the plaintiff could have brought the action in the proposed transferee court and (2) that the plaintiff should have brought the action there." *Fuentes Ayala v. U.S. Citizenship & Immigr. Servs.*, No. 24-cv-00550-LKG, 2024 WL 4165272, at *1 (D. Md. July 30, 2024).

"A district court has discretion to decide motions to transfer based on an individualized, case-by-case consideration of convenience and fairness." *United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017) (internal citations and quotations omitted).  "In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate." *Corp. Universe, Inc. v. Emry Cap. Grp., Inc.*, No. ELH-20-2925, 2021 WL 3603040, at *2 (D. Md. Aug. 12, 2021).

## IV.    ARGUMENT

"[T]he transfer provisions in the U.S. Code, which grew out of the common law doctrine of *forum non conveniens*, were in part intended to prevent forum shopping." *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 30 (D.D.C. 2013)) (citation omitted). Venue transfer is warranted here so as not to reward Vyne's forum shopping and anticipatory filing.

### A.    The Heart of Vyne's Lawsuit is in Utah.

As a threshold matter, this case could have been brought in the District of Utah. Utah is HSOne's home—and thus, Vyne could have sued HSOne in Utah. A suit in Utah would have no jurisdictional or venue impediments: HSOne naturally consents to the District of Utah's jurisdiction and venue is proper because HSOne is a Utah resident. HSOne sets forth its venue allegations regarding the District of Utah in its pending Complaint. (Ex. 3.)

Utah makes sense for Vyne too, given that its CEO, President, and CTO, among others are based in Utah. Vyne has an active office in Utah and is recruiting for a senior level Chief of Staff role there.

As to Maryland, Vyne is not incorporated or headquartered there, but rather it "is a Delaware corporation[] with its principal place of business in Dunwoody, Georgia." (ECF No. 1 (Vyne Complaint), ¶ 12.) Vyne's ties to Maryland are no more significant than its ties to Delaware, Georgia, or even Indiana, where it publicly reports its "Operations address."[4]

Vyne's Complaint does not contain allegations of acts, omissions, or events occurring in Maryland, beyond the general assertion that a relatively small number of customers (far less than 1% of HSOne's nationwide customers) have purportedly had interactions relevant to Vyne's claims. In fact, the Complaint alleges that "as of the date of [] filing, [] at least *five* practices in

---

[4] Https://vynedental.com/home/ (Accessed October 11, 2025).

Maryland" were allegedly affected by HSOne's actions. (Vyne Compl. ¶ 64.)[5]

Even taking Vyne's numbers at face value, and even assuming *all* 170 Maryland dental practices that use Dentrix and Vyne Trellis were affected (as opposed to five), that still only accounts for 2.125% of the more than 8,000 total nationwide dental practices Vyne has as customers, and less than half a percent of HSOne's customers. (Vyne Compl. ¶ 6); (CEO Decl. ¶ 9.)

Indeed, a Vyne letter to HSOne, dated August 21, 2025 illustrates Maryland's tangential connection to this dispute.[6] In this letter, Vyne states it had been authorized to act on behalf of 411 dental practices seeking that data within HSOne's Dentrix be made accessible to Vyne. (Ex. 10 to Barros Decl.) Leaving aside the misguided nature of the letter and its contents, it is notable that Maryland dental practices appear only seven times in the list—**ranking 20th out of 39 states represented**. Nineteen other states ranked higher, including California with 33 practices (1st place), Georgia with 16 practices (10th), Indiana with 12 practices (13th), and Utah (11th), with 14 dental practices represented. (Barros Decl. ¶ 11.) This letter alone, which reflects a self-selected group of dental practices already aligned with Vyne, underscores how Maryland is not the nexus of this dispute.

In light of these facts, Plaintiff cannot meet its burden to establish that the events or facts "central" to this case are "anchored" in Maryland. *Laios v. MTM Builder/Developer, Inc.*, No. GJH-20-337, 2021 WL 4478712, at *5 (D. Md. Sept. 30, 2021); *April Ademiluyi v. Nat'l Bar Ass'n*, GJH-15-02947, 2016 WL 4705536, at *3 (D. Md. Sept. 8, 2016) (no venue under Section

---

[5] Vyne's CTO declaration, submitted three days after Complaint submission, updates the number to "at least seven." (Ex. 2 (ECF No. 6-3), ¶ 16.) Vyne's October 9, 2025 Motion to Shorten Time adds "two more" dental practices to the list of allegedly affected dental practices in Maryland. (ECF No. 29 at 2.)

[6] HSOne does not concede or accept the contents of such letter.

1391(b)(2) because plaintiff failed to allege that the "relevant conduct occurred in Maryland"). "Events that relate only tangentially to the claim," in contrast, "cannot constitute a 'substantial part of the events or omissions giving rise to the claim'; indeed, strictly speaking, they do not 'give rise to' the claim at all." *MTGLQ Invs., L.P. v. Guire*, 286 F. Supp. 2d 561, 565 (D. Md. 2003).

Vyne's Complaint and filings show Utah is the locus of this dispute: it is where HSOne is headquartered, where the relevant conduct occurred, and where key witnesses—including Vyne's own CEO, President, and CTO—reside.

### B. Vyne's Apparent Pursuit of a Perceived Favorable Fourth Circuit Precedent in a Forum Unconnected to the Heart of the Dispute Constitutes Impermissible Forum Shopping.

Vyne has no apparent reason to bring a lawsuit in Maryland other than a precedent it perceives will provide it a tactical advantage. HSOne disagrees that this case is helpful to Vyne, but that is beside the point. Vyne's forum shopping is an independent consideration that warrants a transfer to the convenient forum.

Vyne's TRO mentions the phrase "Real Time" no fewer than 37 times. (*See* ECF No. 6.) Vyne cited the *Real Time* decision so often it was forced to use the Latin term *passim* in its table of authorities. Yet Vyne's Complaint does not have any allegations of decisions or events, by either party, that happened in Maryland outside of a miniscule percentage of Maryland customers, with more than 19 states having had more customers purportedly impacted than Maryland, according to Vyne's own written representations.

Courts disfavor this type of precedent truffle hunt. *See*, e.g., *M & N Plastics, Inc. v. Sebelius*, 997 F. Supp. 2d 19, 25 (D.D.C. 2013) (plaintiff's filing outside home district was motivated by favorable D.C. circuit precedent and a desire to escape unfavorable 11th Cir. law); *Nazemi v. Arco Petroleum Prods. Co.*, No. 88 CV 8428 (KMW), 1989 U.S. Dist. LEXIS 8438, at *3-4 (S.D.N.Y. July 25, 1989) ("A district court in its discretion may transfer an action to a district

having a nexus with the controversy when the plaintiff sues in a forum with no nexus seeking to take advantage of more favorable precedent").  Also, it matters not whether the Tenth's Circuit precedent is different than the Fourth Circuit's.  *See, e.g.*, *H.L. Green Co. v. MacMahon,* 312 F.2d 650, 652 (2d Cir. 1962) ("plaintiff may not resist the transfer of his action to another district court on the ground that the transferee court will or may interpret federal law in a manner less favorable to him").

Especially counseling for transfer here is that the Fourth Circuit case Vyne likes to cite, it can still cite in Utah.  The Tenth Circuit has not interpreted the Cures Act, but there is no reason a Tenth Circuit court cannot consider the Fourth Circuit's interpretation.  There is nothing uniquely helpful to Vyne from this case in any event.  The case is about a situation where a company very differently situated from HSOne targeted a single vendor with unsolvable security "Captcha" puzzles.  It had nothing to do with a vendor hacking a software system.  The commercial negotiations in that case were nothing like the ones in this case, where HSOne took an even-handed and good faith approach.  The evidence will show that this situation here is nothing like the situation in *Real Time*.  So even if a more favorable precedent in Maryland mattered, Vyne could not articulate why it cannot seek a similar ruling in the Tenth Circuit.  That is because it can.

### C.  Anticipatory Filings and Forum Shopping Counsel Against Strict Adherence to the First-To-File Rule.

Though the Fourth Circuit follows the First-to-File rule, this "rule 'yields to the interests of justice, and will not be applied when a court finds compelling circumstances supporting its abrogation.'"  *LWRC Int'l., LLC v. Mindlab Media, LLC*, 838 F.Supp.2d 330, 337-38 (D. Md. 2011) (citation omitted), including "bad faith, anticipatory suit, and forum shopping."  *Coastal Labs., Inc. v. Jolly*, 502 F. Supp. 3d 1003, 1024 (D. Md. 2020) (citation omitted).  "Courts have recognized several exceptions to the first-to-file rule," including when the party first to file "does

11

so with notice that the other party is about to file," or "bad faith, anticipatory suits, and forum shopping." *Capitol Payment Sys. v. Di Donato*, No. ELH-16-882, 2017 U.S. Dist. LEXIS 77864, at *34-35 (D. Md. May 23, 2017) (quotation marks omitted) (quoting *Remington Arms Co. v. Alliant Techsystems, Inc.*, No. 1:03CV1051, 2004 U.S. Dist. LEXIS 3848, 2004 WL 444574, at *3 (M.D.N.C. Feb. 25, 2004) and *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005)).

Vyne's anticipatory filing "in order to obtain a more favorable forum or procedural posture" is "disfavored." *See, e.g.*, *First Nationwide Mortg. Corp. v. FISI Madison, LLC*, 219 F. Supp. 2d 669, 673 (D. Md. 2002) (citing *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)).

Vyne's own lawyers admit to filing in Maryland in direct response to HSOne's stated intent to sue. Vyne's counsel stated that because HSOne's CEO "made it very clear" that there would not be a resolution "in short order," and "threatened to initiate a lawsuit," then Vyne had "no choice but to initiate a lawsuit" the evening prior to the lawyers' email. (Ex. 9 at 1 (Counsel Email Thread)). Vyne filed this lawsuit mere hours after being told, in no uncertain terms, that litigation in Utah was imminent.

Vyne's admission underscores that Vyne's filing was a direct reaction to HSOne's intent to sue, a textbook example of anticipatory filing.

### D.    All Factors Considered Under Section 1404(a) Favor Transfer

"[T]he transfer of the first-filed suit to the forum of a second-filed suit is appropriate where there is a showing of a balance of convenience in favor of the second [forum]." *Capitol Payment Sys.*, 2017 U.S. Dist. LEXIS 77864, at *34 (brackets in original) (citing *Learning Network, Inc. v. Discovery Comms., Inc.*, 11 Fed. App'x 297, 300 (4th Cir. 2001)).

### 1.    Factor One:  Vyne's choice of forum deserves little weight because Maryland is not Vyne's home and does not bear a material connection to the controversy.

The first factor, Vyne's choice of a forum, deserves no weight here.  Though a plaintiff's choice of forum "is ordinarily accorded considerable weight . . . . that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy."  *Capitol Payment Sys.*, 2017 U.S. Dist. LEXIS 77864, at *23 (citing *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (quotation marks omitted).

Here, Vyne's choice of a forum outside its home counsels diminished weight.  As other courts have noted, this is so because "[c]oncerns for forum shopping are potentially present when a plaintiff pursues litigation outside his home district."  *Meza v. P&G*, No. EDCV 23-91 JGB (SHKx), 2023 U.S. Dist. LEXIS 81376, at *9 (C.D. Cal. Apr. 27, 2023) (cleaned up) (quotations marks and citations omitted); *see also Evans v. Ariz. Cardinals Football Club, LLC*, No. WMN-15-1457, 2016 U.S. Dist. LEXIS 23525, at *9 (D. Md. Feb. 25, 2016) (granting motion to transfer in part by affording reduced weight to plaintiffs' choice of forum where no named plaintiff in class action resided in Maryland).

### 2.    Factor Two:  The convenience of the witnesses favors a transfer.

The primary relevant and material HSOne's potential witnesses reside in Utah, including HSOne's Chief Information Security Officer and Chief Technology Officer.  Vyne does not identify a single material witness in Maryland.  Vyne's own principals (CEO and CTO) reside in Utah and executed their declarations there:  Mr. Roberts signed in South Jordan, Utah, (Ex. 1, ECF No. 6-2 at 16), while Mr. Nix signed in Highland, Utah (Ex. 2, ECF No. 6-3 at 7).  Vyne has an office in Utah and is hiring senior personnel for that office to join its CEO, President, and CTO, who are already based there.

As evidenced by their voluntarily filed declarations, Vyne's CEO and CTO are necessary witnesses concerning Vyne's technical methods, decision-making, and communications with its customers. Their residence in Utah favors a transfer as it promotes the convenience of HSOne's witnesses *and* Vyne's key witnesses.

To be sure, Vyne will likely have relevant witnesses located outside Utah, including in Georgia and Indiana. But Vyne's decision to file suit in Maryland—a forum where it is neither incorporated nor headquartered—demonstrates its witnesses are willing and able to travel for litigation. That choice undermines any claim that Utah is unduly burdensome. Moreover, the relative geographic distance between Georgia or Indiana and this district, versus Utah, is not meaningfully different in the context of federal litigation. Whatever marginal difference in travel time or cost cannot outweigh the substantial connection this dispute has to Utah.

Access to sources of proof favor Utah as well. Relevant technical documents, source code artifacts, telemetry and other logs, security analyses, Dentrix component binaries, and HSOne's internal investigative materials are maintained by Utah teams. To the extent physical evidence, secure repositories, or in-person inspections are needed, Utah is the more convenient forum. Modern e-discovery tools facilitate but do not eliminate practical benefits of litigating near where the custodians are located, particularly for matters that are highly technical and specialized.

### 3.     Factor Three:  Party convenience favors a transfer.

HSOne's home forum is Utah, making it presumptively convenient. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 102 S. Ct. 252, 266 (1981) ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient."). It needs no explaining that a transfer to Utah would be convenient for HSOne and its witnesses.

Vyne, "a Delaware corporation, with its principal place of business in [] Georgia," (Vyne Compl. ¶ 12), cannot claim Maryland is the more convenient forum. When Vyne filed its suit in

Maryland, it tacitly admitted no undue burden to travel to a state that is neither its home nor principal place of business. *Id.*

### 4.    Factor Four:  A transfer to Utah serves the interest of justice.

This factor is "amorphous and somewhat subjective," and allows a court to "consider many things." *Capitol Payment Sys.*, 2017 U.S. Dist. LEXIS 77864, at *30.  It is in the interest of justice here that this matter be resolved in Utah.  Transfer puts this matter where it belongs and discourages forum shopping and anticipatory filing.

"The Court fails to see how judicial proceedings in a district outside that in which the parties, witnesses, and sources of proof may be found, and in which the cause of action arose, serve the general interests of justice where the district which is the natural focus of such litigation is both open to such proceedings and desired as a forum by one of the parties." *Cain v. N.Y. State Bd. of Elections*, 630 F. Supp. 221, 227 (E.D.N.Y. 1986); see also *LegalForce, Inc. v. LegalZoom.com, Inc.*, No. 2:18-cv-06147-ODW-GJS, 2018 U.S. Dist. LEXIS 200634, 2018 WL 6179319, at *3 (C.D. Cal. Nov. 27, 2018) ("A key 'interest of justice' factor is the prevention of forum shopping.").

Justice also "favor[s] transfer that will facilitate the highly technical live testimony of key third-party witnesses." *Paratek Microwave, Inc. v. Agile Materials & Techs., Inc.*, No. WMN-04-2534, 2005 U.S. Dist. LEXIS 37688, at *8 (D. Md. June 7, 2005).

A transfer also serves Utah's interest in vindicating the rights of its companies, citizens, and laws.  The interests of justice would also be served by a transfer because it would permit the District of Utah to efficiently resolve both Vyne's TRO along with HSOne's.  Judicial efficiency is served by having one court deal with the merits of the disputes between the parties.  Right now, the District of Utah has essentially paused the TRO proceedings by denying HSOne's TRO without prejudice subject to this Court's determination of the question presented by this motion.  This has

created an inequity to HSOne, because Vyne is continuing to access HSOne's computer software and database without authorization every day on a massive scale.  This is an independent reason to transfer for purposes of the interest of justice.

### E. Expedited Briefing Schedule on These Issues Could Efficiently Resolve These Proceedings.

If the venue question can be resolved prior to the TRO and PI hearing, this could streamline the proceedings and allow the Court in Utah to take up both parties' requests.  Vyne has already requested expedited briefing in the context of its own motion.  Here a potential schedule could be for Vyne to file its Opposition to this motion by this Thursday or Friday, October 16 or 17, 2025.  HSOne could file its reply by Monday, October 20, 2025.  The matter would then be fully briefed and ripe for potential resolution prior to the October 23, 2025 TRO and PI hearing.  HSOne, of course, defers to the Court's discretion and preference with respect to the briefing schedule.

## V.    CONCLUSION

Because the heart of this dispute is in Utah, and because Vyne raced to this Court in anticipation of HSOne's lawsuit in Utah, Section 1404(a) supports transfer.  Transferring this matter to the District of Utah would be more convenient and serve justice.  HSOne respectfully requests that the Court do so pursuant to the venue transfer statute.


Date: October 14, 2025

**GREENBERG TRAURIG, LLP**

By: */s/ Michael Burshteyn*

Michael Burshteyn *(pro hac vice)*
Marcelo Barros *(pro hac vice)*
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Michael.burshteyn@gtlaw.com
Marcelo.barros@gtlaw.com

Michael R. Sklaire (MD Fed. Bar No. 16471)
1750 Tysons Boulevard, Suite 1000
Tysons Corner, VA 22102
Tel: (703) 749-1308
michael.sklaire@gtlaw.com

*Counsel for Henry Schein One, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 14, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF No. system, which will send notification of such filing to all counsel of record.

*/s/ Michael Burshteyn*