# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

|  |  |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>Plaintiff,<br><br>- against –<br><br>HENRY SCHEIN ONE, LLC,<br><br>Defendant. | Case No. 1:25-cv-03246-MJM |

## DECLARATION OF MARCELO BARROS

I, Marcelo Barros, declare under penalty of perjury:

1.      I am an attorney at law duly licensed to practice law in the State of California, an associate at the law firm of Greenberg Traurig, LLP, and admitted *pro hac vice* to represent Defendant Henry Schein One, LLC's ("HSOne") in the above-entitled action.   I make this declaration in support of HSOne's Memorandum of Law in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).   Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration and if asked to testify as to these facts I would be competent to do so.

2.      Attached as Exhibit 1 is a true and correct copy of HSOne's Complaint (ECF No. 1), which was filed in *Henry Schein One, LLC v. National Electronic Attachment, Inc., d/b/a Vyne Dental*, Case No. 2:25-cv-00883-AMA-JCB (D. Utah) (the "Utah action").

3.      Attached as Exhibit 2 is a true and correct copy of HSOne's Motion for a Temporary Restraining Order and Preliminary Injunction filed in the Utah Action ("HSOne's

Motion for PI") (ECF No. 14).

4.     Attached as Exhibit 3 is a true and correct copy of a press release dated February 20, 2025, from HSOne's website titled "Henry Schein One is More Thank a Practice Management System – It's Revolutionizing Dental with the Most Connected Platform," which my colleague downloaded on October 13, 2025 at 4:50 p.m. MT, and which can be accessed here https://www.henryscheinone.com/about-us/press-release/henry-schein-one-at-chicago-midwinter/?utm_source=chatgpt.com.

5.     Attached as Exhibit 4 is a true and correct copy of the Declaration of Kenton McDaniel (ECF No. 14-1), which was submitted in support of HSOne's Motion for PI.

6.     Attached as Exhibit 5 is a true and correct copy of the Supplemental Declaration of Kenton McDaniel (ECF No. 22), submitted in support of HSOne's Motion for PI.

7.     Attached as Exhibit 6 is a true and correct copy of a cease and desist letter dated August 26, 2025, that HSOne sent to Vyne.

8.     Attached as Exhibit 7 is a true and correct copy of an email chain ending October 1, 2025, on which I was copied.

9.     Attached as Exhibit 8 is a true and correct copy of the Court's Order denying HSOne's Motion for a Temporary Restraining Order without prejudice (ECF. No. 18).

10.    Attached as Exhibit 9 is a true and correct copy of HSOne's Motion for Reconsideration (ECF No. 20).

11.    Attached as Exhibit 10 is a true and correct copy of a portion of the letter dated August 21, 2025, which Vyne sent to HSOne. The letter contains a list of dental practices with associated state locations.  Vyne has this letter and can independently verify the math regarding the counts of each state.

2

12.     Attached as Exhibit 11 is a true and correct copy of the LinkedIn Profile of Vyne's President, Mr. James Grover.

I declare under penalty of perjury of the laws of the United States that the foregoing facts and allegations are true and correct to the best of my knowledge, information and belief.  Executed on this 14th day of October, 2025, in San Francisco, California.

/s/Marcelo Barros
Marcelo Barros (*pro hac vice*)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Marcelo.Barros@gtlaw.com

ACTIVE 715487061v3

# EXHIBIT 1

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| HENRY SCHEIN ONE, LLC, a Delaware limited liability company, | **COMPLAINT** |
| Plaintiff, | |
| v. | Case No. _____ |
| NATIONAL ELECTRONIC ATTACHMENT, INC. d/b/a VYNE DENTAL, a Delaware corporation, | District Judge _____ <br> Magistrate Judge _____ |
| Defendant. | |

Plaintiff Henry Schein One, LLC ("HSOne") brings this case against Vyne National Electronic Attachment, Inc. d/b/a Vyne Dental ("Vyne") for violations of the federal Computer Fraud and Abuse Act (CFAA), Digital Millennium Copyright Act (DMCA), Lanham Act, Electronic and Communications Privacy Act (ECPA), as well as multiple Utah statutes and common law doctrines.

## **INTRODUCTION**

1.      HSOne seeks this Court's intervention to stop Vyne's persistent and malicious hacking of HSOne's software platform while spreading falsehoods about its own conduct and HSOne's efforts to defend its platform security and integrity.

2.      HSOne is an innovative software and services company accelerating the future of dental care.  It offers a suite of digital platforms that comprehensively streamline operational, clinical, and financial processes for dental practitioners across the United States.  Dentrix and Dentrix Ascend, two of HSOne's flagship products, are tools designed to manage all steps of a dental practice from patient intake to insurance claims submission.  HSOne empowers these practices to focus on delivering extraordinary care.

3.      HSOne invests significant resources in securing its dental customer's business and patient health data stored in its software platforms.  HSOne's platforms offer various digital and clinical services to its dental customers, including the ability for dental practices to contract with

approved third party software vendors that are part of HSOne's Application Programming Interface (API) Exchange. In order to qualify for the API Exchange, third party software vendors are required to undertake a security assessment and enter into an agreement with HSOne that sets forth each vendor's obligations to maintain necessary customer approvals and legal, security and compliance standards. While HSOne is not required by law to maintain this API Exchange, HSOne has developed the API Exchange over many years to provide innovative solutions to its dental customers.

4.     HSOne's API Exchange works with over 140 securely integrated vendors that its dental customers can leverage. The API Exchange makes available over 750 data endpoints, which enable third-party services to interact with HSOne's platforms. The API Exchange enables interoperability and freedom of choice for HSOne's dental customers while providing best-in-class user experience along with industry-leading data security. HSOne supports over 40 categories of third-party vendors with its API Exchange, spanning areas such as patient engagement, revenue cycle management, analytics and imaging, among others.

5.     Vyne is a point solution focused on dental billing. It shares many dental customers with HSOne. To provide billing services to its dental practice customers, Vyne aims to read and write data from software platforms like Dentrix that dental practices use to run their business. Vyne is not, however, part of HSOne's API Exchange. Unlike the 140 securely integrated vendors who work with HSOne's API Exchange, Vyne seeks to directly read and write data from HSOne's software platform *en masse* in a way that bypasses HSOne's API. Vyne does so through a series of non-trivial and technically aggressive hacks that access HSOne's protected software database and software systems located on customers' premises without authorization.

6.     HSOne has recently uncovered details regarding Vyne's hacking of the Dentrix software instances that HSOne installs in its customers' infrastructure. To stop API circumvention, HSOne recently notified Vyne and others of security upgrades it intended to implement. Vyne, in response, escalated its hacking to get ahead of and circumvent HSOne's security patches. Vyne's recent and escalating conduct includes pervasive intrusions and circumventions of HSOne's

technical security measures to protect the computers at issue against such attacks.  These hacks include at least the following:

- Misappropriating configuration files which HSOne uses to facilitate customer access to its database;

- Misappropriating encrypted administrator credentials contained within settings files to modify settings inside of HSOne's Dentrix platform without HSOne's authorization;

- Exploiting HSOne's source code to steal private decryption keys needed to decrypt sensitive settings and other information from HSOne's Dentrix platform;

- Injecting malicious code to alter the functionality of print drivers to export data from Dentrix;

- Developing software that falsely mimics Dentrix to interact with its database and services; and

- Intercepting web traffic from HSOne's Dentrix platform and redirecting it to Vyne's servers.

7.      None of Vyne's conduct or access is authorized by HSOne.  Vyne goes to great lengths to cover its tracks and obfuscate its malicious hacks of HSOne's customer-installed software systems.  Despite these efforts, HSOne's investigation has recently revealed many of the details of Vyne's hacks—in particular its circumvention of HSOne's technical measures to protect the systems it installs on its customers' premises.  HSOne implemented telemetry in its systems several months ago that has shown Vyne's rapid-fire iteration of its hacks to circumvent HSOne's software security controls.

8.      Particularly concerning is that Vyne's malicious hacks interfere with HSOne's routine security and application upgrades to its software platforms.  Due to Vyne's unauthorized access to and modification of HSOne's software critical system files, HSOne is unable to issue security patches without impacting functionality and causing its own customers challenges.  This

raises security and privacy concerns, as HSOne is unable to maintain its software in the face of Vyne's hacked together API workarounds.

9.      To this day, HSOne continues to investigate and detect new methods Vyne uses to hack its software. Indeed, HSOne discovered more pernicious attacks, including the (1) injection of data into HSOne's software settings file by exploiting debug functionality to create a debug settings file that then intercepts Internet traffic, redirecting it to Vyne's servers;  (2) database-level tampering, which runs every 60 seconds to wipe HSOne's security deny-list, a security measure; and (3) creation of a rogue local HTTP proxy bound to a system port using an imported certificate along with the debug override feature exploit to force traffic to this proxy HTTP.  Vyne's actions disable encryptions and authentications, sever patching, and expose protected communications to unauthorized first recipients.

10.     HSOne has repeatedly invited Vyne to join its API Exchange, but Vyne refuses to agree to HSOne's API Terms of Service.  Vyne has refused, as it desires unfettered access with no restriction.  HSOne, however, already enables its customers to export data and does not lock data in.  What Vyne seeks is to automate that process *en masse*, which would threaten data integrity and pose other risks.  Moreover, HSOne has worked to integrate with certain clearinghouses and has presented Vyne with an offer to similarly integrate on comparable commercial terms.  Vyne, however, is uninterested, having apparently determined that hacking is a more desirable approach.

11.     Apart from HSOne, independent industry observers have raised concerns about Vyne's conduct.  On August 23, 2025, for instance, one such observer described Vyne's behavior as a "shadow integration" and warned that Vyne's "bypasses" of HSOne's Dentrix APIs create a "major vulnerability waiting to be exploited."[1]

12.     HSOne has focused in recent months on implementing security patches and upgrades to stop unauthorized access to its systems installed on customer locations.  Because Vyne refused to stop its unauthorized access despite multiple direct requests to stop, HSOne had no choice but to go the route of implementing technical measures to protect the integrity of its systems

---

[1] Ex. 1 at 4 (Schein vs Vyne_The Fight Over Backdoor Hacks Into Your Data).

and customer data.  Vyne, in response, escalated its conduct.  Vyne did this through continued technical means to circumvent HSOne's protections, as well as a scorched earth public campaign meant to discredit HSOne in the market and to its customers.  Specifically, Vyne has spread a bevy of false statements about its own conduct and HSOne's platform.  Among other things, Vyne recently told HSOne's customers that HSOne "prohibits all alternative integration methods," "undermines . . . Practice autonomy" and "Operational resiliency," and that HSOne seeks to "disable [customers'] ability to send claims through Vyne Dental."  All of these statements are false and misleading.  Vyne knows this, yet intentionally continues to smear HSOne.  It spreads these false statements as part of a campaign to pressure HSOne in the hopes that HSOne will stop attempting to prevent Vyne's malicious hacks of its software platform.  Vyne's goal is to interfere with HSOne's customer contracts and relationships and pave the way for Vyne's unfettered unauthorized access to HSOne's software systems.

13.    Because Vyne has no regard for HSOne's system architecture, the attacks lead to disruption of services, customer complaints, and risk of data loss.  HSOne finds itself in a difficult position because Vyne's access to its software on its customer's premises has been technically challenging to prevent, and has direct negative impacts on HSOne's customers' day-to-day dental business operations.  Given the direct impact on its customers, HSOne has only been able to deploy *ad hoc* technical measures in phases to directly assist customers.  Also, due to this severe customer impact, HSOne has directly asked Vyne to stop—multiple times, including through a Cease and Desist Letter sent on August 26, 2025—and has attempted to reach a commercial remediation for months.

14.    In the last few weeks, however, it has become clear that Vyne will stop at nothing to continue its unlawful access to HSOne's software systems.  Worse, Vyne is making intentional false statements about the situation and interfering with HSOne's customer relationships both through its words and technical hack deployments.

15.    Unless Vyne is enjoined from its conduct, HSOne will be unable to maintain its software and will be playing a never-ending game of whack-a-mole to stop Vyne's next technical

circumvention.  HSOne consequently brings this action to protect its software and its customers'
valuable and sensitive data from Vyne's dangerous, reckless, and intentional malicious hacks.

## PARTIES

16.    Plaintiff Henry Schein One, LLC is a Delaware limited liability company
headquartered in 1220 South 630 East, Suite 100, American Fork, Utah.

17.    Defendant National Electronic Attachment, Inc. d/b/a Vyne Dental is, upon
information and belief, a Delaware corporation, headquartered in 100 Ashford Center North, Suite
300, Dunwoody, Georgia 30338.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §
1331.  This action arises under the Computer Fraud and Abuse Act (18 U.S.C. § 1030, et. Seq.),
the Copyright Act of 1976 (17 U.S.C. § 101, et. seq.), the Trademark Act of July 5, 1946, as
amended (15 U.S.C. § 1051, et. seq.), the Digital Millennium Copyright Act, and the Electronic
and Communications Privacy Act.

19.    Alternatively, this Court also has subject matter jurisdiction pursuant to 28 U.S.C.
§ 1332(a).  Diversity exists among the parties and the amount in controversy exceeds $75,000.

20.    This Court has supplemental jurisdiction over state law claims under 28 U.S.C. §
1367(a) because they arise from the same facts and concern the same subject matter as the federal
claims.

21.    Venue is proper in this Court under 28 U.S.C. §1391(b)(1)-(2) because a substantial
portion of the wrongdoings alleged occurred in this District and because Vyne conducts significant
business in this District.  For instance, on information and belief, Vyne's CEO, Mr. Stephen
Roberts, President Mr. James Grover, and Chief Technology Officer Mr. Jimmy Nix, each used to
work for HSOne and had access to many sensitive HSOne systems and information.  On
information and belief, multiple of Vyne's senior personnel relevant to this case are in Utah.

## FACTUAL BACKGROUND

### A.    HSOne Is A Leading Dental Software Innovator

22.    HSOne's dental software platforms simplify workflows, enhance patient care, and streamline practices for over a hundred thousand dentists.  HSOne's mission is to accelerate the future of dental care through its pioneering Dentrix practice management systems.

23.    Because Dentrix is a hub for HSOne's customers' dental practices, many third-party vendors seek to integrate and interoperate with it.  Though it has no obligation to do so, HSOne enables this interoperation through its API Exchange.

24.    HSOne invests significant resources in making its API reliable and secure for the benefit of its integration partners and customers.  It implements robust access controls, encryption, system monitoring, and a variety of other technical measures to safeguard its customers' sensitive business and patient health data.

25.    At least 140 third-party vendors make use of HSOne's API Exchange to offer solutions to HSOne's customers in over 40 categories.   These categories include patient engagement, revenue cycle management, analytics, and imaging, among others.  The API contains over 750 data endpoints enabling developers to build a plethora of applications that work with Dentrix.

26.    HSOne welcomes any vendor to participate in the program, and vendors join voluntarily.  All participants in the API Exchange must agree to HSOne's Terms of Use, which is standard and common for any enterprise API solution in the industry.  HSOne reviews the security of its vendors, offers best practices, and maintains a commitment to support the reliability of its API and underlying Dentrix software platform.

27.    HSOne's innovation shines in a highly competitive field.  HSOne's commitment to innovation and supporting dentists over decades has gained it the trust of thousands of dental practices.  These practices rely on Dentrix to operate their businesses every single day, enabling them to focus on delivering excellent patient care.

**B.    VYNE IS A BILLING SOLUTION INTENT ON BYPASSING HSONE'S SECURE API**

28.    Vyne is a company that provides a point solution for dental practices to manage their billing.  To facilitate its operations, Vyne seeks to integrate with practice management platforms like Dentrix.  What Vyne seeks most of all is to have unfettered access to insurance claims data in Dentrix.

29.    Dentrix does not provide endpoints for claims, as those are unique data fields whose automated import and export would risk data integrity compromises.  For claims, Dentrix has backend integrations, integrations that it has offered to implement with Vyne.  Vyne, however, has decided to hack HSOne's software systems—apparently for no other reason but to make more money, despite the negative effects on HSOne's systems and customers.  Vyne's haphazard approach creates multiple conflicting sources of truth inside a dental practice's systems, eroding reliability of the data.  HSOne has no duty to automate a workflow that would compromise data integrity, security, and reliability.

30.    Customers wanting to use Vyne still have a path forward, which consists of manually submitting information and working with claims clearinghouses to support back-end integration.  This approach has been adopted by others.

31.    Rather than accept the secure integration model HSOne offers to other clearinghouses—or use the API features Vyne can use—Vyne refused HSOne's API terms and sought to exploit HSOne's software for purposes of direct, read-write access at scale to HSOne-managed software on customer systems.  Vyne has devoted its resources to circumventing HSOne's technical measures that block unauthorized access and to exfiltrate HSOne customer data *en masse*.

32.    Vyne does not stop at exfiltration.  It also hacks HSOne's Dentrix software platform and systems so that it can inject and write data back into HSOne's software platform as well.

33.    All the while, Vyne misleads and spreads false statements to HSOne's customers about its conduct.  Vyne takes great care to obfuscate what it is really doing and purports to act

with authorization, even though Vyne has not disclosed its hacking methods to its customers and HSOne has made clear to Vyne that its conduct is unauthorized and must cease.

34.     HSOne has recently implemented telemetry to track malicious hacking of its software platform and increase Dentrix's security monitoring capabilities.  This, along with HSOne's other diligent investigation methods, has uncovered the following array of deliberate circumvention methods:

(A) <u>Credential misappropriation and binary masquerading</u>:  Vyne misappropriates Dentrix configuration files (e.g., *FairCom C-Tree* settings) containing encrypted administrator credentials.  Vyne also exploits HSOne's source code to retrieve private decryption keys to decrypt those files.  Further, Vyne hijacks application binaries to make its own application appear legitimate to HSOne's Dentrix software platform.

(B) <u>Administrator privilege escalation</u>:  By decrypting files such as the *dtx.config* file, Vyne is able to recover a passphrase and generate an administrator password.  This allows Vyne to escalate its privileges and function as an administrator of the HSOne software platform on the customer premises, even though Vyne is not authorized to be a Dentrix administrator.

(C) <u>Patch tampering</u>:  Vyne interferes and circumvents HSOne's security measures designed to stop hacks like the ones it is conducting.  Vyne does so through runtime patching of security flags in HSOne's DtxHelp.dll file as well as disk-level patching of the same DLL and redistribution.  This interferes with HSOne's security patches and fixes that it would otherwise regularly send to its customers as needed.

(D) <u>Component impersonation</u>:  Vyne rebuilds Dentrix help components with embedded secrets to survive HSOne updates or patches and develops malicious software that mimics Dentrix to interface with its databases and services.

(E) <u>Code injection for mass data export</u>:  Vyne modifies code at the print driver level to export sensitive data from HSOne's software systems in circumvention of the HSOne API.  Vyne also injects malicious code into Dentrix to write data into files and the

database without authorization.  In other words, Vyne both reads and writes data without authorization.

35.    Vyne's methods reveal a persistent multipronged campaign of intentional access without authorization and circumvention of HSOne's technical security measures.

36.    Vyne's pervasive and sophisticated methods reflect its commitment to hack by any means necessary.  It also reflects, on information and belief, the fact that multiple of Vyne's employees, including its Chief Executive Officer, used to work at HSOne.  These former HSOne employees have significant insider knowledge of HSOne's product and technical systems.

**C.    VYNE HAS ESCALATED ITS HACKING IN RECENT WEEKS THROUGH NEW EXPLOITS IN RESPONSE TO HSONE'S ATTEMPTS TO SECURE ITS SYSTEMS**

37.    Despite HSOne's direct statements telling Vyne to stop hacking and its technical measures designed to stop Vyne's unlawful conduct, Vyne persists.  Indeed, in recent weeks, Vyne has escalated its conduct and deployed new malicious hacking methods.

38.    Earlier this year, HSOne began receiving an unusual volume of customer complaints concerning Dentrix system instability, failed claim submissions, and unexplained disruptions to eligibility and payment workflows.  These complaints were at first sporadic but grew in frequency and consistency, causing HSOne to begin to investigate.

39.    To better understand the situation, HSOne developed and deployed internal telemetry capabilities to monitor its software systems and endpoints across its customer deployments.  This telemetry allowed HSOne to track configuration anomalies, unauthorized traffic redirection, and patterns of failed authentication across its customer base.

40.    In recent weeks, the telemetry data proved HSOne's suspicions correct.  According to HSOne's monitoring, Vyne has been releasing rapid successions of software updates—at least a dozen distinct versions—aimed at hacking Dentrix.  Many of Vyne's updates appear to have failed, on information and belief, because they did not properly consider HSOne's software parameters.  Vyne continued to spam new updates to circumvent HSOne's security measures.

Customers who installed these updates often experienced system degradation, failed integrations, and increased support needs.

41.    Through its telemetry and customer logs, HSOne uncovered, on or around September 10, 2025, that Vyne was intercepting Internet traffic from HSOne's customers that was meant to go to HSOne and redirecting those transmissions to a Vyne endpoint. Vyne did this by exploiting a debugging function in Dentrix and modifying what is called the eTrans file.

42.    Vyne's scheme involves first reverse-engineering HSOne's configuration files and decrypting them by misappropriating private decryption keys HSOne provides to its customers. Vyne then injects data into the configuration files, including programmatically intercepting Internet traffic and redirecting it to its vtrans.vynetrellis.com servers. The end result is the rerouting of patient claim data to Vyne controlled servers. A screenshot showing the results of Vyne's latest hack appears below:



43.    By impersonating an administrative user using its improperly gained escalated privileges, Vyne overwrites the Dentrix software systems settings to intercept traffic. Vyne's

exploit causes Dentrix to treat Vyne as the authorized recipient of claim submissions and other data transactions.  In the cybersecurity realm, this can be described as a man-in-the-middle attack.  Man-in-the-middle attacks enable hackers to intercept communications, like Vyne is doing, and redirect them to their own systems.

44.     In a typical, authorized workflow, Dentrix's eTrans system uses a secure configuration file to determine where to send claim data and how to authenticate the transmission.  This file contains the eTrans User ID and the gateway URL—both of which are essential for routing data to HSOne's secure servers and for verifying the legitimacy of the transaction.  When properly configured, the system ensures that claims, eligibility checks, and payment records are transmitted securely to HSOne, processed, and returned to the dental practice.

45.     Vyne's hijack subverted this workflow.  By exploiting a debug function in Dentrix to inject a malicious configuration, Vyne causes the Dentrix software to send data not to HSOne's secure gateway, but to a Vyne-controlled server.  In effect, Vyne inserts itself as the first recipient on all outbound data.  Vyne's server receives the data, processes it, and then passes it further along.  This redirection is not authorized by HSOne.  Further, on information and belief, Vyne misleads HSOne's customers about what it is doing and intentionally misconstrues its conduct as authorized and benign.  It is not.

46.     Vyne's modifications break the authentication flow for multiple HSOne services that rely on the same DataServices ID with which Vyne interferes, including HSOne's Eligibility Essentials, Quickbill Premium, and Request to Pay services.  The result is that HSOne customers experience failed claims, undelivered payment records, and system instability.

47.     Vyne's interference also obstructs HSOne's ability to deploy security patches.  HSOne's patching workflow relies on the same authenticated DataServices connections with which Vyne interferes.  This means that Vyne's malicious interception and substitution severs HSOne's essential connection to its own platform installed in customer environments.

48.     Even if HSOne were to repair the configuration setting, Vyne's software has functions to restore the malicious proxy-in-the-middle without user interaction, thus reverting

HSOne's updates and perpetuating the unauthorized data interception and computer access. In sum, Vyne has embedded itself so deep into HSOne's software that it can now override security measures, impersonate HSOne systems, and intercept protected communications on HSOne's Dentrix systems installed at customer premises.

49.     Vyne's conduct is creating significant disruption across HSOne's customer base. It is causing HSOne to have to respond to a plethora of customers experiencing interruptions, failures, and system instability, all because of Vyne's hacks.

50.     Vyne's conduct is egregious for a variety of reasons:

(A) First, it undermines the integrity of HSOne's authentication and security architecture.

(B) Second, it exposes sensitive patient and financial data and creates a vulnerability for access by unauthorized third parties.

(C) Third, it allows Vyne to manipulate or delay the flow of information, potentially corrupting records or interfering with time-sensitive transactions.

(D) Fourth, it deprives HSOne of the ability to monitor, audit, or secure the data flow—effectively stripping HSOne of control over its own system.

51.     Vyne's actions are not merely unauthorized; they are corrosive to the trust, security, and operability of HSOne's software. Consequently, Vyne's conduct—including this most recent escalation in the last few weeks—has caused, and will continue to cause, irreparable harm to HSOne.

**D.    VYNE COUPLES ITS HACKING WITH A CAMPAIGN OF INTENTIONAL FALSE STATEMENTS**

52.     In parallel with its technical intrusions, Vyne is making false statements to HSOne's customers about its conduct and HSOne's software systems. Vyne has intentionally not disclosed the nature of its hacking while publicly stating that its interactions with HSOne's software are authorized and benign. Vyne's false statements have caused some HSOne customers to reach out to HSOne based on their false impression and interfered with HSOne's relationships and contracts with those customers. Vyne's messaging campaign includes mass email blasts, public statements

by its CEO, and other communications designed to obscure Vyne's unauthorized misconduct and shift blame to HSOne for working to secure its own software.

53.    For example, on or around August 11, 2025, Vyne issued communications to HSOne customers containing misleading statements about HSOne's practices and security measures.  Vyne claimed that its hack was an "integration method" and disparaged HSOne's Dentrix Developer Program as prohibiting "all alternative integration methods."[2]    These statements are false and misleading.  HSOne's Developer Program does in fact support secure, API-based integration for authorized vendors and HSOne supports direct integrations as well for claims clearinghouses.  Vyne knows this.

54.    In response to HSOne's attempts to secure and patch its systems, Vyne attempted to characterize to customers that HSOne was somehow targeting Vyne.  This is false and Vyne has no basis to state such a falsehood.  Vyne is intentionally omitting that its methods include unauthorized access, unlawful reverse engineering, and configuration tampering—none of which are sanctioned by HSOne or compliant with HSOne's security protocols.

55.    Vyne further claimed that HSOne's security measures "raise concerns about reduced provider choice and increased vendor lock-in."[3]



**Vyne Dental**
**RE: Recent Henry Schein One Communications and Dentrix Compatibility**
Date: August 11, 2025

We want to provide clarity around recent communications you may have received from Henry Schein One (HS One) concerning the compatibility of Vyne Dental's solutions with Dentrix.

**What's Happening**

We have heard from shared customers that HS One is communicating, as early as August 26, 2025, a Dentrix update may disable your ability to send claims through Vyne Dental. HS One intends to block any connection made to Dentrix outside of their Dentrix Developer Program.

Vyne Dental currently enables thousands of practices to send claims via a print-based integration method comparable to e-fax transmission or PDF-creation tools. Since March 2025, Vyne Dental has actively engaged with HS One to join the Dentrix Developer Program. However, the program still does not facilitate claims submission, and it prohibits all alternative integration methods upon entering the program (including our existing print-based solution).

---

[2] Ex. 2 (Vyne communications to customers).
[3] Ex. 2 at 1. (cropped image).

56.     This is false too.  HSOne's API Exchange supports over 140 third-party vendors. Vyne's portrayal of HSOne conduct as exclusionary not only ignores the fact that Vyne has refused to comply with standard integration protocols and has been relying on unauthorized, unsecured workarounds, but it is also false.  Further, HSOne is under no obligation to provide unfettered hacking access to Vyne and allow it to pilfer HSOne's systems while increasing security and privacy risk to HSOne and its customers.

57.     Then on August 21, 2025, Vyne delivered a letter to HSOne purporting to represent over 500 dental practices that, according to Vyne, requested access to Dentrix data.[4]  Vyne demanded access to patient records, billing data, and scheduling information, claiming that "any failure to [grant access] will directly impair the customer's ability to rely on Vyne Dental's services… potentially disrupting patient care."[5]  This statement falsely implies that HSOne is obstructing patient care, when in fact HSOne is enforcing standard security protocols to protect sensitive data.  Vyne did not provide any detail about what it actually told or did not tell HSOne's customers.

58.     Vyne's CEO, Mr. Stephen Roberts, has also made false public statements about HSOne in an interview earlier this year.  He boasted about Vyne's ability to bypass HSOne's controls, without revealing the full extent of Vyne's hacking.[6]

---

[4] Ex. 3 (Aug. 21, 2025 Vyne letter to HSOne, "*Customer Access Request to Customer Data within Dentrix*").
[5] *Id.* at 1.
[6] EP 152 Future of Interoperability of Dental Information with Stephen Roberts, CEO of VYNE, YouTube (Jun 26, 2025), https://www.youtube.com/watch?v=iQbvfDn5M94&t=112s.

59.    In his interview, Vyne's CEO bragged about Vyne's ability to circumvent HSOne's technical security measures.  He stated, among other things, that "the only way to really prevent Vyne from interfacing with... the [Henry] Schein practice management message would be to intentionally stop it from happening."[7]



60.    Vyne's CEO further boasted about its circumvention of HSOne's API through the following statements:

- "Sometimes it's direct connections to the database. Sometimes it's through the user interface. Sometimes it's through application extensions."[8]

- "We have the ability to take a claim through print capture."[9]

- "We take a print stream and we take a printed ADA claim form."[10]

- "We have the ability to take a claim through, you know, secure file transfer to pick up claims from watch folders, to extract claims out of practice management databases."[11]

---

[7] *Id.* (Transcript captured by YouTube) (Timestamp 30:59-31:12).
[8] *Id.* (Timestamp 28:27-28:34).
[9] *Id*. (Timestamp 30:38-30:41).
[10] *Id*. (Timestamp 31:06-31:12).
[11] *Id*. (Timestamp 30:42-30:51).

- "We extract—we're very good at extracting unstructured data, converting it into structured data, securing it, and transmitting it."[12]

61. Vyne's campaign constitutes false advertising, business libel, and deceptive trade practices under federal and state law. It is designed to interfere with HSOne's customer relationships, mislead the market, and shield Vyne's unlawful conduct from scrutiny.

62. As a result of Vyne's false statements, HSOne has received many inquiries and complaints from concerned customers. Vyne's false statements and omissions cause HSOne reputational harm and has forced HSOne to divert significant resources to clarify misinformation and restore trust.

E. **VYNE'S CONDUCT HAS ALREADY COST HSONE SIGNIFICANT DAMAGES AND WILL CAUSE IRREPARABLE HARM IF NOT ENJOINED**

63. HSOne has done everything it possibly can to avoid escalating this dispute to court. HSOne has invited Vyne into its API program. HSOne has offered to customize its API Terms for Vyne. HSOne has even offered to work with Vyne to accomplish a direct integration workflow to accommodate Vyne, similar to what HSOne has implemented with other claims clearinghouses.

64. Importantly, HSOne has repeatedly explained to Vyne that its hacks and circumventions risk system integrity, patient data privacy, and security of HSOne's platform and its customer data.

65. To avoid escalating this matter, HSOne has for the last several weeks attempted to engage with Vyne in good faith to negotiate a commercial agreement whereby Vyne would have the advantage of an integration with HSOne similar to how HSOne integrates with certain clearinghouses. Vyne initially represented to HSOne that it wished to engage in good faith, inducing HSOne to provide it with commercial terms. HSOne did so, even though during the course of the business discussions of the past several weeks, HSOne continued to discover new hacks and new deployments of technical circumventions by Vyne. And all the while, Vyne continued spreading false statements and smears about HSOne to its customers. Even so, HSOne

---

[12] *Id.* (Timestamp: 30:59 – 31:12).

took every possible effort to come to a commercial arrangement, despite Vyne essentially holding HSOne hostage through its hacking and public smear campaign.

66.     Because Vyne has not only failed to stop its conduct in the face of these attempts at resolution, but has escalated them, HSOne has no choice but to seek the Court's intervention to stop Vyne's hacking.  In the days preceding this filing, Vyne has continued to roll out new upgrades and implement new and more advanced technical circumventions of HSOne's security controls.  For instance, just in the last week, HSOne has uncovered evidence that Vyne has issued new updates which, on information and belief, contain additional exploits.  HSOne has also uncovered evidence that Vyne is misappropriating HSOne software credentials and placing them into configuration files without authorization.

67.     Vyne's acts undermine the fundamental security architecture of HSOne's software solutions and inflicts significant reputational and business harm to HSOne.  HSOne's customers are frustrated because their systems are not working properly, and are misled by Vyne to direct that frustration at HSOne.  This has and will continue to cause HSOne lost business opportunities and direct costs supporting and responding to customer issues caused by Vyne.

68.     Worse, Vyne is interfering with HSOne's ability to update its own systems and roll out new security controls.  Due to the nature of Vyne's hacks, it can revert some of HSOne's security upgrades and cause them to fail as well.  No amount of money can repair the damage this causes HSOne.

69.     Unless enjoined by this Court, Vyne will continue to deploy unauthorized workarounds with impunity.

## FIRST CAUSE OF ACTION

### Violation of 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), AND 1030(a)(5)(C)

### Computer Fraud and Abuse Act (CFAA), § 1030 et seq.

70.     Plaintiff incorporates by reference all preceding paragraphs.

71.     Vyne violated 18 U.S.C. § 1030(a)(2)(C) by intentionally accessing HSOne's software on protected computers without authorization or exceeding authorized access to obtain

information from the protected computers, having caused damage and loss to HSOne, which includes costs associated with HSOne's investigation, remediation, and interruption of services.

72.    Vyne violated 18 U.S.C. § 1030(a)(4) by knowingly and with intent to defraud, accessing HSOne's software on protected computers without authorization, or exceeding authorized access, whereby by such conduct Vyne was able to further its fraud on HSOne and obtain valuable information in excess of $5,000 in any 1-year period.

73.    Vyne violated 18 U.S.C. § 1030(a)(5)(C) by intentionally accessing software on protected computers and as result of such conduct caused damage and loss to HSOne, as defined by the CFAA.

74.    The computers, servers, endpoints, and software infrastructure that Vyne hacks are "protected computers" as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate or foreign commerce or communications.

75.    Vyne, without authorization or by exceeding any authorization, accessed HSOne's software on protected computers by, among other things, bypassing technical controls and harvesting credentials and secrets embedded in HSOne files and code, with intent to defraud and to obtain information.

76.    Vyne's methods have included at least: (*a*) runtime patching of security flags in DtxHelp.dll; (*b*) disk-level patching of DtxHelp.dll and potential redistribution; (*c*) decrypting dtx.config to recover a passphrase and generate an administrator password; (*d*) extracting ODBC connection strings from process memory; (*e*) rebuilding Dentrix help components with embedded secrets to survive HSOne updates (i.e. patches); (*f*) retrieving configuration files (including FairCom C-Tree settings) containing encrypted administrator credentials and retrieving private keys from HSOne source code to decrypt those files; (*g*) inserting code at the driver level (print driver/print stream) to export data; (*h*) developing components that mimic Dentrix to interface with HSOne databases and services; and (*i*) hijacking application workflows to sign into Vyne's services. Vyne's methods thus include credential extraction, manipulation of the source code,

configuration file decryption, printer driver injection, and mimicry of HSOne's database and services.

77.    By accessing HSOne's software systems without authorization or in excess of authorization, Vyne obtained information from a protected computer in violation of § 1030(a)(2)(C), and on information and belief, Vyne acted knowingly and with intent to defraud to obtain valuable information such as administrator credentials, connection secrets, system access, in violation of § 1030(a)(4).

78.    In an interview published on June 26, 2025, on YouTube, Vyne's CEO, Mr. Stephen Roberts, admitted that Vyne deliberately and systematically seeks ways to circumvent HSOne's security measures.  In the same interview, Vyne's CEO admitted that Vyne employes a multitude of ways to circumvent HSOne's security measures.

79.    HSOne suffered "loss" and "damage" as defined in § 1030(e)(11) and § 1030(e)(8), including costs to investigate, contain, and remediate. Costs were also incurred to restore systems, develop and launch patches, and address business interruptions and communications with customers and vendors. HSOne's aggregate loss exceeds $5,000 during a one-year period and supports civil relief under § 1030(g).

80.    Under 18 U.S.C. § 1030(g), HSOne is entitled to compensatory damages, injunctive relief, and equitable relief.

<u>**SECOND CAUSE OF ACTION**</u>

**Violation of 17 U.S.C. §§ 1201(a)(1), 1201(a)(2), and 1201b(1)**

**Digital Millenium Copyright Act (DMCA Anti-Circumvention)**

81.    HSOne incorporates by reference all preceding paragraphs.

82.    HSOne's software employs technological measures to control access to copyrighted works—e.g. software source code and or protected interfaces. Vyne circumvented these technological measures and/or trafficked in circumvention technology, including password-decryption/obfuscation techniques, in violation of 17 U.S.C. § 1201.

83.    HSOne owns the copyright to its software and related components, including Dentrix, DtxHelp.dll, compiled object code, configuration files (including dtx.config and FairCom C-Tree), admin certificates, and associated documentation.

84.    HSOne employs effective technological measures to control access to its protected copyrighted works, including encryption (e.g., FairCom C-Tree settings), passwords or passphrases, code-signing and application workflows, runtime security flags, driver-level protections, and credential and connection string-controls.

85.    HSOne's has put technological measures in place to control access to its copyright material. Vyne circumvented HSOne's technological measures to access HSOne's protected copyrighted work, in violation of Section 1201(a)(1), by:

(A) Decrypting dtx.config to recover a passphrase and generate an administrator password;

(B) Retrieving and decrypting configuration files (including FairCom C-Tree settings) using private keys taken from HSOne's source code;

(C) Rebuilding Dentrix help components with embedded secrets to survive HSOne updates;

(D) Hijacking application workflows and run Vyne's services as if authorized;

(E) Patching security flags in DtxHelp.dll at runtime;

86.    Beyond the already-described circumventions, Vyne further violated the DMCA every time it bypassed encryption or authentication measures put in place by HSOne to protect its copyrighted work. By defeating code-signing and update integrity checks, Vyne circumvented measures to protect HSOne's exclusive rights in its copyright works.

87.    Vyne's acts lack HSOne's authority.

88.    Upon information and belief, Vyne manufactured, provided, and/or trafficked in technologies and services primarily designed for circumvention with knowledge of their use in circumvention.

89.     HSOne has suffered, and continues to suffer irreparable harm and economic damages, including forensics investigation, remediation, and operational disruption, as well as frustration of HSOne's ability to issue proper updates to secure its software and protect its customers.

90.     Under 17 U.S.C. § 1203, HSOne seeks injunctive relief (including impoundment and destruction of circumvention tools and signed components), actual or statutory damages, costs, attorneys' fees, and any further relief the Court deems just.

### THIRD CAUSE OF ACTION

### Utah Code Ann. § 13-5a-103 et seq.

### Utah Unfair Competition Act (UUCA) and Common Law Unfair Competition

91.     HSOne incorporates by reference all preceding paragraphs.

92.     The Utah Unfair Competition Act prohibits any intentional business act or practice that is unlawful, unfair, or fraudulent, that leads to a material diminution in the value of intellectual property, and that constitutes an enumerated category, including malicious cyber activity or a software license violation. Utah Code Ann. § 13-5a-102(4).

93.     HSOne owns valuable intellectual property, including its Dentrix software, related components, configuration files, encryption keys, and code-signing certificates.

94.     Vyne engaged in intentional, unlawful acts by violating multiple federal statutes and hacking HSOne's software.  Vyne's conduct also causes a diminution in the value of HSOne's intellectual property.

95.     Vyne's unlawful, unfair, and fraudulent conduct includes at least the following:

 (A) Malicious hacking by accessing HSOne's systems without authorization and transmitting code to alter or disable security controls;

 (B) Software license violations including reverse engineering HSOne's code, modifying HSOne's software components (e.g., patched DLLs), and redistributing altered versions to maintain unauthorized integrations;

(C) Other unlawful acts such as decrypting configuration files, hijacking application workflows, and rebuilding components to bypass update integrity checks.

96.    Vyne acted knowingly and systematically, as confirmed by its CEO's public statements, to circumvent HSOne's security and exploit its intellectual property for competitive advantage.

97.    Upon information and belief, Vyne further willfully communicated, delivered, or caused the transmission of a program, information code, or command without HSOne's authorization or exceeding authorized access

98.    Vyne acted intentionally to defraud HSOne, in circumvention of HSOne's technological measures and software licenses.

99.    HSOne suffers material diminution in the value of its intellectual property, along with economic harm, including forensic investigation, remediation, and business disruption based on Vyne's conduct.  Vyne's conduct also erodes HSOne's customer trust and goodwill.

100.    HSOne is entitled to: (a) actual damages; (b) costs and reasonable attorney's fees; and (c) punitive damages if the court determines it appropriate.

101.    HSOne seeks judgment against Vyne for damages, punitive damages, injunctive relief barring further unfair competition, and all other relief the Court deems just.

## FOURTH CAUSE OF ACTION

### Tortious Interference with Contract and Prospective Economic Relations

### (Utah Common Law)

102.    HSOne incorporates by reference all preceding paragraphs.

103.    HSOne has valid and enforceable contracts with its customers and maintains ongoing negotiations and prospective relationships with others for the use of its software ecosystem, which includes the Dentrix platform and related services.

104.    Vyne knew of these existing contracts and prospective economic relationships.  In its own communications, Vyne asserted that HSOne's planned security measures (i.e. patch) would affect "20% of [HSOne's] customers."  Vyne also sent HSOne a document titled "Customer Data

23

Access Request," purporting to act an agent for over 500 HSOne customers. Upon information and belief, Vyne tortiously interfered with these specific contracts by making material false statements and omissions about its conduct and HSOne to HSOne's customers.

105.    Vyne intentionally interfered with HSOne's contracts by improper means, including: circumventing HSOne's security controls to gain unauthorized access to its software systems and data; decrypting configuration files and extracting credentials to impersonate HSOne components; hijacking application workflows to make Vyne's services appear authorized; injecting altered credential and endpoints into Dentrix eClaims/eTrans to disable HSOne authentication capabilities and cripple HSOne's ability to issue effective patches; developing and deploying Dentrix-mimicking components to divert customers and maintain unlawful integration.

106.    Vyne's interference was accomplished by improper means—conduct that is deceptive, unlawful, and contrary to established trade standards—including violations of the CFAA, DMCA, Utah's Unfair Competition Act, as well as software-license breaches and configuration tampering. Vyne's anti-security practices were also deceptive and contrary to industry standards designed to preserve and protect health data.

107.    Vyne's acts caused HSOne to suffer economic harm, including lost business opportunities, loss of goodwill, and substantial costs for investigation and remediation.

108.    HSOne seeks compensatory and punitive damages, attorney's fees, and injunctive relief prohibiting Vyne from further tortious interference.

## FIFTH CAUSE OF ACTION

### Trespass to Chattels

### (Utah Common Law)

109.    Vyne incorporates by reference all preceding paragraphs.

110.    Vyne intentionally interfered with HSOne's computer systems by misappropriating credentials and private decryption keys, patching binaries, running altered code, and modifying production configurations (including eTrans/DataServices parameters).

111.    Vyne's acts impaired HSOne's systems by blocking authentication and interrupting security eligibility checks. Vyne's acts impaired HSOne's computer system's values and use, including interference with patch deployment and system resources.

112.    As a result of the trespass, HSOne has been harmed, having had to expend resources in investigating and restoring its affected systems. Customer experience and goodwill have also been eroded.

113.    Vyne's conduct has damaged HSOne in an amount to be proven and merits damages and injunctive relief.

**SIXTH CAUSE OF ACTION**

**Unjust Enrichment**

**(Utah Common Law)**

114.    HSOne incorporates by reference all preceding paragraphs.

115.    By evading HSOne's security controls and altering configurations, Vyne unlawfully obtained benefits—data access, mass exfiltration, and code injection capabilities which were not authorized.  This has enriched Vyne in an amount to be proven, but at least $1 million, on information and belief, because Vyne is bypassing HSOne's API for these purposes.

116.    Vyne knows it is receiving these ill-gotten benefits from its backdoor methods, which are unauthorized.

117.    Vyne's continued possession of the benefits it has received by hacking HSOne is unjust.

118.    HSOne seeks restitution and disgorgement measured by Vyne's gains as well as HSOne's losses.

**SEVENTH CAUSE OF ACTION**

**Utah Code Ann. § 13-11a-1 et seq.**

**(Utah Truth in Advertising; Deceptive Trade Practices Act)**

119.    HSOne incorporates by reference the preceding paragraphs.

120.    Vyne's customer-facing statements disparaged HSOne by false or misleading representations of fact and caused confusion about sponsorship/approval and legality of Vyne's malicious data extraction and injection, violating Utah Code Ann § 13-11a-3.

121.    Vyne made false or misleading statements of fact to HSOne's customers with respect to HSOne's security measures and Vyne's own methods, while concealing Vyne's backdoor access, patching, and configuration tampering.  Vyne's statements confused customers about sponsorship and approval.

122.    Vyne disseminated its statements through mass email campaigns, public interviews, and direct communications with HSOne's current and prospective customers.  Vyne did so to mislead the market about HSOne's platform security and business conduct.

123.    Vyne's false or misleading statements include statements made by Mr. Stephen Roberts during his June 26, 2025 interview, available on YouTube, as well as Vyne's statements made to its customers on or around August 11, 2025, as described in this Complaint.

124.    Vyne's conduct cost HSOne both goodwill and business in an amount to be proven at trial, while also forcing it to incur expenses in responding to and remediating the harm.

125.    HSOne seeks injunctive relief, damages, and attorneys' fees under § 13-11a-4.


## EIGHTH CAUSE OF ACTION

### Violations of 15 U.S.C. § 1125(a)(1)(B) (Lanham Act)

126.    HSOne incorporates by reference the preceding paragraphs.

127.    Vyne disseminated and published statements to mutual customers (HSOne's and Vyne's), as well as to the market at large (e.g., through CEO interview) about HSOne and Vyne's services.  Vyne made these statements in interstate commerce and in this District.

128.    Vyne disseminated its statements through mass email campaigns, public interviews, and direct communications with HSOne's current and prospective customers.  Vyne did so to mislead the market about HSOne's platform security and business conduct.

26

129.    Vyne spread falsehoods about HSOne and intentionally made false statements and omissions about Vyne's conduct to HSOne customers, claiming Vyne was not engaging in hacking or violations of the law, and that HSOne's security measures and requirements instead were pretextual.  Vyne omitted its hacking conduct, which includes DLL file patching, decryption, service mimicry to gain unauthorized access, and configuration tampering, and other acts.

130.    These statements and omissions were made in commerce and targeted the same customer population HSOne serves.  Vyne's false and misleading statements and omissions violate the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a).

131.    Vyne's false advertising statements actually deceived, or have a tendency to deceive, HSOne customers.  Vyne's false statements and omissions influenced customer decisions, created confusion about HSOne's platform, caused loss of customer goodwill, and diverted business from HSOne.  Vyne's statements were not only misleading but were made with the intent to erode trust in HSOne's platform and to promote Vyne's unauthorized and insecure integration methods.

132.    HSOne suffered competitive and reputational harm and diverted resources to mitigate and correct the record, for which there is no adequate remedy at law.  HSOne seeks damages, disgorgement, attorney's fees, and injunctive relief pursuant to 15 U.S.C. §§ 1116 and 15 U.S.C. § 1117.  HSOne will prove the full extent of monetary damages it has suffered by reason of Vyne's acts through this action.

133.    On information and belief, Vyne's actions are willful and done with the intention of causing confusion, mistake, or deception.  This is accordingly an exceptional case entitling HSOne to recover the costs of this action, including its reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

## NINTH CAUSE OF ACTION

### Business libel / Common-law defamation

134.    HSOne incorporates by reference all preceding paragraphs.

135.    Vyne published false statements about HSOne's conduct and security protocols to HSOne's current and prospective customers, including by omitting the details of Vyne's hacking conduct.

136.    Vyne's statements were made with actual malice and reckless disregard for the truth.  Vyne knows its statements are false, yet continues to disseminate them to HSOne's customers, prospective customers, industry observers, and the general public.

137.    Vyne's conduct of continuing to escalate its hacks while making statements aimed to misrepresent the situation shows that Vyne's statements are not only negligent, but are made with malice through knowledge of falsehood or in reckless disregard to their truth or falsity.

138.    Vyne's false statements were designed to damage HSOne's reputation, interfere with customer relationships, and divert business opportunities causing HSOne pecuniary loss. These statements have caused HSOne reputational harm and forced it to divert resources to correct misinformation.

139.    Vyne's statements were false, and HSOne suffered special damages, including lost business and reputational harm.  HSOne seeks damages and injunctive relief.

## TENTH CAUSE OF ACTION

### Violations of 18 U.S.C. § 2511

### Electronic Communication Privacy Act (ECPA)

140.    HSOne incorporates by reference all preceding paragraphs by reference.

141.    Vyne's conduct constitutes a violation of ECPA, because it intercepted electronic communications intended for HSOne's services by injecting its own domain into the transmission of Dentrix's eClaims/eTrans configuration using invalid, unauthorized eTrans IDs, among other things.  Vyne's interception of contents of electronic communications were contemporaneous.

142.    On information and belief, Vyne intentionally altered software and network configurations designed to capture electronic communications.

143.    The contents of the intercepted communications include claim eligibility transactions, statements, and payment records.

144.    HSOne did not consent to Vyne's interception and redirection of electronic traffic.

145.    Vyne's conduct has and continues to cause HSOne damages and merits statutory damages, actual damages, and equitable relief under the ECPA.

## ELEVENTH CAUSE OF ACTION

### Utah Code Ann. §§ 77-23a-4 and 77-23a-11

### (Utah Interception of Communications Act)

146.    HSOne incorporates by reference all preceding paragraphs by reference.

147.    For the same reasons pleaded under the ECPA, Vyne's rerouting and capture of electronic communications (i.e., redirection of electronic traffic) constitutes an interception under Utah law.

148.    The contents of the intercepted communications include claim eligibility transactions, statements, and payment records.

149.    Vyne intentionally or knowingly intercepted or procured another to intercept or endeavor to intercept  any electronic communications, in violation of the Utah Interception of Communications Act.

150.    Vyne did so without HSOne's consent and outside any statutory exception.

151.    HSOne seeks all civil remedies provided by Utah law (§ 77-23a-11), including damages, punitive damages, attorneys' fees, and injunctive relief.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

A.    Damages in an amount to be proven at trial;

B.    Restitution and disgorgement of all money, profits, compensation, or property that Vyne acquired by any wrongful or unlawful means alleged herein and the imposition of a constructive trust on all such money, profits, compensation, and/or property;

C.      Exemplary and punitive damages, in an amount to be determined at trial, as appropriate to punish Vyne and deter such conduct in the future;

D.      Equitable or injunctive relief as permitted by law, including:

(1) that Vyne cease to engage in non-approved workarounds of HSOne's platforms, and

(2) that Vyne cease to circumvent, or aid or assist anyone in circumventing, Henry Schein One's security patches;

(3) that Vyne not subvert HSOne's security patches and implementations;

(4) that Vyne cease making false and misleading statements that cause HSOne's customers to implement Vyne's malicious hacks;

(5) that Vyne cooperate with HSOne in implementing its security updates and fixing Vyne's malicious hacks; and

(6) that Vyne cooperate and not unduly burden customers with respect to HSOne's efforts to help customers to transfer to approved channels.

E.      Pre- and post-judgment interest, at the maximum legal rate;

F.      Attorneys' fees, as appropriate and authorized; and

G.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby asserts its right to a trial by jury on all counts so triable.

**RESPECTFULLY SUBMITTED.**

DATED: October 3, 2025                    GREENBERG TRAURIG, LLP


By /s/ *Michael Burshteyn*
    Michael Burshteyn

Michael Burshteyn (*pro have vice pending*)
Marcelo Barros (*pro hac vice pending*)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Garrett Messerly
GREENBERG TRAURIG, LLP
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: 801.478.6900
Facsimile: 801.994.9041
Garrett.Messerly@gtlaw.com

Sydney Parks (*pro hac vice pending*)
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
Facsimile: 212.801.6400
Sydney.Parks@gtlaw.com

*Attorneys for Plaintiff, Henry Schein One, LLC*

# EXHIBIT 1

 
       
  

# Vyne vs Schein: Security or Corporate Greed

## Schein vs Vyne: The Fight Over Backdoor Hacks Into Your Data

**Bob "Dee" Dokhanchi**
Founder and CEO at Dentistry in General LLC, Independent
Journalist and Media Publisher, Society of Professional…

August 23, 2025

## Schein vs Vyne: The Fight Over Backdoor Hacks Into Your Data

Editorial Opinion

By Bob Dee

8/23/2025

-----------------------------------------------------

TLDR: Security has to come before convenience or saving a few dollars. Too many dental tech companies still use backdoor methods instead of approved APIs, leaving practices wide open to breaches, HIPAA fines, and ransomware.

Some of you know my history in technology, and if you don't, feel free to ask me privately. Let's just say I have been deeply involved in technology since I was 14 years old, and I know this space inside and out. Specifically dental technology. It's not just dental politics I have a big mouth on.

But this is important, read the whole thing and support our Resolution 301 for the 2025 ADA's House of Delegates.

https://dentistryingeneral.com/digac

(half-way down the page)

---------------------------------------------------------------------------

For those of you who have read my previous writings you know that security is my number one concern. I would rather give up features and convenience for a software that gives me the most secure solution. That has to be all of our concerns, because the most important thing we have in our businesses is not a great hygienist or that brand new $100,000 laser we bought, **it's our data. Protect it properly, because most dental offices don't.**

Read my writings on Cloud and Imaging technology in Dentistry and the misinformation out there. I also have a **checklist.** Search my Facebook group and other Facebook groups on the subject or message me for it.

I'm not saying this is NOT money-driven, I don't know. It's possible. What I do know is that the revenue from this line of service isn't exactly huge, yet it has created a lot of bad publicity. I'm not privy to any internal motivations, and full disclosure: I have not been on the Ascend advisory board for over a year and they don't pay me for any advertising. I do have many friends at Henry Schein One, regular hard working employees and the C-suite. I do have an advantage of being able to go to them and ask questions.

## This issue though is a no-brainer for me. For me, it's about protecting patient data and nothing else.

Everyone knows how **critical** I have been about Henry Schein and Dentrix Ascend not providing multi-factor authentication (**it's being beta tested now, thankfully**). But I can't be a hypocrite here and not side with them on this.

This is a security risk. **Dentists in general put money and convenience before security, that's a fact.** Most dental offices do not spend enough to safely secure their on-prem servers. That's another fact. My main reason for being an advocate of the cloud technology is the fact that at least your data cannot be taken hostage if you are using a cloud software.

But even if you're using a cloud system, a breach of your local network is still a HIPAA violation and you are obligated to report and pay fines. **Your data might not be taken ransom because the cloud company is protecting it, but your patient data was still exposed. At the end of the day, you are responsible for your systems, your choice of IT, and your choice of software.**

I'm a fan of the open source initiative, **but if you're using the word "open" in your software it shouldn't mean it's open to all hackers.** Linux is open source but also very secure. If you use software that leaves ports wide open, or you hire one of the hundreds of IT companies that set things up wrong due to incompetence or economics, they will not be held accountable. **You as the owner will.**

Don't get me wrong, you can use software that is open securely, if, and ONLY if, **you're spending enough money on IT to protect the data.** Two of the most popular dental software companies out there that are always mentioned by dentists as "the best", are the most commonly found databases on the dark web.

I used Renaissance (bought by Vyne in 2020) back in the early 2000s with Easy Dental (I called it Dentrix Lite). Renaissance Electronic Services was created in 2002 by **Delta Dental entities in Indiana, Michigan, and Ohio to handle electronic claims.** It grew into a major clearinghouse before being acquired by Vyne.

Vyne rolled it into their product line and offered it for claims, clearinghouse, and attachments, but through a method that bypasses Dentrix APIs. That method worked back in the day, but now it is a major vulnerability waiting to be exploited.

## This is not 2005 anymore. Hackers are targeting small businesses like ours and I know multiple offices that have paid six figures in ransom and penalties.

Henry Schein, as the largest software vendor in Dentistry, is also under the microscope after the rise in breaches. I have been critical of them for years for putting customer-requested features ahead of security.

**In the past few years they've changed course and are working hard on security. The HS1 CTO and chief of security are making sure all bases are covered. I actually trust them that they will take care of security, slowly but surely.** The problem is the size of company and things moving slowly. But I digress.

Please note that the supply/equipment company-side hack last year was unrelated to **Henry Schein One, which runs their technology and software division,** and for all practical purposes operates differently. Still, the biggest player in dental software will remain under the magnifying glass.

There's something else that bothers me, and that's my free market and capitalist views. People complain about Henry Schein charging these companies for what they've built and the use of it. I'm not going to sit here and defend the prices of one company or another. Maybe they're more expensive, maybe in the long run they're saving these vendors money. But in a capitalistic world I'm not going to tell Henry Schein they can't charge companies to connect to their software.

Think about it this way: **if another dentist set up shop down the street and wanted to use your CBCT or your new laser for their own patients without paying you, you would have a problem with that.** You invested in it, you maintain it, you insure it, and it is part of your value. The same logic applies here. I'm not saying this is their reasoning. I'm saying we need to be fair.

## There are companies out there that refuse to do what is ethically correct in my opinion even though legally they may be allowed to do so.

What worries me here is not the business rationale, it's that the door is being left wide open. Multiple vendors already offer the same services through official integrations, **using APIs approved by the software company that holds the data. That's not politics, that's basic cybersecurity.**

If a company doesn't want to go through the normal route, they'll build backdoor hacks. I will not endorse that. **Court rulings confirm that patient data belongs to the provider, not the vendor, but once we put our patient records into someone else's infrastructure we rely on them to keep it secure.** We can't shrug and allow any backdoor connection to slide through unchecked.

If the setup requires leaving ports open, I don't care how secure or compliant someone claims it is, that same opening can be used by others. A virtual printer or sync agent might do its job through that channel, but if the door is open for unauthorized access, other unauthorized access is also to be expected. If the door is open, it is open for everyone.

Open Dental is a perfect example. Before version 18.4 they shipped MySQL with the root user and a blank password, plus weak MD5 hashes and exposed credentials. That is a hacker's dream. MySQL ports like 3306 are constantly scanned by attackers. You can see it here:

https://nvd.nist.gov/vuln/detail/CVE-2018-15719

and here:

https://www.tenable.com/security/research/tra-2018-44

Even Open Dental's own documentation warns against exposing MySQL to the internet:

https://www.opendental.com/manual/securitymysql.html

And it's not just one vendor. A misconfigured MongoDB recently exposed over 8 million dental patient and appointment records. You can read about it here:

https://www.hipaajournal.com/database-8-million-patient-records-exposed-online/

There are also countless ransomware attacks on offices in Washington, Texas, Indiana, and almost every state that compromised names, Social

Security numbers, images, and billing data. You can find these by a simple Google or AI search.

**Times have changed. Vulnerabilities are everywhere. What was once a convenient method is now a major liability. A secure vendor relationship means they work with your data holder, use official APIs, enforce audit logs, encryption, and hardened endpoints. That's basic hygiene, not optional.**

And it's not just this one method being scrutinized. Companies like Sikka and NexHealth have also used database connectors and sync agents that cybersecurity experts have warned about.

**With AI now able to parse databases and infer structures without APIs, the risk is even bigger if these shadow integrations continue.** The choice is yours if you want to utilize software that is wide open and allows these types of connections.

## Security is not a luxury and it is not a choice. It is the foundation of everything we do.

You can decide to cut corners, you can decide to go with convenience over compliance, but then you better be ready to explain that decision when something goes wrong. Your patients, your team, and the regulators will all want answers, and "I didn't think it would happen to me" is not going to cut it.

------------------------------------------------------------------

Plug for me: If I have helped you or informed you in any way and want to thank me, please consider attending my amazing CE event, DIG-A-PALOOZA, in the Chicago Area November 7-8, 2025. Thank you.

https://dentistryingeneral.com/dig-a-palooza

-------------------------------------------------------------------------

Checklist: What you should ask every vendor before you sign

Will you sign a Business Associate Agreement that covers the desktop agent, the cloud, and all subcontractors?

**Do you use an official, supported API for integration, or do you connect directly to my database?**

What encryption do you use in transit and at rest, and do you have third-party reporting?

Do you keep an audit trail of every access event, and can I see it?

If your connector needs open ports or direct SQL access, how do you secure them?

Do you provide multi factor authentication and role-based access?

How fast will you notify me if you have a breach, and what is your incident response plan?

**Bonus (but equally important) question if they provide imaging (capturing images or modifying images): Do you have FDA clearance and ask to see it. They all must have it if they capture or modify the images. Some sales people lie unfortunately.**

Alan Rencher Allison Norris Abe Abdul DMD MBA Webster Brehm Spencer Bloom Dr Rich Rosato American Dental Association Karin Irani Steven Saxe. DMD Randall Markarian Raymond Cohlmia Elizabeth A.

"Betsy" Shapiro, DDS, JD, CAE Mark Costes DDS Dr. Paul Goodman
Howard Farran Dentistry in General LLC Iffi Wahla Rihan Javid

**Enjoyed this article?**

Follow to never miss an update.



Comments

27 · 4 comments

Bob "Dee" Dokhanchi

Founder and CEO at Dentistry in General LLC, Independent Journalist and Media Publisher. Society of Professional Journalists, Association of Health Care Journalists Dentist, Owner, at Fox Valley Dental Care Aurora,

👍 Like          💬 Comment          ↪ Share

Add a comment...          Follow

Most recent ▾

About                      Accessibility        Questions?                Select Language
Professional Community Policies   Careers        Visit our Help Center.      English (English)
Privacy & Terms ▾          Ad Choices           Manage your account and privacy
Sales Solutions            Mobile               Go to your Settings.
Safety Center                                   Recommendation transparency
                                                Learn more about Recommended Content.

Talent Solutions
Marketing Solutions
Advertising
Small Business

LinkedIn Corporation © 2025

# EXHIBIT 2



## Vyne Dental
## RE: Recent Henry Schein One Communications and Dentrix Compatibility
Date: August 11, 2025

We want to provide clarity around recent communications you may have received from Henry Schein One (HS One) concerning the compatibility of Vyne Dental's solutions with Dentrix.

## What's Happening

We have heard from shared customers that HS One is communicating, as early as August 26, 2025, a Dentrix update may disable your ability to send claims through Vyne Dental. HS One intends to block any connection made to Dentrix outside of their Dentrix Developer Program.

Vyne Dental currently enables thousands of practices to send claims via a print-based integration method comparable to e-fax transmission or PDF-creation tools. Since March 2025, Vyne Dental has actively engaged with HS One to join the Dentrix Developer Program. However, the program still does not facilitate claims submission, and it prohibits all alternative integration methods upon entering the program (including our existing print-based solution).

## Why It Matters

With the recent acquisition of DentalXChange by the owners of HS One, it appears they may be consolidating claims traffic under their proprietary eServices offering. This raises concerns about reduced provider choice and increased vendor lock-in — a direction we believe undermines:
- Practice autonomy
- Operational resiliency (as seen during the Change Healthcare outage)
- The spirit of the 21st Century Cures Act's Information Blocking Rule

Vyne Dental has long championed open, secure connectivity that puts your practice and your patients first.

## What You Need to Know

1. **You Can Still Submit Claims**

In addition to our existing print-based method, Vyne Dental offers alternative workflows to submit claims while continuing to develop additional ways to work with Dentrix. We'll provide step-by-step instructions for continued service within Vyne Trellis (or the web experience for our Remote Lite users) based on what HS One enacts.

2. **We Are Committed to Security**

Vyne Dental is a trusted partner of industry-leading organizations like Patterson (Eaglesoft) and Open Dental. We are committed to interoperable connections that support uninterrupted care



and revenue acceleration. Our Vyne Dental clearinghouse is SOC II Type 2 certified and HITrust-CSF® v.11.3.0 (i1) certified. We deliver quality, security, and performance with a focus on adherence to complex regulatory compliance standards, like HIPAA.

For more information on our compliance and security standards, visit https://trust.vynecorp.com.

## What You Can Do

- **Continue Submitting Claims**: We have built solutions and are continuing to add additional options to ensure uninterrupted claim processing. We will notify you if you need to make any changes.
- **Update Your Vyne Tools:** Make sure all computers submitting claims have the most recent version of the PMS Dental Plugin or Remote Lite installed.
- **Stay Informed**: Look out for added guidance within Vyne Trellis (and the web experience for Remote Lite) that outlines:
    - Up-to-date impacts on existing claim submission methods
    - How to use alternative claim submission methods
    - How to contact our support team if needed

## We're With You

We understand that over 60% of your revenue depends on clean, timely claims processing.  We appreciate your partnership and the trust you've placed in Vyne Dental. We are committed to improving the overall health and well-being of your practice so you can focus on improving the overall health and well-being of your patients.


**Sincerely,**


**James Grover**
President, Vyne Dental



**Vyne Dental**
**RE: Henry Schein One, Dentrix Supportability**

It was brought to our attention that Henry Schein One is allegedly informing dental practices, dental service organizations and other providers of healthcare that Henry Schein One will be releasing updates to Dentrix that will intentionally cause their practice management system to no longer be compatible with Vyne's revenue management solutions.

We would like to provide clarity to what these statements mean from our point of view:

- The Change Healthcare breach in February 2024 highlighted the importance of having more than one way to get your insurance claims paid. At Vyne, our position is that no provider should have to deal with the risks and costs associated with a lack of choice in routing claims. To that regard, Vyne has always provided tools to give providers choice.

- Henry Schein One has allegedly stated they are taking actions to actively block **your ability** to use Vyne products, couching it in a general statement of "security, performance and reliability" concerns. However, Vyne is a SOC II, HiTrust-certified HIPAA Clearinghouse with a strong focus on quality, security, and performance.

- According to our records, approximately 20% of Henry Schein One's Dentrix customers use Vyne Trellis for revenue cycle management. You are not alone and we remain committed to innovating RCM solutions that provide the best value with a best-in-class experience.

- **You have a collective voice & we encourage you to engage with your local Henry Schein representative or call their customer support line at 1-800-472-4346 to express your concerns regarding tactics that could materially disrupt your practice.**

Vyne Dental fully supports interoperability across healthcare systems to improve data portability which ultimately drives provider choice and increased transparency into data exchange. We value you, our clients, and your need to protect the privacy and security of the data you share with us. Your trust in our operations is paramount to our mission.

For more information regarding our security measures, please visit our webpage at https://trust.vynecorp.com.

We are grateful to serve your dental practice and excited to continue bringing innovative solutions to your revenue cycle journey.

James Grover
President
Vyne Dental

# EXHIBIT 3



**Customer Data Access Request**
**Pursuant to Customer Authorization**

August 21, 2025

VIA EMAIL AND CERTIFIED MAIL

ATTN: Katherine Wich Sugden, General Counsel, VP
Henry Schein One, LLC
1220 South 630 East, Suite 100
American Fork, UT 84003
kwichsugden@henryscheinone.com

**Re: Customer Access Request to Customer Data within Dentrix**

Each customer listed in the attached schedule has requested that we send this letter on their behalf and has provided us with written agency and authorization to make such requests on their behalf.

Accordingly, Vyne Dental requests, on behalf of each customer listed in the schedule, that access to all Data held within Henry Schein One LLC's dental practice management system(s) be made available to Vyne Dental so they can continue using Vyne Dental's services to support their healthcare operations. "Data" includes, without limitation:

- Patient records, treatment data, and clinical notes
- Billing and insurance records
- Appointment and scheduling information
- Any other data necessary for lawful interoperability and healthcare operations

Vyne Dental is a Business Associate of each requesting mutual customer and is permitted access to the Data through express written authorization from the requesting customer and through its direct Business Associate Agreements with each requesting customer.

Please provide this access without delay, as any failure to do so will directly impair the customer's ability to rely on Vyne Dental's services in support of their essential healthcare operations, potentially disrupting patient care and practice efficiency.

Sincerely,

DocuSigned by:

*Kelly Owen*

46F72B77904743D...

Kelly Owen, General Counsel
kelly.owen@vynedental.com
828.545.2440

(866) 712-9584

6510 Telecom Dr #300
Indianapolis IN 46278

vynedental.com

# EXHIBIT 2

GREENBERG TRAURIG, LLP
Michael Burshteyn (*pro hac vice*)
Marcelo Barros (*pro hac vice pending*)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com

Garrett W. Messerly (Utah SBN 15678)
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: 801.478.6900
Garrett.Messerly@gtlaw.com

Sydney Parks (*pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
Sydney.Parks@gtlaw.com

*Attorneys for Plaintiff, Henry Schein One, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HENRY SCHEIN ONE, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL ELECTRONIC ATTACHMENT, INC. d/b/a VYNE DENTAL, a Delaware corporation, <br><br> Defendant. | **HENRY SCHEIN ONE'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** <br><br><br> **Case No.** 2:25-cv-00883-JCB <br><br> Magistrate Judge Jared C. Bennett |

Plaintiff Henry Schein One, LLC ("HSOne") seeks a narrow Temporary Restraining Order and Preliminary Injunction under Rule 65 of the Federal Rules of Civil Procedure against Defendant National Electronic Attachment, Inc. d/b/a/ Vyne Dental ("Vyne").  Immediate relief is necessary to enjoin Vyne from hacking HSOne's software systems deployed at thousands of its customers and blocking HSOne from deploying security upgrades to its own software.  Vyne's conduct violates the Computer Fraud and Abuse Act (CFAA), the Digital Millennium Copyright Act (DMCA), the Electronic Communications Privacy Act (ECPA), the Utah Interception of Communications Act (U.C.A. §§ 77-23a-4 and 77-23a-11), Utah's Unfair Competition statute, and is unlawful under multiple common-law doctrines.  HSOne's motion is based upon this memorandum of law, the Declaration of HSOne's Chief Information Security Officer, Mr. Kenton McDaniel ("McDaniel Decl."), additional materials attached, and any arguments and evidence presented at a hearing on this motion.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 3

      A.     HSOne is a Leading Dental Software Provider. ................................................ 3
      B.     Vyne is a Billing Solution Intent on Bypassing HSOne's API ............................ 4
      C.     Urgent Injunctive Relief is Warranted due to Vyne's Escalating Hacks in Recent Weeks and Days that Block HSOne from Issuing Security Patches and Updates ......................................................................................................... 5
      D.     Vyne is Obfuscating its Conduct Through a Public Campaign of False Statements. ........................................................................................................ 8
      E.     Vyne Raced to Pre-Emptively File in Maryland While Hsone was Negotiating a Commercial Agreement in Good Faith, Even Though Utah is the Dispute's Proper Venue .............................................................................. 9

LEGAL ARGUMENT ....................................................................................................... 11

I.     HSOne is Substantially Likely to Succeed on The Merits of Its CFAA, DMCA, ECPA, Trespass to Chattels, Utah Unfair Competition, and Utah Interception of Communications Claims. ...................................................................................... 12

      A.     HSOne is Substantially Likely to Succeed on the Merits of its CFAA Claim. ............................................................................................................... 12
      B.     HSOne is Substantially Likely to Succeed on the Merits of its DMCA Claim. ............................................................................................................... 15
      C.     HSOne is Substantially Likely to Succeed on the Merits of its Trespass to Chattels Claim .............................................................................................. 16
      D.     HSOne is Substantially Likely to Succeed on the Merits of its Unfair Competition Claims. .......................................................................................... 17
      E.     HSOne is Substantially Likely to Succeed on the Merits of its Wiretapping Claim ............................................................................................. 18

II.    Without a TRO, HSOne Will Continue to Suffer Irreparable Harm From Vyne's Hacking Attacks. ..................................................................................................... 20

III.   The Balance of the Equities Favors Granting a TRO and PI. ............................... 21

IV.   Hacking, Technical Circumvention, and Wiretapping Dental Patient Records is not in the Public's Interest. ..................................................................................... 21

V.    HSOne requests tailored relief to return the situation to before there was conflict about Vyne's hacking. ............................................................................................ 23

CONCLUSION ........................................................................................................................ 24

# TABLE OF AUTHORITIES

**CASES**

*ACI Payments, Inc. v. Conservice, LLC*,
    No. 121CV00084, 2022 WL 622214 (D. Utah Mar. 3, 2022) ............................................ 14

*AssociationVoice, Inc. v. AtHomeNet, Inc., Civil Action*,
    2011 No. 10-cv-00109-CMA-MEH (D. Colo. 2011) ........................................................ 21

*Bill.com, LLC v. Cox*,
    2023 No. 2:23-CV-26-HCN; 2023 WL 356344 (2023).................................................... 11

*ClearOne Commc'ns, Inc. v. Chiang*,
    608 F. Supp. 2d 1270 (D. Utah 2009)................................................................................ 21

*CompuServe Inc. v. Cyber Promotions, Inc.*,
    962 F. Supp. 1015 (S.D. Ohio 1997) ................................................................................ 16

*Deutsch v. Hum. Res. Mgmt., Inc.*,
    5305, 2020 WL 1877671 (S.D.N.Y. Apr. 15, 2020)......................................................... 15

*DISH Network L.L.C. v. Rios*,
    2015 No. 2:14-cv-2549-WBS-KJN (E.D. Cal. 2015)....................................................... 22

*Dish Network L.L.C. v. Torres*,
    No. 6:20-cv-878-O ...................................................................................................... 19, 22

*Disney Enters. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ............................................................................................. 22

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
    356 F.3d 1256 (10th Cir. 2004) ........................................................................................ 20

*eBay, Inc. v. Bidder's Edge, Inc.*,
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................................................ 16

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) .......................................................................................... 14

*Fla. Atl. Univ. Bd. of Trs. v. Parsont*,
    465 F. Supp. 3d 1279 (S.D. Fla. 2020) ............................................................................. 21

*Google LLC v. Starovikov, Civil Action*,
    2021 No. 1:21-cv-10260-DLC (S.D.N.Y. 2021) ............................................... 22

*In re Capital One Financial Corp. Affiliate-Marketing Litigation*,
    No. 1:25-cv-00023 ...................................................................... 13

*In re: Maxim Integrated Prods., Inc.*,
    2013 WL 12141373 (W.D. Pa. Mar. 19, 2013) ........................................... 15, 19

*Keybank Na'l Ass'n v. Williams*,
    2022 U.S. App. LEXIS 3701 (2022).................................................... 20

*Kirch v. Embarq Mgmt. Co.*,
    702 F.3d 1245 (10th Cir. 2012) ...................................................... 19

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ....................................................... 13

*Nassi v. Hatsis*,
    525 P.3d 117 (Utah Ct. App. 2023) .................................................. 16

*Podium Corp. Inc. v. Chekkit Geolocation Servs. Inc.*,
    2020 No. 2:20-CV-352-DB; 2020 WL 6940737 (2020) ................................... 14

*Real Prop. Mgmt. SPV LLC v. Truitt*,
    2024 No. 2:24-CV-00184-DAK; 2024 WL 3567866 (2024) .............................. 11

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)....................................................... 15, 17

*RoDa Drilling Co. v. Siegal*,
    552 F.3d 1203 (10th Cir. 2009) ...................................................... 11

*Speed of Light Ops, LLC v. Elliot*,
No. 222CV00246DAKDBP, 2023 WL 2815875, (D. Utah Mar. 21, 2023), report and
    recommendation adopted, No. 2:22CV246-DAK-DBP, 2023 WL 2814604 (D. Utah
    Apr. 6, 2023) ...........................................................................9

*Stackla, Inc. v. Facebook Inc.*,
    2019 No. 19-CV-05849-PJH; 2019 WL 4738288 (2019) ................................. 22

*Swig Holdings, LLC v. Sodalicious, Inc.*,
    2017 No. 2:15-cv-00307 (D. Utah 2017)........................................... 18

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ........................................................................ 14

*Thrifty–Tel, Inc. v. Bezenek*,
    46 Cal. App. 4th 1559 (1996) ......................................................................... 16

*TLS Grp., S.A. v. NuCloud Glob., Inc.*,
    2016 No. 2:15-cv-00533-TC; 2016 WL 1562910 (2016) .................................. 15

*Total Quality Sys., Inc. v. Universal Synaptics Corp.*,
    2024 No. 1:22-cv-00167-RJS-DAO (D. Utah 2024) ......................................... 17

*UHS of Provo Canyon, Inc. v. Bliss*,
    2024 No. 2:24-CV-163-DAK-CMR; 2024 WL 4279243 (2024) .................................. 11, 22

*United States v. Ackerman*,
    831 F.3d 1292 (10th Cir. 2016) ...................................................................... 16

*Van Buren v. United States*,
    593 U.S. 374 (2021) ....................................................................................... 12

*Vox Marketing Group v. Prodigy Promos, LLC*,
    556 F. Supp. 3d 1280 (D. Utah 2021) ............................................................. 14

*WhatsApp LLC v. NSO Grp. Techs. Ltd.*,
    No. 4:19-cv-07123-PJH ................................................................................. 13

**FEDERAL STATUTES**

Title 18 U.S.C. § 2511(1)(a) ............................................................................. 18

**STATE STATUTES**

Utah Code § 13-5a-102(3) ................................................................................. 17

Utah Code § 77-23a-3(10) ................................................................................. 19

Utah Code § 77 ................................................................................................. 19

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 217 ................................................................ 16

## **INTRODUCTION**

Vyne, in recent weeks, has engaged in a malicious computer hacking campaign against HSOne's practice management software, Dentrix.  In response to HSOne's patches and security upgrades, Vyne escalated its hacks.  It is now deploying workaround exploits multiple times a week.  The latest workaround that HSOne detected was one Vyne deployed just days before this filing.  Vyne purports to seek to interoperate with HSOne's software, but Vyne refuses to leverage HSOne's Application Programming Interface ("API") used by over 140 other vendors or negotiate a more custom integration as a clearinghouse.  Vyne, apparently, sees hacking as preferable. Vyne's conduct creates irreparable harm every day it is allowed to continue because it prevents HSOne from upgrading and patching its own software.  This interferes with the day-to-day operations of thousands of HSOne dental practice customers across the country.

These circumstances merit the tailored injunctive relief HSOne seeks.  HSOne asks this Court to issue a narrow order requiring Vyne to stop unlawful hacking of HSOne's software and databases in circumvention of HSOne's technical security measures.  Vyne must stop doing things like misappropriating credentials (including decryption keys) to escalate its own privileges in HSOne's software to administrative privileges without authorization.  Vyne must stop impersonating authorized applications through imported unauthorized binaries.  It must stop forcibly injecting data into HSOne's software settings files through exploits of debug functionality. It must stop intercepting and redirecting network traffic to its own servers.  When HSOne issues security patches and upgrades, Vyne must not develop new hacks to circumvent them.  Nor should Vyne interfere with HSOne's collaboration with its customers to deploy its security upgrades across thousands of dental practices nationwide.  Vyne can build any sort of software it wishes, but it is not permitted to access HSOne's protected systems without authorization and must stop doing so.

1

Because all the temporary restraining order and preliminary injunction factors favor HSOne, Rule 65 permits granting a temporary restraining order and preliminary injunction to restrain Vyne from its escalating conduct. First, HSOne is likely to prevail on the merits of its hacking and interception related claims. The United States Supreme Court has held that database hacking like Vyne's is precisely the sort of conduct that violates the CFAA. Bypassing technical barriers, as Vyne does, also constitutes common-law trespass and violates the DMCA. Further, Vyne's interception of network traffic through code exploits is unlawful wiretapping under federal ECPA and Utah state law. The situation creates daily irreparable harm to HSOne because it cannot upgrade and secure its software systems at its customers' premises. Every time HSOne attempts to do so, Vyne deploys a workaround hack.

The balance of equities and public interest weigh in favor of granting HSOne's requested relief as well. Vyne's conduct creates a precedent for any software company that wishes to disregard a company's security measures to simply break into their computer systems without consequence. Without a TRO and PI, there will be no deterrent for any developer to misappropriate passwords and credentials, decrypt encrypted data, exploit source code, intercept communications—all without authorization—and then mass import and export data. All because the company wishes to have unfettered access rather than use the API or integrate like everybody else. If that is permissible, it is not just Vyne that will be hacking HSOne in perpetuity, but countless companies with similar proclivities across all Internet software industries in the United States.

HSOne has tried everything short of litigation to stop Vyne's conduct. HSOne invited Vyne to its API program. It offered custom integrations on fair commercial terms. In response to these de-escalation attempts, Vyne deployed new and more pernicious exploits and circumventions. Consequently, temporary and preliminary injunctive relief is appropriate to enjoin Vyne's hacking and enable HSOne to secure its computer software.

2

# FACTUAL BACKGROUND[1]

### A.    HSOne is a Leading Dental Software Provider.

HSOne is a Utah-based dental software company.  Its dental software platforms simplify workflows, enhance patient care, and streamline practices for over a hundred thousand dentists. HSOne's mission is to accelerate the future of dental care through its pioneering Dentrix practice management systems.  Because Dentrix is a hub for HSOne's customers' dental practices, many third-party vendors seek to integrate and interoperate with it.  Though it has no obligation to do so, HSOne enables this interoperation through its API Exchange.

HSOne invests significant resources in making its API reliable and secure for the benefit of its integration partners and customers.  It implements robust access controls, encryption, system monitoring, and a variety of other technical measures to safeguard its customers' sensitive business and patient health data.  At least 140 third-party vendors make use of HSOne's API Exchange to offer solutions to HSOne's customers in over 40 categories.  These categories include patient engagement, revenue cycle management, analytics, and imaging, among others.  The API contains over 750 data endpoints enabling developers to build a plethora of applications that work with Dentrix.  HSOne welcomes any vendor to participate in the program, and vendors join voluntarily. All participants in the API Exchange must agree to HSOne's Terms of Use, which is standard and common for any enterprise API solution in the industry.  HSOne reviews the security of its vendors, offers best practices, and maintains a commitment to support the reliability of its API and underlying Dentrix software platform.

HSOne's innovation shines in a highly competitive field.  HSOne's commitment to innovation and supporting dentists over decades has gained it the trust of thousands of dental

---

[1] McDaniel Decl.  (HSOne's Chief Security Officer has personal knowledge of HSOne's business, Vyne's business, Vyne's conduct, and the interactions between the companies relevant to this dispute.  His accompanying declaration attests to the facts in this factual background section and supports HSOne's request for temporary and preliminary injunctive relief.)

practices. These practices rely on Dentrix to operate their businesses every single day, enabling them to focus on delivering excellent patient care.

**B.    Vyne is a Billing Solution Intent on Bypassing HSOne's API.**

Vyne is a company that provides a point solution for dental practices to manage their billing. To facilitate its operations, Vyne seeks to integrate with practice management platforms like Dentrix. What Vyne seeks most of all is to have unfettered access to insurance claims data in Dentrix. Dentrix does not provide API endpoints for claims, as those are unique data fields whose automated import and export would risk data integrity compromises. For claims, Dentrix has backend integrations, integrations that it has offered to implement with Vyne. Vyne, however, decided to hack HSOne's software systems—apparently for no other reason but to make more money, despite the negative effects on HSOne's software systems and customers. Vyne's haphazard approach creates multiple conflicting sources of truth inside a dental practice's systems, eroding reliability of the data. HSOne has no duty to automate any workflow for Vyne, particularly not a workflow that would compromise data integrity, security, and reliability.

Customers wanting to use Vyne still have a path forward, which consists of manually submitting information and working with claims clearinghouses to support back-end integration. This approach has been adopted by others. Rather than accept the secure integration model HSOne offered—or use the API features Vyne can use—Vyne refused HSOne's API terms and sought to exploit HSOne's software for purposes of direct, read-write access at scale to HSOne-managed software on customer systems. Vyne has devoted its resources to circumventing HSOne's technical measures that block unauthorized access and to exfiltrate HSOne customer data *en masse*.

Vyne does not stop at exfiltration. It also hacks HSOne's Dentrix software platform and systems so that it can inject and write data back into HSOne's software platform as well. All the

while, Vyne misleads and spreads false statements to HSOne's customers about its conduct. Vyne takes great care to obfuscate what it is really doing and purports to act with authorization, even though Vyne has not disclosed its hacking methods to its customers; customers do not have authority to authorize any third-party access of HSOne's software system; and HSOne has made clear to Vyne that its conduct is unauthorized and must cease.

HSOne has recently implemented telemetry to track malicious hacking of its software platform and increase Dentrix's security monitoring capabilities. This, along with HSOne's other diligent investigation methods, has uncovered the following array of deliberate circumvention methods, including: (a) credential misappropriation and binary masquerading; (b) administrator privilege escalation; (c) patch tampering; (d) component impersonation; and (e) code injection for mass data export.

Vyne's deep level of hacking reflects, on information and belief, the fact that multiple of Vyne's employees, including its Chief Executive Officer as well as their President and Chief Technology Officer used to work at HSOne (or at Henry Schein Practice Solutions) in Utah. These former senior leaders have significant insider knowledge of HSOne's product and technical systems.

Vyne's methods and conduct reveal a persistent multipronged campaign of intentional access without authorization and circumvention of HSOne's technical security measures. Vyne's pervasive and relentless approach reflects its commitment to hack by any means necessary.

C.      **Urgent Injunctive Relief is Warranted due to Vyne's Escalating Hacks in Recent Weeks and Days that Block HSOne from Issuing Security Patches and Updates.**

Despite HSOne's direct statements telling Vyne to stop hacking and HSOne's technical measures designed to stop Vyne's unlawful conduct, Vyne persists. Indeed, in recent weeks, Vyne

has escalated its conduct and deployed new malicious hacking methods even while the parties have been engaging in commercial discussions.

Earlier this year, HSOne began receiving an unusual volume of customer complaints concerning Dentrix system instability, failed claim submissions, and unexplained disruptions to eligibility and payment workflows. These complaints were at first sporadic but grew in frequency and consistency, causing HSOne to begin to investigate. To better understand the situation, HSOne developed and deployed internal telemetry capabilities to monitor its software systems and endpoints across its customer deployments. This telemetry allowed HSOne to track configuration anomalies, unauthorized traffic redirection, and patterns of failed authentication across its customer base. In recent weeks, the telemetry data proved HSOne's suspicions correct. According to HSOne's monitoring, Vyne has been releasing a rapid succession of software updates—at least a dozen distinct versions—aimed at hacking Dentrix. Many of Vyne's updates appear to have failed, on information and belief, because they did not properly consider HSOne's software parameters. Vyne continued to spam new updates to circumvent HSOne's security measures. Customers who installed these updates often experienced system degradation, failed integrations, and increased support needs.

Through its telemetry and customer logs, HSOne uncovered that Vyne was intercepting Internet traffic from HSOne's customers that was meant to go to HSOne and redirecting those transmissions to a Vyne endpoint. Vyne's scheme involves first reverse-engineering HSOne's configuration files and decrypting them by misappropriating private decryption keys HSOne provides to its customers. Vyne then injects data into the configuration files, including programmatically intercepting Internet traffic and redirecting it to its vtrans.vynetrellis.com servers. As a separate method, on or around September 10, 2025, HSOne discovered that Vyne exploits a debugging function in Dentrix to modify the eTrans file. The result of these exploits is the rerouting of patient claim data to Vyne controlled servers.

Vyne's modifications break the authentication flow for multiple HSOne services that rely on the same DataServices ID with which Vyne interferes, including HSOne's Eligibility Essentials, Quickbill Premium, and Request to Pay services. The result is that HSOne customers experience failed claims, undelivered payment records, and system instability.

Vyne's interference also obstructs HSOne's ability to deploy security patches. HSOne's patching workflow relies on the same authenticated DataServices connections with which Vyne interferes. This means that Vyne's malicious interception and substitution severs HSOne's essential connection to its own platform installed in customer environments.

Even if HSOne were to repair the configuration setting, Vyne's software has functions to restore the malicious proxy-in-the-middle without user interaction, thus reverting HSOne's updates and perpetuating the unauthorized data interception and computer access. In sum, Vyne has embedded itself so deep into HSOne's locally hosted software that it can now override security measures, impersonate HSOne systems, and intercept protected communications on HSOne's Dentrix systems installed at customer premises.

Vyne's conduct is creating significant disruption across HSOne's customer base. It is causing HSOne to have to respond to a plethora of customers experiencing interruptions, failures, and system instability, all because of Vyne's hacks.

Vyne's conduct is egregious for a variety of reasons. First, it undermines the integrity of HSOne's authentication and security architecture. Second, it exposes sensitive patient and financial data and creates a vulnerability for access by unauthorized third parties. Third, it allows Vyne to manipulate or delay the flow of information, potentially corrupting records or interfering with time-sensitive transactions. Fourth, it deprives HSOne of the ability to monitor, audit, or secure the data flow—effectively stripping HSOne of control over its own software system.

Vyne's actions are not merely unauthorized; they are corrosive to the trust, security, and operability of HSOne's software. Vyne's acts undermine the fundamental security architecture of

HSOne's software solutions and inflict significant reputational and business harm to HSOne. HSOne's customers are frustrated because their systems are not working properly and are misled by Vyne to direct that frustration at HSOne.

Worse, Vyne is interfering with HSOne's ability to update its own systems and roll out new security controls. Due to the nature of Vyne's hacks, it can revert some of HSOne's security upgrades and cause them to fail as well. No amount of money can repair the damage this causes HSOne.

In the days preceding this filing, Vyne has continued to roll out new upgrades and implement new and more advanced technical circumventions of HSOne's security controls. For instance, just in the last week, HSOne has uncovered evidence that Vyne has issued new updates which, on information and belief, contain additional exploits. HSOne has also uncovered evidence that Vyne is misappropriating HSOne software credentials and placing them into configuration files without authorization. Unless enjoined by this Court, Vyne will continue to deploy unauthorized workarounds with impunity.

**D.      Vyne is Obfuscating its Conduct Through a Public Campaign of False Statements.**

In parallel with its technical intrusions, Vyne is making false statements to HSOne's customers about its conduct and HSOne's software systems. Vyne has intentionally not disclosed the nature of its hacking while publicly stating that its interactions with HSOne's software are authorized and benign. Vyne's false statements have caused HSOne customers to reach out to HSOne based on their false impression and interfered with HSOne's relationships and contracts with those customers. Vyne's messaging campaign includes mass email blasts, public statements by its CEO, and other communications designed to obscure Vyne's unauthorized misconduct and shift blame to HSOne for working to secure its own software. Vyne's campaign is designed to

8

mislead the market, shield Vyne's unlawful conduct from scrutiny, and frustrate HSOne's attempts to issue security patches and upgrades.

> **E.** **Vyne Raced to Pre-Emptively File in Maryland While Hsone was Negotiating a Commercial Agreement in Good Faith, Even Though Utah is the Dispute's Proper Venue.**

HSOne has done everything it possibly can to avoid escalating this dispute to court. HSOne invited Vyne into its API program. HSOne offered to customize its API Terms for Vyne. HSOne even offered to work with Vyne to accomplish a direct integration workflow to accommodate Vyne, similar to what HSOne has implemented with its current claims clearinghouse offering.

**August and September Demand Letter Correspondence.** This August, as the picture of Vyne's hacking began to come into focus, HSOne sent Vyne a letter on August 26, 2025 demanding Vyne stop its hacks. HSOne put Vyne on notice that its conduct violated the Computer Fraud and Abuse Act, among other things. Vyne responded on September 6, 2025. In its response, Vyne falsely characterized its conduct and omitted much of the detail that HSOne had begun to uncover through its telemetry. Vyne claimed it was just "exporting data to a file usable by Vyne Trellis" by "using a printer driver to assist Vyne customers." Although this too is unauthorized, it is a gross mischaracterization of what Vyne is *actually* doing: misappropriating credentials, hacking administrative privileges, injecting data into settings files, intercepting network traffic, and blocking security upgrades and patches.

**Vyne and HSOne Negotiate a Mutual Tolling Agreement with Utah Venue.** Despite Vyne's egregious conduct, HSOne sought to engage in good faith with Vyne to negotiate a commercial agreement. This would permit Vyne to have the advantage of an integration with HSOne similar to how HSOne integrates with its current clearinghouse offering. While the parties negotiated, however, Vyne kept hacking. Even so, HSOne took every possible effort to come to a

commercial arrangement, despite Vyne essentially holding HSOne hostage through its hacking and public smear campaign.

HSOne also proposed the parties sign a tolling agreement while their discussions continued. Vyne initially responded that it did not understand the purpose of such an agreement, because the negotiations would happen quickly. After HSOne explained that the tolling agreement would still be an important sign of good faith, Vyne agreed to pursue it. HSOne and Vyne came to terms on the tolling agreement on September 15, 2025. HSOne executed that day. It is unclear whether Vyne has signed it or not. When HSOne followed up with Vyne about Vyne's signature, Vyne claimed this was somehow a basis to cut off negotiations with HSOne. It is clear now that Vyne was approaching the negotiations to stall for time while it came up with new hacking workarounds while rushing to file its own baseless claims to muddy the dispute.

**Vyne's pre-emptive filing and forum-shopping.** Racing to court, Vyne filed a Complaint in the District of Maryland on September 30, 2025.[2] Vyne then filed a motion for a Temporary Restraining Order and Preliminary Injunction on October 2, 2025. Vyne appears to be forum-shopping. Vyne's only stated basis for venue in Maryland is that it has some affected customers there. But HSOne and Vyne have thousands of overlapping customers outside of Maryland in every other state. Vyne is not based in Maryland. HSOne is based in Utah. And Vyne's CEO and CTO, both of whom submitted declarations in support of Vyne's preliminary injunction motion in Maryland, are in Utah and signed their declarations from Utah. They both used to work for HSOne in Utah. The nexus of the dispute is here.

Vyne's TRO and PI motion will be resolved in due course—HSOne intends to oppose it and file a transfer motion from Maryland to this Court, which is the proper court to resolve this dispute. But Vyne's rationale stretches the imagination. According to Vyne, HSOne's patching and deployment of security upgrades to stop Vyne's hacking somehow amounts to HSOne hacking

---

[2] Case No. 1:25-cv-03246-MJM.

Vyne's software.  While Vyne's allegations are not relevant to HSOne's request for temporary and preliminary injunctive relief, they demonstrate the tenuousness of Vyne's position.

**HSOne's action.**  HSOne filed its Complaint against Vyne in this Court last Friday, October 3, 2025.  HSOne now files this motion because it has no choice but to seek the Court's intervention to stop Vyne's hacking.

<u>**LEGAL ARGUMENT**</u>

"Preliminary injunctive relief is proper when the moving party shows: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party [e.g., balance of hardships]; and (4) the injunction; if issued, will not adversely affect the public interest." *Real Prop. Mgmt. SPV LLC v. Truitt*, No. 2:24-CV-00184-DAK, 2024 WL 3567866, at *2 (D. Utah July 29, 2024) (granting preliminary injunction).  The standard for a temporary restraining order is the "same standard required to obtain a preliminary injunction." *Bill.com, LLC v. Cox*, No. 2:23-CV-26-HCN, 2023 WL 356344, at *2 (D. Utah Jan. 21, 2023) (granting TRO in data misappropriation dispute).

Preliminary injunctive relief that preserves the status quo brings the parties back to the "last peaceable uncontested status existing between the parties before the dispute developed." *UHS of Provo Canyon, Inc. v. Bliss*, No. 2:24-CV-163-DAK-CMR, 2024 WL 4279243, at *16 (D. Utah Sept. 24, 2024).  Here, that would be before Vyne began hacking HSOne's software to circumvent HSOne's security patches and upgrades.  When a moving party demonstrates that the "exigencies of the case require extraordinary interim relief," Tenth Circuit district courts may also grant mandatory injunctions requiring conduct that changes the status quo as well. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 (10th Cir. 2009) (affirming grant of mandatory preliminary injunction).

The computer hacking, circumvention, and wiretapping laws at issue in this case support temporary and preliminary injunctive relief. DMCA § 1203(b)(1) authorizes temporary and permanent injunctions to prevent or restrain circumvention of effective access controls. Both the Wiretap Act (ECPA) § 2520(b)(1) and the Utah's Interception of Communications Act § 77-23a-11(2) authorize "preliminary and other equitable relief" to stop interception of electronic communications. CFAA, § 1030(g), also authorizes injunctive relief to halt unauthorized access and damage to protected computer systems.

Here, HSOne meets all factors in the preliminary injunction standard.

I.    **HSOne is Substantially Likely to Succeed on The Merits of Its CFAA, DMCA, ECPA, Trespass to Chattels, Utah Unfair Competition, and Utah Interception of Communications Claims.**

HSOne is likely to prevail on its computer hacking, circumvention, and interception statutory and common-law claims.

A.    **HsOne is Substantially Likely to Succeed on the Merits of its CFAA Claim.**

Vyne's conduct violates multiple CFAA provisions, including §§ 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(C). To establish a CFAA claim, HSOne must show that Vyne accesses protected computer software systems without authorization or in a way that exceeds authorized access. *See Van Buren v. United States*, 593 U.S. 374, 390 (2021). Subsection (a)(5)(C) requires nothing more than intentional access without authorization and damage. For subsection (a)(2)(C), HSOne must also show that Vyne uses its access to obtain information, causing HSOne damage. Subsection (a)(4) has the additional element of Vyne doing its conduct with the intent to defraud. HSOne will satisfy all these CFAA elements in this case.

First, Vyne accesses HSOne's software on protected computers at HSOne's customers' premises without authorization. HSOne employs technical gates, such as encryption, role-based access control, and other security measures to stop unauthorized access to its database and Dentrix

systems installed on customers' premises.  Vyne breaks through those gates, misappropriates credentials, decrypts encrypted data, escalates administrative privileges, circumvents patching and security upgrades, and injects data as well as mass exports it.  The Supreme Court has made clear that "liability under [the CFAA] stems from a gates-up-or-down inquiry—one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Van Buren*, 593 U.S. at 390.  When the gates are down, such as here, unauthorized access constitutes a CFAA violation.  *See, e.g.*, *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009) (CFAA "target[s] hackers who accessed computers to steal information or disrupt or destroy computer functionality[.]").

The Supreme Court has flagged database access without authorization in particular as a clear CFAA violation.  *Van Buren*, 593 U.S. at 378 (CFAA "covers those who obtain information from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend"); *id.* at 388 ("exceed[ing] authorized access" means "the act of entering a part of the system to which a computer user lacks access privileges").  Here Vyne accesses HSOne's Dentrix software database without authorization to *en masse* read and write data, obtaining sensitive information in the process.

Further, Vyne's conduct of escalating its privileges and man-in-the-middle proxy attack violates the CFAA.  Vyne's extensive unauthorized modifications of the HSOne Dentrix software system, at runtime, constitutes an impermissible "interruption of service."  *See, e.g.*, *In re Capital One Financial Corp. Affiliate-Marketing Litigation*, No. 1:25-cv-00023, slip op. (E.D. Va. June 2, 2025); *WhatsApp LLC v. NSO Grp. Techs. Ltd.*, No. 4:19-cv-07123-PJH, ECF No. 494 (N.D. Cal. Dec. 20, 2024) (deploying "modified version of the Whatsapp application – referred to as the 'Whatsapp Installation Server'" based on reverse engineering constituted CFAA violation).

Vyne claims that HSOne's customers permit access.  But courts have declined to endorse such a theory, as it would encourage hackers to work around the CFAA by asking a customer to

hack the software they purchased or licensed. Vyne must have authorized access from HSOne, not HSOne's customers. *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1068 (9th Cir. 2016) ("The consent that Power had received from Facebook users was not sufficient to grant continuing authorization . . ."). The District of Utah has favorably applied *Power Ventures* in the context of CFAA, noting that although a defendant "argues it has been authorized by specific customers to access [a software system]," doing so after notice to stop "can constitute access without authorization under the CFAA." *ACI Payments, Inc. v. Conserive, LLC*, No. 121CV00084RJSCMR, 2022 WL 622214, at *11 (D. Utah Mar. 3, 2022).[3]

In any event, to the extent Vyne claims HSOne's customers permit access, Vyne exceeds any authorization they purportedly provided. Vyne does not disclose to its customers all of its hacking conduct, as HSOne's investigation has demonstrated. Vyne's public statements—even its statements directly to HSOne—omit the vast majority of Vyne's technical hacking activity. This supports the claim that Vyne's conduct is done with the intent to defraud, and through actual fraud. This also negates any putative authorization, because "access to a computer is 'unauthorized' or 'without authorization' where access is obtained via fraud, misrepresentation, or other deceptive means."[4] *See, e.g.*, *Podium Corp. Inc. v. Chekkit Geolocation Servs. Inc.*, No. 2:20-CV-352-DB, 2020 WL 6940737, at *2 (D. Utah Nov. 25, 2020) (posing as a customer violated the CFAA).

---

[3] Vyne may also argue that the computers at issue are at HSOne and Vyne's shared customers' dentist offices. This does not remove Vyne's conduct from the scope of CFAA, however. *See, e.g.*, *Vox Marketing Group v. Prodigy Promos, LLC*, 556 F. Supp. 3d 1280, 1284–85 (D. Utah 2021) (noting that "protected computer" is "defined broadly" under the CFAA); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (reversing dismissal on such grounds and noting that "Individuals other than the computer's owner may be proximately harmed by unauthorized access, particularly if they have rights to data stored on it."). Under *Theofel*, which has been favorably cited by multiple circuits, "any person who suffers damage or loss by reason of a violation" of the CFAA can bring a cause of action. *Id.*

[4] HSOne has been harmed well in excess of $5,000 based on the cost of its investigation and remediation of Vyne's many hacks. Such investigation and remediation costs can satisfy the $5,000 statutory threshold. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016); *Speed of Light Ops, LLC v. Elliot*, at *4-5, No. 222CV00246DAKDBP, 2023 WL 2815875, at *5 (D. Utah Mar. 21, 2023), report and recommendation adopted, No. 2:22CV246-DAK-DBP,

**B.**    **HSOne is Substantially Likely to Succeed on the Merits of its DMCA Claim.**

If a person "avoided, bypassed, removed, deactivated, or impaired [] technological measures" for the purpose of accessing copyrighted material, that person violated the DMCA § 1201. *TLS Grp., S.A. v. NuCloud Glob., Inc.,* No. 2:15-cv-00533-TC, 2016 WL 1562910 (D. Utah Apr. 18, 2016).

"To state a claim under § 1201(a)(1)(A), a plaintiff must show: (1) that the work was protected under the Copyright Act; (2) that the copyrighted work was protected by a technological measure that effectively controls access; and, (3) that the measure was circumvented in order to obtain access." *In re: Maxim Integrated Products, Inc.*, No. 12-244, 2013 WL 12141373, at *16 (W.D. Pa. Mar. 19, 2013) (citing 17 U.S.C. § 1201(a)(1)(A)) (internal marks omitted).  To "circumvent a technological measure" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."[5]  It is the electronic equivalent of breaking into a locked room in order to obtain a copy of a book." *Id.* at *24 (citing to H.R. Rep. No. 105-551, pt. 1, at 17 (1998) (citations omitted)).

Here, HSOne's Dentrix software source code is protected under the Copyright Act. HSOne's authorization and security measures are meant to protect that copyrighted source code. Vyne's conduct, detailed throughout this motion and the Complaint, circumvents multiple HSOne protective measures to access HSOne's copyrighted software.  The core of Vyne's exploit scheme is to misappropriate credentials so that it can decrypt configuration files without HSOne's authority.  And runtime patching of security flags in DtxHelp.dll runs afoul of the DMCA because the alteration of the copyrighted software library (DtxHelp.dll) is accomplished for purposes of

---

2023 WL 2814604 (D. Utah Apr. 6, 2023); *Deutsch v. Hum. Res. Mgmt., Inc.*, No. 19-CV-5305, 2020 WL 1877671, at *5 (S.D.N.Y. Apr. 15, 2020) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F. 3d 393, 439 (2d Cir. 2004)).
[5] § 1201(a)(3)(A); *see also NuCloud*, 2016 WL 1562910 at *23.

bypassing, removing, deactivating, or impairing HSOne's technological protective measures. Vyne's hack changes the program while it is running so that the program ignores its own security checks. This bypasses and impairs HSOne's security measures.

Where a party reverse engineers software in order to change its functionality, this violates the DMCA's anti-circumvention provisions. The District of Utah ruled so in *NuCloud*, when it found that "TLS entered the room with a key provided by NuCloud and then proceeded to change the locks so that NuCloud could no longer gain access or lock the room." *Id.* at 10. This is precisely what Vyne is doing when it makes it so that HSOne cannot patch or upgrade its software in the face of Vyne's exploits.

### C.   HSOne is Substantially Likely to Succeed on the Merits of its Trespass to Chattels Claim.

Traditionally, trespass to chattels is "understood to occur when one intentionally (a) dispossess[es] another of the chattel, or (b) us[es] or intermeddl[es] with a chattel in the possession of another." *Nassi v. Hatsis*, 525 P.3d 117, 122 (Utah Ct. App. 2023) (brackets in original) (quoting the Restatement (Second) of Torts § 217 (Am. L. Inst. 1965)).

Multiple courts have applied the trespass to chattels common law claim to computer intrusion. *See, e.g.*, *United States v. Ackerman*, 831 F.3d 1292, 1308 (10th Cir. 2016) (reviewing commonly cited decisions applying trespass to chattels to the Internet context, including *eBay, Inc. v. Bidder's Edge* and *CompuServe v. Cyber Promotions*).[6]

Vyne's hacks of HSOne's Dentrix systems constitute egregious trespass to HSOne's software application and database. Vyne's conduct dispossesses HSOne of access to patch and secure its own software and intermeddles with HSOne's operations of its application, services, and

---

[6] *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1063, 1069–70 (N.D. Cal. 2000); *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F.Supp. 1015, 1019, 1027 (S.D. Ohio 1997); *Thrifty–Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 1565–67 (1996)).

database.  This supports a conclusion at the preliminary injunction stage that HSOne is likely to succeed on this cause of action.  *See id.*; *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (affirming preliminary injunction based on a trespass claim against "automated" software "robot" programs that risked compromise to the plaintiff's computer systems).

### D.    HSOne is Substantially Likely to Succeed on the Merits of its Unfair Competition Claims.

The Utah Unfair Competition Act (UUCA) creates a private right of action, allowing for the recovery of actual damages, costs, attorney fees, and punitive damages.  Under the UUCA, a plaintiff must show (i) an intentional business act or practice by defendant, that is (ii) unlawful, unfair, or fraudulent; (iii) leading to material diminution in the value of intellectual property; and that (iv) falls under one of four enumerated categories, including "malicious cyber activity."  *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, No. 1:22-cv-00167-RJS-DAO, at *6 (D. Utah May 23, 2024) (citing Utah Code Ann. Section § 13-5a-102(4)(a)).[7]

Here, Vyne's conduct is intentional and unlawful.  It also impairs the value of HSOne's intellectual property.  Due to Vyne's hacks and exploits, HSOne's computer software does not function as effectively, its copyright protections are circumvented, and its source code is being

---

[7] Under the UUCA, "malicious cyber activity" is defined as "(a) the unlawful use of computing resources to intimidate or coerce others; (b) accessing a computer without authorization or exceeding authorized access; (c) willfully communicating, delivering, or causing the transmission of a program, information, code, or command without authorization or exceeding authorized access; and (d) intentionally or recklessly: (i) intending to defraud or materially cause damage or disruption to any computing resources or to the owner of any computing resources; or (ii) intends to materially cause damage or disruption to any computing resources indirectly through another party's computing resources."  *Id.* at 6-7 (citing Utah Code § 13-5a-102(3)).

exploited.  This lessens the value of HSOne's intellectual property tied to its Dentrix software installed on customer premises.[8]

Vyne's acts fall under UUCA "malicious cyber activity" for similar reasons that Vyne's conduct violates the CFAA.  It continues to engage in a persistent, escalating campaign of unauthorized access to HSOne's software systems, including misappropriating credentials, decrypting configuration files, injecting data, impersonating HSOne components, and intercepting of web traffic.  Vyne's intentional conduct materially disrupts HSOne's ability to deploy security patches, maintain authentication workflows, and ensure data integrity, thus causing system instability, customer complaints, disruption of services, and reputational harm.  This satisfies UUCA's § 13-5a-102(3) subsection (d)(i) (damage to owner of computing resources and intent to defraud).  Vyne also targeted HSOne's software and systems installed on customer premises, meaning the attacks occurred also indirectly through third-party computing environments, as contemplated by § 13-5a-102(3)) subsection (d)(ii).

All of this conduct together, and each of Vyne's circumventing acts, independently constitutes unfair competition in Utah.

**E.    HSOne is Substantially Likely to Succeed on the Merits of its Wiretapping Claim.**

Vyne's man-in-the-middle network traffic re-routing constitutes unlawful interception under ECPA and Utah law.  Any person who "intentionally intercepts, endeavors to intercept, or procures any other person to  intercept or endeavor to intercept, any . . . electronic communication" is liable for ECPA violations.  18 U.S.C. § 2511(1)(a).  "Intercept" means the acquisition of the

---

[8] Defendant's false claims about HSOne's software also confuses customers and interferes with HSOne's efforts to help customers upgrade and patch their systems.  This constitutes sufficient harm for purposes of IP diminution under the statute.  *See, e.g.*, *Swig Holdings, LLC v. Sodalicious, Inc.*, No. 2:15-cv-00307 (D. Utah Sept. 8, 2017) (false terminology confused customers and was sufficient to maintain an unfair competition claim).

contents of an electronic communication by use of an electronic, mechanical, or other device. 18

U.S.C. § 2510(4). "[T]he person or entity . . . which engaged in [the ECPA] violation is the person

or entity that intercepted, disclosed, or intentionally used the communication[.]" *Kirch v. Embarq

Mgmt. Co.*, 702 F.3d 1245, 1246 (10th Cir. 2012) (quotations omitted).[9]

Here, Vyne's re-routing amounts to an unlawful interception of electronic

communications. When Vyne hacks the eTrans module, it introduces a proxy that sits in the middle

of the network traffic without consent. By changing the destination to a Vyne-controlled server—

vynetrellis.com—Vyne is intentionally diverting data to Vyne's servers that would otherwise go

to HSOne's application. This kind of "man-in-the-middle approach" through which a defendant

"sen[ds] and receive[s] electronic communications to and from" a plaintiff's systems "to access

and obtain information" violates ECPA. *See In re: Maxim Integrated Prods., Inc.*, No. 12-244,

2013 WL 12141373, at *14 (W.D. Pa. Mar. 19, 2013).

Using "decryption software to descramble" sensitive information "without

authorization"—something else Vyne does—also violates ECPA to the extent it intercepts network

traffic. *Id.* at 15; *see also Dish Network L.L.C. v. Torres*, No. 6:20-cv-878-Orl-41LRH, 2020 LX

90706, at *13 (M.D. Fla. Nov. 30, 2020) (decrypting satellite network traffic violated ECPA).

Because Vyne intercepts sensitive network traffic from HSOne's applications without

HSOne's consent, HSOne is likely to prevail on its federal and state wiretapping claims.

---

[9] Vyne violates the Utah Interception of Communications Act for the same reasons it violates the ECPA. In the Utah statute, "Intercept" is defined as a "means [to] acquisition [] the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Utah Code 77-23a-3(10). The statute further states that "[a] person commits a violation of this subsection who: (i) intentionally or knowingly intercepts, endeavors to intercept, . . . any wire, electronic, or oral communication." Section 77-23a-4(b)(i).

## II.    Without a TRO, HSOne Will Continue to Suffer Irreparable Harm From Vyne's Hacking Attacks.

Vyne's escalating hacks irreparably harm HSOne.  The Tenth Circuit has found that irreparable harm "factors" include "the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004).

Here, all these factors are in play.  Due to Vyne's pernicious hacks, HSOne is unable to issue patches or security upgrades to its systems.  This is because Vyne's hacks enable it to override and block those upgrades.  Vyne's exploits, because they are hastily thrown together and shoddily coded, use a brute force approach to spam HSOne's software systems with processes and data injection to try to take over its applications.  In addition to blocking patches, this also compromises the performance and stability of HSOne's on premises software application and database.  Apart from the technical and security issues Vyne's conduct causes, it also damages HSOne's reputation and goodwill in the market.  This is especially so in light of Vyne's ongoing campaign to obfuscate the true nature of its hacking and constitutes irreparable injury for purposes of injunctive relief. *See id.*; *see also Keybank Na'l Ass'n v. Williams*, 2022 U.S. App. LEXIS 3701, No. 20-1384 at *12 (10th Cir. Feb. 10, 2022) (noting that Tenth Circuit precedent recognizes loss of "goodwill" as something that can "give rise to irreparable injury").

Further, HSOne's telemetry shows that Vyne's hacking and intrusions are increasing in scope and speed.  Unless enjoined, HSOne will be engaged in a constant battle of whack-a-mole, where every time HSOne patches one of Vyne's exploits, they will roll out a new one.  Vyne's circumventions interfere with HSOne's ability to administer and manage its software across its thousands of customers.

### III.    The Balance of the Equities Favors Granting a TRO and PI.

The balance of the equities favors HSOne.  Vyne's ongoing unlawful conduct inflicts irreparable harm on HSOne, jeopardizing its operations, reputation, and the security of sensitive data.  By contrast, a TRO would merely require Vyne to comply with the law and stop its hacking and interference with HSOne's security upgrades.

Vyne cannot claim a legitimate harm from being ordered to obey the law.  *See ClearOne Commc'ns, Inc. v. Chiang*, 608 F. Supp. 2d 1270, 1281 (D. Utah 2009) (granting preliminary injunction) ("[A]ny harm the Defendant[] suffer[s] from the injunction is the result of their own misconduct[;] [i]n other words, there can be no harm to the Defendant[] by enjoining them from engaging in illegal activities.").  Vyne, like others, "has no legitimate interest in violating the CFAA."  *See, e.g.*, *Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279, 1297 (S.D. Fla. 2020) (punctuation omitted) (citing cases).

HSOne, in contrast, faces significant harm to its software systems, reputation, operational integrity, and data security.  Absent a TRO, HSOne will continue to face an inequitable situation where Vyne is able to hack its database and application to gain unfettered access in the riskiest possible way, while damaging HSOne's goodwill in the process based on spreading false statements about Vyne's conduct.

### IV.    Hacking, Technical Circumvention, and Wiretapping Dental Patient Records is not in the Public's Interest.

It is in the public interest to enjoin bad actors from hacking software to overcome technical measures aimed at protecting that software and enforce the CFAA:  "Prohibiting defendants from further accessing the 'site admin' portion [in violation of the CFAA] … would, if anything, tend to serve the public interest."  *AssociationVoice, Inc. v. AtHomeNet, Inc.*, Civil Action No. 10-cv-00109-CMA-MEH,, at *38 (D. Colo. Jan. 6, 2011).  That result accords with the national consensus that "public interest is clearly served by enforcing statutes designed to protect the

public, such as RICO, the CFAA, the ECPA, and the Lanham Act." *Google LLC v. Starovikov*, Civil Action No. 1:21-cv-10260-DLC, at *10 (S.D.N.Y. Dec. 16, 2021); *see also Dish Network L.L.C. v. Torres*, 2020 LX 90706, at *14 ("[P]ublic interest would be served by enforcing the ECPA and protecting the copyrighted programming that the Defendant unlawfully accessed."); *DISH Network L.L.C. v. Rios*, No. 2:14-cv-2549-WBS-KJN,, at *17 (E.D. Cal. Feb. 13, 2015) ("[T]he public interest would undoubtedly be served by the enforcement of a federal law such as the ECPA.").

The public interest also favors enforcement of DMCA anti-circumvention provisions that protect access controls. In the DMCA preliminary injunction context, the Ninth Circuit affirmed a preliminary injunction because "the public has a compelling interest in protecting copyright owners' marketable rights to their work." *Disney Enters. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017). The same rationale applies here: Vyne misappropriates credentials to bypass HSOne's technical measures designed to govern the use of its copyrighted software.

Vyne's conduct, left unchecked, will also erode confidence in the broader healthcare and digital space. As courts in this district have recognized, protection of patient data is of paramount public interest and concern. *See UHS of Provo Canyon, Inc.*, 2024 WL 4279243, at *19. The public's confidence in digital platforms and services hinges on the assurance that personal information is secure. *See Stackla, Inc. v. Facebook Inc.*, No. 19-CV-05849-PJH, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019) ("Facebook's ability to decisively police the integrity of its platforms is without question a pressing public interest. In particular, the public has a strong interest in the integrity of Facebook's platforms, Facebook's policing of those platforms for abuses, and Facebook's protection of its users' privacy.").

If Vyne is allowed to continue its hacks, then all developers who seek to circumvent a company's API will have free rein to implement any hacks they wish, even if that involves

misappropriating credentials, decrypting encrypted data, or wiretapping. A TRO and PI in this case will deter such egregious conduct.

Because HSOne is likely to prevail on its claims, will be irreparably harmed absent an injunction, is on the right side of the balance of equities, and because an injunction is in the public interest, early injunctive relief in this case is merited and appropriate. Indeed, it is critical to maintain confidence in the precept that a developer's software is their own and cannot be hacked and exploited just because another developer does not wish to engage commercially.

## V.    HSOne requests tailored relief to return the situation to before there was conflict about Vyne's hacking.

The relief HSOne seeks through this motion is narrow. HSOne seeks a TRO to stop Vyne from continuing to carry out its hacking and security circumvention attacks on HSOne's software and systems. HSOne's requested relief is, at its core, prohibitory (i.e., no security circumvention; no tampering; no interference), and includes only minimal restorative steps (restoration of altered configuration files and certification). This preserves the last peaceable uncontested status and prevents further hacking.

Plaintiff respectfully requests that the Court issue a Temporary Restraining Order and a Preliminary Injunction, ordering that effective immediately and until further order of the Court, Vyne, its officers, agents, contractors, service providers, servants, employees, affiliates, attorneys, and all persons in active concert or participation with any of them, are:

1. Enjoined from engaging in non-approved workarounds of HSOne's platforms;

2. Enjoined from circumventing, or aiding or assisting anyone in circumventing HSOne's security upgrades and patches;

3. Enjoined from subverting HSOne's security upgrades, patches, and implementations;

4. Ordered to cooperate with HSOne in implementing its security updates and fixing Vyne's malicious hacks;

5.  Ordered to cooperate and not unduly burden customers with respect to HSOne's efforts to help customers to transfer to approved channels;

6.  Enjoined from tampering, altering, or modifying HSOne's eTrans/Data Services configuration values;

7.  Ordered to restore the eTrans/Data services values to their original values, and issue a sworn certificate of compliance within a reasonable window of time (such as 10 days);

8.  Enjoined from inserting, altering, or executing code that writes, overwrites, or otherwise affects HSOne's Dentrix databases without authorization;

9.  Enjoined from creating any workarounds or methods, such as HTTP/HTTPS local proxies, designed to intercept or re-route data traffic;

10.  Enjoined from exploiting, altering, or modifying Dentrix debug configuration files;

11.  Ordered to preserve logs, scripts, telemetry, binaries, certificates/keys, and related documents and communications;

12.  This injunction will remain in effect until further order of the Court, with the matter set for a preliminary injunction hearing on a date set by the Court;

13.  Plaintiff requests such further equitable relief as is necessary to effectuate and enforce the foregoing restraints, including impoundment and destruction of circumvention tools upon final relief.

## CONCLUSION

Because Vyne will stop at nothing to hack HSOne's software systems, including taking over administrative control and blocking security patches and upgrades, HSOne respectfully requests that the Court grant temporary and preliminary injunctive relief.  This narrow relief is critical to restore the last peaceable status quo and permit HSOne to secure its customers' Dentrix software deployments.

Dated, this October 7, 2025,

GREENBERG TRAURIG LLP

By */s/ Michael Burshteyn*
    Michael Burshteyn

GREENBERG TRAURIG, LLP
Michael Burshteyn (*pro hac vice*)
Marcelo Barros (*pro hac vice pending*)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Garrett Messerly
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: 801.478.6900
Garrett.Messerly@gtlaw.com

Sydney Parks (*pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
Sydney.Parks@gtlaw.com

*Attorneys for Plaintiff, Henry Schein One, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of October, 2025 a copy of Henry Schein One's Motion For Temporary Restraining Order and Preliminary Injunction, the Memorandum of Law in support thereof, and proposed order were emailed to the following persons, who stated that they represented Defendant in connection with the current dispute between the parties:

> Michael Shuster
> mshuster@hsgllp.com
> Vincent Levy
> vlevy@hsgllp.com
> Holwell Shuster & Goldberg LLP

These materials were also sent via Overnight Mail on October 8, 2025, to the following:

> National Electronic Attachment, Inc. D/B/A Vyne Dental
> 100 Ashford Center North, Suite 300
> Dunwoody, GA  30338
>
> National Electronic Attachment, Inc. D/B/A Vyne Dental
> ℅ Corporation Service Company
> 2 Sun Court, Suite 400
> Peachtree Corners, GA  30092
>
> National Electronic Attachment, Inc. D/B/A Vyne Dental
> ℅ Corporation Service Company
> 251 Little Falls Drive
> Wilmington, DE  19808

*/s/ Suzanne Williams*

# EXHIBIT 3

For Updates on API Exchange Security Enhancements
Click here

Home  ›  About Us  ›  Press Release

PRESS RELEASE

# Henry Schein One is More Than a Practice Management System – It's Revolutionizing Dental with the Most Connected Platform



**FOR IMMEDIATE RELEASE**

**Henry Schein One is More Than a Practice Management System – It's Revolutionizing Dental with the Most Connected Platform**

**American Fork, Utah – February 20, 2025** – Henry Schein One today announced at the 2025 Chicago Midwinter Meeting a new era of dental practice management. With its continued momentum toward the most connected platform, the Company is enhancing security, driving innovation, and creating automated synergies for common dental workflows.

"The industry is hungry for what we have to offer," said Brian Weatherly, Chief Executive Officer, Henry Schein One. "We're aiming to revolutionize dentistry by making technology invisible, completely automating processes like revenue cycle management and patient flow. Our goal is to free up clinicians and their teams to focus on patient care. We envision practices operating with effortless efficiency, freeing doctors to rediscover the joy of their work and dedicate more time to what they love."

*Reliable Support and Security*

Over the past year, Henry Schein One has focused on improving its services, performance, and reliability. The company now has an average support call response time of just 90 seconds, with 98 percent of customers rating their experience as good or excellent. This commitment to support extends to minimizing stability and security risks associated with outdated software. The Company will soon offer an enhanced support plan for its on-site platform, featuring regular, automatic upgrades to the latest versions.

"I don't ever want to use old technology when more efficient, secure options are available," said Tamara Whitley, Co-Owner and Practice Administrator of Whitley Family Dental in Dallas, TX. "Consumers today understand the value of regular updates – just look at how much we rely on updated apps on our smart phones. For our practice, automatic platform upgrades are essential to maximize our technology investment, protect our critical data, and deliver the best possible care to our patients."

*Future-Ready Innovation*

Henry Schein One is driving innovation through native applications like Detect AI powered by VideaHealth and Voice Perio powered by Bola AI, with its API Exchange, and through partnerships like Reserve with Google.

"Integrating with the API Exchange transformed our solution by streamlining scheduling workflows, reducing manual input errors, and optimizing treatment planning," said Dr. Kwane Watson, DDS, Co-founder and CEO of Kare Mobile in Louisville, KY. "With real-time data synchronization, our AI-driven system can now intelligently coordinate patient sequencing, factor in regional cost variances, and automate appointment booking with unprecedented efficiency. This integration has not only improved operational accuracy but also enhanced the patient experience by providing seamless, data-driven scheduling solutions."

*Booking-to-Billing Efficiency*

A true connected platform must create automated synergies between common dental workflows. To address this, Henry Schein One is streamlining the entire patient intake process, from booking to check-in to payment. Quick and easy ID and insurance card scanning automatically populates the patient record, while automated eligibility verification ensures accurate coverage information. Integrated clinical imaging workflows further enhance efficiency by automatically linking images and CDT codes, significantly reducing claim denials and improving billing accuracy.

"We've had an 80% decrease in claims denials because the platform automatically codes all images with CDT codes to speed insurance processing," says Dr. Rick Hagstrom, DDS, Owner of A Shop for Smiles in La Mesa, CA. "The process takes the guesswork and hassle out of insurance billing, so my team can devote more time to creating the best possible experience for our patients."

This streamlined efficiency extends to financial management as well. Integrated payment processing through partners like Worldpay ensures accurate financial records with direct ledger write-back, minimizing fraud and embezzlement risks, while saving hours of time.

Learn More: 2025 Chicago Midwinter Dental Meeting

Visit Henry Schein One at booth #3215 at the 2025 Chicago Midwinter Dental Meeting to learn more. Join our in-booth "Shark Tank" happy hour on Friday, February 21, at 4:30 PM CT, led by Henry Schein One's leadership team, including Dr. Ryan Hungate, Chief Clinical and Strategy Officer; Martin Kearns, General Manager, Revenue Cycle Management; and Barbi Elmore, Senior Director, Product Management.



| Dental Solutions ⌄ | Products ⌄ | Insights ⌄ | About ⌄ |    Search 🔍 |

## About Henry Schein One

Henry Schein One, a leader in dental software, empowers dentists to focus on patient care, ensuring practice success.

With its simple and integrated software, practices are finally more seamless, more efficient, and more profitable—meaning patients and practitioners are happier. With comprehensive solutions: demand generation, patient experience, practice management, revenue management, dental analytics, and clinical workflow, dental practices will be running smoother than ever before.

Henry Schein One, LLC, is a joint venture between Henry Schein, Inc. (Nasdaq: HSIC) and Internet Brands. The company's portfolio of leading brands includes Dentrix®, Dentrix Ascend®, Jarvis Analytics™, TechCentral™, Lighthouse360, and DentalPlans.com®, along with solutions offered through international companies, including Dentally and Software of Excellence, among others. For a full list of our brands, please visit our website or connect with us on LinkedIn.

## Media Contact

**Claire Barbier**
Communications Manager, Henry Schein One
Claire.barbier@henryscheinone.com

# EXHIBIT 4



1220 South 630 East, Suite 100
American Fork, Utah 84003

Call us at 800-336-8749

Dental Solutions

Products

Insights

Support

Search

Copyright ©2025 Henry Schein One, LLC. All rights reserved. Various trademarks held by their respective owners.

Terms and Conditions

Privacy Statement

Do Not Sell My Personal Information

Declarations

GREENBERG TRAURIG, LLP
Michael Burshteyn (*pro hac vice*)
Marcelo Barros (*pro hac vice pending*)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com

Garrett W. Messerly (Utah SBN 15678)
222 South Main Street, Suite 1730
Salt Lake City, Utah  84101
Telephone: 801.478.6900
Garrett.Messerly@gtlaw.com

Sydney Parks (*pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
Sydney.Parks@gtlaw.com

*Attorneys for Plaintiff, Henry Schein One, LLC*

---

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| HENRY SCHEIN ONE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ELECTRONIC ATTACHMENT, INC. d/b/a VYNE DENTAL, a Delaware corporation,<br><br>Defendant. | **DECLARATION OF KENTON MCDANIEL IN SUPPORT OF HENRY SCHEIN ONE'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Case No. 2:25-cv-00883-JCB<br><br>Magistrate Judge Jared C. Bennett |

## DECLARATION OF KENTON MCDANIEL

I, Kenton McDaniel, declare under penalty of perjury:

1.      I am the Chief Information Security Officer (CISO) at HSOne.  I submit this
declaration in support of Henry Schein One LLC's ("HSOne") motion for a temporary restraining
order and preliminary injunction against National Electronic Attachment, Inc. d/b/a Vyne Dental
Dental ("Vyne").  Unless otherwise stated, I have personal knowledge of the facts set forth in this
declaration and if asked to testify as to these facts, I would be competent to do so.

### HSOne is a Leading Dental Software Provider.

2.      HSOne is a Utah-based dental software company.  Its dental software platforms
simplify workflows, enhance patient care, and streamline practices for over a hundred thousand
dentists.  HSOne's mission is to accelerate the future of dental care through its pioneering Dentrix
practice management systems.  Because Dentrix is a hub for HSOne's customers' dental practices,
many third-party vendors seek to integrate and interoperate with it.  Though it has no obligation to
do so, HSOne enables this interoperation through its API Exchange.

3.      HSOne invests significant resources in making its API reliable and secure for the
benefit of its integration partners and customers.  It implements robust access controls, encryption,
system monitoring, and a variety of other technical measures to safeguard its customers' sensitive
business and patient health data.  At least 140 third-party vendors make use of HSOne's API
Exchange to offer solutions to HSOne's customers in over 40 categories.  These categories include
patient engagement, revenue cycle management, analytics, and imaging, among others.  The API
contains over 750 data endpoints enabling developers to build a plethora of applications that work
with Dentrix.  HSOne welcomes any vendor to participate in the program, and vendors join

voluntarily. All participants in the API Exchange must agree to HSOne's Terms of Use, which is standard and common for any enterprise API solution in the industry. HSOne reviews the security of its vendors, offers best practices, and maintains a commitment to support the reliability of its API and underlying Dentrix software platform.

### Vyne is a Billing Solution Intent on Bypassing HSOne's Secure API.

4.    Vyne is a company that provides a point solution for dental practices to manage their billing. To facilitate its operations, Vyne seeks to integrate with practice management platforms like Dentrix. Dentrix does not provide API endpoints for claims, as those are unique data fields whose automated import and export would risk data integrity compromises. For claims, Dentrix has backend integrations, integrations that it has offered to implement with Vyne.

5.    Vyne's haphazard approach creates multiple conflicting sources of truth inside a dental practice's systems, eroding reliability of the data.

6.    Customers wanting to use Vyne still have a path forward, which consists of manually submitting information and working with claims clearinghouses to support back-end integration. This approach has been adopted by others. Rather than accept the secure integration model HSOne offered—or use the API features Vyne can use—Vyne refused HSOne's API terms and sought to exploit HSOne's software for purposes of direct, read-write access at scale to HSOne-managed software on customer systems. Vyne has devoted its resources to circumventing HSOne's technical measures that block unauthorized access and to exfiltrate HSOne customer data *en masse*.

7.    Vyne also hacks HSOne's Dentrix software platform and systems so that it can inject and write data back into HSOne's software platform as well. Vyne appears to take great

care to obfuscate what it is really doing and purports to act with authorization, even though Vyne has not disclosed its hacking methods to its customers; customers do not have authority to authorize any third-party access of HSOne's software system; and HSOne has made clear to Vyne that its conduct is unauthorized and must cease.

8.    HSOne has recently implemented telemetry to track malicious hacking of its software platform and increase Dentrix's security monitoring capabilities.  This, along with HSOne's other diligent investigation methods, has uncovered the following array of deliberate circumvention methods, including: (a) credential misappropriation and binary masquerading; (b) administrator privilege escalation; (c) patch tampering; (d) component impersonation; and (e) code injection for mass data export.

9.    Credential misappropriation and binary masquerading:  Vyne misappropriates Dentrix configuration files (e.g., *FairCom C-Tree* settings) containing encrypted administrator credentials.  Vyne also exploits HSOne's source code to retrieve private decryption keys to decrypt those files.  Further, Vyne hijacks application binaries to make its own application appear legitimate to HSOne's Dentrix software platform.

10.   Administrator privilege escalation:  By decrypting files such as the *dtx.config* file, Vyne is able to recover a passphrase and generate an administrator password.  This allows Vyne to escalate its privileges and function as an administrator of the HSOne software platform on the customer premises, even though Vyne is not authorized to be a Dentrix administrator.

11.   Patch tampering:  Vyne interferes and circumvents HSOne's security measures designed to stop hacks like the ones it is conducting.  Vyne does so through runtime patching of security flags in HSOne's DtxHelp.dll file as well as disk-level patching of the same DLL and

redistribution.  This interferes with HSOne's security patches and fixes that it would otherwise regularly send to its customers as needed.

12.    <u>Component impersonation</u>:    Vyne rebuilds Dentrix help components with embedded secrets to survive HSOne updates or patches and develops malicious software that mimics Dentrix to interface with its databases and services.

13.    <u>Code injection for mass data export</u>:  Vyne modifies code at the print driver level to export sensitive data from HSOne's software systems in circumvention of the HSOne API. Vyne also injects malicious code into Dentrix to write data into files and the database without authorization.  In other words, Vyne both reads and writes data without authorization.

14.    Vyne's methods and conduct reveal persistent multipronged methods of access without authorization and circumvention of HSOne's technical security measures.

15.    Multiple of Vyne's employees, including its Chief Executive Officer as well as their President and Chief Technology Officer used to work at HSOne (at the time known as Henry Schein Practice Solutions) in Utah.   These former senior leaders have significant insider knowledge of HSOne's product and technical systems.

**<u>Vyne's Latest Hacks in Recent Weeks Block HSOne from Issuing Security Patches and Updates.</u>**

16.    In recent weeks, Vyne has escalated its conduct and deployed new malicious hacking methods even while the parties have been engaging in commercial discussions.  Earlier this year, HSOne began receiving an unusual volume of customer complaints concerning Dentrix system instability, failed claim submissions, and unexplained disruptions to eligibility and payment workflows.   These complaints were at first sporadic but grew in frequency and consistency, causing HSOne to begin to investigate.  To better understand the situation, HSOne

developed and deployed internal telemetry capabilities to monitor its software systems and endpoints across its customer deployments. This telemetry allowed HSOne to track configuration anomalies, unauthorized traffic redirection, and patterns of failed authentication across its customer base. In recent weeks, the telemetry data showed that Vyne has been releasing a rapid succession of software updates—at least a dozen distinct versions—aimed at hacking Dentrix. Many of Vyne's updates appear to have failed, on information and belief, because they did not properly consider HSOne's software parameters. Vyne continued to issue new updates to circumvent HSOne's security measures. Customers who installed these updates often experienced system degradation, failed integrations, and increased support needs.

17. As one method, Vyne reverse-engineers HSOne's configuration files and decrypting them by misappropriating private decryption keys HSOne provides to its customers. Vyne then injects data into the configuration files, including programmatically intercepting Internet traffic and redirecting it to its vtrans.vynetrellis.com servers. The result is the rerouting of patient claim data to Vyne controlled servers.

18. This screenshot shows the result of Vyne's latest approach:



19.    By impersonating an administrative user using its improperly gained escalated privileges, Vyne overwrites the Dentrix software systems settings to intercept traffic.  Vyne's exploit causes Dentrix to treat Vyne as the authorized recipient of claim submissions and other data transactions.  In the cybersecurity realm, this is described as a man-in-the-middle attack.  Man-in-the-middle attacks enable hackers to intercept communications, like Vyne is doing here, and redirect them to their own systems.

20.    In a typical, authorized workflow, Dentrix's eTrans system uses a secure configuration file to determine where to send claim data and how to authenticate the transmission.  This file contains the eTrans User ID and the gateway URL—both of which are essential for routing data to HSOne's secure servers and for verifying the legitimacy of the transaction.  When

properly configured, the system ensures that claims, eligibility checks, and payment records are transmitted securely to HSOne, processed, and returned to the dental practice.

21.    Through its telemetry and customer logs, HSOne uncovered, on or around September 10, 2025, that Vyne was intercepting Internet traffic from HSOne's customers that was meant to go to HSOne and redirecting those transmissions to a Vyne endpoint through another means.  Vyne did this by exploiting a debugging function in Dentrix and modifying the eTrans file.

22.    Vyne's hijack subverted that authorized workflow.  By exploiting a debug function in Dentrix to inject a malicious configuration, Vyne causes the Dentrix software to send data not to HSOne's secure gateway, but to a Vyne-controlled server.  In effect, Vyne inserts itself as the first recipient on all outbound data.  Vyne's server receives the data, processes it, and then passes it further along.  This redirection is not authorized by HSOne.

23.    Vyne's modifications break the authentication flow for multiple HSOne services that rely on the same DataServices ID with which Vyne interferes, including HSOne's Eligibility Essentials, Quickbill Premium, and Request to Pay services.  The result is that HSOne customers experience failed claims, undelivered payment records, and system instability.

24.    Vyne's interference also obstructs HSOne's ability to deploy security patches. HSOne's patching workflow relies on the same authenticated DataServices connections with which Vyne interferes.  This means that Vyne's malicious interception and substitution severs HSOne's essential connection to its own platform installed in customer environments.

25.    Even if HSOne were to repair the configuration setting, Vyne's software has functions to restore the malicious proxy-in-the-middle without user interaction, thus reverting

HSOne's updates and perpetuating the unauthorized data interception and computer access. In sum, Vyne has embedded itself so deep into HSOne's software that it can now override security measures, impersonate HSOne systems, and intercept protected communications on HSOne's Dentrix systems installed at customer premises.

26.     Vyne's conduct is creating significant disruption across HSOne's customer base. It is causing HSOne to have to respond to a plethora of customers experiencing interruptions, failures, and system instability, all because of Vyne's hacks.

27.     Vyne's conduct is egregious for a variety of reasons. First, it undermines the integrity of HSOne's authentication and security architecture. Second, it exposes sensitive patient and financial data and creates a vulnerability for access by unauthorized third parties. Third, it allows Vyne to manipulate or delay the flow of information, potentially corrupting records or interfering with time-sensitive transactions. Fourth, it deprives HSOne of the ability to monitor, audit, or secure the data flow—effectively stripping HSOne of control over its own system.

28.     Vyne's actions are not merely unauthorized; they are corrosive to the trust, security, and operability of HSOne's software. Vyne's acts undermine the fundamental security architecture of HSOne's software solutions and inflict significant reputational and business harm to HSOne. HSOne's customers are frustrated because their systems are not working properly and are misled by Vyne to direct that frustration at HSOne.

29.     In the days preceding this filing, Vyne has continued to roll out new upgrades and implement new and more advanced technical circumventions of HSOne's security controls. For instance, just in the last week, HSOne has uncovered evidence that Vyne has issued new updates which, on information and belief, contain additional exploits. HSOne has also uncovered evidence

that Vyne is misappropriating HSOne software credentials and placing them into configuration files without authorization.

30.    In parallel with its technical intrusions, Vyne is making false statements to HSOne's customers about its conduct and HSOne's software systems.  Vyne has intentionally not disclosed the nature of its hacking while publicly stating that its interactions with HSOne's software are authorized and benign.  Vyne's false statements have caused HSOne customers to reach out to HSOne based on their false impression and interfered with HSOne's relationships and contracts with those customers.  Vyne's messaging campaign includes mass email blasts, public statements by its CEO, and other communications designed to obscure Vyne's unauthorized misconduct and shift blame to HSOne for working to secure its own software.

31.    Attached as Exhibit 1 is an example of one such communication Vyne issued to its own and HSOne's customers on August 11, 2025.

32.    Attached as Exhibit 2 is the letter HSOne sent to Vyne on August 26, 2025.

33.    Attached as Exhibit 3 is the response Vyne sent on September 6, 2025.

34.    HSOne sought to engage in good faith with Vyne to negotiate a commercial agreement.  This would permit Vyne to have the advantage of an integration with HSOne similar to how HSOne integrates with its current clearinghouse offering.  While the parties negotiated, however, Vyne kept hacking.  I am familiar with these negotiations through my role at HSOne.

35.    HSOne also proposed the parties sign a tolling agreement while their discussions continued.  Vyne initially responded that it did not understand the purpose of such an agreement, because the negotiations would happen quickly.  After HSOne explained that the tolling agreement would still be an important sign of good faith, Vyne agreed to pursue it.  HSOne and Vyne came

to terms on the tolling agreement on September 15, 2025.  HSOne executed that day.  It is unclear whether Vyne has signed it or not.  When HSOne followed up with Vyne about Vyne's signature, Vyne claimed this was somehow a basis to cut off negotiations with HSOne.

I declare under penalty of perjury of the laws of the United States that the foregoing facts and allegations are true and correct to the best of my knowledge, information and belief.  Executed on this 7th day of October, 2025, in Highland, Utah.

Respectfully submitted,

_____
Kenton McDaniel

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 8th day of October, 2025, a copy of the Declaration Of Kenton McDaniel in Support of Henry Schein One's Motion For Temporary Restraining Order And Preliminary Injunction was emailed to the following persons, who stated that they represented Defendant in connection with the current dispute between the parties:

> Michael Shuster
> mshuster@hsgllp.com
> Vincent Levy
> vlevy@hsgllp.com
> Holwell Shuster & Goldberg LLP

These materials were also sent via Overnight Mail on October 8, 2025, to the following:

> National Electronic Attachment, Inc. D/B/A Vyne Dental
> 100 Ashford Center North, Suite 300
> Dunwoody, GA  30338

> National Electronic Attachment, Inc. D/B/A Vyne Dental
> % Corporation Service Company
> 2 Sun Court, Suite 400
> Peachtree Corners, GA  30092

> National Electronic Attachment, Inc. D/B/A Vyne Dental
> % Corporation Service Company
> 251 Little Falls Drive
> Wilmington, DE  19808

*/s/ Suzanne Williams*

# EXHIBIT 5

**THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| HENRY SCHEIN ONE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ELECTRONIC ATTACHMENT, INC. d/b/a VYNE DENTAL, a Delaware corporation,<br><br>Defendant. | **SUPPLEMENTAL DECLARATION OF KENTON MCDANIEL IN SUPPORT OF HENRY SCHEIN ONE'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Case No. 2:25-cv-00883-AMA-JCB<br><br>Hon. Judge Ann Marie McIff Allen<br>Hon. Magistrate Judge Jared C. Bennett |

**SUPPLEMENTAL DECLARATION OF KENTON MCDANIEL**

I, Kenton McDaniel, declare under penalty of perjury:

1.      I am the Chief Information Security Officer (CISO) at HSOne.  I previously submitted a declaration, dated October 7, 2025, in support of Henry Schein One LLC's ("HSOne") Motion for Temporary Restraining Order and Preliminary Injunction.  I now submit this supplemental declaration to provide additional facts uncovered.

2.      Since HSOne filed its Complaint on October 3, 2025, HSOne has continued its investigative efforts into Vyne's unauthorized access and interferences with HSOne's Dentrix software.  These efforts have uncovered additional security concerns and hundreds of dangerous deployments by Vyne since HSOne's Complaint and TRO were filed.  From October 3 to October 10, 2025, our telemetry has uncovered that Vyne has deployed at least 400 malicious instances of its software that access HSOne's software systems and database without authorization.

3.      HSOne's continued investigation has uncovered additional details about Vyne's unauthorized access as well.  For instance, we have uncovered that Vyne is modifying folder permission access to circumvent HSOne's security functionality.  Vyne is giving broad access to users beyond administrators to folders that they would not otherwise have access to, including sensitive directories.  This is a dangerous practice that creates security risks for HSOne's customers and HSOne's software.

4.      Further, a recent customer complaint has confirmed that Vyne is executing code to enact man-in-the-middle interception and redirect network traffic.  HSOne's investigation shows that Vyne is not only misappropriating credentials to HSOne software systems, but they are hard-coding them in memory and storing them persistently in Vyne's servers after they are misappropriated.  This is an unauthorized and dangerous practice for security purposes.

5.      As described in the Complaint, Vyne's strategy is to deploy rapid iterations of their software to attempt to work around security measures.   HSOne's telemetry monitoring corroborates that Vyne has been deploying these workaround updates on a weekly basis.  HSOne's capabilities allow for the comparison against other software platforms.  Vyne's pattern of pushing updates is extremely unusual and abnormal and can only be explained by its persistent efforts to access Dentrix instances deployed at customer sites and circumvent HSOne's technical protections.

6.      We will continue to investigate and record evidence of Vyne's unauthorized access and intrusions of our systems.

7.      Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration and if asked to testify as to these facts, I would be competent to do so.

I declare under penalty of perjury of the laws of the United States that the foregoing facts and allegations are true and correct to the best of my knowledge, information and belief.

Executed on this 13th day of October, 2025, in Highland, Utah.

Respectfully submitted,

_____
Kenton McDaniel

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of October, 2025, I caused the foregoing

**SUPPLEMENTAL DECLARATION OF KENTON MCDANIEL IN SUPPORT OF**

**HENRY SCHEIN ONE'S MOTION FOR TEMPORARY RESTRAINING ORDER AND**

**PRELIMINARY INJUNCTION** was emailed to the following persons, who stated that they

represented Defendant in connection with the current dispute between the parties:

Michael Shuster
mshuster@hsgllp.com
Vincent Levy
vlevy@hsgllp.com
Holwell Shuster & Goldberg LLP


*/s/ Suzanne Williams*

# EXHIBIT 6



Michael Burshteyn
Tel 415.590.5141
Mburshteyn@gtlaw.com

August 26, 2025

<u>Via Email</u>
National Electronic Attachment, Inc. dba Vyne Dental
Kelly Owen, General Counsel
kelly.owen@vynedental.com
james.grover@vynedental.com

Re: **Demand to Immediately Cease and Desist Unauthorized Computer and Database Access**

Ms. Owen,

We represent Henry Schein One, LLC.  If Vyne is represented by outside counsel, please direct us to them.   Henry Schein One has uncovered alarming evidence of Vyne's computer hacking of Henry Schein One's software platform.  Specifically, Henry Schein One's recent investigation shows that Vyne is unlawfully conducting cyberattacks against Henry Schein One's software, including its Dentrix system, related software services, and underlying database.

Among other things, Vyne is:

- Misappropriating configuration files, including the FAIRCOM C-TREE settings file which Henry Schein One uses to access its database;

- Misappropriating administrator credentials contained inside the FAIRCOM C-TREE settings file to modify settings inside of Dentrix;

- Exploiting Henry Schein One's source code to retrieve the private keys needed to decrypt the FAIRCOM C-TREE settings file without authorization;

- Injecting malicious code to alter the functionality of print drivers in order to unlawfully export data from Henry Schein One's platform;

- Developing software that falsely mimics Dentrix in order to interact with its database and services; and

- Signing Vyne's services with hijacked application certificates.

Vyne's conduct violates the Computer Fraud and Abuse Act and gives rise to multiple related common law and statutory claims.  Vyne has been on express notice that its access is not authorized, yet continues to do it.  Further, Vyne has now escalated its conduct and spread knowingly false and malicious statements about Henry Schein One.  Vyne is attempting to induce Henry Schein One's customers to allow it to hack the Henry Schein One software by misleading them and omitting the details of what it is really doing.

Most recently, on August 21, 2025, Vyne sent a request naming dozens of Henry Schein One customers purporting to request data access even though Vyne is on notice that its access is unlawful. This raises concerns that Vyne is continuing to interfere with Henry Schein One customer relationships and attempting to unlawfully conduct business through deception, false statements, and omissions. This is independently actionable. As Vyne knows, Henry Schein One maintains an API that vendors can use subject to standard commercial terms. Using the API, rather than unauthorized malicious exploits, is critical to maintaining security and integrity of Henry Schein One's platform and customer's data.

Vyne's conduct, including its ongoing hacking and deceptive statements and omissions, is causing Henry Schein One additional irreparable harm in that it is blocking Henry Schein One's ability to issue routine software updates to its software and interfering with Henry Schein One's valuable customer relationships.

As another way to defend its illegal computer hacking, Vyne has insinuated that Henry Schein One is in violation of the Cures Act by not making information available upon request to Vyne. This does not justify misappropriating credentials, decrypting encrypted files, and Vyne's other hacks. In any event, Henry Schein One has data sharing relationships with many entities and has been willing to negotiate an agreement for sharing information through authorized means with Vyne. But Henry Schein One is not subject to the Cures Act—which does not have a private right of action in any event. For its part, Vyne has failed to follow the request, negotiation, and approval requirements for information requests contained within the Cures Act and instead has unilaterally and without consent hacked Henry Schein One platforms to take sensitive data without request or approval. Our client remains willing to discuss authorized methods for accessing data contained within the Henry Schein One platforms but cannot and will not allow Vyne to use unauthorized and hostile methods to hack its platforms.

**By this letter, Henry Schein One demands the following:**

1. **Vyne must immediately cease all unauthorized access to Henry Schein One platforms;**

2. **Vyne must provide Henry Schein One with detailed information as to its technical computer hacking of Henry Schein One's software platform;**

3. **Vyne must stop making false and deceptive statements about its conduct with respect to Henry Schein One's software platform, and correct all the false statements made thus far;**

4. **Vyne must provide Henry Schein One a list of all Henry Schein One customers whose contracts Vyne interfered with; and**

5. **Vyne must provide Henry Schein One with an accounting of its unjust enrichment based on its unlawful computer hacking and deceptive and unfair competition.**

To be clear, Henry Schein One has never authorized Vyne to undertake any of the malicious conduct described above.

Should Vyne not stop immediately, Henry Schein One will have no choice but to escalate this matter and pursue all remedies available to it.

Vyne is further reminded of its obligation to preserve all evidence and other materials which are relevant to these matters, whether in hard copy, electronic and other medium, including information contained on personal electronic devices or back-ups of such devices. Such documents and information include, but

are not limited to, all documents, e-mails, text messages, Teams, Signal, Telegram, WhatsApp, Slack, or other electronic information that may be subject to discovery by Henry Schein One in a lawsuit regarding the matters set forth above, including the methods Vyne has used to access Henry Schein One platforms, and any continued possession and use by Vyne employees that are former Henry Schein One employees of confidential information regarding the Henry Schein One platforms.

Henry Schein One reserves all rights in law and in equity.

Sincerely,

Michael Burshteyn

Partner, Technology Litigation
Greenberg Traurig, LLP

# EXHIBIT 7

| | |
|---|---|
| **From:** | Vincent Levy <vlevy@hsgllp.com> |
| **Sent:** | Wednesday, October 1, 2025 6:51 AM |
| **To:** | Burshteyn, Michael (Shld-SFO-IP-Tech) |
| **Cc:** | Barros, Marcelo (Assoc-SFO-IP-Tech); Michael Shuster |
| **Subject:** | RE: Vyne |
| **Attachments:** | Nat'l Elec. Attachment, Inc. v. Henry Schein One, LLC - Complaint - Exhibit A.pdf; Nat'l Elec. Attachment, Inc. v. Henry Schein One, LLC - Complaint - Exhibit B.pdf; Nat'l Elec. Attachment, Inc. v. Henry Schein One, LLC - Complaint - Exhibit C.pdf; Nat'l Elec. Attachment, Inc. v. Henry Schein One, LLC - Complaint.pdf |

Dear Mike –

Vyne's CEO told HS1's CEO that he'd signed the tolling agreement but we had not transmitted his signature because Vyne did not understand what HS1 was after. HS1 had stated that HS1 wanted a tolling agreement as a gesture of good faith, and Vyne had agreed. You then sent a clean version on September 15 and said that you would "follow with a signed copy on [y]our end," but we did not hear from you for nearly ten days. We only heard from you after Vyne found itself facing what can only be described as a virus attack by your client, which deployed to hundreds of its clients a software update that actively disabled any Vyne software running on the computer systems of those customers. As Vyne's CEO explained to HS1's CEO yesterday, this was not just wrong but reckless—it could have disabled software with a Vyne certificate that ran heart monitoring software. Vyne's CEO said it was difficult not to connect the software attack to your subsequent email sending HS1's signature on the tolling agreement and asking for ours. Given all of this, Vyne's CEO told HS1's CEO that the parties needed to focus on resolving all of this and get to a signature on a binding letter of intent this week. In response, HS1's CEO made it very clear that HS1 had zero interest in reaching an amicable and reasonable resolution in short order, and threatened to initiate a lawsuit.

Given the software attacks of last week and what HS1's CEO said yesterday, HS1 left Vyne with no choice but to initiate a lawsuit, which Vyne did yesterday evening. I enclose a copy of the complaint. Please let us know if you're authorized to accept service.

Vincent Levy

HOLWELL SHUSTER & GOLDBERG LLP
Office: (646) 837-5120 | Bio
425 Lexington Ave | New York, New York 10017 | hsgllp.com

**From:** Michael.Burshteyn@gtlaw.com <Michael.Burshteyn@gtlaw.com>
**Sent:** Wednesday, October 1, 2025 1:52 AM
**To:** Vincent Levy <vlevy@hsgllp.com>
**Cc:** Marcelo.Barros@gtlaw.com; Michael Shuster <mshuster@hsgllp.com>
**Subject:** Re: Vyne

Thanks Vince. Our understanding is that Vyne's CEO thought he had signed it. If so, can you please send the signature page? The bottom line has not changed from our prior email. We need the signature. If it wasn't signed on the same day HS1 signed it, we need to come up with an addendum to reflect the effective date as it was understood. Please let us know.

**Michael Burshteyn**
Shareholder | Greenberg Traurig, LLP

101 2nd Street | Suite 2200 | San Francisco, CA 94105
T +1 415.590.5141 | GT Bio

---

**From:** Vincent Levy <vlevy@hsgllp.com>
**Sent:** Tuesday, September 30, 2025 5:50 PM
**To:** Burshteyn, Michael (Shld-SFO-IP-Tech) <Michael.Burshteyn@gtlaw.com>
**Cc:** Barros, Marcelo (Assoc-SFO-IP-Tech) <Marcelo.Barros@gtlaw.com>; Michael Shuster <mshuster@hsgllp.com>
**Subject:** Re: Vyne

Dear Mike - I understand the CEOs of our respective clients discussed this today. Thanks.

Vincent Levy
HOLWELL SHUSTER & GOLDBERG LLP
Office: (646) 837-5120 | Bio
425 Lexington Ave | New York, New York 10017 | hsgllp.com

> On Sep 29, 2025, at 10:40 PM, Michael.Burshteyn@gtlaw.com wrote:
>
>
> All, Vyne has now ignored multiple follow ups on this issue. Previously Vyne agreed to the final form of the tolling agreement and agreed that it was an important agreement to have in place to show Vyne's good faith as HS1 negotiated a potential commercial arrangement. Our client is concerned that Vyne hasn't responded to multiple requests for its signature. As Vyne can see, HS1 signed the tolling agreement when the parties agreed on September 15. HS1 then conducted negotiations with Vyne in reliance on Vyne's representation that it agreed to the terms of the tolling agreement. Vyne had previously acknowledged that given the anticipated length of discussions, a tolling agreement would not materially implicate any of HS1's claims. Even though HS1 has all the same claims it had a few weeks ago, if Vyne is now playing coy with its signature, that sends a clear signal to HS1 that Vyne is not acting in good faith. Vyne also should confirm it is treating the terms of the commercial negotiations confidential, as both sides have understood should be the case.
>
> We hope that this has just been lost in the mail and Vyne sends its signature promptly. If we do not receive a response, though, HS1 will have no choice but to conclude that Vyne is simply attempting to stall things rather than engage productively.
>
> Thank you,
> Mike

**Michael Burshteyn**
Shareholder | Greenberg Traurig, LLP
101 2nd Street | Suite 2200 | San Francisco, CA 94105
T +1 415.590.5141 | GT Bio

---

**From:** Burshteyn, Michael (Shld-SFO-IP-Tech)
**Sent:** Friday, September 26, 2025 7:37:57 PM
**To:** Barros, Marcelo (Assoc-SFO-IP-Tech) <Marcelo.Barros@gtlaw.com>; Vincent Levy
<vlevy@hsgllp.com>; Michael Shuster <mshuster@hsgllp.com>
**Subject:** RE: Vyne

Hi Vince, can you send us your side's signature page?

Thanks,
Mike

**Michael Burshteyn**
Shareholder | Greenberg Traurig, LLP

101 2nd Street | Suite 2200 | San Francisco, CA 94105
T +1 415.590.5141 | GT Bio

---

**From:** Barros, Marcelo (Assoc-SFO-IP-Tech) <Marcelo.Barros@gtlaw.com>
**Sent:** Wednesday, September 24, 2025 1:33 PM
**To:** Vincent Levy <vlevy@hsgllp.com>; Michael Shuster <mshuster@hsgllp.com>
**Cc:** Burshteyn, Michael (Shld-SFO-IP-Tech) <Michael.Burshteyn@gtlaw.com>
**Subject:** RE: Vyne

Hi all,

Confirming that Vyne executed the Tolling Agreement on your end. Please see HS1's
executed Tolling Agreement, dated September 15, 2025.

Thank you,
Marcelo

---

**From:** Burshteyn, Michael (Shld-SFO-IP-Tech) <Michael.Burshteyn@gtlaw.com>
**Sent:** Monday, September 15, 2025 10:11 AM
**To:** Vincent Levy <vlevy@hsgllp.com>; Michael Shuster <mshuster@hsgllp.com>
**Cc:** Barros, Marcelo (Assoc-SFO-IP-Tech) <Marcelo.Barros@gtlaw.com>
**Subject:** RE: Vyne

Good morning guys, here is the final clean version. We will follow with a signed copy on our end.

Thanks,
Mike

**Michael Burshteyn**
Shareholder | Greenberg Traurig, LLP

101 2nd Street | Suite 2200 | San Francisco, CA 94105
T +1 415.590.5141 | GT Bio

---

**From:** Vincent Levy <vlevy@hsgllp.com>
**Sent:** Friday, September 12, 2025 1:33 PM
**To:** Burshteyn, Michael (Shld-SFO-IP-Tech) <Michael.Burshteyn@gtlaw.com>; Michael Shuster <mshuster@hsgllp.com>
**Cc:** Barros, Marcelo (Assoc-SFO-IP-Tech) <Marcelo.Barros@gtlaw.com>
**Subject:** RE: Vyne

Hi Mike – This version of the tolling agreement is fine. Please send us a clean version for signature.

Vincent Levy
HOLWELL SHUSTER & GOLDBERG LLP
Office: (646) 837-5120 | Bio
425 Lexington Ave | New York, New York 10017 | hsgllp.com

---

**From:** Michael.Burshteyn@gtlaw.com <Michael.Burshteyn@gtlaw.com>
**Sent:** Friday, September 12, 2025 1:32 PM
**To:** Vincent Levy <vlevy@hsgllp.com>; Michael Shuster <mshuster@hsgllp.com>
**Cc:** Marcelo.Barros@gtlaw.com
**Subject:** RE: Vyne

Hi Vincent, thanks for sending this over. Our updated version attached. A few notes:

- Mutuality is OK.
- We struck some additions that do not have legal significance and instead appeared to be polemic characterizations of the dispute. We drafted this to avoid that and simply reference the claims in a straightforward manner. The draft is clear that both sides deny the others' claims. That should be enough.
- We reverted the venue and choice of law.

With respect to the NDA, the line you quote is referencing the idea that if the parties do a commercial deal, that deal will have a confidentiality clause and it will cover the confidential discussions of this agreement. This agreement is related to a settlement discussion subject to FRE 408. HS1 is not inclined to sign an NDA just to cover the settlement discussions or the potential commercial agreement at this time.

Thank you,
Mike

**Michael Burshteyn**
Shareholder | Greenberg Traurig, LLP

101 2nd Street | Suite 2200 | San Francisco, CA 94105
T +1 415.590.5141 | GT Bio

**From:** Vincent Levy <vlevy@hsgllp.com>
**Sent:** Tuesday, September 9, 2025 12:15 PM
**To:** Burshteyn, Michael (Shld-SFO-IP-Tech) <Michael.Burshteyn@gtlaw.com>
**Cc:** Michael Shuster <mshuster@hsgllp.com>; Barros, Marcelo (Assoc-SFO-IP-Tech) <Marcelo.Barros@gtlaw.com>
**Subject:** RE: Vyne

Dear Mike,

Further to our call of earlier today, Vyne is prepared to sign a tolling agreement as a gesture of good faith during the ongoing commercial discussions, provided that it is mutual. I enclose a marked-up copy of the agreement for your consideration. Please let us know if you have further edits.

On our call you also mentioned a proposed NDA to cover the discussions themselves. I note your client's draft tolling agreement included a term stating "The Confidentiality obligations of this Agreement extend to the terms of the Parties' contemplated Commercial Agreement." Thus it seems both parties agree that the commercial discussions should be confidential, but it seems to us that the sentence proposed in the draft tolling agreement is inadequate to the task. This is why Vyne proposed a separate NDA (and you will see we struck this sentence in the draft tolling agreement). I assume having an NDA won't be controversial given the sentence in your draft, and what I understand to have been the last discussions between the parties respective CEOs, but please let us know if we've missed anything. Please also feel free to send any mark-ups of the NDA proposed by Vyne.

Thanks.

Vincent Levy
HOLWELL SHUSTER & GOLDBERG LLP
Office: (646) 837-5120 | Bio
425 Lexington Ave | New York, New York 10017 | hsgllp.com

**From:** Michael.Burshteyn@gtlaw.com <Michael.Burshteyn@gtlaw.com>
**Sent:** Tuesday, September 9, 2025 12:13 PM
**To:** Vincent Levy <vlevy@hsgllp.com>
**Cc:** Michael Shuster <mshuster@hsgllp.com>; Marcelo.Barros@gtlaw.com
**Subject:** Re: Vyne

Hi guys, here's the tolling agreement.

Thanks,
Mike

**Michael Burshteyn**
Shareholder | Greenberg Traurig, LLP

101 2nd Street | Suite 2200 | San Francisco, CA 94105
T +1 415.590.5141 | GT Bio

---

**From:** Vincent Levy <vlevy@hsgllp.com>
**Sent:** Tuesday, September 9, 2025 8:40:14 AM
**To:** Burshteyn, Michael (Shld-SFO-IP-Tech) <Michael.Burshteyn@gtlaw.com>
**Cc:** Michael Shuster <mshuster@hsgllp.com>; Barros, Marcelo (Assoc-SFO-IP-Tech) <Marcelo.Barros@gtlaw.com>
**Subject:** Re: Vyne

We will try you then.

Vincent Levy
HOLWELL SHUSTER & GOLDBERG LLP
Office: (646) 837-5120 | Bio
425 Lexington Ave | New York, New York 10017 | hsgllp.com

> On Sep 9, 2025, at 11:01 AM, Michael.Burshteyn@gtlaw.com wrote:
>
> Would 9am PT work?
>
>
> **Michael Burshteyn**
> Shareholder | Greenberg Traurig, LLP
>
> 101 2nd Street | Suite 2200 | San Francisco, CA 94105
> T +1 415.590.5141 | GT Bio

---

**From:** Michael Shuster <mshuster@hsgllp.com>
**Sent:** Tuesday, September 9, 2025 4:06:39 AM
**To:** Burshteyn, Michael (Shld-SFO-IP-Tech) <Michael.Burshteyn@gtlaw.com>
**Cc:** Vincent Levy <vlevy@hsgllp.com>; Barros, Marcelo (Assoc-SFO-IP-Tech) <Marcelo.Barros@gtlaw.com>
**Subject:** Re: Vyne

Generally yes.  Can you propose a time that works for you.

Michael Shuster

HOLWELL SHUSTER & GOLDBERG LLP

Office: (646) 837-5153 | Mobile: (914) 715-6623 | Bio

425 Lexington Ave | New York, New York 10017 | hsgllp.com

---

**From:** Michael.Burshteyn@gtlaw.com <Michael.Burshteyn@gtlaw.com>
**Sent:** Tuesday, September 9, 2025 2:42:05 AM
**To:** Michael Shuster <mshuster@hsgllp.com>
**Cc:** Vincent Levy <vlevy@hsgllp.com>;
Marcelo.Barros@gtlaw.com <Marcelo.Barros@gtlaw.com>
**Subject:** RE: Vyne

Hi Michael, Vincent, do you have time for a call tomorrow?

Thanks,
Mike

**Michael Burshteyn**
Shareholder | Greenberg Traurig, LLP

101 2nd Street | Suite 2200 | San Francisco, CA 94105
T +1 415.590.5141 | GT Bio

---

**From:** Michael Shuster <mshuster@hsgllp.com>
**Sent:** Saturday, September 6, 2025 7:49 AM
**To:** Burshteyn, Michael (Shld-SFO-IP-Tech) <Michael.Burshteyn@gtlaw.com>
**Cc:** Vincent Levy <vlevy@hsgllp.com>
**Subject:** Vyne

**\*EXTERNAL TO GT\***

Michael, please see the attached in response to your letter to Vyne.

Michael Shuster

HOLWELL SHUSTER & GOLDBERG LLP

Office: (646) 837-5153 | Mobile: (914) 715-6623 | Bio

425 Lexington Ave | New York, New York 10017 | hsgllp.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# EXHIBIT 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HENRY SCHEIN ONE, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>NATIONAL ELECTRONIC ATTACHMENT, INC. d/b/a VYNE DENTAL,<br><br>     Defendant. | **ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Case No. 2:25-cv-00883<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Jared C. Bennett |

On October 8, 2025, Plaintiff Henry Schein One, LLC ("HSO"), filed a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion").[1] Plaintiff's Motion asks this Court to enter an order requiring Defendant National Electronic Attachment, Inc., doing business as Vyne Dental ("Vyne"), to take or refrain from taking action in twelve categories described in HSO's Motion and proposed order.[2] To summarize, HSO and Vyne are both involved in providing support services to dental offices and HSO seeks to prevent Vyne from taking certain actions related to HSO's software, and also seeks to require Vyne to undo certain actions HSO alleges Vyne has already taken related to that software.

The Court denies the Motion without prejudice because Vyne filed suit on September 30, 2025, in the District of Maryland.[3] The Tenth Circuit follows the first-to-file rule.

---

[1] ECF No. 14.

[2] *See id.* at 23–24 & Ex. 2.

[3] *National Electronic Attachment, Inc. v. Henry Schein One, LLC*, Case No. 1:25-cv-3246 (D. Md.).

Consequently, district courts here typically decline jurisdiction in cases filed after another federal court has already obtained jurisdiction over the subject-matter of the suit.  "Under this rule, courts consider three factors: '(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake.'"  *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018).  Here, the Maryland suit was filed three days before this suit, the case involves the exact same parties, and appears to address the same subject matter (namely Vyne's interaction with HSO's software).  Accordingly, the first-to-file rule appears to apply and counsels against this Court exercising jurisdiction in this matter. Although the Court finds it would be premature to decline jurisdiction entirely, given the District of Maryland has not yet made any determination in that regard, the Court likewise finds HSO's Motion premature given the ongoing proceedings before the District of Maryland.

Based on the foregoing, the Court denies Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction without prejudice to refiling the Motion in the event the District of Maryland determines it cannot, or will not, exercise jurisdiction in the action before that Court.  (ECF No. 14)

DATED this 8th day of October 2025.

BY THE COURT:

Ann Marie McIff Allen
United States District Judge

# EXHIBIT 9

GREENBERG TRAURIG, LLP
Michael Burshteyn (*pro hac vice*)
Marcelo Barros (*pro hac vice*)
Jennifer Bartlett (*pro hac vice pending*)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Jennifer.Bartlett@gtlaw.com

Garrett W. Messerly (Utah SBN 15678)
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: 801.478.6900
Garrett.Messerly@gtlaw.com

Sydney Parks (*pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
Sydney.Parks@gtlaw.com

*Attorneys for Plaintiff, Henry Schein One, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HENRY SCHEIN ONE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ELECTRONIC ATTACHMENT, INC. d/b/a VYNE DENTAL, a Delaware corporation,<br><br>Defendant. | **HENRY SCHEIN ONE'S MOTION FOR RECONSIDERATION OF DENIAL OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br><br>**Case No.** 2:25-cv-00883-AMA-JCB<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Jared C. Bennett |

1

Plaintiff Henry Schein One, LLC ("HSOne") moves for reconsideration of the Court's
Order Denying Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 18)
based on the first-to-file rule and respectfully states as follows:

## INTRODUCTION

HSOne respectfully submits that the Court's application of the first-to-file rule is misplaced
when the subject matter of the two lawsuits is dissimilar. Here the matters are different and can
be decided independently. HSOne's case here in Utah is about Vyne's computer hacking,
circumvention, and interception of data. Vyne's case in Maryland is about information access and
alleges that HSOne should be compelled to provide more access than it allegedly provides now.
These are distinct because whether or not HSOne provides sufficient access, there is no
justification for hacking. Vyne is breaking into HSOne's systems in an escalating and dangerous
fashion on a daily basis. That issue is not before the Maryland court. This Court in Utah alone
has the ability to stop the hacking while the parties sort out the degree of additional access, if any,
that Vyne deserves—and which venue is appropriate for that litigation.

The Maryland case cannot adjudicate relief on Vyne's hacking because HSOne has no
claims pending there, and no pending TRO. The Court's Order suggests that the court in Maryland
should first decide whether venue is appropriate in that court for Vyne's information-access
claims. That course of action might be reasonable in certain situations, but here it forces HSOne
into a situation where it is without any route to relief on its claims in the interim; if HSOne were
to file its anti-hacking claims in Maryland, Vyne would treat it as a waiver on the venue issue that
this Court observed needs resolution.

This raises significant equitable considerations relevant to the issuance of a TRO. The
Tenth Circuit in *Wakaya* held that "[a]fter determining the sequence and similarities in the cases,
courts must also determine whether any equitable considerations merit not applying the first-to-

file rule in a particular case."[1]  Absent reconsideration here, HSOne lacks an avenue for relief while the Maryland court resolves venue.  That void allows Vyne to continue its hacking on a daily basis.

The fact that Vyne is clearly forum shopping also counsels against applying the first-to-file rule.  Vyne cites a Fourth Circuit decision over forty times in its TRO brief in Maryland.  That idiosyncratic Fourth Circuit precedent is why Vyne filed there.  Vyne is not based in Maryland. Vyne and HSOne have thousands upon thousands of customers outside of Maryland.  It has no closer connection to Maryland than to Mississippi.  Utah, however, is the clear situs of the dispute, where HSOne is located, the key witnesses for all parties live, and where they have been working for years.  Even Vyne's declarations supporting their own TRO were signed in Utah.

Apart from the equitable considerations, *Wakaya's* first factor, chronology, merits reconsideration of the Court's Order as well.  Whether the first party to file truly initiated the dispute is relevant.  Here, HSOne initiated this dispute with a demand letter threatening to sue Vyne for its computer hacking on August 26, 2025.  Vyne then responded on September 6, 2025. The parties negotiated a tolling agreement with Utah venue.  Vyne, after representing that it was comfortable with the terms, did not confirm its signature.  Then Vyne preemptively sued in Maryland while pretending to negotiate and while HSOne was actually negotiating in good faith. In these situations, courts may disregard the first-to-file rule due to the true chronology of events. *See Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1231 (D. Utah 2019) ("The sequence of events here weighs against abstention."); *Nacogdoches Oil & Gas, L.L.C. v. Leading Sols., Inc.*, No. 06-2551-CM, 2007 WL 2402723, at *2–3 (D. Kan. Aug. 17, 2007) (dismissing first-filed case because it was an anticipatory action and the two competing lawsuits were close enough in time (7 weeks apart) that the first-to-file rule was not applicable).

---

[1] *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1127 (10th Cir. 2018).

HSOne respectfully requests that the Court reconsider the issue and permit the TRO and PI briefing and hearings to proceed so that HSOne's claims for emergency relief to save it from a daily hacking campaign—pending only in this Court and nowhere else—may be heard and evaluated.

## FACTUAL BACKGROUND[2]

The facts regarding Vyne's hacking, interference, and misrepresentations are set out in detail in HSOne's Complaint (ECF No. 1) and Motion for TRO.

### A.    HSOne initiated the Utah dispute before Vyne filed in Maryland.

Although Vyne technically filed first, HSOne acted first.  HSOne sent Vyne a letter on August 26, 2025 demanding Vyne stop its hacks.  Vyne then retained counsel in this matter, who responded on September 6, 2025.

HSOne then entered into commercial negotiations with Vyne.  Vyne kept hacking.  The parties negotiated a tolling agreement.  Both parties agreed on Utah venue for this agreement. HSOne and Vyne came to terms on the tolling agreement on September 15, 2025.  A true and correct copy of the Tolling Agreement executed by HSOne is attached to the Declaration of Michael Burshteyn.  It is unclear whether Vyne has signed it or not.  When HSOne followed up with Vyne about Vyne's signature, Vyne cut off negotiations with HSOne.

Knowing HSOne had valid claims against it, Vyne raced to file a complaint in the District of Maryland on September 30, 2025.[3]  HSOne filed within days.

Vyne appears to be forum shopping.  Vyne's only stated basis for venue in Maryland is that it has some affected customers there.  But HSOne and Vyne have thousands of overlapping

---

[2] Unless stated otherwise, HSOne relies on the allegations in its Motion for TRO, supported by the Declaration of Kenton McDaniel ("McDaniel Decl.").

[3] Case No. 1:25-cv-03246-MJM.

customers in every state.  Vyne is not based in Maryland.  HSOne is based in Utah.  And Vyne's CEO and CTO, both of whom submitted declarations in support of Vyne's preliminary injunction motion in Maryland, live in Utah and signed their declarations in Utah.  They both used to work for HSOne in Utah.  The nexus of the dispute is in Utah, and HSOne intends to file a transfer motion from Maryland to this Court.

> **B.** **The Utah and Maryland cases are different and can be resolved independently of each other.**

Vyne's case is about information access.  HSOne's case is about computer hacking, circumvention, and interception.  While HSOne disagrees with Vyne's allegations, the nature of the cases means that both parties could win some claims in each case.  Even if Vyne wins some argument about access—which HSOne believes it will not—Vyne is not entitled to engage in computer hacking and violating the CFAA, ECPA, DMCA, and Utah law.  The issue in the current TRO is solely whether Vyne may continue hacking HSOne's computers.

## <u>LEGAL STANDARD</u>

Reconsideration is warranted when "the court has misapprehended the facts, a party's position, or the controlling law."  *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Motions for reconsideration filed before the entry of final judgment, as here, are properly construed under Rule 54(b)."  *King v. IC Group, Inc.*, 743 F. Supp. 3d 1341, 1344 (D. Utah 2024), reconsideration denied, No. 2:21-CV-00768-RJS-CMR, 2024 WL 4654114 (D. Utah Nov. 1, 2024) (citation omitted).  Rule 54(b) provides that "any order ... that adjudicates fewer than all the claims ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  *Id.* (citation omitted).  "A motion for reconsideration is granted based on the availability of new evidence, an intervening change in the controlling law, or the need to correct clear error or prevent manifest injustice."  *Id.* (citation omitted).

Here, reconsideration is warranted because HSOne is left without a route to pursue its rights with respect to Vyne's hacking if it cannot proceed in Utah on its TRO.

## **ARGUMENT**

**A.    The First-to-File Rule Does Not Apply Because HSOne Acted First, the Maryland Litigation Raises Different Issues, and It Would Be Inequitable to Force HSOne to Compromise Its Venue Objections by Seeking a TRO in Maryland.**

The first-to-file rule "permits" but "does not require, a federal district court to abstain from exercising its jurisdiction in deference to a first-filed case in a different federal district court." *Michael W.*, 420 F. Supp. 3d at 1224 (citing *Wakaya*, 910 F.3d at 1124).  Under this rule, courts consider three factors: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Id.*  These factors are not exhaustive and the court "cannot resort to a 'rigid mechanical solution.'" *Id.* (citation omitted).

Courts "***must also*** determine whether any equitable considerations...merit not applying the first-to-file rule in a particular case." *Id.* at 1127 (citing *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016)) (emphases added).  The Tenth Circuit has explained that the first-to-file may be disregarded "to prevent a misuse of litigation in the nature of vexatious and oppressive foreign suits," and "courts need not defer to the first-filed case when doing so would reward forum shopping." *Id.* (citations omitted).  These exceptions are not exhaustive.  *See id.*

The first-to-file rule is discretionary, and rests "on principles of comity and conserving judicial resources…' to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Michael W.*, 420 F. Supp. 3d at 1224 (quoting *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477, 1999 WL 682883, *3 (10th Cir. 1999)).  Denying HSOne's Motion for TRO based on the first-to-file rule will not conserve judicial resources given the different claims and relevant facts.  In other words, HSOne's hacking case will have to be litigated

even though Vyne preemptively filed a data-access case against HSOne.  *See id.* at 1230–31 (noting the difference in claims and finding this cut against abstaining).  Forcing HSOne to wait or to seek relief in Maryland, the wrong venue, prejudices HSOne in the interim.

The Court has discretion to reject application of the first-to-file rule when the factors demonstrate the first forum is not necessarily the more appropriate forum.  *See id.*  "Although the first-to-file rule is a 'baseline' when determining which federal court should hear a case, it is not mandatory and "the first court to acquire jurisdiction may not be ideally suited to decide on the merits."  *Consumer Financial Protection Bureau v. Acima Holdings et al.*, No. 2:24-CV-00525, 2024 WL 4931839, at *2 (D. Utah Dec. 2, 2024) (citation omitted).

Based on the three factors, the first-to-file rule does not apply here.

First, although there is no dispute that Vyne filed its Complaint on September 30, 2025, HSOne filed just three days later.  "[W]hen competing actions are filed within a short time of each other, courts may disregard the first-filed rule."  *Nacogdoches Oil & Gas, L.L.C.*, 2007 WL 2402723, at *2–3; *see also Recoton Corp. v. Allsop, Inc.,* 999 F.Supp. 574, 577 (S.D.N.Y.1998) (refusing to apply first-to-file rule where two days separated two actions).  The sequence of events also weighs against application of the rule.  While the Maryland action was technically first-filed, "the overall chronology of events between the two cases" tells a different story.  *Michael W.*, 420 F. Supp. 3d at 1231.  Here HSOne initiated the Utah dispute with a demand letter.  Vyne then raced to court in response.

Second, the parties are the same, but even where parties have been the same, courts have declined to apply the rule.  *See U.S. ex rel. Brown Minneapolis Tank Co. v. Kinley Const. Co.*, 816 F. Supp. 2d 1139, 1143 (D.N.M. 2011) (denying motion to dismiss or alternatively to transfer venue based on the rule even where it involved the same parties).

Third, the issues and claims at stake are very different, and do not weigh in favor of application of the rule.  While "[t]he issues need not be identical" for the first-to-file rule to apply,

they must "'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Michael W.*, 420 F. Supp. 3d at 1227 (citation omitted). That is not the case here.

The two cases will turn on different facts and different legal issues. In Maryland, the question is what level of data access HSOne must provide. In Utah, the question is whether hacking, circumvention, and interception are permissible. The facts behind Vyne's data access-claims differ from the facts needed to evaluate HSOne's anti-hacking claims. An analogous situation would be a dispute over whether a beach is public or private land. Such a dispute would not justify breaking into a house blocking beach access. The case for trespassing would be a different case than the case for requiring an easement for public access. Both cases can proceed independently of each other for purposes of the TRO proceedings in this Court. "The court need not defer to the first-to-file rule when the two cases merely have some similarity but do not substantially overlap." *Id.* at 1227 (citation omitted). These cases do not "hinge on the outcome of the same legal/factual issues" and thus not have the substantial overlap that would justify application of the rule. *See id.* at 1229–30 (concluding the cases were not duplicative "[b]ecause at least three of Plaintiffs' four claims for relief are likely to proceed regardless of any preclusive effects of the *Wit* decision.").

Simply put: Vyne's Maryland suit asserts a right to data; HSOne's action here seeks to prevent unlawful "self-help."

**B.  Vyne Engaged in Anticipatory Filing After Receiving HSOne's Demand Letter, which Weighs Against Applying the First-to-File Rule.**

After determining the chronology, parties, and issues, "courts must also determine whether any equitable considerations merit not applying the first-to-file rule in a particular case." *Michael W.*, 420 F. Supp. 3d at 1230 (citing *Wakaya*, 910 F.3d at 1127); *Consumer Financial Protection*

*Bureau*, 2024 WL 4931839, at *2–3 ("Even if all three factors of the rule are satisfied, equitable factors may still counsel against application of the rule.").

Equitable considerations include "inequitable conduct, bad faith, anticipatory suits, and forum shopping," among other considerations. *See Consumer Financial Protection Bureau*, 2024 WL 4931839, at *2–3. Each of these equitable factors alone can support an exception to the first-to-file rule. *See id.* (citations omitted). Indeed, "[t]he letter and spirit of the first-filed rule, therefore, are grounded on equitable principles." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 976–77 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990) (citation omitted). "Under this standard, a court must act 'with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.'" *Id.* (citation omitted).

First, the fact that Vyne cut off commercial negotiations while HSOne was negotiating in good faith after HSOne first sent a demand letter means Vyne should not receive credit for filing first for purposes of the analysis. *See Z-Line Designs, Inc. v. Bell'O Intern., LLC*, 218 F.R.D. 663, 664–65 (N.D. Cal. 2003) (dismissing first-filed action and finding the first-to-file rule did not apply where a party, after receiving a cease and desist, requested extensions to reply to demand for the purpose of promoting settlement and then filed its complaint).

Second, Vyne filed its anticipatory suit knowing HSOne was filing suit. "A suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Id.* at 665 (citation omitted). Where an action "has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment

rather than the first." *Id.* at 667 (citations omitted).  In *Consumer Financial Protection Bureau v. Acima Holdings et al.*, for example, the court denied defendants' motions to transfer or in the alternative to stay a second-filed action because the court concluded defendants filed an anticipatory suit. *See* 2024 WL 4931839, at \*2-4. The parties entered into settlement negotiations, but they failed, and it was clear that the Bureau was going to bring an action against defendants. *See id.* at \*1.  Defendants then filed an action against the Bureau in the Eastern District of Texas. The court noted "Defendants' Texas action fits into the 'anticipatory-suit exception, which is intended to discourage races to the courthouse door.'" *Id.* at \*3.

Third, Vyne is clearly forum shopping to avoid Utah, the most convenient and appropriate forum for both of the parties.  While there are a handful of customers in Maryland, HSOne is based in Utah, and Vyne's relevant executives are based in Utah.  Although the parties had negotiated the tolling agreement with Utah as the mandatory jurisdiction and venue for any suit, Vyne ignored that and raced to file in another forum.  "This kind of preemptive forum shopping is unhelpful and inefficient." *Consumer Financial Protection Bureau*, 2024 WL 4931839, at \*4.  This factor weighs against the application of the rule.  *See Z-Line Designs, Inc.*, 218 F.R.D. at 667 (finding Z–Line filed its action because of the threat of imminent suit by Bell'O. "This threat of suit prompted Z–Line to file this action in order to secure its choice of forum.")

In light of these equitable considerations, the Court should not defer to Vyne's filing in Maryland.

### C. The Current Ruling Leaves HSOne Without an Avenue for Obtaining Emergency Interim Relief in Any Forum Without Suffering Prejudice.

Apart from Vyne's anticipatory conduct and the chronology, another equitable circumstance weighs against the first-to-file rule and supports reconsideration.  Specifically, if this

Court waits to see how the Maryland court resolves venue, HSOne has no forum where it can seek relief to stop Vyne's daily hacking in the interim.

As HSOne will demonstrate in a motion to transfer venue, Maryland is not the proper venue for either of the parties' suits. But forcing HSOne into a situation where it has no remedy while it waits for resolution of that venue issue creates an injustice, because Vyne has shown it will have no scruples about violating the CFAA, DMCA, and ECPA in the meantime. This leaves HSOne in an impossible position—filing an action in the wrong venue (Maryland) and undermining its challenge to that court's ability to hear the case. Eventually, the Maryland court will decide the venue dispute, but HSOne needs immediate protection against unlawful hacking. Vyne seeks to force HSOne to compromise its venue argument in order to obtain the restraining order it needs. Putting a litigant to that choice when it seeks relief in a court (this one) where no one disputes venue is inequitable.

Where a unique equitable consideration exists like this, it provides a narrow limiting principle that permits the Court not to apply the first-to-file rule and balance the equitable issues permitting HSOne's TRO to be heard in Utah.

## CONCLUSION

HSOne respectfully requests the Court reconsider its ruling on HSOne's Motion for a Temporary Restraining Order and Preliminary Injunction. The Court can take up this motion on Vyne's hacking while the Maryland Court evaluates the venue disputes around Vyne's distinct case for statutory access. Otherwise, HSOne is prejudiced without an avenue for relief while Vyne is rewarded from the type of anticipatory filing and forum shopping that the Tenth Circuit seeks to discourage. HSOne requests the Court reconsider its denial and set a briefing schedule for the TRO.

Dated, this October 9, 2025,

GREENBERG TRAURIG LLP

By  */s/ Michael Burshteyn*
Michael Burshteyn

GREENBERG TRAURIG, LLP
Michael Burshteyn (*pro hac vice*)
Marcelo Barros (*pro hac vice*)
Jennifer Bartlett (*pro hac vice pending*)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com
Jennifer.Bartlett@gtlaw.com

Garrett W. Messerly (Utah SBN 15678)
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: 801.478.6900
Garrett.Messerly@gtlaw.com

Sydney Parks (*pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
Sydney.Parks@gtlaw.com

*Attorneys for Plaintiff, Henry Schein One, LLC*

# EXHIBIT 10



**Customer Data Access Request**
**Pursuant to Customer Authorization**

August 21, 2025

VIA EMAIL AND CERTIFIED MAIL

ATTN: Katherine Wich Sugden, General Counsel, VP
Henry Schein One, LLC
1220 South 630 East, Suite 100
American Fork, UT 84003
kwichsugden@henryscheinone.com

**Re: Customer Access Request to Customer Data within Dentrix**

Each customer listed in the attached schedule has requested that we send this letter on their behalf and has provided us with written agency and authorization to make such requests on their behalf.

Accordingly, Vyne Dental requests, on behalf of each customer listed in the schedule, that access to all Data held within Henry Schein One LLC's dental practice management system(s) be made available to Vyne Dental so they can continue using Vyne Dental's services to support their healthcare operations. "Data" includes, without limitation:

- Patient records, treatment data, and clinical notes
- Billing and insurance records
- Appointment and scheduling information
- Any other data necessary for lawful interoperability and healthcare operations

Vyne Dental is a Business Associate of each requesting mutual customer and is permitted access to the Data through express written authorization from the requesting customer and through its direct Business Associate Agreements with each requesting customer.

Please provide this access without delay, as any failure to do so will directly impair the customer's ability to rely on Vyne Dental's services in support of their essential healthcare operations, potentially disrupting patient care and practice efficiency.

Sincerely,

DocuSigned by:

*Kelly Owen*
—46F72B77904743D...
Kelly Owen, General Counsel
kelly.owen@vynedental.com
828.545.2440

(866) 712-9584

6510 Telecom Dr #300
Indianapolis IN 46278

**vynedental.com**

Robert Adler, DDS, 5824 14th Avenue, Brooklyn NY 11219
Tracey H. Joseph DDS., PLLC, 1655 Flatbush Avenue, Suite A104, Brooklyn NY 11210
Scott H. Nightingale, DDS, MS, 5800 Monroe Street, Bldg G, Sylvania OH 43560
Alamont Dental Associates, 401 Martin Luther King Jr Blvd, Bristol TN 37620
Margarita Dental Group, 39400 Murrieta Hot Springs Rd Ste123B, Murrieta CA 92563
Highlands Ranch Smiles, 9461 South University Blvd., Highlands Ranch CO 80126
Rolling Hills Family Dentistry, 12285 Scripps Poway Parkway #104, Poway CA 92064
Eden Lakes Dental, LLC, 9613 Anderson Lakes Parkway, Eden Prairie MN 55344
Jarvis Dental And Orthodontics, 1508 W Cayuse Creek Dr, Ste 150, Meridian ID 83646
Highland Village Smile Studio, 1401 Shoal Creek, Ste 276, Highland Village TX 75077
Papania Family Dentistry, 412 Security Square, Gulfport MS 39507
Heritage Dental, 3600 W. Tecumseh Rd, Norman OK 73072
Ala Moana Dental Care, 1601 Kapiolani Blvd 101, Honolulu HI 96814
Kids On 1st Dentistry, 33915 1St Way S, Ste 100, Federal Way WA 98003
All Smiles Dental, 1316 Mill Street, Crawfordsville IN 47933
Os Dental, 2856 N. Galloway, Mesquite TX 75150
Peaksview Dental, 167 West Main Street, Bedford VA 24523
Tooth Sleuth Industries Dba Jordan Landing Dental, 7611 S Jordan Landing Blvd #201, West Jordan UT 84084
Sergey B. Belenkiy, DMD, 10 Plaza Street East, Suite 1F, Brooklyn NY 11238
Smile City Dental Group, 19366 Soledad Canyon Rd, 19366 Soledad Canyon Rd, Santa Clarita CA 91351
Salem Periodontal Specialist, 2605 12Th Place Se, Salem OR 97302
Skyline Family Dental, 3977 Burma Rd, Mobile AL 36693
Southside Family Dentistry, 1745 Highway 77, Southside AL 35907
Gibson Family Dentistry, LLC, 609 Golden Springs Rd, Anniston AL 36207
Dr. Cameron Conkin, 8101 S. Shelby St., Indianapolis IN 46237
Colin Suzman D.D.S., 4330 Barranca Pkwy, SUITE 100, Irvine CA 92604
Upper Perk Family Dental, P.C., 2771 Geryville Pike, Pennsburg PA 18073
Whitehall Family Dentistry, 2123 N. 1St Avenue Suite A2, Whitehall PA 18052
Fisher, Shirley H DMD, 1259 Elberta Rd, Warner Robins GA 31093
Romney Pediatric Dentistry, 3600 Fm Suite 160, Bartonville TX 76226
Duff Family Dental, 1251 East Sunshine, Suite 108, Springfield MO 65804
North Royalton Pediatric Dentistry, 6391 Royalton Rd Suite B, North Royalton OH 44133
Pieper And Marsh Family Dentistry, 2017 Campbell Dr., Torrington WY 82240
Kneib Dentistry PC, 3325 W 26 Street, Erie PA 16506
Dental Associates Of Southwest Georgia, 718 North Broad Street, Cairo GA 39828
Jeffrey J Schroeder, DDS, 841 North 98th Street, Omaha NE 68114
Shoreview Dental, LLC, 5885 Shoreview Lane N, Keizer OR 97303
Louis M Carratola , DDS, 2380 Sean Dr, Ste 101, Fremont OH 43420
Todd Roby DDS PC, 1055 17th Ave Suite 203, Longmont CO 80501
Muskegon Family Care, 2201 S. Getty St. S, Muskegon MI 49444
Bridgepointe Dental, 635 Mariners Island Blvd Ste 201, San Mateo CA 94404
B Scott Eder DDS PLLC, 71 Maccorkle Ave Sw, South Charleston WV 25303
Aya Dental, 2697 Cleveland Ave, Columbus OH 43211
Angela M. Osborn DDS, 9105 Kimmer Drive, Lone Tree CO 80124
Paul D. Mizar, D.D.S., 4012 Preston Road Suite 100, Plano TX 75093
Swati Singh Dr., 9240 North Meridian St, Ste 120, Indianapolis IN 46260
Compassionate Dentistry, Matthew Paper, DDS, 3900 Ten Oaks Road Suite 5, Mailbox 249, Glenelg MD 21737
Merker Mcallister LLC, 3950 Frazeysburg Rd., Zanesville OH 43701
Kidsmile Inc, 37701 Colorado Ave, Ste E, Avon OH 44011
Hingham Dental Associates, 20 Downer Ave. Ste. 2, Hingham MA 2043

TLC Dental Care, 201 Locust St, Princeton WV 24740
Cary Family Dental, 915 Kildaire Farm Road, Cary NC 27511
Tower Dental Care, 2138 Brookdale Rd, Toledo OH 43606
Lighthouse Dentistry LLC, 5690 Perry Hwy, Erie PA 16509
Grandview Dental, 2043 E 2700 S, Salt Lake City UT 84109
Tewksbury Dental Assoc., 1438 Main Street, Tewksbury MA 1876
Trinity Village Dental, 10720 State Road 54 Suite 101, Trinity FL 34655
Grove City Dental Partners, 2196 Stringtown Rd., Grove City OH 43123
Hiram Dentistry, 5888 Wendy Bagwell Pkwy Ste A, Hiram GA 30141
West End Dental Associates, 243 West End Ave, New York NY 10023
Hebert Dental, 4710 Commerce Valley Rd, Eau Claire WI 54701
Total Dental Care, 13 Olt Ave, Pekin IL 61554
Cardinal Park Family Dental Care, 2 Cardinal Park Drive Suite 204A, Leesburg VA 20176
Elm Family Dental, 233 Elm St, West Haven CT 6516
Pineview Dental Health, 3080 Pinebrook Rd. Suite 2000, Park City UT 84098
Lakeshore Dental Care, 5020 Lake Shore Rd, Hamburg NY 14075
Plymouth Dental Associates, 42801 Schoolcraft Rd, Plymouth MI 48170
Evan Mitchell DDS, 2600 American Rd. Suite 369, Rio Rancho NM 87124
Hilliard Dental Associates, 4601 Leap Ct., Hilliard OH 43026
John Chung DDS, 13626 Warwick Blvd, Newport News VA 23602
Bird Family Dentistry, 4707 S Junett Street, Tacoma WA 98409
Atlantis Dental Care, P.A., 13238 W. Persimmon Ln Ste 100, Boise ID 83713
New Boston Dental Care, PLLC, 52 High Street, New Boston NH 3070
J. Jeffrey Melton, DDS, Ms, 141 Paseo De Peralta Ste C, Santa Fe NM 87501
Matthew J. Volk DDS PC, P.O. Box 774, Larimore ND 58251
Harvey Levy And Associates, 198 Thomas Johnson Dr. Ste. 108, Frederick MD 21702
A To Z Dental Care, 628 N Azusa Ave, West Covina CA 91791
Milwaukee Dental Arts, 2700 W. Lincoln Ave., Milwaukee WI 53215
Des Moines Dental Associates, 22007 Marine View Dr. S. Suite 101, Des Moines WA 98198
Dr. E Gray Penton, Https://Www.Vynedental.Com, Prattville AL 36067
Professional Ln Dental, 102 Professional Ln, Dothan AL 36303
Dental World Of Marietta, 1410 Terrell Mill Rd, Marietta GA 30067
George E. Hitzel DDS PA, 1330 S Belcher Rd., Clearwater FL 33764
Gates Family Dentistry, 3249 Montgomery Rd, Loveland OH 45140
Steelton Family Dentistry, 395 S. Third St, Steelton PA 17113
Antigo Dental Clinic, LLC, 707 Sixth Avenue, Antigo WI 54409
Andy Hollifield DMD PA, 801 W. King Street, Kings Mtn NC 28086
Dr. David S. Wiener, 200 East Main St., Smithtown NY 11787
Ahmed M Eid DDS, 1655 Elmwood Ave Ste 115, Rochester NY 14620
Robert R. Watts, DDS, PLLC, 1284 W Grand River Ave, Williamston MI 48895
Rodney C. Hill D.D.S., P.C., 211 W. 9th St., Casper WY 82601
Gentling Dental Group, 1100 E Lansing St, Broken Arrow OK 74012
Sunmin Park, D.D.S, 1515 Chainbridge Road, Suite 304, Mclean VA 22101
David Bruce DMD, 7185 Hwy 72 West #G, Madison AL 35758
Dr Damita Edwards, 6211 Centreville Road Suite #600, Centreville VA 20121
Great Falls Family And Cosmetic Dentistry, 774 Walker Rd Ste B, Great Falls VA 22066
Stone Creek Dental, 2630 S Eagle Road, Meridian ID 83642
Crimsoncare Family Dental, 9507 Blackoaks Lane N, Maple Grove MN 55311
Dr. Duke Rakich, D.D.S., 9984 Brewster Lane, Powell OH 43065
Tuscaloosa General Dentistry, 631 Helen Keller Blvd, Suite 200, Tuscaloosa AL 35404
Elliott Dental, 2987 W. Elliot Rd., Chandler AZ 85224
Fishers Family Dentistry, 8410 E. 116th Street, Fishers IN 46038
Fitzgerald Family Dental, 18700 West Lake Houston Pkwy, STE A107, Humble TX 77346

Carlos Uribe D.D.S. P.L.C., 207 Harold Street, Midland MI 48640
San Marco Dentistry, Pa, 1925 Hendricks Ave., Jacksonville FL 32207
Thakore Chelian, LLC, 1 River Pl, Lowell MA 1852
Scott J. Ferguson, D.D.S. & Assoc., PC, 2837 Stable Drive Suite A, Kimball MI 48074
Martin Taylor Dentistry, 7350 E. Speedway 201, Tucson AZ 85710
Smith  Hascall Family Dentistry,LLC, 17725 Welch Plaza Ste B, Omaha NE 68135
Dr. Michael G. Smith D.M.D., 2161 E Warner Rd, Tempe AZ 85284
Oak Harbor Dental Care, 11707 W. St. Rt. 163, Oak Harbor OH 43449
Yakima Pediatric Dentistry, 3909 Creekside Loop Suite #104, Yakima WA 98902
Ernest J Washburn DMD, 2164 Moores Mill Rd, Auburn AL 36830
Hattar Dental Inc, 17194 Bear Valley Rd, Victorville CA 92395
Lake Lucerne Lifestyle Dentistry, 112 E Lucerne Cir, Orlando FL 32801
Dana Culda, DMD, 405 Chatham Square Office Park, Fredericksburg VA 22405
David M Lomasney DDS, 1017 Huron Ave., Port Huron MI 48060
Dr. Mario Ku-Torres DDS, 2246 Nw 40th Ter, Suite A, Fl FL 32605
Nancy Schumann DDS, 5330 Discovery Park Blvd, Williamsburg VA 23188
Family Smile Center, LLC, 200 West Center Street, Manchester CT 6040
Michael Stanley, 8877 W. Union Hills Dr Ste  #600, Peoria AZ 85382
Sherman Chan, DDS, Inc., 141 Camino Alto, Mill Valley CA 94941
Maisey Dental Clinic, 708 Main St, Williston ND 58801
John Skvorak Jr DMD PA, 290 Bridgton Rd, Westbrook ME 4062
James W. Gabhart Ii DMD, 535 Westport Rd., Elizabethtown KY 42701
Chad Schnabel DMD, 836 E 65th St  9A, Savannah GA 31405
Sree J. Raman DMD, PLLC, 222 River Rd., Manchester NH 3104
Sturz And Abby Pediatric Dentistry, 9860 Brimhall Road Suite 100, Bakersfield CA 93312
Bedford Commons Periodontics, 303 Riverway Place Bldg 3, Bedford NH 3110
Dickerson Enterprises, 6755 E. Superstition Springs B, Mesa AZ 85206
Chandler Family Dental Care, 4080 W. Ray Road Ste 21, Chandler AZ 85226
Indiana Family Dentistry, 505 North Green Street, Brownsburg IN 46112
Holley Dental Group, 542 Mcqueen Smith Road, Prattville AL 36066
Dr. Lisa Elias, 443 Pearl Road, Brunswick OH 44212
Advanced Dentistry, 11790 Sw Barnes Rd., 260, Portland OR 97225
Columbia Dental Group Of Santa Monica, 12401 Wilshire Blvd, Suite 104, Los Angeles CA 90025
Waters Edge Dental, 2644 S. Ridgewood Ave., South Daytona FL 32119
E Ronald Trujillo Family Dentistry, 5 Calle Medico Suite B, Santa Fe NM 87505
The David Dental Clinic, 15351 17 Mile Road, 38641 Jonathan Street, Clinton Twp MI 48038
Saving Smiles Dentistry, 5285 42nd St S, Fargo ND 58104
Louis Devito,Jr DMD, 50 Squire Rd, Revere MA 2151
Dr. Delos C. Adams, 3915 Ogden Ave, Ogden UT 84403
Cinco Dental Care, 23501 Cinco Ranch Blvd, Suite G225, Katy TX 77494
Brooke M. Cloninger, D.D.S., 2001 E. 29th Ave, Spokane WA 99203
Robert H. Carter, DDS, PA, #8 Hospital Circle, Batesville AR 72501
All In One Dental, 2720 Commercial Way, Montrose CO 81401
Mark R. Stevenson, DDS, PC, 6905 East 96th Street, Ste 800, Indianapolis IN 46250
Donald  S. Dazen, DMD, P.O. Box 394, Mckees Rocks PA 15136
Poiset & Associates Pediatric Dentistry And Orth, 7930 Frost St Suite 101, San Diego CA 92123
Smiles On Broadway, 735 N Water St., Milwaukee WI 53202
Fremont Children's Dentistry, 1947 East Military Ave, Fremont NE 68025
Clinton Township Family Dental, 38550 Garfield Road Suite C, Clinton Township MI 48038
Barstow Children's Dentistry, 1890 West Main St. Ste140, Barstow CA 92312
Red River Dental, LLC, 1408 Peterman Drive, Alexandria LA 71301
Eagleview Dental Office, 464 Water Street Po Box 126, Prairie Du Sac WI 53578
Gentle Dental Care South, 1601 12th Ave. Road, Ste. 103, Nampa ID 83686

Orlando Family Dentistry, LLC, 312 Route 31 North, Hopewell NJ 8525
Kristine A. Grazioso, DMD PC, 223 Route 3A, Suite 102, Cohasset MA 2025
Millennium Dental Care, 6319 Castle Pl, Ste 3F, Falls Church VA 22044
Thomas G Schell And Associates, 31 Old Etna Rd, N1, Lebanon NH 3766
Mid-Sussex Dental, P.A., 212 W. Market St., Georgetown DE 19947
Falmouth Dental Arts, 168 Us Rt 1, Falmouth ME 4105
Jon R Lundquist DDS, 226 North Market Street, Ligonier PA 15658
Violet Family Dental, 151 Clint Drive, Suite 300, Pickerington OH 43147
Reedsburg Family Dental, S.C., 764 Crestview Drive, Reedsburg WI 53959
Dental Care Of South Florida, 127 Ne 8th St, Homestead FL 33030
Creative Smiles Dental Group, 124 N. Saginaw St. Suite C, Holly MI 48442
South Shore Dentistry, 12012 South Shore Blvd #101, Wellington FL 33414
Dental Center Of Pontiac, 1018 Joslyn Ave, Pontiac MI 48340
Tellman Dentistry, 5750 E 91St St Ste A, Indianapolis IN 46250
Navarro Dentistry, 14117 Hubbard Street Unit K, Sylmar CA 91342
Caroline Foster Owens, D.D.S.,P.A., 9604 Belair Road, Baltimore MD 21236
Belle Meade Family Dental, 105 Belle Meade Point, Flowood MS 39232
Jacob Stein, 4 West Main Street Suite 103, Northboro MA 1605
Silver Maple Dental, 2480 Browncroft Blvd, Rochester NY 14625
Dr Mark Gammello, 1254 Liberty St, Franklin PA 16323
Paul L. Schwartz, 36388 Detroit Rd., Avon OH 44011
Stephanie Kahle, DDS, 6800 Palm Avenue, Sebastopol CA 95472
Holmes Family Dentistry, 6355 Ward Road, Arvada CO 80004
Christopher Mascio D.M.D., 140 Steubenville Pike, Burgettstown PA 15021
Dr. Reginald S. Young, Ltd, 611 Virginia Avenue, Clarksville VA 23927
Rodney A. Sandburg Ii D.D.S., 11317 S. Western Avenue, Suite 400, Oklahoma City OK 73170
Heather J. Cadorette DDS, 190 Marcell Dr Ne, Rockford MI 49341
Dysart Dental, 5220 N. Dysart Rd 160, Litchfield Park AZ 85340
Richard Y. Kunihira D.D.S., Inc., 585 N. Mountain Ave Ste C, Upland CA 91786
Willow Street Dental, 222 Willow Valley Lakes Drive Ste1400, Willow Street PA 17584
Pedz Dental, 3924 Marshall Rd, Kettering OH 45429
Brian R. Peterson, DDS, PC, 6812 E. Brown Rd., Ste. 101, Mesa AZ 85207
Borden Family Dentistry, 627 Lawrence St, Moulton AL 35650
Yuhui Hu DDS LLC Dba C H Dental, 140 State Route 10 West, Randolph NJ 7869
Arbor Lodge Dental, 2385 S Huron Parkway Suite 2S, Ann Arbor MI 48104
Mchenry Dental Specialists, 5400 W Elm St, Mchenry IL 60050
William B. Ludwick II, 55 Southern Drive, Keyser WV 26726
Matthew Talcott, 434 N. Center Street, Northville MI 48167
Jeffrey S. Prieto, DDS, 1950 Miller St., 3, Orange Park FL 32073
Noble Dental  Conover, Leonard And Associates, 1601 Walnut Street Suite 1101, Philadelphia PA 19102
Ronald P. Gioe Jr., DDS, 7707 Old Hammond Hwy Ste 5, Baton Rouge LA 70809
Dr. Taylor Kim, 2080 W Southern Ave. Ste. A 3, Apache Junction AZ 85120
Greenwich Dental LLC, 100 Melrose Ave, Ste 202, Greenwich CT 6830
KR Perio, 15805 Biscayne Blvd Suite 202, North Miami Beach FL 33160
The Klocko Center, 1375 Defense Highway, Gambrills MD 21054
Bausback And Mcgarry, LLP, Po Box 189, 840 Kenwood Avenue, Slingerlands NY 12159
Neighborhood Dental, 2710 Henry Street Suite 102, Greensboro NC 27405
West Kerr Dental, 3164 Junction Hwy, Ingram TX 78025
Pura Mayor Chico DMD Inc, 9070 Walker Street, Cypress CA 90630
Dr. Stephen Vanyo DMD, 3004 Guess Rd., Suite C, Durham NC 27705
Jeffrey Sobecks DDS, 6325 York Rd 302, Parma Hts OH 44130
Gary H. Smith, D.D.S., 5424 S. Memorial Dr. D1, Tulsa OK 74145
Posthumus Family Dentistry, P.C., 2300 3 Mile Rd  N E, Grand Rapids MI 49505

Dr. Peter Gold, DDS, 1006 Union Street, Schenectady NY 12308
Ellinwood Dental Care, 5725 Maplecrest Rd.  Suite 1, Fort Wayne IN 46835
Family Dental Center, 2065 12th Ave. Rd., Nampa ID 83686
Natural Dental Services, 5910 Cubero Dr Ne, Albuquerque NM 87109
Jon W Caulfield DDS, 7621 Shaffer Pkwy Unit A, Littleton CO 80127
Kevin Huff, DDS, 217 West 4th St, Dover OH 44622
Norbo, Randy J DDS-, 1414 Franklin Rd Sw  3, Roanoke VA 24016
Daniel R. Maddigan DDS., P.C., 723 Main Street, Beech Grove IN 46107
Country Creek Dental PLLC, 207 Kings Ct, Alcoa TN 37701
Dr. Paul Jackanich, Jr. D.D.S, 841 Southwestern Run Ste 1, Youngstown OH 44514
Dr. Joseph Campo, 4141 Veterans Memorial Blvd., Metairie LA 70002
Nexus Dental, 6046 W. Hwy 74, Indian Trail NC 28079
Smile Center, 3500 Park Street, Norton Shores MI 49444
Kalamazoo Pediatric Dentistry, 621 W. Centre Avenue, Portage MI 49024
Ashland Family Dental, 171 Main Street, Ashland MA 1721
Granite City Family And Cosmetic Dentistry, 429 Great Oak Drive, Waite Park MN 56387
Andrew M. Van Haren, DDS, PLC, 2700 5 Mile Rd, Ste 100, Grand Rapids MI 49525
Victoria L. Vest, D.M.D., 200 Bob Wallace Ave Sw, Huntsville AL 35801
Kevin J Potocsky, DDS.,PC, 7720 Allen Road, Allen Park MI 48101
Michael B. Seligson, DDS, PC, 2856 Johnson Ferry Rd., Marietta GA 30062
Logansmiles LLC, 1340 N 600 E Ste 1, Logan UT 84341
Lakeland Family Dentistry, 33 N. Hospital Drive, Lakeland GA 31635
Nevada Family Dentistry, 402 E Walnut Street, Nevada MO 64772
Dr. Todd Babineaux, 621 Rue De Onetta, New Iberia LA 70563
Layne Family Dentistry, 19606 Sr 20 West, Blountstown FL 32424
Sophia Parpia DDS, PLLC, 777 Douglas Ave, Altamonte Springs FL 32714
Gregory D Owens DDS, 640 W Main St, Ste A, Abingdon VA 24210
Gentle Care Dental, 2033 E Warner Rd Suite 115, Tempe AZ 85284
Pignato And Merkley DDS PLLC, 2086 Five Mile Line Rd., Penfield NY 14526
Lahair And Gallagherpediatric Dentistry And Orth, 102 Shore Drive, Suite 302, Worcester MA 1605
Majestic Dental, 1451 Cottleville Parkway, Cottleville MO 63376
Jeffrey S. Caldwell, DMD, Inc, 212 East 5th Street, East Liverpool OH 43920
Robert P Obryan DDS PC, 3370 Davison Rd, Lapeer MI 48446
Lifetime Dental, 1507 Tower Ave. 202, Superior WI 54880
Dr. Bryan Stephens, 60 N. Miller Rd., Fairlawn OH 44333
Moore Legacy Dental, 4896 S 1900  W Ste B, Roy UT 84067
Island Children's Dentistry, 8605 Westwood Center Dr, Ste 501, Tysons Corner VA 22182
Mark D. Berman, DDS & Associates, 44200 Garfield Suite 100, Clinton Township MI 48038
Parkview Dental Associates, 601 N Thompson Rd, Sun Prairie WI 53590
Drs. Porter, Carroll, PC, 7946 Bustleton Avenue, Philadelphia PA 19152
Montecito Dental, 1165 Coast Village Rd Suite I, Santa Barbara CA 93108
Hoang H. Drouin, DMD, PA, 452 Williamson Road, Unit F, Mooresville NC 28117
Madera Family Dental, 2311 W Cleveland Ave, Suite 103, Madera CA 93637
Premier Dental Health, 22651 E. Aurora Parkway, Ste A5, Aurora CO 80016
Trang T. Le, D.D.S., Ltd., 133 Maple Ave. East, Suite 200, Vienna VA 22180
Dfk Cranberry, 4129 Monroeville Boulevard, Pittsburgh PA 15146
Tlc Dental Services LLC, 703 Cedar Avenue, Scranton PA 18505
Shortt Dental, 720 W. Houghton Ave, West Branch MI 48661
Oakdale Family Dental, 3020 Highlands Pkwy. Ste. A, Smyrna GA 30082
Complete Family Dental, 110 West 1325 North, Cedar City UT 84721
Gf Dental, 2409 Lakeview Pkwy Ste. 300, Rowlett TX 75088
T. John Kuehn D.M.D., 1201 Broughton Rd, Ste 2, Pittsburgh PA 15236
Peter S Suh, DMD, Inc., 1346 Foothill Blvd., Suite 305, La Canada Flintridge CA 91011

Dr. Colleen P. Taylor DMD, PC, 535 E. Medical Drive, Bountiful UT 84010
Austin Dental Works, 4601 N. Lamar Blvd, Ste 503, Austin TX 78751
Johns Creek Family Dentistry, 6630 Mcginnis Ferry Rd, Duluth GA 30097
Lorine Yee Shinsky DDS, 4249 Hwy 411 Ste 3B, Madisonville TN 37354
Friedman & Groomes, P.A., 37149 Florida Avenue, Dade City FL 33525
Dr Eric Wiitala, 9755 N 90th St 250B, Scottsdale AZ 85258
Stiehl Dental, 55 Glenda Trace, Newnan GA 30265
7 Day Dental Smiles, 105 E 10th Ave, Post Falls ID 83854
Logan Dental, 1021 N Main St, Bellefontaine OH 43311
Erik C. Low, DMD, Ms, Inc., 1565 Hollenbeck Ave. Ste. 108, Sunnyvale CA 94087
Childrens Dental Of Waltham, 695 Main Street, Waltham MA 2451
Daniel A. Szekely Jr. D.M.D., 8800 Barnes Lake Road Suite 300, North Huntingdon PA 15642
Brian D. Finelli, D.D.S., LLC, 555 C West Schrock Rd., Westerville OH 43081
Barnett Family Dentistry, 7962 Sunwood Dr. Nw Suite 200, Ramsey MN 55303
Mizono Dentistry, 730 Kains Avenue, Albany CA 94706
Clintonville Family Dentist LLC, 4345 North High St, Columbus OH 43214
Myers Park Dental Partners, 1000 Queens Road, Charlotte NC 28207
Family And Implant Dentistry, 827 South 48th, Lincoln NE 68510
Mequon Dental Group, 10555 N. Port Washington Rd., Mequon WI 53092
Dr Robert Palmer, 209 Geri Lane, Richmond KY 40475
Anna Chukhman DDS, 26326 Citrus St, Valencia CA 91355
334 N Main St, Rutherfordton Nc 28139, 334 N Main Street, Rutherfordton NC 28139
Mesa View Dental, 2939 E Mall Drive, Suite 210, Saint George UT 84790
Rock That Smile Pediatric Dentistry, PLLC, 3401 El Salido Parkway, Cedar Park TX 78613
Chris Mohler DDS LLC, 200 Midtown Dr., Beaufort SC 29906
Tuscano Dental, 4017 N 75th Ave, Phoenix AZ 85033
Joonho Song DDS LLC, 11801 Fingerboard Rd, Monrovia MD 21770
Starwhite Dental, 40250 Murrieta Hot Springs Rd., Murrieta CA 92563
Omega Dental Group, LLC Mahajan, 806 W. Diamond Ave, Gaithersburg MD 20878
Dennis L. Bradshaw DDS Ps, 7405 West Grandridge Boulevard, Ste A, Kennewick WA 99336
Kelly M. Frandsen DDS, 75 N. 100 E., Gunnison UT 84634
Canyon Echo Dental, 4725 Innovation Drive Ste#1, Lincoln NE 68521
Advanced Dental Care, 4927 Lake Ridge Pkwy, Grand Prairie TX 75052
Family And Cosmetic Dentistry PA, 569 Abbington Drive, East Windsor NJ 8520
Cole Periodontics, 190 West Park Avenue, Dubois PA 15801
Financial District Dentistry, 220 Montgomery St, Suite 120, San Francisco CA 94104
Boss And Rorvik Family Dental PLLC, 1504 Harcrest Dr., Midland MI 48640
Lonnie Harrison, D.M.D., 80 Alton Hall Rd, Cairo GA 39828
Varner Family Dentistry, 3612 W Southern Hills Blvd, Suite #1, Rogers AR 72758
Aquia Dental Care, 2712 Jefferson Suite 201, Stafford VA 22554
Precision Dental, 338 Juniper St, Quakertown PA 18951
George Westphalen DDS, 660 Cadieux Rd, Grosse Point MI 48230
William V. Dougherty III, DDS, 200 Little Falls St #506, Falls Church VA 22046
South Hills Pediatric Dentistry, 4013 W 13400 S, Riverton UT 84096
Burlingame Family Dentistry, 8422 Sw Terwilliger Blvd., Portland OR 97219
Antigo Complete Dental Center, 408 State Highway 64, Antigo WI 54409
Crestwood Dental On The Lake, 1363 Rochester Rd, Leonard MI 48367
Windsong Dental, 940 Legacy Dr. Suite 10, Prosper TX 75078
Solomon Her DDS, 3351 M Street  Suite 225, Merced CA 95348
Brookline Family Dentistry, 81 School St., Brookline MA 2446
Ferncreek Family Dentistry, 4155 Ferncreek Dr Suite 101, Fayetteville NC 28314
Midlothian Dental Arts, 151 Le Gordon Dr Ste 100, Midlothian VA 23114
Chickamauga Family Dental, Po Box 369, Chickamauga GA 30707

Palm Beach Dental Spa, 1920 Palm Beach Lakes Blvd Suite 116, West Palm Beach FL 33409
Santa Rosa Dental Group, 1820 Sonoma Ave Ste 76, Santa Rosa CA 95405
Rincon Family Dentistry, 6650 North Oracle Road, Tucson AZ 85704
Quality Dental Care, 34 Wisse Street, Suite # 23, Lodi NJ 7644
Lake City  Dental, 142 W Winchester St., Murray UT 84107
Maspeth Dental, 55-23 69th St, Maspeth NY 11378
Hm Periodontics, 17752 Preston Rd, Suite 100, Dallas TX 75252
Panther Hollow Dental Lodge, 19240 Quesada Ave., Port Charlotte FL 33948
Cohasset Village Dentistry, 12 Parkingway, Cohasset MA 2025
Florin Family Dental, 8021 Florin Road, Sacramento CA 95828
Northbank Family Dental, 1490 Northbank Parkway Suite 130, Tuscaloosa AL 35406
Sullivan Dental Co, 4219 Hillsboro Pike Ste 107, Nashville TN 37215
Broadway Family Dentistry, 709 S Broadway, Edmond OK 73034
Dobson Ranch Dental Care, 2024 S Don Carlos, STE A, Mesa AZ 85202
Smile Care, 3011 25 St S Suite 1, Fargo ND 58103
White Oak Dental, LLC, 105 Brennan Dr, Kirkland IL 60146
Clarksville Dental Care, 529 E Lewis And Clark Pkwy, Clarksville IN 47129
Princess Center Dentistry, 8575 E. Princess Dr., Ste 101, Scottsdale AZ 85255
Wall Family Dentistry, 250 Clark Street, Pewaukee WI 53072
Magic Smile Dental, 4880 Library Rd, Bethel Park PA 15102
Page Family Dentistry, 31 Elmgrove Ave, Providence RI 2906
Brielle Dentistry Co, 421 Higgins Ave, Brielle NJ 8730
Av Dental, 1701 Clarendon Blvd Ste 220, Arlington VA 22209
Smile Arkansas, 16524 Chenal Parkway, Little Rock AR 72223
Serene Dental Hygiene, 5170 North Union Blvd. Suite 104, Colorado Springs CO 80918
Benicia Family Dentistry, 175 E N St, Benicia CA 94510
Southern Family Dental Care, 3961 Holcomb Bridge Rd Ste 100, Norcross GA 30092
Brunswick Family Dentistry LLC, 20 Medical Campus Dr, Suite 201, Supply NC 28462
Comprehensive Dental Care, Po Box 777157, Henderson NV 89077
Parkside Dental Health, 3800 W. Ray Road, Suite #2, Chandler AZ 85226
Mountain Vista Dental, 2575 Montebello Drive West, Ste 203, Colorado Springs CO 80918
George Family Dentistry, 112 North Ship St, Portland IN 47371
Carla Francis, DDS, 740 N. Westmore Avenue, Villa Park IL 60181
Maple Grove Dentistry Of Boise, 3270 N Maple Grove Rd, Boise ID 83704
Tolland Hill Family Dental, 12 Goose Lane, Tolland CT 6084
Joshua Graham, 2501 W William Cannon Dr, suite 101, Austin TX 78746
Wolfy Dental Group LLC, 51 S Whittlesey Ave, Wallingford CT 6492
Rockville Centre Dental Care, 148 N Park Ave, Rockville Centre NY 11570
Hanna Gary C DDS, 1129 South Main Street, Galax VA 24333
Matthew Hagarty, 2180 Norcor Ave  Ste C, Coralville IA 52241
Jay B. Wettstein DMD PC, 478 Southwest 12th Street, Ontario OR 97914
Smile In Style Dental PLLC, 247-09 A Union Turnpike, Bellerose NY 11426
Gaurav Dudeja PLLC, 5038 Tacoma Mall Blvd. Ste. A, Tacoma WA 98409
Maclean & Jungdahl, DMD, Inc, 1035 Summit Drive, Middleton OH 45042
Venice Family Dentistry, 10913 Venice Blvd, Los Angeles CA 90034
Rocket City Kids, 1105 Gleneagles Dr Sw, Huntsville AL 35801
Smile Again, 2745 South Alma School Road, #1, Chandler AZ 85286
Bearden Family Dentistry, 6311 Kingston Pike Ste 27W, Knoxville TN 37919
Baytown Gentle Dental, 3700 Emmett Hutto Blvd, Baytown TX 77521
Breton Gardens Family Dentistry, 4144 Breton Rd, Kentwood MI 49512
Scott Evans DDS, 6033 Sherry Ln, Dallas TX 75225
Johnelle Roberts, 3660 Flat Shoals Road, Suite 100, Decatur GA 30034
Marlton Family, 560 A Lippincott Dr, Building B, Marlton NJ 8053

Oak Cliff Dental Care, 4640 Nichols Road Suite 100, Eagan MN 55122
Oyster Point Dentistry, 11848 Rock Landing Dr, Suite 301, Newport News VA 23606
Riggs Dental, 2401 Se Lake Weir Avenue, Ocala FL 34471
Advanced Dental Care - Valdosta, 3211 Wildwood Plantation Drive, Valdosta GA 31605
Pure Dental Care, 122 Courtyard Dr, Hillsborough NJ 8844
Martin Family Dental, 1751 East 54th Street, Davenport IA 52807
Contour Dental Studio, 7575 Dr Phillips Blvd # 205, Orlando FL 32819
Family Dental Group, 2280 S. Garey Ave, Pomona CA 91766
Smile Science Chicago, 1860 N. Milwaukee Ave., Chicago IL 60647
Philley Dentistry, 3802 Brookside Drive, Tyler TX 75701
River Park Dental, 600 E. River Park Lane, Suite 120, Boise ID 83706
Dental Arts Of Plainville, 210 A South Street Unit 1, Plainville MA 2762
Allison And Associates, 15 Aviemore Dr, Pinehurst NC 28374
Clark Dental, 4420 Town Center Blvd Ste 280, El Dorado Hills CA 95762
Dental Fx, 8667 Fort Smallwood Rd, Pasadena MD 21122
Tolland Family Dentistry, 359 Merrow Road, Tolland CT 6084
Rosewood Family Dentistry Tooele, 181 W Vine St Suite A, Tooele UT 84074
Exner Dental, 2314 N Grandview Blvd, Suite 203, Waukesha WI 53188
Marcus Dental Care, 1875 Campus Commons Dr Ste 202, Reston VA 20191
Dental Enhanced/Urgent Dental, 340 East Warm Springs Road, Ste 100, Las Vegas NV 89119
Paulin Dentistry, 1891 Fruitville Pike, Lancaster PA 17601
Wellness Dental, 907 Nw 18th Ave, Portland OR 97209
Toothbuds At Lagoon Park, L.L.C, 553 North Eastern Boulevard, Montgomery AL 36117
Island Dental, 23 S Washington Ave Suite 1A, Margate City NJ 8402
Confident Smiles, 2550 West Addison Street Ste A7, Chicago IL 60618
Steven L Regan DDS PLLC, 102 Posey Ave, Clifton TX 76634
Ocean Dentistry Co, 240 Monmouth Rd, Oakhurst NJ 7755
Silicon Valley Smile Solutions, 3880 S Bascom Ave Suit 213, San Jose CA 95124
Cohen Frederic DMD, 3215 Ave H Brooklyn Ny Suite 1C, Brooklyn NY 11210
Rosewood Family Dentistry- Stansbury, 210 Millpond Drive, Stansbury Park UT 84074
A Dental & Denture, 11540 15th Avenue Ne, Seattle WA 98125
Mahdad Nassiri DDS Inc, 1416 Professional Dr Ste 202, Petaluma CA 94954
High Desert Dental, 621 S 5th St. Ste. 101, Madras OR 97741
Dente Complete Dentistry, 1704 W. North Ave, Chicago IL 60622
Mark D. Rosenstein, 2365 Boston Post Road, suite 100, Larchmont NY 10538
the Art Of Dentistry, 2142 Great Neck Square, Virginia Beach VA 23454
Princess City Dental Care, 2006 N Main St, Mishawaka IN 46545
Coweta Dentistrynewnan At Millard, 203 Millard Farmer Industrial Blvd, Newnan GA 30263
Allendale Dental, 42 W Allendale Ave, 42 W Allendale Ave, Allendale NJ 7401
Southern Colorado Family Dental, 2047 Columbia Dr, Pueblo CO 81005
Two Rivers Family And Cosmetic Dentistry, 1537 2nd Avenue South, Payette ID 83661

# EXHIBIT 11

## Contact

www.linkedin.com/in/developing-a-better-way (LinkedIn)

## Top Skills

Agile Methodologies
Software Development
Leadership

## Certifications

Pragmatic Certified Product Manager
Advanced Certified Scrum Product Owner (A-CSPO)
Pragmatic Certified Product Marketer
Agile Certified Product Manager Product Owner
Lean Six Sigma Master Black Belt

# James Grover

President of Vyne Dental
Lindon, Utah, United States

## Summary

I am passionate about "developing a better way."
…Developing a better way for dental professionals to run their practices.
…Developing software in a better way.
…Lifting others along the way.

I pride myself on being "Hadoop for Humans," meaning that I am able to leverage tools, methodologies, and skills to turn a large group of talented individuals into a unified, cohesive, high-performing team. I have over 20 years' experience building and leading such teams in the systems and software development space.

I directed the analysis, software engineering, quality assurance, and systems engineering efforts for both the medical and dental divisions of a Fortune 300 company (with teams based on three different continents). I was directly responsible for the ongoing development and administration of that company's most profitable product portfolio that consisted largely of SaaS offerings.

I also oversaw all of the product and engineering efforts for Global Payments Integrated, the technology innovation division of Global Payments, Inc., which was recently recognized by Forbes as one of the "Top 50 Most Innovative Companies" in the world. (https://www.forbes.com/innovative-companies/)

I have an affinity for developing innovative solutions that turn customers into loyal fans. I am an Agile coach and Lean Six Sigma Master Black Belt. As for my technical side, I can't figure out if I am a software engineer at heart who just happens to enjoy administering systems or a systems administrator who simply loves to code. (That's probably why I have always been drawn to database systems —no one can tell whether "database guys" are really programmers or systems administrators.)

I have extensive experience developing, deploying, maintaining, and integrating solutions in the payment processing industry (including PCI DSS, PA-DSS, EMV, and E2EE solutions). I also have extensive experience in the medical & dental software sector (including PM/EMR/EDR solutions, X12/EDI, HL7, FHIR, C-CDA, and DICOM).

———

## Experience

### Vyne Dental®
2 years 4 months

**President**
May 2024 - Present (1 year 6 months)

**Chief Product Officer**
July 2023 - May 2024 (11 months)
Oversee and facilitate the ongoing product development of revenue accelerating solutions that eliminate friction and pain for payers, providers, and patients.

### Dental Intelligence Inc.
**Chief Product & Technology Officer**
July 2021 - June 2023 (2 years)

Helped dentists provide more (even better) dentistry, improve their teams' collaboration and performance, and improve the overall health and profitability of their practices.

Directed the ongoing development of innovative analytics, patient engagement, scheduling, payments, and revenue cycle management (RCM) solutions for the dental sector.

### Global Payments Inc.
**SVP of Product & Technology, Global Payments Integrated**
November 2017 - July 2021 (3 years 9 months)

Directed the product strategy and software development for Global Payments Integrated--the integrated solutions division of Global Payments, Inc.

Facilitated product marketing, product management, product owner, software engineering, quality assurance, and systems administration efforts to ensure that we solved the right problems in the right ways for our customers.

Accountable for ~500 product & technology team members and approximately $1billion in annual revenue.

## Henry Schein Practice Solutions
9 years 11 months

### Vice President, Systems & Development
March 2012 - November 2017 (5 years 9 months)
1220 S 630 E, American Fork, UT 84003

"Intrapreneurial" co-creator of Dentrix Ascend.

Directed the ongoing enhancement and maintenance of the Dentrix, Dentrix Enterprise, eClaims, QuickBill, Dentrix Pay, eCentral ("Patient Engage"), DentalVision, PerioVision, and OMSVision product lines.

### Director of eServices Systems & Development
January 2008 - March 2012 (4 years 3 months)
727 East Utah Valley Drive, American Fork, UT 84003

Directed the development, deployment, and maintenance of SaaS solutions for the dental community. Responsible for the Product Analysis, Software Engineering, Quality Assurance, and Systems Engineering teams—including internal and offshore resources. Directly responsible for the ongoing development and administration of Henry Schein, Inc.'s most profitable product portfolio that included patient engagement and RCM solutions.

## Henry Schein MicroMD
### Director of Development
2006 - 2007 (1 year)

Directed the ongoing development of electronic health record (EHR) and practice management solutions.

## Henry Schein - Practice Management Technology Solutions
### Chief Architect
2001 - 2006 (5 years)

Lead the development, design, and technical architecture for a suite of specialized electronic medical record (EMR) solutions.

## TimeSquared
### Co-Founder
2000 - 2002 (2 years)

Directed a team of consultants in providing outsourced systems administration, support, and custom development in the healthcare IT sector (HL7, HIPAA, EDI, systems integration & implementation, etc.)

### Lighthouse Webware
Software Architect
2000 - 2001 (1 year)

Architected and developed a SaaS-based Customer Relationship Management (CRM) solution for small businesses.  (You read the date correctly...2000 - 2001.  Unfortunately, we were a little ahead of our time.)

### Medshape (purchased by Kryptiq)
Co-Founder
1999 - 2000 (1 year)

Directed the development, implementation, and maintenance of medical software solutions ranging from HL7 interface engines to browser-based document management systems.

### BYU Health Services
Systems & IT Manager
1995 - 1999 (4 years)

Implemented, integrated, and administered Health Care IT solutions (including practice management systems, electronic medical records (EMR) systems, laboratory information systems, pharmacy systems, radiology systems, and other custom-developed solutions).

_____

## Education

### University of Utah - David Eccles School of Business
Master of Business Administration (MBA), Business Strategy

### Brigham Young University
B.S., Computer Science