IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A
VYNE DENTAL,

                *Plaintiff*,

   -against-

HENRY SCHEIN ONE, LLC,

                *Defendant*.

Case No. 1:25-cv-03246-MJM

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4026

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151

**TABLE OF CONTENTS**

ARGUMENT .................................................................................................................................. 1

    I.    Vyne is Likely to Succeed on the Merits. ........................................................................ 2

        A.    HS One's Conduct Violates Unfair Competition Law. ............................................... 2

            *HS One's "Security" Rationale is Pretextual.* ............................................................ 3

            *The Cures Act Applies and Highlights the Unfairness of HS One's Conduct.* ............. 6

            *HS One Misreads Real Time.* ................................................................................... 10

        B.    HS One's Conduct Constitutes Tortious Interference with Business Relations. ........... 11

    II.    Vyne Faces Ongoing Irreparable Harm. ........................................................................ 13

    III.    Balance of Equities ....................................................................................................... 14

    IV.    Public Interest ............................................................................................................... 15

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Alexander & Alexander Inc. v. B. Dixon Evander & Assocs.*,
    336 Md. 635 (1994) ................................................................................................. 12

*Berlyn Inc. v. Gazette Newspapers Inc.*,
    223 F. Supp. 2d 718 (D. Md. 2002) ........................................................................... 4

*Brightview Grp., LP v. Teeters*,
    441 F. Supp. 3d 115 (D. Md. 2020) ........................................................................... 1

*Carbone v. Deutsche Bank Nat'l Tr. Co.*,
    2016 WL 4158354 (D. Md. Aug. 5, 2016) ............................................................... 12

*Ellicott Dredges, LLC v. DSC Dredge, LLC*,
    280 F. Supp. 3d 724 (D. Md. 2017) ................................................................... 11, 14

*Foster v. Univ. of Md.-E. Shore*,
    787 F.3d 243 (4th Cir. 2015) .................................................................................... 11

*GAI Audio of N.Y., Inc. v. Columbia Broad. Sys., Inc.*,
    27 Md. App. 172 (1975) ............................................................................................ 3

*Gorby v. Weiner,*
    2014 WL 4825962 (D. Md. Sept. 23, 2014) ............................................................. 12

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
    174 F.3d 411 (4th Cir. 1999) ..................................................................................... 1

*Lyon v. Campbell*,
    707 A.2d 850 (Md. Ct. Spec. App. 1998) ................................................................ 12

*Macklin v. Robert Logan Associates*,
    334 Md. 287 (1994). .................................................................................................. 11

*M-Edge Accessories LLC v. Amazon.com Inc.*,
    2015 WL 403164 (D. Md. Jan. 29, 2015) .................................................................. 5

*Morris v. Shellpoint Mortg. Servicing*,
    2019 WL 7565456 (D. Md. May 3, 2019) ............................................................... 13

*Multi-Channel TV Cable Co. v. Charleston Cable TV*,
    22 F.3d 546 (4th Cir. 1994) ..................................................................................... 13

Case 1:25-cv-03246-MJM    Document 40    Filed 10/21/25    Page 4 of 20

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009) ............................................................................................... 4

*Real Time Med. Sys., LLC v. PointClickCare Techs., Inc.*,
   131 F.4th 205 (4th Cir. 2025) ......................................................................... passim

*RealTime Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
   2024 WL 3569493 (D. Md. July 29, 2024) ............................................................ 3, 9

*Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko, LLP*,
   540 U.S. 398 (2004) ............................................................................................... 4

**Statutes & Regulations**

42 U.S.C. § 300jj-52(a)(1) ............................................................................................. 6

45 C.F.R. § 171.102 ...................................................................................................... 7

45 C.F.R. § 171.203 ...................................................................................................... 8

45 C.F.R. § 171.301 ...................................................................................................... 8

**Other Authorities**

21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT
   Certification Program, 85 Fed. Reg. 25642 (2020) ............................................. 7, 15

Henry Schein One, "Henry Schein One API Exchange,"
   *available at* https://www.henryscheinone.com/dental-solutions/api-exchange/ (last visited Oct.
   21, 2025) .................................................................................................................. 8

iii

**ARGUMENT**

      Hoping to avoid the Court's review, HS One tries to conflate its own anticompetitive conduct with Vyne's legitimate technical disputes to convince the Court that this case turns on competing claims about "information access" and "hacking." But once the technical noise recedes, the record clearly reveals Vyne's need for a temporary restraining order and preliminary injunction to return its business operations to the status quo ante. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). The status quo ante—the last uncontested status—was simple: for twenty years, dental practices used Dentrix to store their patient data, and they used Vyne's printer-driver tool to transmit that data to Trellis to verify eligibility, submit claims, and receive remittance advice. Only after launching a competing claims-submission service did HS One suddenly start disabling Vyne's software and locking dental offices out of patient records.

      Vyne clearly satisfies the governing standard for injunctive relief. *See Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 128 (D. Md. 2020). To begin, contrary to HS One's assertions, Vyne's motion seeks prohibitory rather than mandatory relief. *See Real Time Med. Sys., LLC v. PointClickCare Techs., Inc.*, 131 F.4th 205, 223–24 (4th Cir. 2025). And Vyne is likely to succeed on the merits of its claims, given HS One's deliberate campaign to target Vyne's customers and disrupt longstanding relationships, a campaign that started when HS One began competing directly with Vyne Trellis for claims submissions. HS One attempts to mask that campaign with hacking and security allegations; Vyne bears the burden on this defense, *see Real Time*, 131 F.4th at 231, and it has utterly failed to discharge that burden. Meanwhile, without an injunction, dental practices' ability to submit claims will remain stalled, their reimbursements delayed, and their access to patient data disrupted—and Vyne will suffer from reputational harm, lost goodwill, and the erosion of relationships that took years to build. These injuries cannot be remedied with money alone. The equities favor an injunction, which would merely restore the status quo and prevent

1

HS One from continuing exclusionary conduct, while HS One can identify no legitimate harm from it. And because uninterrupted access to healthcare information serves patients, providers, and payors alike, the public interest strongly favors injunctive relief.

Ultimately, HS One fails to dispute the central facts underlying Vyne's claims and showing its entitlement to relief—that HS One has specifically targeted Vyne programs with a virus that disables them without customer consent; that HS One is a competitor to Vyne motivated to abuse its access to patient health information to target Vyne's business, and started interfering only when it wanted to compete; and that there is no record of security vulnerabilities undermining the printer-driver tool. To the extent this Court perceives any remaining ambiguity, it should enter a temporary restraining order pending an evidentiary hearing on a preliminary injunction.

**I.     Vyne is Likely to Succeed on the Merits.**

**A.  HS One's Conduct Violates Unfair-Competition Law.**

As Vyne explained in its motion, HS One's conduct is tortious under Maryland's unfair competition law—both because it is patently unfair and because it violates the Cures Act's information-blocking provision. Mot. for TRO & PI, Dkt. 6-1 ("Mot."), at 13–18. When HS One decided to offer a competing claims-submission product, rather than simply compete on the merits of the parties' offering, HS One embarked on a campaign of sabotage, trying to force Vyne's customers to migrate to an alternative RCM service by blocking its own customers' use of patient records and then by directly sabotaging Vyne's products at the point of access. *Id.* at 13–15. At the same time, HS One has aggressively marketed its competing product to Vyne's customers, offering special pricing and fabricating claims of "security breaches" while pointing to outages that HS One itself caused. *Id.* None of this is consistent with "the principles of old-fashioned honesty." *RealTime Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 2024 WL 3569493, at *11 (D.

2

Md. July 29, 2024) (quoting *GAI Audio of N.Y., Inc. v. Columbia Broad. Sys., Inc.*, 27 Md. App. 172, 193 (1975)). It is black-letter unfair competition.

HS One does not dispute any fact that matters to Vyne's motion, most of which mirror the facts in *Real Time*. It does not dispute that HS One and Vyne have used the printer-driver function for decades without incident. First Roberts Decl. ¶ 13; *compare Real Time* at 215. It does not dispute that it continues to use a printer driver in its own competing RCM product, EDS. First Nix Decl., ¶ 6; *compare Real Time* at 215. It does not dispute that it began blocking this function earlier this year, when it began offering a competing RCM product, and simultaneously targeted Vyne's customers with aggressive outreach seeking to switch Vyne customers to its own services. First Roberts Decl. ¶¶ 14–31; *compare Real Time* at 215. It does not dispute that these measures keep Vyne customers from transferring their healthcare information to Vyne Trellis. First Nix Decl. ¶¶ 11–19; *compare Real Time* at 221–22. And it does not even acknowledge, let alone deny, its most recent efforts to surreptitiously target and disable all Vyne software on customers' computers without their knowledge or consent, First Nix Decl. ¶¶ 16–19, far worse than anything in *Real Time*.

Instead, HS One's opposition rests on the refrain that every one of its exclusionary updates and access restrictions was part of a good-faith effort at "security hardening," *see* Opp'n 11, while also arguing that the Cures Act does not apply (or that one of the exceptions does). These arguments fail, as does HS One's effort to distinguish *Real Time*.

**HS One's "Security" Rationale is Pretextual.** HS One does not deny its exclusionary conduct but insists that each act served a "legitimate business purpose" of security hardening. Opp'n 11. But the telemetry HS One deployed in 2025 was clearly developed to identify and disable integrations HS One wanted to eliminate for its own anticompetitive advantage—not to

3

address any genuine security threat. Demanding millions in developer fees and then deploying code that disables Vyne's software is exclusionary conduct, not legitimate system maintenance. Maryland law does not allow such conduct, as the Fourth Circuit made clear in *Real Time*.

HS One invokes *Berlyn Inc. v. Gazette Newspapers Inc.*, 223 F. Supp. 2d 718 (D. Md. 2002), but in *Berlyn*, the court found a legitimate business purpose because the defendants lawfully competed by encouraging advertisers to switch to a higher-circulation paper that offered broader reach and better results. *Id.* at 739. The defendant's conduct, which merely "caused incidental damage by attracting away certain advertisers," was permissible because it reflected truthful competition on the merits, not exclusion. *Id.* Of course, this is not a case involving claimed product superiority—and HS One makes no showing that it is so. Rather, when HS One wanted to start competing with Vyne, it deployed software updates that disabled Trellis across shared customers, and then circulated false messages claiming Trellis was "incompatible," "unsecure," and "unsupported," while urging customers to switch to HS One. Those statements were untrue because the loss of functionality stemmed from HS One's own conduct, not any flaw in Trellis. And HS One exploited the disruption to solicit customers to its new claims-submission service while Vyne tried restoring operations. That is not competition; it is sabotage and false advertising.

HS One also cites *Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398 (2004), and *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009), but those cases stand for the limited principle that, under federal antitrust law, a company has no duty to share its proprietary systems or set favorable terms for a competitor. *See Trinko*, 540 U.S. at 407–09; *linkLine*, 555 U.S. at 448–52. Neither suggests that a company may disrupt a functioning integration, sabotage a competing product, or mislead customers to exclude a rival. Vyne does not seek access to HS One's proprietary systems; it seeks access to patient records that do not belong

to HS One, with the consent of dental practices, and asks that HS One stop disabling its product.

Nor does *M-Edge Accessories LLC v. Amazon.com Inc.*, 2015 WL 403164 (D. Md. Jan. 29, 2015), help HS One. There, Amazon offered an optional licensing program for Kindle accessories and did nothing to interfere with M-Edge's products when it declined to participate. *Id.* at *5. The court explained that M-Edge's exclusion was self-imposed, not coerced. *Id.* Here, HS One did the reverse: it disabled Trellis through targeted updates and then demanded millions in "developer fees" for data access it had itself removed. Cutting off access and monetizing reinstatement is coercive exclusion, not lawful competition. No legitimate business purpose exists.

HS One's claim that Vyne or its customers had alternatives is illusory. Opp'n 13. Vyne could only process manual claims or abandon its software products in favor of clearinghouse workarounds, which are not viable substitutes. Suppl. Roberts Decl. ¶ 10. Before HS One's software updates, Trellis transmitted claims instantaneously through Dentrix; after the updates, practices were forced into time-consuming, error-prone manual processes that crippled operations. *See* First Nix Decl. ¶¶ 12–15. Offering degraded functionality as the only alternative to a deliberately disabled system is no real choice at all—and it is far from allowing Vyne's and HS One's products to compete on their own merits.

Finally, although not strictly relevant to disposing of this motion, there is no substance to the generic accusations of Vyne supposedly "misappropriating decryption keys," "injecting data," and "simulating Dentrix." *See generally* Suppl. Nix Decl. ¶¶ 5–31. As Vyne CTO James Nix explains, Trellis communicates with Dentrix through a print-to-PDF driver that merely *reads* the data a user elects to send (just like HS One does with its own product). First Nix Decl. ¶¶ 5–9. Vyne does not inject code, bypass authentication, or alter any database. Suppl. Nix Decl. ¶¶ 11–27. No exploit, breach, or corruption occurred in more than twenty years of use—and despite its

5

flurry of filings in Maryland and Utah claiming supposed security risks, HS One never once states that such a breach occurred.[1]

***The Cures Act Applies and Highlights the Unfairness of HS One's Conduct.*** HS One's efforts to target and disable Vyne's products and mislead its customers are plainly tortious under Maryland unfair competition law. The Court could stop its analysis there. But as Vyne explained in its motion, HS One's misconduct is also unlawful for the separate reason that it violates the information-blocking provision of the Cures Act, prohibiting Vyne's customers (and HS One's) from transferring patient data that belongs to them in violation of federal law. Mot. at 16–18.

On the Cures Act, HS One does not bother to deny that its conduct is facially information-blocking. Nor could it: any entity that "controls or administers a policy" governing the exchange of health data and "knows or should know" its actions restrict access violates the statute. 42 U.S.C. § 300jj-52(a)(1); 45 C.F.R. § 171.102. Instead, HS One argues that the Act does not apply, and alternatively that one of the exceptions under the Cures Act immunizes it. Vyne has the burden to show the Cures Act applies, but under Fourth Circuit law, it is HS One, not Vyne, that bears the burden to demonstrate that an exception applies, because the Cures Act "put[s] the onus on the party engaging in [information] blocking to demonstrate that it is doing so for good reason." *Real Time*, 131 F.4th at 231. HS One's arguments all fail.

*First*, there is no merit to HS One's claim that the Cures Act does not apply because it is neither a "developer of certified health IT" nor a "health information network or exchange." Opp'n 14–15. That ignores the relevant regulation. An HIN or HIE includes an "entity that determines,

---

[1] In the latest indication that HS One does not intend to compete against Vyne fairly, Vyne discovered on October 16, 2025, that Vyne's former employee, Dr. Ryan Hungate, who is now Chief Clinical and Strategy Officer at HS One, accessed Vyne's confidential files without authorization, including Vyne subscriber lists and other trade secrets. Suppl. Roberts Decl. ¶ 23.

controls, or has the discretion to administer any requirement, policy, or agreement that permits, enables, or requires the use of any technology or services for access, exchange, or use of electronic health information." 45 C.F.R. § 171.102. HS One's platform connects thousands of dental practices, payors, and software vendors—the core of the Cures Act. *Real Time*, 131 F.4th at 231.

Arguing otherwise, HS One claims that its API program is a simple intermediary allowing one customer to communicate with one vendor at a time, and that the Cures Act excludes such "bilateral" communications. Opp'n 15–16. HS One's attempt to slice its API network into a series of countless bilateral transactions—and thereby avoid regulation under the Cures Act—is not consistent with the regulatory definition, which defines HIN/HIE in a way that is "flexible enough to apply to the full range and diversity of exchanges and networks that exist today and that may arise in the future." 21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. 25642, 25800 (2020) ("ONC Guidance").

And HS One's position that the Cures Act does not apply is not even consistent with how HS One describes its own program, which it vaunts as "open, transparent, and *interoperable*" and used by "[o]ver 100 vendors." Opp'n 3–4 (emphasis added). Indeed, in its Utah complaint, which HS One inappropriately tries to incorporate into its opposition, *see* Opp'n 3 n.1, HS One brags that its API Exchange offers "the ability for dental practices to contract with approved third party software vendors," allowing its customers to "leverage" the "over 750 data endpoints" it makes available to "enable third-party services to interact with HS One's platforms." Dkt. 12, ¶¶ 3–4. It describes its API Exchange as giving "interoperability and freedom of choice for HS One's dental customers" to work with "over 40 categories of third-party vendors," "spanning areas such as patient engagement, revenue cycle management, analytics and imaging, among others." *Id.* ¶ 4. On its website, it describes the API Exchange as "a versatile platform enabling integrations and

7

interoperability with preferred vendors."[2] In other words, the API Exchange (and Dentrix, which uses it) enables HS One customers to exchange patient data with dozens of different HS One-approved vendors, and each of these vendors to interact with thousands of Dentrix users. It strains belief to assert that its program, which it calls the "API Exchange," is "not facilitating any exchange." Opp'n 16 n.9.

*Second*, HS One does not satisfy its burden, *Real Time*, 131 F.4th at 231, on its defenses under the "security" and "manner" exceptions, 45 C.F.R. §§ 171.203, 171.301. As to the "security" exception, the regulations require that a security measure be "tailored to the specific security risk being addressed" and "implemented in a consistent and non-discriminatory manner." 45 C.F.R. § 171.203(b)–(c); *Real Time*, 131 F.4th 236. HS One fails to substantiate its security claims—its declarants reference only "security hardening" and "integration control" efforts generically, but they provide no explanation and no contemporaneous analysis or written risk evaluation. *See* Dkt. 38-1, ¶¶ 5–6; Dkt. 38-2 ¶¶ 10, 15. This kind of "vague assertion is not enough to evade the statutory ban on information blocking." *Real Time*, 131 F.4th at 238. And HS One does not explain how an update which undisputedly searched its customers' computers to disable any and all Vyne services by name, including Vyne services that would have nothing to do with Dentrix, was somehow "tailored" to HS One's asserted security risks or "non-discriminatory." This is insufficient. *See Real Time*, 131 F.4th at 236–37. And again, as in *Real Time*, HS One does not dispute that it did not complain about Vyne's use of print drivers for many years, that HS One started doing so only when it wanted to compete with Vyne, and that HS One itself uses similar a print driver for its own product. This puts the lie to the security claim.

---

[2] *See* Henry Schein One, "Henry Schein One API Exchange," *available at* https://www.henryscheinone.com/dental-solutions/api-exchange/ (last visited Oct. 21, 2025).

As to the "manner" exception, HS One makes the outrageous argument that it does not know what data Vyne needs, supposedly because Vyne "did not make a proper request for access to data." Opp'n 19–20. HS One cites nothing to support its assertions that the Cures Act requires a specific and detailed request for patient information every time an entity seeks healthcare information. *See* Opp'n 19. The regulations do not contain any such requirement. Regardless, Vyne *did* make such a request, and HS One attached it to its own complaint in Utah: in an August 21, 2025 letter, Vyne requested that HS One make available specific categories of health information for enumerated mutual clients, including "[p]atient records, treatment data, and clinical notes." Dkt. 12, Ex. 3. Vyne did not leave HS One to "only guess at any request Vyne is making." Opp'n 19. As to technical inability to provide the requested information, a point that is "quite difficult to show" under the "very high bar" set by the Cures Act, *Real Time*, 131 F.4th at 233–34, HS One offers a single conclusory sentence that providing the requested data through the printer driver, as has been done without any objection for the past 20 years, is impossible because it "would result in serious data integrity issues." Opp'n 20. How HS One has surmounted these "serious data integrity issues" with respect to its own use of a printer driver is left unexplained.

As to the parties' negotiations over an alternate means to provide the requested information, Vyne already described its efforts to reach a reasonable arrangement under HS One's API program in its opening motion. Mot. 6–10. Each time, HS One's proposal contained a poison pill that would cut off Vyne's use of the printer driver without providing any alternate means of access and would prohibit Vyne from sending patient health information on to insurance payors. Suppl. Roberts Decl. ¶¶ 7–8; *see also Real Time*, 2024 WL 3569493, at *11 (manner exception not satisfied by offer of API agreement under which Real Time "still would not have obtained the full data necessary to perform patient analytics"). Vyne would participate in the DDP if it could—

9

it has made the same arrangement with other dental practice management software providers. Suppl. Roberts Decl. ¶¶ 6, 11–12. But HS One has refused any reasonable terms. *Id.* ¶ 8. As in *Real Time*, HS One cannot "get around" the Cures Act's "statutory and regulatory goals merely by claiming an inability to reach agreeable terms without any evidence of genuine efforts being made to do so." *Real Time*, 131 F.4th at 235.

**HS One Misreads** ***Real Time***. Finally, HS One's effort to distinguish *Real Time* fails. Opp'n 21–24. In *Real Time*, as here, the defendant never once raised concerns with the plaintiff's access to patient information over the course of many years, but suddenly switched course and began to interfere with that access at the time it began competing directly. The Fourth Circuit held that the defendant there violated Maryland unfair competition law when it used technical means "to leverage its control over" its systems to harm its competitor's business, all the while invoking "security and system performance" as pretext. *Real Time*, 131 F.4th at 238. HS One did precisely the same. It suddenly started blocking dental practices access to patient information after twenty years of doing nothing. And its latest updates scanned for Vyne's certificates and disabled Trellis across shared customers, all without evidence of any exploit, breach, or corrupted file. HS One does not dispute that it did this. And the "extensive documentation" it claims supported its unlawful measures amount to three vague and conclusory paragraphs in a declaration. Opp'n 23.

Indeed, HS One's conduct is worse than in *Real Time*. It has tried to block Vyne's printer-driver integration based on supposed security concerns that are not just unsubstantiated but facially unbelievable, because HS One has *continued using the same function for its own products*, First Nix Decl. ¶ 6—a fact it does not deny. And it has moved past simple information blocking to directly targeting and disabling Vyne's products, all for the same anticompetitive motives.

<center>* * *</center>

Whether or not it violates the Cures Act, the undisputed facts establish that HS One's conduct satisfies both parts of Maryland's unfair competition standard: it conflicts with public policy favoring open competition and substantially impairs Vyne's ability to compete on the merits. *Ellicott Dredges, LLC v. DSC Dredge, LLC*, 280 F. Supp. 3d 724, 732 (D. Md. 2017). And the conduct also violates the Cures Act, with HS One failing to satisfy its burden of showing that an exception under the Cures Act applies. For these reasons, Vyne is likely to succeed on the merits of its unfair-competition claim.[3]

### B. HS One's Conduct Constitutes Tortious Interference with Business Relations.

In its Motion, Vyne separately showed that HS One's actions were tortious because they knowingly and deliberately interfered with Vyne's contractual relationships with its customers, leaving Vyne unable to fulfill its contractual obligations to these customers and dissuading other potential customers from contracting with Vyne. Mot. 18–20.

HS One claims that its conduct could not constitute tortious interference because it amounted to legitimate competition. Opp'n 25–26. But HS One misstates the competition privilege. *Macklin* makes clear that the competitive actions taken to protect a company should be devoid of intentionally wrongful conduct. *Macklin v. Robert Logan Associates*, 334 Md. 287, 301 (1994). Here, HS One intentionally disabled Vyne's integrations through malicious software that targeted Trellis processes, blocked access to shared customers, and spread falsehoods to try to snatch customers. The acts that technically disabled Vyne's functionality to compel customer migration to HS One's clearinghouse are not lawful or proper, and neither are the false statements.

---

[3] HS One's constitutional avoidance argument is not jurisdictional, and also wrong and undeveloped. Such limited treatment of an issue that HS One carries the burden of proving constitutes waiver. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 n.8 (4th Cir. 2015) (concluding that a party waives an argument when the discussion is limited to an isolated footnote); *see also Real Time*, 131 F.4th at 238–39 (rejecting the same undeveloped argument).

Nor can HS One claim a commercial goal to save its misconduct. Opp'n 25–26. *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs.*, on which HS One relies, explains that competition does not immunize interference carried out by "wrongful means" or with "malice." 336 Md. 635, 658–59 (1994). HS One's conduct easily meets that standard. It knew Vyne's Trellis platform served specific Dentrix offices and, despite that knowledge, rolled out updates that broke those installations and misled customers about the cause. That shows wrongful means as well as knowledge and intent. *Cf. Lyon v. Campbell*, 707 A.2d 850, 862 (Md. Ct. Spec. App. 1998).

Nor does offering "alternatives" excuse deliberate obstruction. Opp'n 26. *Gorby v. Weiner* recognizes that competition is no defense when the defendant "acts with 'tortious intent' and by means which are themselves "wrongful." 2014 WL 4825962, at *9 (D. Md. Sept. 23, 2014). HS One's targeted disabling of integrations—aimed at coercing customers to switch—fits squarely within that prohibition.

HS One feigns ignorance of Vyne's contracts with its customers, claiming that Vyne fails to identify "any specific contract of which HSOne had actual knowledge." Opp'n 26. Even if Vyne's public posting of its terms and conditions and the simple reality of business in the industry were insufficient, HS One had ample knowledge of Vyne's contractual relations with specific customers at least from Vyne's letter of August 21, 2025, which requested HS One cease its information-blocking conduct with respect to specific customers with which Vyne had "direct Business Associate Agreements" and for whom HS One's continued misconduct risked "impair[ing] the customer's ability to rely on Vyne Dental's services in support of their essential healthcare operations." Dkt. 12, Ex. 3. Again, HS One attached this letter to its own complaint.

Moreover, HS One's reliance on *Carbone v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4158354 (D. Md. Aug. 5, 2016), for this argument is misplaced. In *Carbone*, the plaintiffs' claims

12

were dismissed because they rested entirely on speculation and rhetoric—allegations of "evil motives" and "malicious intent" unsupported by any factual detail. *Id.* at *5. The complaint in that case offered no specific examples of conduct, no identified victims, and no documentary support; the court described it as "wholly conclusory and devoid of any factual support." *Id.* Here, by contrast, Vyne identifies the precise conduct at issue—HS One's deployment of code that disabled Trellis integrations on specific customer systems, as well as related customer-facing statements—and the resulting disruption to identifiable business relationships. HS One does not deny deploying this code, and HS One's own records and declarations acknowledge receipt of customer complaints from affected practices, confirming its knowledge of Vyne's contracts and intentional interference with them. Those contemporaneous facts, drawn from HS One's filings, supply exactly the kind of factual specificity *Carbone* found lacking.

## II.    Vyne Faces Ongoing Irreparable Harm.

HS One's assertion that Vyne's harm is speculative or compensable by money damages misstates both law and fact. *See, e.g.*, *Morris v. Shellpoint Mortg. Servicing*, 2019 WL 7565456, (D. Md. May 3, 2019) (quotation omitted). The loss of customers, goodwill, and market position resulting from HS One's disabling campaign constitutes classic irreparable injury. *See Real Time*, 131 F.4th at 239. Vyne's pleadings and declarations show that HS One's updates disabled Trellis installations for hundreds of dental offices, forced manual claim submissions, and caused cascading cancellations and reputational harm. These injuries are ongoing and cannot be remedied by damages, particularly where lost customers have migrated permanently to HS One's competing product (or another competitor). *See Multi-Channel TV Cable Co. v. Charleston Cable TV*, 22 F.3d 546, 552 (4th Cir. 1994) ("[T]he threat of permanent loss of customers and goodwill" constitutes irreparable harm.). The injury to Vyne's reputation, customer relationships, and

13

credibility thus satisfies the "actual and imminent" standard for irreparable harm. Indeed, these injuries have compounded since Vyne filed its motion, and HS One appears to be preparing to worsen them with a new Dentrix update in the coming days. Suppl. Roberts Decl. ¶¶ 20–24.

### III.    Balance of Equities

HS One's balance of equities argument also fails. Although Vyne identified concrete facts establishing irreparable harm including customer losses, there is no similar showing on the other side of the ledger, with no customer losses or reputational harm falling on HS One. An injunction would not endanger patients or customers; it would restore the status quo that existed for years before HS One's disabling updates, just as in *Real Time*, 131 F.4th at 240.

HS One relies on a claim of "malicious software," Opp'n 28–29, but if the injunction is granted, the parties will simply return to the status quo of Vyne customers using the same printer driver deployed for many years without complaint or customer loss to anyone. Moreover, HS One introduced no record evidence substantiating this so-called "malicious software"; HS One identifies no malware signatures, no security incidents, and no customer data breaches. Its sole support, the McDaniel Supplemental Declaration, offers conclusory statements about "new malicious software" without any factual basis. These unsubstantiated assertions are just wrong, as the supplemental declaration of Mr. Nix establishes. Suppl. Nix Decl. ¶¶ 5–31. Moreover, Vyne has also shown that its Trellis integration was independently audited for security and operates solely on customer-side data. First Nix Decl. ¶¶ 7–9.

An injunction would also not improperly restrict HS One's speech. Opp'n 29. Vyne seeks only to prevent HS One from disseminating false statements about Trellis's functionality and security—speech that is unprotected under the law. *See Ellicott Dredges*, 280 F. Supp. 3d at 732.

14

Finally, HS One's suggestion that Vyne could just "join" its API program is no defense. Opp'n 29. Forcing Vyne to abandon existing integrations and rebuild its business through HS One's gatekeeping, to the detriment of dental practices nationwide, is not a reasonable alternative—it is the very harm the Cures Act is meant to prevent. *See Real Time*, 131 F.4th at 240; *see also* Suppl. Roberts Decl. ¶¶ 5–12. The equities therefore favor restoring competition and customer choice.

### IV.   Public Interest

The public interest also supports injunctive relief. Federal policy embodied in the Cures Act favors interoperability and prohibits "information blocking" that prevents providers and patients from accessing electronic health information that belong to patients. *See* ONC Guidance, 85 Fed. Reg. at 25643. HS One's conduct directly frustrates that policy by disabling integrations that enable dental offices to exchange data efficiently and securely.

Patients and providers—not HS One—own the data at issue. Allowing HS One to unilaterally restrict access to that data under the guise of "security" would sanction a precedent inconsistent with both federal objectives and Maryland's public-policy commitment to open competition. Granting a narrowly tailored injunction will protect patient access, preserve consumer choice, and ensure that competition, not coercion, determines which platforms succeed.

### CONCLUSION

For the foregoing reasons, this Court should issue a temporary restraining order and a preliminary injunction. If the Court believes further evidence is necessary to resolve the preliminary-injunction application, then it should enter a TRO and set an appropriate schedule to hear further evidence.

DATED: October 21, 2025                HOLWELL SHUSTER & GOLDBERG LLP


                                       By:   /s/ Vincent Levy
                                       Michael Shuster
                                       Vincent Levy
                                       Daniel Fahrenthold
                                       Torrell Mills
                                       425 Lexington Avenue, 14th Floor
                                       New York, NY 10017
                                       (646) 837-5151
                                       vlevy@hsgllp.com

                                       *Attorneys for Plaintiff*
                                       *National Electronic Attachment, Inc., d/b/a Vyne Dental*