**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>                    Plaintiff,<br><br>        - against –<br><br>HENRY SCHEIN ONE, LLC,<br><br>                  Defendant. | **Case No. 1:25-cv-03246-MJM** |

**HENRY SCHEIN ONE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
<u>**MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 4

    I.    Vyne's Venue Allegations Ignore that Utah is the Nexus of this Dispute, as HSOne's Principal Place of Business Is in Utah as are multiple of Vyne's Senior Executives. ....................................................................... 4

    II.    Vyne's Allegations that HSOne's Defensive Security Measures Hack Vyne's Software are Implausible and ask the Court to Make Unsupported Inferences that Distort the Facts. ....................................... 5

    III.    Vyne's Allegations about the Parties' Commercial Negotiations are Conclusory and One-sided. .................................................................... 7

ARGUMENT ......................................................................................................... 8

    I.    Vyne's Complaint Fails to Allege Proper Venue .................................... 8

        A.    Standard ...................................................................................... 8
        B.    Vyne Fails to Allege Proper Venue Under 28 U.S.C. § 1391. ........ 8

    II.    Vyne's Complaint Fails to State a Claim for Relief as a Matter of Law ............. 10

        A.    Legal standard .......................................................................... 10
        B.    Vyne Fails to State a Claim for Any of its Causes of Action. ................. 11
        (I)    Vyne's Computer Fraud And Abuse Act claim (Count I) fails because Security Upgrades are not Hacks. ................................ 11
        (II)    Vyne's Speech-Related Claims Fail to Allege Anything More than Acceptable Business Communications .......................... 14
        C.    Both Vyne's Tortious Interference Claims (Counts III And IV) Fail Because Vyne Alleges No Specific Contract, No Actual Breach, and No Wrongful Conduct. ............................................................ 19
        D.    Vyne's Unfair Competition Claim (Count V) Fails Because Vyne Alleges No Fraud or Other Wrongful Conduct, and Its Reliance on the Cures Act Does Not Save its Claim. .................................... 22
        (I)    Vyne Cannot State a Claim for Unfair Competition Outside of a Separate Statutory Violation. ............................................... 22
        (I)    Vyne Fails to State a Claim For Cures Act Violations Under Any Theory. ............................................................................ 25
        E.    Vyne's Declaratory Judgment Claim (Count VII) Fails Because It Seeks an Impermissible Prior Restraint. .................................... 29

CONCLUSION ..................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abissi v. United States Citizenship & Immigration Services*,
  729 F. Supp. 3d 505 (D. Md. 2024)......................................................................4

*Ademiluyi v. Nat'l Bar Ass'n*,
  No. GJH-15-02947 (D. Md. Sep. 8, 2016).........................................................10

*Alexander & Alexander Inc. v. B. Dixon Evander & Associates, Inc.*,
  336 Md. 635, 650 A.2d 260 (1994) ..............................................................20, 25

*Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*,
  640 F. Supp. 1411 (E.D.N.C. 1986)..................................................................18

*Animators at Law, Inc. v. Capital Legal Sols., LLC*,
  786 F. Supp. 2d 1114 (E.D. Va. 2011) .............................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................10, 11, 26

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
  571 U.S. 49 (2013)...............................................................................................8

*Baron Fin. Corp. v. Natanzon*,
  471 F. Supp. 2d 535 (D. Md. 2006) ..................................................................22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................10, 26, 30

*Berlyn Inc. v. Gazette Newspapers, Inc.*,
  223 F.Supp.2d 718 (D. Md. 2002) ...............................................................23, 24

*Biospherics, Inc. v. Forbes, Inc.*,
  151 F.3d 180 (4th Cir. 1998) .............................................................................15

*Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*,
  No. CV SAG-22-00176, 2023 WL 5278654 (D. Md. Aug. 16, 2023) ...............13

*Carfax, Inc. v. Accu-Trade, LLC*,
  No. 121CV00361RDATCB, 2022 WL 657976 (E.D. Va. Mar. 4, 2022) .............13

*Carlisle v. McDonald*,
  2017 WL 550031 (D. Md. Feb. 10, 2017) ...........................................................8

*CGM, LLC v. BellSouth Telecomms., Inc.*,
  664 F.3d 46 (4th Cir. 2011) ...............................................................................29

*Chapin v. Knight-Ridder, Inc.*,
  993 F.2d 1087 (4th Cir. 1993) ...........................................................................15

*CIENA Corp. v. Jarrard*,
  203 F.3d 312 (4th Cir. 2000) ...............................................................................9

ii

*Corp. Universe, Inc. v. Emry Cap. Grp., Inc.*,
   2021 WL 3603040 (D. Md. Aug. 12, 2021) ......................................................8

*De Leon v. St. Joseph Hosp., Inc.*,
   871 F.2d 1229 (4th Cir. 1989) ....................................................................14

*Design Res., Inc. v. Leather Indus. of Am.*,
   789 F.3d 495 (4th Cir. 2015) ......................................................................17

*Ellicott Dredges, LLC v. DSC Dredge, LLC*,
   280 F. Supp. 3d 724 (D. Md. 2017) ........................................................19, 23

*Express Homebuyers United States v. Wbh Mktg.*,
   2018 U.S. Dist. LEXIS 214039 (E.D. Va. Aug. 29, 2018) ..................................18

*Farmer v. Kent*,
   No. CV TDC-20-1806, 2021 WL 690025 (D. Md. Feb. 23, 2021), *aff'd*, No.
   21-1350, 2022 WL 4482087 (4th Cir. Sept. 27, 2022) ......................................20

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
   314 F.3d 48 (2d Cir. 2002) ........................................................................18

*Frye v. Hayes*,
   No. CV JKB-25-0162, 2025 WL 1167976 (D. Md. Apr. 22, 2025) ........................4

*Harry and Jeanette Weinberg Found., Inc. v. St. Marks Ave., LLC*,
   No. CV GLR-15-3525, 2018 WL 704866 (D. Md. Feb. 5, 2018) ...........................19

*Harvey v. Cable News Network, Inc.*,
   520 F. Supp. 3d 693 (D. Md. 2021) ..............................................................15

*Henry Schein One, LLC v. National Electronic Attachment, Inc. d/b/a Vyne
   Dental*,
   Case No. 2:25-cv-00883 ...........................................................................28

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022) .................................................................12, 23

*Jezign Licensing, LLC v. L.T.D. Commodities, LLC*,
   No. CV RDB-22-1592, 2023 WL 5607908 (D. Md. Aug. 30, 2023) .................11, 26

*Laios v. MTM Builder/Developer, Inc.*,
   2021 WL 4478712 (D. Md. Sept. 30, 2021) .....................................................9

*Laios v. MTM Builder/Developer, Inc.*,
   No. GJH-20-3337 (D. Md. Sep. 30, 2021) .......................................................9

*Lyon v. Campbell*,
   707 A.2d 850 (Md. Spec. App. 1998) ...........................................................20

*M-Edge Accessories LLC v. Amazon.com Inc.*,
   2015 WL 403164 (D. Md. Jan. 29, 2015) ...............................................23, 24, 25

*Macklin v. Robert Logan Assocs.*,
   334 Md. 287 (1994) ...........................................................................20, 25

ACTIVE 715700292v5

*Mansell v. Toys R Us, Inc.*,
  673 F. Supp. 2d 407 (D. Md. 2009) ..........................................................................20

*Metro. Reg'l Info. Sys. v. Am. Home Realty Network*,
  948 F. Supp. 2d 538 (D. Md. 2013) ..........................................................................18

*Mixter v. Farmer*,
  215 Md.App. 536, 81 A.3d 631 (2013)..................................................................21, 22

*Murray v. United Food and Commercial Workers Intern. Union*,
  289 F.3d 297 (4th Cir. 2002) ...................................................................................15

*Nautilus Ins. Co. v. Winchester Homes, Inc.*,
  15 F.3d 371 (4th Cir. 1994) .....................................................................................30

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009)..................................................................................................24

*Philips v. Pitt Cnty. Mem'l Hosp.*,
  572 F.3d 176 (4th Cir. 2009) .....................................................................................4

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
  227 F.3d 489 (5th Cir. 2000) ...................................................................................18

*Rabinowitz v. Oates*,
  955 F. Supp. 485 (D. Md. 1996) ...............................................................................14

*Rakowski v. Best Buy Stores, L.P.*,
  No. ELH-20-1107, 2020 WL 6485085 (D. Md. Nov. 3, 2020) ......................................8

*SAMi-Systematic Analysis Mgmt., Inc. v. Omnivere Acquisitions, LLC*,
  No. CV RDB-19-2904, 2020 WL 1863292 (D. Md. Apr. 14, 2020).....................................10

*Samuels v. Tschechtelin*,
  135 Md. App. 483, 763 A.2d 209 (2000).....................................................................14

*Savaria USA, Inc. v. Elevator Works, LLC*,
  No. CV RDB-24-1311, 2024 WL 2212914 (D. Md. May 16, 2024)................................22, 23

*Scotts Co. v. United Indus. Corp.*,
  315 F.3d 264 (4th Cir. 2002) ...................................................................................17

*Silo Point II LLC v. Suffolk Const. Co., Inc.*,
  578 F. Supp. 2d 807 (D. Md. 2008) ............................................................................4

*Skelly Oil Co. v. Phillips Petroleum Co.*,
  339 U.S. 667, 70 S. Ct. 876, 94 L. Ed. 1194 (1950)...................................................29

*State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*,
  381 F. Supp. 3d 536 (D. Md. 2019) ..........................................................................16

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
  282 F. Supp. 3d 916 (E.D. Va. 2017) ..........................................................................8

*Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*,
  705 F. Supp. 3d 510 (D. Md. 2023) ..............................................................15, 16, 21

iv

*Van Buren v. United States*,
  593 U.S. 374 (2021) ...............................................................................................11, 12, 13

*Verisign, Inc. v. XYZ.COM LLC*,
  848 F.3d 292 (4th Cir. 2017) ...................................................................................17

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) ..................................................................................................24

*WEC Carolina Energy Sols. LLC v. Miller*,
  687 F.3d 199 (4th Cir. 2012) ...................................................................................12

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ..................................................................................................29

**Statutes**

18 U.S.C. § 1030(a)(5)(A) .............................................................................................11

18 U.S.C. § 1030(a)(5)(C) .............................................................................................11

18 U.S.C. § 1030(e)(8) ...................................................................................................13

18 U.S.C. § 1030(e)(11) .................................................................................................13

28 U.S.C. § 1391 .........................................................................................................8, 9

28 U.S.C. § 1404(a) .........................................................................................................9

28 U.S.C. § 1406(a) .........................................................................................................8

Lanham Act § 43(a)(1)(B) .........................................................................................17, 18

**Other Authorities**

45 C.F.R. § 171.102 .......................................................................................................26

45 C.F.R. § 171.203 .......................................................................................................27

Fed. R. Civ. P. 8(a)(2) ...................................................................................................11

Fed. R. Civ. P. 12 ...................................................................................................1, 4, 6

Fed. R. Civ. P. 12(b)(3) ..............................................................................1, 4, 7, 8, 9, 10

Fed. R. Civ. P. 12(b)(6) .............................................................................1, 4, 10, 21

14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3826 (3d ed.) ....................................8

ACTIVE 715700292v5

Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), Defendant Henry Schein One, LLC ("HSOne"), by counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss ("Motion") the Complaint filed by Plaintiff National Electronic Attachment, Inc., d/b/a Vyne Dental ("Vyne") with prejudice, and states as follows:

## INTRODUCTION

Vyne's circumvention of HSOne's technical security measures places tens of thousands of nationwide dental practices at risk. Vyne's forum shopping to attempt to justify its conduct has caused a massive amount of paper to be submitted to two federal courts, the majority of which could have been avoided.

For purposes of this motion, Rule 12(b)(3) permits the Court to review the facts underlying Vyne's venue allegations before digging into the plausibility of its substantive claims. Vyne's paltry venue allegations do not come close to clearing the pleading bar. None of the events giving rise to the claims happened in Maryland. They were all, in reality, based on decisions Vyne's Utah-based executives (who used to work for HSOne in Utah) made in Utah. To the extent HSOne's reactions to Vyne's decisions give rise to Vyne's claims, all of the facts and circumstances of HSOne's reactions occurred outside of Maryland as well. Pleading a handful of Maryland customers, less than a fraction of a percentage point of HSOne's customers and less than two percent of the customers Vyne claims have been impacted at all, does not suffice. Vyne conflates the 'events giving rise' to the claims with the effects of those events. Had Vyne swapped the word "Maryland" for "California," "Alaska," or virtually any other state, the Complaint would read the same—and be just as misplaced with respect to venue. In light of this, the most efficient outcome to the mess of papers Vyne has created before this Court is to dismiss this case and have the district court in Utah take up the dispute.

ACTIVE 715700292v5

Apart from the venue issues, Vyne fails to state a claim for relief under any of its causes of action. The Court can make inferences in Vyne's favor and need not evaluate the hotly contested factual disputes to dismiss Vyne's claims, because they are on their face, implausible, conclusory, and speculative. Vyne makes multiple admissions that HSOne acted based on careful, thoughtful, and reasonable investigation. It is not enough to point to legitimate business conduct and declare it is unfair because it hurt one's business. It is even less sufficient to make claims about legitimate business conduct, as Vyne does, while admitting that the conduct was in reaction to concerns over unauthorized computer hacking. Vyne's allegations, even if accepted as true, describe nothing more than a company managing its own software platform and protecting customer and patient data.

Every one of Vyne's claims fails as a matter of law. The Computer Fraud and Abuse Act (CFAA) claim is insufficient because Vyne pleads no facts showing unauthorized access to its computers, nor has it alleged requisite statutory damage or loss incurred by responding to a hacking attempt. The Supreme Court construes the CFAA narrowly, as does the Fourth Circuit. It is not intended to criminalize computer misuse. Vyne's theory would make it so any antivirus or anti-malware software that scans for malicious attempts to interfere with a system would be committing a computer crime. This is not the law.

Vyne's speech-based claims for defamation and violation of the Lanham Act fall far short of the pleading standard as well. Vyne does not allege that any of HSOne's statements are provably false. On its face, the Complaint describes subjective opinions and business communications based on reasonable investigation. This is not actionable under a common law defamation theory or a Lanham Act theory.

Vyne's tortious interference counts both fail for multiple reasons. Vyne does not allege an independent wrongful act, lacks specificity as to what contracts or relationships HSOne supposedly impacted, and fails to plausibly plead that HSOne's words or acts were the cause of any disruption to Vyne's business.

As to unfair competition, here Vyne attempts to shoehorn the 21st Century Cures Act into this case. A plain reading of the statute, regulations, and Vyne's Complaint, however, show that the Cures Act does not apply. HSOne facilitates bilateral data transfer only and falls outside of the Cures Act provisions Vyne cites. Even if the Cures Act did govern this case, Vyne fails to allege that HSOne's conduct falls outside of the Act's Security Exception. On the contrary, Vyne's Complaint, read plausibly, makes clear that HSOne has done nothing more than secure its own software. Vyne's remaining claims—including its request for declaratory relief—are derivative of Vyne's other defective theories and must be dismissed for the same reasons.

Vyne's lawsuit here in Maryland is nothing more than another tactic to attempt to prolong its unlawful hacking campaign. It now seeks to conscript this Court into permitting it unfettered access to protected computer systems without regard to the significant security dangers such an approach would pose. At risk are not just HSOne's customers, but the customers and data of every Internet software company that stores data in a database and restricts access to that data while providing an API. No company could stop a malicious hacker who, like Vyne, builds their business model on unauthorized access and then uses the law of unfair competition, tortious interference, and other related claims to shield their hacking. In short, a hacker cannot cry foul when they are caught and blocked. That is not how the law works, and Vyne's claims merit dismissal for this reason alone.

Stripped of rhetoric, Vyne's pleading reflects nothing more than Vyne's dissatisfaction with HSOne's legitimate business decisions. This does not state a claim in any federal court, putting aside the threshold issue of Vyne's forum shopping, and merits dismissal.

## FACTUAL BACKGROUND

For purposes of this Rule 12 motion, the Court can take Vyne's well-pleaded allegations as true. HSOne sets forth the true facts of this dispute in its Opposition to Vyne's Motion for a Temporary Restraining Order, in HSOne's own pending Motion for a Temporary Restraining Order in Utah as well as its Complaint there, and HSOne's pending Motion to Transfer Venue in this action.[1] While the facts run contrary to Vyne's allegations, even if all of Vyne's plausible allegations are considered true on this motion, Vyne fails to provide a valid basis for venue or state a claim for relief. The import is that no amount of evidence Vyne might attempt to proffer for its claims can overcome the fundamental legal deficiencies in Vyne's theories.

**I.       Vyne's Venue Allegations Ignore that Utah is the Nexus of this Dispute, as HSOne's Principal Place of Business Is in Utah as are multiple of Vyne's Senior Executives.**

Vyne, despite alleging that HSOne is a Delaware limited liability company with its principal place of business in Utah (Compl. ¶ 13), filed this case in Maryland.[2] Vyne does not allege any office presence in Maryland, but rather pleads that it is a Delaware corporation, is

---

[1] The Court may take judicial notice of other filings in the case and in the related action pending in Utah. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (noting courts may take judicial notice of matters of public record) (citation omitted); *Frye v. Hayes*, No. CV JKB-25-0162, 2025 WL 1167976, at *1, n.1 (D. Md. Apr. 22, 2025) ("[A] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citation omitted).

[2] "Under Rule 12(b)(3) the court is allowed to freely consider evidence outside the pleadings, unlike under a 12(b)(6) motion." *Silo Point II LLC v. Suffolk Const. Co., Inc.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008); *see also Abissi v. United States Citizenship & Immigration Services*, 729 F. Supp. 3d 505, 508 (D. Md. 2024) (same).

headquartered in Georgia, and maintains a presence in Indiana.  (Compl. ¶ 12; Motion to Transfer (ECF No. 35-1) ("Mot. to Tr.") at 8.)

Vyne's Chief Executive Officer ("CEO"), President, and Chief Technology Officer ("CTO") are former Utah-based HSOne senior executives who reside and work in Utah.  Vyne also employs multiple former HSOne engineers in Utah and has an office there.  Vyne's Utah-based CEO and CTO submitted declarations, signed in Utah, in support of its claims in this Court. (Mot. to Tr. at 1, 13; Decl. of Steve Roberts (ECF No. 6-2); Decl. of James Nix (ECF No. 6-3).) Vyne is hiring senior personnel for its Utah office.  (Mot. to Tr. at 13.)  With respect to the core of this dispute, Vyne's complaints about HSOne's decisions and implementation of security measures and updates emanate from Utah.

Vyne attempts to manufacture a Maryland connection to this case through its allegation that 170 dental offices in Maryland use Vyne Trellis with Dentrix.  (Compl. ¶ 6.)  Vyne neglects to mention, however, that both Vyne and HSOne have many thousands of customers across every state in the United States.  (Decl. of Brian Weatherly in support of Mot. to Tr. ("Weatherly Tr. Decl.") ¶ 9; Mot. to Tr. at 1.)  Indeed, a list attached to a letter Vyne sent HSOne that purportedly included practices that allegedly authorized Vyne to act on their behalf, only listed seven Maryland practices, ranking 20th out of the 39 states represented on the list.  (Ex. 10 to Decl. of Marcelo Barros in support of Mot. to Tr. (ECF No. 37).)  19 other states ranked higher, including California with 33 practices (1st place), Georgia with 16 practices (10th), Indiana with 12 practices (13th), and Utah (11th), with 14 dental practices represented.  (Mot. to Tr. at 9.)

## II.    Vyne's Allegations that HSOne's Defensive Security Measures Hack Vyne's Software are Implausible and ask the Court to Make Unsupported Inferences that Distort the Facts.

HSOne licenses its practice management software, Dentrix, to dental practice customers nationwide.  (Compl. ¶ 24.)  Vyne markets a software program called Vyne Trellis, which it

promotes as a dental office revenue cycle management ("RCM") tool. (Compl. ¶¶ 1, 20–21.) Vyne's customers use both Vyne and HSOne's software for their different purposes. (*Id.* ¶ 18.)

Vyne does not allege that it licenses or has any rights to HSOne's software platform. With respect to its access to HSOne's software, Vyne claims that it has used a "printer driver" feature to extract data from HSOne's software deployed at customers' premises. (*Id.* ¶¶ 24–25.) But Vyne does not explain whether the code for this purported printer driver has changed in the last twenty years, whether Vyne has upgraded it, or developed new (and more pernicious) exploits against HSOne's software apart from the printer driver.

Vyne does reference HSOne's 2025 communications raising concerns about Vyne's unauthorized access and circumvention of HSOne's software security measures. While the Court cannot evaluate which side's claims are true at the Rule 12 stage, it can review the claims for plausibility. (*Id.* ¶¶ 63–65.) Here, making all inferences in Vyne's favor, HSOne's communications raise serious concerns about Vyne's cavalier approach to plucking whatever data it wishes from HSOne's software, as well as injecting data back and controlling the very functionality of Dentrix. Vyne recognizes in its Complaint that HSOne has put Vyne on notice that its unauthorized access methods were not permitted because, among other things, they compromised the security and integrity of HSOne's platform. (*Id.* ¶ 8.) Vyne also admits that HSOne recently implemented a software update to its Dentrix system which, among other things, upgraded security over customer data and prevents any third party, including but not limited to Vyne, from accessing the system without authorization. (*Id.* ¶¶ 4, 10, 75.) Although Vyne alleges that HSOne "falsely asserted" the security issues, Vyne includes no facts to support its contention beyond its own self-serving claims.

III.    **Vyne's Allegations about the Parties' Commercial Negotiations are Conclusory and One-sided.**

Vyne acknowledges that HSOne offered Vyne options to access its systems with authorization.  As one potential approach, among others, Vyne engaged in discussions with HSOne about accessing Dentrix data through an Application Programming Interface ("API").  (*Id.* ¶¶ 48–52.)  HSOne offered Vyne participation in its Dentrix Developer Program, a structured pathway for API integration, and provided Vyne with a draft agreement.  (*Id.*)  Vyne rejected the proposed terms, and no agreement has yet been reached.  (*Id.*).

On August 26, 2025, HSOne sent a cease-and-desist letter to Vyne, demanding that Vyne immediately stop its hacking and circumvention methods, which were causing service disruptions and creating a cybersecurity risk.  (Weatherly Tr. Decl. ¶ 6.)  Despite HSOne's contention that Vyne had been hacking into HSOne's software, at risk to data security (Compl. ¶ 58), HSOne negotiated a tolling agreement with Vyne that provided for Utah jurisdiction and venue.  (Mot. to Tr. at 1.)  While HSOne signed the tolling agreement, it is not clear whether Vyne did.  Knowing HSOne was about to file a complaint against Vyne (Weatherly Tr. Decl. ¶¶ 6, 8), Vyne raced to file its Complaint in this Court on September 30, 2025 (ECF No. 1), despite the dispute's tenuous connection to Maryland.

Even with all inferences made in Vyne's favor, the Complaint's allegations reflect nothing more than a legitimate software provider securing its platform, communicating with its customers, competing in the marketplace, and protecting its legal rights.  Vyne's claims therefore fail.

## ARGUMENT

I.    **Vyne's Complaint Fails to Allege Proper Venue**

A.    **Standard**

Rule 12(b)(3) governs a motion to dismiss for improper venue.  "In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate."  *Corp. Universe, Inc. v. Emry Cap. Grp., Inc.*, 2021 WL 3603040, at *2 (D. Md. Aug. 12, 2021).[3]  To survive a motion to dismiss for improper venue, a plaintiff must make a prima facie showing that venue is proper in the district pursuant to 28 U.S.C. § 1391.  *See Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 55–56 (2013).  The inquiry "allows the court to freely consider evidence outside the pleadings[.]"  *Rakowski v. Best Buy Stores, L.P.*, No. ELH-20-1107, 2020 WL 6485085, at *8 (D. Md. Nov. 3, 2020) (citation omitted).  "[C]ourts 'consider to be true any well-pleaded allegations that bear on venue, unless contradicted by defendant's affidavit evidence.'"  *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 924-25 (E.D. Va. 2017) (quoting 14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3826 (3d ed.)).

Where venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a); *see also Carlisle v. McDonald*, 2017 WL 550031, at *2 (D. Md. Feb. 10, 2017) (transferring case pursuant to Section 1406(a)).

B.    **Vyne Fails to Allege Proper Venue Under 28 U.S.C. § 1391.**

Vyne places its venue allegations into a single paragraph: "Venue is proper in District of Maryland pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise

---

[3] All internal citations and quotations are omitted and all emphases are added, unless otherwise noted.

8

to the claims occurred in this district." (Compl. ¶ 17.)[4]  This does not clear the Rule 12(b)(3) bar.

The relevant statutory text requires that "a *substantial part* of the events or omissions *giving rise* to the claim occurred" in this district.  28 U.S.C. § 1391(b)(2) (emphasis added).  To demonstrate proper venue, Vyne must establish that the events or facts "central" to the case are "anchored" in Maryland.  *See Laios v. MTM Builder/Developer, Inc.*, 2021 WL 4478712, at *5 (D. Md. Sept. 30, 2021).  Here, though, Vyne's Complaint only includes vague and conclusory alleged consequences of HSOne's alleged conduct on a miniscule percentage of customers in Maryland—less than half a percent of HSOne's customers.  The only evidence Vyne introduces to break down its own relative customer base in Maryland demonstrates that 19 other states have more Vyne customers it purports are impacted by HSOne's security measures.

Maryland is, at best, tangential to Vyne's claims.  This is not enough.  As the District of Maryland has observed, "[e]vents that relate only tangentially to the claim cannot constitute a substantial part of the events or omissions giving rise to the claim; indeed, strictly speaking, they do not give rise to the claim at all."  *Laios v. MTM Builder/Developer, Inc.*, No. GJH-20-3337, at *13 (D. Md. Sep. 30, 2021) (citing *CIENA Corp. v. Jarrard*, 203 F.3d 312, 318 (4th Cir. 2000)) (internal quotation marks omitted).[5]

---

[4] Vyne only alleges venue is proper under § 1391(b)(2), not §§ 1391(b)(1) or (b)(3).  But even if Vyne alleged venue under § 1391(b)(1) or (b)(3), venue would still be improper.  Vyne fails to sufficiently allege facts demonstrating that HSOne "reside[s]" in this district for purposes of § 1391(b)(1).  Section 1391(b)(3) does not apply because this matter could have been brought in another district, namely Utah or Delaware.

[5] HSOne's pending venue transfer motion under Section 1404(a) of the transfer statute further describes why apart from Maryland being the improper venue, it is also not a convenient venue.  Further, all the equitable considerations in this case merit transfer, because Vyne forum-shopped and filed its case in an anticipatory race to Court.

9

Even if some Maryland customers felt the effects of HSOne's challenged conduct, because "none of the relevant conduct occurred in Maryland," the Complaint merits dismissal pursuant to Rule 12(b)(3). *Ademiluyi v. Nat'l Bar Ass'n*, No. GJH-15-02947, at *6-7 (D. Md. Sep. 8, 2016). The gravamen of Vyne's suit concerns HSOne's decision and implementation of security measures that Vyne alleges have prevented Vyne from accessing HSOne's software without authorization. None of these decisions or implementations occurred in Maryland. They rather arose out of HSOne's presence in Utah in response in part to Vyne's Utah-based attacks on HSOne. Even if some facts in the case touch Maryland, "[a]ll of the *key* events" occurred in Utah. *See Ademiluyi v. Nat'l Bar Ass'n*, No. GJH-15-02947, at *6-7 (D. Md. Sep. 8, 2016) (emphasis added).

Vyne attempts to conflate the cause of its claims with the effects, but this is not the standard. The proper inquiry is whether the events giving rise to the claim occurred in Maryland. Because the answer to this inquiry is no—zero of the events giving rise to the claims occurred in Maryland—dismissal pursuant to Rule 12(b)(3) is appropriate.

## II.     Vyne's Complaint Fails to State a Claim for Relief as a Matter of Law

### A.     Legal standard

To survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be more than "labels and conclusion . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When confronted with a motion to dismiss based on both the failure to state a claim and improper venue, this Court must first resolve the venue question." *SAMi-Systematic Analysis Mgmt., Inc. v. Omnivere Acquisitions, LLC*, No. CV RDB-19-2904, 2020 WL 1863292, at *3 (D. Md. Apr. 14, 2020) (citation omitted). If venue is proper, a complaint will not survive Rule

12(b)(6) review where it contains "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See id*. at 679 (citing Rule 8(a)(2)). Facts that are "merely consistent with" liability do not establish a plausible claim to relief. *Id.* (citation omitted). Courts do not afford deference to legal conclusions. *See Jezign Licensing, LLC v. L.T.D. Commodities, LLC*, No. CV RDB-22-1592, 2023 WL 5607908, at *3 (D. Md. Aug. 30, 2023) (citing *Iqbal*, 556 U.S. at 678).

**B.    Vyne Fails to State a Claim for Any of its Causes of Action.**

Vyne seeks to transform necessary, legitimate security updates into federal hacking crimes, Lanham Act violations, and common-law torts.  Courts in this Circuit and elsewhere have rejected similar efforts to weaponize broad commercial disputes under statutes and doctrines that do not apply.  Each count merits dismissal with prejudice.

**(I)    Vyne's Computer Fraud And Abuse Act claim (Count I) fails because Security Upgrades are not Hacks.**

The CFAA is an anti-hacking statute, not a statute about computer misuse.  Vyne pleads violations of two CFAA subsections, 1030(a)(5)(A) and 1030(a)(5)(C).  Subsection (a)(5)(A) requires Vyne to allege that HSOne "knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization, to a protected computer."  Section (a)(5)(C) requires pleading that HSOne intentionally accessed protected computers without authorization and caused damage and loss.

The Supreme Court pronounced in the *Van Buren* case that the CFAA is to be construed narrowly.  *See Van Buren v. United States*, 593 U.S. 374, 386 (2021).  The CFAA presents a "gates-up-or-down inquiry[.]"  *Id.*  In other words, it prohibits access when the gates are down but not when they are up.   There must be some technical barrier overcome—some sort of breaking

11

in—for a CFAA claim to accrue.  The Supreme Court has expressly rejected CFAA claims based on theories where those with authorized access but allegedly improper motives, access computers to which they have authorization even if the claim is that data was then misused.  *Id.*

Like the Supreme Court, the Fourth Circuit has emphasized that the CFAA is aimed at traditional "hacking"—unauthorized access into a computer system—not disputes over software design or purported misuse of authorized access.  *See WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 206–07 (4th Cir. 2012) (dismissing CFAA claim even where the defendants misappropriated trade secrets to gain a competitive advantage where they did not "access a computer without authorization or exceed their authorized access.").  *Van Buren* cited *WEC Carolina* in its review of Circuit cases that construed CFAA narrowly, supporting its position.

Here, Vyne's allegations do not state a claim under the CFAA.  Its theory is essentially that when a victim stops a hacker by shutting off their unauthorized access, this constitutes hacking. That is not the law.  Here, Vyne concedes that HSOne merely issued "updates" to HSOne's own Dentrix software pursuant to its licensing agreements with dental practices.  (Compl. ¶¶ 10, 33, 64.)  Vyne does not allege, nor can it, that any of HSOne's upgrades accessed Vyne's applications or databases running on customer computers.  All Vyne alleges is that HSOne put up additional gates, around its own software and database, to stop unauthorized access.  This is not unlawful. Indeed, asking the Court to find such "technological self-help against bad actors" violates the CFAA would "raise serious concerns."  *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1202 (9th Cir. 2022).  It would risk "preventing a company from securing" its systems "from malicious actors" and could "open[] the door to [] malicious activity."  *Id.*  Things like "employing anti-bot measures to prevent, e.g., harmful intrusions or attacks on [a] server" are not violative of the CFAA.  *See id.*  (quotations and citations omitted).  This is because "Internet companies and

12

the public do have a substantial interest in thwarting denial-of-service attacks and blocking abusive users, identity thieves, and other ill-intentioned actors." *Id.*

Courts in this Circuit follow *Van Buren* in construing the CFAA narrowly to exclude theories like Vyne's in this case. *See, e.g.*, *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, No. CV SAG-22-00176, 2023 WL 5278654, at *5 (D. Md. Aug. 16, 2023) (adopting narrow CFAA interpretation and dismissing claims that fail to allege actual pressing of buttons to access without authorization); *see also Carfax, Inc. v. Accu-Trade, LLC*, No. 121CV00361RDATCB, 2022 WL 657976, at *12 (E.D. Va. Mar. 4, 2022) (dismissing CFAA claim in light of *Van Buren*'s holding that "improper purpose alone is insufficient" to allege a CFAA violation).

Even if Vyne could allege unauthorized access to its computer systems, which it cannot, it has also not pled the required statutory "damage" or "loss." Under the CFAA "damage" is "any impairment to the integrity or availability of data, a program, a system, or information[.]" § 1030(e)(8). "Loss" is "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]" § 1030(e)(11). The CFAA requires alleging $5,000 in such loss, which Vyne does not do plausibly.

Competitive injuries such as lost revenue, lost customers, or harm to one's business model—all things Vyne alleges—do not qualify as "damage" or "loss" under the CFAA. *See Animators at Law, Inc. v. Capital Legal Sols., LLC*, 786 F. Supp. 2d 1114, 1120 (E.D. Va. 2011) ("lost revenue or consequential damages—such as the losses associated with a missed business opportunity—are only recoverable if they were incurred because of interruption of service.") (internal quotation omitted). Vyne does not allege that the computers at issue were actually

damaged or that HSOne's defensive security measures cost it any money from a technical perspective. *Id.*; (Compl. ¶¶ 76–78, 85.)

Even without an evidentiary inquiry, Vyne's theory does not make sense. Vyne is in essence arguing that HSOne, through upgrading its own software, somehow hacked Vyne. This is tantamount to a theory that HSOne hacked its own software, something it cannot do. It is implausible that the CFAA would prohibit a simple check to see if malware is running that interferes with software and, if so, stopping that malware from interfering with software. This is something that occurs on millions of computers daily. Criminalizing such conduct would collapse the CFAA in on itself as well as the entire Internet security industry.

### (II)    Vyne's Speech-Related Claims Fail to Allege Anything More than Acceptable Business Communications

### 1.    Vyne's Defamation Claims (Count VI) Plead Inactionable Opinion

Business communications about serious security risks are not defamatory. To state a claim for defamation, a plaintiff must sufficiently allege "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *See Rabinowitz v. Oates*, 955 F. Supp. 485, 488 (D. Md. 1996) (citing *De Leon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1236 (4th Cir. 1989)). A defamatory statement is not only one that is false, but is "one that tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with that person.'" *See Murray v. United Food and Commercial Workers Intern. Union*, 289 F.3d 297, 305 (4th Cir. 2002) (citing *Samuels v. Tschechtelin*, 135 Md. App. 483, 763 A.2d 209, 241-42 (2000)).

14

Only verifiably false statements of fact can support a defamation claim; rhetorical hyperbole, subjective opinions, and puffery are not actionable. *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993); *Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 718–19 (D. Md. 2021) ("[W]here a defendant states 'a subjective view, an interpretation, a theory, conjecture or surmise, rather than a claim to be in possession of objectively verifiable false fact, the statement is not actionable.'").

As a threshold issue, Vyne fails to plead its defamation claim with the requisite specificity, including the "who, what, where, and when questions." *See Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 525 (D. Md. 2023). Although Vyne includes a date of an alleged email with HSOne's subjective opinion about Vyne's product (Compl. ¶ 38), Vyne does not identify who specifically sent the email or which customers received the email. *See Total Recon Auto Ctr., LLC*, 705 F. Supp. 3d at 525 ("Total Recon provides some answers to the who, what, where, and when questions…But Total Recon does not answer any of the key questions in detail. Total Recon does not allege which Allstate agents made these statements—not by title or by name…Total Recon does not allege which Allstate insureds heard these statements.").

Even if Vyne could supply the needed specifics, Vyne's speech-related claims fall short of defamation. The Complaint attributes statements to HSOne that Vyne "disconnects imaging and claims," causes "errors" or "delays," or poses "security risks." (Compl. ¶¶ 38–44.) Statements couched in such generalized terms are classic examples of opinion and hyperbole, not verifiable factual assertions. *See Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 182 (4th Cir. 1998).[6] There

---

[6] (Finding claims in a magazine article that a company's stock was overvalued and that investors were souring on the company did not give rise to an actionable defamatory statement despite allegedly causing the company's stock to plummet and injuring its reputation and business, noting that the "challenged statements constitute[d] a subjective view, not a factual statement.").

is no allegation that HSOne had any intention of spreading false information about Vyne, nor that it did. On the contrary, the Complaint makes clear that the statements at issue were made in the context of Vyne's own statements.

While the Court need not resolve the factual dispute for purposes of this motion, Vyne cannot deny that HSOne's position is that Vyne was falsely describing its approach to customers. This shows, even making inferences towards Vyne, that HSOne had a reasonable basis for its opinions about Vyne's conduct. Nothing HSOne is alleged to have said was in reckless disregard to truth or falsity, or said with knowledge of falsity, even taking all inferences in Vyne's favor. In the context of business disputes, such subjective opinion statements are not actionable. *See, e.g.*, *Total Recon Auto Ctr., LLC*, 705 F. Supp. 3d at 516, 525 (finding no defamation where Allstate employees allegedly disparaged Total Recon to Allstate customers and offered them financial incentives to take their repair business elsewhere by saying "It is our nightmare when a car ends up at Total Recon," that Allstate "would waive deductibles if the insured were to go somewhere other than Total Recon," that "Total Recon's work is of poor quality," that "Total Recon is dishonest," and that "Total Recon is price-gouging"); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 568–69 (D. Md. 2019) (statement that "State Farm has and continues to state to third parties that it is refusing to pay PIP claims because the Medical Clinics…have and are engaging in fraud and dishonesty" did not give rise to a defamation claim because party did not allege sufficient details).

Without a plausible allegation of any provably false statements as opposed to subjective opinions about security risks, Vyne cannot allege a defamation claim against HSOne.

16

**2.    Vyne's Lanham Act Claim (Count II) Fails for Similar Reasons as its Defamation Claim.**

Vyne's attempts to turn business communications into federal statutory violations fail too. To state a claim for false advertising under § 43(a)(1)(B) of the Lanham Act, a plaintiff must allege that: (1) the defendant made a false or misleading statement of fact in a commercial advertisement the plaintiff's; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant's statement was placed in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result. *See Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015) (citation omitted); *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002). To give rise to a false advertising claim, the contested statement must be a false representation of fact. *See Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015) (citation omitted). It "must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015).

As noted in the context of defamation, Vyne fails to allege sufficient facts that HSOne's alleged statements are false on their face. Vyne alleges no facts indicating that HSOne's statements about Vyne's software that "disconnects imaging and claims;" that customers may face "costly mistakes, claim rejections, and payment delays;" and that using HSOne would help customers "stop losing time and money on disconnected processes" — are actually false. (*See* Compl. ¶¶ 38–44.) That HSOne might offer an alternative to Vyne's hacked-together unauthorized access and might make statements about the flaws in Vyne's approach does not give rise to a Lanham Act claim. Courts have consistently held that subjective superiority claims are not actionable under the Lanham Act. *See Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 302 (4th Cir. 2017) (the

17

Lanham Act does not apply to "puffery" which is "exaggerated advertising, blustering, and boasting," or "vague" and "general claim[s] of superiority") (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000)); *Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411, 1438 (E.D.N.C. 1986) (dismissing Lanham Act claim where statements of product superiority including that installing defendant's product requires less skill, supervision, quality control and other management time than installing plaintiff's product was non-actionable puffery); *Express Homebuyers United States v. Wbh Mktg.*, 2018 U.S. Dist. LEXIS 214039, at *16 (E.D. Va. Aug. 29, 2018) (statements such as that the plaintiff "bullies," "threatens," "shakes down," "sabotages" and "extorts" others in the industry were non-actionable blustery).[7] None of the cited statements constitutes a verifiable factual misrepresentation.

Second, Vyne has not alleged facts showing that these statements were made in "commercial advertising or promotion" as required under § 43(a)(1)(B). The law requires dissemination of the challenged statements to the purchasing public at large or a substantial segment thereof, not isolated sales conversations. *Metro. Reg'l Info. Sys. v. Am. Home Realty Network*, 948 F. Supp. 2d 538, 553 (D. Md. 2013) (holding that, to qualify as commercial advertising or promotion, "the representations . . . must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry." (citation and internal quotation marks omitted)); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002) (twenty-seven statements in marketplace of plaintiff's customers was not sufficient to constitute commercial advertising or promotion under Lanham Act). Vyne relies

---

[7] These cases support denying Vyne's defamation claims as well because they touch on the types of statements that courts do not consider verifiably false.

only on a single email and vague references to customer conversations, which fall far short of widely disseminated advertising to support a Lanham Act claim. (Compl. ¶¶38–44.)

Because Vyne has not pled a false statement of fact or sufficient commercial advertising, its Lanham Act claim (Count II) fails and should be dismissed.

### C.    Both Vyne's Tortious Interference Claims (Counts III And IV) Fail Because Vyne Alleges No Specific Contract, No Actual Breach, and No Wrongful Conduct.

Vyne cannot transform communications regarding reasonable and accepted security measures into tortious interference claims. Vyne's theory is that it lost existing customers due to HSOne's security upgrades, and that prospective customers are less likely to sign up with Vyne based on HSOne's security controls. As with its other theories, Vyne's position would stretch the law to encompass most routine business activity regarding cybersecurity.

Tortious contract interference requires that Vyne allege the following: "(1) existence of a contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) intentional interference by the defendant with that contract; (4) breach of the contract by the third party; and (5) resulting damages to the plaintiff." *Harry and Jeanette Weinberg Found., Inc. v. St. Marks Ave., LLC*, No. CV GLR-15-3525, 2018 WL 704866, at *3 (D. Md. Feb. 5, 2018) (citation omitted). Tortious interference with prospective economic relations requires the following: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Ellicott Dredges, LLC v. DSC Dredge, LLC*, 280 F. Supp. 3d 724, 731 (D. Md. 2017) (citation omitted). The Complaint does not plausibly plead either theory for multiple reasons:

**No independent wrongful act.** The insurmountable hurdle Vyne faces is that it cannot point to any unlawful, or even wrongful, acts predicating its tortious interference. Without some

19

plausible allegation of fraudulent statements, violations of statute, or computer hacking, Vyne cannot state a tortious interference claim. *See Macklin v. Robert Logan Assocs.*, 334 Md. 287, 301 (1994); *Alexander & Alexander Inc. v. B. Dixon Evander & Associates, Inc.*, 336 Md. 635, 658-60, 650 A.2d 260, 271-72 (1994) ("acts [] undertaken pursuant to legitimate commercial goals" and acts taken to protect these interests[ ] would not [give rise to] liab[i]l[ity] in tort for interfering with [] economic relationships even if [] harbor[ing] an incidental animosity").

Even stretching every inference towards Vyne, Vyne's Complaint tends to support the opposite. The Complaint indicates that HSOne had a basis for all the actions Vyne takes issue with—reasonable security concerns based on unauthorized access. Vyne alleges only that HSOne made product design changes, discontinued support for unauthorized drivers, and promoted its own solutions. (Compl. ¶ 100.) Those are classic examples of legitimate business decisions, not wrongful conduct or improper means of interference. Even if Vyne can plausibly allege that HSOne's intent was to compete for business, this still does not state an interference claim without an independent wrongful act. *Lyon v. Campbell*, 707 A.2d 850, 860 (Md. Spec. App. 1998) ("Tortious or deliberate intent to harm a plaintiff's business relationship is not alone sufficient to support an intentional interference claim. There also must be proof that the defendant's conduct in interfering with contract or business relations was accomplished through improper means.")

Vyne's theory appears to be that hacking increases its revenue and helps it sign customers. But the law does not permit Vyne to shield its unlawful hacking activity through the sword of a tortious interference claim. *See, e.g.*, *Farmer v. Kent*, No. CV TDC-20-1806, 2021 WL 690025, at *5 (D. Md. Feb. 23, 2021), *aff'd*, No. 21-1350, 2022 WL 4482087 (4th Cir. Sept. 27, 2022) (dismissing interference claim when the underlying relationship was "invalid and against public policy); *Mansell v. Toys R Us, Inc.*, 673 F. Supp. 2d 407, 416 (D. Md. 2009) ("As a threshold

matter, a claim for tortious interference with contract is not cognizable unless there is a valid agreement that is not ... otherwise opposed to public policy, so that the law will not aid in upholding it."). Here Vyne itself alleges that HSOne's actions were in response to what HSOne believed were and are security risks arising from Vyne's unauthorized access. Vyne needs to have plausible allegations that its conduct did not violate the litany of federal and Utah laws that HSOne claims Vyne violated, to state a tortious interference claim. Vyne does not even attempt to do this.

**Vague contract and economic interference allegations are insufficient.** Further, as to contract interference specifically, the Complaint asserts only in general and conclusory terms that HSOne interfered with Vyne's contracts between Vyne and its customers, but Vyne does not identify a single specific contract, its terms, or the parties to it. (Compl. ¶¶ 91–98.) This merits dismissal. *Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 519 (D. Md. 2023) (dismissing tortious interference with contract claim where the plaintiff failed to plead the existence of any contract between it and any customer with sufficient specificity).

Nor does Vyne allege that any customer actually breached or failed to perform a specific contractual obligation because of HSOne's conduct. Vyne instead relies on conclusory allegations that HSOne has "push[ed]" or "encouraged" Vyne's customers to terminate their contracts with Vyne (without alleging in the Complaint that any have actually done so). (Compl. ¶¶ 93, 98.)[8]

---

[8] Vyne submits some declarations with its TRO papers that attempt to shore up this deficiency, but those are not before the Court on HSOne's Rule 12(b)(6) motion. Further, even if these allegations were included in a subsequent amended Complaint, they are conclusory and implausible. Vyne has offered zero evidence that any customers who have stopped working with it did so solely due to HSOne's security controls and no other reason. Moreover, Vyne's allegations, even taking all inferences in its favor, suggest that its customers share the security concerns that HSOne has articulated. Not wanting to permit Vyne to hack HSOne is a legitimate reason that a customer would have not to work with Vyne. Indeed, the allegation shows that the consequences are to Vyne's own actions, not anything HSOne did. HSOne merely acted in parallel to Vyne's customers based on similar concerns.

21

But without a third-party breach or wrongfully induced termination, there can be no tortious interference with contractual relations. *See Mixter v. Farmer*, 215 Md.App. 536, 81 A.3d 631 (2013) (holding plaintiff failed to state a claim for tortious interference with contractual relations because plaintiff "has not pointed to any specific lost contract or loss of business that he incurred").

The prospective economic relations claim fails too due to lack of specificity, lack of independent wrongful act, and lack of a plausible causation theory. *See, e.g.*, *Mixter*, 81 A.3d at 638 (quoting *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006) (emphasis added)) (plaintiff must "'identify a possible future relationship which is likely to occur, absent the interference, **with specificity**'"). Other than vague references to Vyne's "prospective business relations," Vyne fails to identify any specific future relationship that is likely to occur absent the alleged interference. Due to Vyne's failure to plead independent wrongful acts, failure to plausibly plead that its conduct was lawful in the first place, and failure to plead the specifics of the contracts and relationships at issue, let alone causation, Vyne cannot state a claim for tortious interference.

### D. Vyne's Unfair Competition Claim (Count V) Fails Because Vyne Alleges No Fraud or Other Wrongful Conduct, and Its Reliance on the Cures Act Does Not Save its Claim.

Vyne cannot state a claim for unfair competition because it makes no plausible allegation of fraud against HSOne. Absent Vyne's attempt to shoehorn its claims into the Cures Act, which fails on the face of the law and regulations, there is no plausible unfair competition theory Vyne can assert in this case.

### (I) Vyne Cannot State a Claim for Unfair Competition Outside of a Separate Statutory Violation.

The "underlying premise" of an unfair competition claim is that no party is justified in damaging another's business through methods that are dishonest, fraudulent, or deceptive. *See Savaria USA, Inc. v. Elevator Works, LLC*, No. CV RDB-24-1311, 2024 WL 2212914, at *9 (D.

Md. May 16, 2024).[9]  Unfair competition law exists "to protect the public by healthy competition, not . . . to protect individual plaintiffs."  *M-Edge Accessories LLC v. Amazon.com Inc.*, 2015 WL 403164, at *4 (D. Md. Jan. 29, 2015).  Only acts that "substantially interfere with the ability of others to compete on the merits of their products" or acts that "conflict with accepted principles of public policy" can serve as the grounds of an unfair competition claim.  *See Ellicott Dredges, LLC v. DSC Dredge, LLC*, 280 F. Supp. 3d 724, 732 (D. Md. 2017) (citation and marks omitted).  HSOne's conduct does not fall within either category.

Maryland's unfair competition law does not create a general duty to provide unfettered data access to another business.[10]  Even vigorous rivalry does not constitute unfair competition.  *See M-Edge Accessories LLC*, 2015 WL 403164, at *4.  Here, Vyne admits that HSOne's conduct is driven by security concerns and other legitimate competitive business interests.  (Compl. ¶ 8.)  The Complaint demonstrates that HSOne investigated Vyne's conduct, promptly notified their shared customers of the security vulnerabilities, and acted to protect customer data.  (*Id.* ¶¶ 33-38.)  This sort of careful security hardening constitutes a legitimate business purpose.  *See, e.g., hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th at 1202 (observing the importance of companies blocking malicious actors from interfering with their software).  This takes it outside the realm of unfair competition.  *Berlyn Inc. v. Gazette Newspapers, Inc.,* 223 F.Supp.2d 718, 738 (D. Md. 2002) (unfair competition claim dismissed because plaintiff "failed to show that the defendants'

---

[9] Maryland law has "no specific elements required to establish unfair competition," but any claim must center on dishonest, fraudulent, or deceptive action.  *See Savaria USA, Inc. v. Elevator Works, LLC*, No. CV RDB-24-1311, 2024 WL 2212914, at *9 (D. Md. May 16, 2024).

[10] As noted in its venue transfer arguments here and in its pending transfer motion, HSOne does not concede that Maryland law applies to this dispute and reserves its rights on that issue.

23

actions in this case were anticompetitive, or that each complained-of action was not taken with some independent and legitimate business purpose").[11]

Even if HSOne has an alternative product to Vyne, Maryland law does not require HSOne to compromise its own security protocols for Vyne's benefit. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 399 (2004); *see also Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc*., 555 U.S. 438 (2009) (there is no obligation to set terms favorable to another business absent a duty). *M-Edge Accessories* is instructive. 2015 WL 403164, at *4. In that case, Amazon launched its "Kindle" product, and thereafter M-Edge began to sell Kindle accessories. *See id.* at 1. Amazon initiated a "Made for Kindle" program, under which Amazon-selected members whose products met Amazon's standard for quality would be given special benefits including permission to use the Made for Kindle mark, among other benefits. *See id.* at 5. Members would pay Amazon a royalty in return. *See id.* M-Edge rejected Amazon's offer to take part in the program. *See id.* The court noted that M-Edge "failed to produce evidence adequate to permit a reasonable jury to find that the Made for Kindle program constituted actionable unfair competition on the part of Amazon. M–Edge indisputably was given the opportunity to participate in the invitation-only program and made an informed business decision not to participate." *See id.* Any "harm" M-Edge sustained was caused by M-Edge's decision that the benefit of participating in the Made for Kindle program would be outweighed by the cost. *See id.* The court also noted that the evidence established the existence of valid business reasons for Amazon's program that had nothing to do with unfair competition vis-à-vis M-Edge. *See id.* Purported threats related to M-Edge's refusal to make a deal with Amazon and participate in the program were no evidence of

---

[11] *See also Berlyn, Inc. v. Gaz. Newspapers, Inc*., 223 F. Supp. 2d 718, 739 (D. Md. 2002), *aff'd*, 73 Fed. Appx. 576 (4th Cir. 2003) (non-anticompetitive activity performed for a legitimate business purpose did not constitute unfair competition).

unfair competition; rather Amazon had a valid reason to discourage M-Edge from rejecting the deal. *See id.* at 8-9.

Similarly, HSOne's implementation of security upgrades to protect its system and the data it stores are valid. That Vyne chose not to take the legitimate route and that HSOne implemented security controls is not unfair competition. *See Alexander & Alexander*, 336 Md. at 659; *Macklin*, 334 Md. at 307–08. Like in *M-Edge Accessories*, any alleged harm Vyne experienced was caused by Vyne's decision not to participate in HSOne's API or one of the other alternatives that HSOne proposed. (Compl. ¶¶ 48-52.) The Court need not make any evidentiary inquiry about this—that Vyne chose not to work with HSOne and instead pursue alternative unauthorized access is evident from the face of the Complaint. There is nothing fraudulent that Vyne alleges about HSOne's claims—Vyne admits HSOne's communications were based on its own security investigation. It is not enough to merely assert that a claim is false without any plausible non-conclusory allegation for why this is so. Otherwise, the cause of action for unfair competition could be levied by any business against another based on nothing. The Court need not permit Vyne to stretch unfair competition law in this way.

### (I)    Vyne Fails to State a Claim For Cures Act Violations Under Any Theory.

Vyne's entire case turns on whether it can pound the square peg of the Cures Act into its convoluted theory of unfair competition. It cannot. The Cures Act governs health care providers, developers of certified IT, and health information exchanges/health information networks (HIE/HIN). There is no dispute that HSOne is not a health care provider or a developer of certified IT, and Vyne's allegations that HSOne is an HIE or HIN subject to the statute (Compl. ¶ 70), are legal conclusions which the Court should not accept as true at the pleading stage. *See Twombly*, 550 U.S. at 555.

25

First, Vyne does not sufficiently allege that HSOne is subject to the Cures Act. Vyne acknowledges that HSOne's Dentrix software system is not certified under the National Coordinator for Health Information Technology Health IT Certification Program, so it is not regulated under that category. (Compl. ¶ 71.) Although Vyne theorizes as to why it believes HSOne is not certified, this is pure speculation unsupported by any facts.

Vyne's only hope is to argue that HSOne is an HIE or HIN (Compl. ¶¶ 69-70), but the clear text of the statute and regulations combined with Vyne's own allegations preclude such a theory. The Court need not afford any deference to Vyne's legal conclusions. *See Jezign Licensing, LLC v. L.T.D. Commodities, LLC*, No. CV RDB-22-1592, 2023 WL 5607908, at *3 (D. Md. Aug. 30, 2023) (citing *Iqbal*, 556 U.S. at 678).

The applicable regulation states that to meet the definition of an HIE or HIN, the entity must "permit, enable, or require" the "use of any technology or services for access, exchange, or use of electronic health information . . . **[a]mong more than two** unaffiliated individuals or entities (other than the individual or entity to which this definition might apply) that are enabled to exchange with each other[.]" 45 C.F.R. § 171.102 (emphasis added). Vyne does not allege that HSOne facilitates information that flows among more than two parties to fall within this scope.

Rather, as Vyne knows, HSOne's Dentrix software only facilitates information between two parties at a time—HSOne and the individual dental practice using the software. (Compl. ¶¶ 24-25.) To the extent a customer chooses to work with a vendor that uses HSOne's API, that still does not cross over the three-party threshold because HSOne itself is excluded from the "more than two" count under the regulation. *See* 45 C.F.R. § 171.102. Even under the theory that HSOne's software acts as an intermediary in the API use case between a customer and the vendor

they choose to work with, there are no allegations in the Complaint to suggest that the resulting exchange of information in such an instance is anything other than between only two entities.[12]

Even if HSOne could be considered an HIE or HIN, Vyne still has not alleged facts demonstrating that HSOne's conduct violated the Cures Act by implementing security controls for vendors accessing its software. The Cures Act excepts conduct by HIEs or HINs when taken to secure their platforms against malicious attacks like those Vyne is deploying. 45 C.F.R. § 171.203 (the "Security Exception").

The Security Exception is an exception that protects "legitimate security practices" to permit reasonable and necessary measures to protect the security of electronic health information. *Id.* It does not cap security at the lowest level needed but rather asks whether the practice is reasonable and necessary and implemented consistently with an objective security policy. *Id.* The Security Exception applies where a regulated entity's restriction on access (i) is tailored to protect the confidentiality, integrity, or availability of data and (ii) is applied consistently. *Id.* Vyne alleges no plausible facts in the Complaint to establish that HSOne's security patches and fixes are anything other than to protect confidentiality, integrity, and availability of its customers' sensitive data. Vyne's allegations related to the Cures Act are merely a complaint about HSOne's reasonable security measures meant to stop unauthorized access across the board and serious risks

---

[12] Just yesterday, Vyne submitted declarations to this Court attempting to salvage its Cures Act claims with new allegations. These do not help Vyne on this motion and, in any event, are gross mischaracterizations of the law and how HSOne's technology works. The concept that Vyne has presented that having hundreds of API endpoints means an API facilitates exchange among multiple parties is an incredible position to take by anybody with even the most elementary understanding of what the phrase "API endpoint" means and how that works. HSOne will address Vyne's false spins on rudimentary computer science issues in due time. For now, the Court can dismiss Vyne's Cures Act-based unfair competition claim (and, as a result, the entire case), because the clear text of the statute and Vyne's allegations about the API in the Complaint show that HSOne is not an HIE or HIN.

27

to patient data confidentiality, integrity, and availability. Even taking Vyne's allegations as true, and assuming the Cures Act applies, HSOne satisfies the Security Exception.[13]

In sum, Vyne has not plausibly alleged a violation of the Cures Act to support its unfair competition claim. As explained above, Vyne includes no non-conclusory allegations that HSOne is a "health information exchange" or "health information network" within the meaning of the statute, or that Dentrix is certified health IT subject to the Cures Act. There are simply no allegations that get Vyne's claim from implausible to plausible. Moreover, even if HSOne was subject to the statute, Vyne's allegations do not refute that HSOne's conduct falls within the Act's Security Exception, which permits measures reasonably necessary to protect the confidentiality, integrity, and availability of electronic health information. Vyne has not pled any facts showing that HSOne's security upgrades were pretextual or inconsistent with an objectively reasonable security policy.

Once the Cures Act allegations are set aside, the Complaint identifies no other dishonest, fraudulent, or deceptive conduct that could support an unfair competition claim under Maryland law.[14] At bottom, Vyne challenges HSOne's software updates, licensing restrictions, and competitive sales practices—all of which reflect legitimate business decisions and vigorous

---

[13] HSOne has more fully addressed the Cures Act and its other exceptions in its TRO Opposition Brief. On the question of the security exception, though, Vyne's allegations alone read with the proper plausibility filter show that HSOne's conduct falls within the exception. As to other exceptions, HSOne reserves its right to prove its compliance with those as well should the case proceed.

[14] Vyne is sure to cite the Fourth Circuit *Real Time* case innumerous times in its motion to dismiss opposition brief. HSOne has extensively distinguished that case in its TRO Opposition. To facilitate a more efficient briefing process, HSOne will address any of Vyne's arguments about that case in its motion to dismiss reply brief.

ACTIVE 715700292v5

competition, not tortious or unfair conduct.  Because Vyne has not alleged a plausible Cures Act

violation or any alternative basis for wrongful conduct, Count V merits dismissal.

      **E.**      **Vyne's Declaratory Judgment Claim (Count VII) Fails Because It Seeks an Impermissible Prior Restraint.**

Vyne's request for declaratory judgment is a transparent attempt to pre-litigate HSOne's

claims against it first raised in pre-suit legal correspondence and which are now the subject of

ongoing litigation in Utah, *Henry Schein One, LLC v. National Electronic Attachment, Inc. d/b/a

Vyne Dental*, Case No. 2:25-cv-00883.[15]  The Declaratory Judgment Act is "an enabling Act,

which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v.

Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted).  Courts should decline jurisdiction

where a declaratory judgment claim merely duplicates issues already raised in other claims or

where it functions as an attempt to preempt or restrain another party's own claims.  *See CGM, LLC

v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) (the Act "is remedial only, and

neither enlarges the jurisdiction of the federal courts nor creates new substantive rights") (citing

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72, 70 S. Ct. 876, 94 L. Ed. 1194

(1950)).

Vyne's declaratory judgment claim is designed to confront HSOne's claims in the Utah

action.  There, HSOne has asserted causes of action against Vyne for violations of the CFAA,

Digital Millennium Copyright Act (DCMA), Utah Unfair Competition Act (UUCA), common law

unfair competition, tortious interference with contract and prospective economic relations, trespass

to chattels, and the Utah Deceptive Trade Practices Act, Lanham Act, business libel, Electronic

Communication Privacy Act (ECPA), and the Utah Interception of Communications Act. *Id.*

---

[15] As explained in HSOne's pending Motion to Transfer, the District of Utah, and not this Court, is the proper forum to litigate the instant dispute between the parties. (ECF No. 35-1)

ACTIVE 715700292v5

In its declaratory judgment count, Vyne essentially asks this Court to short circuit the Utah litigation and declare that it did not "engage in conduct violative of the [CFAA] *or any other applicable state or federal law*." (Compl. ¶ 122, emphasis added.) But Vyne cannot block HSOne's choice of (proper) forum and force it to litigate its claims against it in this Court by bringing a defensive action for declaratory judgment in this Court. *See Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994) (declaratory relief is ordinarily inappropriate where another suit is pending in another court presenting the same issues between the same parties); *Wilton*, 515 U.S. at 283 (courts have "broad discretion to decline" jurisdiction over duplicative suits or to avoid forum shopping). A more proper approach would be for Vyne to file its own motion to dismiss HSOne's claims, which it must do, and litigate them through that mechanism. As pled in this Court, Vyne does not make any plausible allegations that HSOne's claims are invalid as a matter of law. The declaratory judgment claim consequently merits dismissal as well.

## CONCLUSION

Vyne complains of conduct that HSOne undertook based on reasoned investigation and thoughtful concern for its customers' data security. In the operative pleading, Vyne does not deny the extensive wrongful conduct HSOne uncovered and that was the subject of the communications Vyne references in its Complaint. Because Vyne asks the Court to stretch the power of inference far beyond what *Twombly* permits, the Court can properly dismiss Vyne's Complaint for failure to state a claim. Before even getting to the 12(b)(6) inquiry, though, the Court can dismiss Vyne's Complaint based on 12(b)(3). It is not proper to forum shop in Maryland while alleging nothing about the facts that give rise to the claims having occurred here beyond their effect on a miniscule handful of customers. For all these reasons, Vyne's Complaint does not pass the pleading bar and merits dismissal.

30

Dated: October 22, 2025

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Michael Burshteyn*

Michael Burshteyn
*(pro hac vice)*
Marcelo Barros
*(pro hac vice)*
Jennifer Bartlett
*(pro hac vice)*
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Michael.burshteyn@gtlaw.com
Marcelo.barros@gtlaw.com
Jennifer.bartlett@gtlaw.com

Michael R. Sklaire (MD Fed. Bar No. 16471)
1750 Tysons Boulevard, Suite 1000
Tysons Corner, VA 22102
Tel: (703) 749-1308
michael.sklaire@gtlaw.com

*Counsel for Defendant Henry Schein One, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of October, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jennifer Bartlett*
Jennifer Bartlett

ACTIVE 715700292v5