**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>          Plaintiff and Counter-Defendant,<br><br>    - against –<br><br>HENRY SCHEIN ONE, LLC,<br><br>          Defendant and Counter-Claimant. | Case No. 1:25-cv-03246-MJM |

**DEFENDANT AND COUNTER-CLAIMANT HENRY SCHEIN ONE, LLC'S COUNTERCLAIMS**

Defendant and Counter-Claimant Henry Schein One, LLC ("HSOne") brings these Counterclaims against National Electronic Attachment, Inc. d/b/a Vyne Dental ("Vyne") for violations of the federal Computer Fraud and Abuse Act (CFAA), Digital Millennium Copyright Act (DMCA), Lanham Act, Electronic and Communications Privacy Act (ECPA), as well as multiple Utah statutes and common law doctrines.

<u>**INTRODUCTION**</u>

1.      HSOne seeks this Court's intervention to stop Vyne's persistent and malicious hacking of HSOne's software platform while spreading falsehoods about its own conduct and HSOne's efforts to defend its platform security and integrity. Vyne's hacking is ongoing and threatens HSOne's systems and the security of its customers' patient data.

2.      HSOne has filed a Complaint alleging its claims in Utah, the proper venue for this dispute, and moved for a temporary restraining order and preliminary injunction there. The District Court in Utah, faced with Vyne's race to file first and forum shop in Maryland, denied HSOne's TRO without prejudice for HSOne to refile it on the basis that it would wait for this Court to resolve the venue issues. HSOne's motion to reconsider that ruling, based on the equitable issue that Vyne is leveraging its procedural gamesmanship to continue hacking HSOne daily, is

pending. HSOne's investigation shows that Vyne has not slowed down its unauthorized access in recent weeks but rather appears to be emboldened. Because HSOne has no remedy to protect itself against Vyne's violations of multiple federal and Utah laws against hacking, network traffic interception, and circumvention of technical protection measures, among other claims, HSOne has no choice but to file its Counterclaims, TRO, and PI here in Maryland.

3. HSOne is an innovative software and services company accelerating the future of dental care. It offers a suite of digital platforms that comprehensively streamline operational, clinical, and financial processes for dental practitioners across the United States. Dentrix and Dentrix Ascend, two of HSOne's flagship products, are tools designed to manage all steps of a dental practice from patient intake to insurance claims submission. HSOne empowers these practices to focus on delivering extraordinary care.

4. HSOne invests significant resources in securing its dental customers' business and patient health data stored in its software platforms. HSOne's platforms offer various digital and clinical services to its dental customers, including the ability for dental practices to contract with approved third-party software vendors that are part of HSOne's Application Programming Interface (API) Exchange. In order to qualify for the API Exchange, third-party software vendors are required to undertake a security assessment and enter into an agreement with HSOne that sets forth each vendor's obligations to maintain necessary customer approvals and legal, security and compliance standards. While HSOne is not required by law to maintain this API Exchange, HSOne has developed the API Exchange over many years to provide innovative solutions to its dental customers.

5. HSOne's API Exchange works with over 100 securely integrated vendors that its dental customers can leverage. The API Exchange makes available over 750 data endpoints, which enable third-party services to interact with HSOne's platforms. The API Exchange enables interoperability and freedom of choice for HSOne's dental customers while providing best-in-class user experience along with industry-leading data security. HSOne supports over 40 categories of

2

third-party vendors with its API Exchange, spanning areas such as patient engagement, revenue cycle management, analytics and imaging, among others.

6.     Vyne is a point solution focused on dental billing. It shares many dental customers with HSOne. To provide billing services to its dental practice customers, Vyne aims to read and write data from software platforms like Dentrix that dental practices use to run their business. Vyne is not, however, part of HSOne's API Exchange. Unlike the over 100 securely integrated vendors who work with HSOne's API Exchange, Vyne seeks to directly read and write data from HSOne's software platform *en masse* in a way that bypasses HSOne's API. Vyne does so through a series of non-trivial and technically aggressive hacks that access HSOne's protected software database and software systems located on customers' premises without authorization.

7.     HSOne has recently uncovered details regarding Vyne's hacking of the Dentrix software instances that HSOne installs in its customers' infrastructure. To stop API circumvention, HSOne notified Vyne and others of security upgrades it intended to implement. Vyne, in response, escalated its hacking to get ahead of and circumvent HSOne's security patches. Vyne's recent and escalating conduct includes pervasive intrusions and circumventions of HSOne's technical security measures to protect the computers at issue against such attacks. These hacks include at least the following:

- Misappropriating configuration files which HSOne uses to facilitate customer access to its database;

- Misappropriating encrypted administrator credentials contained within settings files to modify settings inside of HSOne's Dentrix platform without HSOne's authorization;

- Exploiting HSOne's source code to steal private decryption keys needed to decrypt sensitive settings and other information from HSOne's Dentrix platform;

- Injecting malicious code to alter the functionality of print drivers to export data from Dentrix;

- Developing software that falsely mimics Dentrix to interact with its database and services; and

- Intercepting web traffic from HSOne's Dentrix platform and redirecting it to Vyne's servers.

8.     None of Vyne's conduct or access is authorized by HSOne.  Vyne goes to great lengths to cover its tracks and obfuscate its malicious hacks of HSOne's customer-installed software systems.  Despite these efforts, HSOne's investigation has recently revealed many of the details of Vyne's hacks—in particular its circumvention of HSOne's technical measures to protect the systems it installs on its customers' premises.  HSOne implemented telemetry in its systems several months ago that has shown Vyne's rapid-fire iteration of its hacks to circumvent HSOne's software security controls.  As an example of the urgency here, from October 3 to October 10, 2025, HSOne's telemetry uncovered that Vyne has deployed at least 400 malicious instances of its software that accessed HSOne's software systems and database without authorization.

9.     Particularly concerning is that Vyne's malicious hacks interfere with HSOne's routine security and application upgrades to its software platforms.  Due to Vyne's unauthorized access to and modification of HSOne's software critical system files, HSOne is unable to issue security patches without impacting functionality and causing its own customers challenges and threatening patient data.  This raises security and privacy concerns, as HSOne is unable to maintain its software in the face of Vyne's hacked together API workarounds.

10.     To this day, HSOne continues to investigate and detect new methods Vyne uses to hack its software. Indeed, HSOne discovered more pernicious attacks, including the (1) injection of data into HSOne's software settings file by exploiting debug functionality to create a debug settings file that then intercepts Internet traffic, redirecting it to Vyne's servers;  (2) database-level tampering, which runs every 60 seconds to wipe HSOne's security deny-list, a security measure; and (3) creation of a rogue local HTTP proxy bound to a system port using an imported certificate along with the debug override feature exploit to force traffic to this proxy HTTP.  Vyne's actions

4

disable encryptions and authentications, sever patching, and expose protected communications to unauthorized first recipients.

11.     Vyne brags about its workarounds.  It advertises on its website in a post addressing the HSOne security measures that "You Can Still Submit Claims" because Vyne "offers alternative workflows to submit claims while continuing to develop additional ways to work with Dentrix." Vyne is committed to its hacking and claims it can and will work around HSOne's technical measures "based on what HSOne enacts."[1]

12.     HSOne has repeatedly invited Vyne to join its API Exchange, even proposing custom API endpoints and integrations especially for Vyne, but Vyne refuses to agree to HSOne's API Terms of Service.  Vyne has refused, as it desires unfettered access with no restriction. HSOne, however, already enables its customers to export data and does not lock data in.  What Vyne seeks is to automate that process *en masse*, which would threaten data integrity and pose other risks.  Moreover, HSOne has integrated with certain clearinghouses and has presented Vyne with an offer to similarly integrate on comparable commercial terms.  Vyne, however, is uninterested, having apparently determined that hacking is a more desirable approach.

13.     Apart from HSOne, independent industry observers have raised concerns about Vyne's conduct.  On August 23, 2025, for instance, one such observer described Vyne's behavior as a "shadow integration" and warned that Vyne's "bypasses" of HSOne's Dentrix APIs create a "major vulnerability waiting to be exploited."[2]

14.     HSOne has focused in recent months on implementing security patches and upgrades to stop unauthorized access to its systems installed on customer locations.  Because Vyne refused to stop its unauthorized access despite multiple direct requests to stop, HSOne had no choice but to go the route of implementing technical measures to protect the integrity of its systems and customer data.  Vyne, in response, escalated its conduct.  Vyne did this through continued technical means to circumvent HSOne's protections, as well as a scorched earth public campaign

---

[1]     See     https://vynedental.com/wp-content/uploads/2025/08/RE_-Recent-Henry-Schein-One-Communications-and-Dentrix-Compatibility.pdf.
[2] Ex. 1 at 4 (Schein vs Vyne_The Fight Over Backdoor Hacks Into Your Data).

meant to discredit HSOne in the market and to its customers.  Specifically, Vyne has spread a bevy of false statements about its own conduct and HSOne's platform.  Among other things, Vyne recently told HSOne's customers that HSOne "prohibits all alternative integration methods," "undermines . . . Practice autonomy" and "Operational resiliency," and that HSOne seeks to "disable [customers'] ability to send claims through Vyne Dental."  All of these statements are false and misleading.  Vyne knows this, yet intentionally continues to smear HSOne.  It spreads these false statements as part of a campaign to pressure HSOne in the hopes that HSOne will stop attempting to prevent Vyne's malicious hacks of its software platform.  Vyne's goal is to interfere with HSOne's customer contracts and relationships and pave the way for Vyne's unfettered unauthorized access to HSOne's software systems.

15.     Because Vyne has no regard for HSOne's system architecture, the attacks lead to disruption of services, customer complaints, and risk of data loss.  Indeed, Vyne's Chief Technical Officer recently submitted a declaration to this Court (ECF No. 40-5) acknowledging this.  He admitted that Vyne modifies information in Dentrix and acknowledged that Vyne was not aware of the ways Dentrix utilizes that information, which resulted in Vyne's changes breaking HSOne's other processes.  (*Id.* ¶¶ 17-18.)  HSOne finds itself in a difficult position because Vyne's access to its software on its customers' premises has been technically challenging to prevent, and has direct negative impacts on HSOne's customers' day-to-day dental business operations.  Given the direct impact on its customers, HSOne has only been able to deploy *ad hoc* technical measures in phases to directly assist customers.  Also, due to this severe customer impact, HSOne has directly asked Vyne to stop—multiple times, including through a Cease and Desist Letter sent on August 26, 2025—and has attempted to reach a commercial remediation for months.

16.     In the last month, however, it has become clear that Vyne will stop at nothing to continue its unlawful access to HSOne's software systems.  Worse, Vyne is making intentional false statements about the situation and interfering with HSOne's customer relationships both through its words and technical hack deployments.

ACTIVE 715694453v4

17. Unless Vyne is enjoined from its conduct, HSOne will be unable to maintain its software and will be playing a never-ending game of whack-a-mole to stop Vyne's next technical circumvention. HSOne consequently brings this action to protect its software and its customers' valuable and sensitive data from Vyne's dangerous, reckless, and intentional malicious hacks.

## PARTIES

18. Plaintiff Henry Schein One, LLC is a Delaware limited liability company headquartered in 1220 South 630 East, Suite 100, American Fork, Utah.

19. Defendant National Electronic Attachment, Inc. d/b/a Vyne Dental is, upon information and belief, a Delaware corporation, headquartered in 100 Ashford Center North, Suite 300, Dunwoody, Georgia 30338.

## JURISDICTION AND VENUE

20. Jurisdiction is proper for these Counterclaims because Vyne has consented to jurisdiction by bringing its Complaint against HSOne in this Court.

21. This Court also has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331. This action arises under the Computer Fraud and Abuse Act (18 U.S.C. § 1030, et. Seq.), the Copyright Act of 1976 (17 U.S.C. § 101, et. seq.), the Trademark Act of July 5, 1946, as amended (15 U.S.C. § 1051, et. seq.), the Digital Millennium Copyright Act, and the Electronic and Communications Privacy Act.

22. Alternatively, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Diversity exists among the parties and the amount in controversy exceeds $75,000.

23. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a) because they arise from the same facts and concern the same subject matter as the federal claims.

24. HSOne's position is that venue is improper in this Court, for the reasons articulated in its pending venue transfer motion and Rule 12(b)(3) motion. To the extent the Court finds

otherwise, however, HSOne's claims should rise and fall with Vyne's claims from the perspective of venue.[3]

## FACTUAL BACKGROUND

**A.     HSONE IS A LEADING DENTAL SOFTWARE INNOVATOR**

25.     HSOne is a Utah-based dental software company.  Its dental software platforms simplify workflows, enhance patient care, and streamline practices for over a hundred thousand dentists.  HSOne's mission is to accelerate the future of dental care through its pioneering Dentrix practice management systems.

26.     Because Dentrix is a hub for HSOne's customers' dental practices, many third-party vendors seek to integrate and interoperate with it.  Though it has no obligation to do so, HSOne enables this interoperation through its API Exchange.

27.     HSOne invests significant resources in making its API reliable and secure for the benefit of its integration partners and customers.  It implements robust access controls, encryption, system monitoring, and a variety of other technical measures to safeguard its customers' sensitive business and patient health data.

28.     HSOne focuses on hardening its software systems against attacks from malicious actors.  This requires vigilance towards new hacking methods and development of new techniques and technology to stay ahead of them.  As a result of its sustained security engineering innovation, HSOne's software platform today looks nothing like it did two decades ago.

29.     Stopping circumvention of HSOne's API, which is the secure and stable method of integrating with its software platforms, is one of HSOne's top priorities from a security perspective.  This is because API circumvention risks data confidentiality, integrity, and availability—all things that the API helps to maintain.

---

[3] HSOne contends venue is proper in the United States District Court for the District of Utah under 28 U.S.C. §1391(b)(1)-(2) because a substantial portion of the wrongdoings alleged occurred in that District and because Vyne conducts significant business in that District.  For instance, on information and belief, Vyne's CEO, Mr. Stephen Roberts, President Mr. James Grover, and Chief Technology Officer Mr. Jimmy Nix, each used to work for HSOne and had access to many sensitive HSOne systems and information.  On information and belief, multiple of Vyne's senior personnel relevant to this case are in Utah.

ACTIVE 715694453v4

30. HSOne invests significant resources in making its Dentrix platform open, transparent, and interoperable. At least 100 third-party vendors make use of HSOne's API Exchange to offer solutions to HSOne's customers in over 40 categories. These categories include patient engagement, revenue cycle management, analytics, and imaging, among others. The API contains over 750 data endpoints enabling developers to build a plethora of applications that work with Dentrix.

31. HSOne welcomes any vendor to participate in the program, and vendors join voluntarily. All participants in the API Exchange must agree to HSOne's Terms of Use, which is standard and common for any enterprise API solution in the industry. HSOne reviews the security of its vendors, offers best practices, and maintains a commitment to support the reliability of its API and underlying Dentrix software platform.

32. HSOne's innovation shines in a highly competitive field. HSOne's commitment to innovation and supporting dentists over decades has gained it the trust of thousands of dental practices. These practices rely on Dentrix to operate their businesses every single day, enabling them to focus on delivering excellent patient care.

B. VYNE IS A BILLING SOLUTION INTENT ON BYPASSING HSONE'S SECURE API

33. Vyne is a company that provides a point solution for dental practices to manage their billing. To facilitate its operations, Vyne seeks to integrate with practice management platforms like Dentrix. What Vyne seeks most of all is to have unfettered access to insurance claims data in Dentrix.

34. Dentrix does not provide endpoints for claims, as those are unique data fields whose automated import and export would risk data integrity compromises. For claims, Dentrix has backend integrations, integrations that it has offered to implement with Vyne. Vyne, at one point, was part of HSOne's API program, but unilaterally terminated that relationship and has declined to use the API in the last several years. Instead, Vyne has decided to hack HSOne's software systems—apparently for no other reason but to make more money, despite the negative effects on HSOne's systems and customers. Vyne's haphazard approach creates multiple conflicting sources

9

of truth inside a dental practice's systems, eroding reliability of the data. HSOne has no duty to automate a workflow that would compromise data integrity, security, and reliability.

35.     Customers wanting to use Vyne still have a path forward, which consists of manually submitting information and working with claims clearinghouses to support back-end integration. This approach has been adopted by others.

36.     Rather than accept the secure integration model HSOne offers to other clearinghouses—or use the API features Vyne can use—Vyne refused HSOne's API terms and sought to exploit HSOne's software for purposes of direct, read-write access at scale to HSOne-managed software on customer systems. Vyne has devoted its resources to circumventing HSOne's technical measures that block unauthorized access and to exfiltrate HSOne customer data *en masse*.

37.     Vyne does not stop at exfiltration. It also hacks HSOne's Dentrix software platform and systems so that it can inject and write data back into HSOne's software platform as well.

38.     All the while, Vyne misleads and spreads false statements to HSOne's customers about its conduct. Vyne takes great care to obfuscate what it is really doing and purports to act with authorization, even though Vyne has not disclosed its hacking methods to its customers and HSOne has made clear to Vyne that its conduct is unauthorized and must cease.

39.     HSOne has recently implemented telemetry to track malicious hacking of its software platform and increase Dentrix's security monitoring capabilities. This, along with HSOne's other diligent investigation methods, has uncovered the following array of deliberate circumvention methods:

- Credential misappropriation and binary masquerading: Vyne misappropriates Dentrix configuration files (e.g., *FairCom C-Tree* settings) containing encrypted administrator credentials. Vyne also exploits HSOne's source code to retrieve private decryption keys to decrypt those files. Further, Vyne hijacks application binaries to make its own application appear legitimate to HSOne's Dentrix software platform.

10

- Administrator privilege escalation:  By decrypting files such as the *dtx.config* file, Vyne is able to recover a passphrase and generate an administrator password.  This allows Vyne to escalate its privileges and function as an administrator of the HSOne software platform on the customer premises, even though Vyne is not authorized to be a Dentrix administrator.

- Patch tampering:  Vyne interferes and circumvents HSOne's security measures designed to stop hacks like the ones it is conducting.  Vyne does so through runtime patching of security flags in HSOne's DtxHelp.dll file as well as disk-level patching of the same DLL and redistribution.  This interferes with HSOne's security patches and fixes that it would otherwise regularly send to its customers as needed.

- Component impersonation:  Vyne rebuilds Dentrix help components with embedded secrets to survive HSOne updates or patches and develops malicious software that mimics Dentrix to interface with its databases and services.

- Code injection for mass data export:  Vyne modifies code at the print driver level to export sensitive data from HSOne's software systems in circumvention of the HSOne API.  Vyne also injects malicious code into Dentrix to write data into files and the database without authorization.  In other words, Vyne both reads and writes data without authorization.

40.     Vyne's methods reveal a persistent multipronged campaign of intentional access without authorization and circumvention of HSOne's technical security measures.

41.     Vyne's pervasive and sophisticated methods reflect its commitment to hack by any means necessary.  It also reflects, on information and belief, the fact that multiple of Vyne's employees, including its Chief Executive Officer, used to work at HSOne.  These former HSOne employees have significant insider knowledge of HSOne's product and technical systems.

11

## C.    VYNE HAS ESCALATED ITS HACKING IN RECENT WEEKS THROUGH NEW EXPLOITS IN RESPONSE TO HSONE'S ATTEMPTS TO SECURE ITS SYSTEMS

42.    Despite HSOne's direct statements telling Vyne to stop hacking and its technical measures designed to stop Vyne's unlawful conduct, Vyne persists.  Indeed, in recent weeks, Vyne has escalated its conduct and deployed new malicious hacking methods even while the parties had been engaging in commercial discussions.

43.    Earlier this year, HSOne began receiving an unusual volume of customer complaints concerning Dentrix system instability, failed claim submissions, and unexplained disruptions to eligibility and payment workflows.  These complaints were at first sporadic but grew in frequency and consistency, causing HSOne to begin to investigate.

44.    To better understand the situation, HSOne developed and deployed internal telemetry capabilities to monitor its software systems and endpoints across its customer deployments.  This telemetry allowed HSOne to track configuration anomalies, unauthorized traffic redirection, and patterns of failed authentication across its customer base.

45.    In recent weeks, the telemetry data has proved HSOne's suspicions correct.  According to HSOne's monitoring, Vyne has been releasing rapid successions of software updates—at least a dozen distinct versions—aimed at hacking Dentrix.  Many of Vyne's updates appear to have failed, on information and belief, because they did not properly consider HSOne's software parameters.  Vyne continued to spam new updates to circumvent HSOne's security measures.  Customers who installed these updates often experienced system degradation, failed integrations, and increased support needs.

46.    Through its telemetry and customer logs, HSOne uncovered, on or around September 10, 2025, that Vyne was intercepting Internet traffic from HSOne's customers that was meant to go to HSOne and redirecting those transmissions to a Vyne endpoint.  Vyne did this by exploiting a debugging function in Dentrix and modifying what is called the eTrans file.

ACTIVE 715694453v4

47. Vyne's scheme involves first reverse-engineering HSOne's configuration files and decrypting them by misappropriating private decryption keys HSOne provides to its customers. Vyne then injects data into the configuration files, including programmatically intercepting Internet traffic and redirecting it to its vtrans.vynetrellis.com servers. The end result is the rerouting of patient claim data to Vyne controlled servers. A screenshot showing the results of Vyne's latest hack appears below:



48. By impersonating an administrative user using its improperly gained escalated privileges, Vyne overwrites the Dentrix software systems settings to intercept traffic. Vyne's exploit causes Dentrix to treat Vyne as the authorized recipient of claim submissions and other data transactions. In the cybersecurity realm, this can be described as a man-in-the-middle attack. Man-in-the-middle attacks enable hackers to intercept communications, like Vyne is doing, and redirect them to their own systems.

49. In a typical, authorized workflow, Dentrix's eTrans system uses a secure configuration file to determine where to send claim data and how to authenticate the transmission.

13

This file contains the eTrans User ID and the gateway URL—both of which are essential for routing data to HSOne's secure servers and for verifying the legitimacy of the transaction. When properly configured, the system ensures that claims, eligibility checks, and payment records are transmitted securely to HSOne, processed, and returned to the dental practice.

50. Vyne's hijack subverted this workflow. By exploiting a debug function in Dentrix to inject a malicious configuration, Vyne causes the Dentrix software to send data not to HSOne's secure gateway, but to a Vyne-controlled server. In effect, Vyne inserts itself as the first recipient on all outbound data. Vyne's server receives the data, processes it, and then passes it further along. This redirection is not authorized by HSOne. Further, on information and belief, Vyne misleads HSOne's customers about what it is doing and intentionally misconstrues its conduct as authorized and benign. It is not.

51. Vyne's modifications break the authentication flow for multiple HSOne services that rely on the same DataServices ID with which Vyne interferes, including HSOne's Eligibility Essentials, Quickbill Premium, and Request to Pay services. The result is that HSOne customers experience failed claims, undelivered payment records, and system instability.

52. Vyne's interference also obstructs HSOne's ability to deploy security patches. HSOne's patching workflow relies on the same authenticated DataServices connections with which Vyne interferes. This means that Vyne's malicious interception and substitution severs HSOne's essential connection to its own platform installed in customer environments.

53. Even if HSOne were to repair the configuration setting, Vyne's software has functions to restore the malicious proxy-in-the-middle without user interaction, thus reverting HSOne's updates and perpetuating the unauthorized data interception and computer access. In sum, Vyne has embedded itself so deep into HSOne's software that it can now override security measures, impersonate HSOne systems, and intercept protected communications on HSOne's Dentrix systems installed at customer premises.

ACTIVE 715694453v4

54.     Vyne's conduct is creating significant disruption across HSOne's customer base. It is causing HSOne to have to respond to a plethora of customers experiencing interruptions, failures, and system instability, all because of Vyne's hacks.

55.     Vyne's conduct is egregious for a variety of reasons:

- First, it undermines the integrity of HSOne's authentication and security architecture.

- Second, it exposes sensitive patient and financial data and creates a vulnerability for access by unauthorized third parties.

- Third, it allows Vyne to manipulate or delay the flow of information, potentially corrupting records or interfering with time-sensitive transactions.

- Fourth, it deprives HSOne of the ability to monitor, audit, or secure the data flow—effectively stripping HSOne of control over its own system.

56.     Vyne's actions are not merely unauthorized; they are corrosive to the trust, security, and operability of HSOne's software.  Consequently, Vyne's conduct—including this most recent escalation in the last few weeks—has caused, and will continue to cause, irreparable harm to HSOne.

## D.     VYNE COUPLES ITS HACKING WITH A CAMPAIGN OF INTENTIONAL FALSE STATEMENTS

57.     In parallel with its technical intrusions, Vyne is making false statements to HSOne's customers about its conduct and HSOne's software systems.  Vyne has intentionally not disclosed the nature of its hacking while publicly stating that its interactions with HSOne's software are authorized and benign.  Vyne's false statements have caused some HSOne customers to reach out to HSOne based on their false impression and interfered with HSOne's relationships and contracts with those customers.  Vyne's messaging campaign includes mass email blasts, public statements by its CEO, and other communications designed to obscure Vyne's unauthorized misconduct and shift blame to HSOne for working to secure its own software.

58.     For example, on or around August 11, 2025, Vyne issued communications to HSOne customers containing misleading statements about HSOne's practices and security measures.  Vyne claimed that its hack was an "integration method" and disparaged HSOne's

15

Dentrix Developer Program as prohibiting "all alternative integration methods."[4]   These statements are false and misleading.  HSOne's Developer Program does in fact support secure, API-based integration for authorized vendors and HSOne supports direct integrations as well for claims clearinghouses.  Vyne knows this.

59.     In response to HSOne's attempts to secure and patch its systems, Vyne attempted to characterize to customers that HSOne was somehow targeting Vyne.  This is false and Vyne has no basis to state such a falsehood.   Vyne is intentionally omitting that its methods include unauthorized access, unlawful reverse engineering, and configuration tampering—none of which are sanctioned by HSOne or compliant with HSOne's security protocols.

60.     Vyne further claimed that HSOne's security measures "raise concerns about reduced provider choice and increased vendor lock-in."[5]



**Vyne Dental**
**RE: Recent Henry Schein One Communications and Dentrix Compatibility**
Date: August 11, 2025

We want to provide clarity around recent communications you may have received from Henry Schein One (HS One) concerning the compatibility of Vyne Dental's solutions with Dentrix.

**What's Happening**

We have heard from shared customers that HS One is communicating, as early as August 26, 2025, a Dentrix update may disable your ability to send claims through Vyne Dental. HS One intends to block any connection made to Dentrix outside of their Dentrix Developer Program.

Vyne Dental currently enables thousands of practices to send claims via a print-based integration method comparable to e-fax transmission or PDF-creation tools. Since March 2025, Vyne Dental has actively engaged with HS One to join the Dentrix Developer Program. However, the program still does not facilitate claims submission, and it prohibits all alternative integration methods upon entering the program (including our existing print-based solution).

61.     This is false too.  HSOne's API Exchange supports over 100 third-party vendors. Vyne's portrayal of HSOne conduct as exclusionary not only ignores the fact that Vyne has refused to comply with standard integration protocols and has been relying on unauthorized, unsecured workarounds, but it is also false.  Further, HSOne is under no obligation to provide unfettered

---

[4] Ex. 2 (Vyne communications to customers).
[5] Ex. 2 at 1. (cropped image).

ACTIVE 715694453v4

hacking access to Vyne and allow it to pilfer HSOne's systems while increasing security and privacy risk to HSOne and its customers.

62.     Then on August 21, 2025, Vyne delivered a letter to HSOne purporting to represent over 500 dental practices that, according to Vyne, requested access to Dentrix data.[6]  Vyne demanded access to patient records, billing data, and scheduling information, claiming that "any failure to [grant access] will directly impair the customer's ability to rely on Vyne Dental's services… potentially disrupting patient care."[7]  This statement falsely implies that HSOne is obstructing patient care, when in fact HSOne is enforcing standard security protocols to protect sensitive data.  Vyne did not provide any detail about what it actually told or did not tell HSOne's customers.

63.     Vyne's CEO, Mr. Stephen Roberts, has also made false public statements about HSOne in an interview earlier this year.  He boasted about Vyne's ability to bypass HSOne's controls, without revealing the full extent of Vyne's hacking.[8]

---

[6] Ex. 3 (Aug. 21, 2025 Vyne letter to HSOne, "*Customer Access Request to Customer Data within Dentrix*").
[7] *Id.* at 1.
[8] EP 152 Future of Interoperability of Dental Information with Stephen Roberts, CEO of VYNE, YouTube (Jun 26, 2025), https://www.youtube.com/watch?v=iQbvfDn5M94&t=112s.

ACTIVE 715694453v4

64.     In his interview, Vyne's CEO bragged about Vyne's ability to circumvent HSOne's technical security measures.  He stated, among other things, that "the only way to really prevent Vyne from interfacing with... the [Henry] Schein practice management message would be to intentionally stop it from happening."[9]



65.     Vyne's CEO further boasted about its circumvention of HSOne's API through the following statements:

- "Sometimes it's direct connections to the database. Sometimes it's through the user interface. Sometimes it's through application extensions."[10]

- "We have the ability to take a claim through print capture."[11]

- "We take a print stream and we take a printed ADA claim form."[12]

- "We have the ability to take a claim through, you know, secure file transfer to pick up claims from watch folders, to extract claims out of practice management databases."[13]

---

[9] *Id.* (Transcript captured by YouTube) (Timestamp 30:59-31:12).
[10] *Id.* (Timestamp 28:27-28:34).
[11] *Id*. (Timestamp 30:38-30:41).
[12] *Id*. (Timestamp 31:06-31:12).
[13] *Id*. (Timestamp 30:42-30:51).

ACTIVE 715694453v4

- "We extract—we're very good at extracting unstructured data, converting it into structured data, securing it, and transmitting it."[14]

66.     Vyne's campaign constitutes false advertising, business libel, and deceptive trade practices under federal and state law.  It is designed to interfere with HSOne's customer relationships, mislead the market, and shield Vyne's unlawful conduct from scrutiny.

67.     As a result of Vyne's false statements, HSOne has received many inquiries and complaints from concerned customers.  Vyne's false statements and omissions cause HSOne reputational harm and has forced HSOne to divert significant resources to clarify misinformation and restore trust.

**E.     VYNE'S CONDUCT HAS ALREADY COST HSONE SIGNIFICANT DAMAGES AND WILL CAUSE IRREPARABLE HARM IF NOT ENJOINED**

68.     HSOne did everything it possibly could to avoid escalating this dispute to court. HSOne has invited Vyne into its API program.  HSOne has offered to customize its API Terms for Vyne.  HSOne has even offered to work with Vyne to accomplish a direct integration workflow to accommodate Vyne, similar to what HSOne has implemented with other claims clearinghouses.

69.     Importantly, HSOne has repeatedly explained to Vyne that its hacks and circumventions risk system integrity, patient data privacy, and security of HSOne's platform and its customer data.

70.     To avoid escalating this matter, HSOne had for the last several weeks attempted to engage with Vyne in good faith to negotiate a commercial agreement whereby Vyne would have the advantage of an integration with HSOne similar to how HSOne integrates with certain clearinghouses.   Vyne initially represented to HSOne that it wished to engage in good faith, inducing HSOne to provide it with commercial terms.  HSOne did so, even though during the course of the business discussions of the past several weeks, HSOne continued to discover new hacks and new deployments of technical circumventions by Vyne.  And all the while, Vyne continued spreading false statements and smears about HSOne to its customers.  Even so, HSOne

---

[14] *Id.* (Timestamp: 30:59 – 31:12).

ACTIVE 715694453v4

took every possible effort to come to a commercial arrangement, despite Vyne essentially holding HSOne hostage through its hacking and public smear campaign.

71.      Because Vyne has not only failed to stop its conduct in the face of these attempts at resolution, but has escalated them, HSOne has no choice but to seek the Court's intervention to stop Vyne's hacking.  In the days preceding HSOne's filing of its Utah complaint, Vyne continued to roll out and implement new and more advanced technical circumventions of HSOne's security controls.

- HSOne uncovered evidence that Vyne had issued new updates which, on information and belief, contained additional exploits.

- HSOne also uncovered evidence that Vyne is misappropriating HSOne software credentials and placing them into configuration files without authorization.

- HSOne's continued investigation has also revealed that Vyne is modifying folder permission access to circumvent HSOne's security functionality.  Vyne is giving broad access to users beyond administrators to folders that they would not otherwise have access to, including sensitive directories.

- Further, a recent customer complaint has confirmed that Vyne is executing code to enact man-in-the-middle interception and redirect network traffic.

- HSOne's investigation shows that Vyne is not only misappropriating credentials to HSOne software systems, but it is hardcoding them in memory and storing them persistently in Vyne's servers after they are misappropriated.  This is an unauthorized and dangerous practice for security purposes. Vyne's strategy is to deploy rapid iterations of their software to attempt to work around security measures.  HSOne's telemetry monitoring corroborates that Vyne has been deploying these workaround updates on a weekly basis.  From October 3 to October 10, 2025, HSOne's telemetry has uncovered that Vyne has deployed at least 400 malicious instances of its software that access HSOne's software systems and database without authorization.  These are

20

dangerous practices that create security risks for HSOne's customers and HSOne's software.

72.     Vyne's acts undermine the fundamental security architecture of HSOne's software solutions and inflict significant reputational and business harm to HSOne.  HSOne's customers are frustrated because their systems are not working properly, and are misled by Vyne to direct that frustration at HSOne.  This has and will continue to cause HSOne lost business opportunities and direct costs supporting and responding to customer issues caused by Vyne.

73.     Worse, Vyne is interfering with HSOne's ability to update its own systems and roll out new security controls.  Due to the nature of Vyne's hacks, it can revert some of HSOne's security upgrades and cause them to fail as well.  No amount of money can repair the damage this causes HSOne.

74.     Unless enjoined by this Court, Vyne will continue to deploy unauthorized workarounds with impunity.

### FIRST CAUSE OF ACTION

**Violation of 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), AND 1030(a)(5)(C)**

**Computer Fraud and Abuse Act (CFAA), § 1030 et seq.**

75.     HSOne incorporates by reference all preceding paragraphs.

76.     Vyne violated 18 U.S.C. § 1030(a)(2)(C) by intentionally accessing HSOne's software on protected computers without authorization or exceeding authorized access to obtain information from the protected computers, having caused damage and loss to HSOne, which includes costs associated with HSOne's investigation, remediation, and interruption of services.

77.     Vyne violated 18 U.S.C. § 1030(a)(4) by knowingly and with intent to defraud, accessing HSOne's software on protected computers without authorization, or exceeding authorized access, whereby by such conduct Vyne was able to further its fraud on HSOne and obtain valuable information in excess of $5,000 in any 1-year period.

ACTIVE 715694453v4

78.     Vyne violated 18 U.S.C. § 1030(a)(5)(C) by intentionally accessing software on protected computers and as result of such conduct caused damage and loss to HSOne, as defined by the CFAA.

79.     The computers, servers, endpoints, and software infrastructure that Vyne hacks are "protected computers" as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate or foreign commerce or communications.

80.     Vyne, without authorization or by exceeding any authorization, accessed HSOne's software on protected computers by, among other things, bypassing technical controls and harvesting credentials and secrets embedded in HSOne files and code, with intent to defraud and to obtain information.

81.     Vyne's methods have included at least: (*a*) runtime patching of security flags in DtxHelp.dll; (*b*) disk-level patching of DtxHelp.dll and potential redistribution; (*c*) decrypting dtx.config to recover a passphrase and generate an administrator password; (*d*) extracting ODBC connection strings from process memory; (*e*) rebuilding Dentrix help components with embedded secrets to survive HSOne updates (i.e. patches); (*f*) retrieving configuration files (including FairCom C-Tree settings) containing encrypted administrator credentials and retrieving private keys from HSOne source code to decrypt those files; (*g*) inserting code at the driver level (print driver/print stream) to export data; (*h*) developing components that mimic Dentrix to interface with HSOne databases and services; and (*i*) hijacking application workflows to sign into Vyne's services. Vyne's methods thus include credential extraction, manipulation of the source code, configuration file decryption, printer driver injection, and mimicry of HSOne's database and services.

82.     By accessing HSOne's software systems without authorization or in excess of authorization, Vyne obtained information from a protected computer in violation of § 1030(a)(2)(C), and on information and belief, Vyne acted knowingly and with intent to defraud to obtain valuable information such as administrator credentials, connection secrets, system access, in violation of § 1030(a)(4).

22

83. In an interview published on June 26, 2025, on YouTube, Vyne's CEO, Mr. Stephen Roberts, admitted that Vyne deliberately and systematically seeks ways to circumvent HSOne's security measures. In the same interview, Vyne's CEO admitted that Vyne employs a multitude of ways to circumvent HSOne's security measures.

84. HSOne suffered "loss" and "damage" as defined in § 1030(e)(11) and § 1030(e)(8), including costs to investigate, contain, and remediate. Costs were also incurred to restore systems, develop and launch patches, and address business interruptions and communications with customers and vendors. HSOne's aggregate loss exceeds $5,000 during a one-year period and supports civil relief under § 1030(g).

85. Under 18 U.S.C. § 1030(g), HSOne is entitled to compensatory damages, injunctive relief, and equitable relief.

## SECOND CAUSE OF ACTION

### Violation of 17 U.S.C. §§ 1201(a)(1), 1201(a)(2), and 1201b(1)

### Digital Millennium Copyright Act (DMCA Anti-Circumvention)

86. HSOne incorporates by reference all preceding paragraphs.

87. HSOne's software employs technological measures to control access to copyrighted works—e.g. software source code and or protected interfaces. Vyne circumvented these technological measures and/or trafficked in circumvention technology, including password-decryption/obfuscation techniques, in violation of 17 U.S.C. § 1201.

88. HSOne owns the copyright to its software and related components, including Dentrix, DtxHelp.dll, compiled object code, configuration files (including dtx.config and FairCom C-Tree), admin certificates, and associated documentation.

89. HSOne employs effective technological measures to control access to its protected copyrighted works, including encryption (e.g., FairCom C-Tree settings), passwords or passphrases, code-signing and application workflows, runtime security flags, driver-level protections, and credential and connection string-controls.

23

90. HSOne has put technological measures in place to control access to its copyright material. Vyne circumvented HSOne's technological measures to access HSOne's protected copyrighted work, in violation of Section 1201(a)(1), by:

- Decrypting dtx.config to recover a passphrase and generate an administrator password;

- Retrieving and decrypting configuration files (including FairCom C-Tree settings) using private keys taken from HSOne's source code;

- Rebuilding Dentrix help components with embedded secrets to survive HSOne updates;

- Hijacking application workflows and run Vyne's services as if authorized;

- Patching security flags in DtxHelp.dll at runtime;

91. Beyond the already-described circumventions, Vyne further violated the DMCA every time it bypassed encryption or authentication measures put in place by HSOne to protect its copyrighted work. By defeating code-signing and update integrity checks, Vyne circumvented measures to protect HSOne's exclusive rights in its copyright works.

92. Vyne's acts lack HSOne's authority.

93. Upon information and belief, Vyne manufactured, provided, and/or trafficked in technologies and services primarily designed for circumvention with knowledge of their use in circumvention.

94. HSOne has suffered, and continues to suffer irreparable harm and economic damages, including forensics investigation, remediation, and operational disruption, as well as frustration of HSOne's ability to issue proper updates to secure its software and protect its customers.

95. Under 17 U.S.C. § 1203, HSOne seeks injunctive relief (including impoundment and destruction of circumvention tools and signed components), actual or statutory damages, costs, attorneys' fees, and any further relief the Court deems just.

ACTIVE 715694453v4

## **THIRD CAUSE OF ACTION**

## **Utah Code Ann. § 13-5a-103 et seq.[15]**

## **Utah Unfair Competition Act (UUCA) and Common Law Unfair Competition**

96.     HSOne incorporates by reference all preceding paragraphs.

97.     The Utah Unfair Competition Act prohibits any intentional business act or practice that is unlawful, unfair, or fraudulent, that leads to a material diminution in the value of intellectual property, and that constitutes an enumerated category, including malicious cyber activity or a software license violation. Utah Code Ann. § 13-5a-102(4).

98.     HSOne owns valuable intellectual property, including its Dentrix software, related components, configuration files, encryption keys, and code-signing certificates.

99.     Vyne engaged in intentional, unlawful acts by violating multiple federal statutes and hacking HSOne's software.  Vyne's conduct also causes a diminution in the value of HSOne's intellectual property.

100.    Vyne's unlawful, unfair, and fraudulent conduct includes at least the following:

- Malicious hacking by accessing HSOne's systems without authorization and transmitting code to alter or disable security controls;

- Software license violations including reverse engineering HSOne's code, modifying HSOne's software components (e.g., patched DLLs), and redistributing altered versions to maintain unauthorized integrations;

- Other unlawful acts such as decrypting configuration files, hijacking application workflows, and rebuilding components to bypass update integrity checks.

101.    Vyne acted knowingly and systematically, as confirmed by its CEO's public statements, to circumvent HSOne's security and exploit its intellectual property for competitive advantage.

---

[15] Utah law should apply to HSOne's claims.

ACTIVE 715694453v4

102.     Upon information and belief, Vyne further willfully communicated, delivered, or caused the transmission of a program, information code, or command without HSOne's authorization or exceeding authorized access

103.     Vyne acted intentionally to defraud HSOne, in circumvention of HSOne's technological measures and software licenses.

104.     HSOne suffers material diminution in the value of its intellectual property, along with economic harm, including forensic investigation, remediation, and business disruption based on Vyne's conduct.  Vyne's conduct also erodes HSOne's customer trust and goodwill.

105.     HSOne is entitled to: (a) actual damages; (b) costs and reasonable attorney's fees; and (c) punitive damages if the court determines it appropriate.

106.     HSOne seeks judgment against Vyne for damages, punitive damages, injunctive relief barring further unfair competition, and all other relief the Court deems just.

## FOURTH CAUSE OF ACTION

### Tortious Interference with Contract and Prospective Economic Relations

### (Utah Common Law)

107.     HSOne incorporates by reference all preceding paragraphs.

108.     HSOne has valid and enforceable contracts with its customers and maintains ongoing negotiations and prospective relationships with others for the use of its software ecosystem, which includes the Dentrix platform and related services.

109.     Vyne knew of these existing contracts and prospective economic relationships.  In its own communications, Vyne asserted that HSOne's planned security measures (i.e. patch) would affect "20% of [HSOne's] customers."  Vyne also sent HSOne a document titled "Customer Data Access Request," purporting to act an agent for over 500 HSOne customers.  Upon information and belief, Vyne tortiously interfered with these specific contracts by making material false statements and omissions about its conduct and HSOne to HSOne's customers.

110.     Vyne intentionally interfered with HSOne's contracts by improper means, including: circumventing HSOne's security controls to gain unauthorized access to its software

26

systems and data; decrypting configuration files and extracting credentials to impersonate HSOne components; hijacking application workflows to make Vyne's services appear authorized; injecting altered credential and endpoints into Dentrix eClaims/eTrans to disable HSOne authentication capabilities and cripple HSOne's ability to issue effective patches; developing and deploying Dentrix-mimicking components to divert customers and maintain unlawful integration.

111.    Vyne's interference was accomplished by improper means—conduct that is deceptive, unlawful, and contrary to established trade standards—including violations of the CFAA, DMCA, Utah's Unfair Competition Act, as well as software-license breaches and configuration tampering.  Vyne's anti-security practices were also deceptive and contrary to industry standards designed to preserve and protect health data.

112.    Vyne's acts caused HSOne to suffer economic harm, including lost business opportunities, loss of goodwill, and substantial costs for investigation and remediation.

113.    HSOne seeks compensatory and punitive damages, attorney's fees, and injunctive relief prohibiting Vyne from further tortious interference.

**FIFTH CAUSE OF ACTION**

**Trespass to Chattels**

**(Utah Common Law)**

114.    HSOne incorporates by reference all preceding paragraphs.

115.    Vyne intentionally interfered with HSOne's computer systems by misappropriating credentials and private decryption keys, patching binaries, running altered code, and modifying production configurations (including eTrans/DataServices parameters).

116.    Vyne's acts impaired HSOne's systems by blocking authentication and interrupting security eligibility checks. Vyne's acts impaired HSOne's computer system's values and use, including interference with patch deployment and system resources.

117.    As a result of the trespass, HSOne has been harmed, having had to expend resources in investigating and restoring its affected systems. Customer experience and goodwill have also been eroded.

27

118.     Vyne's conduct has damaged HSOne in an amount to be proven and merits damages and injunctive relief.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

### (Utah Common Law)

119.     HSOne incorporates by reference all preceding paragraphs.

120.     By evading HSOne's security controls and altering configurations, Vyne unlawfully obtained benefits—data access, mass exfiltration, and code injection capabilities which were not authorized.  This has enriched Vyne in an amount to be proven, but at least $1 million, on information and belief, because Vyne is bypassing HSOne's API for these purposes.

121.     Vyne knows it is receiving these ill-gotten benefits from its backdoor methods, which are unauthorized.

122.     Vyne's continued possession of the benefits it has received by hacking HSOne is unjust.

123.     HSOne seeks restitution and disgorgement measured by Vyne's gains as well as HSOne's losses.

## SEVENTH CAUSE OF ACTION

### Utah Code Ann. § 13-11a-1 et seq.

### (Utah Truth in Advertising; Deceptive Trade Practices Act)

124.     HSOne incorporates by reference the preceding paragraphs.

125.     Vyne's customer-facing statements disparaged HSOne by false or misleading representations of fact and caused confusion about sponsorship/approval and legality of Vyne's malicious data extraction and injection, violating Utah Code Ann § 13-11a-3.

126.     Vyne made false or misleading statements of fact to HSOne's customers with respect to HSOne's security measures and Vyne's own methods, while concealing Vyne's backdoor access, patching, and configuration tampering.  Vyne's statements confused customers about sponsorship and approval.

28

127. Vyne disseminated its statements through mass email campaigns, public interviews, and direct communications with HSOne's current and prospective customers. Vyne did so to mislead the market about HSOne's platform security and business conduct.

128. Vyne's false or misleading statements include statements made by Mr. Stephen Roberts during his June 26, 2025 interview, available on YouTube, as well as Vyne's statements made to its customers on or around August 11, 2025, as described in this Complaint.

129. Vyne's conduct cost HSOne both goodwill and business in an amount to be proven at trial, while also forcing it to incur expenses in responding to and remediating the harm.

130. HSOne seeks injunctive relief, damages, and attorneys' fees under § 13-11a-4.

## EIGHTH CAUSE OF ACTION

### Violations of 15 U.S.C. § 1125(a)(1)(B) (Lanham Act)

131. HSOne incorporates by reference the preceding paragraphs.

132. Vyne disseminated and published statements to mutual customers (HSOne's and Vyne's), as well as to the market at large (e.g., through CEO interview) about HSOne and Vyne's services. Vyne made these statements in interstate commerce and in this District.

133. Vyne disseminated its statements through mass email campaigns, public interviews, and direct communications with HSOne's current and prospective customers. Vyne did so to mislead the market about HSOne's platform security and business conduct.

134. Vyne spread falsehoods about HSOne and intentionally made false statements and omissions about Vyne's conduct to HSOne customers, claiming Vyne was not engaging in hacking or violations of the law, and that HSOne's security measures and requirements instead were pretextual. Vyne omitted its hacking conduct, which includes DLL file patching, decryption, service mimicry to gain unauthorized access, and configuration tampering, and other acts.

135. These statements and omissions were made in commerce and targeted the same customer population HSOne serves. Vyne's false and misleading statements and omissions violate the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a).

ACTIVE 715694453v4

136. Vyne's false advertising statements actually deceived, or have a tendency to deceive, HSOne customers. Vyne's false statements and omissions influenced customer decisions, created confusion about HSOne's platform, caused loss of customer goodwill, and diverted business from HSOne. Vyne's statements were not only misleading but were made with the intent to erode trust in HSOne's platform and to promote Vyne's unauthorized and insecure integration methods.

137. HSOne suffered competitive and reputational harm and diverted resources to mitigate and correct the record, for which there is no adequate remedy at law. HSOne seeks damages, disgorgement, attorney's fees, and injunctive relief pursuant to 15 U.S.C. §§ 1116 and 15 U.S.C. § 1117. HSOne will prove the full extent of monetary damages it has suffered by reason of Vyne's acts through this action.

138. On information and belief, Vyne's actions are willful and done with the intention of causing confusion, mistake, or deception. This is accordingly an exceptional case entitling HSOne to recover the costs of this action, including its reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

## NINTH CAUSE OF ACTION

### Business libel / Common-law defamation

139. HSOne incorporates by reference all preceding paragraphs.

140. Vyne published false statements about HSOne's conduct and security protocols to HSOne's current and prospective customers, including by omitting the details of Vyne's hacking conduct.

141. Vyne's statements were made with actual malice and reckless disregard for the truth. Vyne knows its statements are false, yet continues to disseminate them to HSOne's customers, prospective customers, industry observers, and the general public.

142. Vyne's conduct of continuing to escalate its hacks while making statements aimed to misrepresent the situation shows that Vyne's statements are not only negligent, but are made with malice through knowledge of falsehood or in reckless disregard to their truth or falsity.

30

143. Vyne's false statements were designed to damage HSOne's reputation, interfere with customer relationships, and divert business opportunities causing HSOne pecuniary loss. These statements have caused HSOne reputational harm and forced it to divert resources to correct misinformation.

144. Vyne's statements were false, and HSOne suffered special damages, including lost business and reputational harm. HSOne seeks damages and injunctive relief.

## TENTH CAUSE OF ACTION

### Violations of 18 U.S.C. § 2511

### Electronic Communication Privacy Act (ECPA)

145. HSOne incorporates by reference all preceding paragraphs by reference.

146. Vyne's conduct constitutes a violation of ECPA, because it intercepted electronic communications intended for HSOne's services by injecting its own domain into the transmission of Dentrix's eClaims/eTrans configuration using invalid, unauthorized eTrans IDs, among other things. Vyne's interception of contents of electronic communications were contemporaneous.

147. On information and belief, Vynee intentionally altered software and network configurations designed to capture electronic communications.

148. The contents of the intercepted communications include claim eligibility transactions, statements, and payment records.

149. HSOne did not consent to Vyne's interception and redirection of electronic traffic.

150. Vyne's conduct has and continues to cause HSOne damages and merits statutory damages, actual damages, and equitable relief under the ECPA.

### ELEVENTH CAUSE OF ACTION

### Utah Code Ann. §§ 77-23a-4 and 77-23a-11

### (Utah Interception of Communications Act)

151. HSOne incorporates by reference all preceding paragraphs by reference.

152. For the same reasons pleaded under the ECPA, Vyne's rerouting and capture of electronic communications (i.e., redirection of electronic traffic) constitutes an interception under Utah law.

153. The contents of the intercepted communications include claim eligibility transactions, statements, and payment records.

154. Vyne intentionally or knowingly intercepted or procured another to intercept or endeavor to intercept any electronic communications, in violation of the Utah Interception of Communications Act.

155. Vyne did so without HSOne's consent and outside any statutory exception.

156. HSOne seeks all civil remedies provided by Utah law (§ 77-23a-11), including damages, punitive damages, attorneys' fees, and injunctive relief.

## **PRAYER FOR RELIEF**

HSOne prays for the following relief:

A. Damages in an amount to be proven at trial;

B. Restitution and disgorgement of all money, profits, compensation, or property that Vyne acquired by any wrongful or unlawful means alleged herein and the imposition of a constructive trust on all such money, profits, compensation, and/or property;

C. Exemplary and punitive damages, in an amount to be determined at trial, as appropriate to punish Vyne and deter such conduct in the future;

D. Equitable or injunctive relief as permitted by law, including:

(1) that Vyne cease from engaging in non-approved workarounds of HSOne's platforms;

(2) that Vyne cease circumventing, or aiding or assisting anyone in circumventing HSOne's security upgrades and patches;

(3) that Vyne cease from subverting HSOne's security upgrades, patches, and implementations;

32

(4) that Vyne be ordered to cooperate with HSOne in implementing its security updates and fixing Vyne's malicious hacks;

(5) that Vyne be ordered to cooperate and not unduly burden customers with respect to HSOne's efforts to help customers to transfer to approved channels;

(6) that Vyne cease from tampering, altering, or modifying HSOne's eTrans/Data Services configuration values;

(7) that Vyne be ordered to restore the eTrans/Data services values to their original values, and issue a sworn certificate of compliance within a reasonable window of time (such as 10 days);

(8) that Vyne cease from inserting, altering, or executing code that writes, overwrites, or otherwise affects HSOne's Dentrix databases without authorization;

(9) that Vyne cease from creating any workarounds or methods, such as HTTP/HTTPS local proxies, designed to intercept or re-route data traffic;

(10) that Vyne cease from exploiting, altering, or modifying Dentrix debug configuration files;

(11) that Vyne be ordered to preserve logs, scripts, telemetry, binaries, certificates/keys, and related documents and communications; and

(12) such further equitable relief as is necessary to effectuate and enforce the foregoing restraints, including impoundment and destruction of circumvention tools upon final relief.

E.  Pre- and post-judgment interest, at the maximum legal rate;

F.  Attorneys' fees, as appropriate and authorized; and

G.  Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, HSOne hereby asserts its right to a trial by jury on all counts so triable.

ACTIVE 715694453v4

**RESPECTFULLY SUBMITTED.**

Date: October 23, 2025

**GREENBERG TRAURIG, LLP**

By: */s/ Michael Burshteyn*

Michael Burshteyn *(pro hac vice)*
Marcelo Barros *(pro hac vice)*
Jennifer Bartlett *(pro hac vice)*
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Michael.burshteyn@gtlaw.com
Marcelo.barros@gtlaw.com
Jennifer.bartlett@gtlaw.com

Michael R. Sklaire (MD Fed. Bar No. 16471)
1750 Tysons Boulevard, Suite 1000
Tysons Corner, VA 22102
Tel: (703) 749-1308
michael.sklaire@gtlaw.com

*Counsel for Henry Schein One, LLC*

34

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 23, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael Sklaire*
Michael Sklaire

ACTIVE 715694453v4