IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>           Plaintiff and Counter-Defendant<br><br>HENRY SCHEIN ONE, LLC,<br><br>           Defendant and Counter-Claimant. | Case No. 1:25-cv-03246-MJM |

**[PROPOSED] ORDER GRANTING TEMPORARY RESTRAINING ORDER**

The Court has considered Plaintiff Henry Schein One, LLC's ("HSOne") Motion for a Temporary Restraining Order and Preliminary Injunction under Rule 65 of the Federal Rules of Civil Procedure against Defendant National Electronic Attachment, Inc. d/b/a/ Vyne Dental ("Vyne"), the responses of the parties, the arguments of counsel, and the applicable law. Having considered those documents, legal authority, and the arguments of counsel, the Court has determined that the Motion should be **GRANTED.**

The Court **FINDS** as follows:

HSOne has satisfied the requirements for injunctive relief. HSOne has valid causes of action against Vyne for: (1) violations of the Computer Fraud and Abuse Act (CFAA) § 1030 et seq.; (2) violations of the Digital Millenium Copyright Act, 17 U.S.C. §§ 1201(a)(1), 1201(a)(2), and 1201(b)(1); (3) violations of Utah Unfair Competition Act (UUCA) and Common Law Unfair Competition, Utah Code Ann. § 13-5a-103 et seq.; (4) Trespass to Chattels; (5) violations of the

1

Electronic Communications and Privacy Act ("ECPA") 18 U.S.C. § 2511; and (6) violations of Utah Interception of Communications Act, Utah Code Ann. §§ 77-23a-4 and 77-23a-11.

HSOne has a likelihood of success on the merits of its CFAA, DMCA, ECPA, Trespass to Chattels, Utah Unfair Competition, and Utah Interception of Communications claims; HSOne has shown that it imminently faces irreparable harm if Vyne is not restrained; the threatened injury to HSOne outweighs any harm that may result to Vyne; and the injunctive relief requested serves the public interest.

The entry of this Temporary Restraining Order ("TRO") is necessary to preserve the status quo pending a hearing on HSOne's application for a preliminary injunction.

Based on the allegations in the Complaint and the evidence presented, together with the sworn statements verifying the facts alleged, good cause exists to enter this TRO. Specifically, the Court **FINDS**:

1. The Court has personal jurisdiction over the parties, and both jurisdiction and venue are proper in this Court.

2. HSOne is a Utah-based dental software company. HSOne owns the Dentrix practice management systems. HSOne's customers use Dentrix for their dental practices, and third-party vendors can integrate and interoperate with Dentrix. HSOne enables this interoperation through its application programming interface ("API") Exchange.

3. HSOne invests resources in making its API reliable and secure for the benefit of its integration partners and customers. It implements access controls, encryption, system monitoring, and a variety of other technical measures to safeguard sensitive business and patient health data.

4.      Third-party vendors use HSOne's API Exchange to offer the vendors' solutions to HSOne's customers. HSOne invests significant resources in making its Dentrix platform open, transparent, and interoperable. At least 100 third-party vendors make use of HSOne's API Exchange to offer solutions to HSOne's customers in over 40 categories. These categories include patient engagement, revenue cycle management, analytics, and imaging, among others. The API contains over 750 data endpoints enabling developers to build a plethora of applications that work with Dentrix.

5.      Vyne is a company that provides a point solution for dental practices to manage their billing.

6.      Vyne seeks to integrate with practice management platforms like Dentrix.

7.      For insurance claims, Dentrix has backend integrations, integrations that it has offered to implement with Vyne. Vyne has refused and instead has created workarounds that interfere with HSOne's software systems by circumventing HSOne's technical measures that block unauthorized access and exfiltrating HSOne customer data. HSOne has no duty to automate any workflow for Vyne, particularly not a workflow that would compromise data integrity, security, and reliability.

8.      Vyne has also injected and written data back into HSOne's software platform.

9.      HSOne has implemented telemetry to track interference with its software platform and to increase Dentrix's security monitoring capabilities.

10.     Through the telemetry and HSOne's other investigation methods, HSOne has uncovered the ways Vyne has circumvented HSOne's systems, including (1) credential

misappropriation and binary masquerading; (2) administrator privilege escalation; (3) patch tampering; (4) component impersonation; and (5) code injection for mass data export.

11.     Vyne has deployed new hacking methods even while the parties have been engaging in commercial discussions over the past several weeks.

12.     Through its telemetry and customer logs, HSOne uncovered, on or around September 10, 2025, that Vyne was intercepting Internet traffic from HSOne's customers that was meant to go to HSOne and redirecting those transmissions to a Vyne endpoint.

13.     Vyne's modifications break the authentication flow for multiple HSOne services that rely on the same DataServices ID with which Vyne interferes, resulting in HSOne customers experiencing failed claims, undelivered payment records, and system instability.

14.     Vyne's interference also obstructs HSOne's ability to deploy security patches.

15.     Even if HSOne were to repair the configuration setting, Vyne's software has functions to restore the proxy-in-the-middle without user interaction, thus reverting HSOne's updates and perpetuating the unauthorized data interception and computer access.

16.     Vyne's conduct is creating disruption across HSOne's customer base. Vyne's conduct is causing HSOne to have to respond to customers experiencing interruptions, failures, and system instability.

17.     Vyne's actions are unauthorized and undermine the security of HSOne's software solutions and inflict significant reputational and business harm to HSOne.

18.     Vyne is interfering with HSOne's ability to update its own systems and roll out new security controls. Due to the nature of Vyne's hacks, it can revert HSOne's security upgrades and cause them to fail as well.

19. Vyne has continued to implement new and more advanced technical circumventions of HSOne's security controls. Within the last weeks, HSOne uncovered evidence that Vyne has issued new updates which it appears contain additional circumventions of HSOne's security controls.

20. From October 3 to October 10, 2025, HSOne's telemetry uncovered that Vyne has deployed at least 400 instances of its software that accessed HSOne's software systems and database without authorization. Vyne is also modifying folder permission access to circumvent HSOne's security functionality. Vyne is giving broad access to users beyond administrators to folders that they would not otherwise have access to, including sensitive directories. This is a dangerous practice that creates security risks for HSOne's customers and HSOne's software. A recent customer complaint has confirmed that Vyne is executing code to redirect network traffic. HSOne's investigation shows that Vyne is hardcoding credentials in memory and storing them persistently in Vyne's servers after they are misappropriated. This is an unauthorized and dangerous practice for security purposes. HSOne's telemetry monitoring corroborates that Vyne has been deploying these workaround updates on a weekly basis.

21. HSOne has uncovered evidence that Vyne is misappropriating HSOne software credentials and placing them into configuration files without authorization.

22. Vyne recently submitted a declaration in this Court admitting its conduct. In that declaration, Vyne's CTO, who used to work for HSOne and is familiar with HSOne's security engineering methods, admitted that Vyne exfiltrates secret encryption keys from HSOne's software systems and then uses those keys to access HSOne's software systems.

23. Vyne has made false statements to HSOne's customers about its conduct and HSOne's software systems. Vyne's statements have interfered with HSOne's relationships and contracts with those customers.

Based on the allegations in the Complaint and the evidence presented, together with the sworn statements verifying the facts alleged, the Court **CONCLUDES** that HSOne has demonstrated a likelihood of success on the merits of its claims for: (1) violations of the CFAA, (2) violations of the DMCA, (3) Trespass to Chattels, (4) violations of UUCA, (5) violations of the ECPA and Utah's Interception of Communications Act:

1. HSOne has demonstrated a likelihood of success on the merits of its CFAA claim based on violations of §§ 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(C). CFAA, § 1030(g) authorizes injunctive relief to halt unauthorized access and damage to protected computer systems. HSOne has demonstrated that Vyne accessed protected computer software systems without authorization or in a way that exceeds authorized access, Vyne used that access to obtain information, Vyne took actions with the intent to defraud, and Vyne's conduct caused damage to HSOne in excess of $5,000.

2. HSOne has demonstrated a likelihood of success on the merits of its DMCA claim. DMCA § 1203(b)(1) authorizes temporary and permanent injunctions to prevent or restrain circumvention of effective access controls. HSOne has demonstrated: (1) that its Dentrix software source code is protected under the Copyright Act; (2) HSOne's authorization and security measures are meant to protect that copyrighted source code; and (3) Vyne's conduct circumvented multiple HSOne protective measures to access HSOne's software.

3. HSOne has demonstrated a likelihood of success on the merits of its trespass to chattels claim. HSOne has demonstrated Vyne's interference with HSOne's Dentrix systems constituted trespass to HSOne's software application and database. Vyne has dispossessed HSOne of access to patch and secure its own software and has interfered with HSOne's operations of its application, services, and database.

4. HSOne has demonstrated a likelihood of success on the merits of its UUCA claim. HSOne has demonstrated: (i) that Vyne intentionally interfered with HSOne's business systems; (ii) Vyne's conduct is unlawful, unfair, and fraudulent; (iii) Vyne's conduct has damaged HSOne's systems leading to material diminution in the value of Dentrix; and Vyne's conduct in doing so (iv) falls under one of four enumerated categories of the UUCA, including "malicious cyber activity." Due to Vyne's conduct, HSOne's computer software does not function as effectively, its copyright protections are circumvented, and its source code is being exploited. This lessens the value of all of HSOne's intellectual property tied to its Dentrix software installed on customer premises.

5. HSOne has demonstrated a likelihood of success on the merits of its ECPA claim and Utah's Interception of Communications Act. Both the ECPA § 2520(b)(1) and Utah's Interception of Communications Act § 77-23a-11(2) authorize "preliminary and other equitable relief" to stop interception of electronic communications. Vyne's conduct in re-routing and intercepting data in HSOne's system and acquiring the contents of an electronic communication by use of an electronic, mechanical, or other device constitutes unlawful interception under the ECPA and Utah law.

Based on the allegations in the Complaint and the evidence presented, together with the sworn statements verifying the facts alleged, the Court further **CONCLUDES** that HSOne has demonstrated irreparable harm:

1. First, Vyne's conduct undermines the integrity of HSOne's authentication and security architecture. Second, it creates risk to sensitive patient and financial data and risks a vulnerability for access by unauthorized third parties. Third, it allows Vyne to manipulate or delay the flow of information, potentially corrupting records or interfering with time-sensitive transactions. Fourth, it deprives HSOne of the ability to monitor, audit, or secure the data flow—effectively stripping HSOne of control over its own system.

2. Vyne's conduct has resulted in damages difficult to calculate, the loss of a unique product, and has resulted in intangible harms such as loss of goodwill or competitive market position. Due to Vyne's conduct, HSOne is unable to issue patches or security upgrades to its systems. In addition to blocking patches, this also compromises the performance and stability of HSOne's application and database. Vyne's conduct has also affected HSOne's reputation and goodwill in the market. HSOne's telemetry shows that Vyne's intrusions are continuing.

Based on the allegations in the Complaint and the evidence presented, together with the sworn statements verifying the facts alleged, the Court further **CONCLUDES** that HSOne has demonstrated the balance of the equities favors granting a TRO:

1. Vyne's ongoing conduct inflicts irreparable harm on HSOne, jeopardizing its operations, reputation, and the security of sensitive patient data. By contrast, a TRO merely requires Vyne to comply with the law and stop its interference with HSOne's patching.

Based on the allegations in the Complaint and the evidence presented, together with the sworn statements verifying the facts alleged, the Court further **CONCLUDES** that HSOne has demonstrated that a TRO is in the public interest:

1. It is in the public interest to enjoin conduct that hacks systems or overcomes technical measures aimed at protecting that software.  It is also in the public interest in protecting copyright owners' marketable rights to their work.  Vyne's conduct, left unchecked, will also erode confidence in the broader healthcare and digital space.

Because HSOne is likely to prevail on its claims, will be irreparably harmed absent an injunction, is on the right side of the balance of equities, and because an injunction is in the public interest, early injunctive relief in this case is merited and appropriate.

**IT IS THEREFORE ORDERED** that, effective immediately and until further order of the Court, Vyne (and its officers, agents, servants, employees, affiliates, attorneys, and all persons in active concert or participation with any of them) are:

1. Enjoined from engaging in non-approved workarounds of HSOne's platforms;

2. Enjoined from circumventing, or aiding or assisting anyone in circumventing HSOne's security patches;

3. Enjoined from subverting HSOne's security patches and implementations;

4. Ordered to cooperate with HSOne in implementing its security updates and fixing Vyne's malicious hacks;

5. Ordered to cooperate and not unduly burden customers with respect to HSOne's efforts to help customers to transfer to approved channels;

      6.      Enjoined from tampering, altering, or modifying HSOne's eTrans/Data Services configuration values;

      7.      Ordered to restore the eTrans/Data services values to their original values, and issue a sworn certificate of compliance within a reasonable window of time (such as 10 days);

      8.      Enjoined from inserting, altering, or executing code that writes, overwrites, or otherwise affects HSOne's Dentrix databases without authorization;

      9.      Enjoined from creating any workarounds or methods, such as HTTP/HTTPS local proxies, designed to intercept or re-route data traffic;

      10.      Enjoined from exploiting, altering, or modifying Dentrix debug configuration files;

      11.      Enjoined from interfering, directly or indirectly, with HSOne's ability to deploy patches, security updates, or upgrades, including any action that disables, bypasses, or rolls back HSOne updates; and

      12.      Ordered to preserve logs, scripts, telemetry, binaries, certificates/keys, and related documents and communications.

      **IT IS FURTHER ORDERED** that this injunction remains in effect until further order of this Court, after an evidentiary hearing on Plaintiff's application for a preliminary injunction, which is set for _____, 2025, at _____ a.m. / p.m. The purpose of the hearing shall be to determine whether this Temporary Restraining Order should be made a preliminary injunction pending a full trial on the merits.

      **IT IS FURTHER ORDERED** that the Clerk shall issue a Temporary Restraining Order in conformity with the law and the terms of this Order.

**IT IS FURTHER ORDERED** that HSOne is to file with the Clerk a bond, or a deposit of cash into the registry of the Court in lieu thereof, in conformity with the law, in a nominal amount.

Signed this \_\_\_ day of _____, 2025.

_____

Hon. Matthew J. Maddox
United States District Judge

ACTIVE 715799777v1