IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A VYNE DENTAL,<br><br>　　　　　　*Plaintiff*,<br><br>　　-against-<br><br>HENRY SCHEIN ONE, LLC,<br><br>　　　　　　*Defendant*. | Case No. 1:25-cv-03246- MJM |

**PLAINTIFF NATIONAL ELECTRONIC ATTACHMENT, INC. d/b/a VYNE DENTAL'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HENRY SCHEIN ONE, LLC'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

    I.    Statement of Facts ............................................................................................................ 2

    II.    Procedural History .......................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

    I.    Defendant's Motion Is Premature .................................................................................... 4

    II.    Defendant's Motion Is Meritless ..................................................................................... 6

        a.    Factor 1: Plaintiff's choice of forum is entitled to substantial deference. ................... 7

        b.    Factor 2: Defendant fails to identify inconvenience to any likely nonparty witnesses. ................................................................................................................... 10

        c.    Factor 3: Defendant fails to identify inconvenience to the parties. ........................... 12

        d.    Factor 4: Defendant's "interest of justice" arguments are conclusory. ..................... 13

CONCLUSION ............................................................................................................................. 15

## INTRODUCTION

Defendant Henry Schein One, LLC's ("HS One" or "Defendant") motion to transfer venue pursuant to 28 U.S.C. 1404(a) is both premature and meritless. The Court should deny it.

*First*, Defendant's motion to transfer under 28 U.S.C. § 1404(a) is premature because Section 1404(a), which exists to promote convenience and the interests of justice *in anticipation of trial*, presupposes that the Court can meaningfully identify the evidence and witnesses likely to be necessary for trial. The Court should not make that assessment at this nascent stage of proceedings, especially given that the transfer motion appears aimed at delaying or undermining a pending request for preliminary relief. Courts routinely decline to address issues of trial convenience before the pleadings are set and the issues properly framed for judicial resolution. And otherwise, Defendants' decision to pursue its own request for preliminary relief in Utah—while waiting to raise it here until much later—further underscores the tactical gamesmanship underlying the transfer motion.

*Second*, even if the motion were appropriate for resolution at this embryonic stage, Defendant failed to meet its burden of demonstrating that transfer is warranted. Section 1404(a) requires consideration of at least four factors: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. Defendant's motion is deficient with respect to all four. Plaintiff's decision to bring its first-filed suit in Maryland is entitled to substantial deference; Defendant identifies no nonparty witnesses or evidence that would be unavailable here at trial; and its efficiency and fairness concerns are speculative and unfounded. Meanwhile, the Fourth Circuit has made absolutely clear that unless the balance of factors points "strongly in favor of the defendant, the plaintiffs' choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984).

1

## BACKGROUND

**I. Statement of Facts**

Vyne is a Delaware corporation with its principal place of business in Dunwoody, Georgia. Second Suppl. Decl. of Stephen Roberts ("2d Suppl. Roberts Decl."), ¶¶ 7, 13. Vyne provides secure data-exchange, clearinghouse, and revenue-cycle-management services to dental practices across the United States through its HIPAA-compliant Trellis platform. Its operations are distributed across a predominantly remote workforce, with a substantial engineering and support presence in Indianapolis, Indiana. *Id.* ¶¶ 8-9. Vyne has no engineering, coding, or software-development operations in Utah, and its servers and technical repositories are maintained outside the state. *Id.* ¶ 11. Vyne's principal corporate functions—including finance, engineering, human resources, customer service, and compliance—are managed from Georgia and Indiana. *Id.* ¶ 13.

As of October 2025, Vyne served approximately 8,200 customers nationwide that also used HS One's Dentrix system. *Id.* ¶ 3. According to Vyne's records, 276 of these customers (3.4%) are located in Utah, while 164 customers (2%) are located in Maryland. *Id.* These proportions are comparable, with each representing roughly 1/50th of Vyne's overall customer base. *Id.*

Although certain executives—including Chief Executive Officer Stephen Roberts, Chief Technology Officer James Nix, and President James Grover—reside in Utah, Vyne's principal place of business remains in Georgia. *Id.* ¶¶ 7, 10. To facilitate occasional in-person meetings, Vyne leased a small, short-term office space in Utah in 2025 that accommodates fewer than ten people and functions solely as a meeting site. *Id.* ¶ 10. The space houses no business operations, technical staff, or customer-support personnel. *Id.*

In early September 2025, HS One transmitted to Vyne a draft Tolling Agreement during ongoing commercial discussions. Suppl. Decl. of Stephen Roberts (1st Suppl. Roberts Decl.), Md.

2

Dkt. 40-1, ¶ 15.[1]  Vyne indicated its willingness to sign a mutual agreement, and HS One responded that it would "follow with a signed copy."  1st Suppl. Roberts Decl., Ex. A, Md. Dkt. 40-2, at 4.  HS One eventually sent a signed copy, but only after a software update that disrupted Vyne's services.  *Id.* at 1.  Vyne never executed the Tolling Agreement.  *Id.*

On or about September 23, 2025, HS One released a Dentrix software update that automatically scanned customer computers for Vyne-signed applications and disabled those services.  Decl. of James Nix, Md. Dkt. 6-3, ¶¶ 16-19; 1st Suppl. Roberts Decl. ¶ 20.  This attack immediately prevented hundreds of dental practices from transmitting patient data through Vyne's Trellis platform, including at least eleven in the state of Maryland.  1st Suppl. Roberts Decl. ¶ 20.  After the attack, Vyne had no choice but to pursue legal action to protect its customers and restore service continuity.

## II. Procedural History

Plaintiff commenced this action (the "first-filed action") on September 30, 2025.  Md. Dkt. 1.  Plaintiff moved for a Temporary Restraining Order and Preliminary Injunction on October 2, 2025.  *Id.* Dkt. 6, 6-1.  The next day, Defendant filed a parallel action in the District of Utah (the "second-filed action"), moving for its own Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") on October 8, 2025.  Utah Dkts. 1, 14.  The Utah court summarily denied that motion on the day it was filed, noting that the Tenth Circuit follows the "first-to-file rule."  *Id.* Dkt. 18, at 1.  In dismissing Defendant's motion, the Utah court explained that because Plaintiff's "Maryland suit was filed three days before [the Utah] suit," "involves the exact same parties," and

---

[1] Citations to "Md. Dkt." refer to docket entries in this Action, No. 25-cv-03246 (D. Md. Sept. 30, 2025).  Citations to "Utah Dkt." refer to docket entries in the Utah suit, No. 25-cv-0883 (D. Utah. Oct. 3, 2025).

3

"appears to address the same subject matter," the Utah court will not proceed unless the "District of Maryland determines it cannot, or will not, exercise jurisdiction in the action [there]." *Id.* at 2.

Defendant then moved for reconsideration in Utah on October 9, 2025. Utah Dkt. 20. On October 14, 2025, it filed the instant motion to transfer this case, answering Plaintiff's TRO and PI motions the next day. Md. Dkts. 35, 38. The Court heard argument on the TRO on October 23. *Id.* Dkt. 47. Shortly before midnight the day before, Defendant moved to dismiss the complaint, and roughly an hour before oral argument on Plaintiff's TRO, Defendant filed counterclaims and its own motion for a TRO and a PI. *Id.* Dkts. 42, 45.

## ARGUMENT

Under 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice," transfer "any civil action to any other district or division where it might have been brought." On a Section 1404(a) transfer motion, "the moving party bears the burden of showing, by a preponderance of the evidence, that transfer to another venue is proper." *Kimber v. Plus3 IT Sys., LLC*, 2019 WL 1518970, at *3 (D. Md. Apr. 5, 2019). And, as is long settled, unless the relevant considerations point "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins*, 748 F.2d at 921. Defendant does not satisfy its demanding burden on this motion.

### I.     DEFENDANT'S MOTION IS PREMATURE

To begin, the Court should deny Defendant's motion as premature. First, by moving under Section 1404 and not Section 1406, Defendant cannot argue that transfer is warranted on the ground that Maryland is an improper venue for this litigation. *See* 15 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3844 (4th ed.) ("If venue in the district court is improper, transfer, if it is to be made at all, must be made under a different statute, 28 U.S.C.A. §

4

1406(a).").[2] Section 1404(a) presumes the venue is proper—and it is proper here—and simply addresses the convenience of parties and witnesses during—and to promote the efficient conduct of—*a trial*. It is not a mechanism to argue that the Plaintiff's chosen forum is improper or to disrupt the availability of preliminary equitable relief at the outset of a case, especially before the pleadings and issues have matured to a point where a court can meaningfully assess trial convenience.

Multiple courts have explained that Section 1404(a)'s purpose is to ensure that, once a case is ready for trial, it proceeds in a forum that properly accommodates the witnesses, evidence, and judicial economy associated with that trial. *See Van Dusen v. Barrack,* 376 U.S. 612, 616, 629 (1964) (explaining that "the purpose of [Section 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense" by permitting transfer to a convenient place "*for trial*") (emphasis added) (internal quotation marks and citations omitted); *see also Oeste v. Zynga, Inc.*, 2021 WL 1785139, at *2 (D. Md. May 5, 2021).

And for that reason, courts have consistently held that litigants cannot use Section 1404(a) to frustrate or delay resolution of early-stage issues that are already properly before the court. *See, e.g., Liberty Media Holdings, LLC v. Does 1-62*, 2012 WL 628309, at *8 (S.D. Cal. Feb. 24, 2012) (noting that defendant's forum arguments "may have merit but are premature at this procedural juncture" insofar as the identities and location of certain yet-unnamed defendants could not be

---

[2] Thus, Defendant's arguments that venue is "improper"—for instance, in its motion to dismiss for improper venue pursuant to Rule 12(b)(3), *see* Md. Dkt. 42—conflict with a Section 1404(a) transfer. *Berry v. Soul Circus, Inc.*, 189 F. Supp. 2d 290, 293 (D. Md. 2002) (noting that the defendant's Section 1404(a) transfer motion represented an alternative theory to its Rule 12(b)(3) venue argument).

evaluated); *Mije Assocs. v. Halliburton Servs.*, 552 F. Supp. 418, 419 n.2 (S.D.N.Y. 1982) (noting that Section 1404 motion was "premature" in view of pending motion to dismiss); *Bohnen v. Baltimore & O. C. T. R. Co.*, 125 F. Supp. 463, 464 (N.D. Ind. 1954) (holding that, because "Section 1404(a) was drafted . . . [to] make[] the trial of the case easy, expeditious and inexpensive," it would be proper for the court to first determine "questions raised by the [simultaneously submitted] motion to dismiss").

Here, the Court should consider Defendant's transfer motion only after proceedings have sufficiently matured to a point at which the court can meaningfully weigh trial-convenience factors. Ruling on Defendant's Section 1404(a) motion now would serve no legitimate purpose under the statute, and indeed Defendants' objective appears to be geared primarily at delaying adjudication of Plaintiff's motion for preliminary relief while circumventing the first-filed rule. That is not a proper basis for transfer under Section 1404(a). Permitting Defendant to circumvent the first-filed rule with a Section 1404(a) transfer motion would only undermine the interests of justice and efficiency that the statute is supposed to advance.

## II.    DEFENDANT'S MOTION IS MERITLESS

Defendant has also not come close to meeting its heavy burden of demonstrating that a Section 1404(a) transfer is warranted. Courts consider four principal factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Critically, unless "the balance of factors points 'strongly in favor of the defendant, the plaintiffs' choice of forum should rarely be disturbed.'" *Kimber v. Plus3 IT Sys., LLC*, 2019 WL 1518970, at *4 (D. Md. Apr. 5, 2019) (quoting *Collins*, 748 F.2d at 921).

Each of the four factors weighs strongly against transfer here. First, Plaintiff's choice of forum is entitled to substantial deference. *See Quality Inns Int'l, Inc. v. Patel*, 1988 WL 137782, at *1 (D. Md. Dec. 8, 1988) ("[I]t is important that the plaintiff's choice of forum be accorded grave weight."). Maryland is one of several forums with a substantial connection to this case, and courts are bound to respect a plaintiff's choice of forum unless "none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Manne v. Jaddou*, 2022 WL 102853, at *7 (D. Md. Jan. 11, 2022) (citations and internal quotations marks omitted); *Plumbing Servs., Inc.*, 791 F.3d at 444; *see also In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 2023 WL 6846676, at *7 (D.S.C. Oct. 17, 2023) ("[T]he plaintiff is normally given its choice of courts where it has jurisdiction.") (citing *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 200 (4th Cir. 2009)).[3]

But even without that deference, Defendant's motion fails. Defendant cannot identify any witnesses or evidence that would be unavailable by virtue of holding trial in Maryland, and its posited "interest of justice" concerns are vague and conclusory.

### a. Factor 1: Plaintiff's choice of forum is entitled to substantial deference.

As a general rule, "a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)). Exceptions to that rule obtain when "none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy," or, alternatively, when the Plaintiff's chosen forum conflicts with a valid forum-selection clause. *Manne v. Jaddou*, No.

---

[3] The District of Utah is equally bound by the proposition that "a plaintiff is generally free to file a lawsuit in the forum of its choosing so long as the suit meets jurisdictional and venue requirements." *Span-Eng Assocs. v. Weidner*, 771 F.2d 464, 470 (10th Cir. 1985).

CV 21-1092-PJM, 2022 WL 102853, at *7 (D. Md. Jan. 11, 2022) (citations and internal quotations marks omitted).

Defendant cannot credibly claim that "*none* of the . . . conduct occurred in the forum selected" or that Maryland "has *no* connection" with the matter in controversy. *Id.* (emphasis added). As detailed in the Complaint, over one hundred Maryland dental practices were adversely affected by Defendant's conduct. That is not "none." And while Defendant emphasizes that the affected dental practices in Maryland "only account[] for 2.125% of the more than 8,000 total nationwide dental practices Vyne has as customers," Md. Dkt. 35, at 13, that is not relevant under the applicable standard, and moreover the corresponding percentage in Utah (3.3%) is not materially different. Ex. A. Vyne is a nationwide business. That Maryland and Utah each account for roughly 1/50th of Vyne's affected customer base is both consistent with a national-business model and dispositive of any claim that Utah has a closer connection to the dispute.

Neither did Defendant establish that any forum-selection clause applies. Defendant says that (1) the parties entered into a tolling agreement, (2) which bound Plaintiff to file in Utah. Md. Dkt. 35, at 1. But neither premise is true. Vyne declined to execute the proposed tolling agreement, which would not have limited Plaintiff's ability to file this action in Maryland even had the parties exchanged signatures. Exs. B, C.

The parties negotiated the anticipated form of a proposed tolling agreement, but the parties never exchanged signatures or otherwise evinced mutual assent to be bound by any such agreement. *See, e.g., Developers Surety and Indemnity Company v. Belcher*, 2017 WL 896861, at *5 (D. Md. Mar. 7, 2017) (explaining that *both parties* must "evince[] an intent to be bound by the terms of the tolling agreement" through manifest assent).

On September 9, 2025, Defendant transmitted a proposed tolling agreement to Plaintiff via email. Ex. C, at 1, 6. That same day, counsel for Plaintiff returned a marked-up copy of the agreement, indicated that Vyne would be "prepared to sign a tolling agreement as a gesture of good faith during the ongoing commercial discussions, provided that it is mutual." *Id.* at 5. On September 12, after some additional negotiations, Plaintiff's counsel emailed Defendant's counsel requesting a clean version of the agreement "for signature." *Id.* at 4. But no signature was ever transmitted, because Plaintiff—having indicated that it would only sign if assured that the commitment was "mutual"—was still waiting for Defendant follow through on its September 15, 2025 promise to send "a signed copy" of the draft agreement. *Id.* at 1 ("We will follow with a signed copy on [HS One's] end.").

Plaintiff's decision to withhold its signature turned out to be a wise one, because rather than transmit its own signature as promised, Defendant instead mounted a virus attack through a software update that actively disabled any software running on the computer systems of its customers that bore a Vyne certificate. *Id*. That virus attack, and Defendant's confirmation that it would not sign a letter of intent on commercial terms, eliminated any possibility that Plaintiff would exchange its signature on the proposed tolling agreement. *Id.* Further undermining any suggestion that *either* party had assented to the tolling agreement are Defendant's numerous requests after September 15, 2025, seeking to "confirm[] that Vyne executed the Tolling Agreement on [its] end" and requesting Plaintiff's signature on the agreement. *Id.* at 3; *see, e.g.*, *Versus Evil LLC v. PNC Bank, Nat'l Ass'n*, 613 F. Supp. 3d 916, 923 (D. Md. 2020) (explaining that an "undated, unsigned, and incomplete" agreement "does not establish that Plaintiff ever assented to the forum-selection clause"). Defendant clearly understood that the parties had not sufficiently evinced mutual assent to the agreement and diligently pursued Plaintiff's signature

9

while withholding its own. Simply put, there is no enforceable tolling agreement, which, again, would have been irrelevant to this motion even had Plaintiff assented to it.[4]

Faced with a choice between multiple forums with ties to this dispute, Plaintiff appropriately exercised its right to bring this action in Maryland. Under Supreme Court precedent, that is not forum shopping. *Van Dusen*, 376 U.S. at 634 n.30.

### b. Factor 2: Defendant fails to identify inconvenience to any likely nonparty witnesses.

The next factor, witness convenience and access, is "perhaps the most important factor" in determining whether a Section 1404 motion should be granted in cases where Plaintiff's choice of forum is not entitled to deference. *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008) (quoting *Cronos Containers Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000)).

Defendant's motion lacks any support for factor two. With respect to "witness convenience and access," Defendant refers only to the following prospective witnesses, all of whom are employed—or would be employed by trial—by one of the parties:

- "HSOne's Chief Information Security Officer and Chief Technology Officer"
- Unidentified persons employed by Vyne at an unspecified "office in Utah"
- Hypothetical, yet unhired "senior personnel for that office," who would allegedly "join [Vyne's] CEO, President, and CTO" and become relevant then
- Vyne's CEO and CTO

---

[4] Plaintiff also does not show that the forum-selection clause would have required filing this suit in Utah. It speaks solely of exclusive venue for disputes under the tolling agreement, which does not expressly limit the forum where claims could be filed. Moreover, the proposed agreement expressly explicitly stated that it would have no effect on "either Party's right or ability to seek a preliminary injunction against the other Party's conduct, or to assert any claims against the other Party at any time." Ex. B, at 2. Even without that express carveout, the proposed agreement clearly lacked the sort of "broadening language"—such as language to extend a particular provision to disputes "arising out of or relating to" an agreement—that the Fourth Circuit has required for a forum-selection clause to extend beyond claims for "breach of the agreement itself." *See Evans v. Cantor Insurance Group, LP,* 2021 WL 4951917, at *6 (D. Md. Oct. 25, 2021) (collecting cases).

*See* Md. Dkt. 35, at 13–14.

But as countless courts have explained, prospective witnesses who are *employed by a party* are entirely irrelevant to factor two. They are relevant, if at all, only to factor three ("convenience of the parties"), which is entitled to less weight. *See Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.,* 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) ("It is the convenience of non-party witnesses, rather than that of employee witnesses, however, that is the more important [of the two convenience factors] and is accorded greater weight."); *Aquatic Amusement Assoc. v. Walt Disney World,* 734 F. Supp. 54, 57 (S.D.N.Y.1990). As another judge of this Court has explained: "[T]he convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial." *CV Restoration, LLC v. Diversified Shafts Sols., Inc.*, 2016 WL 6648750, at *5 (D. Md. Nov. 10, 2016) (citing 15 WRIGHT & MILLER § 3851 p. 278).

Ignoring the distinction entirely, Defendant's motion says nothing about prospective nonparty witnesses—much less whether, or in what way, they would be inconvenienced by holding the eventual trial in Maryland. If anything, Defendant's own papers suggest the opposite. Defendant hypothesizes that the most probable (but still-unidentified) out-of-state witnesses are likely located "outside Utah, including in Georgia and Indiana," and that such witnesses would be "willing and able to travel for litigation." Md. Dkt. 35, at 14. More significantly, Defendant's attempt to reassure the Court that a transfer to Utah would not be unduly burdensome—because the "relative geographic distance between Georgia or Indiana and [Maryland], versus Utah, is not meaningfully different in the context of federal litigation"—underscores the absence of any compelling reason to distinguish Maryland from Utah on grounds of witness convenience.

It is Defendant's burden to demonstrate that considerations of nonparty witness convenience clearly favor a transfer. It has not identified—or even speculated about—a single

11

non-party witness who would be unwilling or unable to testify in this forum. *See Bd. of Trs. v. Sullivant Ave. Props., LLC,* 508 F. Supp. 2d 473, 477–78 (E.D. Va. 2007) (denying motion to transfer where defendant failed to "specifically identify" any nonparty witnesses or "offer any reasons why a [nonparty] witness may be unavailable" in view of the fact that "[w]itness convenience is often the most important factor in balancing for a potential § 1404(a) transfer").

      **c.  Factor 3: Defendant fails to identify inconvenience to the parties.**

Defendant also has not identified any legitimate reason to disturb Plaintiff's choice of forum on account of "convenience of the parties"—a consideration that, again, carries less weight than the preceding factors. To the extent it addresses "convenience of the parties" at all, Defendant's motion simply makes the point that Utah is a "presumptively convenient forum" for HS One. *See* Md. Dkt. 35, at 14–15. That may be so, but it has nothing to do with whether a transfer out of Maryland is warranted in these circumstances.

Defendant's motion, which devotes only two short paragraphs to "Factor 3: Party convenience," does not argue that holding trial in Maryland would be inconvenient—or that it would be any more inconvenient than holding trial in Utah. It merely asserts that Defendant would prefer to be in Utah while insisting that Plaintiff "cannot claim Maryland is the more convenient forum" on the ground that "Vyne [is] a Delaware corporation, with its principal place of business in [] Georgia." *Id.* at 14. The situs of Plaintiff's headquarters and principal place of business obviously has nothing to do with the comparative convenience of holding a trial in Maryland versus Utah. Such tangential arguments add virtually nothing to a Section 1404(a) transfer request.

Finally, although Defendant has suggested in other portions of its brief that Utah would be a more convenient forum because certain potential sources of proof—such as "technical documents, source code artifacts, telemetry and other logs, security analyses, Dentrix component binaries, and HSOne's internal investigative materials" are "maintained by Utah teams," *id.*—

12

Defendant ignores abundant case law holding that "location of documents and sources of proof is entitled to little weight because with the advent of modern technology, the physical location of proof is less of a barrier to gaining access to proof for litigation." *Menk v. MITRE Corp.,* 713 F. Supp. 3d 113, 138–39 (D. Md. 2024) (internal quotation marks and citation omitted); *see also Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 271 (D.D.C. 2011) (explaining that "[w]ith respect to the location of documents, in this digital age of easy and instantaneous electronic transfer of data, the Court does not find that the ease of access to sources of proof factor carries any weight in the transfer analysis," especially where "both sides are sophisticated litigants and have the necessary resources to manage and exchange documents electronically") (internal quotation marks and citation omitted). That Utah-based personnel work on such documents has no bearing on their availability in one forum or another; they will inevitably have to be produced to Vyne regardless of where this case is tried. Defendant's emphasis on supposed inconvenience to Utah-based party-employees is unavailing both because the software and coding personnel primarily responsible for the electronic transmission functions about which Defendant complains are not located in Utah, 2d. Suppl. Roberts Decl. ¶ 13, and because it is black-letter law that "[t]ransfer is inappropriate when the result merely serves to shift the balance of inconvenience from one party's witnesses to the other's." *See Bd. of Trs. v. Sullivant Ave. Props.,* 508 F. Supp. 2d at 478.

    **d. Factor 4: Defendant's "interest of justice" arguments are conclusory.**

The only discernible "interest of justice" arguments that Defendant advances with reference to the particulars of this case are that a transfer would "serve[] Utah's interest in vindicating the rights of its companies, citizens, and laws" and would serve judicial efficiency by permitting the "District of Utah to efficiently resolve both Vyne's TRO along with HSOne's, . . . [as] the District of Utah has essentially paused the TRO proceedings." Md. Dkt. 35, at 15.

Defendant's argument that transfer is warranted to vindicate generalized interests of its home state is nothing more than a bid to engage in forum shopping. Taken to its logical conclusion, Defendant's argument proposes that Section 1404(a) serve as a safe harbor for corporate defendants to choose their home forum. Section 1404(a) is intended to promote trial convenience and the interests of justice, and the Supreme Court has made perfectly clear that Section 1404(a) should not frustrate a plaintiff's choice of forum absent strong countervailing interests. *See generally Van Dusen*, 376 U.S. at 634 n.30 (noting Section 1404(a)'s continuity with the family of venue rules and statutes supporting plaintiffs' "choice of courts"). Allowing Defendant to override that choice simply because it prefers its home forum would frustrate the very purpose of the statute and reward strategic forum manipulation.

Next, Defendant's judicial efficiency argument is wrong (given that the statute is about trial convenience rather than preliminary relief) and backwards. At this point, this Court is slated to consider both parties' motions for injunctive relief—and scheduled argument on November 12 to do so. And the Court already dedicated substantial time to reviewing the parties' papers and heard two hours of oral argument on Plaintiff's motion. So Defendant's argument runs the wrong way. Regardless, the reason that "the District of Utah has essentially paused the TRO proceedings," as Defendant puts it, is that the Defendant is trying to circumvent the first-filed rule with wasteful and duplicative litigation. Far from promoting judicial efficiency, a transfer at this stage would reward Defendant's duplicative filings and forum manipulation, potentially delaying the adjudication of equitable relief that is critical to preserving the parties' rights and addressing claims of irreparable injury. This is the exact problem that the first-to-file rule is meant to resolve, and why the District of Utah slammed the brakes on Defendant's duplicative action there to allow

it to proceed here. Judicial economy will be served by respecting the first-filed case and allowing it to proceed in the forum where the dispute was first brought.

To the extent Defendants wished to raise free-floating fairness concerns about being haled into court in Maryland, they were free to challenge personal jurisdiction as inconsistent with the traditional notions of fair play and substantial justice. But it is obvious why they have not done so in their motion to dismiss. The parties—and the course of dealing that gives rise to this dispute—have obvious and substantial ties to Maryland, in no small part because of the direct and substantial harm that Defendant has visited on nearly two hundred Maryland dental practices.

## CONCLUSION

Because the balance of factors does not weigh "strongly in favor of the defendant," Plaintiff's choice of forum should not be disturbed. *Collins*, 748 F.2d at 921. For the foregoing reasons, Defendant's motion to transfer should be DENIED.

Respectfully submitted,

    */s/ K. Nichole Nesbitt*
K. Nichole Nesbitt (Bar No. 26137)
Derek M. Stikeleather (Bar No. 27815)
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4026
knn@gdldlaw.com
dstikeleather@gdldlaw.com
-----------------------------------------------------------
Michael Shuster (admission motion forthcoming)
Vincent Levy (admission motion forthcoming)
Daniel Fahrenthold (admission motion forthcoming)
Torrell Mills (admission motion forthcoming)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com
**Attorneys for Plaintiff Vyne Dental**

15