**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A
VYNE DENTAL,

<i>Plaintiff</i>,

-against-

HENRY SCHEIN ONE, LLC,

<i>Defendant</i>.

Case No. 1:25-cv-03246-MJM

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151

GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4026

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    A.   The Parties Cooperated Without Incident Through Early 2025 ................................... 3

    B.   HS One Begins Targeting Vyne's Products with Claims of "Security Vulnerabilities" 3

    C.   HS One Distributes a Virus to Disable Vyne Programs Directly .................................. 4

    D.   HS One's Hacking Claims Are Baseless ....................................................................... 4

ARGUMENT ........................................................................................................................... 5

   I.    HS One Seeks a Mandatory Injunction Requiring a Heightened Showing ..................... 5

   II.   HS One Is Not Likely to Succeed on the Merits of its Claims .......................................... 6

    A.   HS One's CFAA Claim Is Baseless ............................................................................... 6

    B.   HS One's DMCA Claim Will Fail ................................................................................ 11

    C.   HS One's Trespass to Chattels Claim Is Meritless ...................................................... 13

    D.   Vyne Is Not Unfairly Competing .................................................................................. 15

    E.   Vyne Is Not Wiretapping .............................................................................................. 16

   III.  HS One Has Not Even Attempted to Demonstrate Irreparable Harm ............................. 18

   IV.  The Balance of Equities Favors Vyne, and an Injunction Serves the Public Interest ....... 19

CONCLUSION ....................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*ACI Payments, Inc. v. Conservice, LLC*,
    2022 WL 622214 (D. Utah Mar. 3, 2022) ................................................................. 8

*Aggarao v. MOL Ship Mgmt. Co.*,
    675 F.3d 355, 378 (4th Cir. 2012) .......................................................................... 6

*Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*,
    770 F. Supp. 3d 822, 841–42 (D. Md. 2025) ......................................................... 10

*Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*,
    780 F.2d 589 (7th Cir. 1986) ................................................................................. 20

*Amoco Prod. Co. v. Gambell*,
    480 U.S. 531 (1987) ............................................................................................... 19

*Blumofe v. Pharmatrak, Inc. (In re Pharmatrak, Inc. Privacy Litig.)*,
    329 F.3d 9 (1st Cir. 2003) ...................................................................................... 16

*Brightview Grp., LP v. Teeters*,
    441 F. Supp. 3d 115 (D. Md. 2020) ......................................................................... 5

*Chambers v. Amazon.com, Inc.*,
    632 F. App'x 742, 744 (4th Cir. 2015) ............................................................. 11, 12

*DISH Network LLC v. Singh*,
    2015 WL 1827444 (M.D. Fla. Apr. 21, 2015) ....................................................... 16

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024) ................................................................... 18

*EarthCam, Inc. v. OxBlue Corp.*,
    49 F. Supp. 3d 1210 (N.D. Ga. 2014) ...................................................................... 9

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ................................................................................. 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
    499 U.S. 340, 345 (1991) ....................................................................................... 12

*Frazier v. Prince George's Cnty.*,
    86 F.4th 537 (4th Cir. 2023) .................................................................................. 18

*Icon Health & Fitness, Inc. v. ConsumerAffairs.com*,

    2018 WL 1183372 (D. Utah Mar. 6, 2018) ............................................................ 15

*In re Capital One Fin. Corp., Affiliate Marketing Litigation*,

    2025 WL 1570973 (E.D. Va. June 2, 2025) ............................................................. 8

*Intel Corp. v. Hamidi*,

    30 Cal.4th 1342 (2003) .......................................................................................... 15

*Los Angeles v. Lyons*,

    461 U.S. 95 (1983)................................................................................................. 19

*LVRC Holdings LLC v. Brekka*,

    581 F.3d 1127 (9th Cir. 2009) ....................................................................... 7, 9, 10

*MDY Indus., LLC v. Blizzard Ent., Inc.*,

    629 F.3d 928, 942 (9th Cir. 2010) ........................................................................ 11

*Nassi v. Hatsis*,

    525 P.3d 117 (Utah Ct. App. 2023) ................................................................. 13, 14

*Pashby v. Delia*,

    709 F.3d 307, 320–21 (4th Cir. 2013) .................................................................... 6

*Phreesia, Inc. v. Certify Glob., Inc.*,

    2022 WL 911207 (D. Md. Mar. 29, 2022)............................................................. 8

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,

    131 F.4th 205 (4th Cir. 2025) ........................................................................ 16, 20

*Real Time Medical Systems, Inc. v. PointClickCare Technologies, Inc.*,

    2024 WL 3569493 (D. Md. Jul. 29, 2024).......................................................... 21

*Register.com, Inc. v. Verio, Inc.*,

    356 F.3d 393 (2d Cir. 2004).................................................................................. 14

*Scotts Co. v. United Indus. Corp.*,

    315 F.3d 264 (4th Cir. 2002) ................................................................................ 20

*SecureInfo Corp. v. Telos Corp.*,

    387 F. Supp. 2d 593 (E.D. Va. 2005) .................................................................... 8

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*,

    421 F.3d 1307, 1318 (Fed. Cir. 2005)................................................................... 11

*Theofel v. Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2004) ................................................................. 7

*Thrifty-Tel, Inc. v. Bezenek*,
  46 Call.App.4th 1559 (1996) ................................................................. 14

*Total Quality Sys., Inc. v. Universal Synaptics Corp.*,
  2024 WL 2391163 (D. Utah May 23, 2024) ........................................ 15

*United States v. Nosal*,
  676 F.3d 854 (9th Cir. 2012) ................................................................. 11

*United States v. Westvaco Corp.*,
  2015 WL 10323214 (D. Md. Feb. 26, 2015) ........................................ 21

*Van Buren v. United States*,
  593 U.S. 374 (2021) ........................................................................... 9, 11

*Vox Marketing Grp. v. Prodigy Promos*,
  556 F. Supp. 3d 1280 (D. Utah 2021) ................................................... 13

*WEC Carolina Energy Sols. LLC v. Miller*,
  687 F.3d 199 (4th Cir. 2012) ............................................................ 6, 11

*Wetzel v. Edwards*,
  635 F.2d 283, 286 (4th Cir. 1980) ........................................................... 6

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
  2024 WL 5190365 (N.D. Cal. Dec. 20, 2024) ........................................ 8

*Williams v. Affinion Grp., LLC*,
  889 F.3d 116 (2d Cir. 2018) ............................................................ 17, 18

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ......................................................................... 5, 18, 19

## Statutes

18 U.S.C. § 1030(a)(2)(C) ......................................................................... 9

18 U.S.C. § 2511(2)(d) ............................................................................. 17

Utah Code § 13-5a-102(3) ......................................................................... 15

## Other Authorities

21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT
  Certification Program, 85 Fed. Reg. 25642, 25790–91 (May 1, 2020) ............................ 13, 21

Black's Law Dictionary (12th ed. 2024)........................................................................................ 13

## INTRODUCTION

HS One's claims under the Computer Fraud and Abuse Act (CFAA), the Digital Millennium Copyright Act (DMCA), the Electronic Communications Privacy Act (ECPA), and Utah law[1] are plainly deficient on their face. They rely on theories that have no basis in the relevant statutes or case law, including, most centrally, the idea that a software company like HS One is the ultimate arbiter of what its customers can do on their own computers, and that any deviation from these instructions undertaken by a competing software publisher with the consent of the computer owner is punishable by federal criminal law. This is not the law. And HS One's unsubstantiated claims of "hacking" and "malicious attacks" are just cover for its unlawful effort to tortiously steal Vyne's customers.

The premise of HS One's claims is its apparent belief that it is entitled to run whatever programs it pleases on its customers' own computers, and to dictate how those customers work with its competitors, but that when Vyne takes action with the consent of those same customers to access patient data on their own computer, that is somehow "hacking." HS One openly admits that it carries out invasive telemetry on its customers' computers in order to monitor their system activity and collect information on how they use Vyne's competing products. HS One never explains when or how its customers consented to that activity. And it is even less clear why, when Vyne takes action on the computers of its customers with the consent of those customers, that is "hacking" or "trespassing." The law bars unauthorized access, but there was nothing unauthorized here. HS One's spurious claims only make clearer how HS One's course of conduct this year amounts to unfair competition and tortious interference with contract.

---

[1] Vyne does not concede that Utah law applies to HS One's claims and respectfully reserves the right to address the applicable law at a later stage.

Even if HS One's legal theories had any merit, HS One's motion for preliminary relief fails out of the gate because it has not even attempted to demonstrate that it will suffer irreparable harm in the absence of an injunction. As it did in opposing Vyne's motion for a preliminary injunction and before this Court in the October 23, 2025 hearing, HS One offers vague allusions to cybersecurity risks writ large as a basis for its measures seeking to disrupt a status quo that has prevailed between the parties for years—all without incident. It identifies no instance of any security breach on the computers of its customers, let alone any breach or harm to itself.

Nor does the balance of the equities or the public interest favor HS One. Congress and the federal government were well aware that companies like HS One could try to profit by restricting the flow of the patient health data that medical providers entrust to them. The Cures Act squarely prohibits it. And as the Office of the National Coordinator for Health Information Technology (ONC) has explained, the information-blocking provision of the Cures Act specifically prohibits companies like HS One from creating unjustified "security measures" that would either block the flow of electronic health information or force counterparties to violate the Digital Millennium Copyright Act—exactly what HS One claims (inaccurately) to be doing here. But even setting aside the Cures Act, the equities cannot favor an injunction when HS One has identified zero harm to itself, while HS One's own conduct has already caused customer losses and other forms of irreparable harm to Vyne. HS One's motion should be denied.

## BACKGROUND

The background of the parties' dispute leading up to Vyne's filing of its complaint in Maryland is set out in detail in Vyne's Motion for a Temporary Restraining Order and Preliminary Injunction, Dkt. 6-1, and in Vyne's Opposition to HS One's Motion to Transfer, Dkt. 51. Vyne emphasizes here a few key points for purposes of this motion.

2

### A.  The Parties Cooperated Without Incident Through Early 2025

It is not meaningfully disputed that, before March 2025, Vyne and HS One cooperated peaceably, and dental practices that were mutual customers of Vyne and HS One could use each company's respective products without incident.  Roberts Decl., Dkt. 6-2, ¶¶ 3, 6–7, 10–13.  For many years, Vyne's Trellis program interfaced with HS One's Dentrix using a printer driver, which allowed dental practices to capture their data in Dentrix and transmit it to Vyne in a simple and secure manner.  Nix Decl., Dkt. 6-3, ¶¶ 3–10.  HS One uses the same functionality in its own claim-submission service, EDS, and uses a similar print driver for its "Send to Dentrix Document Center" functionality in Dentrix.  *Id.* ¶ 6.  Some Vyne programs also offered a limited read/write functionality that interfaced with Dentrix, allowing customers to, for example, offer a Vyne-based patient scheduling service which would transmit patient scheduling information to those customers' Dentrix platforms.  Second Suppl. Nix Decl., ¶¶ 5–8.  HS One did not meaningfully object to Vyne's use of either of these functionalities.

### B.  HS One Begins Targeting Vyne's Products with Claims of "Security Vulnerabilities"

Beginning in early 2025, HS One's posture towards Vyne changed.  In March 2025, HS One began spreading misinformation about Vyne, informing dental practices, dental service organizations, and other healthcare providers that HS One would be releasing updates to Dentrix that would break its compatibility with Vyne Trellis.  Roberts Decl., Dkt. 6-2, ¶ 15.  It began to falsely assert, among other things, that there were "security issues" with Vyne's products.  *Id.*  Shortly thereafter, in April 2025, HS One distributed a beta update to its Dentrix program that included Vyne's printer driver on a list of supposedly "hostile printers."  Nix Decl., Dkt. 6-3, ¶ 12.  This update broke Vyne's printer-driver functionality on a number of its customers' systems, leaving them unable to use Vyne's (or in some cases, any other program's) printer driver to print

claims data from Dentrix.  *Id.* ¶¶ 12–13, 15.  In addition, HS One apparently installed an invasive

telemetry program, which allowed HS One, through Dentrix, to monitor the activities on HS One's

customers' systems.  *Id.* ¶¶ 13–14.  This too is not disputed.

### C.  HS One Distributes a Virus to Disable Vyne Programs Directly

In September 2025, in the midst of CEO-to-CEO negotiations on an API, HS One deployed

a Dentrix update to several hundred of its customers that trawled their computer systems like a

virus, searching for and disabling any Windows services that were signed with Vyne certificates.

*Id.* ¶¶ 16–19; Roberts Decl., Dkt. 6-2, ¶¶ 46–49.  Several hundred Vyne customers were affected,

including at least eleven in the State of Maryland.  Suppl. Roberts Decl., Dkt. 40-1, ¶¶ 19–20.

Many of these customers cannot access Vyne's claims-submission utility, and others have had

their access to Vyne software restored only by manual intervention by Vyne staff.  Nix Decl., Dkt.

6-3, ¶ 19.  Vyne has also suffered a loss of customers, and a rapid decline in other customers' use

of Vyne Trellis to submit claims.  Suppl. Roberts Decl., Dkt. 40-1, ¶ 22.  On top of that, Vyne has

fielded concerned outreach from hundreds of its customers in the past weeks, showing the depth

of the reputational injury caused by HS One's behavior.  *Id.* ¶ 21.

### D.  HS One's Hacking Claims Are Baseless

Before HS One brought the claims underlying this motion, it advanced those same claims

in the District of Utah.  After that filing, Vyne CTO James Nix extensively addressed HS One's

claims of hacking in a Supplemental Declaration submitted on October 21, 2025.  *See* Suppl. Nix

Decl., Dkt. 40-5.  He submits a Second Supplemental Declaration alongside this opposition.[2]

---

[2] Although it is not relevant to this motion, after further investigation of HS One's claims,
Mr. Nix corrects his prior declaration with respect to Vyne's interaction with any HS One DLL
files.  *See* Second Suppl. Nix Decl., ¶ 12; Suppl. Nix Decl., Dkt. 40-5, ¶¶ 9, 31.  As Mr. Nix now
clarifies, Vyne does not call any HS One DLL file as was previously represented.

Mr. Nix explains that HS One's allegations of hacking are factually baseless. Suppl. Nix Decl., Dkt. 40-5, ¶¶ 5–30. For example, HS One appears to describe Vyne's use of a mundane print driver as "Code injection for mass data export" and the "inject[ion] of malicious code." *Id.* ¶¶ 6–7. As to claims of the unlawful "interception" of communications by Vyne, HS One appears to be referring to a limited workaround Vyne recommended to some customers who lost access to Vyne claims-submission functionality, allowing their customers to use a Dentrix settings window to send data to Vyne. *Id.* ¶¶ 11–20. These customers implemented that work-around themselves, without any "coding" or automation by Vyne. *Id.* ¶ 19. Mr. Nix refutes several other claims that appear to have no basis at all, including HS One's allegations that Vyne "hijacks application binaries," "rebuild[s] Dentrix help components with embedded secrets," or patching of Dentrix DLL files. *Id.* ¶¶ 21–27.

**ARGUMENT**

To obtain a preliminary injunction, the movant must demonstrate that: "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *Id.* "The movant must establish all four elements in order to prevail." *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 128 (D. Md. 2020); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). HS One has failed to make this showing.

## I.     HS One Seeks a Mandatory Injunction Requiring a Heightened Showing

It is undisputed that HS One and Vyne cooperated without incident, including by using the printer driver, for years before 2025. Roberts Decl., Dkt. 6-2, ¶¶ 3, 6–7, 10–13. The earliest contested conduct in this lawsuit occurred in early 2025, when HS One started to target Vyne with misrepresentations shortly after introducing a competing claims-submission product, before distributing updates to its system that would disable Vyne programs, as well as what it has termed

5

telemetry to monitor its own clients' computers (apparently without their consent). *Id.* ¶ 15. This is the date of the "last uncontested status between the parties which preceded the controversy." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012) (citation omitted).

HS One's requested injunction would depart significantly from that status quo, prohibiting Vyne from using the same software functions it has relied upon for decades. And it would impose a slew of affirmative obligations, including to "cooperate with HS One in implementing its security updates," and giving HS One a "sworn certificate of compliance." Mot. 26. The injunction HS One seeks is unquestionably mandatory, and thus heavily disfavored. *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013). More than that, HS One's injunction would award it the final result it seeks—an injunction eliminating Vyne's ability to market its software to customers who use Dentrix, because the injunction sought by HS One is apparently designed to cement HS One's effort to block access to patient data stored on Dentrix software. HS One's motion should not be used as a means to "secure a piecemeal trial." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

## II.    HS One Is Not Likely to Succeed on the Merits of its Claims

HS One's motion makes little effort to demonstrate a likelihood of success on the merits of each of its claims—and as to some claims it cites neither evidence nor case law. This is not enough for HS One to carry its burden on a preliminary injunction.

### A.  HS One's CFAA Claim Is Baseless

The Computer Fraud and Abuse Act "remains primarily a criminal statute designed to combat hacking." *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 201 (4th Cir. 2012). It was "originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to

'access and control high technology processes vital to our everyday lives.'" *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130–31 (9th Cir. 2009). The statute accomplishes this purpose by "prohibit[ing] a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *Id.*

HS One's spurious accusations, even accepted as true, fail to state a claim as a matter of law. That is because HS One's theory of CFAA liability is based on Vyne's access to "HSOne's software" on "computers at HSOne's customers' premises," which Vyne supposedly accesses "without authorization." Mot. 15. In HS One's telling, Vyne's activity on its own customers' computers breaches the CFAA because HS One "employs technical gates" in "Dentrix systems installed on customers' premises," and Vyne "breaks through those gates." *Id.* But as HS One admits, "the computers at issue are at HSOne and Vyne's shared customers' dentist offices." *Id.* 17n.5. They do not belong to HS One. This is fatal to HS One's claim. The CFAA protects computers, not software, and does not give a software company the authority, on penalty of criminal law, to dictate how third parties or users may access computer systems it does not own.[3]

---

[3] HS One asserts that "'any person who suffers damage or loss by reason of a violation' of the CFAA can bring a cause of action," relying on the Ninth Circuit's decision in *Theofel v. Farey-Jones*. Mot. 17n.5 (quoting *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004)). This does not save HS One's claim. In *Theofel*, the Ninth Circuit explained that the CFAA's civil remedy extends broadly, allowing any person injured by the unauthorized access to a computer to bring a claim. 359 F.3d at 1078. But what injuries are cognizable under the CFAA is a separate question from whether the computers at issue were accessed without authorization. The plaintiff must prove that the *owner* of the computer did not authorize the defendant's access to it. In *Theofel*, this required extensive discussion of whether the owner of the relevant computer system—an internet service provider called NetGate—had consented to the defendants' access. *Id.* at 1072–74, 1078. The broad remedial provision in the CFAA does not, as HS One suggests, mean that *HS One* has authority to control which entities can access other people's computers.

It is indeed clear from HS One's own case law that the CFAA enforces only the boundaries set by the computer owners, here the dentists.  In *Facebook*, for example, Facebook sued to enforce its own restrictions on its own systems—whether Facebook users consented to the defendant's conduct was irrelevant because they were not the owners of the relevant computers.  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1068 (9th Cir. 2016).  The same was true in *WhatsApp*, where the court examined whether defendants' use of WhatsApp's systems was consistent with WhatsApp's authorization.  *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 2024 WL 5190365, at *6–7 (N.D. Cal. Dec. 20, 2024).  Likewise, in *Phreesia*, the CFAA claim centered on defendants' unauthorized access to information stored on systems "under Phreesia's control."  *Phreesia, Inc. v. Certify Glob., Inc.*, 2022 WL 911207, at *2 (D. Md. Mar. 29, 2022); *accord ACI Payments, Inc. v. Conserve, LLC*, 2022 WL 622214, at *1–2 (D. Utah Mar. 3, 2022) (unauthorized access to plaintiff's website).  In each case, the CFAA claim was based on whether the defendant knowingly accessed a protected computer in contravention of *that computer owner's* authorization.

HS One does not cite a single case that endorses its theory that "authorization" within the meaning of the CFAA depends on what a software company operating a program on a third party's computer system allows.  And in cases involving a system that does not belong to the plaintiff, the question was still whether the owner of the computer authorized the use in question.  *In re Capital One Fin. Corp., Affiliate Marketing Litigation*, 2025 WL 1570973 (E.D. Va. June 2, 2025) (cited at Mot. 16; examining whether "*consumers* authorized Capital One to step in their shoes to modify the tracking codes" (emphasis added)); *see also SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 609 (E.D. Va. 2005) (dismissing CFAA claim because of customer consent and rejecting view that "every breach of a computer software license agreement allows the licensing party to recover damages against a non-party to the software license under the CFAA"); *EarthCam, Inc. v.*

*OxBlue Corp.*, 49 F. Supp. 3d 1210, 1231–32 (N.D. Ga. 2014), *aff'd*, 703 F. App'x 803 (11th Cir. 2017).

Here, of course, Vyne's customers authorized Vyne to access their computer systems, and authorized Vyne to access patient data stored on those systems (including on Dentrix). Vyne's agreements with all its customers indeed expressly give Vyne the necessary permissions to handle their patient health information, including when that information is stored within third-party practice-management programs like Dentrix. Roberts Decl., Dkt. 6-2, ¶¶ 8–9. Under those contracts, the customers agree that Vyne steps into the shoes of its customers, including to interface with Dentrix to transmit customer health information that belongs to them. Suppl. Nix Decl., Dkt. 40-5, ¶¶ 5–9. And, as Vyne has explained, Vyne's customers themselves have also manually changed settings to enable the transfer of data to Vyne Trellis; HS One calls these changes (made by the customers) malicious "hacking." *Id.* ¶¶ 12–16.

Because Vyne's programs interact with Dentrix pursuant to authorization from Vyne's customers who own the relevant computers, HS One cannot show that Vyne violated the CFAA by acting either "without authorization" or by "exceed[ing] authorized access." 18 U.S.C. § 1030(a)(2)(C). As the Supreme Court has explained, the CFAA's "'without authorization' clause" refers to "outside hackers—those who 'access a computer without any permission at all.'" *Van Buren v. United States*, 593 U.S. 374, 389 (2021) (quoting *Brekka*, 581 F.3d at 1133). The defendant must have "no rights, limited or otherwise, to access the computer in question." *Brekka*, 581 F.3d at 1133. But Vyne plainly has authority. *E.g.*, Roberts Decl., Dkt. 6-2, ¶¶ 8–9.

As to excess of authority, HS One argues Vyne exceeds the authority its customers grant it because "Vyne does not disclose to its customers all of its hacking conduct." Mot. 17. HS One has yet to explain what conduct it believes is occurring without Vyne's customers' knowledge.

Indeed, as explained above, HS One's account of Vyne's so-called "hacking" is factually wrong. *Supra* 4–5. Vyne does not "escalate[] administrative privileges" or "circumvent patching and security upgrades." Mot. 15. HS One is not likely to succeed on the merits of its CFAA claim for that reason alone, because HS One has failed to meet its burden of showing that what it calls "hacking" actually occurred. *Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*, 770 F. Supp. 3d 822, 841–42 (D. Md. 2025) (movant "bears the burden" of "establishing that each of the[] [*Winter*] factors supports granting the injunction").

Again, some of the conduct HS One claims underlies its hacking claims was done by those customers themselves. Suppl. Nix Decl., Dkt. 40-5, ¶¶ 5–9. Meanwhile, when Vyne programs send information back to practices' Dentrix databases, it is pursuant to specific authorization by Vyne clients—in most cases, the customers themselves manually trigger the data-exchange transaction. Second Suppl. Nix Decl. ¶¶ 5–7.

In sum, HS One's claims have nothing to do with "hackers who accessed computers to steal information or to disrupt or destroy computer functionality," *LVRC Holdings LLC*, 581 F.3d at 1130–31; this is about dentists wishing to access their own patients' information, which belongs to their patients and the practices themselves (not HS One), and which are stored on dentists' own computers.

It is also worth reflecting on the breadth of the liability the CFAA would impose under HS One's perverse theory. If HS One's position were correct, any software company could take the position that a particular folder or file on its customers' computers is off-limits—whether the owner of the computer agreed or not—and apparently any other user or program that interacted with that folder or file, including simply by reading its contents, would expose its operator to *criminal liability*. This theory has no relation to the statute. The Supreme Court has rejected an

interpretation that encompasses it, as have other courts. *Van Buren*, 593 U.S. at 392 (refusing to interpret the CFAA in a way that "would attach criminal penalties to a breathtaking amount of commonplace computer activity"); *United States v. Nosal*, 676 F.3d 854, 860–61 (9th Cir. 2012) ("Basing criminal liability on violations of private computer use policies can transform whole categories of otherwise innocuous behavior into federal crimes simply because a computer is involved.").[4]

### B.  HS One's DMCA Claim Will Fail

The basis for HS One's DMCA Claim is unclear, although it seems HS One objects to Vyne's use of Vyne's customers' own administrative credentials to receive or send patient health data that belongs to them.  Mot. 18.[5]  However framed, that is not a violation of the DMCA.

"Through the DMCA, 'Congress sought to mitigate the problems presented by copyright enforcement in the digital age.'"  *Chambers v. Amazon.com, Inc.*, 632 F. App'x 742, 744 (4th Cir. 2015) (quoting *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 942 (9th Cir. 2010)).  "'The DMCA contains three provisions directed at the circumvention of copyright owners' technological measures' that are either designed to control access to copyrighted works or to protect a copyright owner's rights."  *Id.* (quotation omitted).  "A copyright owner alleging a violation of [the DMCA] must prove that the circumvention of the technological measure either infringes or facilitates infringing a right protected by the Copyright Act."  *Id.* (alteration in original) (quoting *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1318 (Fed. Cir. 2005)).

---

[4] To the extent there is any basis to interpret the CFAA to extend as far as HS One argues, such an interpretation must be rejected under the rule of lenity.  *WEC Carolina*, 687 F.3d at 204 (interpreting CFAA "strictly" in "the interest of providing fair warning 'of what the law intends to do if a certain line is passed'").

[5] HS One also claims Vyne violates the DMCA by "runtime patching of security flags in DtxHelp.dll."  Mot. 18.  Vyne denies that it patches any HS One DLL file in this way.  Suppl. Nix Decl., Dkt. 40-5, ¶¶ 25–30.

HS One fails to make a basic showing under the DMCA. *First*, HS One does not identify a "'technological measure[]'" that is "either designed to control access to copyrighted works or to protect a copyright owner's rights." *Id.* HS One appears to object to Vyne's obtaining or use of its own customers' credentials for accessing Dentrix. It does not explain how (let alone does it show that) those credentials control access to, or protect, any copyrighted work. HS One says its code is copyrightable, but it does not assert that its own customers' credentials are designed to control access to that code. And the credentials are not so designed. They control dentists' access to *patient health data*. That data belongs to the dentists and their patients (so it is not HS One's), and moreover it is not subject to copyright protection. Patient data are "facts [that] are not copyrightable." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991).[6]

*Second*, HS One makes no effort to "prove that the [alleged] circumvention of the technological measure either infringes or facilitates infringing a right protected by the Copyright Act." *Chambers*, 632 F. App'x at 744. Again, HS One asserts precisely the opposite. It claims no copying by Vyne of the software code that it says is proprietary and subject to copyright protection, as there is no such copying. Mot. 18–19. It says instead that Vyne circumvents technological devices to obtain access to patient data. *Id.* Again, as that information is not copyrightable and does not even belong to HS One, there is no showing that the alleged circumvention was part of an effort to infringe "right[s] protected under the Copyright Act."

*Finally*, HS One cannot rely on the DMCA because the measures that Vyne allegedly sought to circumvent themselves violate federal law. When the ONC promulgated final rules

---

[6] Citing to the legislative history, HS One offers the quintessential example of circumvention under the DMCA: "the electronic equivalent of breaking into a locked room in order to obtain a copy of a book." Mot. 18. The failure of HS's claim is that there is no "book"—only patient data.

implementing the Cures Act's definitions, the ONC stated that entities subject to the Cures Act violate federal law when they "deploy technological measures that limit or restrict the ability to reverse engineer the functional aspects of technology in order to develop means for extracting and using [electronic health information] maintained in the technology." 21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. 25642, 25812–13 (May 1, 2020). The ONC specifically noted that "may include, for example, employing technological protection measures that, if circumvented, would trigger liability under the Digital Millennium Copyright Act or other laws." *Id.* at 25813. The Cures Act thus prohibited HS One from enacting measures to restrict access, so HS One cannot now complain about the Vyne's interaction with those measures—particularly as no violation of the DMCA was shown.

### C. HS One's Trespass to Chattels Claim Is Meritless

HS One next raises, in two paragraphs, a claim of trespass to chattels under Utah law. Mot. 19–20. Again, it is unclear how HS One intends to establish liability. HS One makes no effort to show that Utah would endorse its unsupported theory of trespass to a "software program" on the computers of others, much less recognize it as a basis for injunctive relief. *Vox Marketing Grp. v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1290 (D. Utah 2021) (in case addressing both CFAA and trespass to chattels claims, declining to exercise supplemental jurisdiction over trespass claim as it was "unclear . . . whether Utah even recognizes the tort of trespass to chattels").

Definitionally, "chattel" refers to a "physical object" or "tangible good," *see Chattel*, Black's Law Dictionary (12th ed. 2024), not an intangible item like a software program.

The only Utah case HS One cites relates to old clothes thrown out after they were left in a condominium storage unit. *Nassi v. Hatsis*, 525 P.3d 117, 119–20 (Utah Ct. App. 2023) (cited at

13

Mot. 19). That has nothing to do with software. And because the case treats trespass to chattels as coextensive with the tort of conversion, it is not clear whether it provides any meaningful guidance at all as to the content of a trespass-to-chattels claim under Utah law. *See id.* at 122 n.10.

Even accepting HS One's standard for trespass to chattels, the claim still fails because it requires *intentional* dispossession or intermeddling with *a chattel*. Mot. 19. The only physical item interfered with here were dentists' computers; the dentists consented, as noted above, and indeed they were the ones who sought access to their patient record. HS One also seems to complain about an instance of Vyne customers restoring functionality (after HS One interfered) by using URL settings in the HS One eTrans function, a solution that allegedly interfered with HS One's ability to distribute security updates. HS One cites no case where a court found that such an interference with a security update constituted the tort of trespass to chattels. There is no showing that this was an interference with a physical item, and to the extent this interfered with the distribution of security updates, it was also not intentional. Suppl. Nix Decl., Dkt. 40-5, ¶¶ 17–18. Nor is there need for injunctive relief: To the best of Vyne's knowledge, this method was not used by more than 50 customers, and is no longer available. *Id.* ¶¶ 15, 20.

None of the three cases HS One cites for the proposition that "trespass to chattels" applies "to the Internet context" involved Utah law, and each is more than 25 years old. Mot. 20n.8 (citing cases applying California and Ohio law). All dealt with the intentional spamming of a server or computer system, distinguishing them factually from this case. *See, e.g.*, *Thrifty-Tel, Inc. v. Bezenek*, 46 Call.App.4th 1559, 1566 & n.6 (1996) (concluding that the "electronic signals generated by the [defendants'] activities were sufficiently tangible to support a trespass cause of action"); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004).

14

Moreover, even jurisdictions that recognize a trespass claim similar to what HS One invokes here require that the movant show that "the intentional interference with the possession of personal property *has proximately caused injury*." *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1350–51 (2003). HS One has made no effort to show interference with "personal property," or to prove or quantify the extent of the injury it claims it suffered, or to explain why this injury is not compensable at law (if it exists at all), or to explain why an injunction is needed. *See* Mot. 19–20.

### D. Vyne Is Not Unfairly Competing

To prevail on its unfair-competition claim, HS One must demonstrate a likelihood of success on each of the several statutory factors. *See* Mot. 20 & n.9. HS One offers only conclusory statements on several statutory elements bereft of any citation to testimony or evidence, and it does not address other elements of the statute at all, including the requirement that Vyne have committed "the unlawful use of computing resources to intimidate or coerce others." Utah Code § 13-5a-102(3). HS One is not likely to succeed. *See Icon Health & Fitness, Inc. v. ConsumerAffairs.com*, 2018 WL 1183372, at *3–4 (D. Utah Mar. 6, 2018) (dismissing unfair competition claim; "[w]hile Plaintiff sets forth the statutory language, Plaintiff does not allege facts that could support its conclusory allegations"); *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 2024 WL 2391163, at *4 (D. Utah May 23, 2024) (dismissing malicious-cyber-activity unfair-competition claim when plaintiff failed to adequately allege every element of the malicious-cyber-activity subsection).

Although HS One's discussion of unfair competition is facially defective, it seems HS One is relying on its same theory of liability as for its CFAA claims. Mot. 20–21. But for the reasons explained above, this claim fails as well, as the CFAA does not protect software (only computers). Nor is there any showing that Vyne engaged in conduct that was "unlawful, unfair or fraudulent." Moreover, Vyne does not commit the acts HS One claims it does. Vyne does not, for example,

"impersonat[e] HSOne components."  Suppl. Nix Decl., Dkt. 40-5, at ¶¶ 21–30 (addressing HS One allegations).  Vyne has been forced to undertake significant technical efforts this year to counter HS One's measures to disable its printer-driver system, restore its customers' access to patient data, and ultimately to prevent HS One from disabling Vyne's software altogether.  Nix Decl., Dkt. 6-3, ¶¶ 11–19.  None of these measures are intended to gain a competitive advantage over HS One, let alone an unfair one.  They are intended to keep Vyne's customers' patient health data flowing to help them manage their businesses, consistent with Vyne's practice for decades.  Roberts Decl., Dkt. 6-2, ¶¶ 3–5, 51–55.  In the meantime, Vyne has repeatedly sought to reach a negotiated solution with HS One that would allow the parties to resolve their technical disagreements and move forward under an API agreement.  *Id.* ¶¶ 32–50.  But HS One refuses. *Id.*

Moreover, Vyne's practices are fully consistent with federal law and policy, including the Cures Act which, again, "prevent[s] companies from engaging in 'information blocking' of electronic health information" so as to "support the access, exchange, and use" of that information. *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 230–31 (4th Cir. 2025).

### E.  Vyne Is Not Wiretapping

Lastly, HS One claims Vyne is engaging in wiretapping in violation of the Electronic Communications Privacy Act.  Mot. 21–22.  To establish a claim for violation of the ECPA, HS One must prove that Vyne "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *DISH Network LLC v. Singh*, 2015 WL 1827444, at *3 (M.D. Fla. Apr. 21, 2015) (quoting *Blumofe v. Pharmatrak, Inc. (In re Pharmatrak, Inc. Privacy Litig.)*, 329 F.3d 9, 18 (1st Cir. 2003)).  HS One fails to establish facts substantiating these elements.

16

As Mr. Nix explained, the traffic "interception" to which HS One appears to be objecting was not "interception" at all.  Vyne's customers chose to use a function available in Dentrix's settings to direct the submission of patient data to Vyne's servers instead of to HS One.  Suppl. Nix. Decl. ¶¶ 11–20.  Vyne did not resort to "hacking" or other improper methods to re-route communications.  *Id.*  Rather, Vyne and its customers were the intended recipients within the meaning of the ECPA—Vyne's customers intended to, and did, send the relevant information (which belongs to them) on to Vyne.  *Id.* ¶ 16.  It was not a "man-in-the-middle attack," as HS One suggests, because Vyne did not intercept an unauthorized communication between others.  *Id.*

Even if Vyne's reception of patient data its customers intentionally sent to Vyne could constitute "interception," the ECPA provides a "safe harbor for interceptions made with prior consent."  *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 121 (2d Cir. 2018) (citing 18 U.S.C. § 2511(2)(d)).  Under the safe harbor, it "shall not be unlawful" to "intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception."  18 U.S.C. § 2511(2)(d).

HS One cannot overcome this safe-harbor provision, nor does it try to.  Vyne's customers were parties to the communication, and they fully consented to Vyne's reception of the information.  Vyne's customers did so when they used the software to route patient information to Vyne (so that they can make insurance claims).  They also did so more generally in their agreements with Vyne underlying their use of Vyne Trellis and other Vyne programs.  Roberts Decl., Dkt. 6-2, ¶ 8 ("Pursuant to their contracts with Vyne, Vyne customers expressly authorize Vyne and grant Vyne full agency on their behalf to request, access, use, and export patient information, billing records, scheduling data, and other data maintained in third-party systems

(including without limitation dental practice management systems) to facilitate Vyne's provision of services."); *see also Williams*, 889 F.3d at 121–22 (authorization of release of information to defendant by customers foreclosed ECPA claim); *Google*, 741 F. Supp. 3d at 842 (one-party consent defense to ECPA liability established because "[t]he alleged interception of private health information only occurs because the health care providers choose to install Google source code on their web properties," which "must mean the providers consented to the operation of Google source code").

## III.    HS One Has Not Even Attempted to Demonstrate Irreparable Harm

The "frequently reiterated standard" for preliminary injunctions requires movants "to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent" with "injunctive relief as an extraordinary remedy." *Id.*

HS One's motion does not even attempt to identify, much less substantiate, any actual harm that HS One is likely to suffer in the absence of injunctive relief. It does not cite a single piece of evidence in the record, and citations or not, the brief does not explain how HS One stands to suffer harm that would qualify as irreparable under the law. *See* Mot. 22–23. The motion should be denied on that basis alone. *See, e.g.*, *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 544 (4th Cir. 2023) (noting that "a preliminary injunction can be granted only if every factor" of the *Winter* test "is met," while "*denying* a preliminary injunction only takes the rejection of a single factor").

We note that at the TRO hearing on Vyne's motion, the Court pressed HS One to identify harm that HS One would suffer from an injunction requiring the parties to return to the 20-year status quo—when Vyne used the printer driver. Counsel for HS One spoke of "liv[ing] in a house with broken windows, busted doors," while "thousands of malicious hackers [] daily want to get

into that house."  Hearing Tr. ("Tr.") 46:24–50:6 (Oct. 23, 2025).  Counsel described "leav[ing] your door unlocked" with "some really expensive jewelry just within view of the window," vaguely referencing data breaches suffered by "others in the industry."  Tr. 57:19–60:13.  But that is not evidence, or even an example, of harm suffered by HS One.  Meanwhile, the only example of a security risk HS One has ever identified is what it calls the "PrintNightmare attack."  McDaniel Decl., Dkt. 46-2, ¶ 10 & nn.1–2.  PrintNightmare was an identified Windows system *vulnerability*—not an attack—in which it was determined that data was put at risk by a critical flaw in the Windows Print Spooler service.[7]  The vulnerability was identified *four years ago*, and it was patched within one week.[8]  How a security risk identified in 2021 and patched in one week could justify an injunction here based on disparate activity is never explained.

There has never been any claim or showing that a security breach actually affected Dentrix or any of its customers, still less one that caused or threatens to cause harm to HS One.  There is thus no "showing of a[] real or immediate threat that the [movant] will be wronged"; nor even the "speculative" suggestion "of future injury."  *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

## IV.    The Balance of Equities Favors Vyne, and an Injunction Serves the Public Interest

Courts must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)).  The process by which the court balances the equities before determining whether to issue an injunction "is intended to ensure that the district court 'chooses the course of action that will minimize the costs of being mistaken.'"  *Scotts Co. v.*

---

[7] *E.g.*, "Microsoft issues emergency Windows patch to fix critical 'PrintNightmare' vulnerability," The Verge (July 6, 2021), *available at* https://www.theverge.com/2021/7/6/22565868/microsoft-printnightmare-windows-print-spooler-service-emergency-patch-hotfix.

[8] *Id.*

*United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002) (quoting *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)).

HS One's motion is an invitation to the Court to issue a mandatory, potentially case-determinative injunction against Vyne on unsupported theories of law, often without citation to case support of any kind. As explained, HS One has not made a sufficient prima facie showing to justify an injunction on any basis. And HS One has not even attempted to demonstrate specific, concrete, and probable injuries it would suffer in the event this Court denies its motion.

Nor could it. Denying this injunction (and granting Vyne's) would merely preserve the status quo, where for twenty years Vyne customers were using a printer driver to access their patient information. It is much the same as the driver HS One itself uses in its own competing product. Nix Decl., Dkt. 6-3, ¶ 6. It is not surprising that HS One has failed to identify harm caused by Vyne's supposed misconduct when it does the same thing itself.

On the other side of the ledger, granting an injunction in favor of HS One would help HS One achieve its anticompetitive goals more effectively than it has been able to accomplish with its software attacks, which already have caused substantial reputational and other harms to Vyne, including customer losses. *See* Roberts Decl., Dkt. 6-2, ¶¶ 51–56; Suppl. Roberts Decl., Dkt. 40-1, ¶¶ 19–22. As the Fourth Circuit explained in *Real Time*, HS One has not shown any potential for irreparable harm that represents "such a grave risk so as to outweigh" the certainty that, under an injunction, Vyne would be deprived of its "ability to provide its valuable services." *Real Time*, 131 F.4th at 241.

The public interest also favors injunctive relief. HS One's injunction would be an obstacle to medical care for patients in dozens of dental practices in Maryland alone, and thousands more around the country. It would fail to uphold federal public policy as articulated by Congress in the

20

Cures Act. The public interest lies behind "ensuring that the policies of federal law are enforced and upheld," *United States v. Westvaco Corp.*, 2015 WL 10323214, at *9 (D. Md. 2015), and the "public likewise benefits from fostering access to medical records consistent with, and not in contravention of, the Cures Act." *Real Time*, 2024 WL 3569493, at *12. Again, the ONC has specifically noted that "employing technological protection measures that, if circumvented, would trigger liability under the Digital Millennium Copyright Act or other laws" breaches the information-blocking provision of the Cures Act. 85 Fed. Reg. at 25813.

## CONCLUSION

For the foregoing reasons, this Court should deny HS One's request for a temporary restraining order and preliminary injunction.


DATED:    October 30, 2025            HOLWELL SHUSTER & GOLDBERG LLP


By: ___*/s/ Vincent Levy*___
Michael Shuster
Vincent Levy
Daniel Fahrenthold
Torrell Mills
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com

*Attorneys for Plaintiff*
*National Electronic Attachment, Inc., d/b/a Vyne Dental*