IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>      Plaintiff and Counter-Defendant,<br><br>- against -<br><br>HENRY SCHEIN ONE, LLC,<br><br>      Defendant and Counter-Claimant. | Case No. 1:25-cv-03246-MJM |

**HENRY SCHEIN ONE, LLC'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE**

Defendant and Counter-Claimant Henry Schein One, LLC ("HSOne") provides its reply to Plaintiff and Counter-Defendant National Electronic Attachment, Inc.'s Opposition ("Vyne's Opp.") (ECF No. 51) in response to HSOne's motion to transfer this action to the United States District Court for the District of Utah ("Transfer Mot.") (ECF No. 35), and respectfully states as follows:

**I. INTRODUCTION**

Vyne's position boils down to a plea that the Court defer to its choice of forum. But the Fourth Circuit "ha[s] no sympathy with shopping around for forums."[1] Here, Vyne filed in Maryland for one reason: it likes a particular Fourth Circuit opinion. Yet Vyne's Opposition brief does not grapple with the well-recognized precept that the usual deference to a filer's forum choice falls away in forum shopping situations. Indeed, Vyne's Opposition brief to HSOne's transfer

---

[1] *Clayton v. Warlick*, 232 F.2d 699, 706 (4th Cir. 1956).

motion may be the first brief Vyne filed in this Court that does not cite to or mention *Real Time*,[2] a case Vyne references dozens of times throughout its other filings.

Vyne's Opposition is also silent on a separate factor critical to the deference analysis: anticipatory filing. This case was filed first in Maryland not only because Vyne likes a Fourth Circuit ruling here, but also because Vyne raced to Court knowing that HSOne was planning to imminently file in Utah. Vyne knew HSOne would file in Utah because HSOne told it so, as reflected in the Utah choice of venue for the parties' tolling agreement that HSOne suggested.[3] When HSOne's CEO communicated to Vyne's CEO in negotiations that HSOne would imminently sue if Vyne did not negotiate in good faith, Vyne sued here in Maryland just hours later. Vyne's own written admissions prove this—no further evidentiary inquiry is necessary.[4] Regardless of forum shopping, anticipatory filing on its own counsels against deference to Vyne's forum choice.

All of Vyne's attempts to defeat transfer fall short. First, Vyne relies on decades-old cases and a misreading of the venue statute to argue that transfer motions should happen closer to trial and not at the outset of cases. This is backwards. Courts in this district expect prompt transfers. Vyne's position also ignores the realities of modern litigation, where over 95% of cases do not go to trial, and the location of pre-trial litigation has a significant impact on convenience to parties and non-parties. In any event, trying this case in Utah would be more convenient for the same

---

[2] *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 213 (4th Cir. 2025).

[3] Vyne spends three pages arguing that the tolling agreement's forum selection clause should not be enforced. This is not what HSOne is trying to do. HSOne references the tolling agreement solely to make the point that Vyne knew HSOne was going to file in Utah, not Maryland, so Vyne raced to Maryland in order to file first. This is textbook anticipatory filing.

[4] Ex. A to Roberts Decl., Email from V. Levy (ECF No. 40-2).

reasons as pre-trial litigation would be more convenient there.

Vyne also posits that a small selection of Maryland customers who may have been impacted by the parties' interactions means this is an appropriate forum. But Vyne cannot overcome the fact that Utah is the nexus of this dispute. It is where HSOne is located and where Vyne's executive team is located. While neither party has offices in Maryland, both have dozens of people in Utah.[5] Maryland, in contrast, is at best incidental. Vyne's contention that roughly 2% of shared Maryland customers may have been impacted by the parties' dispute does not address the relevant inquiry: where did the dispute arise? The answer is not Maryland. It is Utah. Vyne's theory would mean that in cases where there is a nationwide customer set, every state is a convenient forum. This is not the law.

Vyne's argument that non-party witnesses matter most is yet another reason to transfer to Utah. Utah, not Maryland, is closer to a nationwide set of non-party customer witnesses.[6] The farthest dental office from Baltimore is thousands of miles more distant than the farthest dental office from Utah. All one needs to do is eyeball a map of the United States to see that essentially any dental office customer witness west of Missouri would have an easier time traveling to Utah than to Maryland. Thus Vyne's own theory about non-party witnesses supports transfer as well.

---

[5] HSOne has over 100 workers in Utah. Vyne admits that 45 of its 265 employees live in Utah, but tries to downplay this by arguing that its office space in Utah serves only as a temporary meeting space and fits fewer than ten people. The point is that dozens of Vyne employees, including its most senior executives who have submitted declarations in this Court, are in Utah. That these employees work from their homes in Utah rather than Vyne's Utah office is of no import. Vyne also does not respond to the fact that it is currently hiring a Chief of Staff to its CEO in Utah, who according to Vyne will drive operational work throughout the business.

[6] Vyne, in passing, accuses HSOne of simply wanting to litigate in its home forum. But had Vyne filed in Georgia or Indiana, where it has major offices central to its operations, perhaps HSOne would have a tougher time on its transfer motion. But Vyne did not do so, because that would run counter to its forum shopping and anticipatory filing strategy.

The interests of justice merit a transfer before this case proceeds any further in Maryland. The Court already denied Vyne's Temporary Restraining Order motion. It did so, in part, because Vyne could not demonstrate urgency at a level where days or even weeks matter to Vyne for purposes of the early injunctive relief analysis.[7] HSOne has long implemented measures to stop unauthorized access to its systems. Vyne will not be prejudiced by having its preliminary injunction hearing in Utah. As for HSOne, it filed its TRO and PI in Utah first. It has sought to have the motion heard at every opportunity. The court in Utah has expressed willingness to take up that motion as soon as this Court resolves the venue issues. Should this Court exercise its discretion to make a transfer determination this week, a hearing next week in Utah could still work.[8] Even if that hearing is set back a week or two, while an unfortunate result of Vyne's procedural moves, the net effect of transferring sooner rather than later will advance interests of justice. Even in *Real Time*, involving less complicated facts, the hearing took two days. Here the Court faces two injunction requests on discrete causes of action. The factual issues are complex, spanning novel inquiries into technical software security controls, encryption, data interception, database reading and writing.[9] Apart from the technology issues, the hearing will also cover

---

[7] Vyne has even requested pre-hearing discovery, a process that typically adds months, not weeks, of time to docket schedules prior to preliminary injunction proceedings.

[8] HSOne believes the papers alone support transfer. Should the Court prefer to hear argument, counsel for HSOne is available at the Court's convenience for a videoconference hearing as soon as tomorrow (Wednesday) morning. HSOne's lead counsel is presently in San Diego for other cases, but can make arrangements with colleagues for coverage and be in Baltimore for oral argument by Thursday morning if in-person argument would be helpful to the Court.

[9] To be clear, HSOne has the utmost respect for this Court, this District, and the city of Baltimore. There is no question that this Court can elegantly grapple with the complex issues in the case and it has already done so. HSOne only seeks to assert its right to transfer under the statute given Vyne's forum shopping, anticipatory filing, and the balance of convenience and interest of justice in this case.

4

months of commercial negotiations and disputes about regulatory posture. It would not be surprising if the hearing goes more than three days, through the end of next week, and the parties' and Court's schedule might then require a recess and resumption weeks later. Transfer to Utah before the hearing begins would consequently advance the interest of justice. Utah will also be a more convenient forum to enforce any injunction that may issue.

Because Vyne's race to this Court is not appropriate, and because Vyne is using its anticipatory forum shopping as cover to maintain access to HSOne's software systems without authorization, this Court would be well within its discretion to transfer the case to Utah at any time it chooses after this filing.

**II.    ARGUMENT**

**A.    Vyne's Opposition Does Not Overcome the Rationale for Transfer on Any of the Four § 1404(a) Factors.**

**1.    Factor One: Vyne Does Not Receive Deference Because of its Anticipatory Forum Shopping and Admitted Lack of Connection to Maryland.**

Vyne's Opposition assumes that by filing first, it receives deference to its choice of forum, but this is not so. The first factor in the § 1404(a) analysis goes to what weight—if any—is given to the plaintiff's choice of forum. Here Vyne should receive no deference because it forum shopped and raced to court knowing HSOne planned to imminently file in Utah. Further, Vyne does not properly address the issue that because Utah bears a closer connection to the dispute than Maryland, that independently reduces the deference afforded to Vyne as well.

**Forum shopping.** It is axiomatic that "the transfer provisions in the U.S. Code, which grew out of the common law doctrine of *forum non conveniens*, were in part intended to prevent forum shopping." *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 30 (D.D.C. 2013) (citation omitted). It is for this reason that the first-to-file rule "yields to the interests of justice,

5

and will not be applied when a court finds compelling circumstances supporting its abrogation . . . including bad faith, anticipatory suit, and forum shopping." *Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 435 (D. Md. 2018) (cleaned up) (citing *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F.Supp.2d 330 (D. Md. 2011) (citing *Neuralstem, Inc. v. StemCells, Inc.*, 573 F.Supp.2d 888, 901 (D. Md. 2008)).

Vyne's position is that because it had a choice of multiple forums (which could have been any of the 50 states under its theory), selecting Maryland does not constitute forum shopping. But Vyne did not select Maryland at random. Vyne does not dispute, as it cannot, that the reason it filed in Maryland rather than any of the other 49 states is solely due to the District of Maryland and Fourth Circuit's *Real Time* case. Vyne cites the case dozens of times in briefing and claims it supports Vyne's theories. Putting aside that it does not, the relevant takeaway here is that Vyne shopped for this forum. Vyne's reliance on the *Van Dusen v. Barrack* case is inapposite. There, the plaintiff ostensibly sued in their home forum: "Pennsylvania fiduciaries representing the estates of Pennsylvania decedents" sued in Pennsylvania. *Van Dusen v. Barrack*, 376 U.S. 612, 619 (1964).

**Anticipatory filing.** Vyne's Opposition conflates the practice of racing to court with the practice of forum-shopping. These are, however, distinct offenses. Vyne does not attempt to distinguish or rebut the holdings of *LWRC*, *Coastal Labs*, *Capitol Payment*, *Remington Arms*, *Samsung*, *First Nationwide*, or *Aetna* on this point (or the issue of forum shopping). Racing to court is disfavored because otherwise parties would be incentivized to engage in bad-faith negotiations and trickery in the context of dispute resolution. Federal courts in this district typically do not reward such behavior. The record is clear that Vyne filed hours after it believed HSOne was imminently going to sue in Utah. HSOne, unlike Vyne, did not race to court. Indeed,

HSOne sent Vyne a demand letter weeks before Vyne's filing. HSOne told Vyne that it wanted to try and resolve rather than litigate the dispute. Vyne took advantage of this, stalled, and then when its Complaint was ready and it believed HSOne's patience had run out, raced here to Maryland.

**Forum connection.** Vyne also does not address the issue that where the actions that give rise to the dispute are not present in the chosen forum, deference is lowered for that reason too. Vyne cites *Manne v. Jaddou* (a case in which the court actually granted transfer) for the proposition that to defeat deference, HSOne must purportedly show that "none of the . . . conduct occurred in the forum selected" or that Maryland "has no connection" to the controversy. (Vyne's Opp. at 7-8.) This overstates the law. The next sentence after Vyne's quotation explains that "[i]n particular, when a plaintiff chooses to bring suit in a forum that is not plaintiffs' home forum, deference is less likely." *Manne v. Jaddou*, No. 21-1092 PJM, 2022 U.S. Dist. LEXIS 5215, at *16 (D. Md. Jan. 11, 2022). This clarifies the part of the ruling that Vyne cites, in that the court explains that relevant conduct can be imputed to the home forum of the party. Vyne's cite to *In re Aqueous Film-Forming* is also inapposite. That case dealt with an MDL where the court was managing over 6,000 consolidated cases and does not support a generalized principle of venue deference or delay. Here, HSOne has established that none of the decisions around security or the parties' commercial relationship arose in Maryland. Even adopting Vyne's cases, it is more reasonable to conclude that the actions that gave rise to the case happened in Utah.

Absent deference to the first-filer, Vyne has no grounds to oppose transfer. Its attempts to clash with the remaining standards fail as well.

    **2.    Factor Two: Utah is a More Convenient Forum for All Witnesses, Non-Party or Otherwise.**

As to the second factor, Vyne argues (a) employed witnesses are "entirely irrelevant," and

thus non-party witnesses are all that matters; (b) HSOne bears the burden to concretely identify non-party witnesses, which HSOne has failed to do; and (c) HSOne cannot identify witnesses that would be unavailable at trial. (Vyne Opp. at 10-12.) This is all incorrect.

**Employed witnesses.** The cases Vyne cites about employed witnesses do not support the sweeping conclusion that non-party witness convenience is all that matters. These cases show, rather, that in the hierarchy of conveniences within this factor's analysis, greater weight is given to non-party witnesses. This may be so, but it does not negate the fact that a combined hundred-plus workers at Vyne and HSOne are in Utah—including the only witnesses Vyne has proffered in this proceeding thus far who happen to be its most senior executives. The *CV Restoration* case Vyne relies on is not applicable, because there the court observed that in either location, employed witnesses of the other party would be inconvenienced to travel away from where they work. *CV Restoration, LLC v. Diversified Shafts Sols., Inc.*, No. CV ELH-16-2102, 2016 WL 6648750, at *6 (D. Md. Nov. 10, 2016) ("employees of CVR will be equally inconvenienced if they must travel to Georgia"). But here Vyne's own key witnesses are also in Utah.

**Non-party witnesses.** Vyne's argument that HSOne must identify non-party witnesses now is a red herring. Vyne itself admits that customers are important non-party witnesses in this case and provides statistics to this Court about the roughly 2% of its customers who may be impacted by the dispute in Maryland. HSOne does not disagree that its shared customers with Vyne are important non-party witnesses in this case. But there is nothing unique or differentiating about Maryland in this context. Indeed, a simple geographic analysis shows that in a situation where there are nationwide customers, Utah is far more convenient for the bucket of non-party customer witnesses than Maryland. A basic review of the United States map shows that any state in the Pacific or Mountain time zones is over a thousand miles closer to Salt Lake City than

Baltimore. States in the Central time zone are not meaningfully closer to Baltimore.[10] It is not reasonable for Vyne to insist that HSOne, at this early stage of the litigation, supply the most relevant non-party customer witnesses. The reality is that any dental office customer of Vyne or HSOne might be a highly probative witness in the case. They could speak to the security risks of ransomware on their practices, their approach to data access, and their view of the competitive landscape, among other things. Vyne itself has acknowledged that Utah has more than the handful of Maryland customers that it claims are affected by the dispute.[11]

Vyne's argument that witness availability for trial must be determined at this early stage of the case does not carry water either. The proper inquiry is whether, on the balance of conveniences and in the interests of justice, a transfer is warranted. Here, where both parties have customers nationwide, it is on balance more convenient for those customers to travel to Utah than to Maryland.

### 3.  Factor Three: Utah Is Convenient for Both Vyne and HSOne.

As to the party convenience factor, Utah eliminates inconvenience for both parties. Vyne may not wish to admit it, but it stretches the imagination to believe that Maryland is a more convenient place for Vyne to litigate in than Utah. Presumably, Vyne believes the tradeoff is worth it given its perception of the *Real Time* case. But Vyne will no doubt have a very easy time

---

[10] The Court can take judicial notice of the distances between locations on the map of the United States. *Boyce Motor Lines v. United States*, 342 U.S. 337, 344 (1952) (Jackson, J., dissenting) ("We may, of course, take judicial notice of geography.").

[11] (ECF No. 51-1, ¶ 3.) Vyne's Opposition states that there has been "direct and substantial harm that [HSOne] has visited on nearly two hundred Maryland dental practices," (Vyne Opp. at 15), but its CEO's declaration submitted with the brief makes clear that Vyne claims only 11 practices in Maryland have been purportedly affected. (ECF No. 51-1 ¶ 6.) The larger figure, per Vyne, are just shared customers in Maryland. Once again, Vyne cannot show a meaningful differentiated connection to Maryland. The case Vyne cites here, *Mamani v. Bustamante*, is also inapposite as it dealt with non-US witnesses. 547 F. Supp. 2d 465, 473 (D. Md. 2008).

litigating in Utah, given that its key witnesses live there, it has an office there, it seeks to base its Chief of Staff to the CEO there, and it has 45 people in the state.  HSOne, whose principal place of business is in Utah, will have a more convenient time litigating in Utah as well.  Vyne's claim that HSOne does not assert so is false.  The very premise of HSOne's motion is that Utah is a more convenient forum for all involved and, further, constitutes the nexus of this dispute.

### 4.    Factor Four: A Transfer to Utah Serves the Interest of Justice.

Vyne does not properly address that it is in the interest of justice to discourage forum shopping and anticipatory filing.  *See, e.g.*, *Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 435 (D. Md. 2018).  That is why these are well-trodden exceptions to the first-to-file rule.  Vyne's Opposition focuses heavily on the concept that transfer should happen closer to trial, which is in essence an attempt to combat the interest of justice factor.[12]  But Vyne's position is wrong in the context of the statute, modern litigation, and prevailing case law.

Vyne's supposition that § 1404(a) requires a developed record of trial witnesses and proof before this Court can make a transfer decision is backwards.  On the contrary, "courts agree that [a transfer] motion should be brought with 'reasonable promptness.'"  *See, e.g.*, *Berg Corp. v. C. Norris Mfg., LLC*, No. JKB-19-00043, 2020 U.S. Dist. LEXIS 7634, at *4 (D. Md. Jan. 15, 2020) (citing 15 C. Wright & A. Miller, Federal Practice and Procedure § 3844 (4th ed.)).  A motion to

---

[12] Vyne's argument about § 1406 is misplaced as well.  The case Vyne cites, *Berry v. Soul Circus*, contemplates that § 1404(a) transfer can occur as an alternative.  The point of HSOne's transfer motion is that Utah, given consideration to the § 1404(a) factors, is the more appropriate forum. Vyne does not contest that Utah could have been an appropriate forum for the case, just that its Maryland preference should be given deference.  There is also no tension between HSOne's pending Rule 12(b)(3) motion and this transfer motion, as courts in this district have no issue granting a § 1404(a) transfer motion while a motion for improper venue is pending.  *See, e.g.*, *Doe v. Choice Hotels Int'l, Inc.*, No. CV 24-1598-TDC, 2025 WL 2108792, at *10 (D. Md. July 28, 2025) (noting that "the Court need not decide that question [of whether venue is improper in the forum] because . . . it finds that transfer to the Middle District of Florida is warranted under 28 U.S.C. § 1404").

transfer under § 1404(a) is meant to be brought earlier, not later.[13]

The statute directs courts to weigh convenience and the interests of justice. Those factors are routinely assessed at the outset based on the parties' sworn submissions. *See, e.g.*, *In re Apple Inc.*, 52 F.4th 1360, 1361 (Fed. Cir. 2022) ("It is not proper to postpone consideration of the application for transfer . . . until discovery on the merits is completed."). Section 1404(a)'s language is clear, and the word "trial" appears nowhere in it.

Vyne's reading ignores the reality of modern federal litigation. Less than 3% of civil cases reach trial.[14] If § 1404(a) focused on trial conveniences, its usefulness and inquiry would be diminished: parties would be able to argue that convenience is a wash, since no trial is likely to occur for the vast majority of disputes. This would read a new element into the standard: an evaluation of whether the parties are likely to go to trial.

Vyne's reliance on the 1964 *Van Dusen* decision underscores the disconnect. Civil litigation has evolved much in the last 60 years, particularly in terms of discovery scope and complexity (which predominate litigation far more than trial). Indeed, the Supreme Court, more recently citing to *Van Dusen*, has explained that "[v]enue rules generally reflect **equity or expediency** in resolving disparate interests of parties to a lawsuit **in the place of trial**." *Burlington N. R.R. v. Ford*, 504 U.S. 648, 651 (1992) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 623 (1964) (emphasis added) (determining Montana's venue provision did not offend the Equal Protection

---

[13] Of course, had HSOne waited to file its transfer motion until weeks or months later, Vyne would likely charge HSOne with engaging in dilatory tactics.

[14] Federal Judicial Caseload Statistics 2025, U.S. Courts, https://www.uscourts.gov/data-news/reports/statistical-reports/federal-judicial-caseload-statistics/judicial-caseload-indicators-federal-judicial-caseload-statistics-2025 (Accessed October 29, 2025) (Table C-4 from the Federal Judicial Caseload Statistics for the 12-month period ending March 31, 2025 reports 507,326 civil cases terminated in U.S. District Courts, of which 12,513 were resolved by trial, including both jury and bench trials, thus amounting to approximately 2.47% of all cases).

11

Clause)).

Pre-litigation proceedings vary across the nation. Different courts impose distinct pre-trial proceedings, local rules, alternative resolution requirements, discovery rules, and burdens. Courts vary in how they manage their dockets and court congestion is a fact of modern litigation life. *See, e.g.*, *Ramani v. Genesis Healthcare, Inc.*, 2021 U.S. Dist. LEXIS 11255, at *8 (D. Md. Jan. 21, 2021). Varying procedural differences are not trivial. They can affect how a case will be resolved, how much it costs, and how burdensome litigation can be for parties and witnesses.

Vyne's reading of the statute would collapse § 1404(a)'s framework to primarily a single issue of whether a given federal court has subpoena power over non-party witnesses. But that is only one of the factors. If it were dispositive, there would be case law for that proposition. Vyne cites none.

The cases Vyne does cite tend to support HSOne's position. They do not articulate a rule where the court must wait for discovery. *Van Dusen* addressed choice-of-law continuity considerations, not timing. *Oeste*, in turn, was a case where the court grappled with a mandatory forum selection clause and granted a transfer early in the case before discovery.[15] (Vyne Opp. at 5.) *Liberty Media Holdings, LLC v. Does* fares no better. That case deferred venue rulings because defendants were Does and had not been served, making it impossible to apply § 1404(a) factors. *See Liberty Media Holdings, LLC v. Does 1-62*, 2012 WL 628309, at *8 (S.D. Cal. Feb. 24, 2012) (court could not engage in transfer analysis "without information regarding [the Does] connections . . . to California"). Here, the parties are known and served.[16] As to *Bohnen*, the court there

---

[15] *Oeste* denied jurisdictional discovery. *Oeste v. Zynga, Inc.*, Civil Action No. GLR-20-1566, 2021 U.S. Dist. LEXIS 86162, at *1, n.1 (D. Md. May 5, 2021).

[16] *Mije Associates* offers nothing of substance: the court appears to have denied transfer without prejudice as the issue was tied to a separate argument about failure to join an indispensable party

deferred ruling on a transfer motion because it was simultaneously considering a jurisdictional dismissal—not because it believed transfer motions must wait until discovery or trial. The court stated that it "should determine first the jurisdictional questions raised by the motion to dismiss or alternatively for summary judgment of dismissal." *Bohnen v. Balt. & O. C. T. R. Co.*, 125 F. Supp. 463, 464 (N.D. Ind. 1954).[17]

At best, Vyne's theory attempts to articulate a basis for caution or delay in resolving a § 1404(a) motion. But here the Court has more than enough information to support a transfer to the District of Utah. Justice would be best served by this litigation occurring in that forum.

**B.     The Court Has Discretion to Transfer Under 28 U.S.C. § 1404(a) Without Affecting Any Injunctive Relief.**

The pendency of preliminary injunction motions does not preclude transfer. Ample case law supports transferring actions while motions for temporary or preliminary relief are pending. *See, e.g.*, *Kolla v. Mayorkas*, No. 1:20-cv-688 (M.D.N.C. Mar. 22, 2021) (granting § 1404(a) transfer to D.D.C., mooting the PI motion, thus deferring to the transferee court the decision); *Downing v. Lee*, No. 1:16-cv-1511 (E.D. Va. Dec. 6, 2016) (transfer and denial of PI motion without prejudice); *NLRB v. Fed. Serv. Impasses Panel*, 2020 U.S. Dist. LEXIS 57628 (D. Md. Apr. 2, 2020) (granting § 1404(a) transfer and mooting motion for preliminary injunction); *Cont'l Cas. Co. v. Lockheed Martin Corp.*, 2024 U.S. Dist. LEXIS 147260 (S.D.N.Y. Aug. 19, 2024).

---

under Rule 19. The court did not engage in a § 1404(a) analysis; it offered a single sentence in a footnote. *Mije Assocs. v. Halliburton Servs.*, 552 F. Supp. 418, 419 n.2 (S.D.N.Y. 1982).

[17] HSOne notes that Supreme court and Fourth Circuit precedent have already recognized that § 1404(a) allows for resolution even before jurisdictional adjudication, even subject-matter jurisdiction. *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 212, n.6 (4th Cir. 2022) (discussing *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) and *Atlantic Marine Construction Co.*, 571 U.S. 49 (2013)). This is so because § 1404(a) codifies, with modifications, forum non conveniens doctrine, treated as a non-appealable threshold issue.

Here the Court has already denied Vyne's TRO. The conduct of which Vyne complains—stopping its unauthorized access to HSOne's systems—it admits is something HSOne has attempted to do for at least a matter of months, if not longer. As to HSOne, of course the situation is unfortunate as HSOne has driven urgency since this matter's inception—filing a TRO and PI motion in Utah, a motion to reconsider that TROs denial (without prejudice to this Court's venue determination), and a TRO and PI here. But even for HSOne, it will be more equitable and just to transfer to Utah sooner rather than later. The court in Utah has indicated that it is able to take up HSOne's TRO and PI motion upon this Court's resolution of the venue issue. If that happens this week, given that Utah is home to HSOne and Vyne's key witnesses, a hearing next week is still viable there. And even a delay of a few weeks, balanced against the risk that Vyne will continue to attempt to do procedural somersaults in Maryland as cover for its continued unauthorized access, merits transfer before the case proceeds here. Vyne, as an example, has already attempted to open discovery in this Court, a process that typically adds months of time to preliminary injunction proceedings. Given that the hearing will involve complex factual inquiries around technology issues, including technical security controls, encryption, data interception, database reading and writing, complex factual issues involving many months of commercial negotiations, and complex factual issues with respect to the regulatory posture, it is likely to go more than one day. In *Real Time*, Vyne's case of choice, a far simpler set of facts took two days. It is not inconceivable that the hearing would go more than three days through the end of next week, and the parties' and Court's schedule might then require a recess and reconvention weeks down the road. This indicates that for the interest of justice and convenience of all parties and witnesses, transfer to Utah sooner rather than later is appropriate.

It is accordingly in this Court's discretion to transfer this matter to Utah before the

November 12, 2025, hearing.

### III.     CONCLUSION

The heart of this dispute is in Utah.  Where the first-filer's choice of forum is driven by shopping for case law and a race to court, no deference to that filer's choice is warranted.  Because all the § 1404(a) factors weigh in favor of transfer, and because a sooner transfer will serve the interests of justice, HSOne respectfully requests that the Court transfer this case to Utah.

Dated: November 4, 2025

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Michael R. Sklaire*

    Michael Burshteyn *(pro hac vice)*
    Marcelo Barros *(pro hac vice)*
    Jennifer Bartlett *(pro hac vice)*
    101 Second Street, Suite 2200
    San Francisco, CA 94105
    Tel: (415) 655-1300
    michael.burshteyn@gtlaw.com
    marcelo.barros@gtlaw.com
    jennifer.bartlett@gtlaw.com

    Michael R. Sklaire (MD Fed. Bar No. 16471)
    Shirin Afsous (MD Fed. Bar No. 31319)
    1750 Tysons Boulevard, Suite 1000
    Tysons Corner, VA 22102
    Tel: (703) 749-1301
    michael.sklaire@gtlaw.com
    shirin.afsous@gtlaw.com

*Counsel for Henry Schein One, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 4th day of November, 2025, I caused the foregoing to be emailed to the Court and all counsel of record due to technical issues with the CM/ECF system. Those issues having been resolved, I HEREBY CERTIFY that on this 5th day of November, 2025, I electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael R. Sklaire*
Michael R. Sklaire
