IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>                      Plaintiff and Counter-Defendant,<br><br>- against -<br><br>HENRY SCHEIN ONE, LLC,<br><br>                      Defendant and Counter-Claimant. | Case No. 1:25-cv-03246-MJM |

**HENRY SCHEIN ONE, LLC'S REPLY IN SUPPORT OF MOTION
FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

i

Defendant and Counter-Claimant Henry Schein One, LLC ("HSOne"), pursuant to Fed. R. Civ. P. 65, submits its Reply in Support of its Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") against Plaintiff and Counter-Defendant National Electronic Attachment, Inc. d/b/a Vyne Dental ("Vyne"), and states as follows:

## INTRODUCTION

Unless a court enjoins Vyne, it will stop at nothing to circumvent HSOne's technical security measures to exploit HSOne's software systems. Vyne's admission that it exfiltrates encryption keys that allow decryption of confidential files and unauthorized access to HSOne's software systems ends the inquiry. This concession means that Vyne is violating the Computer Fraud and Abuse Act and Digital Millennium Copyright Act on a daily basis.

Vyne's attempt to portray its conduct as unchanged over 20 years does not pass the smell test. HSOne's investigation is ongoing, but HSOne is aware that Vyne made changes in March of this year that disrupted portions of HSOne products, before HSOne began enabling its latest security updates in April, and Vyne has made recent rapid deployments of technical workarounds and exploits at an accelerating pace prior to and after HSOne's TRO and PI motion filing. Vyne cannot credibly claim that dental offices are aware of its deep low-level technical circumvention and exploits of HSOne's software systems. HSOne does not authorize Vyne's access, nor do the shared customers authorize what Vyne is actually doing (and their contracts with HSOne prohibit permitting unauthorized access to Dentrix systems). Vyne does not even attempt to establish that patients authorize, let alone have awareness of what Vyne does to the data their dental offices hold.

Vyne's arguments about how the Dentrix software is installed in customer environments is a red herring. It misreads the plain statutory language of the CFAA, which allows HSOne to state a claim against Vyne for hacking HSOne software systems that customers host. Courts

1

looking at similar situations where an attacker exploits software on a third-party's computer have found CFAA violations.  Once again, Vyne occludes what it is doing in its Opposition papers.  Vyne is well aware that the Dentrix software system at issue includes multiple software and service components.  These include the Dentrix application and Dentrix database that customers install in their environments.  Vyne's access of these components alone would be sufficient to support a CFAA claim, but the Dentrix application also includes another component that HSOne hosts itself in a cloud infrastructure environment.  Vyne accesses this component without authorization as well when it exploits and misappropriates the Dentrix application and database in the customer environment.  Given this, Vyne has no defense to its conduct with respect to the CFAA.

The Court already denied Vyne's competing TRO.  In any event, its offensive claims against HSOne are not an affirmative defense that justify computer hacking and exploitation.  HSOne is permitted to secure its software and stop unauthorized access.  Even if Vyne has some sort of data access theory, and it does not have a viable one, this does not give license to violate federal computer hacking laws and related statutes and common law doctrines.

Vyne also cannot overcome the ongoing irreparable harm its conduct causes HSOne.  Vyne does not address that by precluding HSOne from securing its software systems, it irreparably damages HSOne's credibility and goodwill with customers in the market.  HSOne's investigation is ongoing and has already uncovered more than 500 complaints from customers about data integrity issues that appear to be caused by Vyne's unauthorized access.  (Declaration of Kenton McDaniel ("McDaniel Decl.") ¶ 12.)

Vyne asks this Court to grant it a license to access HSOne's software systems without authorization in a manner that introduces new security vulnerabilities and damages HSOne products.  This has no basis in law.  The uncontroverted facts in the papers alone support an

immediate injunction against Vyne's escalating access to HSOne's software systems without authorization.

## ARGUMENT

I. **Vyne's Opposition Fails to Rebut That HSOne Is Likely to Prevail on the Merits of Its Causes of Action.**

    A.    **HSOne Is Likely to Succeed on its CFAA Claim.**

Vyne's defenses to its blatant CFAA violations fall short.[1]

First, Vyne put forth sworn factual admissions in its recent declarations that establish access without authorization for purposes of HSOne's CFAA claim. Vyne's Chief Technology Officer, James Nix, admits that "Vyne does still call, but not edit, a DLL file in Dentrix that contains an encryption key allowing access to Vyne customers' Dentrix usernames and passwords stored in the dtx.config file." Mr. Nix further admits that "Using this function, Vyne is able to access its customers' Dentrix log-in information[.]"[2] This is just one example of how Vyne does far more than use a printer driver exploit—which is problematic in its own right.

Mr. Nix's attempts to downplay Vyne's other conduct outlined in HSOne's Counterclaims and Motion are not credible. He claims he does not understand HSOne's straightforward allegations, even though it is Mr. Nix's team that is conducting the exploits. After it became clear during the October 23, 2025 TRO hearing that Mr. Nix's claim that the encryption key was public

---

[1] Vyne only challenges HSOne's claim under § 1030(a)(2)(C), but does not address the likelihood of success as to HSOne's claims under §§ 1030(a)(4), and 1030(a)(5)(C). Vyne also does not dispute whether HSOne has suffered requisite "damage" or "loss" in connection with its CFAA claim. 10 U.S.C. § 1030(e)(8), (11).

[2] Mr. Nix's claim that the DLL file is public is misleading—it is not available to the public but rather available to someone with the ability to use authorization credentials to gain appropriate access to the computer system. Mr. Nix's further statement that Vyne does this "as they direct" (referencing Vyne's customers) is false and unsupported by the record, given that customers are not aware of what Vyne is doing. Even if they were, this does not change that HSOne does not authorize Vyne to access its computer systems without authorization.

3

was false, and that he declined to mention that the Windows Data Protection API secured HSOne secrets, he then attempted to state that he "was mistaken." This, without even the need for cross-examination, shows that Vyne's story is not believable. Mr. Nix's latest declaration contorts the facts as well. He states in paragraph 5 of his declaration that Vyne "has no read or write access to HS One's database," but later in the same paragraph admits that "Vyne facilitates customers' efforts to transmit [] information back to the Dentrix system, including by *writing* information in customers' own Dentrix databases[.]" (emphasis added). Mr. Nix takes a similar approach in attempting to deny, but actually admitting, HSOne's allegations about folder permissions when he states in paragraphs 9-10 that "Vyne runs some processes on its customers' systems with administrative privileges" and does not deny that this is done to target HSOne's application and database.

Second, Vyne's entire defense theory rests on the idea that because HSOne's Dentrix software is in customer environments, Vyne does not violate the CFAA when it hacks the software there. Putting aside that this reads the law wrong, it also fails to account for the fact that part of the Dentrix software system includes a cloud infrastructure component on HSOne-hosted servers. This component sends and receives data to the customers' installation, including important security upgrades. Vyne circumvents HSOne's technical measures through its exploits to gain unauthorized access to this cloud infrastructure component via the same credentials it admits to misappropriating. (McDaniel Decl. ¶¶ 2-9.) This ends the CFAA inquiry even under Vyne's own theory.

Third, Vyne's exploits of HSOne software installed in customer environments violate the CFAA as well. The plain language of the statute states that "[a]ny person who suffers damage or loss by reason of a violation" can sue. The CFAA defines "damage" as "any impairment to the

4

integrity or availability of data, a program, a system, or information[.]" § 1030(e)(8). This runs counter to Vyne's theory that only the owner of the computer matters. Vyne's conduct constitutes "access to a protected computer" under § 1030(e)(2) and (a)(2), regardless of who physically owns the hardware on which HSOne's software operates. *See, e.g.*, *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2003) (holding that the "district court erred by reading an ownership or control requirement into the [CFAA]."); *see also Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 231 (D.P.R. 2016) ("devices are within the ambit of the CFAA . . . even though the hardware is owned by the Hospital and Medical X-Ray because individuals other than the computer's owner may be proximately harmed by unauthorized access").

The *Power Ventures* and *Phreesia* cases make clear that 'the customer said it was OK' is not a defense to CFAA violations. HSOne is the relevant party who controls access to its application through security controls. Customers do not have access to, or rights to access, the Dentrix security controls and no ability to authorize access to a third party. Vyne circumvents those access controls and breaks through the gates HSOne sets up. The "nature of the alleged access" involving "hundreds of interactions," just as in *Phreesia*, makes clear that Vyne's conduct is malicious and without authorization. 2022 WL 911207, at *5. Vyne's conduct goes far beyond the conduct in *SecureInfo* and *EarthCam* cases that it cites. Vyne developed and deployed software tailored to exploit HSOne's software and decrypt configuration files, disable security flags, and redirect transmissions to impersonate and intercept data intended for HSOne's servers.

Vyne's theory does not make sense given modern cloud computing realities either, as even the component of Dentrix in the customers' environments is often virtualized and on cloud infrastructure. Thus under Vyne's theory not even the customer would have a claim because Vyne could argue that the cloud infrastructure provider's code permitted its access. There is not one

5

case involving modern software systems that goes Vyne's way. If Vyne's theory were the law, it would create a CFAA loophole allowing rampant computer hacking of software merely because it is installed on customer systems.

Regardless of "without authorization," Vyne cannot explain how its conduct does not exceed authorized access in violation of the CFAA. Vyne does not disclose to customers that its programs decrypt HSOne's configuration files, alter registry settings, and impersonate HSOne servers to reroute transmissions. (McDaniel Decl. in Support of Motion for TRO and PI ("McDaniel TRO Decl.") (ECF No. 46-2) ¶ 38.) Vyne tells customers only that Vyne's tools are Dentrix integrated, not that they disable Dentrix's security functions. Consent obtained through concealment is no consent at all. *See, e.g.*, *Bowen v. Porsche Cars, N.A., Inc.*, 561 F.Supp.3d 1362 (2021) (customer's understanding that they were agreeing to receive satellite signals did not extend authorization to modifying software code in customer's car).

Vyne's deliberate circumvention of technical security measures supports a finding that HSOne has a strong likelihood of success under §§ 1030(a)(2)(C), (a)(4), and (a)(5)(C).

### B. Vyne's Decryption and Bypass of HSOne's Security Controls Violates the DMCA.

HSOne's DMCA claim is not about "credentials" or "patient data"—it is about Vyne's deliberate violations of HSOne's technological protection measures that control access to HSOne's copyrighted Dentrix source code. (Mot. at 19.) HSOne demonstrated that Vyne's integration tools disable digital signature checks, decrypt and rewrite configuration files, and alter security flags within dynamic link libraries to bypass authentication and redirect transmissions away from HSOne's secure servers. (McDaniel TRO Decl. ¶¶ 7-8, 10-17, 19, 21-23, 25-29, 32-34, 37.) Those protections are precisely the type of "technological measures" the DMCA prohibits others from circumventing under 17 U.S.C. § 1201(a)(1) and (a)(2).

6

Vyne's opposition does not address those facts. It instead attempts to reframe the issue as one involving customers' use of their own credentials to access their data. This is a mischaracterization of both the technical functionality at issue and the statute. (Opp. at 11-13.)[3] The evidence shows Vyne's conduct targeted HSOne's proprietary *software* to change its functionality, which violates the DMCA's anti-circumvention provisions. (Mot. at 19.) Whether or not Vyne "copied" HSOne's code is irrelevant; § 1201 liability attaches when an actor "bypasses, removes, or deactivates" a technological protection measure controlling access to a copyrighted work, even absent copying or distribution. Vyne makes no attempt to distinguish *Philips Med. Sys. Nederland B.V. v. TEC Holdings, Inc.*, 2023 WL 2064201, at *13 (W.D.N.C. Feb. 16, 2023), relied on by HSOne. Accessing patient data may be Vyne's goal (among others), but its methods of obtaining it—circumventing HSOne's source code—constitute the DMCA violation.[4]

### C. Vyne's Unauthorized Interference with HSOne's Software Systems Constitutes a Trespass to Chattels Under Utah Law.

Vyne's exploits interfere with HSOne's proprietary software systems (including its cloud-hosted components), impairing its operation, condition, and value. (Counterclaims ¶¶ 115-18.) That conduct fits square within Utah's definition of trespass to chattels, *Nassi v. Hatsis*, 525 P.3d 117, 122 (Utah Ct. App. 2023), and courts across the country have applied such claims to computer intrusions. (Mot. at 20 (citing *United States v. Ackerman*, 831 F.3d 1292, 1308 (10th Cir. 2016)

---

[3] Again, HSOne does not claim that "patient data" is the copyright at issue, rendering the caselaw relied on by Vyne entirely inapplicable. (Opp. at 12 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991)).)

[4] Nor does Vyne's reliance on the Office of the National Coordinator for Health Information Technology's (ONC) commentary to the 21st Century Cures Act (the "Cures Act") alter the analysis. (Opp. at 12-13.) HSOne addresses Vyne's flawed Cures Act theory in its Opposition papers to Vyne's TRO, which the Court denied. The Cures Act does not repeal the DMCA or authorize competitors to decrypt, impersonate, or modify another's software under the banner of interoperability.

7

(citing cases).) Vyne makes no attempt to distinguish the primary authorities cited by HSOne, including *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1063, 1069–70 (N.D. Cal. 2000) and *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F.Supp. 1015, 1019, 1027 (S.D. Ohio 1997), and acknowledges that courts recognize trespass to chattel claims similar to the one asserted by HSOne here so long as there is interference impairing the functioning of the software system.

Vyne's suggestion that HSOne has not demonstrated proximate harm ignores both the nature of digital trespass and the record evidence. The tort does not require physical destruction or quantified financial loss—it is enough that the interference impairs the condition or functioning of the chattel. *Nassi*, 525 P.3d AT 122 n.10.[5] Vyne's exploits disable security flags, prevent updates, and corrupt network routing, forcing HSOne to redeploy patches and security keys repeatedly to maintain product integrity. (McDaniel TRO Decl. ¶¶ 11-17.) Those repeated disruptions directly diminish HSOne's ability to secure and operate its systems, which is more than sufficient impairment to establish proximate harm. Courts have held that loss of system control, degradation of performance, or diversion of resources to remediate unauthorized interference constitutes actionable injury. *See, e.g.*, *Microsoft Corp. v. Does*, 2024 WL 1708328, at *10 (E.D. Va. Jan. 10, 2024), *report and recommendation adopted sub nom. Microsoft Corp. v. Does 1-2*, 2024 WL 1708323 (E.D. Va. Jan. 30, 2024) (granting injunction where "complaint establishes that Defendants' unauthorized and intentional access to Microsoft's and its customers' computers and

---

[5] In any event, Vyne does not contest that its conduct has financially harmed HSOne and damaged its software security controls, costing it significant resource investment (that is ongoing) to try to stop Vyne's constant workarounds.

8

Microsoft's operating system, and Defendants' unauthorized control over such computers and systems, interferes with and causes injury to the value of those properties").[6]

### D. Vyne's Conduct Constitutes Unfair Competition and Tortious Interference Under Utah Law.

Utah's Unfair Competition Act (UUCA), Utah Code § 13-5a-102(4), broadly defines "unfair competition" as "an intentional business act or practice that (a) is unlawful, unfair, or fraudulent; and (b) leads to a material diminution in value of intellectual property," which, in addition to malicious cyber activity, encompasses a software license violation. Utah Code § 13-5a-102(4)(a)(ii)(B).

Vyne argues that HSOne has not demonstrated "malicious cyber activity" under the statute, (Opp. at 15.), but this is wrong. Vyne deploys its unlawful access of computing resources to coerce HSOne into providing it unfettered access to its database systems. This meets the statutory definition. Vyne's conduct also falls within the statute's prohibition on software license violations. Utah Code § 13-5a-102(4)(a)(ii)(B). HSOne customer contracts do not permit granting access to third parties to circumvent HSOne's security controls. (McDaniel Decl. ¶ 11.) Vyne knowingly induces HSOne's customers to breach those contracts to gain unauthorized access to HSOne's systems and to exploit licensed components for its own commercial benefit. Vyne's use of integration tools to alter registry settings, impersonate HSOne components, and redirect encrypted

---

[6] Vyne's remaining argument is that because the court in *Vox Marketing Group v. Prodigy Promos, LLC*, 556 F. Supp. 3d 1280 (D. Utah 2021) refused to exercise *supplemental jurisdiction* over the plaintiff's "numerous" state law claims because they "substantially predominate[d]" the discrete federal claim at issue in that case, then HSOne's trespass to chattel claim somehow fails. (Opp. at 13-14.) But the fact that a single court chose not to exercise supplemental jurisdiction over a trespass to chattel claim, which Vyne is not even challenging, does not negate the validity of HSOne's cause of action or overcome the weight of authority supporting HSOne's claim. (Mot. at 19-20.)

transmissions, exceeds any rights conferred by the end-user licenses and constitute unlawful and unfair business practices. Utah Code § 13-5a-102.

Vyne's conduct also violates Utah's common law prohibitions on unfair competition as well, independent of the statute. Utah's Supreme Court has noted that common law unfair competition is broad and "is not limited" to narrow conduct such as passing off. *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 13, 192 P.3d 858, 862. Vyne's false and misleading statements about its conduct, occluding even to this day the full extent of its exploits, constitute unfair competition under Utah common law.

Along with its statutory and common law unfair competition, Vyne's conduct further interferes with HSOne's contractual relationships with its customers. Because HSOne customers agree by contract not to provide third-party access to overcome HSOne's technical security measures, Vyne is inducing them to breach their contractual obligations through its conduct. *See, e.g.*, *First Am. Title Ins. Co. v. Nw. Title Ins. Agency*, 906 F.3d 884, 888 (10th Cir. 2018) (affirming tortious interference verdict for interfering with a competitor's contracts). It is doing so to gain unfair and unlawful commercial advantage over HSOne, because Vyne can forego a commercial relationship and instead access all the data it wishes at no cost. This is an independent ground for granting a preliminary injunction.[7]

---

[7] The Court has discretion to consider HSOne's causes of action for common law unfair competition and tortious interference. Vyne's Opposition brief went all-in on the idea that Vyne's customers allow its conduct. This merits HSOne moving for a TRO and PI on its common law unfair competition and tortious interference claims, because Vyne misleads HSOne's customers and induces them to breach their contracts in the process of manufacturing their false consent. Thus these arguments are "intimately related" to the original grounds for the motion. *See, e.g.*, *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022). To the extent the Court permits any sur-reply, it should be limited solely to addressing the narrow issues of these causes of action. Vyne cannot, on the one hand, argue that HSOne's legitimate competition is tortious interference and common law unfair competition and, on the other hand, claim that its own egregious software exploits inducing contract breach are not.

10

HSOne is therefore likely to succeed on its unfair-competition claim under § 13-5a-102(4), its common law unfair competition claim, and its tortious interference claim.

E. **Vyne's Redirection and Capture of Electronic Communications Violates the ECPA.**

HSOne's claim under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 et seq., rests on clear evidence that Vyne intentionally intercepted and redirected electronic communications that were meant for HSOne's secure servers.[8] (McDaniel TRO Decl. ¶¶ 20, 21, 23, 25, 28, 29, 33.) Vyne's software alters Dentrix registry files and network settings to reroute encrypted transmissions from HSOne's eTrans domain to Vyne-controlled servers in real time. (*Id.* ¶¶ 19, 21, 22.) That conduct—acquiring the contents of an electronic communication contemporaneously with its transmission through the use of a software-based device—is the textbook definition of interception. 18 U.S.C. § 2510(4) (defining "intercept" as "the aural or other acquisition of the contents of any … electronic… communication through the use of any electronic, mechanical, or other device.")

Vyne does not dispute the challenged conduct, but claims it had "consent" to intercept these transmissions. (Opp. at 17.) This is unsupported by the record or the law. The "consent exception" under the ECPA applies "where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act . . . ." 18 U.S.C. § 2511(2)(d). The burden of establishing consent rests on the party seeking the benefit of the exception: Vyne. *Blumofe v. Pharmatrak, Inc. (In re Pharmatrak, Inc. Privacy Litig.)*, 329 F.3d 9, 19 (1st Cir. 2003). Consent must be actual, not constructive, and although consent may be implied it "should not be casually inferred." *Id.* (quoting

---

[8] The ECPA amended the Federal Wiretap Act by extending the same protection already afforded to oral and wire communications to data and electronic transmissions. 1 R.T. Nimmer, Federal Statutory Restrictions, in Information Law, ch. 8, para. 34, at 8-68 (2002).

11

*Griggs-Ryan v. Smith*, 904 F.2d 112, 117 (1st Cir. 1990)); *see also Berry v. Funk*, 331 U.S. App. D.C. 62, 146 F.3d 1003, 1011 (D.C. Cir. 1998) ("Without actual notice, consent can only be implied when the surrounding circumstances *convincingly* show that the party knew about and consented to the interception.") (emphasis added).

Vyne cannot meet its burden to establish that any customer consented to the specific interception at issue. Vyne's customers were never told that Vyne's software would alter Dentrix registry keys, disable eTrans routing, and redirect transmissions intended for HSOne's servers to Vyne-controlled domains. (Mot. at 22; McDaniel TRO Decl. ¶¶ 24.) That undisclosed rerouting—the core of HSOne's ECPA claim—is an interception of HSOne's communications, not a routine data exchange between a practice and Vyne.[9] HSOne's customers could not and did not consent to an interception they did not understand, that was never disclosed, and that served no legitimate purpose other than to bypass HSOne's security controls.[10]

Vyne cannot transform itself into an authorized recipient by rewriting network routes or impersonating HSOne's servers. The fact that Vyne's code inserts itself between Dentrix and HSOne's infrastructure, invisibly diverting data traffic, is the very essence of a "man-in-the-middle" interception the ECPA prohibits. *In re: Maxim Integrated Prods., Inc.*, No. 12-244, 2013

---

[9] Vyne admits it did not receive express consent from its customers for its conduct, instead arguing that customers "generally" agreed in their contract with Vyne to access or use patient information and other data. (Opp. at 17). But this does not constitute informed consent to the interception of encrypted network traffic or to the decryption and redirection of transmissions traveling between HSOne's software and its secure servers. *See Pharmatrak*, 329 F.3d at 20 (rejecting theory that by buying and using the defendant's product the customers consented to the data interception at issue).

[10] (Opp. at 18, citing *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 120 (2d Cir. 2018) (where customers expressly opted-in to sharing their own data and there were no allegations of circumventing security protocols or decryption); *Doe v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (no allegations of security circumvention or decryption where plaintiff only vaguely alleged Google obtained the plaintiffs' information where health care providers used Google's source code on their web properties).

WL 12141373, at *14 (W.D. Pa. Mar. 19, 2013). HSOne is therefore substantially likely to succeed on this claim.

## II. Without a TRO, HSOne Will Continue to Suffer Irreparable Harm From Vyne's Hacking Attacks.

The harms Vyne is causing HSOne are neither speculative nor compensable by damages—they are immediate, continuing, and irreparable. Vyne's exploits deprive HSOne of the ability to ensure the integrity and security of its Dentrix systems. (McDaniel Decl. ¶¶ 12-13.) That continuing interference prevents HSOne from deploying updates, breaks authentication mechanisms, and exposes it and its customers to security risks. Such loss of control over proprietary systems and business goodwill constitutes irreparable harm. *See, e.g.*, *Physicians Interactive v. Lathian Sys., Inc.*, No. CA 03-1193-A, 2003 WL 23018270, at *4 (E.D. Va. Dec. 5, 2003) (granting preliminary injunction based on security risks because "electronic security systems are not foolproof"); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1073 (N.D. Cal. 2000) (preliminary injunction merited to stop irreparable harm from unauthorized access to database).[11]

Further, Vyne's conduct has actually caused significant instances of database corruption and it will continue to do so unless enjoined. Vyne's CTO claims in his declaration he is "not aware of any reason why Vyne's approach in particular" would "lead to or exacerbate [the] issue" of "database inconsistencies." (Opp Decl. 7-8.) But this is precisely the point. Vyne is not inside HSOne (although its executives, including its CTO, used to work for HSOne). It is not running its unauthorized exploits through HSOne's complex software test suites and protocols. That is why

---

[11] *See also Gen. Parts Distrib., LLC v. St. Clair*, 2011 U.S. Dist. LEXIS 145055, at *14 (D. Md. Dec. 14, 2011) ("When the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied.") (quoting *Wachovia Ins. Serv., Inc. v. Hinds*, 2007 U.S. Dist. LEXIS 82103, at *3 (D. Md. Aug. 30, 2007)); *ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 437 (D. Md. 2024) ("breach of [] sensitive information constitutes another type of irreparable harm").

13

its direct writeback to HSOne's database ledger is certain to cause integrity and corruption of data, and it already is.  (McDaniel Decl. ¶¶ 9, 12-13.)

Even if Vyne did not cause actual harm, injury does not matter only when a security incident occurs.  Rather, it lies in the ongoing inability of HSOne to upgrade the security of its product.  *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 408 (D. Md. 2006) (granting injunction where there was "no way to know" how many times the defendant infringed upon the plaintiff's copyrights and "further infringements are a continuing threat, making remedies at law insufficient to compensate for Plaintiffs' injuries.").

Vyne's "status quo" argument ignores that the relevant status quo changed when HSOne formally notified Vyne that it did not have authorization to continue bypassing its software's security protocols and implemented new technical security controls after discovering Vyne's unauthorized conduct.  (Counterclaim ¶ 15; McDaniel TRO Decl. ¶ 40.)  The "status quo" Vyne seeks to preserve is one obtained through unlawful circumvention; maintaining it would simply perpetuate the ongoing harm the injunction is meant to stop.  *ClearOne Advantage, LLC*, 710 F. Supp. 3d at 437 (granting TRO where the defendant's conduct was "not confined to the past" and were "continuing to the present day," noting that there "'still exists a cognizable danger of a recurrent violation by [the defendants], such that injunctive relief is still required.'") (quoting *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 140 (D. Md. 2020)).

The only effective remedy is injunctive relief to restore HSOne's control over its own software and prevent further unauthorized access by Vyne.

## III.     The Balance of Equities and the Public Interest Favor Injunctive Relief.

The equities here are not close.  HSOne seeks narrowly tailored relief to stop Vyne from decrypting, rewriting, and rerouting HSOne's encrypted software communications—conduct that

14

is unauthorized and deceptive. The injunction HSOne requests would not restrict legitimate data exchange or prevent customers from accessing their own information; it would simply halt Vyne's continued intrusion into HSOne's proprietary systems. The balance of hardships tilts decisively toward HSOne. Vyne's only claimed hardship is the loss of an illegitimate business advantage it created by exploiting HSOne's software to preserve an unauthorized integration channel. A party cannot claim equitable harm from being required to comply with the law. *Gilead Sciences, Inc. v. Meritain Health, Inc.*, 2025 U.S. Dist. LEXIS 119960, at *88-89 (D. Md. June 24, 2025) ("Defendants will not be heard to complain that they will suffer business hardship by this court's order that they comport their business practices with pre-existing law"). HSOne, by contrast, suffers continuing irreparable injury each day Vyne exploits its software.

The public interest also decisively supports an injunction. Vyne does not respond to HSOne's arguments that it is in the public interest that courts enforce the CFAA, DMCA, and ECPA. HSOne's software manages sensitive patient information and critical billing data for dental practices nationwide. The public has a strong interest in ensuring that healthcare technology providers can maintain secure systems.

## **CONCLUSION**

Vyne is committed to its path of unauthorized access and will not stop unless enjoined. Because HSOne is likely to succeed on its claims and suffers irreparable harm daily based on Vyne's escalating conduct, an immediate injunction is warranted.

Respectfully submitted,

Date: November 5, 2025

By: /s/ Michael Sklaire

    Michael Burshteyn *(pro hac vice)*
    Marcelo Barros *(pro hac vice)*
    Jennifer Bartlett *(pro hac vice)*
    **GREENBERG TRAURIG, LLP**
    101 Second Street, Suite 2200
    San Francisco, CA 94105
    Tel: (415) 655-1300
    Michael.burshteyn@gtlaw.com
    Marcelo.barros@gtlaw.com
    Jennifer.bartlett@gtlaw.com

    Michael R. Sklaire (MD Fed. Bar No. 16471)
    1750 Tysons Boulevard, Suite 1000
    Tysons Corner, VA 22102
    Tel: (703) 749-1308
    michael.sklaire@gtlaw.com

    *Counsel for Henry Schein One, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 5, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael Sklaire*
Michael Sklaire