**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A VYNE DENTAL,<br>*Plaintiff*,<br>-against-<br>HENRY SCHEIN ONE, LLC,<br>*Defendant*. | Case No. 1:25-cv-03246 |

**CORRECTED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

BACKGROUND ........................................ 1

I. Statement of Facts ........................................ 1

LEGAL STANDARD ........................................ 3

ARGUMENT ........................................ 4

I. HS ONE'S FEDERAL COUNTERCLAIMS MUST BE DISMISSED ........................................ 4

A. Computer Fraud and Abuse Act ("CFAA") ........................................ 4

B. Digital Millennium Copyright Act ("DMCA") ........................................ 8

C. Electronic Communications Privacy Act ("ECPA") ........................................ 10

D. Lanham Act ........................................ 13

II. HS ONE'S UTAH STATUTORY CLAIMS MUST BE DISMISSED ........................................ 19

A. Utah Unfair Competition Act (and Common-Law Unfair Competition) ........................................ 19

B. Utah Truth in Advertising; Deceptive Trade Practices Act ("UTIAA") ........................................ 22

C. Utah Interception of Communications Act ........................................ 23

III. HS ONE'S COMMON LAW COUNTERCLAIMS MUST BE DISMISSED ........................................ 23

A. Tortious Interference ........................................ 23

B. Trespass to Chattels ........................................ 24

C. Unjust Enrichment ........................................ 25

D. Business Libel / Common-Law Defamation ........................................ 26

CONCLUSION ........................................ 27

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Muscle Docks & Fabrication, LLC v. Merco, Inc.*,
187 F. Supp. 3d 694 (N.D.W. Va. 2016)........ 18

*Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*,
820 F. Supp. 1072 (N.D. Ill. 1993)........ 18

*Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*,
640 F. Supp. 1411 (E.D.N.C. 1986)........ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........ 3, 4

*Asphalt Sys., Inc. v. Am. Gilsonite Co.*,
2025 WL 1663323 (D. Utah June 12, 2025)........ 20

*AvePoint, Inc. v. Power Tools, Inc.*,
981 F. Supp. 2d 496 (W.D. Va. 2013)........ 19

*Barr Labs., Inc. v. Quantum Pharmics, Inc.*,
827 F. Supp. 111 (E.D.N.Y.1993)........ 13

*Bedrock Quartz Surfaces, LLC v. Rock Tops Holdings LLC*,
2023 WL 8481417 (D. Utah Dec. 7, 2023)........ 20

*Blumofe v. Pharmatrak, Inc. (In re Pharmatrak, Inc. Privacy Litig.)*,
329 F.3d 9 (1st Cir. 2003)........ 11

*C.R. England v. Swift Transportation Co.*,
437 P.3d 343 (Utah 2019)........ 24

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*,
284 F.3d 302 (1st Cir. 2002)........ 16

*Casper Sleep, Inc. v. Mitcham*,
204 F. Supp. 3d 632 (S.D.N.Y. 2016)........ 19

*Chambers v. Amazon.com, Inc.*,
632 F. App'x 742 (4th Cir. 2015)........ 9, 10

*CompuServe, Inc. v. Cyber Promotions, Inc.*,
962 F. Supp. 1015 (S.D. Ohio 1997)........ 25

*Desert Miriah, Inc. v. B&L Auto, Inc.*,
12 P.3d 580 (Utah 2000)........ 25

*Diamonds Direct, L.C. v. Manly Bands*,
2024 WL 4818827 (D. Utah Nov. 18, 2024)........ 21

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)........ 13

*Dummar v. Lummis*,
543 F.3d 614 (10th Cir. 2008) ........ 25

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) ........ 4

*Estes Forwarding Worldwide LLC v. Cuellar*,
239 F. Supp. 3d 918 (E.D. Va. 2017) ........ 5

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
499 U.S. 340 (1991) ........ 9

*Glob. Pol'y Partners, LLC v. Yessin*,
686 F. Supp. 2d 631 (E.D. Va. 2009) ........ 11

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016) ........ 7

*Ground Zero Museum Workshop v. Wilson*,
813 F. Supp. 2d 678 (D. Md. 2011) ........ 25

*Haley v. Corcoran*,
659 F. Supp. 2d 714 (D. Md. 2009) ........ 4

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ........ 4

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
790 F.3d 532 (4th Cir. 2015) ........ 10

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 12

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 11, 12

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ........ 4, 6

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*,
243 F.3d 789 (4th Cir. 2001) ........ 10

*MCB Woodberry Dev., LLC v. Council of Owners of Millrace Condominium, Inc.*,
253 Md. App. 279 (2021) ........ 15

*Millennium Lab'ys, Inc. v. Ameritox, Ltd.*,
924 F. Supp. 2d 594 (D. Md. 2013) ........ 16

*Musselman v. Keele*,
559 P.3d 64 (Utah Ct. App. 2024) ........ 23

*Nutrition & Fitness, Inc. v. Mark Nutritionals, Inc.*,
202 F. Supp. 2d 431 (M.D.N.C. 2002) ........ 13

*Oce N. Am., Inc. v. MCS Servs., Inc.*,
748 F. Supp. 2d 481 (D. Md. 2010) ........ 5

*Oracle Int'l Corp. v. Rimini St., Inc.*,
123 F.4th 986 (9th Cir. 2024) ........ 18

*Overstock.com, Inc. v. SmartBargains, Inc.*,
192 P.3d 858 (Utah 2008) ........ 21

*Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*,
2021 WL 1439680 (E.D. Va. Mar. 24, 2021) ........ 17

*Real Time Med. Sys., Inc. v. PointClickCare Techs, Inc.*,
2024 WL 3569493 (D. Md. July 29, 2024) ........ 15

*Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc.*,
144 P.3d 1079 (Utah 2006) ........ 23

*Rocky Mountain Bell Tel. Co. v. Utah Indep. Tel. Co.*,
88 P. 26 (Utah 1906) ........ 21

*Scotts Co. v. United Indus. Corp.*,
315 F.3d 264 (4th Cir. 2002) ........ 16

*SecureInfo Corp. v. Telos Corp.*,
387 F. Supp. 2d 593 (E.D. Va. 2005) ........ 5

*Singh v. Lenovo (United States) Inc.*,
510 F. Supp. 3d 310 (D. Md. 2021) ........ 18

*Spencer v. Glover*,
397 P.3d 780 (Utah App. 2017) ........ 26

*St. Benedict's Dev. Co. v. St. Benedict's Hosp.*,
811 P.2d 194 (Utah 1991) ........ 24

*Total Quality Sys., Inc. v. Universal Synaptics Corp.*,
2024 WL 2391163 (D. Utah May 23, 2024) ........ 21

*Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*,
401 F. Supp. 3d 576 (D. Md. 2019) ........ 7

*UHS of Provo Canyon, Inc. v. Bliss*,
2024 WL 4279243 (D. Utah Sept. 24, 2024) ........ 23

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370 (4th Cir. 2008) ........ 4

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) ........ 8

*Van Buren v. United States*,
593 U.S. 374 (2021) ........ 5, 6, 8

*Vox Marketing Grp. v. Prodigy Promos*,
556 F. Supp. 3d 1280 (D. Utah 2021) ........ 24

*WEC Carolina Energy Sols. LLC v. Miller*,
687 F.3d 199 (4th Cir. 2012) ........ 4

*West v. Thomson Newspapers*,
872 P.2d 999 (Utah 1994) ........ 26

*Williams v. Affinion Grp., LLC*,
889 F.3d 116 (2d Cir. 2018) ........ 12, 13

**Statutes**

15 U.S.C. § 1125 ........ 13, 19

17 U.S.C. § 1201(a)(1)(A) ........ 8

18 U.S.C. § 1030 ........ 5, 6

18 U.S.C. § 2510(8) ........ 12

18 U.S.C. § 2511 ........ 10, 12, 23

MD CTS & JUD PRO § 5-807 ........ 14

Utah Code Ann. § 13-11a-3 ........ 22

Utah Code Ann. § 13-5a-102 ........ 20, 21

Utah Code Ann. § 77-23a-4 ........ 23

**Other Authorities**

American Dental Association, "Teresa Duncan M.S.," *available at*
https://engage.ada.org/b/sp/teresa-duncan-296 ........ 14

Black's Law Dictionary (12th ed. 2024) ........ 25

*Ensuring Data Ownership and Security: The Henry Schein One API Advantage*, HS One Blog (Dec. 10, 2024), https://www.henryscheinone.com/insights/blogs/ensuring-data-ownership-and-security-the-henry-schein-one-api-advantage/ ........ 9

EP 152 Future of Interoperability of Dental Information with Stephen Roberts, CEO of Vyne, YouTube (June 26, 2025), https://www.youtube.com/watch?v=iQbvfDn5M94 ........ 14

H.R. Rep. 98–894, 1984 U.S.C.C.A.N. 3689 (July 24, 1984) ........ 4, 5

Henry Schein One, Protecting Your Practice, Data, and Dentrix System, *available at*
https://perma.cc/WH8M-UJQC (last visited Nov. 13, 2025) ........ 17

Nobody Told Me That!, A Dental Podcast with Teresa Duncan, https://nobodytoldmethat.libsyn.com/ .......... 14

Utah Model Jury Instruction CV1606 .......... 26

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 3

Fed. R. Civ. P. 9(b) .......... 4

## PRELIMINARY STATEMENT

HS One's counterclaims are long on technical-sounding buzzwords but short on substance. HS One recites a litany of computer-related terms and phrases—"[p]atching security flags in DtxHelp.dll at runtime" or "extracting OBDC connection strings"—without ever defining them, explaining what they are, or tying them to legal obligations. When stripped of the buzzwords, HS One's counterclaims fail to allege any coherent theory of wrongdoing. All the purported misconduct occurred with customers' knowledge and consent on computers that the customers—not HS One—owned. That dooms HS One's counterclaims.

If HS One's counterclaims contain any discernible substance, they proceed from the premise that Vyne supposedly engaged in unlawful "hacking" when Vyne accessed—with its customers' express consent—patient data belonging to its customers (not HS One), stored on the customers' *own computers*. That is not hacking. Customers not only consent to this but pay Vyne a fee to process data that the customers own and store on their own machines. Vyne's software services do not become "hacking" when HS One's programs also access some of that data.

Taken to their next logical station, HS One's assertions ask the Court to hold that HS One possesses—as a matter of law—the power to dictate which programs customers are allowed to run on their own computers. For obvious reasons, no such law exists. While the law bars unauthorized computer access, it cannot bar computer owners from rerouting their own data from one software program to another. And it certainly does not impose liability on a competing software publisher.

## BACKGROUND

### I. Statement of Facts

As alleged in HS One's Counterclaims, Dkt. 45, Vyne and HS One are two software companies that deliver services to dental practices. *See* Counterclaims ¶¶ 1-5. Vyne, through a program called Trellis, provides predominantly "billing services," *id.* ¶ 6, while HS One, through

programs called Dentrix and Dentix Ascend, "streamline[s] operational, clinical, and financial processes." *Id.* ¶ 3.

HS One alleges that it offers "the ability for dental practices to contract with approved third-party software vendors" through something called the Application Programming Interface (API) Exchange." *Id.* ¶ 4. It acknowledges that "Vyne, at one point, was part of HS One's API program" and that Vyne still "shares many dental customers with HS One" despite the fact that the parties no longer interoperate using API Exchange. *Id.* ¶ 6, 34.

When Vyne allegedly refused to agree to "API Terms of Service" that HS One attempted to impose, *id.* ¶ 12, Dentrix responded by "implementing security patches and upgrades to stop unauthorized access to its systems installed on customer locations." *Id.* ¶ 14. HS One contends that it had "no choice but to go the route of implementing technical measures to protect the integrity of its systems and customer data." *Id.*

HS One next alleges that in response to those new "technical measures" to prevent Vyne's interoperability with Dentrix, Vyne "decided to hack HS One's software." *Id.* ¶ 34, 36. That "hacking," according to HS One, consisted of Vyne "deploy[ing] unauthorized [API] workarounds" and "offer[ing] alternative workflows" to Vyne customers so that those customers could "rerout[e] . . . patient claim data" from Dentrix to Vyne. *Id.* ¶¶ 11-14, 47. Thus, according to HS One, Vyne facilitated customers' access to "HS One's software on protected computers" located "on customers' premises." *Id.* ¶ 6, 76.

HS One alleges that, to facilitate that access, Vyne obtained from customers' computers, without authorization, the "configuration files which HS One uses to facilitate customer access to [HS One's] database" on "software systems located on customers' premises." Counterclaims ¶¶ 6,7. Thus, by allegedly constructing a workaround to re-route patient data to Vyne with "private

decryption keys HS One provide[d] to its customers," Vyne is accused of "misappropriating encrypted administrator credentials," data that HS One says belongs to Dentrix, to reach the "end result [of] rerouting of patient claim data to Vyne controlled servers." *Id.* ¶¶ 7, 47, 80.

Next, HS One alleges injury to its business from "false or misleading statements" that Vyne allegedly made about Vyne's "own conduct" and about "HS One's platform," thereby "confus[ing] customers." *Id.* ¶¶ 1, 14, 126. It claims that Vyne misled customers when it allegedly sent correspondence with statements suggesting that "Vyne was not engaging in hacking or violations of the law," and that HS One's security updates were "pretextual," for example. *Id.* ¶¶ 134-36; *see also id.* ¶ 62 (noting statements in a letter from Vyne to Dentrix on behalf of more than 500 dental practices). It also challenges alleged statements to the effect that "[HS One] prohibits all alternative integration methods," "undermines . . . practice autonomy," or "seeks to disable [customers'] ability to send claims through [Vyne]." *Id.* ¶ 14.

Vyne also alleges that it was harmed by comments that Vyne CEO Stephen Roberts made in a "public interview[]" on YouTube. *Id.* ¶¶ 83, 127. According to HS One, Roberts unlawfully "boasted about Vyne's ability to bypass HS One's controls, without revealing the full extent of Vyne's hacking," which allegedly "cost HS One both goodwill and business . . . while also forcing it to incur expenses in responding to and remediating the harm." *Id.* ¶¶ 63, 128-29.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (applying standard to counterclaims). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action," "conclusory statements," and "legal conclusions" are insufficient. *Id.* And if the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," then the claim(s) must be dismissed. *Id.* at 679.

If a pleading's allegations sound in fraud, Federal Rule of Civil Procedure 9(b) applies; it requires the claimant to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009). To satisfy this standard, the allegations "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (cleaned up). Allegations that fail to comply with Rule 9(b) warrant dismissal. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).

## ARGUMENT

### I. HS ONE's FEDERAL COUNTERCLAIMS MUST BE DISMISSED

#### A. Computer Fraud and Abuse Act ("CFAA")

The Computer Fraud and Abuse Act ("CFAA"), which is "primarily a criminal statute designed to combat hacking," *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 201 (4th Cir. 2012), targets "hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to 'access and control high technology processes vital to our everyday lives.'" *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130–31 (9th Cir. 2009) (quoting H.R. Rep. 98–894, 1984 U.S.C.C.A.N. 3689, 3694 (July 24, 1984)). The CFAA accomplishes that purpose by "prohibit[ing] a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to

damaging a computer or computer data." *Id.* The statute also creates a private right of action under Section 1030(g), which provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

HS One's factual allegations do not plausibly support CFAA liability. *First*, HS One lacks a cause of action because it does not allege any unauthorized access to its own computers. The CFAA protects *computers*, not software. 18 U.S.C. § 1030; *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 922-24 (E.D. Va. 2017). The CFAA does not give software companies the authority, on penalty of criminal law, to dictate how third parties interact with computer systems that they neither own nor control. *See Van Buren v. United States*, 593 U.S. 374, 394 (2021) ("If the 'exceeds authorized access' clause criminalizes every violation of a computer-use policy, then millions of otherwise law-abiding citizens are criminals."). And it also does not provide software publishers a private right of action to complain about unauthorized access to the computers of persons on which their software may be installed. *See Oce N. Am., Inc. v. MCS Servs., Inc.,* 748 F. Supp. 2d 481, 485-88 (D. Md. 2010) (holding that despite allegations of software misuse, there is no CFAA liability when defendants accessed the *computers* with authorization from the owners); *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 609 (E.D. Va. 2005) (dismissing a software publisher's CFAA claims against a defendant who accessed a server with the permission of a licensee and noting that the CFAA is intended to apply to "outsiders" who access a computer, not "insiders" who use those computers with permission).

But that is exactly what HS One alleges. HS One alleges that Vyne supposedly violated the CFAA by facilitating access to "HS One's software on protected computers without authorization or exceeding authorized access to obtain information from the protected

computers[.]" Counterclaims ¶ 76. And HS One concedes that the relevant computers and servers were not HS One's, but rather those "on customers' premises." *See, e.g., id.* ¶ 6. That alone is fatal.

*Second*, the claim fails even if HS One could complain about access to computers HS One does not own, because HS One does not allege that Vyne acted in excess of the authorization granted by dental practices, who are the owners of the computers. The touchstone of CFAA liability is indeed that the defendant acted "without authorization" or by "exceed[ing] authorized access." 18 U.S.C. § 1030(a)(2)(C). As the Supreme Court has explained, the CFAA's "'without authorization' clause" refers to "outside hackers—those who 'access a computer without any permission at all.'" *Van Buren v. United States*, 593 U.S. 374, 389 (2021) (quoting *Brekka*, 581 F.3d at 1133). The defendant must have "no rights, limited or otherwise, to access the computer in question," or exceed a specific grant of permission to "use a computer for certain purposes" and not others. *Brekka*, 581 F.3d at 1133.

HS One does not plausibly allege that Vyne accessed computers without or in excess of the owners' authorization. The counterclaims nowhere contain that allegation, even in conclusory fashion. And any such allegation would be refuted by other allegations in the counterclaims. *See, e.g.,* Counterclaims ¶ 62 (noting Vyne's letter to Dentrix on behalf of more than 500 dental practices); *id.* ¶ 30 ("At least 100 third-party vendors . . . offer solutions to HS One's customers in over 40 categories . . . [,] enabling developers to build a plethora of applications that work with Dentrix."). Although the counterclaims complain about the method by which Vyne's software facilitates access to information on HS One's software, it also alleges that dentists contract with Vyne precisely to enable the submission of claims using patient data on HS One's software. HS One cannot plausibly allege that Vyne's accessing patient data stored using HS One software

contravenes what dentists want when, as the counterclaims allege, dentists obtain a Vyne software license for the very purpose of submitting claims using data stored on HS One software.

Even if there were a question on the point, Vyne's terms of service show that HS One has no plausible claim. The Court can consider these terms of service on a motion to dismiss because it is a "document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 589 (D. Md. 2019) (considering contractual agreements submitted by the movant).

And the terms of Vyne's contracts conclusively show what should be obvious from the very fact that dentists contract for this service: dentists expressly authorize Vyne to access and handle customers' patient health information, including when that information is stored within or altered by third-party practice-management programs like Dentrix. *See* Dkt. 61-2, Ex. D ¶ 4 ("Customer expressly authorizes Vyne Dental, and grants Vyne Dental full agency and authority on Customer's behalf, to request, access, retrieve, use, and export Customer Data, including without limitation patient health information, billing records, scheduling data, insurance data, and any related information—from any and all third-party platforms, vendors, and systems (including without limitation dental practice management systems) where such data is stored[.]"). Those contracts authorized Vyne to step into its customers' shoes to interface with Dentrix, transmit health information, and use that information to deliver the services necessary to perform under the contract. *See id*. ("Customer further consents to and hereby authorizes Vyne Dental to send written data access and interoperability requests directly to third-party vendors, platforms, or custodians

of such data on Customer's behalf."). These authorizations are reflected in the plain text of the agreements; they cannot be controverted by conclusory or strained allegations.

*Finally*, the Court should consider the absurd results that would follow under HS One's perverse reading of the CFAA. If HS One's position were adopted, any software company could subject its competitors to *criminal liability* by unilaterally asserting that select files and folders on customer-owned computers cannot be touched by other software programs—with or without the customer's knowledge or consent. The Supreme Court has emphatically rejected this approach to interpreting the CFAA. *See Van Buren*, 593 U.S. at 392 (refusing to interpret the CFAA in a way that "would attach criminal penalties to a breathtaking amount of commonplace computer activity"); *United States v. Nosal*, 676 F.3d 854, 860 (9th Cir. 2012) ("Basing criminal liability on violations of private computer use policies can transform whole categories of otherwise innocuous behavior into federal crimes simply because a computer is involved.").

**B. Digital Millennium Copyright Act ("DMCA")**

HS One's cause of action under the Digital Millennium Copyright Act's ("DMCA's") similarly fails. The DMCA contains three provisions directed at the circumvention of copyright owners' technological measures. The relevant provision here, 17 U.S.C. § 1201(a)(1)(A), is a general prohibition against "circumventing a technological measure that effectively controls access to a work protected under [the Copyright Act]."

To state a claim under DMCA Section 1201(a)(1)(A), which Congress enacted "to mitigate the problems presented by copyright enforcement in the digital age," a copyright owner must plausibly allege (1) that the alleged violator "circumvent[ed] . . . [a] technological measure" that is "designed to control access to copyrighted works or to protect a copyright owner's rights" and (2) that such circumvention either "infringes or facilitates infringing a right protected by the

Copyright Act." *Chambers v. Amazon.com, Inc.*, 632 F. App'x 742, 744 (4th Cir. 2015) (citations omitted).

1. The claim fails because HS One does not allege a "technological measure" that was "designed to control access to copyrighted works or to protect a copyright owner's rights." *Id.* The counterclaims allege that Vyne allegedly accessed "configuration files which HS One **uses to facilitate customer access** to [HS One's] database" on "software systems **located on customers' premises.**" Counterclaims ¶¶ 6,7 (emphasis added). Thus, although software programs like Dentrix may be copyrighted, *see id.* ¶¶ 86-91, HS One does not allege that its customers' credentials control access *to software code*. Rather, the claim is that the customers' credentials control access to their own patient data, which dentists themselves uploaded to Dentrix.

That leads to at least three related problems for HS One. *First*, this shows that the technological device does not control access to copyrighted work, because the patient data is not subject to copyright protection. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) (holding that customer data like names, towns, and telephone numbers are "facts [that] are not copyrightable"). Thus, any alleged "circumvention" does not implicate "right[s] protected under the Copyright Act" because the relevant information Vyne is said to have obtained is ineligible for copyright protection. *Second*, putting that aside, the only data that is protected here belongs to HS One's customers, not to HS One,[1] so even if the data were subject to copyright protection, HS One itself would have no claim as a copyright owner, and thus no standing to

[1] HS One's own publicly available marketing materials emphasize that one of the advantages of its software is that dental practices retain full ownership of uploaded data. *See Ensuring Data Ownership and Security: The Henry Schein One API Advantage*, HS One Blog (Dec. 10, 2024), https://www.henryscheinone.com/insights/blogs/ensuring-data-ownership-and-security-the-henry-schein-one-api-advantage/ ("There's a common misconception that when [dental practices] use Henry Schein One's API, they don't own their data. This just isn't correct. [Dental practices] maintain control over their data through the securely hosted data repository – designed with top-tier security to ensure your information remains safe.").

complain. *Third*, given that HS One's pleading alleges that Vyne is using credentials that HS One provides its own customers, Counterclaims ¶ 7—and given that, as explained above, Vyne does so with its customers authorization and consent, *supra* at 6-8—there can be no circumvention; HS One gives its own customers the very access that is being employed here.

2. The claim also fails for the separate (but related) reason that, even if HS One could allege that the technological device barred access to protected software, HS One does not allege that Vyne circumvents that device to "infringe[] or facilitate[] infringing a right protected by the Copyright Act." *Chambers*, 632 F. App'x at 744. To state a claim for infringement under the Copyright Act, HS One must plausibly allege "that it owned a valid copyright and that the defendant copied the original elements of that copyright." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015) (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001)). HS One does not allege that any such thing occurred. It alleges that Vyne enabled its customers to obtain patient data so as to submit claims. That is plainly not a violation of the Copyright Act—including because, as noted, the patient data is not subject to copyright protection, and it belongs to the dentists, who are the persons accessing the data in the first place.

**C. Electronic Communications Privacy Act ("ECPA")**

For largely the same reasons, HS One fails to plausibly allege that Vyne engaged in any "wiretapping" in violation of the Electronic Communications Privacy Act ("ECPA"). As relevant, a person violates the ECPA when he or she "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511. HS One must plausibly allege that Vyne "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *Blumofe v.*

*Pharmatrak, Inc. (In re Pharmatrak, Inc. Privacy Litig.)*, 329 F.3d 9, 18 (1st Cir. 2003)). HS One's counterclaim fails as to each of the second, third, and fourth elements.

HS One does not plausibly plead an unlawful interception. To qualify as an interception, access must be "contemporaneous[] with [] transmission by [the] sender." *Glob. Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (holding that for a communication to be "intercepted," it must be "acquired during transmission, not while it is in electronic storage"). The ECPA therefore extends to access of communications "in transient storage on a server during the course of transmission, but does *not* include accessing [] messages stored [at the destination]." *See Yessin*, 686 F. Supp. 2d at 638. Once the communication is saved on a destination server, it is a "stored communication" that can be accessed but not "intercepted" under the ECPA. *See Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 877 (9th Cir. 2002) (concluding that "intercept" as defined in ECPA should be construed narrowly in light of separate "access" provisions of [Stored Communications Act]).

No contemporaneous access has been pleaded. As with its other allegations, HS One simply takes the relevant legal conclusion—in this case, "interception"—and thrusts that label onto ordinary customer interactions with software-service providers. *See* Counterclaims ¶¶ 7, 10, 46-48, 52-53, 71. For example, HS One alleges that Vyne "intercepted" data when it created tools that Vyne's customers could then employ to reroute the submission of patient data to Vyne's servers instead of to HS One's. *See, e.g., id.* ¶ 47. But there is no conceivable meaning of the word "intercept"—technical, colloquial, or otherwise—that extends to a customer's own decision to send his or her own data in a way that the customer wishes.

Nor does HS One plead the interception of an electronic communication's "contents." The term "contents" is defined as "information concerning the substance, purport, or meaning of that

communication," 18 U.S.C. § 2510(8), which distinguishes it from the many other types of data—like transactional records or metadata—which are not considered "contents" under the ECPA. Courts routinely differentiate between content and noncontent information to hold that basic identification and address information are not "contents" of a communication under the ECPA. *See, e.g., In re Zynga Priv. Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014) ("[B]asic identification and address information . . . does not constitute the contents of a communication."). Among the types of information courts have excluded from the definition of "content" are "user names," "passwords," "cell phone . . . location data," the "date, time, and length [of telephone calls]," "subscriber number[s]," and "email address[es]." *In re Carrier IQ, Inc.,* 78 F. Supp. 3d 1051, 1065-66, 1083-85 (N.D. Cal. 2015) (collecting cases); *see Konop,* 302 F.3d at 877-78. According to the pleading, the claim centers on Vyne allegedly accessing "**private decryption keys** HS One provide[d] to its customers." Counterclaims ¶ 7. Thus, even if HS One could point to any facts indicating that Vyne was "harvesting credentials" or "misappropriating encrypted administrator credentials," Counterclaims ¶¶ 7, 80, those credentials are precisely the sort of "authentication for purposes of access" information that fall outside the ECPA's "contents" definition. *In re Carrier IQ, Inc.,* 78 F. Supp. 3d at 1084.

Finally, even if HS One somehow alleged a violation, the claim should still fail because the ECPA affords a "safe harbor for interceptions made with prior consent." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 121 (2d Cir. 2018) (citing 18 U.S.C. § 2511(2)(d)). Under this safe harbor, it "shall not be unlawful" to "intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). That is exactly the situation here. Again, HS One's customer here is the party that allegedly did the "[re-]rerouting of patient

claim data"—the alleged interception, Counterclaims ¶ 47; but to the extent there was any intercepted communication, the customer was a party to it. And to the extent Vyne did anything, it was done with the customer's consent and at the customer's request, given that it occurred to facilitate the customer's transmission of information as part of the claim-processing process. *Id.* ¶¶ 6-7, 11. The safe harbor therefore fully applies. *See Williams*, 889 F.3d at 121–22 (holding that authorization of release of information to defendant by customers foreclosed ECPA claim); *Doe I v. Google LLC,* 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (no ECPA liability where "[t]he alleged interception of private health information only occurs because the health care providers choose to install Google source code on their web properties," which "must mean the providers consented to the operation of Google source code").

**D. Lanham Act**

HS One contends that Vyne violated the Lanham Act by disseminating and publishing "false advertising statements" to the Parties' mutual customers and to the market at large when it communicated—in HS One's words—(1) that "Vyne was not engaging in hacking or violations of the law," and (2) that the so-called security updates HS One deployed to disrupt Vyne's functionality were "pretextual." Counterclaims ¶¶ 134-36. This counterclaim—which is subject to Rule 9(b)'s heightened pleading standards as it states that Vyne acted "with the intention of causing . . . mistake," Counterclaims ¶ 138[2]—necessarily fails.

---

[2] Although not *every* claim under 15 U.S.C. § 1125 must satisfy Rule 9(b) or otherwise meet heightened pleading requirements, Rule 9(b) necessarily applies to any claim that sounds in "fraud" or "mistake," which HS One expressly invoked. *Nutrition & Fitness, Inc. v. Mark Nutritionals, Inc.*, 202 F. Supp. 2d 431, 434 (M.D.N.C. 2002); *cf. Barr Labs., Inc. v. Quantum Pharmics, Inc.,* 827 F. Supp. 111, 118 (E.D.N.Y.1993) ("[E]ven if Rule 9(b) is not applicable, [plaintiff] is required to state generally the content of the alleged misrepresentations.").

From the outset, HS One's Lanham Act claim fails because it is subject to the Maryland Anti-SLAPP statute. MD CTS & JUD PRO § 5-807. The Anti-SLAPP statute prohibits lawsuits "brought in bad faith" that are aimed at a person or entity "who has communicated with . . . the public… in [the] exercise of rights afforded by the First Amendment or Articles 10, 13, or 40 of the Maryland Declaration of Rights regarding any issue of public concern" with the intention of inhibiting the exercise of such rights. *Id.* § 5-807(b)(1). As is clear from the face of HS One's own pleading, the allegedly misleading statements by Vyne CEO Stephen Roberts were made in a "public interview[]," Counterclaims ¶ 127, that Mr. Roberts participated in as a guest on Nobody Told Me That!,[3] a podcast hosted by Teresa Duncan, a noted writer and public figure in the dental industry.[4]

HS One cannot deny that the interview constituted communication with the public, as required by the Anti-SLAPP statute, because it alleges as much. *See, e.g.*, Counterclaims ¶ 132 (alleging that Vyne's communications were "disseminated . . . to the market at large (e.g., through CEO interview)"). Nor can it dispute that Mr. Roberts's statements, which addressed information blocking by practice management software programs including HS One,[5] concerned a matter of public interest. A matter of public concern for purposes of Maryland's Anti-SLAPP statute is

---

[3] *See* Nobody Told Me That!, A Dental Podcast with Teresa Duncan, https://nobodytoldmethat.libsyn.com/ (stating that, in her 161-episode podcast, Duncan "explores the dental business from behind-the-scenes of the industry to tackling management and business issues in the office").

[4] *See, e.g.*, American Dental Association, "Teresa Duncan M.S.," *available at* https://engage.ada.org/b/sp/teresa-duncan-296 (noting that Duncan is "a speaker and writer with over 20 years' experience in healthcare" who "has been named one of the Top 25 Women in Dentistry" and is "a frequent contributor to multiple dental publications").

[5] EP 152 Future of Interoperability of Dental Information with Stephen Roberts, CEO of Vyne, YouTube (June 26, 2025), https://www.youtube.com/watch?v=iQbvfDn5M94 (describing interview "to discuss why the dental industry is ready for transformational change and what that means for claims processing, practice efficiency, and ultimately, better care for your patients" and stating that Duncan "shared [her] frustration at the unfairness of p[a]tient data being gatekept just for profit").

understood broadly to mean anything "fairly considered as relating to any matter of political, social or other concern to the community" including anything that "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *MCB Woodberry Dev., LLC v. Council of Owners of Millrace Condominium, Inc.*, 253 Md. App. 279, 304 (2021) (citations omitted) (holding that communications about parking spaces related to an issue of public concern). Mr. Roberts's comments concerned efforts by practice management systems to withhold patient data for profit, the same conduct HS One has now committed to the detriment of hundreds of dental practices across the country. The public undoubtedly has an interest in the free exchange of patient health information. *See Real Time Med. Sys., Inc. v. PointClickCare Techs, Inc.*, 2024 WL 3569493, at *12 (D. Md. July 29, 2024) ("The public []benefits from fostering access to medical records consistent with, not in contravention of, the Cures Act.").

And HS One's bad faith in bringing its Lanham Act claim is clear from the face of the pleadings. *See MCB Woodberry*, 253 Md. App. at 305, 307–08 (explaining that "bad faith is susceptible of being determined as a matter of law by the court on a motion to dismiss an alleged SLAPP suit"). First, the "timing of [HS One]'s complaint" is "suggestive of retaliation." *Id.* at 309. HS One first raised a Lanham Act claim against Vyne in Utah days after Vyne brought its own Lanham Act claim to put an end to HS One's own false and misleading statements. Indeed, HS One's second-filed suit mirrors every claim brought by Vyne, making clear that HS One's Lanham Act claim was a copycat pleading without any basis in fact. Secondly, the "allegations of the complaint [a]re 'conclusory' and 'devoid of any specific facts'" to support the Lanham Act claim. *Id.* at 310. Watching even seconds before and after the few quotes HS One cherry-picks from the interview makes obvious that Mr. Roberts was not "boast[ing] about Vyne's ability to

bypass HS One's controls." Counterclaims ¶ 63.[6] As described below, HS One's Lanham Act allegations are facially and obviously deficient, making plain that its claim was brought with the intent to target Vyne's CEO personally and intimidate him from making further statements concerning HS One's information blocking.

Anti-SLAPP statute aside, the claim fails on its own terms. To survive a motion to dismiss, a Lanham Act false advertising claim must be supported by specific factual allegations that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002) (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002)).

*Falsity*. As Maryland courts have explained, "the falsity" of a challenged statement for purposes of the Lanham Act "must be evident from the face of the ad itself," and "[a]n advertisement cannot be said to be literally false if the advertising message is ambiguous, meaning that it is susceptible to two reasonable readings, one of which is literally true." *Millennium Lab'ys, Inc. v. Ameritox, Ltd.*, 924 F. Supp. 2d 594, 600 (D. Md. 2013). HS One challenges statements

[6] In context, Mr. Roberts is clearly describing challenges Vyne has faced to facilitate the transfer of patient data from practice management systems:

> "We work with every practice management system. I mean the reality is most practice management vendors don't have APIs and we just take on the work of directly interfacing with their systems however it's made available to us. Sometimes it's direct connections to the database. Sometimes it's through the user interface. Sometimes it's through application extensions. And so we've always had this problem. Our practice management vendors aren't – because they're not engaged in interoperability innovation. They're not helping us. They've never helped us connect. Now, of late, we've had really great relationships forming with Eaglesoft and OpenDental around really healthy, API-driven interfaces because they see the vision of truly transforming how revenue cycle management works, really progressing towards a real-time exchange."

Future of Interoperability of Dental Information, *supra*, at Timestamp 28:08–29:57.

that are not false at all. For example, HS One challenges a statement in which Vyne described its printer driver as an "integration method" and stated that, upon a developer entering the Dentrix Development Program, the program "prohibits all alternative integration methods" upon entry. Counterclaims ¶ 58. An API-or-nothing approach is exactly how HS One describes its program on its own website[7] and throughout its entire complaint, which it claims is intended to "[s]top[] circumvention of HS One's API, which is *the* secure and stable method of integrating with its software platforms." Counterclaims ¶ 29 (emphasis added). Vyne cannot be "circumvent[ing]" the API if the DDP does not "prohibit all alternative integration methods."

Moreover, HS One targets nonactionable statements of opinion that are neither "description[s] of fact" nor "representation[s] of fact." On their face, the alleged comments are subjective and generalized statements of opinion, which courts in this Circuit have specifically held are not actionable under the Lanham Act. *See, e.g., Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.,* 2021 WL 1439680, at *26 (E.D. Va. Mar. 24, 2021) (holding that defendant's statements that a particular transition was "smooth" or "successful" were "subjective descriptions that are vague, so lacking in specificity, that they clearly constitute [] opinion). Here, HS One challenges statements to the effect that "[HS One] prohibits all alternative integration methods," "undermines . . . practice autonomy," or "seeks to disable [customers'] ability to send claims through [Vyne]." Counterclaims ¶ 14. These are not factual representations about the nature, characteristics, qualities, or origin of HS One's products or services, but statements concerning (1) Vyne's lack of culpability in connection with HS One's efforts to degrade the interoperability of Trellis and (2) Vyne's confidence in its ability to maintain its own systems. Courts have

[7] *See* Henry Schein One, Protecting Your Practice, Data, and Dentrix System, *available at* https://perma.cc/WH8M-UJQC (last visited Nov. 13, 2025) (DDP participants must "agree to access Dentrix data only through the secure API").

repeatedly held that such generalized statements are inherently subjective and not verifiable factual claims about product qualities. *See, e.g., Oracle Int'l Corp. v. Rimini St., Inc.,* 123 F.4th 986, 1001 (9th Cir. 2024) (noting that "[c]omparative assertions about effectiveness, riskiness, and security are the kinds of generalized statements" that courts have "routinely found to be nonactionable"); *Singh v. Lenovo (United States) Inc.,* 510 F. Supp. 3d 310, 330 (D. Md. 2021) ("Allegations about 'seamless transitions' are too vague and general to be actionable.").

*Commercial advertisement.* Separately, HS One's Lanham Act claim fails because none of the challenged statements were connected to any alleged "commercial advertisement" insofar as those comments were not allegedly offered "for the purpose of influencing consumers to buy [Vyne's] goods or services" or "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Am. Muscle Docks & Fabrication, LLC v. Merco, Inc.,* 187 F. Supp. 3d 694, 700 (N.D.W. Va. 2016). For example, one of the statements that HS claims is part of Vyne's "campaign" of "false advertising" is a private letter containing patient information that Vyne delivered to HS One. Counterclaims ¶ 62. Nowhere does Vyne allege that HS One distributed or publicized the contents of this letter to *anyone*, much less to the market, and for the express purpose of influencing customer purchasing decisions, as the Lanham Act requires. *See, e,g., Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.,* 820 F. Supp. 1072, 1078 (N.D. Ill. 1993) ("To permit a single private correspondence to constitute ["advertising" or "promotion"] for purposes of [Lanham Act] liability would render their use superfluous and would sweep within the ambit of the Act any disparaging comment made in the context of a commercial transaction.").

*Materiality.* Finally, there is no merit to HS One's assertion that Vyne incurred liability by "omit[ing] its hacking conduct, which includes DLL file patching, decryption," etc. from

statements. Counterclaims ¶ 134. The statute does not impose an affirmative duty to disclose internal engineering practices, nor does it cover statements that omit details about how a product works. *See Casper Sleep, Inc. v. Mitcham,* 204 F. Supp. 3d 632, 638 (S.D.N.Y. 2016) ("The [Lanham] Act imposes no affirmative duty of disclosure . . . and a claim cannot be based on the failure to disclose a fact."). Even if affirmative disclosure were required, Courts have uniformly emphasized that the Lanham Act extends only to misrepresentations that directly impact consumer perceptions of the "origin, sponsorship, or approval of *his or her* goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A). By its plain text, the relevant provision "does not extend to [such] misrepresentations regarding . . . *another person's* goods or services." *AvePoint, Inc. v. Power Tools, Inc.,* 981 F. Supp. 2d 496, 518 (W.D. Va. 2013) (emphasis added). Thus, courts have made clear that the Lanham Act does not create liability for false statements about a competitor's product qualities *unless* those statements are made in comparison to one's own goods. *See, e.g., Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp*., 640 F. Supp. 1411, 1439 (E.D.N.C. 1986). Without factual allegations indicating that Vyne offered a direct and materially misleading comparison between the two companies, the Lanham Act is irrelevant to Vyne's criticism of HS One's interference.

## II. HS ONE'S UTAH STATUTORY CLAIMS MUST BE DISMISSED[8]

### A. Utah Unfair Competition Act (and Common-Law Unfair Competition)

To plead a claim under Utah's Unfair Competition Act, subject to an exception not applicable here, HS One must plausibly allege an "intentional business act or practice" that "(i)(A) is unlawful, unfair, or fraudulent" and "(B) leads to a material diminution in value of intellectual property;" and "(ii) is one of the following: (A) malicious cyber activity;

[8] Vyne assumes solely for purposes of this motion that Utah law should govern HS One's state law claims.

(B) infringement of a patent, trademark, or trade name; (C) a software license violation; or (D) predatory hiring practice." Utah Code Ann. § 13-5a-102(4).[9]

HS One's allegations do not state a claim under this statute. *First*, HS One does not allege any unlawful, unfair or fraudulent conduct. HS One allegation in this regard is that Vyne engaged in "unlawful acts by violating multiple federal statutes and hacking HS One's software." No law or statute is identified beyond those stated elsewhere in the complaint as a basis for imposing liability under them, but as stated elsewhere in this motion, HS One fails to plead any unlawful act. This not only dooms HS One's claims under those statutes but also defeats liability here as well.

*Second*, there is no plausible allegation that the alleged misconduct caused a "material diminution in value of intellectual property." HS One includes conclusory assertions about supposed erosion in "customer trust and goodwill," Counterclaims ¶ 104, but that is not tied to intellectual property, and it is boilerplate too. *Asphalt Sys., Inc. v. Am. Gilsonite Co.*, 2025 WL 1663323, at *4 (D. Utah June 12, 2025) ("AGC's conclusory mention of 'goodwill' is insufficient to show a material diminution in value."); *Bedrock Quartz Surfaces, LLC v. Rock Tops Holdings LLC*, 2023 WL 8481417, at *5 (D. Utah Dec. 7, 2023) (finding insufficient claim that "[u]pon information and belief, Rock Tops' misuse of the Bedrock Quartz Trademark has diverted sales of products and services away from Bedrock Quartz, resulting in financial damages as well as damage to the value and goodwill of Bedrock Quartz's trademark"). Moreover, to the extent that HS One claims that the value of its software was impaired, *see* Counterclaims ¶ 98, courts interpreting the statute have made clear that it does not apply to content allegedly subject to copyright protection (as would be HS One's software), because the statute identifies only patents and trademarks as

[9] Although the title of Count III invokes the common law, the paragraphs of the cause of action do not.

protected intellectual property. *See Diamonds Direct, L.C. v. Manly Bands*, 2024 WL 4818827, at *10 (D. Utah Nov. 18, 2024) ("Lashbrook's claim under this statute arises from alleged copyright infringement, but the statute does not list copyright infringement as a possible basis for a claim, even though patent and trademark infringement are listed.").

*Third*, HS One has also not pleaded that the alleged unfair conduct here is either "malicious cyber activity" or "a software license violation," Utah Code Ann. § 13-5a-102(4)(ii); *see* Counterclaims ¶¶ 97, 100. The statute contains a four-part definition of "malicious cyber activity," Utah Code Ann. § 13-5a-102(3), each of which must be met, but HS One makes no effort to satisfy them; there is, for example, zero allegation of an "unlawful use of computing resources to intimidate or coerce others." *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 2024 WL 2391163, at *3 (D. Utah May 23, 2024) (dismissing claim, as "TQS must allege facts that would support each element of the statutory definition of malicious cyber activity"). And although HS One states that there has been a "software license violation," it does not identify which license was violated, or which terms.

*Finally*, HS One has not plausibly alleged any other product imitation, false advertising, or other customer deception to state a claim for unfair competition under Utah common law. In Utah, common law unfair competition "consists in one person imitating by some device or designation the wares made and sold by another for the purpose of palming off or substituting his wares for those of the other, and in that way misleading the purchaser by inducing him to buy the wares made and sold by the first instead of those by the second." *Rocky Mountain Bell Tel. Co. v. Utah Indep. Tel. Co.*, 88 P. 26, 28 (Utah 1906); *see Overstock.com, Inc. v. SmartBargains, Inc.*, 192 P.3d 858, 862-863 (Utah 2008) (same). HS One has not alleged that Vyne ever tried to pass itself off as HS One or that any customers believed they were receiving services from Vyne that were in

fact delivered by another party. Rather, it alleges that Vyne's customers understood that Vyne and HS One were in a dispute about the interoperability of their respective programs. *See* Counterclaims ¶ 62 (alleging that "Vyne delivered a letter to HS One purporting to represent over 500 dental practices . . . request[ing] access").

**B. Utah Truth in Advertising; Deceptive Trade Practices Act ("UTIAA")**

Next, the Court should dismiss HS One's counterclaim for deceptive trade practices under the Utah Truth in Advertising Act ("UTIAA"). The UTIAA lists a range of advertising practices that the statute designates as "deceptive." Utah Code Ann. § 13-11a-3. Similar to the Lanham Act, the statute encompasses deceptive representations as to the nature, source, or price of goods and services, as well as false statements of fact in comparing goods and services to a competitor's.

Although HS One does not specify which of these offenses underlie its counterclaim, HS One appears to predicate liability on the same assertions that ground its Lanham Act claims (i.e., allegedly "false or misleading representations of fact" that HS One says, "caused confusion about sponsorship/approval and legality of Vyne's malicious data extraction and injection.") Counterclaims ¶ 125. While "data extraction and injection" are undefined, the allegations appear to correspond to subsections (b) and (h), which prohibit "caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services" and "disparag[ing] the goods, services, or business of another by false or misleading representation of fact," respectively. Utah Code Ann. § 13-11a-3(1)(b) & (h).

HS One's exceptionally vague UTIAA allegations fail to state a claim for the same reasons that they fail to state a claim under the Lanham Act, *see supra* at 13-19. Again, statements such as "[HS One] "prohibits all alternative integration methods" does not portend any confusion about source or sponsorship of the services that the Parties' shared customers are already paying for. Those customers knew they were purchasing Vyne and HS One's respective software offerings to

deliver distinct services, and nothing in HS One's counterclaims suggests that Vyne has ever held itself out as HS One. The UTIAA requires more than mere speculative potential for misunderstanding; there must be a *likelihood* of confusion about origin or certification. *Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc.*, 144 P.3d 1079, 1083 (Utah 2006).

**C. Utah Interception of Communications Act**

HS One's counterclaims under the Utah Interception of Communications Act ("UICA") fail for the same reasons as the ECPA counterclaim. *See supra* at 10-13. The UICA provision at issue—Utah Code Ann. § 77-23a-4(1)(b)(i)—is materially identical to the ECPA provision on which HS One's "interception" counterclaim is based. *Compare* Utah Code 77-23a-4(1)(b)(i) ("intentionally or knowingly intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic, or oral communication") *with* 18 U.S.C. § 2511 ("intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication"). And as with the ECPA, a sole party's consent to the transmission or recording of the relevant communications is sufficient to defeat liability. *UHS of Provo Canyon, Inc. v. Bliss*, , 2024 WL 4279243, at *10 (D. Utah Sept. 24, 2024); Utah Code Ann. § 77-23a-4(7)(b).

**III. HS ONE'S COMMON LAW COUNTERCLAIMS MUST BE DISMISSED**

**A. Tortious Interference**

To state a claim for tortious interference with economic relations, HS One must allege "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Musselman v. Keele*, 559 P.3d 64, 70 (Utah Ct. App. 2024). This claim fails.

*First*, HS One has not pleaded facts that would constitute "improper means" (it does not allege an improper purpose). "Improper means" is satisfied "where the means used to interfere

with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules or if they violate an established standard of a trade or profession." *C.R. England v. Swift Transportation Co.*, 437 P.3d 343, 344 (Utah 2019). Here, to the extent the claim is predicated on allegedly false statements, HS One has identified only nonactionable expressions of opinion, *supra* at 17. And to the extent it is based on alleged "hacking," HS One also does not plausibly allege a violation of law, for the reasons stated above.

*Second*, although HS One asserts that it maintains contracts with mutual customers, it does not plead facts plausibly suggesting an intentional interference with existing or prospective relations. Intentional interference with economic relations extends only to "existing contractual relationships and prospective relationships of economic advantage not yet reduced to a formal contract"—not generalized assertions of interference with hypothetical or yet unidentified customers. *St. Benedict's Dev. Co. v. St. Benedict's Hosp.,* 811 P.2d 194, 200 (Utah 1991). HS One does not allege that Vyne engaged in any conduct intended to harm or disrupt specific commercial relationships, nor would Vyne have any incentive to do so. To the contrary, Vyne and HS One are two companies that have long coexisted and offered complementary products to the same customers. In the absence of any allegation that Vyne intentionally sought to disrupt a particular relationship—rather than merely protecting its own interests in the ordinary course of business—the tortious interference counterclaim cannot survive.

**B. Trespass to Chattels**

HS One's trespass-to-chattels counterclaim also fails. As a threshold matter, "[i]t is unclear, … whether Utah even recognizes the tort of trespass to chattels, let alone what the elements of this tort might be under Utah law." *Vox Marketing Grp. v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1290 (D. Utah 2021). But assuming this cause of action exists, HS One's counterclaim suffers from at least two fatal deficiencies.

*First*, "chattel" refers to a "physical object" or "tangible good." *See Chattel*, Black's Law Dictionary (12th ed. 2024). A software program is not a tangible item, and HS One does not dispute that the computers and storage devices with which Vyne interacted belonged to customers, not to HS One. Counterclaims ¶¶ 6, 8, 15. In those exceedingly rare instances when courts have entertained a trespass-to-chattels claim based on electronic signals, they have at least required that the trespass diminish the value of the claimant's physical computer equipment. *See, e.g., CompuServe, Inc. v. Cyber Promotions, Inc.,* 962 F. Supp. 1015, 1022 (S.D. Ohio 1997) (holding that bulk e-mailing by defendants constituted trespass to chattels because "the value of [the] equipment to CompuServe is diminished even though it is not physically damaged"). HS One has not identified anything it owns that was allegedly impaired as to its condition, quality, or value—much less property that any court has concluded is chattel property.

*Second*, trespass to chattels requires *intentional* dispossession or intermeddling with a chattel. *See, e.g., Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 697 (D. Md. 2011). Here, customers not only consented to Vyne accessing their credentials and patient data; they were themselves the parties who accessed patient records on Dentrix. *See supra* at 4-8.

### C. Unjust Enrichment

Under Utah law, unjust enrichment requires: (1) a benefit conferred on the defendant by the plaintiff; (2) acceptance of the benefit by the defendant; and (3) circumstances which make it inequitable for the defendant to retain the benefit. *Dummar v. Lummis*, 543 F.3d 614, 623 (10th Cir. 2008); *Desert Miriah, Inc. v. B&L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000).

HS One's allegation is predicated on three conclusory sentences: "By evading HS One's security controls and altering configurations, Vyne unlawfully obtained benefits—data access, mass exfiltration, and code injection capabilities which were not authorized. This has enriched Vyne in an amount to be proven, but at least $1 million, on information and belief, because Vyne

is bypassing HS One's API for these purposes. Vyne's continued possession of the benefits it has received by hacking HS One is unjust." Counterclaims ¶ 120-22.

Vyne is not aware of any case law that would support an unjust-enrichment claim based on these allegations, which make no sense. If the conduct that HS One complains about was unlawful under the other sources of law set forth in the complaint, then HS One should proceed under those theories. But if, as Vyne asserts, no unlawful conduct was pleaded, then surely there is nothing inequitable here. HS One complains about Vyne software's access to patient data protected by federal law. It was undertaken with the consent of the dentists. There is nothing inequitable here.

**D. Business Libel / Common-Law Defamation**

To state a claim for libel, HS One must allege "that [the other party] published the statements . . . , that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007-1008 (Utah 1994) (cleaned up). Again, no claim was pleaded.

As with HS One's Lanham Act and UTIAA claims, HS One's claim here fails because it complains about nonactionable statements of opinions that do not contain a disprovable factual assertion. *Cf. Spencer v. Glover,* 397 P.3d 780, 784 (Utah App. 2017) ("Even if a statement is defamatory, the Utah Constitution provides an independent source of protection for expressions of opinion."). Vyne's alleged statements—and those of its CEO on YouTube—were generalized criticism and statements of opinion in connection with a dispute concerning the interoperability to both companies' software. Utah courts, consistent with First Amendment principles, hold that statements of opinion and subjective characterizations are not actionable as defamation or business libel. *See* Utah Model Jury Instruction CV1606 ("A statement that expresses a mere opinion or belief rather than a verifiable statement of fact is protected by the Utah Constitution and cannot

support a defamation claim."). As alleged by HS One, Vyne did not actually assert that HS One's software services are inferior—only that HS One has pursued policies and integration models that unfairly harmed *Vyne's delivery of services*, which customers need to deliver effective patient care. *See, e.g.,* Counterclaims ¶ 62. Meanwhile, all of the alleged statements by its CEO concerning Vyne's capabilities (e.g., "we're very good at extracting unstructured data"), are generalized statements about Vyne's capabilities—not accusations disparaging HS One's product quality. *Id.* ¶ 65. Without any provably false statement about HS One's software offerings, published with fault and causing reputational or pecuniary harm, HS One's claim fails.

## CONCLUSION

For the foregoing reasons, Defendant's counterclaims should be DISMISSED.

Respectfully submitted,

/s/ Vincent Levy

K. Nichole Nesbitt (Bar No. 26137)
Derek M. Stikeleather (Bar No. 27815)
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4026
knn@gdldlaw.com
dstikeleather@gdldlaw.com

Michael Shuster (pro hac vice)
Vincent Levy (pro hac vice)
Daniel Fahrenthold (pro hac vice)
Torrell Mills (pro hac vice)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com
Attorneys for Plaintiff
National Electronic Attachment, Inc. d/b/a Vyne Dental