# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| National Electronic Attachment, Inc., d/b/a Vyne Dental, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-03246-MJM |
| | ) | |
| Henry Schein One, LLC, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |
| | ) | |

---

## DEFENDANT/COUNTER-PLAINTIFF'S RESPONSE IN OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6)

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

LEGAL STANDARD.......................................................................................................3

ARGUMENT AND AUTHORITY ...................................................................................4

I.     HSOne Has Stated a Claim for a Violation of the Computer Fraud and
Abuse Act........................................................................................................4

         A.     The CFAA does not require that HSOne own the computers on
which portions of its systems are installed. ................................................4

         B.     Customers cannot provide Vyne with the requisite authorization. ..............7

II.     HSOne Has Stated a Claim for a Violation of the Digital Millennium
Copyright Act................................................................................................10

III.     HSOne States a Claim for a Violation of the Electronic Privacy Act. ................12

IV.     HSOne States a Claim for a Violation of the Lanham Act and Maryland's
Anti-Slapp Statute Does Not Apply...............................................................15

         A.     HSOne has sufficiently alleged a violation of the Lanham Act................15

         B.     HSOne Has Stated a Claim for Business Libel / Common Law
Defamation................................................................................................18

         C.     Maryland's anti-SLAPP Statute Does Not Apply. .....................................19

V.     HSOne States a Claim for Unfair Competition Act (Utah Code Ann. §
13-5a-103 et seq.) and Common Law Unfair Competition. ..................................22

         A.     HSOne has stated a violation of the Utah Unfair Competition Act...........22

         B.     HSOne has stated a claim for Common Law Unfair Competition. ...........25

VI.     HSOne Has Stated a Claim for a Violation of the Utah Truth in
Advertising: Deceptive Trade Practices Act....................................................26

VII.     HSOne Has Stated a Claim for Tortious Interference with Contract and
Prospective Economic Relations......................................................................27

VIII.     HSOne Has Stated a Claim for Trespass to Chattels. ...........................................28

IX.     HSOne Has Stated a Claim for Unjust Enrichment. .............................................30

CONCLUSION.................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAAG-Ca., LLC v. Kisana,*
    439 F.Supp.3d 1265 (2020) .................................................................30

*ABLV Bank v. Ctr. for Advanced Def. Stud. Inc.,*
    No. 1:14-CV-1118, 2015 WL 12517012 (E.D. Va. Apr. 21, 2015) ......................20

*ACW Flex Pack LLC v. Wrobel,*
    No. 22-CV-6858, 2023 WL 4762596 (N.D. Ill. July 26, 2023).............................5, 6

*Am. Airlines, Inc. v. Platinum Worlds Travel,*
    769 F. Supp. 1203 (D. Utah 1990), *aff'd sub nom. Am. Airlines v. Christensen,*
    967 F.2d 410 (10th Cir. 1992) ..............................................................25

*Am. Muscle Docks & Fabrication, LLC v. Merco, Inc.,*
    187 F. Supp. 3d 694 (N.D.W. Va. 2016) ...............................................17

*Am. Online, Inc. v. IMS,*
    24 F.Supp.548 (E.D.Va. 1998) ...........................................................29

*Asphalt Sys., Inc. v. Am. Gilsonite Co.,*
    No. 2:24-CV-00902-DBB-DBP, 2025 WL 1663323 (D. Utah June 12, 2025).......................22

*Atiq v. WSH Packaging Sys., LTD.,*
    No. 24 C 10344, 2025 WL 2347854 (N.D. Ill. Aug. 14, 2025).................................6

*Bedrock Quartz Surfaces, LLC v. Rock Tops Holdings LLC,*
    2023 WL 8481417 (D. Utah Dec. 7, 2023)...................................................22

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................................4

*Blumofe v. Pharmatrak, Inc. (In re Pharmatrak, Inc. Privacy Litig.),*
    329 F.3d 9 (1st Cir. 2003)...............................................................14

*Budget System, Inc. v. Budget Loan and Fin. Plan,*
    361 P.2d 512 (Utah 1961) ................................................................25

*C.R. England v. Swift Transp. Co.,*
    2019 UT 8, 437 P.3d 343 .................................................................28

*Casper Sleep, Inc. v. Mitcham,*
    204 F. Supp. 3d 632 (S.D.N.Y. 2016).....................................................18

*Chambers v. Amazon.com Inc.,*
    632 Fed. Appx. 742 (4th Cir. 2015)...................................................10, 12

*CompuServe Inc. v. Cyber Promotions, Inc.,*
    962 F.Supp. 1015 (S.D. Ohio 1997) ......................................................29

*Connolly v. Lanham*,
 685 F. Supp. 3d 312 (D. Md. 2023) ..................................................................20

*CoStar Realty Info., Inc. v. Field*,
 612 F. Supp. 2d 660 (D. Md. 2009) ....................................................................5

*CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*,
 430 F. Supp. 3d 1247 (D. Utah 2019) ...............................................................28

*Crowe v. SRR Partners, LLC*,
 632 F.Supp.3d 1233 (D. Utah 2022) .................................................................30

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
 362 F. Supp. 3d 558 (N.D. Ill. 2019) .............................................................7, 11

*Diamonds Direct, L.C. v. Manly Bands*,
 No. 2:23-CV-00870, 2024 WL 4818827 (D. Utah Nov. 18, 2024) ....................23

*digEcor, Inc. v. e.Digital Corp.*,
 No. 2:06-CV-437 CW, 2009 WL 928679 (D. Utah Apr. 2, 2009) ......................25

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
 637 F.3d 435 (4th Cir. 2011) ...........................................................3, 4, 9, 16

*Edwards v. City of Goldsboro*,
 178 F.3d 231 (4th Cir. 1999) ...........................................................................16

*Estes Forwarding Worldwide LLC v. Cuellar*,
 239 F. Supp. 3d 918 (E.D. Va. 2017) ..............................................................5, 6

*Facebook, Inc. v. Power Ventures, Inc.*,
 844 F.3d 1058 (9th Cir. 2016) ............................................................................7

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*,
 499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) .................................11

*First Am. Title Ins. Co. v. Nw. Title Ins. Agency*,
 906 F.3d 884 (10th Cir. 2018) ..........................................................................28

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
 194 F.3d 505 (4th Cir. 1999) ............................................................................14

*Goines v. Valley Cmty. Servs. Bd.*,
 822 F.3d 159 (4th Cir. 2016) ..............................................................................9

*GSP Fin. Services, LLC v. Harrison*,
 No. GJH-18-2307, 2021 WL 288172 (D. Md. Jan. 28, 2021) .............................5

*Hall v. DIRECTV, LLC*,
 846 F.3d 757 (4th Cir. 2017) ..............................................................................4

*Hardie v. Deutsche Bank Tr. Co. Am.*,
 544 F. Supp. 3d 547 (D. Md. 2021) ..................................................................14

*Helf v. Chevron U.S.A. Inc.*,
 361 P.3d 62 (2015).............................................................................................30

*Hi-Land Dairyman's Ass'n v. Cloverleaf Dairy*,
    151 P.2d 710 (Utah 1944) ................................................................................26

*In re Hunter*,
    610 B.R. 479 (Bankr. M.D.N.C. 2019) ..........................................................26

*JM4 Tactical, LLC v. Her Tactical, LLC*,
    No. 1:22-CV-121-DAK-DBP, 2023 WL 1434179 (D. Utah Feb. 1, 2023) ............25

*KBC Asset Mgmt. NV v. DXC Tech. Co.*,
    19 F.4th 601 (4th Cir. 2021) ..............................................................................3

*L & A Drywall, Inc. v. Witmore Const. Co., Inc.*,
    608 P.2d 626 (1980)..........................................................................................30

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ...........................................................................4

*Mackey v. Krause*,
    2025 UT 37, 575 P.3d 1162 ..............................................................................27

*Mathews v. McCown*,
    2025 UT 34, 575 P.3d 1114 .........................................................................18, 19

*In re: Maxim Integrated Products, Inc.*,
    No. 12-244, 2013 WL 12141373 (W.D. Pa. Mar. 19, 2013) ....................10, 13, 15

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010), as amended on denial of reh'g (Feb. 17, 2011),
    opinion amended and superseded on denial of reh'g, No. 09-15932, 2011 WL
    538748 (9th Cir. Feb. 17, 2011)........................................................................12

*Microsoft Corp. v. Does*,
    No. 120CV01171AJTIDD, 2021 WL 8444748 (E.D. Va. Aug. 12, 2021),
    report and recommendation adopted, No. 120CV1171AJTIDD, 2021 WL
    8444640 (E.D. Va. Sept. 24, 2021).....................................................................5

*Microsoft Corp. v. John Does 1-8*,
    No. 1:14-CV-811, 2015 WL 4937441 (E.D. Va. Aug. 17, 2015) ...........................6

*Millennium Labs. v. Ameritox, Ltd.*,
    924 F. Supp. 2d 594 (D. Md. 2013)...............................................................15, 16

*Mylan Laboratories, Inc. v. Matkari*,
    7 F.3d 1130 (4th Cir. 1993) ..............................................................................18

*Nassi v. Hatsis*,
    525 P.3d 117 (Utah Ct. App. 2023) ...............................................................28, 29

*Oce N. Am., Inc. v. MCS Services, Inc.*,
    748 F. Supp. 2d 481 (D. Md. 2010)..............................................................5, 6, 11

*Partnerco Holdings, LLC v. Nutonic Corp.*,
    No. 221CV00580JNPDBP, 2024 WL 1307152 (D. Utah Mar. 26, 2024) .......26, 27

iv

*Pearl Inv., LLC v. Standard I/O, Inc.*,
  257 F.Supp.2d 326 (D. Maine 2003) ...................................................................29

*Penn-Plax, Inc. v. L. Schultz, Inc.*,
  988 F. Supp. 906 (D. Md. 1997) ..........................................................................18

*Philips Med. Sys. Nederland B.V. v. TEC Holdings, Inc.*,
  No. 3:20-CV-21-MOC-DSC, 2023 WL 2064201 (W.D.N.C. Feb. 16, 2023) ........12

*Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*,
  203 F. Supp. 3d 221 (D.P.R. 2016) ................................................................5, 7, 9

*Phreesia, Inc. v. Certify Glob., Inc.*,
  No. DLB-21-678, 2022 WL 911207 (D. Md. Mar. 29, 2022) .........4, 7, 8, 10, 15, 16

*Plymouth Cty. Ret. Sys. v. Evolent Health, Inc.*,
  Civ. Action No. 1:19-cv-1031, 2021 U.S. Dist. LEXIS 76399 (E.D. Va. Mar.
  24, 2021) ...........................................................................................................17

*Podium Corp. Inc. v. Chekkit Geolocation Servs. Inc.*,
  No. 2:20-CV-352-DB, 2020 WL 6940737 (D. Utah Nov. 25, 2020) .......................9

*Power Block Coin, L.L.C. v. Song*,
  705 F. Supp. 3d 1293 (D. Utah 2023) ..................................................................29

*Pritchard v. Pritchard*,
  732 F.2d 372 (4th Cir. 1984) ..............................................................................14

*Proctor & Gamble Co. v. Haugen*,
  947 F. Supp. 1551 (D. Utah 1996) .......................................................................25

*Radiance Foundation, Inc. v. N.A.A.C.P.*,
  786 F.3d 316 (2015) ...........................................................................................20

*Rawlings v. Rawlings*,
  240 P.3d 754 (2010) ...........................................................................................30

*Reg. Com, Inc. v. Domain Registry of Am., Inc.*,
  2002 U.S. Dist. LEXIS 24795, 2002 WL 31894625 (S.D.N.Y. Dec. 27, 2002) ....18

*Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc.*,
  144 P.3d 1079 (Utah 2006) .................................................................................26

*Russell v. Krowne*,
  No. CIV.A. DKC 2008-2468, 2010 WL 2765268 (D. Md. July 12, 2010) ...........20

*Sec. Sys., Inc v. Alder Holdings, LLC*,
  421 F. Supp. 3d 1186 (D. Utah 2019) ..................................................................26

*SecureInfo Corp. v. Telos Corp.*,
  387 F. Supp. 2d 593 (E.D. Va. 2005) ..................................................................6, 8

*Singh v. Lenovo (United States) Inc.*,
  510 F. Supp. 3d 310 (D. Md. 2021) .....................................................................17

*SkyHop Techs., Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023) ..........................................................................5, 6

*State Analysis, Inc. v. Am. Fin. Servs. Assoc.*,
  621 F. Supp. 2d ..............................................................................................8

*State Auto. Mut. Ins. Co. v. Lennox*,
  422 F. Supp. 3d 948 (D. Md. 2019) ...........................................................3, 23

*StorageCraft Tech. Corp. v. Persistent Telecom Sols., Inc.*,
  No. 2:14-CV-76-DAK, 2016 WL 7155782 (D. Utah Dec. 6, 2016) ....................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...........................................................................................3

*Theofel v. Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2003) .....................................................................5, 9, 14

*Thrifty–Tel, Inc. v. Bezenek*,
  46 Cal.App.4th 1559 (1996) ...............................................................................29

*Total Quality Sys., Inc. v. Universal Synaptics Corp.*,
  No. 1:22-cv-00167-RJS-DAO (D. Utah May 23, 2024)......................................22

*U.S. v. Ackerman*,
  831 F.3d 1292 (10th Cir. 2016) .........................................................................29

*Ugwuonye v. Rotimi*,
  No. PJM 09-658, 2010 U.S. Dist. LEXIS 77436 (D. Md. July 30, 2010) ............20

*UHS of Provo Canyon, Inc. v. Bliss*,
  2024 WL 4279243 (D. Utah Sept. 24, 2024)......................................................15

*United States v. Al Safoo*,
  No. 18 CR 696, 2025 WL 1331682 (N.D. Ill. May 7, 2025)...................................6

*Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*,
  618 F.3d 417 (4th Cir. 2010) .............................................................................11

*Van Buren v. United States*,
  593 U.S. 374 (2021).............................................................................................5

*Vendr, Inc. v. Tropic Techs., Inc.*,
  No. 2:23-CV-165-DAK-DAO, 2023 WL 8789297 (D. Utah Dec. 19, 2023) ........25

*WEC Carolina Energy Sols. LLC v. Miller*,
  687 F.3d 199 (4th Cir. 2012) ...............................................................................4

*Whitaker v. W. Essentials, LLC*,
  No. 1:15-CV-00048-TC, 2016 WL 3435185 (D. Utah June 17, 2016)..................25

*Woodberry Dev., LLC v. Council of Owners of Millrace Condo., Inc.*.
  253 Md. App. 279, 265 A.3d 1140 (2021)..........................................................21

*Woods v. City of Greensboro*,
  855 F.3d 639 (4th Cir. 2017) ...............................................................................4

**Statutes**

18 U.S.C.A. § 1030(e)(1)........................................................................................5

17 U.S.C. § 1201(a)(1)(A)......................................................................................12

18 U.S.C § 1030(a)(2)(C).........................................................................................4

18 U.S.C. § 1030(a)(4).............................................................................................4

18 U.S.C. § 1030(a)(5)(C)........................................................................................4

18 U.S.C. § 1030(e)(2).............................................................................................5

18 U.S.C. § 2511(1)(a).......................................................................................12, 13

18 U.S.C. § 2511(2)(d)...........................................................................................14

Utah Code Ann. § 13-11a-3....................................................................................26

Utah Code § 13-5a-102(3)......................................................................................24

Utah Code § 13-5a-102(4)(a)(ii)(B).......................................................................24

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)............................................................................................4

Defendant Henry Schein One, LLC ("HSOne") submits this Response in Opposition ("Response") to National Electronic Attachment, Inc. d/b/a Vyne Dental's ("Vyne") Motion to Dismiss ("Motion") Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6). In support of its response, HSOne respectfully states as follows:

## INTRODUCTION

Vyne's motion to dismiss attempts to introduce factual disputes about whether security threats against thousands of dental practices containing patient health care data, financial data, and insurance claims are real or imagined. In Vyne's telling, words and phrases like "security flags," "encryption keys," "hacking," and "extracting ODBC connection strings" are "technical-sounding buzzwords" and nothing more. But what Vyne derides as jargon is the language of computer science and cybersecurity—domains that safeguard patient health data and are foundational to public trust in healthcare systems. To justify its conduct, so that it can profit from its unauthorized access to HSOne's software, database, and cloud resources, Vyne has contorted itself to adopt a shockingly dismissive posture towards cybersecurity and patient data.

Putting aside that Vyne's flippant approach is wrong and unsettling, it also does not merit dismissal pursuant to Rule 12. HSOne's well-pleaded allegations more than clear the pleading bar. HSOne puts forth detailed fact-based allegations arising from its painstaking investigation of Vyne's unauthorized access. HSOne's Counterclaims make clear that Vyne has chosen to skirt security best practices by developing its own route into HSOne's Dentrix software, database, and cloud infrastructure that orchestrates those systems at dental practices across the country. Rather than pursuing a commercial relationship with HSOne, Vyne figured out that all it needed to do to read and write data *en masse* to and from the Dentrix databases at dental practices was to take encryption keys that are hidden in source code and Windows configuration files and use them to hijack HSOne's software.

Vyne has built a complex and sophisticated hacking harness that enables it to take over Dentrix, block upgrades, and directly access Dentrix databases to export data *en masse*. Even worse, Vyne injects data back into Dentrix databases without care to the many security, integrity, and other safeguards that exist in HSOne's software. Vyne does this all on its own, without any visibility into how HSOne's engineering team is building Dentrix or deploying new features (outside of what Vyne can reverse engineer and what it knows based on multiple of its senior executives—the CEO, CTO, and President—having worked for HSOne on Dentrix). Vyne's unauthorized access has in essence held HSOne hostage, as it has interfered with HSOne's issuance of upgrades to its own software to protect customers from myriad third-party security threats. Vyne has burrowed a tunnel directly into HSOne's software and database, open to all, and covers it with nothing more than a tarp.

Vyne has submitted sworn declarations in this Court that admit that it does exfiltrate encryption keys needed to access HSOne's database on customer computers. Its defense rests on the concept that because it accesses HSOne's software and database installed at dental practices in their infrastructure, it is permitted to do so without authorization. But this is not the law. First, Vyne is intentionally interfering with HSOne's contracts with those customers, which prohibit Vyne's conduct. Further, the Computer Fraud and Abuse Act makes clear that HSOne has standing to sue for Vyne's unauthorized access to its software and database that dental practices install. Vyne also accesses HSOne's cloud infrastructure, which is in evidence in this case and is properly inferred from HSOne's pleading, which repeatedly alleges unauthorized access to HSOne's software and databases. Vyne also cannot grapple with the multitude of allegations, all substantiated with facts and evidence, that Vyne does not disclose to HSOne customers what it really is doing. Even in papers and hearings before this Court, Vyne has repeatedly attempted to

occlude the true nature of its write-back access into the Dentrix database and claim that it is just printing data to paper or PDF.  If Vyne's customers knew what Vyne is really doing, they would not authorize it.  And even if they did, this does not permit Vyne's violations of federal wiretapping law, by intercepting traffic intended for HSOne's servers.  Nor do Vyne's purported justifications permit its intentional false statements and omissions of what it's doing in violation of the Lanham Act and common law defamation principles.

On every cause of action, Vyne's arguments fall apart when viewed through Rule 12's lens. Vyne will have an opportunity to present what evidence it can muster justifying its unauthorized access at the upcoming preliminary injunction hearing and throughout the merits stage of the case. HSOne is confident that as more light shines on Vyne's conduct, this will only hurt Vyne's case, not help it.  Regardless, here at the pleading stage, Vyne has no basis to dismiss HSOne's well-pleaded claims against it.  This is not a situation where Vyne is left wondering as to what facts give rise to each of HSOne's claims.  The Court can consequently deny Vyne's motion to dismiss and permit the case to move forward on HSOne's counterclaims.

## **LEGAL STANDARD**[1]

To survive a motion to dismiss, a complaint (or counterclaim) "must contain sufficient facts to state a claim that is 'plausible on its face.'"  *E.I. du Pont de Nemours & Co. v. Kolon*

---

[1] The Court is acquainted with HSOne's allegations and the background facts of this case contained in HSOne's Counterclaims  ("CC") (ECF No. 45), as recited in multiple briefs filed.  HSOne incorporates its factual allegations from its pleadings.  The other briefs, supported by additional evidence, provide color that support inferences that the Court can make from the pleading on its own.  *See* HSOne's Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction (ECF No. 46-1) and Reply in Support (ECF No. 62), HSOne's Motion to Transfer Venue (ECF No. 35-1), and HSOne's Response in Opposition to Vyne's Motion for a TRO and PI (ECF No. 38).

Further, given that the facts have already been extensively litigated, the court may take judicial notice of the facts alleged in other filings in this case and the public record, along with documents referenced in the complaint and attached to the complaint.  *See KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601, 607 (4th Cir. 2021); *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 959-60 (D. Md. 2019).  "But, 'these facts [must be] construed in the light most favorable' to the non-movant." *Lennox*, 422 F. Supp. 3d at 960–61 (citation omitted).  The court's inquiry should be "whether *all* of the facts alleged" infer a plausible claim. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) (citations omitted) (emphasis in original).

*Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. Dismissal is not warranted for an "imperfect statement of the legal theory supporting the claim asserted." *See id.* (citation omitted). A complaint is to be construed liberally. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citation omitted). A party "need not plead facts sufficient to establish a prima facie case" to survive a motion to dismiss. *See Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). The question is not whether the party will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Woods*, 855 F.3d at 652–53 (citation omitted). Rule 12(b)(6) motions "'do[] not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Phreesia, Inc. v. Certify Glob., Inc.*, No. DLB-21-678, 2022 WL 911207, at *3 (D. Md. Mar. 29, 2022) (citation omitted). When ruling on a motion to dismiss, the Court must accept as true all of the factual allegations and draw all reasonable inferences in favor of the pleader. *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 440.

## ARGUMENT AND AUTHORITY

### I.    HSOne Has Stated a Claim for a Violation of the Computer Fraud and Abuse Act.

Vyne's conduct violates multiple CFAA provisions, including §§ 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(C).[2]

#### A.    The CFAA does not require that HSOne own the computers on which portions of its systems are installed.

Vyne violates the CFAA because it accesses HSOne's Dentrix software, including its database, as well as HSOne's cloud infrastructure, without authorization. *Id.* To establish a CFAA

---

[2] *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 201 (4th Cir. 2012) and *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1128–29 (9th Cir. 2009) are distinguishable as they involved employees accessing computers they were authorized to access while employed.

claim, HSOne must allege that Vyne accesses protected computer software systems without authorization or in a way that exceeds authorized access. *See Van Buren v. United States*, 593 U.S. 374, 390 (2021). Subsection (a)(5)(C) requires nothing more than intentional access without authorization and damage. For subsection (a)(2)(C), HSOne must also show that Vyne uses its access to obtain information, causing HSOne damage. Subsection (a)(4) has the additional element of Vyne doing its conduct with the intent to defraud. HSOne has alleged all these CFAA elements.

Contrary to Vyne's assertion, the CFAA does not require that HSOne own its customers' computers.[3] Vyne's conduct constitutes "access to a protected computer" under § 1030(e)(2) and (a)(2), regardless of who physically owns the hardware on which HSOne's software operates. *See, e.g.*, *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2003); *Philips Med. Sys. Puerto Rico Inc.*, 203 F. Supp. 3d at 231; *Oce N. Am., Inc. v. MCS Services, Inc.*, 748 F. Supp. 2d 481, 487 (D. Md. 2010).[4] The statute is clear that any person who suffers damage can sue.

Moreover, the CFAA's definition of "computer" is "exceedingly broad"[5] and includes HSOne's software system and components. *See GSP Fin. Services, LLC v. Harrison*, No. GJH-18-2307, 2021 WL 288172, at *1, 4 (D. Md. Jan. 28, 2021) (computer and information systems, including by accessing accounts plaintiff owned at a cloud-based software system); *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 674–75 (D. Md. 2009) (database licensed to another); *Microsoft Corp. v. Does*, No. 120CV01171AJTIDD, 2021 WL 8444748, at *5–6 (E.D. Va. Aug.

---

[3] Vyne cites to 18 U.S.C. § 1030 and *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 922-24 (E.D. Va. 2017), neither of which supports Vyne's statement. *Estes Forwarding Worldwide LLC* found plaintiff sufficiently pled accessed to a protected computer via an account located exclusively on the internet, in the cloud.

[4] Vyne's reliance on *Van Buren* for Vyne's statement that "[t]he CFAA does not give software companies the authority, on penalty of criminal law, to dictate how third parties interact with computer systems that they neither own nor control" is misplaced. The case has nothing to do with the ownership of the computer. *See also SkyHop Techs., Inc.*, 58 F.4th at 1227; *ACW Flex Pack LLC v. Wrobel*, No. 22-CV-6858, 2023 WL 4762596, at *7 (N.D. Ill. July 26, 2023).

[5] *See Philips Med. Sys. Puerto Rico Inc.*, 203 F. Supp. 3d at 230–31; *see also* 18 U.S.C.A. § 1030(e)(1).

12, 2021), report and recommendation adopted, No. 120CV1171AJTIDD, 2021 WL 8444640 (E.D. Va. Sept. 24, 2021) (accessing Windows software through customer computers); *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 926-27 (E.D. Va. 2017) (cloud account); *Microsoft Corp. v. John Does 1-8*, No. 1:14-CV-811, 2015 WL 4937441, at *8–9 (E.D. Va. Aug. 17, 2015) (computers and access to Windows® systems and Explorer® software).[6] The Dentrix software is comprised of multiple components, all of which fall under the definition of "computer" for purposes of CFAA.  (CC ¶¶ 88, 98; Reply in Support of Mot. for TRO, 4.)

The cases Vyne cites are distinguishable.  In *Oce N. Am., Inc. v. MCS Services, Inc.*, the court found no unauthorized access because plaintiff had provided the former employee access to a software program, and plaintiff entered into a license agreement with MCS who accessed the software.  *See* 748 F. Supp. 2d 481, 487 (D. Md. 2010).  Here, HSOne has not authorized Vyne's access, and HSOne and Vyne do not have an agreement for Vyne to access.

Similarly, in *SecureInfo Corp. v. Telos Corp.*, defendants were authorized access by a consultant hired by a competitor of defendants who himself had access via licensing agreements with plaintiff.  *See* 387 F. Supp. 2d 593, 600 (E.D. Va. 2005).  That is different from here, where HSOne's customer agreements prohibit them from authorizing third-party access, and the customers do not know the extent of Vyne's unauthorized access.  (CC ¶¶ 7, 8, 10, 15, 37, 39, 46-52, 71, 76, 79-81; Reply in Support of Mot. for TRO, 4.).

Finally, Vyne's argument falls apart because the Court can infer from the Counterclaims that Vyne also accesses HSOne's cloud infrastructure.  Its access is not limited to the Dentrix

---

[6] *See also SkyHop Techs., Inc.*, 58 F.4th at 1227 (cloud-based accounts and associated servers); *Atiq v. WSH Packaging Sys., LTD.*, No. 24 C 10344, 2025 WL 2347854, at *2 (N.D. Ill. Aug. 14, 2025) (Google Drives and customer portals); *United States v. Al Safoo*, No. 18 CR 696, 2025 WL 1331682, at *24 (N.D. Ill. May 7, 2025) (Twitter servers through Twitter accounts, was a "protected computer"); *ACW Flex Pack LLC v. Wrobel*, No. 22-CV-6858, 2023 WL 4762596, at *6–7 (N.D. Ill. July 26, 2023) (cloud-based system and server).

software and database on customer computers.  Evidence of this is in the record in HSOne's declarations from its technical leadership, and the pleading on its face supports an inference that this is what Vyne does.  This independently makes Vyne's defense nonviable.

### B.    Customers cannot provide Vyne with the requisite authorization.

Courts routinely reject Vyne's theory that customers permit it access.  Such a theory would encourage hackers to work around the CFAA by asking a customer for access to software they purchased or licensed.  This is particularly true when the customer is unaware of what the hacker is doing—like here, and where Vyne is bypassing software security to access internal functions and portions of the HSOne software that are not accessible to HSOne customers.  Vyne must have authorized access from HSOne, not HSOne's customers.  *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1068 (9th Cir. 2016) (consent Power received from Facebook users was not sufficient); *Philips Med. Sys. Puerto Rico Inc.*, 203 F. Supp. 3d at 234-36 (defendants exceeded any authorized access by hacking into software without any authorization from plaintiff); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 565–70 (N.D. Ill. 2019) (sufficiently pled unauthorized access even though counter-defendant allegedly had permission of dealers who used counter-plaintiff's data management system and acted as their agent).[7]  Here, HSOne has more than sufficiently alleged Vyne's hacking and other conduct by accessing HSOne's software database systems and components through HSOne's customers' computers without authorization.[8]

*Phreesia, Inc. v. Certify Glob., Inc.* out of this District is instructive.  Phreesia's customer

---

[7] The evidence in *Philips Med. Sys.* showed defendants who, like here, were former employees of plaintiff, "circumvented or spoofed' security solutions with login credentials in order to access, and none to the defendants had any authority to access the tool.  *See* 203 F. Supp. 3d at 235.  (CC ¶ 41.)  The court rejected the *MCS* decision above, noting its "approach strays from the meaning Congress sought to give to the term 'authorization.'"  *See id.* at 236 (citation omitted).  It followed the approach from other courts that have held the "CFAA does not excuse liability merely because the defendant enlists the help of a third party."  *See id.* at 237 (citations omitted).

[8] (CC ¶¶ 6-10, 12, 14, 34, 36-40, 42, 45-56, 58, 65, 71, 72, 76-83, 100, 102, 110, 115-16, 120.)

contracts prohibited customers from allowing third-party access to Phreesia's software, but one of

Phreesia's customers created a login for defendant, providing access. *See* No. DLB-21-678, 2022

WL 911207, at *2-3 (D. Md. Mar. 29, 2022). The defendant then "probed the system hundreds of

times with different queries to reverse engineer the underlying logic and algorithms." *See id.* at

*3. Like here, defendant claimed there was no unauthorized access because the client provided

access. *See id.* at *3-5. This Court rejected defendant's argument. The access still violated the

CFAA because it was "without authorization." *See id.* at *6. Also, like in Phreesia, where the

defendant attempted to change information to allegedly "obscure their identities and involvement,"

Vyne also engages in "subterfuge" and does not inform customers about its hacking conduct. *Id.*

This District also distinguished *SecureInfo* and cases like it, instead following the reasoning

in *State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, (decided after *SecureInfo*), where the court

concluded plaintiff pled unauthorized access when it alleged that under the terms of their contract,

"only clients were authorized to use [the plaintiff's] subscription services, and that [the defendant]

was not so authorized." *See State Analysis, Inc.*, 621 F. Supp. 2d at 316. The court concluded the

defendant could not "hide behind" purported client authorization. *See id.* at 316. Defendant still

acted without authorization if its access was not authorized by plaintiff. *See id.* Like *Phreesia* and

*State Analysis*, HSOne has agreements with customers, which prohibit third-party access. (CC ¶¶

4, 14, 39, 56, 57, 108-111; HSOne's Mot. for TRO, 7; McDaniel Decl. (ECF No. 46-23) ¶ 10.).

And HSOne expressly prohibited Vyne from accessing its software systems and informed Vyne

and its customers that it was implementing security updates to stop access. (CC ¶¶ 7, 9, 14, 15.)

Further, the customers at issue here are not aware of what Vyne is doing. (CC ¶¶ 1, 6, 8,

14, 38, 57-63.) *See State Analysis, Inc.*, 621 F.Supp.2d at 316 (defendant used subterfuge,

consisting of "using user names and passwords that did not belong to it," in order to access

information); *Podium Corp. Inc. v. Chekkit Geolocation Servs. Inc.*, No. 2:20-CV-352-DB, 2020 WL 6940737, at *2 (D. Utah Nov. 25, 2020) (noting "access to a computer is 'unauthorized' or 'without authorization' where access is obtained via fraud, misrepresentation, or other deceptive means."). Vyne's covert conduct extends far beyond instructing its customers how to work around sending claims via a print driver. (CC ¶¶ 7-10, 12-14, 15, 34, 36-37, 39, 42-56, 71.) Even if a customer's permission could extend authorized access to an unauthorized third party (which, pursuant to the terms of agreements with HSOne, it cannot), that authority was not validly given, and Vyne exceeded any authorization customers purportedly provided. *See Theofel*, 359 F.3d at 1078 (rejecting argument that a third-party "authorized" defendants' access because defendants had gained that consent by engaging in conduct analogous to trespass); *Philips Med. Sys. Puerto Rico Inc.*, 203 F. Supp. 3d at 234-36.

Vyne argues that the excess authorization allegation is refuted by Vyne's letter to Dentrix about 500 dental practices and the other third-party vendors who work with Dentrix. (Mot. 6.) But nowhere does HSOne allege that dentists contract with Vyne or that dentists obtain Vyne software license for the purpose of submitting claims.[9] HSOne alleges throughout the Counterclaims that Vyne's customers are unaware and do not authorize Vyne's hacking. Vyne's theory boils down to a claim that because customers want Vyne to work with their data, that means

---

[9] It is true that the Court can consider a document submitted by a movant that was not necessarily attached to or expressly incorporated in a complaint, "so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). But that is not the case here. HSOne does not mention any Vyne agreements with its customers. Nor do any of HSOne's claims turn on such agreements. *See Goines*, 822 F.3d at 166.

The Court should not consider it on a 12(b)(6) motion, and certainly not how Vyne wants it to—to "conclusively show…[that] dentists expressly authorize Vyne to access and handle customers'" data. (Mot. 7.) Particularly, when authorization is a critical issue in the case. *See Goines*, 822 F.3d at 168 (finding the district court erred by treating as true the factual statements contained in the Incident Report); *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448–50 (holding the court erred in accepting statements beyond the Counterclaim and making inferences on that basis in favor of DuPont, noting the court's analysis was "riddled with reliance on DuPont's statement about the contracts").

Vyne can work with that data by any means necessary. No stretching of inferences in the Counterclaims support this theory, nor does the law.

In any event, the agreement Vyne attempts to have the Court evaluate on this Rule 12 motion does not actually grant Vyne the broad authority to access HSOne's software systems to the extent Vyne contends. For example, the terms limit Vyne's alleged authority to access data to "where data is stored or maintained for purposes of Vyne Dental to provide its healthcare information exchange and related services under the agreement." The data in HSOne's software database is not stored or maintained for that purpose. And Vyne's conduct goes far beyond simply receiving patient claims forms. The Court should not consider this agreement nor Vyne's defense at this stage. *See Phreesia, Inc.*, 2022 WL 911207, at *3.

Because the CFAA was designed to protect against exactly what Vyne is doing, Vyne's motion to dismiss this claim is not viable.

**II.    HSOne Has Stated a Claim for a Violation of the Digital Millennium Copyright Act.**

HSOne has sufficiently alleged a violation of the DMCA: (1) that the work was protected under the Copyright Act; (2) that the copyrighted work was protected by a technological measure that effectively controls access; and (3) that the measure was circumvented in order to obtain access. *In re: Maxim Integrated Products, Inc.*, No. 12-244, 2013 WL 12141373, at *16 (W.D. Pa. Mar. 19, 2013) (citation omitted).[10] HSOne's DMCA claim is not about "credentials" or "patient data" as Vyne suggests—it is about Vyne's deliberate violations of HSOne's technological measures that control access to HSOne's copyrighted systems and source code.

HSOne alleged it owns the copyright to its software systems including Dentrix,

---

[10] *Chambers v. Amazon.com Inc.*, 632 Fed. Appx. 742, 744 (4th Cir. 2015) is distinguishable. Unlike here, plaintiff did not claim to have put into place a technological measure that would have protected a copyright or that any Defendant circumvented such a measure. HSOne more than sufficiently alleged facts supporting a DMCA claim. (CC ¶¶ 3, 4, 7-10, 14, 25, 27-30, 36-40, 44-54, 64, 65, 71, 87-93.)

DtxHelp.dll, compiled object code, configuration files including dtx.config and FairCom C-Tree, admin certificates, and associated documentation. (CC ¶ 87-88.) As Vyne admits, software may be copyrighted. (Mot. 9.) *See Oce N. Am., Inc.*, 748 F. Supp. 2d at 489 (citations omitted). HSOne also alleges that it employs effective technological measures to control access to its protected works, including encryption, passwords, code-signing and application workflows, runtime security flags, driver-level protections, and credential and connection string-controls. (CC ¶ 89-90.) And HSOne alleged Vyne circumvented technological protections with its misappropriation of configuration files, misappropriation of encrypted files, exploitation of source code, injection of malicious code to Dentrix, development of software that mimics Dentrix, and interception and redirection of web traffic to Vyne's servers. (CC ¶¶ 7, 39, 45-56, 90-93.)

HSOne recognizes that the individual facts of patient health information are not subject to copyright protection. (Mot. 9.) But HSOne's software systems that create the database with the compilation, organization, and analytics of that patient data are copyrightable. *See Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010), as amended (Aug. 24, 2010) ("Copyright protection may extend to such a compilation, even if the material of which it is composed is not copyrightable itself…") (citation omitted); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 563 (N.D. Ill. 2019) (software and computing data management platforms for auto dealerships was protectable).[11] Vyne's claim that the only protected data belongs to HSOne's customers likewise has no merit. That HSOne's customers own their patients' health information data does not mean that they own HSOne's copyrightable software source code or related components, and Vyne does not cite any authority to the contrary.

---

[11] *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 111 S. Ct. 1282, 1287, 113 L. Ed. 2d 358 (1991) is distinguishable. There, the court concluded a telephone directory with names and numbers was not subject to copyright protection. That is far different than the complex software systems that comprise the Dentrix platform.

Vyne's attempts to reframe the issue as one involving customers' use of their own credentials to access their data mischaracterizes both the technical functionality at issue and the statute. (Mot. 10.)

HSOne sufficiently alleged numerous facts demonstrating Vyne circumvented HSOne's technical measures. No infringement is necessary to state a DMCA claim. *See MDY Indus., LLC v. Blizzard Entm't, Inc*.[12] Further, whether Vyne "copied" HSOne's code is irrelevant. Where a party reverse engineers software to change its functionality like Vyne did here, the party violates the DMCA's anti-circumvention provisions. *See Philips Med. Sys. Nederland B.V. v. TEC Holdings, Inc.*, No. 3:20-CV-21-MOC-DSC, 2023 WL 2064201, at *13 (W.D.N.C. Feb. 16, 2023) (holding that because defendants "admitted to using software they developed to bypass [p]laintiff's security, there can be no dispute that they have circumvented [p]laintiff's technological measures under the plain terms of the DMCA"). Moreover, HSOne does not allege that "Vyne enables its customers to obtain patient data so as to submit claims," (Mot. 10), but even if it had, the Counterclaims go far beyond that and include numerous detailed allegations of Vyne's circumvention of technological measures to protect HSOne's software source code and systems. For all these reasons, Vyne's motion to dismiss this claim should be denied.

## III.    HSOne States a Claim for a Violation of the Electronic Privacy Act.

HSOne alleged Vyne intentionally intercepted and redirected electronic communications meant for HSOne's secure servers, which constitutes unlawful interception under ECPA. *See* 18

---

[12] 629 F.3d 928, 943-52 (9th Cir. 2010), as amended on denial of reh'g (Feb. 17, 2011), opinion amended and superseded on denial of reh'g, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011) (explaining that DMCA § 1201(a)(1)(A) does not require infringement). The *Chambers* court found dismissal was proper because "Chambers…did not claim to have put into place a technological measure that would have protected a copyright or that any Defendant circumvented such a measure." *See* 632 Fed. Appx. at 744. Not because plaintiff failed to plead infringement. But even if he had, it would be distinguishable as there, plaintiff brought a claim for infringement—not for circumvention.

U.S.C. § 2511(1)(a).  Vyne's arguments that there was no contemporaneous access, no allegations of the interception of "contents," and that Vyne had permission lack merit.

The Counterclaims allege that Vyne deployed mechanisms to contemporaneously intercept the contents of electronic communications in transit between Dentrix/eTrans and HSOne's secure infrastructure by rerouting those transmissions, inserting a man-in-the-middle proxy.  (CC ¶¶ ¶¶ 46-50; 145-147.)  That is an interception using an electronic device under the ECPA.  *See In re: Maxim Integrated Products, Inc.*, 2013 WL 12141373, at *14 (holding sufficient allegations under ECPA and CFAA amounting to man-in-the-middle insertion "demonstrate the contemporaneous nature of the alleged transmissions.").  Vyne argues there was no "interception" because the re-routed electronic data sits in storage.  (Mot. 11.)  Though Vyne relies on "stored communications" cases to argue no interception, HSOne's claim is not about reading files at rest, but Vyne acquiring and rerouting claim eligibility transactions, statements, and payment records *at the moment* Dentrix/eTrans transmits them—that is, before arrival to their intended HSOne controlled server/endpoint.  (CC ¶¶ 46-50; 145-147.)  *See In re Maxim Integrated Prods.*, 2013 WL 12141373, at *14.  HSOne more than sufficiently alleges that Vyne "programmatically intercept[s] Internet traffic and redirect[s] it to its vtrans.vynetrellis.com servers."  (CC ¶ 17).  HSOne is also clear that Vyne intercepted by "injecting its own domain into the transmission of Dentrix's eClaims/eTrans configuration using invalid, unauthorized eTrans IDs."  (CC ¶ 146).

HSOne also alleged that Vyne's rerouting of electronic communications and data to its servers encompassed contents: "The ***contents*** of the intercepted communications include claim eligibility transactions, statements, and payment records."  (CC ¶ 148 (emphasis added).)  These categories are not merely header-type metadata.  Vyne's attempt to recast the allegations as limited to credentials or routing information misstates HSOne's allegations.  HSOne alleged that Vyne's

manipulations of IDs, settings, and keys are the mechanism of interception, while the intercepted "contents" are the "claim eligibility transactions, statements, and payment records" themselves. (CC ¶ 148.)  This more than suffices at the pleading stage.

The alleged consent of Vyne's customers does not provide a safe harbor for Vyne's interceptions.  Particularly when that consent is uninformed, as it is here, supported by only conclusory allegations, and exceeds the access the customers themselves have.  *See Blumofe v. Pharmatrak, Inc. (In re Pharmatrak, Inc. Privacy Litig.)*, 329 F.3d 9, 19-20 (1st Cir. 2003).  Even if Vyne could rely on terms of its customer agreements for purposes of its Motion, the terms do not contemplate the scope of Vyne's specific hacking and workarounds.  *See, e.g., Theofel*, 359 F.3d at 1074 ("Allowing consent procured by known mistake to serve as a defense would seriously impair the statute's operation.").[13]

Vyne's "intended recipient" theory also fails.  HSOne alleges that eTrans communications are intended for HSOne's secure servers, and Vyne reprograms and redirects the flow of information—the paradigmatic man-in-the-middle interception.  (CC ¶¶ 46-50.)  The ECPA focuses on the acquisition itself.  The violator is "the person or entity that intercepted…,"[14] foreclosing Vyne's effort to avoid liability by characterizing itself as a benign destination.

Even assuming customers are fully aware and consent to everything Vyne is doing, Vyne is still not shielded from liability because safe harbor under § 2511(2)(d) does not apply where the interception is "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."  18 U.S.C. § 2511(2)(d).  HSOne more

---

[13] *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 518 (4th Cir. 1999) (affirming finding of trespass because breach of duty of loyalty was a wrongful act in excess of authority to enter); *Hardie v. Deutsche Bank Tr. Co. Am.*, 544 F. Supp. 3d 547, 556–57 (D. Md. 2021) (plaintiff's alleged entry exceeded scope of authorization in a deed).

[14] *See Pritchard v. Pritchard*, 732 F.2d 372, 373 (4th Cir. 1984).

than sufficiently alleges the interceptions were undertaken to facilitate violations of the CFAA, DMCA, and common-law torts, and to disrupt HSOne's security controls and updates. *See In re: Maxim Integrated Products, Inc.*, 2013 WL 12141373, at *15. This independently defeats Vyne's safe harbor defense, which in any event should not be considered at this stage. *See Phreesia, Inc.*, 2022 WL 911207, at *3. Vyne's motion to dismiss this claim fails on these grounds as well.[15]

## IV.  HSOne States a Claim for a Violation of the Lanham Act and Maryland's Anti-Slapp Statute Does Not Apply.

### A.      HSOne has sufficiently alleged a violation of the Lanham Act.

The Lanham Act 15 U.S.C. 1125(a)(1)(B) requires that a contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context. *Millennium Labs. v. Ameritox, Ltd.*, 924 F. Supp. 2d 594, 599-600 (D. Md. 2013) (citation omitted). This is the case here with respect to Vyne's claims and omissions about its supposed 'print' functionality, which hides the write-back, encryption key exfiltration, interception, and other unauthorized access. (CC ¶¶ 57-67, 131-138.) Thus, Vyne's suggestion that only literally false claims give rise to a violation (Mot. 16) is misplaced. *See Millennium Labs.*, 924 F. Supp. 2d at 599 (emphasis added).

Here, HSOne alleges that Vyne disseminated and published statements of fact to mutual customers as well as to the market at large through the CEO's interview online. (*Id.* ¶¶ 57-67, 132-133.) This messaging campaign included mass email blasts, public statements by the CEO, and other communications designed to obscure Vyne's unauthorized misconduct. (*Id.* ¶¶ 57, 58,

---

[15] Vyne's bid to dismiss HSOne's Utah Interception of Communications Act (UICA) claim fails for the same reasons its ECPA argument fails. Vyne admits that UICA is "materially identical to the ECPA provision" relied on by HSOne. (Mot. 23.) Thus, for the same reasons, the Court should deny the motion to dismiss HSOne's UICA claim. Vyne reiterates its consent theory, relying on *UHS of Provo Canyon, Inc. v. Bliss*, 2024 WL 4279243, at *10 (D. Utah Sept. 24, 2024). *Id.* at 23 But *UHS Provo* does not help Vyne. Utah law does not bless undisclosed man-in-the-middle rerouting, decryption, or impersonation of aa destination endpoint. In fact, the court refused to dismiss the wiretap causes of actions, concluding that the complaint sufficiently alleged that Bless was neither a party to the conversations intercepted/recorded, and that his interceptions were for criminal or tortious purposes. *Id.* at *32-35.

60, 63, 64.)  Statements made by Vyne claiming that its hack was an "integration method" were false and misleading, as Vyne did not integrate, refusing to do so through secure API-based integration for authorized vendors or through a clearinghouse integration method.  (CC ¶¶ 6, 12, 30, 33-36.)  Vyne also misled customers that HSOne was somehow targeting Vyne when HSOne attempted to secure and patch its systems.  (CC ¶ 59.)  Not only are all of these statements false on their face, they are also misleading.  (CC ¶¶ 14, 58, 60, 136.)  In any event, the Court is required to take HSOne's factual allegations as true at the pleading stage.  *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 440.  Now is not the time to resolve issues of disputed facts.  *See Phreesia, Inc.*, 2022 WL 911207, at *3 (citation omitted)[16]; *see also Millennium Labs. v. Ameritox, Ltd.*, 924 F. Supp. 2d 594, 599-600 (D. Md. 2013).

HSOne also alleges that Vyne's false advertising statements actually deceived or had a tendency to deceive HSOne's customers and influenced customer decisions, created confusion about HSOne's platform, caused loss of customer goodwill, and diverted business from HSOne. (CC ¶¶ 6, 12, 57-67, 125, 135, 136.)

Vyne's argument that HSOne targets non-actionable statements of opinion is unavailing. (Mot. 24.)  Vyne made statements of fact:  It publicly stated that its interactions with HSOne's software are authorized and benign (CC ¶ 57) while omitting the true nature of its conduct.  Vyne has issued communications to HSOne customers containing misleading statements about HSOne's practices and security measures (*Id.* ¶ 58), claiming HSOne's security measures "raised concerns about reduced provider choice and increased vendor lock-in" (*Id.* ¶ 60).  Vyne made further representations about the nature, characteristics, and qualities of HSOne's products and services

---

[16] Vyne's attempt to dispute HSOne's allegations with extrinsic evidence is improper at this stage. *See, e.g.*, *E.I. du Pont Nemours & Co.* 637 F.3d at 440; *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999) (citations omitted).

(*Id.* 57-67) that are false.  These are not merely "comparative assertions" but rather, "active misstatement[s] of fact."  *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 330 (D. Md. 2021).[17]  HSOne customers have reached out to HSOne as a direct result of statements made by Vyne due to their confusion regarding those statements' veracity.  (*Id.* ¶ 57.)

Vyne's argument that these statements were not made in connection with commercial advertisement lacks merit.  (Mot. 18.)  Vyne and HSOne are two software companies that deliver services to dental practices. (CC ¶¶ 1-5.)  Vyne provides billing services while HSOne streamlines operational, clinical, and financial processes.  (CC ¶¶ 3, 6.)  Vyne's CEO has made public statements about HSOne in an interview this year, boasting about Vyne's ability to bypass HSOne's controls and circumvent its technical security measures.  (CC ¶¶ 63-65.)  As a result, HSOne has received many inquiries and complaints from concerned customers.  (CC ¶ 67.)  Vyne claims HSOne's allegations of the letter Vyne sent HSOne in August 2025 containing false advertising are insufficient because HSOne did not allege it was distributed to anyone with the purpose of influencing customer purchasing decisions.  (Mot. 18.)  But HSOne alleged that Vyne's communications for the purposes of collecting names for this letter constituted an act of influencing purchase decisions.  HSOne further alleged that Vyne did not provide any detail about what it actually told or did not tell HSOne's customers.  (CC ¶ 62.)[18]

Vyne also ignores (Mot. 18-19) well-established case law that omissions can be actionable

---

[17] The statements set forth in the Counterclaim are distinguishable from those in *Plymouth Cty. Ret. Sys. v. Evolent Health, Inc.*, Civ. Action No. 1:19-cv-1031 (RDA/TCB), 2021 U.S. Dist. LEXIS 76399, at *74 (E.D. Va. Mar. 24, 2021).  There, statements a particular transition was "smooth" or "successful" were "subjective descriptions that are vague, so lacking in specificity, that they clearly constitute [] opinion."  That is distinguishable from here, where the language used by Vyne were facts regarding its actions and HSOne's systems and security controls.

[18] The case cited by Vyne is distinguishable because in *Am. Muscle Docks & Fabrication, LLC v. Merco, Inc.*, 187 F. Supp. 3d 694, 701 (N.D.W. Va. 2016), the Court was considering summary judgment and the plaintiff failed to provide evidence to support its position as to the dissemination of the advertisement.  That is not the case here, as the parties are at the initial stages of the case and discovery has not yet even commenced.

under the Lanham Act "if they render affirmative statements false or misleading[.]" *See, e.g.*, *Reg. Com, Inc. v. Domain Registry of Am., Inc.*, 2002 U.S. Dist. LEXIS 24795, 2002 WL 31894625, at *14 (S.D.N.Y. Dec. 27, 2002) (internal marks omitted).  HSOne's contention is not simply about the impact of a consumer's perception of goods or services.  Rather, the allegations here are focused on the false and misleading statements, which rely on the material omissions Vyne chose not to include, which manipulate and directly impact its customers.  (CC ¶¶ 57-67.)  *See Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 638-39 (S.D.N.Y. 2016).

HSOne's claims do meet Rule 9(b)'s standard, as they quote statements and reference the who, what, when, and where.  There are specific links to videos and documents attached to the Counterclaims.  In any event, HSOne's Lanham Act claim is not subject to Rule 9(b)'s heightened pleading standard.  *See Penn-Plax, Inc. v. L. Schultz, Inc.,* 988 F. Supp. 906, 908 (D. Md. 1997) ("[A] court is not the proper forum for a request to alter the substantive law under the Lanham Act, and neither may a court erect artificial pleading standards"); *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1138 (4th Cir. 1993) (reversing dismissal of complaint where plaintiff alleged false representation, noting differences between standards of pleading and of proof).  There is no heightened pleading requirement for HSOne to meet, but even if there was, HSOne has done so.

## B.    HSOne Has Stated a Claim for Business Libel / Common Law Defamation.

For many of the same reasons HSOne's Lanham Act claims survive, so does this.  "To state a defamation claim, a plaintiff must allege the defendant published statements that referred to the plaintiff, that the statements were false and defamatory, that the statements were published with the requisite degree of fault, and that the publication of the statements resulted in damage." *Mathews v. McCown*, 2025 UT 34, ¶¶ 39-41, 575 P.3d 1114, 1125–26 (citation omitted). The

question is "whether the pleaded statements are capable of defamatory meaning." *Id.* at 1126.[19] As HSOne alleged, Vyne's statements are capable of and did just that—injured HSOne's reputation in the eyes of a significant number of customers. For example, although HSOne's investigation is ongoing, HSOne has already had more than 500 complaints from customers about data integrity issues. (Reply ISO Mot. for TRO (ECF No. 62) 2.) These facts can all be properly inferred from the existing Counterclaim allegations.

HSOne alleged verifiable, defamatory statements made by Vyne that are disprovable facts. (CC ¶¶ 12, 14, 35, 57–66, 127–129; 140, 143.) These statements—which Vyne does not contest were publicly made—are not mere "generalized criticisms," high-level value judgments, non-actionable puffery. Rather, they assert specific facts about HSOne's business practices, security posture, and technical capabilities. Thus, these are provable statements, communicated to influence customer choices and create distrust in HSOne. Vyne's statements were also knowingly false because Vyne concealed its own unauthorized hacks while it accused HSOne of misconduct. (CC ¶ 59-63.) HSOne need only allege facts to make its claim plausible, *see Mathews*, 575 P.3d at 1126–27, which it has done. (CC ¶¶ 67.)[20]

### C. Maryland's anti-SLAPP Statute Does Not Apply.

Vyne did not move for dismissal under Maryland's anti-SLAPP statute, and it should not apply in the 12(b)(6) analysis. As an initial matter, not all federal courts have held that state Anti-SLAPP statutes apply. *See, e.g.*, *In re Hunter*, 610 B.R. 479, 494 (Bankr. M.D.N.C. 2019) ("[A]t least two district courts from within the circuit have found other anti-SLAPP statutes to be

---

[19] In a defamation case, Plaintiff is still entitled to "favorable interpretation of factual inferences…" *Mathews*, 2025 UT 34, 575 P.3d at 1125-26, n.8.

[20] HSOne's allegations about Vyne's are not related to any inferiority as Vyne implies, and the law does not support such a limitation for defamation claims.

procedural, and thus not applicable in federal court."); *ABLV Bank v. Ctr. for Advanced Def. Stud. Inc.*, No. 1:14-CV-1118, 2015 WL 12517012, at *3 (E.D. Va. Apr. 21, 2015) ("It would be improper for this Court to recognize a heightened pleading standard found outside the Federal Rules of Civil Procedure. Because the Act is procedural…, it is not applicable in federal court."). Regardless, Vyne has not demonstrated HSOne's suit is a SLAPP suit or that it should be dismissed on this ground. HSOne's claims are based on Vyne's egregious hacking and misrepresentations of HSOne's systems. Its Lanham Act claim is far from meritless.

At the outset, Vyne's statements are not the type of statements of public concern that warrant anti-SLAPP treatment. The Lanham Act claims primarily target commercial speech, which receives substantially reduced First Amendment protection compared to other forms of expression. The Fourth Circuit has established that commercial speech is "speech that does no more than propose a commercial transaction." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 323 (4th Cir. 2015). Here, HSOne's claim is based on false statements of fact one business is saying about another.[21] This is not the type of claim anti-SLAPP statutes are designed to prevent.

Not only does Vyne fail to meet the threshold requirements of establishing an anti-SLAPP defense, but it fails to establish HSOne acted in bad faith. (Mot. 15.) Vyne's conclusory allegations are not sufficient. *See Ugwuonye v. Rotimi*, No. PJM 09-658, 2010 U.S. Dist. LEXIS 77436, at *11 (D. Md. July 30, 2010) ("At this stage of the litigation,…the Court is not prepared to dismiss the suit based solely on Sowore's mere allegation that the suit is brought in bad faith."); *Connolly v. Lanham*, 685 F. Supp. 3d 312, 343–44 (D. Md. 2023) (same); *Russell v. Krowne*, No. CIV.A. DKC 2008-2468, 2010 WL 2765268, at *2–3 (D. Md. July 12, 2010) (concluding fact

---

[21] *Real Time* is factually distinguishable and actually favors HSOne. (HSOne's Opp. to Vyne's Mot. for TRO (ECF No. 38) 2, 21-24.).

issues existed regarding bad faith and whether defendant's conduct was malicious).[22]

First, as set forth in HSOne's motion to transfer (ECF No. 35-1), it is Vyne who has abused the litigation process by forum shopping to try to take advantage of what it perceives is favorable precedent.  It rushed to file in Maryland the day after HSOne's CEO told Vyne's CEO that HSOne would be filing claims and over a month after receiving HSOne's cease and desist letter outlining HSOne's claims against Vyne.  As such, Vyne's claim that HSOne's suit was retaliatory[23] and "mirrors every claim brought by Vyne" is disingenuous and misleading.  Also, the difference in the parties' claims is clear.  HSOne's claims are all based on Vyne's malicious hacking of HSOne's systems (*see generally* CC), while Vyne's complaint (ECF No. 61) is based on HSOne's implementation of security controls designed to block unauthorized parties from accessing HSOne's system.  Second, as set forth above, HSOne's Counterclaims include detailed allegations supporting its Lanham Act claim.   There is no evidence before the Court at this stage to demonstrate that HSOne has taken any action in bad faith but for Vyne's unsupported and conclusory allegations.  As Vyne is well aware, HSOne is the party that first threatened claims.  It is Vyne that copied those claims and rushed to file first as part of its forum shopping strategy.

Vyne cannot get around HSOne's allegations that demonstrate Vyne's false statements about what it is doing and HSOne's justified security upgrades are malicious.  HSOne alleged Vyne's egregious hacking and interference with its systems.[24]  HSOne has also alleged that Vyne

---

[22] This case is distinguishable from *Woodberry Dev., LLC v. Council of Owners of Millrace Condo., Inc.*, which was an anti-slapp motion in state court case.  *See* 253 Md. App. 279, 291, 265 A.3d 1140, 1160 (2021). The case involved HOA members' protests to the city planning commission about a development project.  *See id.* at 1147.  The court concluded the finding of bad faith on the anti-slapp motion to dismiss was justified in that case because of the timing in response to the decision remanding the project back to the planning commission; a request for $25 million in punitive damages; overbroad discovery requests served 10 days after the filing seeking among other things, all of the HOA members' bank records; and the lack of plausibly alleged claims.  *See id.* at 1159.

[23] This is far different than the developer filing a complaint after its project was being sent back to the planning commission causing additional delays.  *See Woodberry Dev., LLC*, 265 A.3d at 1147-49.

[24] (CC ¶¶ ¶¶ 6-10, 12, 14, 34, 36-40, 42, 45-56, 58, 65, 71, 72, 76-83, 100, 102, 110, 115-16, 120.)

is making false statements to customers and also admitting it can work around HSOne's security upgrades.  (*Id.* ¶¶ 57-67.)  Because Vyne's statements in the face of its unlawful conduct are malicious, Maryland's anti-SLAPP statute should not apply.  Vyne's motion to dismiss HSOne's speech related claims consequently fails.

## V.    HSOne States a Claim for Unfair Competition Act (Utah Code Ann. § 13-5a-103 et seq.) and Common Law Unfair Competition.

### A.    HSOne has stated a violation of the Utah Unfair Competition Act.

Vyne's conduct violates the UUCA.  Under the UUCA, a plaintiff must show (i) an intentional business act by defendant, that is (ii) unlawful, unfair, or fraudulent; (iii) leading to material diminution in the value of intellectual property; and that (iv) falls under one of four enumerated categories, including "malicious cyber activity."  *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, No. 1:22-cv-00167-RJS-DAO, at *6 (D. Utah May 23, 2024).

Vyne did not contest that HSOne alleged an intentional business act or practice by Vyne. HSOne alleged numerous details showing Vyne engaged in intentional and willful business acts and practices that violate the UUCA.[25]  The Counterclaims include detailed allegations of Vyne's unlawful, unfair, and fraudulent acts, including federal and state statutory violations.[26]

HSOne also specifically alleged a material diminution in the value of its Dentrix software and related components as a direct result of Vyne's misconduct, through both reputational harm and technical degradation.  (CC ¶¶ 43, 98, 104.)[27]  HSOne alleged details about Vyne's repeated,

---

[25] (CC ¶¶ 6-10, 12, 14, 16, 17, 34, 36-40, 42, 45-59, 65, 71, 72, 76-83, 99-103, 102, 110, 115-16, 120, 134, 136, 138, 147, 154).

[26] (CC ¶¶ 6-10, 12, 14, 16, 17, 34, 36-40, 42, 45-67, 71, 72, 75-95, 99-103, 102, 110, 115-16, 120, 124-30, 135-38, 145-56).)

[27] *Asphalt Sys., Inc. v. Am. Gilsonite Co.*, No. 2:24-CV-00902-DBB-DBP, 2025 WL 1663323, at *4 (D. Utah June 12, 2025) is distinguishable.  That complaint contained no factual allegations supporting the elements and contained only conclusory mentions of "goodwill" and summary allegations about confusion.  That is not the case here.  And HSOne is not basing its allegations of diminution in value of intellectual property on information and belief like the plaintiff in *Bedrock Quartz Surfaces, LLC v. Rock Tops Holdings LLC*, 2023 WL 8481417, at *5 (D. Utah Dec. 7, 2023).

unauthorized intrusions, manipulations, and public disparagements, which have caused customer complaints and confusion and have exposed Dentrix to instability and security threats.[28]   Due to Vyne's hacks, HSOne's software does not function as effectively, its copyright protections are circumvented, and its source code is being exploited.  (*Id.* ¶¶ 7, 9, 10, 39, 46-56, 71, 100-101.) This lessens the value of HSOne's intellectual property tied to its Dentrix software.  In addition, HSOne has suffered economic harm, including forensic investigation, remediation, and business disruption.  (*Id.* ¶¶ 2, 8, 9, 15, 39, 43, 44, 71, 84, 104.)  Vyne's conduct, which has resulted in this diminution, is specifically tied to its intellectual property—Dentrix and related software and components.[29]  HSOne's allegations are not limited to the erosion of customer trust and goodwill. But that as well is a result of the problems and confusion customers are experiencing due to Vyne's hacking of HSOne's intellectual property. (*Id.* ¶¶ 43, 67, 57-67.)  This is the very harm the Act is designed to prevent.[30]

Contrary to Vyne's claim, HSOne has sufficiently alleged "malicious cyber activity" or a "software license violation."  HSOne alleges facts showing Vyne deploys its unlawful access of computing resources (under CFAA and other statutes) to coerce HSOne into providing Vyne unfettered access to HSOne's database systems and to intimidate and coerce customers with going along with Vyne's work arounds despite those customers' agreements with HSOne that they are not authorized to give third parties access.[31]  In addition, HSOne alleged Vyne has accessed a

---

[28] (CC ¶¶ 6-10, 12, 14, 16, 17, 34, 36-40, 42, 45-67, 71, 72, 76-83, 99-103, 102, 110, 115-16, 120, 134, 136, 138, 147, 154.)

[29] (*Id.* ¶¶ 6-10, 12, 14, 16, 17, 34, 36-40, 42, 45-67, 71, 72, 76-83, 99-103, 102, 110, 115-16, 120, 134, 136, 138, 147, 154.)

[30] Vyne's claim the UUCA does not apply to content subject to copyright protection (HSOne's software) is misplaced. (Mot. 20.)  The statute protects against violations of "a software license" and "malicious cyber activity," which could impact software.  *Diamonds Direct, L.C. v. Manly Bands*, does not change that.  That court simply said it was not convinced that the UUCA was intended to penalize copyright infringement.  No. 2:23-CV-00870, 2024 WL 4818827, at *9–10 (D. Utah Nov. 18, 2024).  HSOne does not bring a claim for copyright infringement but rather circumvention.

[31] (CC ¶¶ 6-10, 12, 14, 16, 17, 34, 36-40, 42, 45-67, 71, 72, 76-83, 99-103, 102, 110, 115-16, 120, 134, 136, 138, 147, 154.)  That HSOne did not include the word "intimidate" or "coerce" does not warrant dismissal.  *See State Auto. Mut.*

computer (which includes HSOne's software systems and related components) without authorization.[32]  HSOne also alleged that Vyne willfully communicated, delivered, or caused the transmission of a program, information, code, or command without authorization or exceeding authorized access.  (*Id.* ¶¶ 46, 102.)  HSOne alleged that Vyne has engaged in a persistent escalating campaign of unauthorized access to its software systems, including misappropriating credentials, decrypting configuration files, injecting data, impersonating HSOne components, and intercepting of web traffic.[33]  *See* Utah Code Ann. § 13-5a-102(3).  Vyne's intentional conduct materially disrupts HSOne's ability to deploy security patches, maintain authentication workflows, and ensure data integrity, thus causing system instability, customer complaints, disruption of services, and reputational harm.  These same allegations also show Vyne intended to defraud and materially cause damage.  Further, HSOne alleges that Vyne made false representations to customers about workarounds to HSOne's security system, thereby causing system instability for HSOne and problems for customers.  (*See, e.g.,* CC ¶¶ 7, 15, 39, 43-56, 57-66, 94, 104.)

Finally, Vyne's conduct also falls within the statute's prohibition on software license violations.  (CC ¶¶ 12, 15, 36, 42, 61, 70.)  *See* Utah Code § 13-5a-102(4)(a)(ii)(B); *StorageCraft Tech. Corp. v. Persistent Telecom Sols., Inc.*, No. 2:14-CV-76-DAK, 2016 WL 7155782, at *8 (D. Utah Dec. 6, 2016).  HSOne customer contracts do not permit granting third parties access to circumvent HSOne's security controls.  (CC ¶¶ 4, 14, 39, 56, 57, 108-111; HSOne's Mot. for TRO, 7; McDaniel Decl. (ECF No. 46-23) ¶ 10.)  Vyne has and continues to knowingly induce HSOne's customers to breach those contracts to gain unauthorized access to HSOne's systems and to exploit licensed components for its own commercial benefit.  (CC ¶¶ 57-67.)

---

*Ins. Co.*, 422 F. Supp. 3d at 958 ("[F]ederal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

[32] (*Id.* ¶¶ 2, 6-9, 14, 38, 39, 42-56, 57, 59, 61, 75-83, 90-92, 100-102, 110, 120, 121, 134, 136.)
[33] (CC ¶¶ 6-10, 12, 14, 34, 36-40, 42, 45-56, 58, 65, 71, 72, 76-83, 100, 102, 110, 115-16, 120.)

HSOne's allegations are more than sufficient to state a claim under the statute, and Vyne's motion should be denied. *See Vendr, Inc. v. Tropic Techs., Inc*., No. 2:23-CV-165-DAK-DAO, 2023 WL 8789297, at \*5 (D. Utah Dec. 19, 2023) (evidence of inducement to violate contractual obligations is sufficient to survive a motion to dismiss); *Whitaker v. W. Essentials, LLC*, No. 1:15-CV-00048-TC, 2016 WL 3435185, at \*4 (D. Utah June 17, 2016) (false statements that convince reversal of customer decisions is enough to establish a claim under the Act).

**B.      HSOne has stated a claim for Common Law Unfair Competition.**

HSOne has also stated a claim for common law unfair competition. Utah's federal courts recognize that common law unfair competition includes both traditional "passing off" and misappropriation theories. *See Proctor & Gamble Co. v. Haugen*, 947 F. Supp. 1551, 1554 (D. Utah 1996); *see also Am. Airlines, Inc. v. Platinum Worlds Travel*, 769 F. Supp. 1203, 1207 (D. Utah 1990), *aff'd sub nom. Am. Airlines v. Christensen*, 967 F.2d 410 (10th Cir. 1992). HSOne details Vyne's misconduct and deception, which not only "cause[s] confusion" among shared customers—satisfying the classic elements of unfair competition—but more fundamentally, it alleges misappropriation and fraudulent conduct regarding HSOne's confidential information, goodwill, and proprietary (Dentrix) software. The allegations are factual, specific, and meet the standards required by Utah common law. (CC ¶¶ 7, 10, 11, 13, 15, 36, 39, 41, 43-46, 51, 57-65, 62, 71; Ex. 1 to Counterclaims (ECF No. 45-1); Declaration of James Nix (ECF No. 40-5).) Vyne's conduct is precisely the type of misconduct recognized as actionable misappropriation. *See, e.g., American Airlines, Inc.,* 769 F. Supp. at 1207; *Budget System, Inc. v. Budget Loan and Fin. Plan*, 361 P.2d 512, 514 (Utah 1961); *digEcor, Inc. v. e.Digital Corp*., No. 2:06-CV-437 CW, 2009 WL 928679, at \*6 (D. Utah Apr. 2, 2009).

Further, HSOne has incurred significant costs responding to security breaches and mounting customer confusion; a classic indicium of unfair competition. *See JM4 Tactical, LLC v.*

*Her Tactical, LLC,* No. 1:22-CV-121-DAK-DBP, 2023 WL 1434179, at *4 (D. Utah Feb. 1, 2023);

*Hi-Land Dairyman's Ass'n v. Cloverleaf Dairy*, 151 P.2d 710, 717 (Utah 1944).[34]

## VI.    HSOne Has Stated a Claim for a Violation of the Utah Truth in Advertising: Deceptive Trade Practices Act.

HSOne has stated a claim for a violation of the UTAA.  The statute prohibits deceptive

conduct that occurs in the course of business.  Utah Code Ann. § 13-11a-3.  HSOne has alleged

facts showing Vyne or its conduct violates sections 13-11a-3(b), (c), (e), (h), and (t), which are all

based on Vyne's conduct suggesting it has approval to access which it does not, leading to

confusion.

HSOne's Counterclaims are replete with specific factual allegations showing Vyne's

ongoing campaign of misrepresentations about HSOne, its misrepresentations that it has

authorization that it does not, misrepresentations about the Dentrix software and Vyne's

interactions with it, and false statements about HSOne's security upgrades.  (CC ¶¶ 11, 14, 39, 58,

60, 62, 63-67.)  Vyne's conduct has resulted in actual confusion and misunderstanding, damaging

HSOne's business and its relationships with its customers. (*Id.* ¶¶ 43, 50, 57-66, 71.)

Vyne's reliance on *Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc*., 144 P.3d 1079,

1083 (Utah 2006), is misplaced.  That case analyzed claims under different prongs and is factually

distinguishable.  The court focused on "source" confusion (*id*. at 1082), whereas HSOne alleges

confusion and false statements regarding "sponsorship/approval and legality of Vyne's" conduct—

distinct concepts not addressed by Vyne's cited authority.  Instead, the facts are more closely

aligned with those in *Partnerco Holdings, LLC v. Nutonic Corp.*, No. 221CV00580JNPDBP, 2024

WL 1307152 (D. Utah Mar. 26, 2024). There, plaintiff alleged that defendant engaged in

---

[34] Even if HSOne's claim sounds in fraud, HSOne's allegations are specific and meet Rule 9(b)'s heightened standard. Unlike the claims dismissed in *Sec. Sys., Inc v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186, 1195 (D. Utah 2019) for lack of detail, HSOne's allegations are supported by dates and details.

"unauthorized and infringing acts" involving its product. *Id*. The plaintiff had never endorsed, authorized, or licensed the defendant's product, and there was no affiliation between the parties. *Id*. The court found that defendant's conduct—specifically, its misleading statements and unauthorized actions—were "practices likely to cause customer confusion." *Id*. at *4. Similarly, here, HSOne alleges that Vyne's unauthorized access and false statements have created confusion among customers regarding the nature and approval of Vyne's conduct, fitting squarely within the type of conduct the court found actionable in *Partnerco*.

## VII. HSOne Has Stated a Claim for Tortious Interference with Contract and Prospective Economic Relations.

To state a claim for tortious interference, a plaintiff must allege "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Mackey v. Krause*, 2025 UT 37, ¶¶ 104-105, 575 P.3d 1162, 1183. (citation omitted). HSOne has alleged in detail the existence of valid contracts with customers and identifiable prospective economic relations, Vyne's knowledge of those contracts and relationships, intentional interference by improper means and purpose, and resulting harm. (CC ¶¶ 14, 54, 57-67, 108–110.)

First, HSOne sufficiently alleged Vyne's conduct interferes with HSOne's contractual relationships and prospective relations on several levels. There is no question Vyne is aware of HSOne's contracts with its customers. Vyne sent a letter to HSOne in August 2025 (Ex. 3 to CC (ECF No. 45-3)), claiming to represent hundreds of dental practices who were customers of Dentrix and identifying them by name. Vyne demanded access to Dentrix data, falsely implying HSOne was obstructing patient care, and therefore interfering with HSOne's relationships with those customers. (*Id*. ¶ 62.) Vyne also issued communications to customers who were also presumably Dentrix customers (with Dentrix contracts) and to the public misrepresenting Vyne's

conduct and HSOne's security controls.  (CC ¶¶ 60, 63-66; Ex. 2 to CC (ECF No. 45-2).) These statements (and omissions) were aimed at the public, including prospective providers.  (*Id.*)

HSOne's allegations point to specific commercial relationships.  (Mot. 24.)  Vyne knows they exist given that the customers it interferes with use the Dentrix software and database.  *See CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247, 1263 (D. Utah 2019).

Vyne's campaign of false statements and technical sabotage is designed to disrupt HSOne's customer relationships, force HSOne to abandon its security measures, and address public opinion questions writ large with respect to HSOne.  And because HSOne customers agreed by contract not to provide third-party access to overcome HSOne's technical security measures, Vyne is inducing them to breach their contractual obligations to allow Vyne's work arounds of HSOne's security controls.  *See, e.g.*, *First Am. Title Ins. Co. v. Nw. Title Ins. Agency*, 906 F.3d 884, 888 (10th Cir. 2018).  Vyne does this to gain unfair and unlawful commercial advantage over HSOne, while forgoing a commercial relationship and instead accessing at no cost.

Second, HSOne has alleged detailed "improper means" and delineated conduct that is unlawful or contrary to established trade standards.  (CC ¶¶ 7, 39, 42-67, 71, 109–111.)  Courts routinely hold that statutory violations and deceptive practices constitute improper means.  *C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 48, 437 P.3d 343, 355; *CounselNow, LLC*, 430 F. Supp. 3d at 1261–62.  HSOne also alleged facts about Vyne's conduct that satisfy the elements of numerous statutes and torts, constituting "improper means."  (CC ¶¶ 6-10, 12, 14, 16, 17, 34, 36-40, 42, 45-67, 71, 72, 75-156.)  HSOne also sufficiently alleged an improper purpose.  (CC ¶ 36 (emphasis added).)  Vyne's motion to dismiss these claims should be denied.

## VIII.   HSOne Has Stated a Claim for Trespass to Chattels.

Vyne's arguments on why HSOne's trespass to chattels claim should be dismissed miss the mark.  It is well settled that Utah recognizes the tort of trespass to chattels.  *See Nassi v. Hatsis*,

525 P.3d 117 (Utah Ct. App. 2023); *Power Block Coin, L.L.C. v. Song*, 705 F. Supp. 3d 1293 (D. Utah 2023).  Trespass to chattels is "understood to occur when one intentionally (a) dispossess[es] another of the chattel, or (b) us[es] or intermeddl[es] with a chattel in the possession of another." *Nassi*, 525 P.3d at 122 (brackets in original) (citation omitted).

Courts across the country have applied trespass to chattels common law claims to allegations involving computer intrusion.  *See, e.g.*, *U.S. v. Ackerman*, 831 F.3d 1292, 1308 (10th Cir. 2016); *Thrifty–Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 1565–67 (1996).  Computer intrusion or not, to sustain a cause of action for trespass to chattels, courts have required a showing of "harm to the personal property or diminution of its quality, conditions, or value" as a result of the conduct.  *CompuServe*, 962 F.Supp. at 1022 (citation omitted); *Pearl Inv., LLC v. Standard I/O, Inc.*, 257 F.Supp.2d 326, 354 (D. Maine 2003) ("One who commits a trespass to chattel is liable to the possessor [] if the chattel is impaired as to its condition, quality, or value") (quoting *Am. Online, Inc. v. IMS*, 24 F.Supp.548, 550 (E.D.Va. 1998)).[35]  Here, HSOne's Counterclaims are replete with allegations that Vyne's acts impaired the value of its systems.  (*See, e.g.*, CC ¶¶ 52, 54, 116.)  HSOne has sufficiently alleged a valid claim.  *Am. Online*, 24 F.Supp.2d 548 at 550-51 (finding bulk e-mail sent to strain computer network diminished the value of the network).

Finally, customer consent or action is not relevant to HSOne's claim, putting aside that Vyne's customers do not know what Vyne is doing.  HSOne did not authorize Vyne to access its software systems—let alone patch binaries, run altered code, modify configurations, and hijack application workflows, among other things.  There is no question that, by doing those things, Vyne

---

[35] To the extent Vyne attempts to argue that physical damage is necessary to sustain a trespass to chattels claim (Mot. 25, the law is clear that trespass claims stand where the "value to the owner of a particular type of chattel may be impaired . . . even though the physical condition of the chattel is not[.]"  *CompuServe*, 962 F.Supp. at 1022 (internal citation omitted).  HSOne is not required to plead physical damage to tangible property; its allegations that the value of its computer systems have been impaired is sufficient.

intentionally intermeddled with HSOne's chattel.  (*See, e.g.,* CC ¶ 115.)

## IX.    HSOne Has Stated a Claim for Unjust Enrichment.

In contesting HSOne's unjust enrichment claim (Mot. 26.), Vyne cites to the very way that it has been unjustly enriched and the very reason this claim should *not* be dismissed—Vyne bypassed HSOne's API and is accessing HSOne's system without authorization.  (*Id*. at 25-26; CC ¶120.)  As alleged, Vyne has obtained the benefits of intentionally accessing HSOne's systems without authorization from HSOne and without agreeing to its terms or complying with security measures, resulting in damages to HSOne.  (*See, e.g.*, CC ¶¶ 2, 4-16, 26-31, 33-34, 36-65, 70-73, 75-155.)  Permitting Vyne to retain benefits that it gained by backdooring its way in would be unjust and inequitable and result in damages.  (CC ¶¶ 119-23.)  *See Rawlings v. Rawlings*, 240 P.3d 754, 763 (2010) (internal quotations and citation omitted); *see also AAAG-Ca., LLC v. Kisana*, 439 F.Supp.3d 1265 (2020); *L & A Drywall, Inc. v. Witmore Const. Co., Inc.*, 608 P.2d 626, 630 (1980).[36]

## CONCLUSION

Vyne's attempt to introduce fact disputes does not merit dismissal on a Rule 12 standard. Because HSOne pleads more than sufficient detail on every element required for all its causes of action, and Vyne admits critical elements as well, HSOne respectfully requests that the Court deny Vyne's motion to dismiss its Counterclaims.

---

[36] Further, Vyne ignores the ability to plead in the alternative.  *See, e.g. Helf v. Chevron U.S.A. Inc.*, 361 P.3d 62, 79 (2015); *Crowe v. SRR Partners, LLC*, 632 F.Supp.3d 1233, 1243 (D. Utah 2022).

Respectfully submitted,

Date: December 16, 2025

By: */s/ Michael Sklaire*

Michael Burshteyn *(pro hac vice)*
Marcelo Barros *(pro hac vice)*
Jennifer Bartlett *(pro hac vice)*
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Michael.burshteyn@gtlaw.com
Marcelo.barros@gtlaw.com
Jennifer.bartlett@gtlaw.com

Michael R. Sklaire (MD Fed. Bar No. 16471)
1750 Tysons Boulevard, Suite 1000
Tysons Corner, VA 22102
Tel: (703) 749-1308
michael.sklaire@gtlaw.com

*Counsel for Henry Schein One, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 16, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael Sklaire*
Michael Sklaire