**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL

                              Plaintiff,

               - against –

HENRY SCHEIN ONE, LLC,

                            Defendant.

**Case No. 1:25-cv-03246-MJM**

**HENRY SCHEIN ONE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS VYNE'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 4

    I.     Vyne's Venue Allegations Admit that Utah is the Nexus of this Dispute.............. 4

    II.    Vyne's Allegations that Security Measures Hack Vyne's Software are
          Implausible and ask the Court to Make Unsupported Inferences that
          Distort the Facts. ................................................................................................ 5

    III.   Vyne's Allegations about the Parties' Commercial Negotiations are
          Conclusory and One-sided. ................................................................................ 6

ARGUMENT ....................................................................................................................... 7

    I.     Vyne Fails to Allege Proper Venue ................................................................... 7

    II.    Vyne's FAC Fails to State a Claim for Relief as a Matter of Law ........................ 9

          A.    Vyne's Computer Fraud and Abuse Act claim (Count I) fails
                  because security upgrades are not hacks.................................................... 10

          B.    Vyne's speech-related claims fail to allege anything more than
                  acceptable business communications........................................................... 14

          C.    Both Vyne's tortious interference claims (Counts III And IV) fail
                  because Vyne alleges no specific contract, no actual breach, and no
                  wrongful conduct. ...................................................................................... 18

          D.    Vyne's unfair competition claim (Count V) fails because Vyne
                  alleges no fraud or other wrongful conduct; its reliance on the
                  Cures Act does not save its claim. ............................................................. 22

          E.    Vyne's Declaratory Judgment Claim (Count VII) Fails Because It
                  Seeks an Impermissible Prior Restraint. .................................................... 30

CONCLUSION .................................................................................................................... 30

**Cases**

*Abissi v. United States Citizenship & Immigration Services*,
729 F. Supp. 3d 505 (D. Md. 2024) ..................................................................4

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
368 F.3d 1174 (9th Cir. 2004) .......................................................................9

*Ademiluyi v. Nat'l Bar Ass'n*,
No. GJH-15-02947 (D. Md. Sep. 8, 2016).........................................................8

*Alexander & Alexander Inc. v. B. Dixon Evander & Associates, Inc.*,
336 Md. 635, 650 A.2d 260 (1994) ..........................................................19, 24

*Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*,
640 F. Supp. 1411 (E.D.N.C. 1986).................................................................17

*Animators at Law, Inc. v. Capital Legal Sols., LLC*,
786 F. Supp. 2d 1114 (E.D. Va. 2011) ....................................... 13 BA_Cite_467413_000730

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................9, 10

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
571 U.S. 49 (2013).................................................................................7, 8, 9

*Baron Fin. Corp. v. Natanzon*,
471 F. Supp. 2d 535 (D. Md. 2006) .............................................................21, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................9, 15, 25, 27

*Berlyn Inc. v. Gazette Newspapers, Inc.*,
223 F.Supp.2d 718 (D. Md. 2002) .................................................................23

*Biospherics, Inc. v. Forbes, Inc.*,
151 F.3d 180 (4th Cir. 1998) ........................................................................15

*Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*,
No. CV SAG-22-00176, 2023 WL 5278654 (D. Md. Aug. 16, 2023) ....................12

*Carfax, Inc. v. Accu-Trade, LLC*,
No. 121CV00361RDATCB, 2022 WL 657976 (E.D. Va. Mar. 4, 2022) ...............12

*Carlisle v. McDonald*,
2017 WL 550031 (D. Md. Feb. 10, 2017) ..........................................................7

*CGM, LLC v. BellSouth Telecomms., Inc.*,
664 F.3d 46 (4th Cir. 2011) ..........................................................................30

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993) .......................................................................14

*Corp. Universe, Inc. v. Emry Cap. Grp., Inc.*,
    2021 WL 3603040 (D. Md. Aug. 12, 2021) ....................................................................7

*Design Res., Inc. v. Leather Indus. of Am.*,
    789 F.3d 495 (4th Cir. 2015) ...................................................................................17

*Ellicott Dredges, LLC v. DSC Dredge, LLC*,
    280 F. Supp. 3d 724 (D. Md. 2017) ..................................................................19, 23

*Express Homebuyers United States v. Wbh Mktg.*,
    2018 U.S. Dist. LEXIS 214039 (E.D. Va. Aug. 29, 2018) ....................................17

*Farmer v. Kent*,
    No. CV TDC-20-1806, 2021 WL 690025 (D. Md. Feb. 23, 2021), *aff'd*, No.
    21-1350, 2022 WL 4482087 (4th Cir. Sept. 27, 2022) .........................................20

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002) ......................................................................................18

*Frye v. Hayes*,
    No. CV JKB-25-0162, 2025 WL 1167976 (D. Md. Apr. 22, 2025) ........................4

*Harry and Jeanette Weinberg Found., Inc. v. St. Marks Ave., LLC*,
    No. CV GLR-15-3525, 2018 WL 704866 (D. Md. Feb. 5, 2018) ..........................19

*Harvey v. Cable News Network, Inc.*,
    520 F. Supp. 3d 693 (D. Md. 2021) ........................................................................14

*Henry Schein One, LLC v. National Electronic Attachment, Inc. d/b/a Vyne
    Dental*, Case No. 2:25-cv-00883 ............................................................................30

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ...........................................................................11, 23

*Jezign Licensing, LLC v. L.T.D. Commodities, LLC*,
    No. CV RDB-22-1592, 2023 WL 5607908 (D. Md. Aug. 30, 2023) ...............10, 26

*KBC Asset Mgmt. NV v. DXC Tech. Co.*,
    19 F.4th 601 (4th Cir. 2021) ......................................................................................1

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
    725 F.3d 718 (7th Cir. 2013) .....................................................................................9

*Laios v. MTM Builder/Developer, Inc.*,
    2021 WL 4478712 (D. Md. Sept. 30, 2021) .............................................................8

*Laios v. MTM Builder/Developer, Inc.*,
    No. GJH-20-3337 (D. Md. Sep. 30, 2021) ...............................................................8

*Lanehart v. Devine*,
    102 F.R.D. 592 (D. Md. 1984) ..................................................................................8

*Lyon v. Campbell*,
    707 A.2d 850 (Md. Spec. App. 1998) .....................................................................20

*M-Edge Accessories LLC v. Amazon.com Inc.*,
    2015 WL 403164 (D. Md. Jan. 29, 2015) ..................................................22, 23, 24

*Macklin v. Robert Logan Assocs.*,
334 Md. 287 (1994) ................................................................................19, 24

*Mansell v. Toys R Us, Inc.*,
673 F. Supp. 2d 407 (D. Md. 2009) .....................................................................20

*Metro. Reg'l Info. Sys. v. Am. Home Realty Network*,
948 F. Supp. 2d 538 (D. Md. 2013) .....................................................................18

*Mixter v. Farmer*,
215 Md.App. 536, 81 A.3d 631 (2013).........................................................21, 22

*Murray v. United Food and Commercial Workers Intern. Union*,
289 F.3d 297 (4th Cir. 2002) ...............................................................................14

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*,
308 U.S. 165 (1939)................................................................................................9

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
555 U.S. 438 (2009)..............................................................................................23

*Philips v. Pitt Cnty. Mem'l Hosp.*,
572 F.3d 176 (4th Cir. 2009) .................................................................................4

*Rabinowitz v. Oates*,
955 F. Supp. 485 (D. Md. 1996) ..........................................................................14

*Rakowski v. Best Buy Stores, L.P.*,
No. ELH-20-1107, 2020 WL 6485085 (D. Md. Nov. 3, 2020) ..............................7

*SAMi-Systematic Analysis Mgmt., Inc. v. Omnivere Acquisitions, LLC*,
No. CV RDB-19-2904, 2020 WL 1863292 (D. Md. Apr. 14, 2020).......................9

*Savaria USA, Inc. v. Elevator Works, LLC*,
No. CV RDB-24-1311, 2024 WL 2212914 (D. Md. May 16, 2024)....................22

*Scotts Co. v. United Indus. Corp.*,
315 F.3d 264 (4th Cir. 2002) ...............................................................................17

*Seidel v. Kirby*,
296 F. Supp. 3d 745 (D. Md. 2017)........................................................................8

*Silo Point II LLC v. Suffolk Const. Co., Inc.*,
578 F. Supp. 2d 807 (D. Md. 2008) .......................................................................4

*State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*,
381 F. Supp. 3d 536 (D. Md. 2019) .....................................................................16

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
282 F. Supp. 3d 916 (E.D. Va. 2017) .....................................................................7

*Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*,
705 F. Supp. 3d 510 (D. Md. 2023)................................................................15, 16

*Van Buren v. United States*,
593 U.S. 374 (2021)........................................................................................10, 11

iii

*Verisign, Inc. v. XYZ.COM LLC*,
   848 F.3d 292 (4th Cir. 2017) ...................................................17

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ...........................................................23

*WEC Carolina Energy Sols. LLC v. Miller*,
   687 F.3d 199 (4th Cir. 2012) ...................................................11

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ...........................................................30

## Statutes

18 U.S.C. § 1030(a)(5)(A) .........................................................10

18 U.S.C. § 1030(a)(5)(C) .........................................................10

18 U.S.C. § 1030(e)(8) ............................................................13

18 U.S.C. § 1030(e)(11) ...........................................................13

28 U.S.C. 1391 .............................................................1, 7, 8, 9

28 U.S.C. § 1406(a) ................................................................7

## Other Authorities

45 C.F.R. § 171.102 ...............................................................26

45 C.F.R. § 171.203 ...............................................................27

Fed. R. Civ. P. 8 .................................................................15

Fed. R. Civ. P. 8(a)(2) ...........................................................10

Fed. R. Civ. P. 12 .................................................................6

Fed. R. Civ. P. 12(b)(3) .....................................................1, 4, 7

Fed. R. Civ. P. 12(b)(6) ........................................................1, 9

Fed. R. Civ. P. 12(h) ..............................................................8

14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3826 (3d ed.) .....................7

Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), Defendant Henry Schein One, LLC ("HSOne") moves to dismiss Plaintiff National Electronic Attachment, Inc. d/b/a Vyne Dental's ("Vyne") first Amended Complaint ("FAC") with prejudice. (ECF No. 61.) HSOne submits this Memorandum of Law in Support of its Motion to Dismiss ("Motion").[1]

## **INTRODUCTION**

Rather than oppose HSOne's motion to dismiss, Vyne amended its pleading to add a few conclusory allegations that parrot the law. This is precisely what *Twombly* proscribes and does nothing to salvage Vyne's claims. The FAC is still premised on the implausible fiction that Vyne innocuously retrieves data just like a printer prints to paper or PDF, rather than exporting data *en masse* through a sophisticated hacking harness that misappropriates encryption keys, bypasses technical security measures, and—critically—**writes back** and injects data into HSOne's database and cloud systems without authorization. Try as Vyne might to occlude the reality of its conduct, all the defects HSOne identified in Vyne's initial Complaint remain and warrant dismissal.

First, Vyne added venue allegations to set up a theory that because the Court may have personal jurisdiction over HSOne, venue is proper. This is the wrong inquiry. All the new venue allegations Vyne adds still, like its first Complaint, focus exclusively on the effects of this dispute on Maryland customers. But the applicable standard is what gave rise to the claim, not the effects of the alleged conduct. Vyne's pivot to a new theory under 28 U.S.C. 1391(b)(1) and attempt to conjure up issue waiver fail. Vyne did not raise this venue ground in its first Complaint, and HSOne addressed it in its initial motion to dismiss in any event. Courts adjudicate venue at the time of the filing, not through litigation gamesmanship. Vyne's theory would have the Court bless

---

[1] Even if the Court concludes venue is technically proper, the Court can transfer to the District of Utah under § 1404(a) grounds—the basis of HSOne's Motion to Transfer (ECF NO. 35-1), of which this Court can take judicial notice of on this motion to dismiss. *See KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601, 607 (4th Cir. 2021).

any state in America as the proper venue. This is misplaced and merits dismissal.

Vyne's FAC also still fails to state a claim for relief under any cause of action. The Court can make inferences in Vyne's favor and need not evaluate the hotly contested factual disputes to dismiss Vyne's claims, because they are, on their face, implausible, conclusory, and speculative. Vyne makes multiple admissions that HSOne acted based on careful, thoughtful, and reasonable investigation. It is not enough to point to legitimate business conduct and declare it is unfair because it hurt another's business. Vyne's FAC cannot get around the fact, which Vyne admits, that HSOne's actions have all been in reaction to concerns over unauthorized computer hacking. Vyne's allegations, even if accepted as true, describe nothing more than a company managing its software platform and protecting customer and patient data.

As to the Computer Fraud and Abuse Act ("CFAA"), Vyne's new conclusory pleading does not plausibly allege unauthorized access to any computers. Deploying logging telemetry to prevent hacking is not unauthorized access to a computer under any theory propounded by any court analyzing CFAA anywhere in the nation. Vyne's theory would make it so any antivirus or anti-malware software on a software program that scans for malicious attempts to interfere with a system would be committing a computer crime. This is not the law.

Vyne's speech-based claims fall far short of the pleading standard as well. Vyne does not allege that any of HSOne's statements are provably false. On its face, the FAC describes subjective opinions and business communications based on reasonable investigation. This is not actionable under a common law defamation theory or a Lanham Act theory.

Vyne's tortious interference counts fail for multiple reasons. Vyne does not allege an independently wrongful act, the FAC still lacks specificity as to what contracts HSOne supposedly impacted, and Vyne fails to plausibly plead that HSOne's words or acts were the cause of any

disruption to Vyne's business, as opposed to Vyne's own hacked-together solutions.

As to unfair competition, Vyne still attempts to shoehorn the 21st Century Cures Act into this case. A plain reading of the statute, regulations, and Vyne's FAC, however, show that the Cures Act does not apply. HSOne's Application Programming Interface ("API") Exchange facilitates bilateral data transfer only and falls outside of the Cures Act provisions Vyne cites. Vyne's theory would pull every technology platform that services the industry under the ambit of the Cures Act, which is something the statute and implementing regulations explicitly reject. Vyne would have to allege that HSOne creates an exchange between dentist offices where one person could walk into multiple offices and use HSOne's platform to retrieve their health information from a prior dentist. Not only is this not what HSOne's software does, but it is not conceivable that it would do such a thing. Vyne is well aware of this and cannot allege otherwise. Even if the Cures Act did govern this case, Vyne fails to plausibly allege that HSOne's conduct falls outside of the Act's Security or Manner exceptions. On the contrary, Vyne's FAC, read plausibly, makes clear that HSOne has done nothing more than taken reasonable, permissible steps to secure its software. Vyne's remaining claims—including its request for declaratory relief—are derivative of Vyne's other defective theories and must be dismissed for the same reasons.

Vyne's lawsuit is nothing more than another tactic to try to prolong its unlawful hacking campaign. It now seeks unfettered access to protected computer systems through encryption key misappropriation and crude database write-back—tactics employed by nation-state and trans-national hackers—without regard to the significant security dangers such an approach poses. At risk are not just HSOne's customers, but the customers and data of every Internet software company that stores data in a database and restricts access to that data while providing an API. No company could stop a malicious attacker who, like Vyne, builds their business model on

unauthorized access and then uses the law of unfair competition, tortious interference, and other related claims to shield their hacking. A hacker cannot cry foul when they are caught and blocked. That is not how the law works, and Vyne's claims merit dismissal for this reason alone.

Stripped of rhetoric, Vyne's pleading reflects nothing more than Vyne's dissatisfaction with HSOne's legitimate business decisions. Putting aside the threshold issue of Vyne's forum shopping, Vyne does not state a claim in any federal court. After two attempts at stating a claim, Vyne's FAC merits dismissal with prejudice.

## **FACTUAL BACKGROUND**

Even if all of Vyne's plausible allegations are considered true, Vyne fails to provide a valid basis for venue or claims for relief. No amount of evidence Vyne might attempt to proffer can overcome the fundamental legal deficiencies in Vyne's theories.[2]

## I. **Vyne's Venue Allegations Admit that Utah is the Nexus of this Dispute.**

Despite alleging that HSOne is a Delaware limited liability company with its principal place of business in Utah (FAC ¶ 13), Vyne filed this case in Maryland. Vyne's own filings confirm that Utah—not Maryland—is the locus of this dispute.[3] Vyne's core leadership, its Chief Executive Officer ("CEO") (Stephen Roberts), President (James Grover), and Chief Technology Officer ("CTO") (James Nix), are former HSOne executives who reside and work in Utah. Vyne's CEO and CTO executed their Maryland-court declarations from Utah. (Mot. to Tr. at 1, 13; Decl.

---

[2] HSOne sets forth the true facts of this dispute in its Opposition to Vyne's Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") (ECF No. 38), in HSOne's own Motion for a TRO and PI (ECF No. 46-1) as well as its Counterclaims (ECF No. 45), and HSOne's Motion to Transfer Venue ("Mot. to Tr.") (ECF No. 35-1). The Court may take judicial notice of other filings in the case and in the related action pending in Utah. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted); *Frye v. Hayes*, No. CV JKB-25-0162, 2025 WL 1167976, at *1, n.1 (D. Md. Apr. 22, 2025) (citation omitted).

[3] "Under Rule 12(b)(3) the court is allowed to freely consider evidence outside the pleadings, unlike under a 12(b)(6) motion." *Silo Point II LLC v. Suffolk Const. Co., Inc.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008); *see also Abissi v. United States Citizenship & Immigration Services*, 729 F. Supp. 3d 505, 508 (D. Md. 2024) (same).

of Steve Roberts (ECF No. 6-2); Decl. of James Nix (ECF No. 6-3).)  Vyne also maintains an office in Utah and employs at least 45 individuals in Utah.  *See* Decl. of Steve Roberts (ECF No. 51-1, ¶¶ 7-10.)  By contrast, Vyne's Maryland theory rests on a handful of local customer effects, which even on Vyne's numbers amount to a small fraction of its national base and do not speak to where the conduct at issue occurred.  HSOne's Utah-based teams made the security decisions and implementations Vyne challenges, and Vyne's own Utah-based principals directed the conduct they now place at issue.  With respect to the core of this dispute, Vyne's complaints about HSOne's decisions and implementation of security measures and updates emanate from Utah.

Vyne attempts to manufacture a Maryland connection to this case through its allegation that 170 dental offices in Maryland use Vyne Trellis with Dentrix.  (FAC ¶ 6.)  But both Vyne and HSOne have many thousands of customers across every state in the United States.  (Decl. of Brian Weatherly in support of Mot. to Tr. ("Weatherly Tr. Decl.") ¶ 9; Mot. to Tr. at 1.)  Indeed, a list attached to a letter Vyne sent HSOne that purportedly included practices that allegedly authorized Vyne to act on their behalf, only listed seven Maryland practices, ranking 20th out of the 39 states represented on the list.  (Ex. 10 to Decl. of Marcelo Barros in support of Mot. to Tr. (ECF No. 37).)  19 other states ranked higher.  (Mot. to Tr. at 9.)

## II.    Vyne's Allegations that Security Measures Hack Vyne's Software are Implausible and ask the Court to Make Unsupported Inferences that Distort the Facts.

Vyne does not allege that it licenses or has any rights to HSOne's software platform.  With respect to its access to HSOne's software, Vyne would have all believe that it does nothing more than use a "printer driver" feature to extract data from HSOne's software deployed at customers' premises.  (*Id*. ¶¶ 25-26.)  But Vyne does not explain how printing alone could accomplish any of

its software functionality, which requires writing back and injecting data into HSOne's database.[4]

Vyne admits that HSOne has raised concerns about Vyne's unauthorized access and circumvention of HSOne's software security measures. (*Id.* ¶¶ 68-70.) While the Court cannot evaluate which side's claims are true at the Rule 12 stage, it can review the claims for plausibility. Here, HSOne's communications articulate serious concerns about Vyne's cavalier approach to plucking whatever data it wishes from HSOne's software, as well as injecting data back and controlling the very functionality of Dentrix. The FAC recognizes that HSOne has put Vyne on notice that its unauthorized access methods were not permitted because, among other things, they compromised the security and integrity of HSOne's platform. (*Id.* ¶ 8.)[5] Although Vyne alleges HSOne "falsely asserted" the security issues, Vyne includes no facts to support its contention beyond its own self-serving claims. (*Id.* ¶ 34.)

## III. Vyne's Allegations about the Parties' Commercial Negotiations are Conclusory and One-sided.

Vyne acknowledges that HSOne offered Vyne options to access its systems with authorization. As one potential approach, among others, Vyne engaged in discussions with HSOne about accessing Dentrix data through an API. (*Id.* ¶¶ 52-56.) HSOne offered Vyne participation in its Dentrix Developer Program, a pathway for API integration, and provided Vyne with a draft agreement. (*Id.*) Vyne rejected the proposed terms, and no agreement has yet been reached. (*Id.*)

On August 26, 2025, HSOne sent a cease-and-desist letter to Vyne, demanding that Vyne immediately stop its hacking and circumvention methods, which were causing service disruptions

---

[4] Nor does Vyne eplain whether the code for this purported printer driver has changed in the last twenty years, whether Vyne has upgraded it, or whether Vyne developed new (and more pernicious) exploits against HSOne's software apart from the printer driver.

[5] (Decl. of James Nix (ECF No. 40-5) (noting "…Vyne Trellis 'reads and writes' [] data…") Vyne also admits that HSOne recently implemented a software update to its Dentrix system which, among other things, upgraded security over customer data and prevents any third party, including but not limited to Vyne, from accessing the system without authorization. (*Id.* ¶¶ 4, 10, 84.)

and creating a cybersecurity risk.  (Weatherly Tr. Decl. ¶ 6.)  Despite HSOne's contention that

Vyne had been hacking into HSOne's software (FAC ¶ 62), HSOne negotiated a tolling agreement

with Vyne that provided for Utah jurisdiction and venue.  (Mot. to Tr. at 1.)  Knowing HSOne was

about to file a complaint against Vyne (Weatherly Tr. Decl. ¶¶ 6, 8), Vyne raced to file its

Complaint (ECF No. 1), despite the dispute's threadbare connection to Maryland.

Even with all inferences made in Vyne's favor, the FAC's allegations reflect nothing more

than legitimate software security enhancements, communication with customers, competition in

the marketplace, and protection of legal rights.  Vyne's claims therefore fail.

## ARGUMENT

### I.     Vyne Fails to Allege Proper Venue

Rule 12(b)(3) governs a motion to dismiss for improper venue.  "[W]hen a challenge to

venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate." *Corp.*

*Universe, Inc. v. Emry Cap. Grp., Inc.*, 2021 WL 3603040, at *2 (D. Md. Aug. 12, 2021).  To

survive a motion to dismiss for improper venue, a plaintiff must make a prima facie showing that

venue is proper in the district pursuant to 28 U.S.C. § 1391.  *See Atl. Marine Constr. Co. v. U.S.*

*Dist. Court*, 571 U.S. 49, 55–56 (2013).  The inquiry "allows the court to freely consider evidence

outside the pleadings[.]"  *Rakowski v. Best Buy Stores, L.P.*, No. ELH-20-1107, 2020 WL

6485085, at *8 (D. Md. Nov. 3, 2020) (citation omitted).  "[C]ourts 'consider to be true any well-

pleaded allegations that bear on venue, unless contradicted by defendant's affidavit evidence.'"

*Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 924-25 (E.D. Va. 2017)

(quoting 14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3826 (3d ed.)).  Where venue is

improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any

district or division in which it could have been brought."  28 U.S.C. § 1406(a); *see also Carlisle*

*v. McDonald*, 2017 WL 550031, at *2 (D. Md. Feb. 10, 2017) (transferring case under 1406(a)).

Regardless of the 12(b)(3) analysis, even if Vyne's venue allegations are not improper, the Court can still transfer venue based on HSOne's independent 1404(a) venue transfer motion.

Vyne amends its venue allegations to try to salvage its forum shopping maneuver. (FAC ¶¶ 17-18). But because Vyne reverse engineered this lawsuit, it cannot cure its venue deficiency.[6]

**HSOne did not waive an argument Vyne failed to originally allege**. For the first time, Vyne asserts a theory for venue under § 1391(b)(1) and argues HSOne waived its 1391(b)(1) objections. But the waiver policy of Rule 12(h) does not apply where the defense was unavailable at the time the party answered. *Lanehart v. Devine*, 102 F.R.D. 592, 594 (D. Md. 1984). HSOne cannot be said to have "waived" an objection Vyne failed to raise originally. *Seidel v. Kirby*, 296 F. Supp. 3d 745, 750 (D. Md. 2017). In any event, HSOne *did* dispute venue under § 1391(b)(1). (Mot. to Dismiss (ECF No. 42-1), n.5).[7]

**Vyne persists on conflating *effects* of challenged conduct for its *causes***. But to demonstrate proper venue, Vyne must establish events or facts "central" to the case are "anchored" in Maryland. *See Laios v. MTM Builder/Developer, Inc.*, 2021 WL 4478712, at *5 (D. Md. Sept. 30, 2021). Maryland is, at best, tangential to Vyne's claims. This is not enough. Events that relate only tangentially "do not give rise to the claim at all." *Laios v. MTM Builder/Developer, Inc.*, No. GJH-20-3337, at *13 (D. Md. Sep. 30, 2021). Even if some Maryland customers felt effects of the conduct, "none of the relevant conduct occurred in Maryland[.]" *Ademiluyi v. Nat'l Bar Ass'n*, No. GJH-15-02947, at *6-7 (D. Md. Sep. 8, 2016), meriting dismissal.

---

[6] Vyne's original complaint merely alleged that "Venue is proper in District of Maryland pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district." (Compl. ¶ 17.)

[7] Moreover, waiver is a procedural bar whereas venue is a substantive requirement. Venue must be proper under 1391 not by virtue of consent or waiver. *See Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 56 (2013).

**Venue is still improper under 1391(b)(1) because Vyne conflates personal jurisdiction with venue**.  Vyne's amendments are, at best, allegations that go to personal jurisdiction, which is not at issue.  Vyne contends HSOne waived any objection to this Court's personal jurisdiction. (FAC ¶ 17.)  That is incorrect as a matter of law.  First, the Court must engage in a venue analysis. *See Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 56 (2013).  "By conceding personal jurisdiction as to the state, [a party] [] did not automatically waive its objections to venue[.]"  *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 733 (7th Cir. 2013). Second, personal jurisdiction is not co-extensive with venue. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1178-79 (9th Cir. 2004) (citation omitted); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68 (1939).  Making venue and jurisdiction "analytically interdependent" would "blur the basic, historic difference between these discrete concepts."  *Action Embroidery*, 368 F.3d at 1179.

Personal jurisdiction exists in Maryland for unrelated activities between HSOne and Maryland, but venue under Section 1391(b)(1) requires action-specific contacts to this District, which Vyne fails to sufficiently allege.  Thus, venue is improper under § 1391(b)(1).

## II.    Vyne's FAC Fails to State a Claim for Relief as a Matter of Law

To survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations must be more than "labels and conclusion . . . Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

"When confronted with a motion to dismiss based on both the failure to state a claim and improper venue, this Court must first resolve the venue question."  *SAMi-Systematic Analysis Mgmt., Inc. v. Omnivere Acquisitions, LLC*, No. CV RDB-19-2904, 2020 WL 1863292, at *3 (D.

Md. Apr. 14, 2020) (citation omitted). If venue is proper, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See id*. at 679 (citing Rule 8(a)(2)). Facts that are "merely consistent with" liability do not establish a plausible claim to relief. *Id.* (citation omitted). Courts do not afford deference to legal conclusions. *See Jezign Licensing, LLC v. L.T.D. Commodities, LLC*, No. CV RDB-22-1592, 2023 WL 5607908, at *3 (D. Md. Aug. 30, 2023) (citing *Iqbal*, 556 U.S. at 678).

Vyne seeks to transform necessary, legitimate security updates into federal hacking crimes, Lanham Act violations, and common-law torts. Courts in this Circuit and elsewhere reject similar efforts to weaponize broad commercial disputes under statutes and doctrines that do not apply. Each count merits dismissal with prejudice.

### A.  Vyne's Computer Fraud and Abuse Act claim (Count I) fails because security upgrades are not hacks.

The CFAA is an anti-hacking statute, not a statute about computer misuse. Vyne pleads violations of two CFAA subsections, 1030(a)(5)(A) and 1030(a)(5)(C). Subsection (a)(5)(A) requires Vyne to allege HSOne "knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization, to a protected computer." Section (a)(5)(C) requires pleading that HSOne intentionally accessed protected computers without authorization and caused damage and loss.

The Supreme Court pronounced in the *Van Buren* case that the CFAA is to be construed narrowly. *See Van Buren v. United States*, 593 U.S. 374, 386 (2021). The CFAA presents a "gates-up-or-down inquiry[.]" *Id.* In other words, it prohibits access when the gates are down but not when they are up. There must be some technical barrier overcome—some sort of breaking

in—for a CFAA claim to accrue. The Supreme Court has expressly rejected CFAA claims based on theories where those with authorized access but allegedly improper motives, access computers to which they have authorization even if the claim is that data was then misused. *Id.*

Like the Supreme Court, the Fourth Circuit has emphasized that the CFAA is aimed at traditional "hacking"—unauthorized access into a computer system—not disputes over software design or purported misuse of authorized access. *See WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 206–07 (4th Cir. 2012) (dismissing CFAA claim even where the defendants misappropriated trade secrets to gain a competitive advantage where they did not "access a computer without authorization or exceed their authorized access."). *Van Buren* cited *WEC Carolina* in its review of Circuit cases that construed CFAA narrowly, supporting its position.

Here, Vyne's allegations do not state a claim under the CFAA. Its theory is essentially that when a victim stops a hacker by shutting off unauthorized access, this constitutes hacking. That is not the law. Here, Vyne concedes that HSOne merely issued "updates" to HSOne's own Dentrix software pursuant to its licensing agreements with dental practices. (FAC ¶¶ 10, 34, 69.) Vyne does not allege, nor can it, that any of HSOne's upgrades accessed Vyne's applications or databases running on customer computers. All Vyne alleges is that HSOne put up additional gates, around its own software and database, to stop unauthorized access. This is not unlawful. Indeed, asking the Court to find such "technological self-help against bad actors" violates the CFAA would "raise serious concerns." *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1202 (9th Cir. 2022). It would risk "preventing a company from securing" its systems "from malicious actors" and could "open[] the door to [] malicious activity." *Id.* Things like "employing anti-bot measures to prevent, e.g., harmful intrusions or attacks on [a] server" are not violative of the CFAA. *See id.* (quotations and citations omitted). This is because "Internet companies and the public do have a

substantial interest in thwarting denial-of-service attacks and blocking abusive users, identity thieves, and other ill-intentioned actors." *Id.*

Courts in this Circuit follow *Van Buren* in construing the CFAA narrowly to exclude theories like Vyne's in this case. *See, e.g.*, *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, No. CV SAG-22-00176, 2023 WL 5278654, at *5 (D. Md. Aug. 16, 2023) (adopting narrow CFAA interpretation and dismissing claims that fail to allege actual pressing of buttons to access without authorization); *see also Carfax, Inc. v. Accu-Trade, LLC*, No. 121CV00361RDATCB, 2022 WL 657976, at *12 (E.D. Va. Mar. 4, 2022) (dismissing CFAA claim in light of *Van Buren*'s holding that "improper purpose alone is insufficient" to allege a CFAA violation).

In its FAC, Vyne attempts to salvage its deficient CFAA theory by alleging that HSOne installed "*invasive* telemetry on [] customers' computers" to "monitor their use of Vyne's products," asserting, "on information and belief," that such telemetry was "unauthorized or is in excess of any authorization" because it allegedly "exceeds the terms of the End User License Agreement and the Terms and Conditions" governing Dentrix. (FAC ¶ 38.) This theory fails for at least two reasons: it is contradicted by Vyne's own filings in this case, and Vyne pleads it in conclusory fashion without any facts necessary to surmount the plausibility threshold.

Vyne cannot show that telemetry deployed for the purposes of monitoring HSOne's software is unauthorized or exceeds authorization. This alone is dispositive. Attaching the words "on information and belief" cannot save Vyne's CFAA claim. (FAC ¶¶ 38, 71.)[8]

Vyne also does not identify which specific End User License Agreement ("EULA") or Terms provision was allegedly exceeded; what telemetry data was collected beyond any

---

[8] Under Count I, Paragraph 92, Vyne removes the words "on information and belief" but otherwise reproduces the same legal theory outlined in the body of its FAC.

consented-to parameters; which customers, if any, withheld consent; or what damages flowed from the supposed excess. Vyne merely alleges that telemetry "exceeds [] terms." That is not enough. Vyne's own CTO concedes that Dentrix users consent to certain telemetry categories—such as operating system details, memory configuration, and "feature usage patterns"—under the EULA. (Nix Decl. (ECF No. 6-3), ¶ 14.) Thus, Vyne's theory hinges on the assertion that HSOne went "beyond" contracts Vyne never cites, references, or attaches to its FAC. Beyond failing to quote or attach any EULA or Terms, Vyne fails to identify a single customer that withheld consent.

Even if Vyne could allege unauthorized access to its computer systems, which it cannot, it has also not pled the required statutory "damage" or "loss." Under the CFAA "damage" is "any impairment to the integrity or availability of data, a program, a system, or information[.]" § 1030(e)(8). "Loss" is "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]" Section 1030(e)(11). The CFAA requires alleging $5,000 in such loss, which Vyne does not do plausibly.

Competitive injuries such as lost revenue, lost customers, or harm to one's business model—all things Vyne alleges—do not qualify as "damage" or "loss" under the CFAA. *See Animators at Law, Inc. v. Capital Legal Sols., LLC*, 786 F. Supp. 2d 1114, 1120 (E.D. Va. 2011) ("[L]ost revenue or consequential damages—such as the losses associated with a missed business opportunity—are only recoverable if they were incurred because of interruption of service.") (marks omitted). Vyne does not allege that the computers at issue were actually damaged or that HSOne's defensive security measures cost it any money from a technical perspective. *Id.* (FAC ¶¶ 85-88, 97.) Vyne's new allegations—$90,000 in "management time," $7,500 in "customer

support time," and customer cancellations—do not satisfy the CFAA because they are self-imposed business costs and competitive injuries that do not qualify as statutory "loss."

Vyne's theory does not make sense. Vyne is in essence arguing that HSOne, through upgrading its own software, somehow hacked Vyne. This is tantamount to a theory that HSOne hacked its own software. It is implausible that the CFAA prohibits a simple check to see if malware is running that interferes with software and, if so, stopping that malware from interfering with software. This is something that occurs on millions of computers daily. Criminalizing such conduct would collapse the CFAA in on itself as well as the entire Internet security industry.

### B. Vyne's speech-related claims fail to allege anything more than acceptable business communications

#### 1. Vyne's defamation claims (Count VI) plead inactionable opinion

Business communications about serious security risks are not defamatory. To state a claim for defamation, a plaintiff must sufficiently allege "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *See Rabinowitz v. Oates*, 955 F. Supp. 485, 488 (D. Md. 1996) (citation omitted). A defamatory statement is not only one that is false, but is "one that tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with that person.'" *See Murray v. United Food and Commercial Workers Intern. Union*, 289 F.3d 297, 305 (4th Cir. 2002) (citation omitted). Only verifiably false statements of fact can support a defamation claim; rhetorical hyperbole, subjective opinions, and puffery are not actionable. *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993); *Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 718–19 (D. Md. 2021) ("[W]here a defendant

states 'a subjective view, an interpretation, a theory, conjecture or surmise, rather than a claim to be in possession of objectively verifiable false fact, the statement is not actionable.'").

As a threshold issue, Vyne fails to plead its defamation claim with the requisite specificity, including the "who, what, where, and when questions." *See Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 525 (D. Md. 2023). Although Vyne includes a date of an alleged email with HSOne's subjective opinion about Vyne's product (FAC ¶ 41), Vyne does not identify who specifically sent the email or which customers received the email. *See Total Recon Auto Ctr., LLC*, 705 F. Supp. 3d at 525 (dismissing defamation claim where plaintiff failed to "provide[] some answers to the who, what, where, and when questions…"). Vyne fails to identify the email's author, an employee sender, or customer recipient. Nor does the FAC allege that anyone actually read or relied on the statements. The FAC compounds its vagueness with a conclusory allegation—"on information and belief"—that HSOne distributed the referenced email to "hundreds of Vyne customers . . . in order to benefit [HSOne] commercially." (FAC ¶ 43.) This is not enough under Rule 8 or the Twombly/Iqbal plausibility threshold.

Even if Vyne could supply the needed specifics, Vyne's speech-related claims fall short of defamation. The FAC attributes statements to HSOne that Vyne "disconnects imaging and claims," causes "errors" or "delays," or poses "security risks." (FAC ¶¶ 41-48.) Statements couched in such generalized statements about quality, reliability, or risk are classic non-actionable opinion and hyperbole, not verifiable factual assertions. *See Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 182 (4th Cir. 1998).[9] There is no allegation that HSOne intended to or did spread false information about Vyne. On the contrary, the FAC makes clear that the statements at issue were

---

[9] (Finding claims in an article that a company's stock was overvalued and that investors were souring on the company did not give rise to an actionable statement despite allegedly causing the company's stock to plummet and injuring its reputation and business, noting the "challenged statements constitute[d] a subjective view, not a factual statement.").

made in the context of Vyne's own statements.

While the Court need not resolve the factual dispute for purposes of this Motion, Vyne cannot deny that HSOne's position is that Vyne was falsely describing its approach to customers. Even making inferences towards Vyne, this shows HSOne had a reasonable basis for its opinions about Vyne's conduct. Nothing HSOne is alleged to have said was in reckless disregard to truth or falsity, or said with knowledge of falsity, even taking all inferences in Vyne's favor. In the context of business disputes, such subjective opinion statements are not actionable. *See, e.g.*, *Total Recon Auto Ctr., LLC*, 705 F. Supp. 3d at 516, 525 (finding no defamation where employees stated, among other things, that "Total Recon is dishonest," and that "Total Recon is price-gouging"); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 568–69 (D. Md. 2019) (statement that "State Farm has and continues to state to third parties that it is refusing to pay PIP claims because the Medical Clinics … have and are engaging in fraud and dishonesty" did not give rise to a defamation claim because plaintiff did not allege sufficient details). All of HSOne's statements are protected opinion on matters of technical judgment.

Without a plausible allegation of any provably false statements, as opposed to subjective opinions about security risks, Vyne cannot allege a defamation claim against HSOne.

### 2. Vyne's Lanham Act claim (Count II) fails for similar reasons as its defamation claim.

Vyne's attempts to turn business communications into federal statutory violations fail too. To state a claim for false advertising under § 43(a)(1)(B) of the Lanham Act, a plaintiff must allege that: (1) the defendant made a false or misleading statement of fact in a commercial advertisement the plaintiff's; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant's statement was placed in interstate commerce; and (5)

the plaintiff has been or is likely to be injured as a result.  *See Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015) (citation omitted); *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002).  To give rise to a false advertising claim, the contested statement must be a false representation of fact.  *See Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015) (citation omitted).  It "must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context."  *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015).

As noted in the context of defamation, Vyne fails to allege sufficient facts that HSOne's alleged statements are false on their face.  Vyne alleges no facts indicating that HSOne's statements about Vyne's software that "disconnects imaging and claims;" that customers may face "costly mistakes, claim rejections, and payment delays;" and that using HSOne would help customers "stop losing time and money on disconnected processes"— are actually false.  (*See* FAC ¶¶ 41-47.)  That HSOne might offer an alternative to Vyne's hacked-together unauthorized access and might make statements about the flaws in Vyne's approach does not give rise to a Lanham Act claim.  Courts have consistently held that subjective superiority claims are not actionable under the Lanham Act.  *See Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 302 (4th Cir. 2017) (the Lanham Act does not apply to "puffery" which is "exaggerated advertising, blustering, and boasting," or "vague" and "general claim[s] of superiority") (citation omitted); *Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411, 1438 (E.D.N.C. 1986) (dismissing claim where statements of product superiority including that installing defendant's product requires less skill, supervision, quality control and other management time than installing plaintiff's product was non-actionable puffery); *Express Homebuyers United States v. Wbh Mktg.*, 2018 U.S. Dist. LEXIS 214039, at *16 (E.D. Va. Aug. 29, 2018) (statements such as that the plaintiff "bullies,"

"threatens," "shakes down," "sabotages" and "extorts" others in the industry were non-actionable blustery).[10]  None of the cited statements constitutes a verifiable factual misrepresentation.

Further, Vyne has not alleged facts showing that these statements were made in "commercial advertising or promotion" as required under § 43(a)(1)(B). The law requires dissemination of the challenged statements to the purchasing public at large or a substantial segment thereof, not isolated sales conversations.  *Metro. Reg'l Info. Sys. v. Am. Home Realty Network*, 948 F. Supp. 2d 538, 553 (D. Md. 2013) (citation and marks omitted); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002).  Vyne relies only on a single email and vague references to customer conversations, which fall far short of widely disseminated advertising to support a Lanham Act claim.  (FAC ¶¶41-48.)

Because Vyne has not pled a false statement of fact or sufficient commercial advertising, its Lanham Act claim (Count II) fails and should be dismissed.

### C.    Both Vyne's tortious interference claims (Counts III And IV) fail because Vyne alleges no specific contract, no actual breach, and no wrongful conduct.

Vyne cannot transform communications regarding reasonable security measures into tortious interference claims.  Vyne's theory is that it lost existing customers due to HSOne's security upgrades, and that prospective customers are less likely to sign up with Vyne based on HSOne's security controls.  As with its other theories, Vyne's position would stretch the law to encompass most routine business activity regarding cybersecurity.

Tortious contract interference requires: "(1) existence of a contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) intentional interference by the defendant with that contract; (4) breach of the contract by the third party; and (5) resulting damages

---

[10] These cases support denying Vyne's defamation claims as well because they touch on the types of statements that courts do not consider verifiably false.

to the plaintiff." *Harry and Jeanette Weinberg Found., Inc. v. St. Marks Ave., LLC*, No. CV GLR-15-3525, 2018 WL 704866, at *3 (D. Md. Feb. 5, 2018) (citation omitted). Tortious interference with prospective economic relations requires the following: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Ellicott Dredges, LLC v. DSC Dredge, LLC*, 280 F. Supp. 3d 724, 731 (D. Md. 2017) (citation omitted). Vyne does not plausibly plead either theory for multiple reasons:

**No independent wrongful act.** The insurmountable hurdle Vyne faces is that it cannot point to any unlawful, or even wrongful, acts predicating tortious interference. Without some plausible allegation of fraudulent statements or violations of statute, Vyne cannot state an interference claim. *See Macklin v. Robert Logan Assocs.*, 334 Md. 287, 301 (1994); *Alexander & Alexander Inc. v. B. Dixon Evander & Associates, Inc.*, 336 Md. 635, 658-60, 650 A.2d 260, 271-72 (1994) (acts undertaken pursuant to legitimate commercial goals and protect interests would not give rise to tort liability for interfering even if a company harbors incidental animosity).

Even stretching every inference towards Vyne, Vyne's FAC tends to support the opposite. The FAC indicates that HSOne had a basis for all the actions Vyne takes issue with—reasonable security concerns based on unauthorized access. Security concerns are not unreasonable if there has not been a hack—that is counter to how cybersecurity works. The purpose of guarding against security threats is to stop hacks. Vyne's theory is that there must be a 'dead body,' but this is a self-serving implausible theory that would ensure devastating data breaches in the industry as a regular occurrence. Further, Vyne alleges only that HSOne made product design changes, discontinued support for unauthorized drivers, and promoted its own solutions. (FAC ¶ 113.)

Those are classic examples of legitimate business decisions, not wrongful conduct or improper means of interference. Even if Vyne can plausibly allege that HSOne's intent was to compete for business, this still does not state an interference claim without an independent wrongful act. *Lyon v. Campbell*, 707 A.2d 850, 860 (Md. Spec. App. 1998) ("Tortious or deliberate intent to harm a plaintiff's business relationship is not alone sufficient to support an intentional interference claim. There also must be proof that the defendant's conduct in interfering with contract or business relations was accomplished through improper means.").

Vyne's reasoning appears to be that hacking increases its revenue and helps it sign customers. But the law does not permit Vyne to shield its unlawful hacking activity through the sword of a tortious interference claim. *See, e.g.*, *Farmer v. Kent*, No. CV TDC-20-1806, 2021 WL 690025, at *5 (D. Md. Feb. 23, 2021), *aff'd*, No. 21-1350, 2022 WL 4482087 (4th Cir. Sept. 27, 2022) (dismissing interference claim when the underlying relationship was "invalid and against public policy"); *Mansell v. Toys R Us, Inc.*, 673 F. Supp. 2d 407, 416 (D. Md. 2009) ("As a threshold matter, a claim for tortious interference with contract is not cognizable unless there is a valid agreement that is not ... otherwise opposed to public policy, so that the law will not aid in upholding it."). Here, Vyne itself alleges that HSOne's actions were in response to what HSOne believed were and are security risks and statutory violations arising from Vyne's unauthorized access. Vyne needs to plausibly allege its conduct did not violate the litany of federal and Utah laws that HSOne claims Vyne violated, to state a tortious interference claim. Vyne does not attempt to do this.

**Vague contract and economic interference allegations are insufficient.** Further, as to contract interference, the FAC asserts only in general and conclusory terms that HSOne interfered with Vyne's contracts between Vyne and its customers. Vyne does not allege that any customer

actually breached or failed to perform a specific contractual obligation because of HSOne's conduct. Vyne instead relies on conclusory allegations that HSOne has "push[ed]" or "encouraged" Vyne's customers to terminate their contracts with Vyne (without alleging that any have actually done so). (FAC ¶¶ 106, 111.)[11] But without a third-party breach or wrongfully induced termination, there can be no tortious interference with contractual relations. *See Mixter v. Farmer*, 215 Md.App. 536, 81 A.3d 631 (2013) (plaintiff failed to state a claim for tortious interference with contractual relations because plaintiff "has not pointed to any specific lost contract or loss of business that he incurred").

The prospective economic relations claim also fails due to lack of specificity, lack of independent wrongful act, and lack of a plausible causation theory. *See, e.g.*, *Mixter*, 81 A.3d 631, at 638 (quoting *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006) (emphasis added) (plaintiff must "'identify a possible future relationship which is likely to occur, absent the interference, **with specificity**'"). Other than vague references to "prospective business relations," Vyne fails to identify any specific future relationship that is likely to occur absent the alleged interference. Due to Vyne's failure to plead independently wrongful acts, failure to plausibly plead that its conduct was lawful in the first place, and failure to plead the specifics of the contracts and relationships at issue, let alone causation, Vyne cannot state a claim for tortious interference.

Even after amendment (FAC ¶¶ 86-89), the analysis remains the same. Though Vyne makes several claims directed to loss of claim submissions and cancelled accounts, it fails to

---

[11] Vyne submits some declarations with its TRO papers that attempt to shore up this deficiency, but those are not before the Court on HSOne's Rule 12(b)(6) motion. Further, even if these allegations were included in a subsequent amended Complaint, they are conclusory and implausible. Vyne has offered zero evidence that any customers who have stopped working with it did so solely due to HSOne's security controls and no other reason. Moreover, Vyne's allegations, even taking all inferences in its favor, suggest that its customers share the security concerns that HSOne has articulated. Not wanting to permit Vyne to hack HSOne is a legitimate reason that a customer would have not to work with Vyne. Indeed, the allegation shows that the consequences are to Vyne's own actions, not anything HSOne did. HSOne merely acted in parallel to Vyne's customers based on similar concerns.

identify a single contract, customer, or breach tied to HSOne's conduct. Nor does Vyne allege facts showing proximate cause; its own pleading confirms HSOne acted based on security concerns and product design changes—legitimate business decisions that break any causal chain. References to "future customers" and "prospective relationships" are speculative and fail under Maryland law, which requires identification of a specific, likely future relationship absent interference. *See Mixter*, 81 A.3d at 638; *Baron Fin. Corp.*, 471 F. Supp. 2d at 546. These new allegations do not cure Vyne's failure to plead an independent wrongful act or improper means, and thus the claim remains deficient as a matter of law.

> **D.** **Vyne's unfair competition claim (Count V) fails because Vyne alleges no fraud or other wrongful conduct; its reliance on the Cures Act does not save its claim.**

Vyne cannot state a claim for unfair competition because it makes no plausible allegation of fraud against HSOne. Absent Vyne's attempt to shoehorn its claims into the Cures Act, which fails on the face of the law and regulations, there is no viable unfair competition theory.

> **1.** **Vyne Cannot State a Claim for Unfair Competition Outside of a Separate Statutory Violation.**

The "underlying premise" of an unfair competition claim is that no party is justified in damaging another's business through methods that are dishonest, fraudulent, or deceptive. *See Savaria USA, Inc. v. Elevator Works, LLC*, No. CV RDB-24-1311, 2024 WL 2212914, at *9 (D. Md. May 16, 2024).[12] Unfair competition law exists "to protect the public by healthy competition, not . . . to protect individual plaintiffs." *M-Edge Accessories LLC v. Amazon.com Inc.*, 2015 WL 403164, at *4 (D. Md. Jan. 29, 2015). Only acts that "substantially interfere with the ability of others to compete on the merits of their products" or acts that "conflict with accepted principles of

---

[12] Maryland law has "no specific elements required to establish unfair competition," but any claim must center on dishonest, fraudulent, or deceptive action. *See Savaria USA, Inc. v. Elevator Works, LLC*, No. CV RDB-24-1311, 2024 WL 2212914, at *9 (D. Md. May 16, 2024).

public policy" can serve as the grounds of an unfair competition claim.  *See Ellicott Dredges, LLC v. DSC Dredge, LLC*, 280 F. Supp. 3d 724, 732 (D. Md. 2017) (citation and marks omitted).  HSOne's conduct does not fall within either.

Maryland's unfair competition law does not create a general duty to provide unfettered data access to another business.[13]  Even vigorous rivalry does not constitute unfair competition.  *See M-Edge Accessories LLC*, 2015 WL 403164, at *4.  Here, Vyne admits that HSOne's conduct is driven by security concerns and other legitimate competitive business interests.  (FAC ¶ 8.)  The FAC demonstrates HSOne investigated Vyne's conduct, promptly notified shared customers of the security vulnerabilities, and acted to protect customer data.  (*Id.* ¶¶ 34-37.)  This sort of careful security hardening constitutes a legitimate business purpose.  *See, e.g., hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th at 1202 (observing the importance of companies blocking malicious actors from interfering with their software).  This takes it outside the realm of unfair competition.  *Berlyn Inc. v. Gazette Newspapers, Inc.,* 223 F. Supp. 2d 718, 738 (D. Md. 2002) (claim dismissed because plaintiff "failed to show that the [] actions in this case were anticompetitive, or that each complained-of action was not taken with some independent and legitimate business purpose").[14]

Even if HSOne has an alternative product to Vyne, Maryland law does not require HSOne to compromise its own security protocols for Vyne's benefit.  *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 399 (2004); *see* also *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009) (there is no obligation to set terms favorable to another business absent a duty).  *M-Edge Accessories* is instructive.  2015 WL 403164, at *4.  The court

---

[13] As noted in its venue transfer arguments here and in its pending transfer motion, HSOne does not concede that Maryland law applies to this dispute and reserves its rights on that issue.

[14] *See also Berlyn, Inc. v. Gaz. Newspapers, Inc*., 223 F. Supp. 2d 718, 739 (D. Md. 2002), *aff'd*, 73 Fed. Appx. 576 (4th Cir. 2003) (non-anticompetitive activity performed for a legitimate purpose did not constitute unfair competition).

noted that M-Edge "failed to produce evidence adequate to permit a reasonable jury to find that the Made for Kindle program constituted actionable unfair competition on the part of Amazon. M–Edge indisputably was given the opportunity to participate in the invitation-only program and made an informed business decision not to participate." *See id.* Any "harm" M-Edge sustained was caused by M-Edge's decision that the cost of participating in the Made for Kindle program would outweighed the benefit. *See id.* Purported threats related to M-Edge's refusal to make a deal with Amazon and participate in the program were no evidence of unfair competition; rather Amazon had a valid reason to discourage M-Edge from rejecting the deal. *See id.* at 8-9.

Similarly, HSOne's implementation of security upgrades to protect its system and the data it stores are valid. That Vyne chose not to take the legitimate route and that HSOne implemented security controls is not unfair competition. *See Alexander & Alexander*, 336 Md. at 659; *Macklin,* 334 Md. at 307–08. Like in *M-Edge Accessories*, any alleged harm Vyne experienced was caused by Vyne's decision not to participate in HSOne's API or one of the other alternatives that HSOne proposed. (FAC ¶¶ 52-56.) The Court need not make any evidentiary inquiry about this—that Vyne chose not to work with HSOne and instead pursue alternative unauthorized access is evident from the face of the FAC. There is nothing fraudulent that Vyne alleges about HSOne's claims— Vyne admits HSOne's communications were based on its own security investigation. Under Vyne's theory, the cause of action for unfair competition could be levied by any business against another based on nothing more than conclusory allegations. The Court need not permit Vyne to stretch Maryland unfair competition law this way.

## 2. Vyne still fails to state a claim for Cures Act violations.

Vyne's entire case turns on whether it can pound the square peg of the Cures Act into its convoluted theory of unfair competition. It cannot. The Cures Act governs health care providers,

developers of certified IT, and health information exchanges/health information networks (HIE/HIN). There is no dispute that HSOne is not a health care provider or a developer of certified IT, and Vyne's allegations that HSOne is an HIE or HIN subject to the statute (FAC ¶¶ 76-78), are legal conclusions which the Court should not accept as true at the pleading stage. *See Twombly*, 550 U.S. at 555. The FAC does nothing more than take the language of the Cures Act and say it describes HSOne. This does not save dismissal.

First, Vyne does not sufficiently allege that HSOne is subject to the Cures Act. Vyne acknowledges that HSOne's Dentrix software system is not certified under the National Coordinator for Health Information Technology Health IT Certification Program, so it is not regulated under that category. (FAC ¶ 77.) Although Vyne theorizes as to why it believes HSOne is not certified, this is pure speculation unsupported by facts. Vyne's treatment of the Dentrix software platforms as one platform is unsupported. (FAC ¶¶ 2, 3, 6, 25-30, 33-34, 76-78.) Dentrix encompasses distinct products: Dentrix on-premises, Dentrix Ascend (cloud-based), and Dentrix Enterprise.[15] Each has separate architectures, workflows, and security models. Vyne's failure to distinguish among these platforms renders its allegations conclusory and implausible under *Twombly* and *Iqbal*, where its claims hinge on HSOne's supposed ability to provide data "as used for years" across fundamentally different systems. Vyne's conflation of the platforms also renders its narrative that HSOne "pulled out" of ONC certification (FAC ¶¶ 77-78) implausible as that concerned *Dentrix Enterplrise*, not Dentrix on-premises. (FAC, n.4-7.) Vyne's own citations undercut Vyne's implausible and conclusory theory.

Vyne's only hope is to argue that HSOne "remains subject to the Cures Act" because it is

---

[15] The evidence Vyne incorporates—including HSOne's API Exchange materials and product descriptions (FAC ¶¶ 27, nn.1-2, 64, n.3, 77-78, nn.4-7)—confirm "Dentrix" encompasses three distinct software suites.

an HIE or HIN (FAC ¶¶ 75-76, 78), but the clear text of the statute and regulations combined with Vyne's own allegations preclude such a theory. The Court need not afford any deference to Vyne's legal conclusions. *See Jezign Licensing, LLC v. L.T.D. Commodities, LLC*, No. CV RDB-22-1592, 2023 WL 5607908, at *3 (D. Md. Aug. 30, 2023) (citation omitted). The applicable regulation states that to meet the definition of an HIE or HIN, the entity must "permit, enable, or require" the "use of any technology or services for access, exchange, or use of electronic health information . . . **[a]mong more than two** unaffiliated individuals or entities (other than the individual or entity to which this definition might apply) that are enabled to exchange with each other[.]" 45 C.F.R. § 171.102 (emphasis added). In its final rule issued pursuant to the Cures Act, The Office of the National Coordinator for Health Information Technology ("ONC") revised the definition of an HIN or HIE from its initial proposed definition and explained that the revision was made to narrow the definition and to specify "that to be a HIN or HIE there must be an exchange among more than two unaffiliated individuals or entities besides the HIN/HIE that are enabled to exchange with each other." The ONC further explained that "this revision ensures the definition does not unintentionally cover what are essentially bilateral exchanges in which the intermediary is simply performing a service on behalf of one entity in providing EHI to another or multiple entities and no actual exchange is taking place among all entities."[16] Vyne does not allege that HSOne facilitates information that flows *among* **more** than two parties to fall within this scope. Rather, as Vyne knows, HSOne's Dentrix software only facilitates information between two parties at a time—either HSOne and the individual dental practice using the software or a dental practice and a vendor utilized by that practice. Each example of an exchange of information cited by Vyne in its FAC is a bilateral exchange. (FAC ¶¶ 25-26.) Neither HSOne customers nor API vendors can

---

[16] *See* https://www.federalregister.gov/documents/2020/05/01/2020-07419/21st-century-cures-act-interoperability-information-blocking-and-the-onc-health-it-certification.

use the HSOne API to share data among other customers or among other vendors as would be required for a HIN/HIE and Vyne never alleges any such exchange.

Vyne attempts to make the Cures Act fit by pointing to language on HSOne's website without a modicum of care for technical nuance. That HSOne's website characterizes the API Exchange as a "central hub," or that it enables scalability by allowing clients and services to interact simultaneously does not automatically make Dentrix's API Exchange subject to the Cures Act. An API endpoint is a specific network address (URL or URI) within an API that acts as the communication interface between two systems—a client and a server—allowing the client to send requests and receive responses for a defined resource or service. Vyne's allegations are gross mischaracterizations of the law and how HSOne's technology works.

Vyne's theory of the case is internally inconsistent: it wishes to rely on the Cures Act while seeking to continue unauthorized access, which is outside any API Exchange agreement. This contradiction suggests that Vyne's real concern is not compliance with the Cures Act. The Court need not—indeed must not—accept implausible allegations contradicted by the record the FAC itself relies on. *Twombly* counsels against accepting legal conclusions couched as fact. *Twombly*, 550 U.S. at 555. Thus, the Court can dismiss Vyne's Cures Act-based unfair competition claim (and, as a result, the entire case), because the clear text of the statute and Vyne's allegations about the API in the FAC show that HSOne is not an HIE or HIN.

Even if HSOne could be considered an HIE or HIN, Vyne still has not alleged facts demonstrating that HSOne's conduct violated the Cures Act by implementing security controls for vendors accessing its software unauthorizedly. The Cures Act excepts conduct by HIEs or HINs when taken to secure their platforms against malicious attacks like those Vyne is deploying. 45 C.F.R. § 171.203 (the "Security Exception"). The Security Exception is an exception that protects

"legitimate security practices" to permit reasonable and necessary measures to protect the security of electronic health information. *Id.*  It does not cap security at the lowest level needed but rather asks whether the practice is reasonable and necessary and implemented consistently with an objective security policy. *Id.*  The Security Exception applies where a regulated entity's restriction on access (i) is tailored to protect the confidentiality, integrity, or availability of data and (ii) is applied consistently. *Id.*  Vyne alleges no plausible facts in the FAC to suggest that HSOne's security patches and fixes were anything other than legitimate measures to protect the confidentiality, integrity, and availability of its customers' sensitive data.  Vyne's Cures Act allegations amount to nothing more than a grievance over HSOne's reasonable efforts to prevent unauthorized access and mitigate serious risks to patient data security.

Vyne now asserts, "on information and belief," that HSOne has "never experienced a security breach from Vyne's printer driver."  (FAC ¶ 80.)  Even if accepted as true, this assertion amounts to a legal conclusion.  Indeed, Vyne's conduct itself is a security breach.  The Cures Act does not require an HIN to *first* suffer a breach—and incur staggering ensuing monetary and reputational costs—before implementing enhanced security safeguards.  Suggesting otherwise reflects a troubling view of cybersecurity—one that prioritizes convenience over patient data protection. This underpins all of Vyne's theories in this case.  They are self-serving after-the-fact contrivances aimed at justifying hacking.  Paragraph 80 of the FAC ultimately shows the parties' disparate attitudes toward patient data protection and cybersecurity.  While Vyne may dismiss the need for proactive safeguards, HSOne chooses not to take such a cavalier approach.

Vyne also alleges that HSOne uses a "printer-driver functionality…for its own products," arguing that this means HSOne's security measures against Vyne are discriminatory.  (FAC ¶ 81.)  Even taking Vyne's allegation that HSOne uses a printer-driver for its own products, Vyne's print

functionality goes far beyond a printer driver (to include encryption key misappropriation and database injection). Vyne's methods operate outside of HSOne's control or contractual framework, unlike HSOne's integrated solutions. (FAC ¶¶ 53-60.) The FAC conflates internal workflows with external interoperability, which is a key flaw in its "manner exception" theory.

Vyne's claims that the "manner exception" is not satisfied because HSOne could be providing the data Vyne seeks as "used by the parties for the past several years, including the printer driver" (FAC ¶ 81) is internally inconsistent and legally deficient. This allegation does not make sense for the same reason as previously outlined: Vyne asserts a Cures Act theory, but its functionality admittedly operates *outside* any mutual agreements between the parties (i.e., the API agreement). Further, the Cures Act does not require HSOne to resurrect an unauthorized workaround it has already rejected on security grounds.

Reciting the text of the statute does not plausibly allege a Cures Act claim. Vyne still includes no non-conclusory allegations that HSOne is a HIE or HIN within the meaning of the statute, or that Dentrix is certified health IT subject to the Cures Act. Moreover, even if HSOne was subject to the statute, Vyne's conclusory allegations do not refute that HSOne's conduct falls within the Act's exceptions. Once the Cures Act allegations are set aside, the FAC identifies no other conduct that could support an unfair competition claim.[17] At bottom, Vyne challenges HSOne's software updates, licensing restrictions, and competitive sales practices—all of which reflect legitimate business decisions, not tortious or unfair conduct. Because Vyne has not alleged a plausible violation or any alternative basis for wrongful conduct, Count V merits dismissal.

---

[17] As HSOne has explained, the *Real Time* case is distinguishable. Opp. to Mot. for TRO (ECF No. 38), 21-24.

E.    **Vyne's Declaratory Judgment Claim (Count VII) Fails Because It Seeks an Impermissible Prior Restraint.**

Vyne's request for declaratory judgment is a transparent attempt to pre-litigate HSOne's claims against it first raised in pre-suit legal correspondence and which are now the subject of this litigation.  The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted).  Courts should decline jurisdiction where a declaratory judgment claim merely duplicates issues already raised in other claims or where it functions as an attempt to preempt or restrain another party's own claims.  *See CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) (citation omitted).  Vyne's declaratory judgment claim is designed to confront HSOne's Counterclaims (and HSOne's Utah complaint in *Henry Schein One, LLC v. National Electronic Attachment, Inc. d/b/a Vyne Dental*, Case No. 2:25-cv-00883).   In its declaratory judgment count, Vyne essentially asks this Court to short circuit HSOne's Counterclaims and declare that it did not "engage in conduct violative of the [CFAA] ***or any other applicable state or federal law***." (FAC ¶ 135 (emphasis added).)  But Vyne cannot block HSOne's right to litigate its claims.  Vyne does not make any plausible allegations that HSOne's claims are invalid as a matter of law.  The declaratory judgment claim consequently merits dismissal as well.

## CONCLUSION

Because Vyne asks the Court to stretch the power of inference far beyond what *Twombly* permits, the Court can properly dismiss Vyne's FAC for failure to state a claim.  Before even getting to the 12(b)(6) inquiry, though, the Court can dismiss Vyne's FAC under 12(b)(3).  It is not proper to forum shop in Maryland while alleging nothing about the facts that give rise to the claims having occurred here beyond their effect on a minuscule handful of customers.  For all these reasons, Vyne's FAC does not pass the pleading bar and merits dismissal.

Dated:  December 16, 2025

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Michael R. Sklaire*

Michael Burshteyn *(pro hac vice)*
Marcelo Barros *(pro hac vice)*
Jennifer Bartlett *(pro hac vice)*
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Michael.burshteyn@gtlaw.com
Marcelo.barros@gtlaw.com
Jennifer.bartlett@gtlaw.com

Michael R. Sklaire (MD Fed. Bar No. 16471)
1750 Tysons Boulevard, Suite 1000
Tysons Corner, VA 22102
Tel: (703) 749-1308
michael.sklaire@gtlaw.com

*Counsel for Defendant Henry Schein One, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of December, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael R. Sklaire*
Michael R. Sklair