# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A
VYNE DENTAL,

<em>Plaintiff,</em>

-against-

HENRY SCHEIN ONE, LLC,

<em>Defendant.</em>

Case No. 1:25-cv-03246

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
## HENRY SCHEIN ONE LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD .................................................................................................... 1

ARGUMENT .................................................................................................................. 2

    I.    Venue Is Proper in the District of Maryland. ................................................. 2

        A.    Venue Is Proper Because HS One "Resides" in Maryland. ................................. 2

        B.    Venue Is Also Proper Because a Substantial Part of the Events Giving Rise to This Litigation Occurred in Maryland. .............................................................. 4

    II.    Vyne's First Amended Complaint Adequately States Its Claims. .............................. 6

        A.    Vyne Adequately Alleges that HS One Has Violated the CFAA. ...................... 6

            i.    Vyne states a claim under CFAA Section 1030(a)(5)(A). ............................... 7

            ii.    Vyne states a claim under CFAA Section 1030(a)(2). .................................. 10

            iii.    Vyne adequately alleges statutory loss. ....................................................... 11

        B.    Vyne Adequately Alleges that HS One Defamed Vyne. ................................... 13

        C.    Vyne Adequately Alleges that HS One Violated the Lanham Act. .................... 16

        D.    Vyne Adequately Alleges that HS One Tortiously Interfered with Vyne's Contracts and Business Relationships. ............................................................ 20

        E.    Vyne Adequately Alleges that HS One Unfairly Competed Against Vyne. ....... 24

            i.    Vyne adequately alleges unfair competition. ............................................... 24

            ii.    HS One's self-serving "security" claims are not a basis for dismissal. ........... 26

            iii.    Vyne also adequately alleges breach of the Cures Act. ................................. 27

        F.    Vyne's Declaratory Judgment Claim Is Adequately Stated. ............................. 30

CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
  562 F.3d 630 (4th Cir. 2009) ................................................................................. 13

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004) ................................................................................. 4

*Aetna Cas. & Sur. Co. v. Quarles*,
  92 F.2d 321 (4th Cir. 1937) ................................................................................... 30

*Aggarao v. MOL Ship Mgmt. Co.*,
  675 F.3d 355 (4th Cir. 2012) ................................................................................... 5

*Atlantic Marine Construction Co. v. U.S. District Court*,
  571 U.S. 49 (2013) ................................................................................................... 4

*Attkisson v. Rosenstein*,
  2021 WL 978821 (D. Md. Mar. 16, 2021) .............................................................. 5

*Balt. Bedding Corp. v. Moses*,
  182 Md. 229 (1943) ................................................................................................ 24

*Berlyn, Inc. v. Gazette Newspapers, Inc.*,
  223 F. Supp. 2d 718 (D. Md. 2002) ...................................................................... 26

*Biospherics, Inc. v. Forbes*,
  151 F.3d 180 (4th Cir. 1998) ................................................................................. 16

*Bui-Ford v. Tesla, Inc.*,
  2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ........................................................... 8

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................................. 11

*Castrol Inc v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993) ................................................................................... 18

*ClearOne Advantage, LLC v. Kersen*,
  756 F. Supp. 3d 30 (D. Md. 2024) ........................................................................ 20

*Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*,
  228 F.3d 24 (1st Cir. 2000) .................................................................................... 18

*Coastal Lab'ys, Inc. v. Jolly*,
  502 F. Supp. 3d 1003 (D. Md. 2020) ................................................................. 2, 5

*Consumer Source Holding, Inc. v. Does 1–24*,
  2014 WL 2967942 (E.D. Va. 2014) ................................................................ 12

*Davidson v. Sarnova, Inc.*,
  2017 WL 5564654 (D. Md. Nov. 20, 2017) ....................................................... 11

*Delmarva Sash & Door Co. of Md. v. Andersen Windows, Inc.*,
  218 F. Supp. 2d 729 (D. Md. 2002) ................................................................ 24

*Design Res., Inc. v. Leather Indus. of Am.*,
  789 F.3d 495 (4th Cir. 2015) ................................................................. 16, 19

*Doe v. Johns Hopkins Health Sys. Corp.*,
  274 F. Supp. 3d 355 (D. Md. 2017) ................................................. 13, 14, 15, 22

*E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*,
  213 F.3d 175 (4th Cir. 2000) ........................................................................ 11

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) .......................................................................... 1

*Ellicott Dredges, LLC v. DSC Dredge, LLC*,
  280 F. Supp. 3d 724 (D. Md. 2017) ............................................................... 21

*EndoSurg Med., Inc. v. EndoMaster Med., Inc.*,
  71 F. Supp. 3d 525 (D. Md. 2014) ................................................................. 22

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002) ........................................................................... 19

*Gohari v. Darvish*,
  363 Md. 42, 767 A.2d 321 (2001) ................................................................. 13

*GSP Fin. Servs., LLC v. Harrison*,
  2021 WL 288172 (D. Md. Jan. 28, 2021) .................................................. 6, 7, 21

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ...................................................................... 30

*In re Apple Inc. Device Performance Litig.*,
  347 F. Supp. 3d 434 (N.D. Cal. 2018) .......................................................... 8, 9

*King v. Rubinstein*,
  825 F.3d 206 (4th Cir. 2016) ..................................................................... 1, 23

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013) ....................................................................... 3, 4

*Laios v. MTM Builder/Dev., Inc.*,
 2021 WL 4478712 (D. Md. Sept. 30, 2021)..........................................................3, 5

*Lake Shore Inv. v. Rite Aid Corp.*,
 67 Md. App. 743 (1986)........................................................................................20

*Lora v. Ledo Pizza Sys., Inc.*,
 2017 WL 3189406 (D. Md. July 27, 2017)............................................................15

*LVRC Holdings LLC v. Brekka*,
 581 F.3d 1127 (9th Cir. 2009).................................................................................6

*Macklin v. Robert Logan Assocs.*,
 334 Md. 287 (1994)...............................................................................................22

*Malibu Media, LLC v. Doe*,
 2014 WL 7188822 (D. Md. Dec. 16, 2014) ...........................................................11

*Maplebear Inc. v. Does*,
 2022 WL 1837935 (E.D. Va. Apr. 6, 2022) .............................................................5

*M-Edge Accessories LLC v. Amazon.com Inc.*,
 2015 WL 403164 (D. Md. Jan. 29, 2015) ..............................................................26

*Mitrano v. Hawes*,
 377 F.3d 402 (4th Cir. 2004)...................................................................................4

*Mixter v. Farmer*,
 215 Md. App. 536 (2013)......................................................................................24

*NetApp, Inc. v. Nimble Storage, Inc.*,
 41 F. Supp. 3d 816 (N.D. Cal. 2014)......................................................................8

*Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Med.*,
 189 F. Supp. 2d 271 (D. Md. 2001) ......................................................................19

*Oce N. Am., Inc. v. MCS Servs, Inc.*,
 748 F. Supp. 2d 481 (D. Md. 2010) ........................................................................9

*Paccar Inc. v. Elliot Wilson Cap. Trucks LLC*,
 905 F. Supp. 2d 675 (D. Md. 2012) ................................................................25, 27

*Patrick Patterson Custom Homes, Inc. v. Bach*,
 586 F. Supp. 2d 1026 (N.D. Ill. 2008).....................................................................8

*Phreesia, Inc. v. Certify Glob., Inc.*,
 2022 WL 17342067 (D. Md. Nov. 29, 2022)..........................................................26

iv

*Phreesia, Inc. v. Certify Glob., Inc.*,
    2022 WL 911207 (D. Md. Mar. 29, 2022) ........................................................................ 10

*Piscatelli v. Van Smith*,
    424 Md. 294, 35 A.3d 1140 (2012) ................................................................................ 14

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
    227 F.3d 489 (5th Cir. 2000) .......................................................................................... 18

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
    131 F.4th 205 (4th Cir. 2025) ........................................................................... 24, 26, 29

*Register.com, Inc. v. Verio, Inc.*,
    126 F. Supp. 2d 283 (S.D.N.Y. 2000) ........................................................................... 12

*Reynolds v. Pionear, LLC*,
    2016 WL 1248866 (E.D. Va. Mar. 16, 2016) ................................................................ 17

*Russell v. Railey*,
    2012 WL 1190972 (D. Md. Apr. 9, 2012) ................................................................ 14, 15

*S. Volkswagen, Inc. v. Centrix Fin., LLC*,
    357 F. Supp. 2d 837 (D. Md. 2005) ............................................................................... 14

*Samuels v. Tschechtelin*,
    135 Md. App. 483, 763 A.2d 209 (2000) ...................................................................... 16

*San Miguel v. HP Inc.*,
    317 F. Supp. 3d 1075 (N.D. Cal. 2018) ........................................................................ 7, 8

*Scotts Co. v. United Indus. Corp.*,
    315 F.3d 264 (4th Cir. 2002) .......................................................................................... 17

*Seguros R. Vasquez, Inc. v. Aguirre*,
    2020 WL 3447754 (D. Md. June 24, 2020) ................................................................... 22

*Seidel v. Kirby*,
    296 F. Supp. 3d 745 (D. Md. 2017) ............................................................................. 4, 5

*Solomon Found. v. Christian Fin. Res., Inc.*,
    2023 WL 3058321 (D. Md. Apr. 24, 2023) ................................................................... 15

*State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*,
    381 F. Supp. 3d 536 (D. Md. 2019) ............................................................................... 15

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) .......................................................................................... 23

*Taylor v. Shreeji Swami, Inc.*,
   2017 WL 1832206 (D. Md. May 8, 2017) .............................................................. 3

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ............................................................................ 13

*Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*,
   705 F. Supp. 3d 510 (D. Md. 2023) .................................................................... 15

*Trimed, Inc. v. Sherwood Med. Co.*,
   977 F.2d 885 (4th Cir. 1992) ................................................................. 20, 23, 25

*U.S. Home Corp. v. Settlers Crossing, LLC*,
   2010 WL 958034 (D. Md. Mar. 11, 2010) .......................................................... 30

*United Cap. Ins. Co. v. Kapiloff*,
   155 F.3d 488 (4th Cir. 1998) .............................................................................. 30

*Van Buren v. United States*,
   593 U.S. 374 (2021) ............................................................................................. 6

*Verisign, Inc. v. XYZ.COM LLC*,
   848 F.3d 292 (4th Cir. 2017) ........................................................................ 17, 18

*Verizon Online Servs., Inc. v. Ralsky*,
   203 F. Supp. 2d 601 (E.D. Va. 2002) ................................................................... 5

*Volvo Equip. N. Am. v. CLM Equip. Co., Inc.*,
   386 F.3d 581 (4th Cir. 2004) .............................................................................. 30

*WEC Carolina Energy Sols. LLC v. Miller*,
   687 F.3d 199 (4th Cir. 2012) .............................................................................. 10

*Wentworth-Douglas Hosp. v. Young & Novis Prof. Ass'n*,
   2010 WL 3023331 (D.N.H. July 28, 2010) ........................................................... 9

*Wolf v. P.J.K. Food Serv., LLC*,
   2021 WL 4991724 (D. Md. Oct. 27, 2021) ........................................................ 2, 4

*World Missions Ministries, Inc. v. Gen. Steel Corp.*,
   2006 WL 2161851 (D. Md. 2006) ...................................................................... 3, 4

**Statutes**

15 U.S.C. § 1125 ....................................................................................................... 19

18 U.S.C. § 1030 .................................................................................................. passim

28 U.S.C. § 1391 ..................................................................................................... 2, 4

**Other Authorities**

14D Fed. Prac. & Proc. Juris. (Wright & Miller) (4th ed. 2025) ................................................... 2

Restatement (Third) of Unfair Competition (ALI 1995) ............................................ 26

**Regulations & Regulatory Materials**

45 C.F.R. § 170.402 ................................................................................................... 27

45 C.F.R. § 171.102 ................................................................................................... 28

45 C.F.R. § 171.103 ................................................................................................... 27

45 C.F.R. § 171.203 ................................................................................................... 29

85 Fed. Reg. 25642-01 (2020) ................................................................................... 28

## INTRODUCTION

HS One's motion seeks dismissal of Vyne's claims based on its own allegations—that supposedly "HS One acted based on careful, thoughtful, and reasonable investigation" to address "concerns over unauthorized computer hacking." HS One Motion to Dismiss, Dkt. 86 ("Mot."), at 2. But HS One's story ignores Vyne's allegations in the Amended Complaint, Dkt. 61 ("FAC")—allegations that must be accepted as true on a motion to dismiss.

HS One's motion does not provide a basis for dismissal of Vyne's claims. Vyne alleges credible, specific facts that HS One's supposed "computer hacking" concerns are pretext for a concerted campaign to mislead Vyne's customers about Vyne's business practices and its products and to impede those customers' use of Vyne's products by sabotaging the printer driver and, in some cases, *all* other Vyne software—all with the objective of inducing Vyne's customers to end their relationships with Vyne and transition to HS One's competing product. This course of conduct violates not only Maryland unfair-competition and tortious-interference law, as Vyne has argued in its motion for a preliminary injunction, but also the Computer Fraud and Abuse Act, the Lanham Act, and Maryland defamation law. None of HS One's arguments show otherwise.

## LEGAL STANDARD

"When ruling on a Rule 12(b)(6) motion to dismiss, 'a judge must accept as true all of the factual allegations contained in the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). "The complaint 'need only give the defendant fair notice of what the claim is and the grounds upon which it rests,'" and "'all reasonable inferences' must be drawn in favor of the complainant." *Id.* "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubinstein*, 825 F.3d 206, 214 (4th Cir. 2016).

## ARGUMENT

## I.    Venue Is Proper in the District of Maryland.

When venue is challenged, a plaintiff's burden to demonstrate that venue is proper is "not onerous," and the "Complaint need only make a prima facie showing that venue lies in the judicial district." *Wolf v. P.J.K. Food Serv., LLC*, 2021 WL 4991724, at *2 (D. Md. Oct. 27, 2021). Although venue is proper with respect to all of Vyne's claims (and HS One's conclusory venue objections do not distinguish between any of Vyne's claims), if venue is sufficient for any one of a plaintiff's claims, "pendent venue permits a court to exercise venue over other claims in which venue is improper." *Coastal Lab'ys, Inc. v. Jolly*, 502 F. Supp. 3d 1003, 1023–24 (D. Md. 2020).

### A.  Venue Is Proper Because HS One "Resides" in Maryland.

The general venue statute provides that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  As to where a defendant "resides," with respect to incorporated or unincorporated entities like HS One (an LLC), the statute also provides that a defendant "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).  In other words, the venue statute "embraces personal jurisdiction as the proxy for corporate residence," recognizing that entity defendants "can reside in more than one district simultaneously." 14D Fed. Prac. & Proc. Juris. (Wright & Miller), § 3811.1 (4th ed. 2025); *see also id.* § 3812.

Therefore, as Wright & Miller explains, "if an entity defendant waives its right to object to personal jurisdiction, it has ipso facto consented to venue under this statute" because "[i]t is, after all, 'subject to personal jurisdiction with respect to the civil action in question.'" *Id.*  HS One has waived any objection to this Court's personal jurisdiction by failing to raise the defense in its motion to dismiss, and by affirmatively invoking the Court's jurisdiction to bring counterclaims

against Vyne.  Because it has consented to this Court's personal jurisdiction, it "resides" in the District of Maryland for purposes of the venue statute, making venue proper here.[1]

Consistent with the statute, multiple courts in this District have held that an entity defendant's waiver of personal jurisdiction makes venue proper in this District—including in HS One's own case.  *See Laios v. MTM Builder/Dev., Inc.*, 2021 WL 4478712, at *5 n.4 (D. Md. Sept. 30, 2021) (cited at Mot. 8) ("Defendants have not alleged lack of personal jurisdiction in their Motion to Dismiss for Improper Venue, thereby waiving that defense.  Consequently, they are subject to this Court's personal jurisdiction and . . . deemed to reside in this district." (quotation omitted)); *Taylor v. Shreeji Swami, Inc.*, 2017 WL 1832206, at *2 (D. Md. May 8, 2017) (venue proper where "all Defendants failed to allege lack of personal jurisdiction when moving to dismiss for improper venue, thereby waiving that defense").  As these courts have explained, when the defendant is an entity, "the venue inquiry . . . collapses into the question of whether there is personal jurisdiction," and where personal jurisdiction is proper, venue is too.  *World Missions Ministries, Inc. v. Gen. Steel Corp.*, 2006 WL 2161851, at *3 (D. Md. 2006).

HS One simply ignores the text of the statute in disputing venue, citing several out-of-circuit cases that have nothing to do with the general venue statute.  *See* Mot. 9.  Both *KM Enterprises* and *Action Embroidery* dealt with venue and personal jurisdiction under the Clayton Act, which has special provisions concerning jurisdiction and nationwide service of process.  *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 722, 725 (7th Cir. 2013);[2] *Action*

---

[1] HS One asserts that Vyne relies on HS One having waived its venue objection.  Mot. 8. This misstates Vyne's argument; venue is proper because HS One fails to contest *personal jurisdiction*.

[2] The Court in *KM Enterprises* held that the defendant's waiver of personal jurisdiction as to the *state* did not waive a venue objection as to a particular *district* in that state, because in states that have multiple federal judicial districts, the venue statute treats each district separately for

*Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1179 (9th Cir. 2004).  The courts'

conclusion that venue and personal jurisdiction were analytically separate under the Clayton Act

says nothing about venue under § 1391, which explicitly collapses venue and jurisdiction.[3]

Because HS One has conceded jurisdiction, venue is clearly proper under § 1391(b)(1),

and it is "unnecessary" for this Court to consider "whether 'a substantial part of the events or

omissions giving rise to the claim occurred' in Maryland."  *World Missions*, 2006 WL 2161851,

at *3 (quoting 28 U.S.C. § 1391(b)(2)).

### B.  Venue Is Also Proper Because a Substantial Part of the Events Giving Rise to This Litigation Occurred in Maryland.

Although the Court need not consider it, venue is also proper under § 1391(b)(2) because

"a substantial part of the events or omissions giving rise to the claim occurred" here.  "[I]t is not

necessary that a majority of the events occurred in the district where suit is filed, that the events in

that district predominate, or that the chosen district is the 'best venue,' rather plaintiffs must show

that a 'substantial part' of the events giving rise to the their claims occurred in the chosen district."

*Seidel v. Kirby*, 296 F. Supp. 3d 745, 752 (D. Md. 2017).  Because "it is possible for venue to be

proper in more than one judicial district," courts do not apply a "'weight of the contacts' test" to

determine which venue has the *most* connections.  *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir.

2004); *Wolf*, 2021 WL 4991724, at *3.

HS One makes the conclusory argument that venue is improper because Maryland is only

---

purposes of venue and personal jurisdiction.  725 F.3d at 733; *see* § 1391(d).  That principle is
irrelevant here because Maryland has only one judicial district.
　　[3] HS One also cites *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49,
56 (2013), for the proposition that venue "must be proper under 1391 not by virtue of consent or
waiver."  Mot. 8 n.2.  But *Atlantic Marine* simply held that litigants cannot agree to *eliminate*
venue in a district court using a forum selection clause, because venue "depends exclusively" on
whether the case "satisfies the requirements of federal venue laws."  571 U.S. at 56.

"tangential to Vyne's claims," Mot. 8, relying on a case in which the complaint was "completely devoid of any reference to Maryland at all," *Laios*, 2021 WL 4478712, at *6. But Vyne has alleged that the Vyne customers HS One has targeted with false representations about Vyne and software that disables Vyne programs include dozens of customers in Maryland, and that at least thirteen dental practices in Maryland have lost their ability to use Vyne's products as a result of HS One's actions. FAC ¶¶ 18, 69, 103; *see also, e.g.*, Suppl. Roberts Decl., Dkt. 40-1, ¶ 20. That is enough.[4]

Most centrally, venue is proper with respect to Vyne's Computer Fraud and Abuse Act (CFAA) claim because HS One unlawfully accessed computers that belong to Vyne's customers in Maryland and are located in Maryland. FAC ¶ 18; *see, e.g.*, *Maplebear Inc. v. Does*, 2022 WL 1837935, at *2 (E.D. Va. Apr. 6, 2022) (venue proper because defendants "access[ed] . . . servers, located in the Eastern District of Virginia"). Courts have rejected HS One's argument that the central consideration is where the defendant was located when it initiated the unlawful access. *See Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 623 (E.D. Va. 2002) (venue proper in Virginia even though "Defendants' conduct may have originated in Michigan" because of "Verizon's Virginia computers "); *accord Attkisson v. Rosenstein*, 2021 WL 978821, at *7–8 (D. Md. Mar. 16, 2021) (venue *not* proper in Maryland when electronic activity was alleged to have "originated" there but the "devices [plaintiffs] allege to have been hacked" were "in Virginia"). The same is true with respect to Vyne's tort claims. *See, e.g.*, *Coastal Lab'ys*, 502 F. Supp. 3d at 1023–24 (venue proper based on allegations "that Defendants' tortious actions were aimed at Plaintiffs' customers in Maryland," including efforts to "block[] web portal access" to "customers in Maryland" and "to solicit Plaintiffs' Maryland-based customers").

---

[4] Although it is unnecessary here, the Court may consider "evidence outside the pleadings" when deciding a Rule 12(b)(3) motion. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365–66 (4th Cir. 2012).

## II. Vyne's First Amended Complaint Adequately States Its Claims.

### A. Vyne Adequately Alleges that HS One Has Violated the CFAA.

Vyne's complaint alleges that HS One's conduct constitutes a violation of three separate provisions of the CFAA. FAC ¶¶ 92–93. In its Motion, HS One does not acknowledge Vyne's § 1030(a)(5)(A) claim at all, and it simply ignores the statutory requirements for § 1030(a)(2). Mot. 10–14. Instead, HS One relies on factual disputes and policy arguments, claiming that Vyne's claims should be dismissed because HS One is merely a "victim stop[ping] a hacker." Mot. 11–12. These arguments fail, including because they completely ignore the FAC's allegations.

Section 1030(a)(5)(A) of the CFAA prohibits knowingly transmitting a code or program to a protected computer and causing damage without authorization. 18 U.S.C. § 1030(a)(5)(A). Separately, section 1030(a)(2) of the CFAA prohibits accessing a protected computer without authorization and obtaining information from that computer.[5] A plaintiff need not allege violations of sections 1030(a)(5) or (a)(2) with particularity. *GSP Fin. Servs., LLC v. Harrison*, 2021 WL 288172, at *3 (D. Md. Jan. 28, 2021). Vyne has adequately stated a claim under both subsections.[6]

---

[5] A computer is a "protected computer" within the meaning of the CFAA if it "is used in or affecting interstate or foreign commerce." 18 U.S.C. § 1030(e)(2)(B); *see* FAC ¶¶ 1–7, 91.

[6] Vyne and HS One each brought claims under § 1030(a)(5)(C), which requires a plaintiff to show that the defendant (1) intentionally accessed a protected computer (2) without authorization and thereby (3) caused damage or loss. *GSP*, 2021 WL 288172, at *3; 18 U.S.C. § 1030(a)(5)(C); HS One Counterclaims, Dkt. 45, at ¶ 78. Upon further investigation, Vyne has concluded that both parties' § 1030(a)(5)(C) claims are barred because the subsection applies only to "outside hackers" who "access a computer without any permission at all." *Van Buren v. United States*, 593 U.S. 374, 389–90 (2021) (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009)). Neither Vyne nor HS One *accessed* customer computers without authorization because customers voluntarily installed both Dentrix and Vyne Trellis. *Brekka*, 581 F.3d at 1133 ("[A] person who uses a computer 'without authorization' has no rights, limited or otherwise, to access the computer in question."). HS One's conduct violates other provisions of the CFAA that do not depend on unauthorized access, as explained below.

However, to the extent the Court holds that HS One can state a claim for access without authorization despite customers' installation of Vyne Trellis, it should sustain Vyne's § 1030(a)(5)(C) claim as well. The FAC alleges that HS One accessed Vyne's customers' computers to install programs or services that target and disable the functionality of Vyne's

### i. Vyne states a claim under CFAA Section 1030(a)(5)(A).

HS One does not even acknowledge, let alone seek dismissal, of Vyne's claim that HS One violated § 1030 (a)(5)(A), so Vyne's CFAA claim would survive on that basis alone.  FAC ¶ 93.  Subsection A of § 1030(a)(5) prohibits "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer."  18 U.S.C. § 1030(a)(5)(A).  There can be no question that HS One transmitted a program, information, code, or command within the meaning of the CFAA—it affirmatively acknowledges that it "issued 'updates' to HS One's own Dentrix software," as the FAC alleges.  Mot. 11 (quoting FAC ¶¶ 10, 34, 69).  Nor does it dispute that it distributed those updates intentionally to target Vyne's products.  *See, e.g.*, Mot. 11.

The only question for purposes of Subsection A liability, therefore, is whether HS One's updates to Dentrix "caused damaged without authorization" to Vyne's customers' computers.  18 U.S.C. § 1030(a)(5)(A).  The CFAA defines "damage" broadly to include "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).

Again, Vyne alleges that HS One has distributed updates to Dentrix that deliberately disable Vyne's customers' ability to use Vyne software on their own computer, including Vyne's printer driver and, in some cases, any Vyne products at all.  FAC ¶¶ 36–40, 63–64, 68–74.  Their computers hijacked by these updates, Vyne's customers have lost functionality, including the ability to use Vyne's printer driver and other Vyne software.  *Id.* ¶¶ 69–73, 89.

This "impairment" to the "availability" of Vyne's "program[s]" comfortably fits within Subsection A of § 1030 (a)(5).  Take, for example, *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075,

---

programs on those computers.  FAC ¶¶ 69–73, 89.  The FAC alleges that HS One never obtained Vyne's customers' consent to do this—and indeed never disclosed the nature of what HS One was doing on their computers.  *Id.* ¶ 71.

1084–85 (N.D. Cal. 2018).  There, the plaintiffs alleged a violation of Subsection A after HP distributed a firmware update that "blocked ink cartridges" distributed by its competitors "from functioning in an HP printer" in an effort to "systematically disabl[e] technology" distributed by "third-party makers who sell their products in the same market as HP." *Id.* at 1082.  Like HS One, HP sought to justify its conduct by claiming that it had no "duty to make its printers compatible with third-party ink cartridges." *Id.* at 1084.  The court held that plaintiffs adequately stated a claim by alleging "that HP knowingly transmitted the firmware update and intentionally caused damage" by blocking customers from using third-party ink cartridges. *Id.* at 1086.

Similarly, courts have held that plaintiffs stated a claim under § 1030(a)(5)(A) by alleging that Apple distributed updates to plaintiffs' iPhones that purposefully slowed the processer speed on those devices. *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 451–52 (N.D. Cal. 2018).  Courts have similarly held that the "installation and use of an erasure program on a computer" constitutes a violation of Subsection A. *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1034–35 (N.D. Ill. 2008).

As cases like *San Miguel* and *Apple* make clear, there is no need (as HS One claims) for "some technical barrier overcome—some sort of breaking in—for a CFAA claim to accrue."  Mot. 10–11; *see also, e.g.*, *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 831 (N.D. Cal. 2014) (explaining that a technological barrier is not necessary and collecting cases).  Even distributors of the devices in question can violate the CFAA by abusing their access to those devices to the detriment of their customers and to target their competitors. *See also, e.g.*, *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *3 (N.D. Cal. Feb. 20, 2024) (Subsection A claim based on updates distributed by Tesla that "result[ed] in immediate battery degradation").

HS One appears to argue that Vyne cannot state a claim because HS One had authority to

*access* Vyne's customers' computers based on "its licensing agreements with dental practices." Mot. 11. But, crucially, the "phrase 'without authorization' modifies different actions in § 1030(a)(5)(A)" as compared to other sections of the CFAA. *Apple*, 347 F. Supp. 3d at 451. While other CFAA subsections focus on whether the computer was *accessed* with authorization, Subsection A depends only on whether Vyne's customers authorized HS One to "cause[] damage" with authorization. *Wentworth-Douglas Hosp. v. Young & Novis Prof. Ass'n*, 2010 WL 3023331, at *3 (D.N.H. July 28, 2010) ("Unauthorized damage and/or unauthorized transmission are elements of a cause of action under § 1030(a)(5)(A); unauthorized access to the protected computer is not."); *see also Apple*, 347 F. Supp. 3d at 452 (upholding Subsection A claim because "even though Plaintiffs voluntarily installed the iOS updates, they never gave permission for Apple to cause damage to their iPhones"). To defeat Vyne's Subsection A claim, therefore, HS One must show that its customers consented to *HS One's sabotage of Vyne's software*. It cannot make this showing. *See, e.g.*, FAC ¶¶ 69–71 ("HS One provided no notice to the affected practices that it would use Dentrix to deploy a virus that would disable a competitor's software[.]").

Nor was Vyne required to allege that "HS One's upgrades accessed Vyne's applications or databases running on customer computers." Mot. 11. To the contrary, as Vyne has explained with regard to HS One's CFAA claims, *see* Dkt. 52 at 6–8, the CFAA does not operate to control access to a software developer's applications on a customer computer—rather, it enforces a *computer owner's* ability to control who accesses the computer, how, and when. *See Oce N. Am., Inc. v. MCS Servs, Inc.*, 748 F. Supp. 2d 481, 487 (D. Md. 2010) (allegation that "software was accessed on laptops and printers" insufficient to state CFAA claim). HS One's "additional gates" it put up around "its own software and database" to disable a competitor's software on *customer* computers without *customer* authorization is precisely what violates the CFAA.

9

### ii.  Vyne states a claim under CFAA Section 1030(a)(2).

Separately, section 1030(a)(2) of the CFAA prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer."  18 U.S.C. § 1030(a)(2).  Section 1030(a)(2) does not require that all access to the computer in question was "without authorization"—it is sufficient that the particular use "exceeds" "authorized access."  *Id.*  A defendant "exceeds authorized access" by using its "access to obtain or alter information that falls outside the bounds of [its] approved access."  *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012).  Section 1030(a)(2) does not require that HS One caused damage to the computers in question—HS One need only have obtained information without customers' consent.  *Phreesia, Inc. v. Certify Glob., Inc.*, 2022 WL 911207, at *5–6 (D. Md. Mar. 29, 2022).

Vyne has adequately stated this allegation.  As set out in the FAC, HS One installed an invasive telemetry system on Vyne's customers' computers without notifying them of the scope of the data it would harvest, all in preparation for HS One's efforts to target Vyne's customers' use of its products.  FAC ¶¶ 37–39.  As a result of the information HS One has been able to learn through this telemetry, it has targeted joint Vyne–HS One customers with the programs it has designed to sabotage their use of Vyne products, and with misleading communications that cause Vyne's customers to doubt the security of Vyne software.  *Id.* ¶¶ 41–51, 68–74.  Moreover, Vyne has alleged that HS One's conduct was not fully disclosed to its customers when it installed the telemetry on their systems, including because it went far beyond the terms and conditions of HS One's End User License Agreement, meaning that they could not have possibly consented to the

amount of data HS One extracted from their systems.  FAC ¶¶ 37–38.[7]

HS One appears to argue that Vyne has failed to state a claim because Vyne's customers consented to its efforts to monitor their systems for information about their use of Vyne products. Mot. 12.  But "[c]onsent is a defense to Plaintiff['s] claims," and "[a]s the party seeking the benefit of the exception, it is [HS One's] burden to prove consent." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619–20 (N.D. Cal. 2021) (rejecting consent defense to CFAA and other claims at motion-to-dismiss stage).  A motion to dismiss under Rule 12(b)(6) "does not generally invite an analysis of potential defenses to the claims asserted in the complaint." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 185 (4th Cir. 2000).  Vyne's allegations have, at a minimum, established an issue of fact as to Vyne's customers' consent to HS One's use of their computers.

### iii.  Vyne adequately alleges statutory loss.

The CFAA defines "loss" to include "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."   18 U.S.C. § 1030(d)(11).  HS One wrongly asserts that Vyne has failed to allege statutory loss because "lost

---

[7] HS One argues (without authority) that Vyne's claim fails because Vyne "does not identify which specific" provision of HS One's EULA or terms "was allegedly exceeded," "what telemetry data was collected beyond any consented-to parameters," and "which customers, if any, withheld consent."  Mot. 12–13.  But these facts are "peculiarly within the possession of the defendant," *Malibu Media, LLC v. Doe*, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014), and although Vyne's investigation has identified several discrepancies between the applicable EULA and the scope of the information Vyne believes HS One extracts from Vyne's customers' computers, *see* Dkt. 6-3 at ¶¶ 13–14, Vyne "need[s] discovery to gather and confirm its evidentiary basis" for that allegation, *Davidson v. Sarnova, Inc.*, 2017 WL 5564654, at *4 (D. Md. Nov. 20, 2017).  Vyne's information-and-belief pleading as to HS One's excess of customer consent is therefore appropriate.  *See, e.g.*, *Phreesia*, 2022 WL 911207, at *4–5 & n.4 (explaining appropriateness of such pleading on CFAA claim and denying motion to dismiss).

revenue, lost customers, or harm to one's business model" do not "qualify as 'damage' or loss' under the CFAA." Mot. 18. HS One ignores the statute and is wrong.

*First*, the CFAA covers injury such as "damage to [plaintiff's] brands, goodwill, and reputation," *Consumer Source Holding, Inc. v. Does 1–24*, 2014 WL 2967942, at *8 (E.D. Va. 2014), injuries that Vyne has sufficiently alleged, FAC ¶¶ 84–89. HS One's argument appears to be that such damages are limited to situations involving an "interruption of service," *see* Mot. 13, but this is not so, and Vyne *has* alleged an interruption of service, FAC ¶ 89 ("Because of HS One's misconduct targeting Vyne's customers' use of its programs, including the printer driver and, with respect to some Vyne customers, all Vyne software functions, Vyne and its customers have suffered an interruption of service, leaving Vyne functions unusable for those customers."). Courts understand "interruption of service" (which is undefined in the CFAA) to refer to an impairment to the "availability or integrity" of the "data or computer systems" in question. *E.g. Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 283, 252 n.12 (S.D.N.Y. 2000). This is in line with the statutory definition of "damage," which again includes "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(d)(8). As Vyne has alleged, HS One's misconduct resulted in customers losing access to Vyne's software on their computers, leaving them unable to use Vyne's printer driver to transfer their data to Vyne's programs, and in some cases leaving them totally unable to use Vyne products. FAC ¶¶ 69–73, 84–88. This loss of access to Vyne's programs plainly qualifies as an impairment to the "availability or integrity" of Vyne's products on its customers' computer systems. And Vyne has alleged that its reputation has suffered, and customers have chosen to terminate their contracts with Vyne, as a direct result of the interruption to their access to Vyne software. *Id.* ¶¶ 87, 89.

*Second*, statutory losses under the CFAA unquestionably include the "costs incurred as part

12

of the response to a CFAA violation, including the investigation of an offense." *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009). At minimum, HS One's efforts to disable Vyne's programs have forced Vyne to investigate how to protect its software on its customers computers and, in many cases, to expend significant time and effort to restore the functionality of Vyne software for these customers. FAC ¶ 89 (describing efforts undertaken to address HS One's misconduct and approximating costs). This adequately alleges statutory loss under the CFAA. *iParadigms*, 562 F.3d at 645–46 (statutory loss requirement satisfied where plaintiff alleged that "numerous man-hours were spent" investigating and responding to the CFAA violation). HS One cites no support for the distinction it tries to draw between CFAA losses and "self-imposed business costs and competitive injuries." Mot. 14. [8]

### B. Vyne Adequately Alleges that HS One Defamed Vyne.

Under Maryland law, "to establish a *prima facie* case of defamation, a plaintiff must establish that (1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365–66 (D. Md. 2017). A defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* (quoting *Gohari v. Darvish*, 363 Md. 42, 767 A.2d 321, 327 (2001)). A statement is "'false' if it was 'not substantially correct.'" *Id.* (quoting *Piscatelli v. Van Smith*, 424 Md. 294, 35 A.3d 1140, 1147

---

[8] HS One does not dispute that the plaintiff need not own a computer in order to allege loss as a result of damage to that computer—it argues in its own injunction motion that "'any person who suffers damage or loss by reason of a violation' of the CFAA can bring a cause of action." Dkt. 46-1 at 17 n.5 (quoting *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004)).

(2012)).  The "at fault" requirement demands "a showing that, at a minimum, the party making the false statement acted negligently."  *Id.*  The fourth element requires showing actual harm, unless the "statement was defamatory *per se* and was made with actual malice."  *Id.*[9]

Vyne's allegations establish the first two requirements.  HS One has published statements about Vyne in communications to its customers and on its website, FAC ¶¶ 41–51, 63–64 & n.3, which is sufficient under Maryland law.  *See, e.g.*, *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 842–43 (D. Md. 2005) (oral statement by employee to competitor was "publication"); *Russell v. Railey*, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (statement on website was "published").  And Vyne has alleged falsity, stating unequivocally that HS One's comments about Vyne's responsibility for a "security breach," the "security issues" or "risks" its programs create, and its misrepresentations about the quality and capabilities of Vyne's products lack any factual basis and are demonstrably false.  FAC ¶¶ 40–48, 63–64 & n.3, 74, 126–28.  Falsity is therefore properly alleged because the FAC states not only that HS One's statements are false but "sets forth a variety of facts that, when taken in the light most favorable to Plaintiff[], tend to show" that the converse of HS One's statements is true—*i.e.*, that Vyne's products are effective and do not present substantial security risks.  *Russell*, 2012 WL 1190972, at *4.

In addition, Vyne has alleged that HS One's statements are defamatory *per se*, because they attack Vyne's business reputation, including its track record in protecting patient data and its ability to competently and accurately manage its customers' insurance claims.  In Maryland, a "statement which disparages the business reputation of a plaintiff is one of the categories traditionally considered to be defamation *per se*."  *Solomon Found. v. Christian Fin. Res., Inc.*,

---

[9] A statement is defamatory *per se* if it is "one for which the 'words themselves impute the defamatory character,' such that the plaintiff need not plead additional facts demonstrating their defamatory nature."  *Doe*, 274 F. Supp. 3d at 366.

2023 WL 3058321, at *4 (D. Md. Apr. 24, 2023).  Courts have therefore held that comments like HS One's, which disparage a business or employee's capabilities, qualify as defamation *per se*. *See, e.g.*, *id.* (claims that financial institution was a "house of cards," "not stable," "thinly capitalized," and makes "bad loans" were defamatory *per se*); *Lora v. Ledo Pizza Sys., Inc.*, 2017 WL 3189406, at *8 (D. Md. July 27, 2017) (allegation plaintiff was a "bad manager" who stole and "did not care about the store" defamatory *per se*);

Lastly, Vyne has alleged that these statements were made with actual malice, in that they formed part of HS One's strategy to spread false information about Vyne's business and products to induce Vyne's customers to transfer their business to HS One's competing product.  *E.g.*, FAC ¶ 64.  These allegations are more than sufficient at the pleading stage.  *See Russell*, 2012 WL 1190972, at *4 (even "spare" allegations that defendant published statements knowing they were false or with reckless disregard for truth sufficient).[10]

HS One raises two objections to Vyne's defamation claim.  *First*, HS One asserts that Vyne "fails to plead its defamation claim with the requisite specificity, including the 'who, what, where, and when questions.'"  Mot. 15.  The case HS One cites for this supposed failure specifically notes that a plaintiff "*need not* plead detailed allegations as to each one of the who, what, where, and when, in order to state a claim," and held a complaint insufficient when it failed to allege a single specific statement, when it was made, and who said or heard the statement.  *Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 525 (D. Md. 2023) (emphasis added) (quoting *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 568 (D. Md. 2019)).  The

---

[10] Because HS One's statements were defamatory *per se* and published with malice, harm is presumed.  *Doe*, 274 F. Supp. 3d at 365–66.  In any case, Vyne has alleged sufficient information to support its claim that Vyne has lost business and customers as a result of HS One's false statements.  *See* FAC ¶¶ 86–88 & n.8, 130.

FAC is far more detailed: Vyne alleged specific statements, where they were published—including in communications HS One distributed to its customers, and on HS One's own website—the contents of those statements, and a multitude of public and private comments by customers who referenced HS One's misleading statements about Vyne. *See* FAC ¶¶ 47–51 (describing HS One's false advertising campaign), ¶ 64 (referencing specific sales communication sent by HS One employee on August 26, 2025, falsely claiming there was a "Vyne security breach"), ¶ 74.

*Second*, HS One asserts that Vyne's defamation claim fails because Vyne has challenged "classic non-actionable opinion and hyperbole, not verifiable factual assertions." Mot. 15. But HS One's claims are verifiably false—they state that Vyne's products lack capabilities that they have, result in failures at a higher rate than they do, and present security vulnerabilities that are nonexistent. FAC ¶¶ 41–48. Most centrally, HS One has falsely claimed that Vyne's products caused a "security breach." FAC ¶¶ 64, 74. HS One cites a case holding that a humorous stock-tip article in Forbes was not actionable because it contained "no claim to first-hand knowledge of facts" and used a "breezy rather than solemn tone." *Biospherics, Inc. v. Forbes*, 151 F.3d 180, 182 (4th Cir. 1998). HS One's statements warning customers it has "Detected Unauthorized Activity" and that such activity "can pose a security risk to your organization and compromise your Dentrix system and data," FAC ¶ 64, give the clear impression that HS One's claims are "founded on fact," making them actionable. *Samuels v. Tschechtelin*, 135 Md. App. 483, 763 A.2d 209, 245 (2000).

### C.  Vyne Adequately Alleges that HS One Violated the Lanham Act.

HS One's objections to Vyne's Lanham Act claim fail for the same reasons. Among the elements required to state a claim under Section 43(a) of the Lanham Act, *see Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015), HS One challenges only one—whether Vyne has alleged that HS One made "false or misleading" statements "in commercial advertising or promotion." Mot. 17–18. Any argument as to the remaining elements is waived. *See Reynolds*

*v. Pionear, LLC*, 2016 WL 1248866, at *7 n.15 (E.D. Va. Mar. 16, 2016) (court "need not address" new (12)(b)(6) arguments on reply because such timing would deny plaintiff "a full opportunity to respond to the arguments and notice that she should address the issue").

*Falsity*.  To demonstrate that advertising is false within the meaning of the Lanham Act, the plaintiff must show that the defendant "'made a false or misleading description of fact or representation of fact' about his own product or . . . the product of a competitor." *Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 301 (4th Cir. 2017).  A plaintiff "may show either literal falsity—a statement that is 'false on its face'—or that a statement, while literally true, is misleading, in that it is 'likely to mislead and to confuse consumers given the merchandising context.'" *Id.* (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002)).  Regardless, the false statement "must also be one of fact—that is, a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Id.*

The FAC adequately alleges that HS One's claims are literally false.  With respect to the only misleading statements alleged in the FAC that HS One acknowledges in its motion—those concerning the "Vyne Disconnects Imaging & Claims" advertising attached as Exhibit B to the Complaint, *see* Dkt. 1-2—Vyne specifically alleges that the communication misrepresents the functionality of Vyne's products in multiple ways, including by falsely stating that "[i]f you're using Vyne, you're manually attaching images, typing in CDT codes, and crossing your fingers." FAC ¶ 41.  As Vyne alleges in the FAC, "Vyne fully supports integration with imaging," so HS One's claim that "Vyne lacks imaging functionality is simply a false statement of fact." *Id.* at ¶ 44.  Likewise, HS One's statement that customers are "manually . . . typing in CDT codes" is provably false because "[p]roviders are *not* required to *manually* type CDT codes or attach images" when using Vyne's products.  *Id.* at ¶ 45.

HS One asserts that these claims are simply "subjective superiority claims" that are "not actionable under the Lanham Act." Mot. 17. Puffery is not actionable under the Lanham Act—but only where the statements can fairly be considered as such, or when advertising is so exaggerated that "no reasonable person would rely on" it. *Verisign*, 848 F.3d at 302–03. HS One's statements are neither. For example, in *Verisign*, the Fourth Circuit concluded that a Lanham Act claim could not be brought by a domain-name seller against a competitor based on the claim that it is "impossible for you to find the domain name that you want," because "[w]hether an anonymous 'you' can find the domain name of his or her choosing is not something that can be proven true or false." *Id.* at 303; *see also, e.g.*, *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498–99 (5th Cir. 2000) (Papa John's slogan "Better Ingredients. Better Pizza." not actionable because "the phrases 'better ingredients' and 'better pizza' are not subject to quantifiable measures"). HS One appears to believe that any claim of superiority over another product is not actionable under the Lanham Act, but such claims *are* actionable when they contain verifiably false information, as HS One's claims do. *E.g.*, *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 34–36 (1st Cir. 2000) (advertising claims could be literally false for making a superiority claim that was misleading); *Castrol Inc v. Pennzoil Co.*, 987 F.2d 939, 947–48 (3d Cir. 1993) (same). HS One's claims that Vyne requires customers to manually attach images and manually type in CDT codes are verifiable statements of fact about Vyne's product that HS One distributed to mislead customers as to the supposed superiority of its product—and they are false.

Moreover, the complaint challenges other communications made by HS One, and HS One's motion makes no effort to address them. *See* FAC ¶ 99. For example, it alleges that HS One sent repeated communications to Vyne customers warning them of "security risk[s]" or "security issues" presented by their use of Vyne products, and offering them discounts for shifting

18

to HS One in light of a claimed "Vyne security breach." The "necessary implication" of these claims, *Design Res.*, 789 F.3d at 501, is that Vyne's product presents an imminent security risk for HS One's customers, and indeed that Vyne's products have *already* resulted in a breach of security relating to customer data. FAC ¶¶ 34, 47–48, 64, 74.[11] Those statements are "literally false because, on information and belief, HS One has not suffered any security breaches or loss of patient data as a result of Vyne products and because Vyne's printer drivers do not present greater security risks than other methods of transferring patient data from practice management software programs." *Id.* ¶ 48. And again, HS One's motion does not even address those statements.

**Commercial advertising**. HS One also challenges whether Vyne has alleged that HS One made its false statements "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B).[12] To satisfy this requirement, the plaintiff must allege that the statements are "part of an organized campaign to penetrate the marketplace." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002). Vyne's complaint identifies at least two communications that were unquestionably distributed to HS One's customers at large. *See* FAC ¶ 41 (describing HS One's "mass advertising email" entitled "Vyne Disconnects Imaging & Claims"); ¶ 63 n.3 (describing

---

[11] HS One similarly placed, on a webpage discussing HS One's litigation with Vyne, a copy of a communication it sent to dental practices stating that third-party programs were "jeopardizing the security and integrity of your data." *See* Henry Schein One, "Protecting Your Practice, Data, and Dentrix System," *available at* https://perma.cc/WH8M-UJQC (last visited Jan. 16, 2026) (cited at FAC ¶ 64 n.3). Like HS One's other false communications, by placing this warning alongside a description of HS One's lawsuit against Vyne, the necessary impression created is that Vyne's products place the "security and integrity" of patient data at risk—an impression that misrepresents Vyne's track record on safety and the security of its software. *See Design Res.*, 789 F.3d at 502–03 (explaining that "a claim of literal falsity by necessary implication could stand where the contested conclusion necessarily flowed from the ad's statements").

[12] Although the "commercial advertising or promotion" element includes four sub-elements, *Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Med.*, 189 F. Supp. 2d 271, 276 (D. Md. 2001), HS One challenges only whether the statements were "disseminated" to the "purchasing public at large." Mot. 18.

communication on HS One's website that it terms an "Email to Dentrix Customers" that is false and misleading). Although the full scope of HS One's communications with its customers is known only to HS One at this time, Vyne believes and alleges, based on communications with its customers and comments on public fora such as Facebook, *see* FAC ¶¶ 49–50, that the other communications it has identified have been distributed widely and reflect a concerted advertising campaign including false representations regarding Vyne's products. *See* FAC ¶¶ 47–48, ¶ 64.

### D. Vyne Adequately Alleges that HS One Tortiously Interfered with Vyne's Contracts and Business Relationships.

Under Maryland law, the elements of a claim for tortious interference with contractual relations are: (1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional interference with that contract; (4) hindrance to the performance of the contract; and (5) resulting damages to the plaintiff. *ClearOne Advantage, LLC v. Kersen*, 756 F. Supp. 3d 30, 44–45 (D. Md. 2024); *Lake Shore Inv. v. Rite Aid Corp.*, 67 Md. App. 743, 753 (1986). HS One wrongly states that "breach of the contract by the third party" is a necessary element of a tortious-interference-with-contract claim under Maryland law, Mot. 18, but "proof of breach of contract is not an essential element of the tort," because "inducement to breach" is only one "branch of the broader tort of interference with business relationships." *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 889 (4th Cir. 1992). The Maryland Court of Special Appeals has explained that "a person who intentionally and wrongfully hinders contract performance, as by causing a party to cancel the contract, and thereby damages a party to the contract, is liable to the injured party even if there is no breach of the contract." *Lake Shore*, 67 Md. App. at 753.

Separately, Maryland law "recognizes a more general tort of interference with business relations," which requires "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and

loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Elliott Dredges, LLC v. DSC Dredge, LLC*, 280 F. Supp. 3d 724, 731–32 (D. Md. 2017). That claim does not even require existence of a contract.

HS One argues that Vyne's complaint insufficiently states a cause of action for tortious interference because (i) Vyne fails to allege an independently wrongful act, and (ii) the FAC's allegations regarding tortious interference are too "general and conclusory." Both arguments fail.

***Independent wrong.*** HS One makes the stunning argument that the FAC fails to identify "any unlawful, or even wrongful, acts" by HS One that would serve as a predicate for Vyne's tortious interference claim. Mot. 19. But the FAC alleges that in 2025 HS One "openly launched an aggressive campaign to throttle Vyne's business and interfere with Vyne's customer relationships," and that, "[a]s part of that campaign, HS One has disseminated smears about Vyne Trellis, and has sought to block mutual customers from using the technology that allows them to securely transmit to Vyne Trellis the dental records they store in Dentrix." FAC ¶ 4.

*All* of Vyne's claims regarding HS One's unlawful conduct—its continuous violation of the Computer Fraud and Abuse Act, its defamation under Maryland law, its false advertising in violation of the Lanham Act, and its tortious and unfair competition against Vyne by sabotaging Vyne's ability to compete on the merits of its product and by violating the 21st Century Cures Act—are independently wrongful means by which HS One tortiously undermined Vyne's ability to perform its obligations under its contracts with Vyne's customers, those customers' ability to access the Vyne products they contract for, and ultimately to induce Vyne customers to end their relationships with Vyne. FAC ¶¶ 103, 105–09. These allegations are more than sufficient to demonstrate independent wrongfulness to support Vyne's claim for tortious interference. *See, e.g.*, *GSP*, 2021 WL 288172, at *6 (holding that the "additional element" for tortious interference under

Maryland law—"that the interference occur through improper means"—was "satisfied" because "the Court finds Defendant's conduct violated the CFAA"); *Doe*, 274 F. Supp. 3d at 370–71 ("plausible defamation claim" satisfied independent wrong requirement); *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 544 (D. Md. 2014) ("misrepresentation of the quality of Plaintiffs' services by calling Plaintiffs' businesses 'unstable' may qualify as an injurious falsehood or defamation" sufficient to "qualify as the wrongful conduct required for a finding of tortious interference"); *Seguros R. Vasquez, Inc. v. Aguirre*, 2020 WL 3447754, at *4 (D. Md. June 24, 2020) (unfair competition claim demonstrated independent wrong).

HS One appears to assert that the independent wrongs that support a claim for tortious interference are limited to "fraudulent statements or violations of statute." Mot. 19. But intentionally false statements and statutory violations are pleaded here as explained *supra* and *infra*, and as the Supreme Court of Maryland has held, "[w]hat is improper or wrongful conduct is incapable of precise definition," and "whether particular conduct is proper or improper is a factual question to be determined on the basis of all the facts and circumstances," especially because "conduct that is quite subtle, nevertheless, can be improper or wrongful" for purposes of a tortious interference claim. *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 301 (1994).[13]

Nor can HS One rely on fact disputes—still less its own claims and allegations—to defeat Vyne's claims at the 12(b)(6) stage. HS One asserts that the FAC "indicates that HS One had a basis for all the actions Vyne takes issue with—reasonable security concerns based on unauthorized access." Mot. 19. But the FAC alleges that HS One's so-called "security concerns"

---

[13] With respect to non-contractual tortious interference claims, "there is a broader right to interfere," and the standard for wrongfulness is higher. *Macklin*, 334 Md. at 304–05. Vyne's allegations of wrongful conduct nonetheless meet this higher standard, including because HS One's conduct is illegal.

are pretextual and false—as shown by HS One undertaking its campaign to defame Vyne and disable Vyne's software *before* it deployed the telemetry it claims revealed Vyne's "unauthorized access" or "hacking." FAC ¶¶ 38–40. Vyne has also alleged that HS One's concerns are pretextual because it *still uses the same technology in its own products today*. FAC ¶¶ 8, 27, 72. HS One's invitation to accept its version of events instead of Vyne's well-pleaded allegations, or that Vyne supposedly seeks to "shield its unlawful hacking activity through the sword of a tortious interference claim," Mot. 20, is irrelevant and improper under 12(b)(6). *E.g.*, *King*, 825 F.3d at 214; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("'Plausibility' in this context does not imply that the district court should decide whose version to believe[.]").

   ***Specificity of the FAC's allegations.*** HS One next claims that Vyne "does not allege that any customer actually breached or failed to perform a specific contractual obligation because of HS One's conduct." Mot. 21. But as noted already, "proof of breach of contract is not an essential element of the tort," *Trimed*, 977 F.2d at 889, and Vyne need only show that HS One's misconduct hindered the performance of the contract in question.

   Vyne has alleged that "HS One's misconduct leaves Vyne unable to perform the services its customers contract for by subscribing to or purchasing Vyne products," and jeopardizes Vyne's ability to perform its obligation to "'make the Services' that customers contract for 'available to [them] pursuant to'" Vyne's Terms "and to make 'commercially reasonable efforts to ensure availability' of those services." FAC ¶ 105 (quoting FAC Ex. D, §§ 1, 12)). This includes the hundreds of Vyne customers who have had their access to the printer driver disabled or impaired, as well as the dozens who completely lost access to Vyne's software as a result of the virus it distributed. *E.g.*, FAC ¶¶ 72–73. And Vyne alleges that Vyne customers cancelled their contracts with Vyne as a result of HS One's misconduct, even providing specific figures on lost customers

and volumes, including customers who specifically cited HS One's conduct as the reason for termination. FAC ¶¶ 73, 85–86 & n.8. In arguing that Vyne's allegations are insufficient, HS One cites a case in which the tortious-interference claim failed *at trial* for inability to identify "any specific lost contract or loss of business" tied to the tortious interference. *Mixter v. Farmer*, 215 Md. App. 536, 549 (2013). Vyne's complaint already alleges more.[14]

### E. Vyne Adequately Alleges that HS One Unfairly Competed Against Vyne.

Under Maryland law, unfair competition "is defined, generally, as 'damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort,' and must be evaluated case-by-case." *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205 (4th Cir. 2025) (quoting *Balt. Bedding Corp. v. Moses*, 182 Md. 229, 236–37 (1943)). The Supreme Court of Maryland has "preserved a high degree of flexibility in the law of unfair competition." *Id.* (quoting *Delmarva Sash & Door Co. of Md. v. Andersen Windows, Inc.*, 218 F. Supp. 2d 729, 733 (D. Md. 2002)). "Maryland 'has never required *an unlawful act* as an essential element of an unfair competition claim.'" *Id.* at 226. Unfair-competition law is animated by "the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception." *Balt. Bedding Corp. v. Moses*, 182 Md. 229 (1943).

### i. Vyne adequately alleges unfair competition.

HS One's campaign of falsehoods, its efforts to block Vyne's customers from transferring data from Dentrix using the printer driver Vyne has used for over 20 years without incident, and

---

[14] The same is true with respect to Vyne's prospective business relations. Vyne has identified at least 100 customers that "it was in communication with regarding purchasing or upgrading their use of Vyne services who specifically indicated that HS One's misrepresentations concerning Vyne or its efforts to impede Vyne functionality were the reasons they ultimately chose not to contract with Vyne," including three specific examples. FAC ¶ 87. As Vyne has explained, these customers contact Vyne "[i]n the ordinary course of business" with intent to "purchase Vyne products and services." *Id.*

its hijacking of customer computers all qualify as unfair competition.  FAC ¶¶ 119–20.

As the Restatement of Unfair Competition explains, an act is likely to be "judged unfair" if it "substantially interferes with the ability of others to compete on the merits of their products." Restatement (Third) of Unfair Competition, § 1, cmt. (g) (ALI 1995); *see also Paccar Inc. v. Elliot Wilson Cap. Trucks LLC*, 905 F. Supp. 2d 675, 691 (D. Md. 2012) (adopting this standard).  The Fourth Circuit has similarly made clear that a company engages in unfair competition when it uses deceitful or underhanded tactics to compete—even short of any violation of the law.  *See Trimed*, 977 F.2d at 891 (approving jury instructions stating that unfair competition could be premised on actions "such as interfering with [plaintiff's] contract with its customers, making disparaging remarks about [plaintiff] to [plaintiff's] customers, restricting product shipments, or selected price cutting, if any of those acts were taken to exclude [plaintiffs] from the marketplace").  Here, the FAC alleges that HS One has tried to prohibit Vyne's current and prospective customers from selecting Vyne based on the merits of its products—misrepresenting Vyne's products as a security risk, interfering with how Vyne's customers use those products, and ultimately directly sabotaging Vyne's software on those customers' computers.  FAC ¶¶ 36–48, 64, 68–74.  Any of these acts would suffice, but together the tortiousness is unmistakable.

But even setting aside "common honesty and fairness," *Trimed*, 977 F.2d at 891, HS One's conduct is unfair competition because it violates the law.  As Vyne has explained, HS One's methods of competing with Vyne violate the Computer Fraud and Abuse Act, are defamation and false advertising under the Lanham Act, and—as explained below and in Vyne's motion for a preliminary injunction, *see* Dkt. 6-1 at 16–18, Dkt. 40 at 6–10—violate the 21st Century Cures Act.  *Paccar*, 905 F. Supp. 2d at 690 (unfair competition adequately stated based on allegations of "disparaging remarks to customers made by representatives of the [defendant]" and claims of

"tortiously interfering with . . .contract"); *Phreesia, Inc. v. Certify Glob., Inc.*, 2022 WL 17342067, at *6–7 (D. Md. Nov. 29, 2022) (allegation of "deceiving [customer] about [plaintiff's] competing product" stated claim for unfair competition given "broad scope of the tort"); *Real Time*, 141 F.4th at 228 (plaintiff may "use a violation of a federal statute as evidence" of unfair competition).

### ii.    HS One's self-serving "security" claims are not a basis for dismissal.

HS One seeks dismissal of Vyne's unfair competition claims on the ground that HS One's actions are simply "careful security hardening" that "constitutes a legitimate business purpose," and that HS One is not required "to compromise its own security protocols for Vyne's benefit." Mot. 23.  Again, HS One tries to introduce a dispute of fact about an affirmative defense to defeat Vyne's claims on the basis of HS One's allegations of "security upgrades to protect its system." Mot. 24.  That ignores the FAC.  And HS One's misleading statements to its customers, its interference with their computer systems, and its efforts to block Vyne's use of the same printer-driver technology it continues to use are not legitimate acts of "security hardening," nor do Vyne's products require HS One to "compromise its security protocols."  *See supra* 22–23.  And as Vyne alleges in the FAC (¶¶ 52–67), HS One never extended a legitimate offer to Vyne to join its API Exchange, belying HS One's argument that "Vyne chose not to work with HS One."  Mot. 24.

Tellingly, HS One relies on a cases that decided *at summary judgment* that a plaintiff's unfair-competition claim could not proceed, after determining that "the evidence establishes the existence of valid business reasons" for the disputed conduct.  *M-Edge Accessories LLC v. Amazon.com Inc.*, 2015 WL 403164, at *5 (D. Md. Jan. 29, 2015); *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 223 F. Supp. 2d 718, 738–39 (D. Md. 2002) (same).  HS One insists these cases are "instructive," Mot. 23, but HS One's competing factual narrative—a narrative Vyne has specifically alleged is pretextual, FAC ¶¶ 8, 27, 72—is not an answer to Vyne's claims at the pleading stage.  It is "jury" that "will have to decide" whether HS One's "alleged conduct

constitutes an actionable 'unfair method.'" *Paccar*, 905 F. Supp. 2d at 690.[15]

### iii.    Vyne also adequately alleges breach of the Cures Act.

HS One separately seeks to avoid Vyne's unfair competition claim by disputing whether it is subject to the Cures Act. Mot. 24–28. To be clear, the unfair competition claim *does not* depend on whether HS One has violated the Cures Act, because HS One has also acted dishonestly by targeting Vyne's customers *and* it has violated several other laws, including the Computer Fraud and Abuse Act, the Lanham Act, and Maryland tort law. FAC ¶¶ 119–20 (alleging several means by which HS One unfairly competed). Regardless, HS One's arguments fail.

***Applicability of the Cures Act.***    HS One readily admits that the Cures Act "governs . . . developers of certified IT," and that HS One *was* a developer of certified IT at least until June 2, 2025, when it withdrew its IT certification on the same date that Vyne first alerted it to the potential that its misconduct could violate the Cures Act. Mot. 24–25; FAC ¶ 77. There is therefore no dispute that HS One was subject to the Cures Act as a developer of certified IT through early June 2025—and Vyne has challenged aspects of HS One's misconduct from that period, including its effort in April 2025 to begin blocking Vyne's customers' printer driver. FAC ¶ 36.[16]

Even after HS One's decertification, however, Vyne has alleged that HS One remains subject to the statute and regulations because it is a "health information network/health information exchange" ("HIN/HIE"). FAC ¶¶ 76, 78, 121. An HIN/HIE is defined as:

---

[15] HS One also cites several Supreme Court antitrust decisions to argue HS One has no duty to set favorable terms for Vyne. Mot. 23. Vyne has not alleged antitrust violations.

[16] HS One cites no authority for the proposition that the IT certification is program-specific or that it makes any difference which of the Dentrix sub-products the certification related to. Mot. 25. The regulations prohibit any information blocking by "[a] health IT developer of certified health IT" without limitation relating to the particular IT in question, 45 C.F.R. § 171.103, and a health IT developer is required to give specific assurances to the Secretary of Health that it "will not take *any action* that constitutes information blocking," 45 C.F.R. § 170.402(a)(1).

an individual or entity that determines, controls, or has discretion to administer any requirement, policy, or agreement that permits, enables, or requires the use of any technology or services for access, exchange, or use of electronic health information:

>    (1) Among more than two unaffiliated individuals or entities (other than the individual or entity to which this definition might apply) that are enabled to exchange with each other; and
>    (2) That is for treatment, payment, or health care operations purpose . . . .

45 C.F.R. § 171.102. HS One qualifies at least "because it has created and administers the HS One API Exchange, which facilitates the real-time exchange of patient and insurance payment electronic health information between thousands of dental practices and over 140 third-party vendors which are part of the API Exchange program using the Dentrix platform." FAC ¶ 78.

HS One argues that "Vyne does not allege that HS One facilitates information that flows among more than two parties" the scope of the regulation.[17] Mot. 26. But Vyne alleges exactly that; the FAC states that the API Exchange "enables HS One customers to exchange patient data with dozens of different HS One-approved vendors, and each of these vendors to interact with thousands of Dentrix users." FAC ¶ 78. The allegations include information that HS One posts on its own website, including that the API Exchange "*allow[s] multiple clients or services to interact with the system simultaneously.*" *Id.* & n.5 (quotation omitted) (also describing HS One's advertising that Dentrix enables a customer to use "multiple third-party programs that integrate through the HS One API with Dentrix to facilitate the exchange of patient health information, including to analyze patient x-rays, formulate treatment plans, and schedule appointments"). That is more than enough at the pleading stage. HS One contends the FAC's allegations lack "technical

---

[17] HS One appears to argue that the HIN/HIE must allow exchange by customers among customers and by vendors among vendors, *see* Mot. 26–27, but there is no basis for this in the regulation, which speaks broadly of exchange of health data "[a]mong more than two unaffiliated individuals or entities," 45 C.F.R. § 171.102. The agency explained that it adopted this definition based on the belief "that the Cures Act goals of supporting greater interoperability, access, exchange, and use of EHI are best advanced by a functional definition without specific exclusions." 85 Fed. Reg. 25642-01, 25803 (2020).

nuance" or are "gross mischaracterizations" of "how HS One's technology works" (even though they come from HS One's own website), Mot. 27, but those contentions do not provide a basis to reject the FAC's allegations or dismiss claims.

   ***Security & manner exceptions.***  HS One next claims there was no violation of the Cures Act because Vyne insufficiently alleged that the security and manner exceptions do not apply, Mot. 27–28.  This argument fails because it will be *HS One*, not Vyne, that carries the burden to demonstrate that an exception to the Cures Act applies; the Fourth Circuit has made clear that this is an affirmative defense.  *Real Time*, 141 F.4th at 231 (plaintiff need only show that defendant "engaged in facial information blocking," then "burden shifts to [defendant] to show that its actions were *not* information blocking because a regulatory exception applies").  HS One does not even dispute that its conduct qualifies as facial information blocking.  *See* Mot. 24–29; FAC ¶¶ 79–83.

   Regardless, Vyne's allegations more than suffice to show that the exceptions do not apply.  The security exception requires that a security measure be "tailored to the specific security risk being addressed" and "implemented in a consistent and non-discriminatory manner."  45 C.F.R. § 171.203(b)–(c); *Real Time*, 141 F.4th at 236.  HS One does not explain how an update that searched its customers' computers to disable any and all Vyne services by name, including services that have nothing to do with Dentrix, was somehow "tailored" to security risks or "non-discriminatory."  FAC ¶ 80.  And as for the printer driver, Vyne has alleged that HS One has never experienced a security breach as a result of the printer driver and has no "basis to believe that such a breach is likely."  *Id.*  HS One's own continued use of a similar printer driver, *id.*, makes clear on its own that HS One's security measures are not "consistent and non-discriminatory."

   The same is true of the manner exception, since HS One is capable of delivering to mutual customers the necessary data through the same printer driver Vyne and its customers have used

without incident for years (given the absence of any legitimate security concern related to the driver), FAC ¶ 81, or of enabling its customers to transmit the same data through HS One's API, as there is nothing inherent to claims data that makes it unfit to transmit by the API, *id.* ¶¶ 81–82.

### F.  Vyne's Declaratory Judgment Claim Is Adequately Stated.

The Declaratory Judgment Act serves to "settle legal rights and remove uncertainty and insecurity from legal relationships," and it "should be liberally construed to accomplish th[at] purpose." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937); *United Cap. Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998) ("The declaratory judgment action is designed to allay exactly the sort of uncertainty that flows from the threat that ambiguous [] rights may be asserted."). Vyne has a right to seek a declaration stating that Vyne's business methods are not unlawful under the CFAA or any of the "multiple related common law and statutory claims" HS One asserted it has against Vyne. FAC ¶ 65 (describing allegations in pre-litigation demand letter); *see, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1195–1202 & n.21 (9th Cir. 2022).

HS does not dispute any of the elements of a declaratory-judgment claim, and it is plain that the FAC "alleges an actual controversy between the parties" relating to Vyne's integration with Dentrix, as is required. *See Volvo Equip. N. Am. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004); FAC ¶¶ 131–36. Instead, HS One wrongly asserts (again without authority) that Vyne's claim should be dismissed because it seeks to "short circuit" HS One's counterclaims. Mot. 30. But a declaratory judgment claim is proper even where it overlaps with counterclaims in the same litigation, because it can "serve the purpose of enabling the full rights and obligations of the parties to be conclusively articulated so that full relief can be awarded to the injured party." *U.S. Home Corp. v. Settlers Crossing, LLC*, 2010 WL 958034, at *9–11 (D. Md. Mar. 11, 2010).

## CONCLUSION

HS One's motion should be denied.

Respectfully submitted,

*/s/ Vincent Levy*

Michael Shuster (pro hac vice)
Vincent Levy (pro hac vice)
Daniel Fahrenthold (pro hac vice)
Torrell Mills (pro hac vice)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com

K. Nichole Nesbitt (Bar No. 26137)
Derek M. Stikeleather (Bar No. 27815)
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4026
knn@gdldlaw.com
dstikeleather@gdldlaw.com

*Attorneys for Plaintiff*
*National Electronic Attachment, Inc. d/b/a Vyne Dental*