# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A
VYNE DENTAL,

                  *Plaintiff*,

      -against-

HENRY SCHEIN ONE, LLC,

                  *Defendant*.

Case No. 1:25-cv-03246

**REPLY IN SUPPORT OF VYNE'S MOTION TO DISMISS
COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.     HS ONE FEDERAL COUNTERCLAIMS MUST BE DISMISSED ......................... 1

    A.    Computer Fraud and Abuse Act ("CFAA") ......................................... 1

    B.    Digital Millennium Copyright Act ("DMCA") ..................................... 4

    C.    Electronic Communications Privacy Act ("ECPA") ............................. 7

    D.    Lanham Act ............................................................................. 8

II.    HS ONE'S UTAH STATUTORY COUNTERCLAIMS MUST BE DISMISSED .. 10

    A.    Utah Unfair Competition Act (and Common-Law Unfair Competition) ........... 10

    B.    Utah Truth in Advertising; Deceptive Trade Practices Act ("UTIAA") ............ 12

III.    HS ONE'S COMMON LAW COUNTERCLAIMS MUST BE DISMISSED ......... 13

    A.    Tortious Interference ................................................................. 13

    B.    Trespass to Chattels ................................................................. 14

    C.    Unjust Enrichment ................................................................... 14

    D.    Business Libel / Common-Law Defamation ..................................... 15

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Am. Muscle Docks & Fabrication, LLC v. Merco, Inc.*,
    187 F. Supp. 3d 694 (N.D.W Va. 2016)..................................................................... 9

*C.R. England v. Swift Transp. Co.*,
    437 P.3d 343 (Utah 2019) ........................................................................................ 13

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1193 (Fed. Cir. 2004) ............... 6

*Chambers v. Amazon.com Inc.*,
    632 F. App'x 742 (4th Cir. 2015).......................................................................... 5, 6

*Concrete Prods. Co. v. Salt Lake Cnty.*,
    734 P.2d 910 (Utah 1987) ........................................................................................ 15

*Connolly v. Lanham*,
    685 F. Supp. 3d 312 (D. Md. 2023) ....................................................................... 10

*CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*,
    430 F. Supp. 3d 1247 (D. Utah 2019) ................................................................... 13

*Design Res., Inc. v. Leather Indus. of Am.*,
    789 F.3d 495 (4th Cir. 2015).................................................................................... 9

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024).................................................................. 7, 8

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011).................................................................................... 4

*EF Cultural Travel BV v. Explorica, Inc.*,
    274 F.3d 577 (1st Cir. 2001) .................................................................................... 4

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016).................................................................................. 3

*Glob. Pol'y Partners, LLC v. Yessin*,
    686 F. Supp. 2d 631 (E.D. Va. 2009) ..................................................................... 7

*Ground Zero Museum Workshop v. Wilson*,
    813 F. Supp. 2d 678 (D. Md. 2011) ......................................................................... 6

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015)..................................................................................... 7

*In re Melilli*,
    639 B.R. 635 (Bankr. D. Utah 2022)...................................................................... 14

*Jeffs v. Stubbs*,
    970 P.2d 1234 (Utah 1998) ..................................................................................... 14

*Keisel v. Westbrook*,
    542 P.3d 536 (Utah 2023) ....................................................................................... 15

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) ........................................................................... 2

*Mathews v. McCown*,
  575 P.3d 1114 (Utah 2025) ............................................................................... 15

*Musselman v. Keele*,
  559 P.3d 64 (Utah Ct. App. 2024) .................................................................... 13

*Nassi v. Hatsis*,
  525 P.3d 117 (Utah Ct. App. 2023) ................................................................... 14

*Nunes v. Rushton*,
  299 F. Supp. 3d 1216 (D. Utah 2018) ............................................................... 15

*Oce N. Am., Inc. v. MCS Servs., Inc.*,
  748 F. Supp. 2d 481 (D. Md. 2010) .................................................................... 2

*Partnerco Holdings, LLC v. Nutonic Corp.*,
  2024 WL 1307152 (D. Utah Mar. 26, 2024) ...................................................... 12

*Philips Med. Sys. Nederland B.V. v. TEC Holdings, Inc.*,
  2023 WL 2064201 (W.D.N.C. Feb. 16, 2023) .................................................... 6

*Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*,
  203 F. Supp. 3d 221 (D. Puerto Rico 2016) ....................................................... 4

*Phreesia, Inc. v. Certify Global, Inc.*,
  2022 WL 911207 (D. Md. Mar. 29, 2022) .......................................................... 3

*Power Block Coin, L.L.C. v. Song*,
  705 F. Supp. 3d 1293 (D. Utah 2023) ............................................................... 14

*Radiance Found., Inc. v. NAACP*,
  786 F.3d 316 (4th Cir. 2015) ............................................................................ 10

*Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc.*,
  144 P.3d 1079 (Utah 2006) ......................................................................... 12, 13

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
  902 F.2d 222 (3d Cir. 1990) ............................................................................... 9

*Scotts Co. v. United Indus. Corp.*,
  315 F.3d 264 (4th Cir. 2002) .............................................................................. 9

*SecureInfo Corp. v. Telos Corp.*,
  387 F. Supp. 2d 593 (E.D. Va. 2005) ................................................................. 2

*Sinclair Broad. Grp., Inc. v. Colour Basis, LLC*,
  2016 WL 3541204 (D. Md. June 29, 2016) ........................................................ 6

*State Analysis, Inc. v. Am. Fin. Servs. Ass'n*,
  621 F. Supp. 2d 309 (E.D. Va. 2009) ................................................................. 3

*T.D. v. Piedmont Healthcare, Inc.*,
  2024 WL 5284883 (N.D. Ga. Dec. 10, 2024) ...................................................... 8

*Theofel v. Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2004) .................................................................. 8

*Total Quality Sys., Inc. v. Universal Synaptics Corp.*,
  2024 WL 2391163 (D. Utah May 23, 2024) ...................................... 11

*U.S. v. Burke*,
  801 F. Supp. 3d 1273 (M.D. Fla. 2025) ............................................ 7

*Van Buren v. United States*,
  593 U.S. 374 (2021) ...................................................................... 3, 4

*Vendr, Inc. v. Tropic Techs., Inc.*,
  2023 WL 8789297 (D. Utah Dec. 19, 2023) ................................... 12

*WEC Carolina Energy Sols. LLC v. Miller*,
  687 F.3d 199 (4th Cir. 2012) ........................................................... 1

*West v. Thomson Newspapers*,
  872 P.2d 999 (Utah 1994) .............................................................. 15

*Whitaker v. W. Essentials, LLC*,
  2016 WL 3435185 (D. Utah June 17, 2016) .................................... 12

**Statutes**

17 U.S.C. § 1201(a) ............................................................................. 5

Utah Code Ann. § 13-5a-102(4)(ii) ................................................... 11

# INTRODUCTION

HS One's response to Vyne's motion to dismiss the counterclaims, Dkt. 81 ("Mot.") is heavy on assumption and light on plausible allegations. As in the counterclaims, Dkt. 45 ("Counterclaims"), the response relies on conclusory legal assertions of "hacking," "interception," and "circumvention," and rhetoric like "man in the middle," "reverse engineering," and "encryption key exfiltration," but there are no plausible allegations to back up those labels.

Fundamentally, HS One's counterclaims rely on the remarkable proposition that the owner of a computer cedes control over his or her computer to a software publisher simply by installing it, and that a competing publisher is powerless to help the computer owner patch things up in response to the other publisher's exercise of control. This breathtaking theory finds no support in the text of the CFAA, the DMCA, the Lanham Act, the ECPA, or Utah common law. HS One cites no authority adopting it, because none exists. If HS One's theory were accepted, any software vendor could manufacture liability by objecting to how customers use their own systems. HS One's counterclaims fail as a matter of law and should be dismissed.

# ARGUMENT

## I. HS ONE FEDERAL COUNTERCLAIMS FAIL

### A. Computer Fraud and Abuse Act ("CFAA")

HS One seeks to defend its CFAA counterclaim on the basis that liability does not require that it *own* the dental customers' computers that Vyne allegedly accessed. Opp'n at 5. That misses the point. The dispositive element under all the CFAA provisions that HS One invokes is *authorization*—specifically, who has the authority to grant permission for a user to access a computer, and whether the access was authorized. *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012) (defining "authorization" as a "formal warrant, or sanction"); *LVRC*

*Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009) (defining "authorization" as "permission or power granted by an authority."). And as courts in this Circuit have made clear, access is "authorized" when permission is granted by the party with authority over the computer, not a software developer. *See Oce N. Am., Inc. v. MCS Servs., Inc.,* 748 F. Supp. 2d 481, 485–88 (D. Md. 2010) (allegation by software developer that "its software was accessed on laptops and printers" failed to state a CFAA claim without allegation "that the owners of the laptops and printers, or other person with the requisite authority, denied access such that Defendants' access was unauthorized"); *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 609 (E.D. Va. 2005) (dismissing CFAA claims where a licensee was permitted to access a server).

Here, HS One never plausibly alleges that Vyne accessed protected computers without permission. HS One does not allege that HS One—a software developer and publisher—controls access to the dentists' computers that were allegedly accessed by Vyne, and indeed HS One cannot plausibly allege this, because the dentists clearly are the ones who lawfully own, control, and authorize access to their own computer systems. HS One also does not allege facts that would establish that Vyne accessed dental customers' computers "without [dentists'] authorization." Nor would that be plausible: the dentists are the ones who installed Vyne's software and who wanted Vyne's software to interoperate with HS One's software. Counterclaims ¶¶ 33, 35 (acknowledging HS One's actions disrupt "[c]ustomers wanting to use Vyne").

Unable to allege lack of authorization from the dentists or anyone with authority over the computer systems, HS One asserts that customers categorically lack the power to authorize access to their own devices, apparently on the basis that software developers alone supposedly have that authority if it pertains to their software. Opp'n 6–7. But the CFAA does not grant software vendors exclusive authority, on penalty of potential civil liability and criminal prosecution, to bar

access to customer-owned systems. That breathtaking proposition would impose CFAA liability not just on other software publishers (like Vyne here) but on the computer owners themselves (here, the dentists). There is no support in the CFAA for this proposition, and the Supreme Court has categorically rejected the imposition of liability based on "agreement to follow specified terms of service" attached to use of a computer. *Van Buren v. United States*, 593 U.S. 374, 394 (2021).

HS One's reliance on *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016), only proves Vyne's point. *Power Ventures* involved an express revocation and deliberate circumvention of technical barriers imposed by Facebook, on its social media platform, to block Power, as a competitor and third-party company, from disseminating messages in its own commercial interest. *Id.* at 1067–69. *Power Ventures* thus focused on computers that *belonged to Facebook. Id.* at 1066 (considering "whether Power accessed *Facebook's* computers knowing it was not authorized to do so" (emphasis added)). Facebook's users had given Power permission to use Facebook to distribute content, but after Facebook withdrew that permission, Power continued to access Facebook's computers without Facebook's authorization. *Id.* at 1067–69.

The same is true of *Phreesia, Inc. v. Certify Global, Inc.*, 2022 WL 911207 (D. Md. Mar. 29, 2022), which HS One cites to argue that customer contracts can negate authorization. Opp'n at 7–8. *Phreesia* turned on allegations absent here: that defendants accessed confidential information hosted on plaintiff's own secured servers and did so in direct violation of an agreement that expressly prohibited clients from granting third-party access to that system. 2022 WL 911207, at *3–6. The court's finding of unauthorized access rested on alleged intrusion into plaintiff's infrastructure, not access to customer-owned machines to which the software publisher objected. *Id.* at *5 (distinguishing decisions that "concerned information stored on a private server"); *see also State Analysis, Inc. v. Am. Fin. Servs. Ass'n*, 621 F. Supp. 2d 309, 315–16 (E.D. Va. 2009)

(cited at Opp'n 8; defendant "accessed [plaintiff's] website," not third-party device).[1]

These authorities have nothing to do with HS One's allegations. HS One sent a cease-and-desist letter to Vyne in August 2025, Counterclaims ¶ 15, but it does not allege that HS One was accessing HS One computers. To the contrary, it alleges that the "software database and software systems [were] *located on customers' premises*." *Id.* at ¶ 6 (emphasis added). HS One unilaterally introduced technical restrictions to disrupt workflows on dentists' computers. Vyne restored the functionality that customers wanted on their own devices. HS One does not allege plausibly (or even in conclusory fashion) that this was done without the dentists' authorization.

HS One tries to pivot to a new theory of CFAA liability in briefing, asking the Court to "infer from the Counterclaims that Vyne also accesses HS One's cloud infrastructure." Opp'n 6. But the Counterclaims contain no such allegation—they allege the opposite, ¶ 6. HS One elected not to amend its counterclaims in response to Vyne's motion to dismiss. HS One offers no basis to infer that Vyne accessed HS One's servers, proprietary cloud infrastructure, or any system dentists themselves were forbidden to access—let alone when that access occurred, by what means, what damage occurred to those devices, and what losses HS One suffered as a result. HS One cannot use speculation to substitute for factual allegations as to *every element*. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

## B. Digital Millennium Copyright Act ("DMCA")

HS One's DMCA claim also fails. Although HS One labels various aspects of Dentrix as "technological measures," it never plausibly alleges circumvention of a measure that controls

---

[1] HS One relies heavily on *Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 236–37 (D. Puerto Rico 2016), to endorse its baseless view of CFAA "authorization." Opp'n 7. *Philips* stated that it was bound by the First Circuit's decision in *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001)— a decision specifically repudiated by the Supreme Court in *Van Buren*. 593 U.S. at 381 n.2. And *Philip* directly conflicts with *Van Buren*'s rejection of CFAA liability based on "*any* circumstance-based limit appearing *anywhere*— in the United States Code, a state statute, a private agreement, or anywhere else." *Id.* at 383.

access to copyrighted expression, as the statute requires. 17 U.S.C. § 1201(a)(1)(A).

*First*, even assuming Dentrix's source code is copyrightable, HS One does not allege any form of infringement, as Fourth Circuit law requires. *Chambers v. Amazon.com Inc.*, 632 F. App'x 742, 744 (4th Cir. 2015) ("A copyright owner alleging a violation of [the DMCA] must prove that the circumvention of the technological measure either infringes or facilitates infringing a right protected by the Copyright Act."). HS One asserts that Dentrix, as a software system, is copyrightable. Opp'n 11. That may or may not be true, but it is nowhere alleged—and, more to the point, this still leaves the gaping hole that HS One fails to allege that the claimed circumvention was done to "infringe[] or facilitates infringing" HS One's copyrights. *Chambers*, 632 F. App'x at 744. This missing allegation alone is fatal to the DMCA claim.[2]

*Second*, HS One fails to allege or explain how the alleged "technological measures" are the kind enforceable by the DMCA. The measures must control access to and protect copyrights. HS One does not allege this. It claims Vyne decrypted configuration files (such as *dtx.config*), modified encryption settings, generated administrator credentials, adjusted DLL runtime flags, and bypassed update-integrity checks. Counterclaims ¶¶ 39, 90–91. And it asserts in conclusory fashion that these measures "control access" to its "software and related components," *id.* ¶¶ 87–89. But even taken as true, these allegations describe mechanisms that regulate configuration and access to customer-facing Dentrix installations within customer-controlled environments. They do not describe measures that, "in the ordinary course of [their] operation," control access to *copyrighted work*, as is required. 17 U.S.C. § 1201(a)(2)(B); *Chamberlain Grp., Inc. v. Skylink*

---

[2] HS One tries to distinguish *Chambers* on the facts, asserting that the plaintiff in *Chambers* "brought a claim for infringement—not for circumvention." Opp'n 10, 12 nn. 10, 12. *Chambers* concerned both infringement *and* circumvention claims and, as here, the circumvention claim failed because the plaintiff failed to allege the required elements under the DMCA. 632 F. App'x at 744. That HS One has failed to plead different facts than those that were missing in *Chambers* does not discount the Fourth Circuit's recitation of the necessary elements of a DMCA claim.

*Techs., Inc.*, 381 F.3d 1178, 1193 (Fed. Cir. 2004) (rejecting view that the DMCA "overrode all pre-existing consumer expectations of products containing copyrighted embedded software" and "that Congress empowered manufacturers to prohibit customers from using embedded software products in conjunction with competing products"). Indeed, "merely alleging that a defendant 'accessed' a copyrighted work that is protected by a technological measure is not enough to state a claim for a violation of the DMCA." *Sinclair Broad. Grp., Inc. v. Colour Basis, LLC*, 2016 WL 3541204, at *4 (D. Md. June 29, 2016).

*Third*, HS One does not plausibly allege circumvention. HS One alleges that Vyne used credentials and access mechanisms that it provides to its own customers. Counterclaims ¶ 7. Mere use of an access mechanism made available by the copyright holder does not constitute DMCA circumvention. "[U]sing a username/password combination as intended," "albeit without authorization," "does not constitute circumvention under the DMCA." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 691 (D. Md. 2011).

*Fourth*, HS One's bare allegations of "reverse engineering"—which this Court need not credit—do not cure these defects. HS One cites cases holding that reverse engineering can violate the DMCA when it bypasses a qualifying technological measure protecting copyrighted expression. Opp'n 12. But those cases presuppose that Vyne has admitted to using software specifically developed to bypass HS One's security. *See Philips Med. Sys. Nederland B.V. v. TEC Holdings, Inc.*, 2023 WL 2064201, at *13 (W.D.N.C. Feb. 16, 2023). Here, HS One does not plausibly allege that Vyne reverse engineered Dentrix to gain access to protected source code, copy copyrighted expression, or infringe. Instead, HS One alleges that Vyne used customer passwords to restore customer functionality disrupted by HS One. Those acts do not circumvent a qualifying access-control measure tied to a copyright. *Chambers*, 632 F. App'x at 744.

6

## C. Electronic Communications Privacy Act ("ECPA")

HS One's opposition does not cure its ECPA theory. HS One alleges that Vyne "re-route[d] patient claim data to Vyne's server," *i.e.*, that Vyne caused data to be sent from local Dentrix software on practice computers to Vyne, and that this communication "is not authorized *by HSOne*." Counterclaims ¶¶ 47, 50. Yet again, HS One tries to put itself in control of its customers' computers, claiming that its customers sending their own data from their own machines can violate federal criminal law based on what it—the software developer—chooses to authorize. But this theory is not an ECPA violation because it does not state an "interception." HS One alleges that dentists sent communications to Vyne that *HS One* wanted to receive, not that the authors of the communications (dental practices) intended to send those communications to HS One. HS One's allegations therefore fail because it is an "'essential element of the offense' that the acquiror" of the communication in question "not be a 'party to the communication,'" a rule that flows naturally from the "ordinary meaning of 'intercept,'" which requires a third-party intervention in the communication. *U.S. v. Burke*, 801 F. Supp. 3d 1273, 1287–88 (M.D. Fla. 2025); *Glob. Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) (noting that the ECPA "give[s] 'intercept' its common meaning"); *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 140–43 (3d Cir. 2015) (parsing ECPA allegations to "identify, what, exactly, are the transmissions at issue" and rejecting claim because "defendants were the intended recipients" and plaintiffs' allegations otherwise were "implausible").

Even if HS One had pleaded an interception, consent from the dental practices independently forecloses liability. HS One's own allegations establish that dental practices authorized Vyne to receive their claims data, given that they install and use Vyne's software. Counterclaims ¶¶ 47, 50; *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (no

ECPA liability where interception "only occurs because the health care providers choose to install" the technology). So any interception by Vyne (if it occurred) was consented to by the customers. HS One argues that the dentists' conduct (and thus their consent) was "uninformed" or "exceeded." Opp'n 14–15. But the Counterclaims say only that "Vyne misleads HSOne's customers about what it is doing and intentionally misconstrues its conduct as authorized and benign." Counterclaims ¶ 50. HS One's claims that Vyne lied to customers to obtain false consent are subject to Rule 9(b)'s heightened pleading standard. *Doe I*, 741 F. Supp. 3d at 842. The "allegations of [Vyne's] deception are so vague that they even fail under Rule 8," *id.*, because HS One never alleges what Vyne said to its customers about so-called interception, when, or how it was misleading—and HS One never explains how minute technical details about how Vyne supposedly re-enabled customers to send their data to Vyne would somehow vitiate their consent to send that data to Vyne. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2004) (alleged deceit must go to core of circumstances of interception because "[n]ot all deceit vitiates consent").[3]

### D. Lanham Act

HS One's Lanham Act counterclaim fails because it does not plausibly allege that Vyne made a false or misleading statement of fact in commercial advertising that materially deceived consumers. HS One targets Vyne's descriptions of its own services, criticism of HS One's security restrictions, and competing views about interoperability and data access. *See* Counterclaims ¶¶ 57–67, 131–38. Unlike HS One's statement that Vyne caused security breaches (which is a verifiably false statement of fact), the Vyne statements that HS One targets reflect Vyne's opinions

---

[3] HS One's arguments about the crime-tort carveout, Opp'n 14–15, fail because HS One does not allege that Vyne received patients' claims for the specific purpose of committing any tort or offense, or anything other than providing the services Vyne's customers contract for—the assertion that Vyne intercepted communications and also, separately, committed other unlawful acts is not enough because it does not connect the communications themselves to a crime or tort. *See T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 5284883, at *4 (N.D. Ga. Dec. 10, 2024).

about technical-design choices and legal obligations, not concrete, verifiable misrepresentations of fact about products or services within the meaning of the Lanham Act. *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 502 (4th Cir. 2015).

HS One claims that Vyne's statements were misleading because they concealed technical aspects of how Vyne's products interface with Dentrix, Opp'n 15, but the Lanham Act does not impose an affirmative duty to disclose internal engineering details, implementation choices, or technical architecture. Omissions are actionable only where they make a specific factual representation false or misleading when viewed in context. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 274 (4th Cir. 2002). HS One fails to identify any specific assertions that would turn on whether Vyne uses, for example, "write-back." Opp'n 15. For the same reasons, HS One does not plausibly allege material deception or causation because it offers only unsupported allegations that technical information about Vyne is material or influenced purchasing decisions. *See* Counterclaims ¶ 57 (bare assertion that Vyne's "false statements have caused some HSOne customers to reach out"); *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 227 (3d Cir. 1990) (no deception when plaintiff "advanced no evidence of target audience confusion").

HS One also does not plausibly allege that the challenged statements were made in "commercial advertising or promotion." To qualify, the speech must be commercial in nature and disseminated for the purpose of influencing purchasing decisions. *Am. Muscle Docks & Fabrication, LLC v. Merco, Inc.*, 187 F. Supp. 3d 694, 700 (N.D.W Va. 2016). The statements HS One challenges consist of public interviews and customer communications responding to an ongoing interoperability dispute, not advertising. Mot. 18. As to the private letter Vyne sent to HS One, which HS One bizarrely claims was false advertising, HS One can only pivot to allegations not in the Counterclaims, including that there were other, unspecified "communications

for purposes of collecting names for this letter." Opp'n 17. This is not enough.

Independent of these defects, HS One's Lanham Act counterclaim is barred by Maryland's Anti SLAPP statute. Mot. 14–16. HS One does not dispute that the challenged statements were made in public forums, including a widely distributed podcast interview addressing interoperability, information blocking, and patient data access in the dental industry. *See* Counterclaims ¶¶ 57–67, 127, 132–33. And it acknowledges that the kinds of communications that fall within Lanham Act claims (and outside the Anti-SLAPP statute) are commercial speech which "does no more than propose a commercial transaction." *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 323 (4th Cir. 2015). It makes no effort to explain how an interview with an author and journalist about the dental industry could possibly fit within that standard. Mot. 14–15. HS One's contention that Anti-SLAPP protection is inapplicable in federal court confuses the pleading standard (a procedural issue) with the substantive remedies provided by the Anti-SLAPP law, which do apply in federal court. *See Connolly v. Lanham*, 685 F. Supp. 3d 312, 343 (D. Md. 2023).

## II. HS ONE'S UTAH STATUTORY COUNTERCLAIMS FAIL

### A. Utah Unfair Competition Act (and Common-Law Unfair Competition)

HS One plainly failed to plausibly allege any "unlawful, unfair, or fraudulent" business act or practice. Its briefing confirms as much, offering a laundry list of supposedly supporting citations that contain conclusory labels or describe conduct that plainly is not illegal. *See, e.g.,* Opp'n 22 n. 25 (citing, for example, Counterclaims ¶ 35 ("Customers wanting to use Vyne still have a path forward, which consists of manually submitting information and working with claims clearinghouses to support back-end integration. This approach has been adopted by others.")); *id.* at 22 n.26 (citing, for example, Counterclaims ¶ 99).

Neither has HS One plausibly alleged any diminution in value to intellectual property. HS

One says that its software "does not function as effectively" on account of Vyne implementing defensive measures to protect user functionality, *see* Opp'n 31, but what this appears to mean is that HS One's software does not function as effectively as it might have had Vyne not intervened to defend itself. That is not a diminution in *value of intellectual property* as the cases interpret the term. And moreover, HS One emphasizes that its allegations of diminution in value of intellectual property are not based "on information and belief" like the claims that were rejected in *Bedrock Quartz Surfaces*, *see* Opp'n 22 n.27, but its allegations for "unlawful, unfair, or fraudulent" business acts or practices *are*. *See, e.g.,* Counterclaims ¶ 102.

Similarly, HS One has also not pleaded "malicious cyber activity" or "a software license violation," Utah Code Ann. § 13-5a-102(4)(ii); *see* Counterclaims ¶¶ 97, 100. Malicious cyber activity requires, among several other things, an allegation of "unlawful use of computing resources to intimidate or coerce others." *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 2024 WL 2391163, at *3 (D. Utah May 23, 2024). No such allegation is present here. And while HS One separately states—in conclusory fashion—that there has been a "software license violation," neither its counterclaims nor even its briefing identifies what license, the parties to it, or its terms. In its opposition brief, HS One suggests that the licensing violation arises because "HSOne customer contracts do not permit granting third parties access to circumvent HSOne's security controls." Opp'n 24. Even if HS One's licensing allegation were supported by facts, it would not establish a violation, because its recourse would be against its own customers.

In that regard, the cases that HS One cites to suggest that "evidence of inducement" of a third-party's contractual breach can support a UUCA claim are inapposite. *Vendr, Inc. v. Tropic Techs., Inc.,* concerns "predatory hiring practices"—a distinct statutory predicate that is not at issue here—and involves intentional efforts to induce a firm's employees to violate their

contractual obligations.  2023 WL 8789297, at *5 (D. Utah Dec. 19, 2023).  Similarly, *Whitaker v. W. Essentials, LLC* deals with the UUCA "patent infringement" predicate—also irrelevant here—and addresses fraudulent misrepresentations allegedly relied upon by a business partner to deny plaintiff a specific opportunity.  2016 WL 3435185, at *4 (D. Utah June 17, 2016).

Finally, HS One has not alleged any facts supporting a common-law unfair competition claim, even assuming it can maintain such a claim while failing to meet the necessary statutory criteria.  The Counterclaims never allege "traditional 'passing off'" or misappropriation—the only conduct HS One says is within Utah common-law unfair competition.  *See* Opp'n 25-26

### B.  Utah Truth in Advertising; Deceptive Trade Practices Act ("UTIAA")

HS One's UTIAA counterclaims fail for the same reasons it has failed to state a claim under the Lanham Act.  Its attempt to distinguish *Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc.*, 144 P.3d 1079, 1083 (Utah 2006), falls short, drawing an untenable distinction between the standards applicable to "source" confusion and confusion "regarding 'sponsorship/approval and legality of Vyne's' conduct—distinct concepts not addressed by Vyne's cited authority."  Opp'n 26.  HS One cites no authority endorsing such a distinction or suggesting it hold any significance.

By extension, HS One misreads *Partnerco Holdings, LLC v. Nutonic Corp.*, 2024 WL 1307152 (D. Utah Mar. 26, 2024), to suggest that all "misleading statements and unauthorized actions"—as a general matter—qualify as "practices likely to cause customer confusion" actionable under the UTIAA. Opp'n 27 (citing *Partnerco Holdings, LLC*, 2024 WL 1307152, at *4).  *Partnerco* says no such thing.  Rather, *Partnerco* points to the statute: confusion must go to "source, sponsorship, approval, or certification of goods or services."  And as the Utah Supreme Court explained in *Qwest*, that provision means the UTIAA "generally addresses 'false front' business operations that attract customers by misrepresenting the nature, location, source, or

quality of their goods or services." 144 P.3d at 1083. HS One has made no such allegation here.

### III.    HS ONE'S COMMON-LAW COUNTERCLAIMS FAIL

#### A.  Tortious Interference

HS One's tortious-interference claim fails because HS One does not plausibly allege intentional interference. A plaintiff must allege intent, which means "a desire to bring about certain consequences, not a person's reasons for that desire." *Musselman v. Keele*, 559 P.3d 64, 70 (Utah Ct. App. 2024). HS One never plausibly alleges that Vyne intended to induce any customer to terminate, breach, or refuse to enter into a contract with HS One. Its allegations rest on customer communications that, as explained above, are consistent with competition and customer advocacy. Counterclaims ¶¶ 6–10, 39, 42–67, 71, 109–11. HS One may disagree with the substance of Vyne's statements, but this does not amount to intentional interference.

HS One also fails to plausibly allege improper means. "Improper means" is conduct that is independently unlawful or contrary to accepted standards of morality or trade. *C.R. England v. Swift Transp. Co.*, 437 P.3d 343, 344 (Utah 2019). Lawful competition, even aggressive competition, does not suffice. Here again, HS One substitutes accusation for factual allegations, labeling ordinary competitive conduct as "improper" without pleading facts that make it so. It is not tortious to inform customers about one's services, criticize a competitor's practices, or advocate for interoperability. Utah law requires conduct directed at causing a breach or disruption of the relationship itself, not disagreement over business practices. *CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247, 1263 (D. Utah 2019).

Finally, HS One does not identify a single contract that was breached, suspended, or terminated because of Vyne's conduct, or a single customer who declined to deal with it.

### B. Trespass to Chattels

HS One's trespass-to-chattels claim fails because HS One does not plausibly allege interference with any chattel it owns or impairment of any tangible property. Under Utah law, trespass to chattels requires intentional dispossession of, or intermeddling with, a chattel belonging to the plaintiff. *Power Block Coin, L.L.C. v. Song*, 705 F. Supp. 3d 1293, 1312 (D. Utah 2023) (citing *Nassi v. Hatsis*, 525 P.3d 117, 122 (Utah Ct. App. 2023)). Neither is the case here.

Here again, HS One alleges that Vyne interfered with "HSOne's essential connection to its own platform *installed in customer environments*." Counterclaims ¶ 52; Opp'n 29. Even assuming that Utah courts would follow the HS One's cases and extend trespass to chattels to computers— HS One cites no Utah case doing so—Vyne is aware of no case law anywhere that would classify a software program as a "chattel" of the software publisher. *See* Mot. 25 ("'[C]hattel refers to a 'physical object' or 'tangible good.'"). HS One does not explain why Utah courts would impose tort liability on a software publisher any time one program caused another to slow or crash.

### C. Unjust Enrichment

A Utah unjust-enrichment claim requires "a benefit," "an appreciation or knowledge by the conferee of the benefit," and "circumstances" that make acceptance or retention of the benefit "inequitable." *In re Melilli*, 639 B.R. 635, 652–53 (Bankr. D. Utah 2022). The value of "services performed by the plaintiff for his own advantage, and from which the defendant benefits incidentally," are not recoverable. *Jeffs v. Stubbs*, 970 P.2d 1234, 1248 (Utah 1998).

HS One fails to explain how Vyne's customers using Vyne's technology to transfer their own data to a Vyne program they wanted to use on their own computers is in any way a "benefit" conferred by HS One on Vyne. HS One claims to have "invest[ed] significant resources in securing its dental customers' business and patient health data" for its own purposes. Counterclaims at ¶¶ 4–7. That Vyne has continued to offer its services to its customers as it has

14

for years—despite HS One's efforts to stop those services—does not represent the conveyance of a "direct benefit" from HS One under Utah law. *Concrete Prods. Co. v. Salt Lake Cnty.*, 734 P.2d 910, 911–12 (Utah 1987). HS One cites no case remotely comparable to the facts it alleges here.

### D. Business Libel / Common-Law Defamation

A statement is defamatory only if "the statement is capable of being objectively verified as true or false." *West v. Thomson Newspapers*, 872 P.2d 999, 1018–19 (Utah 1994). A statement framed as the speaker's opinion does not qualify. *Keisel v. Westbrook*, 542 P.3d 536, 550 (Utah 2023) ("qualifiers" that "emphasize the subjective nature" of the statement foreclose defamation claim). And courts applying Utah law do *not* draw all inferences in favor of finding a defamatory meaning to a challenged statement. *Mathews v. McCown*, 575 P.3d 1114, 1126 (Utah 2025).

Vyne's statement that HS One's apparent effort to "consolidate claims traffic" "*raises concerns*" about reduced provider choice and represents "a direction *we believe* undermines" practice autonomy, Counterclaims ¶ 60 & Ex. 2, is not actionable because it is framed in terms of Vyne's subjective belief, which is "not something that is subject to objective verification." *West*, 872 P.2d at 1019; *see also Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1230 (D. Utah 2018). The truth of other challenged statements is clear from the face of HS One's complaint. Mot. 15–16.

Moreover, HS One fails to offer more than conclusory allegations that the statements "resulted in damage." *Mathews*, 575 P.3d at 1125–26. It argues that HS One's customers have complained about "data integrity issues," citing a representation that is not part of the Counterclaims, Opp. 19, and offers no basis at all to link these complaints to its bottom line, or to explain how any *Vyne statement* could have caused "data integrity issues."

## CONCLUSION

For the foregoing reasons, Defendant's counterclaims should be dismissed.

Respectfully submitted,

*/s/ Vincent Levy*

Michael Shuster (pro hac vice)
Vincent Levy (pro hac vice)
Daniel Fahrenthold (pro hac vice)
Torrell Mills (pro hac vice)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com

K. Nichole Nesbitt (Bar No. 26137)
Derek M. Stikeleather (Bar No. 27815)
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4026
knn@gdldlaw.com
dstikeleather@gdldlaw.com

*Attorneys for Plaintiff*
*National Electronic Attachment, Inc. d/b/a Vyne Dental*

16