IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>Plaintiff,<br><br>- against –<br><br>HENRY SCHEIN ONE, LLC,<br><br>Defendant. | Case No. 1:25-cv-03246-MJM |

**HENRY SCHEIN ONE, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS VYNE'S AMENDED COMPLAINT**

Defendant Henry Schein One, LLC ("HSOne"), by counsel, respectfully submits this reply in further support its motion to dismiss Plaintiff National Electronic Attachment, Inc. d/b/a Vyne Dental's ("Vyne") first Amended Complaint ("FAC") with prejudice.[1]

## **INTRODUCTION**

Rather than plausibly plead facts within viable legal frameworks, Vyne's Opposition brief stretches statutes and common law well beyond their limits to manufacture claims.

The venue issue is emblematic. By contorting the venue statute's language, Vyne seeks to haul HSOne into an inappropriate forum. Vyne's CFAA claim is also untenable. The CFAA is an anti-hacking statute, not a catch-all commercial dispute vehicle. Vyne offers no coherent theory under which HSOne could have unlawfully accessed its own software. Vyne's theory would criminalize every anti-virus tool in existence. No amount of re-pleading can allow Vyne to get around Supreme Court precedent cabining CFAA claims to unauthorized access—what Vyne does, such as misappropriating encryption keys and injecting data into a database. Not deploying telemetry and logging to protect one's own application.

Vyne's remaining claims fare no better. Vyne's speech-based claims fail because it has not plausibly alleged publication or falsity—core elements that cannot be inferred from speculation or disagreement. Its tortious interference claim collapses for the independent reason that Vyne does not allege a subsequent breach of contract, as required by Maryland law. Vyne's unfair competition claim merely repackages the same deficient allegations. Vyne's declaratory judgment claim cannot survive due to its duplicative nature as well. Vyne's Opposition highlights—rather than cures—the FAC's fatal flaws. Dismissal in its entirety, and with prejudice, is warranted.

---

[1] Capitalized terms not otherwise defined herein take on the meaning ascribed to them in HSOne's memorandum of law in support of HSOne's motion to dismiss Vyne's FAC.

# ARGUMENT

I. **Maryland Is Not The Proper Venue For This Litigation**

   A. **Vyne's Venue Theory is Based On a Tortured Reading of 28 U.S.C. § 1391(b)(1)**

Vyne's attempt to turn Maryland into the proper venue for this litigation presents a classic case of forum shopping. In its Opposition briefing, Vyne posits that because HSOne did not challenge the Court's personal jurisdiction via a Rule 12(b)(2) motion or otherwise, and has thus consented to personal jurisdiction in Maryland, it is deemed to reside in the District of Maryland for venue purposes and, accordingly, venue in Maryland is proper. (Opp. at 2-3.) This misreads the statute. 28 U.S.C. § 1391 provides that an action may be brought in a judicial district in which any defendant resides, or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(1-2). Further, an entity with the capacity to sue and be sued is deemed to reside, "if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction[.]" 28 U.S.C. § 1391(c). This language does not support Vyne's theory.

As a threshold point, venue is determined at the time the action filed. *See, e.g.*, *Proler Steel Corp. v. Luria Bros. & Co.*, 225 F.Supp. 412, 413 (Tx. S. Dt. Ct. 1964) ("It is well settled that venue and jurisdiction are determined by the facts as they exist at the time action is filed"); *Parham v. Edwards*, 346 F.Supp. 968, 969 n.1 (S.D. Ga. 1972) (same). Venue is not dependent on what action (or inaction) a party may take after a complaint is filed—*i.e.*, filing a Rule 12(b)(2) motion to dismiss. *Proler Steel Corp.*, 225 F.Supp. At 413 ("Events occurring subsequent to the institution of a suit cannot ordinarily oust" the facts as they existed at the time of filing). In its FAC, Vyne alleges that HSOne is a Delaware LLC, with its principal place of business in American Fork, Utah. (FAC ¶13). This is true and accordingly, for purposes of 28 U.S.C. §1391(b)(1), the Court should deem HSOne to reside in Utah, or at most Delaware, but not Maryland.

Second, Vyne's proposed reading of the venue statute would render the application of various federal rules meaningless. Vyne would have this Court find that a defendant can never challenge venue if it does not also challenge personal jurisdiction. (Opp. at 4.) While related, these are separate and distinct concepts. *See, e.g.*, *Tech. Printer Circuits, Ltd. v. Packard Bell Elec. Corp.*, 290 F.Supp. 308, 322 (C.D. Cal. 1968) ("[v]enue relates to the power of a court within a certain geographical or territorial area. Jurisdiction, on the other hand . . . is of a much broader scope.") Under Vyne's reading of the venue statute, the outcome of a venue challenge would always be contingent on a court's decision on personal jurisdiction. This cannot be the law.

Even if Vyne's reading is plausible, venue "may be proper in more than one district" and "[t]he Court must therefore focus not on whether a given district is the best venue, but whether the relevant acts or omissions occurred within that district are 'sufficiently substantial to support venue.'" *Tusha v. Greenfield*, No. GLR-20-2143, 2021 WL 1530211, at *3 (D. Md. Apr. 19, 2021). For the reasons in Point I.B., *infra*, nothing in Vyne's FAC establishes that ties to Maryland are "sufficiently substantial" to warrant finding Maryland is the appropriate venue.

**B.     Utah is the Hub of this Dispute**

Vyne also claims that venue is proper under § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Maryland. (Opp. at 4.) Vyne claims that HSOne targeted "dozens" of customers in Maryland and at least thirteen Maryland customers lost their access to Vyne's software (Opp. at 3-5; FAC ¶18.) That is not enough to transform Maryland into the proper venue for this litigation—particularly where HSOne's principal place of business is in Utah, as are Vyne's core leadership. Moreover, Vyne itself submits that it has only 170 customers in Maryland out of over 8,000 (barely more than 2% of its customer base), and not all of those are mutual Vyne and HSOne customers (FAC ¶6.) The relationship to Maryland is tangential at best.

All of the cases that Vyne cites in support of its position are distinguishable. The quotation

3

that Vyne provides from *Maplebear Inc. v. Does*, No. 21-cv-00474, 2022 WL 1837935 (E.D. Va. Apr. 6, 2022), is from that court's analysis of personal jurisdiction, not venue. The court in *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601 (E.D. Va. 2002), found venue proper where defendant sent "millions of spam messages" through the servers at issue — a far greater reach than the mere 13 customers Vyne references in its FAC. (FAC ¶¶18, 69.) And, in *Coastal Laboratories, Inc. v. Jolly*, 502 F.Supp.3d 1003, 1023-24 (D. Md. 2020), the plaintiff's principal place of business was in Annapolis, Maryland. Vyne's is in Dunwoody, Georgia (FAC ¶12.)

## II.     Vyne's FAC Fails to Put HSOne on Notice of its Claims; Dismissal is Warranted

### A.     Vyne's CFAA Claims Are Not Sufficiently Pleaded

Vyne's CFAA theory fails as a matter of law because HSOne merely performed maintenance on its own software to prevent unauthorized and/or malicious access. The CFAA does not convert routine cybersecurity measures into federal hacking claims, nor does it obligate companies to preserve third-party access, particularly where, as here, Vyne shunned HSOne's attempts to contract for lawful access. Through its papers, Vyne continues to misstate HSOne's arguments, or seek to have this Court believe that HSOne does not address Vyne's arguments altogether. As an example, Vyne claims that HSOne does not acknowledge its § 1030(a)(5)(A) claim. (Opp. at 6.) But HSOne does—stating the requirements word-for-word before arguing that such claim fails because security upgrades are not hacks under the CFAA (Mot. at 10).

#### 1.     Vyne Cannot Maintain a CFAA § 1030(a)(5)(A)[2] Claim Because its Updates Were Customer-Authorized

---

[2] Vyne states that neither party can maintain a subsection(C) claim because both were authorized to access a protected computer. (Opp. at 6 fn.6.) This is wrong. Vyne's motion to dismiss arguments are addressed in HSOne's Opposition. In any event, HSOne's subsection(C) claim survives because, among other things, Vyne's access was not authorized and involved misappropriating encryption keys and breaking through technical barriers (unlike HSOne's access to protect its own systems with logging). The issue is a fundamental issue of what constitutes unauthorized access, not whose computer it is. Vyne also accesses HSOne's cloud systems, as

4

Vyne argues that to defeat a § 1030(a)(5)(A) claim HSOne must show that its customers consented to its "*sabotage of Vyne's software*." (Opp. at 9.) But, Vyne has not adequately pleaded that HSOne caused damage, let alone damage without authorization, by upgrading its features.

As a threshold point, any damage allegedly caused by HSOne's security updates was incidental, not intentional as required by statute. 18 U.S.C. § 1030(a)(5)(A) (requiring that defendant *intentionally* cause damage). HSOne's security updates were legitimate business activities, which HSOne's customers agreed to via the EULA and/or other terms and conditions. Accordingly, any loss of access by Vyne resulting from legitimate business activities cannot amount to the intentional harmful conduct Vyne needs to plead here. *Margolis v. Apple Inc.*, 743 F.Supp.3d 1124, 1133 (N.D. Cal. 2024). Moreover, Vyne's FAC does not sufficiently plead that HSOne intended to impair, rather than upgrade, its security systems. *See id*.

Vyne's pleading lacks meaningful detail on the damage allegedly caused by HSOne without authorization, stating only that HSOne distributed updates that impaired Vyne's customers' ability to use Vyne software on their own computer, leading to a loss of functionality. (FAC ¶68.) That is not enough. Vyne argues that this impairment of the availability of its programs falls under § 1030(a)(5)(A), but Vyne's pleading does not quote a single EULA provision, term or condition, that HSOne has violated. Vyne further tries to skirt around the fact that HSOne made clear throughout its actions that it was working to combat unauthorized access to its platform. Vyne acknowledges the notice provided by HSOne in the FAC. (*See, e.g.*, FAC ¶34 ("HS One began informing dental practices . . . that HS One would be releasing updates to

---

alleged and as Vyne cannot contest. Further, Vyne misleads customers and does not disclose its true functionality—not even to this Court. *See, In re Apple Inc. Device Performance Litig.*, 347 F.Supp.3d 434, 452-53 (N.D. Cal. 2018) (stating that a § 1030(a)(5)(C) claim may be based on ill-gotten consent).

Dentrix that would cause Dentrix to no longer be compatible with Vyne[.]")

In support of Vyne's position that it can satisfy the "caused damage without authorization" statutory requirement by pleading that HSOne's actions impaired the availability of Vyne's programs, Vyne cites *San Miguel v. HP Inc.*, 317 F.Supp.3d 1075 (N.D. Cal. 2018), *In re Apple Inc. Device Performance Litig.*, 347 F.Supp.3d 434, 452-53 (N.D. Cal. 2018), and *Bui-Ford v. Tesla, Inc.*, No. 23-CV-02321, 2024 U.S. Dist. LEXIS 28767 (N.D. Cal. Feb. 20, 2024). However, those cases are distinguishable insofar as they do not deal with the situation presented here—where one company must implement security upgrades to protect patient health information, which is both expected and approved by Dentrix customers, as well as by federal law. Unlike in *San Miguel*, HSOne installed its update to maintain security over patient data inside its platform. That cannot reasonably be compared to a company implementing software so that only its printer cartridges work in its printers. And, unlike in *Bui-Ford*, HSOne's updates to its software were not self-serving and were done following notice to its customers that the updates were necessary to maintain security. Vyne, again, admits as much (*see, e.g.*, FAC ¶¶4, 34, 47, 64).

### 2. Vyne Has Not Adequately Pleaded that HSOne Exceeded Authorized Access By Using Telemetry

Here, Vyne argues that with respect to a § 1030(a)(2) claim (exceeding authorization to access information), HSOne exceeded its authorization by "install[ing] an invasive telemetry system on Vyne's customers' computers without notifying them of the scope of the data it would harvest, all in preparation for HSOne's efforts to target Vyne's customers use of its products." (Opp. at 10.) This is a classic allegation about computer misuse, not unauthorized access—as an initial access issue or with respect to exceeding. There is nothing unusual about logging and telemetry. Vyne's contrived allegation that HSOne's telemetry was not authorized is conclusory and does not clear the *Twombly* bar. Vyne does not allege that HSOne broke any technical barriers,

misappropriated encryption keys, passwords, or hacked anything. (FAC ¶¶18, 36.) Vyne admits that it is Vyne's best guess that the telemetry was not explicitly authorized by customers and/or exceeded the terms of HSOne's EULA and terms and conditions. (*Id*. ¶38.) Vyne provides no details even suggesting that customers did not consent to this telemetry, a position that is otherwise belied by its own CTO's statements, admitting that HSOne's customers approve telemetry. (Nix Decl. (ECF No. 6-3), at ¶ 14.)

After multiple attempts, Vyne still does not adequately plead this claim. Vyne itself admits that it needs discovery to assess what authorization HSOne had (*see, e.g.*, Opp. at 11 n.7 (claiming that it needs discovery in order to assess whether customers granted HSOne authorization).) The Court should not permit such a fishing expedition. *See, e.g.*, *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin*., 870 F.3d 582, 588 (4th Cir. 2015) (stating that a complaint must allege more than sheer possibility that a defendant acted unlawfully to survive a motion to dismiss and proceed to discovery). Vyne's theory is so speculative and conclusory that it does not pass any plausibility test. Software that tracks how other software interacts with it is not hacking—there is no case Vyne can point to that comes even close to this concept. If Vyne's theory is permitted to stand, then any plaintiff could simply allege that a defendant's software—based on its own interactions with itself—is hacking, and nothing more. This is precisely the sort of threadbare pleading of computer misuse *Van Buren* counsels against.

### 3. Vyne's Statutory Loss Allegations are Insufficient

Vyne's arguments on statutory loss miss the mark. Vyne cannot plead statutory loss here because any loss Vyne suffered was a result of its own conduct—not HSOne's. Vyne hacked into Dentrix, and HSOne instituted security upgrades to stop it. Vyne Trellis remains operational and unchanged—unlike Dentrix, which has now been infiltrated by Vyne's writes. Vyne cannot recover now for being inconvenienced by HSOne cutting off its unlawful access. *See, e.g.*, *HCC*

*Ins. Holdings, Inc. v. Flowers*, 237 F.Supp.3d 1341, 1357 (N.D. Ga. 2017) (stating that lost revenue relating to misappropriated access is not compensable "damage" or "loss" under the CFAA); *Civic Ctr. Motors, Ltd. v. Mason Street Import Cars, Ltd.*, 387 F.Supp.2d 378 (S.D.N.Y 2005). Vyne continues to ignore the fact that its CFAA claim cannot succeed because HSOne's actions were taken defensively and in accordance with the EULA, its terms and conditions and applicable law. The CFAA does not permit HSOne to be penalized here for locking its own doors.

    **B.**    **Vyne Fails To Plead Cognizable Speech Based Claims**
        **1.**    **Vyne Cannot Properly Plead Publication or Falsity**

Contrary to Vyne's claims, the FAC fails to plead several elements of a cognizable defamation claim. First, the FAC does not plead the publication element with adequate detail. *See Total Recon Auto Ctr., LLC v. Allstate Ins. Co.* 705 F.Supp.3d 510 (D. Md. 2023) (dismissing defamation claim where plaintiff failed to provide answers to the who, what, where, and when questions in meaningful detail, including the alleged dates of the statements and the customers that allegedly heard the statements). *See also State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F.Supp.3d 536, 568 (D. Md. 2019) (finding vague allegations about supposed statements and the failure to provide dates insufficient to maintain a defamation claim). Here, Vyne asserts that HSOne sent an email to Vyne's customers. (FAC ¶41.) That allegation sets forth a date, but not which, or even how many, customers allegedly received that communication.[3] Vyne then proceeds to list a slew of additional communications allegedly transmitted from HSOne to Vyne's customers, but such statements lack basic factual information—including, for the most part, sender, receiver, how the communication was sent, and when. (*See e.g.*, FAC ¶¶41-51, 64, 74).

---

[3] Vyne purports to attach this communication to its FAC, however "Ex. B" is not an April 25, 2025 email and Vyne's opposition seems to acknowledge that it failed to attach the exhibits to its operative pleading. (Opp. at 17.)

8

HSOne should not have to guess.  As Vyne's allegations fail to provide notice under *Twombly*, Vyne's defamation claim should fail on this basis alone.

Even if Vyne could provide the necessary details to satisfy the publication element, the statements Vyne complains of are either not defamatory, true on their face (*i.e.*, not false) and/or statements of nonactionable opinion.  In considering whether statements are defamatory, the Court must consider "the circumstances in which the statement is made," *Schnare v. Ziessow*, 104 F. App'x 847, 851 (4th Cir. 2004), including the "context and tenor the article[.]" *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998).  Here, Vyne cherry picks portions of statements allegedly made by HSOne, failing to provide any "context and tenor" by which the Cout can evaluate the statements.  This omission also warrants dismissal of the claim.

The email that Vyne points to (FAC ¶41) exemplifies a competitive business transmission, which is not capable of a defamatory meaning.  *See, e.g. Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 952 F.Supp. 844, 888 (D. Mass. 1997) ("[t]he test is, whether, in the circumstances, the writing discredits the plaintiff in the minds of any considerable and respectable class of community" and finding plaintiff failed to show defamatory meaning).  A reasonable reader would understand that the email at issue is, at most, no more than a competitive business email.

Further, any alleged statement by HSOne that Vyne's products caused a "security breach" or that HSOne "detected unauthorized activity" that can pose a security risk are also inactionable because they are either literally true, or statements of opinion.  Vyne's pleadings admit as much. (Opp. at 16; FAC ¶8 (noting that HSOne claimed Vyne's printer driver presented security risks); *id*. ¶34 (same)).  There is no dispute that Vyne does not have an agreement with HSOne to access its software and, therefore, that its access is unauthorized (*see, e.g.* FAC ¶¶52-62 (discussing negotiations to reach an agreement for Vyne to lawfully access HSOne's software).)  And,

9

regardless, such statements reasonably qualify as statements of opinion and, accordingly, are deserving of constitutional protection. *See, e.g.*, *Harvey v. Cable News Network, Inc.*, 520 F.Supp. 3d 693, 718-19 (D. Maryland 2021) (stating that "where a defendant states a subjective view, an interpretation, a theory, conjecture or surmise, rather than a claim to be in possession of objectively verifiable false fact, the statement is not actionable").

### 2. Vyne's Lanham Act Claim Fails for Similar Reasons

As laid out in HSOne's opening brief, to succeed on its Lanham Act claim Vyne must plausibly plead that HSOne made a false or misleading statement of fact about Vyne in a commercial advertisement. (Mot. at 16-17.) Although Vyne claims that it pleads as much, its FAC tells another story. First, Vyne fails to plead sufficient facts to show that any statement allegedly made by HSOne was made as part of commercial advertisement, which requires the alleged statement to be made to the public at large, not in isolated sales conversation or to a select handful of customers. *See, e.g.*, *Met. Reg'l Info. Sys., Inc. v. Am. Home Realty Network*, 948 F.Supp.2d 538 (D. Md. 2013). While Vyne claims that HSOne "unquestionably distributed" "at least two communications" to its customers at large (Opp. at 19-20), it fails to plead facts to support this. Vyne references a "mass advertising email" (FAC ¶41), but fails to plead facts to indicate that HSOne even sent the alleged mass email and fails to properly incorporate it into its FAC.

The second example that Vyne claims supports its allegations (Opp. at 19-20 (citing FAC ¶63 [*sic*] n. 3)), is a communication that makes no reference whatsoever to Vyne (raising an additional deficiency with Vyne's allegations—as such statement is not 'of and concerning' Vyne), nor does it provide any indication who allegedly received that communication. Accordingly, Vyne has not pleaded that HSOne's statements were "commercial advertisements" under § 43(a)(1)(B).

Regardless, for reasons detailed in Point II.B.1, *supra*, Vyne has not pleaded that any statements made by HSOne were false on their face. *See Scotts Co. v. United Indus. Corp.*, 315

10

F.3d 264 (4th Cir. 2002). While Vyne claims that HSOne's statement that "[i]f you're using Vyne, you're manually attaching images, typing in CDT codes, and crossing your fingers" is false (FAC ¶43), Vyne fails to plead how or why such statements are false (other than summarily stating that "Vyne fully supports integration with imaging" (*id.* ¶44)), and also fails to plead that customers are not actually "manually attaching images, typing in CDT codes" and/or "crossing [their] fingers." At least some customers may be doing both. Regardless, as detailed above, the communication Vyne finds offensive is a competitive business transmission which, here, is not actionable under the Lanham Act. *See, e.g.*, *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F.Supp.2d 570 (E.D. Pa. 1999) (dismissing competitor's Lanham Act and defamation claims).

Finally, the other statements Vyne complains about regarding "security risks" or "security issues" are statements which are not literally false for reasons detailed above. As such, as Vyne's theory of recovery here is on "a claim of implied falsehood, [it is required to] demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse customers." *Scotts Co.*, 315 F.3d 273. Vyne has put forth zero extrinsic evidence to support its claim.

      **C.**      **Vyne's Tortious Interference Claim Fails Because, Among Other Things, it Does Not Allege an Independent Wrongful Act**

Contrary to Vyne's claims, there is a litany of applicable state and federal case law that states that a breach of contract is necessary for a plaintiff to maintain a tortious interference with contract cause of action. *See, e.g.*, *Brass Metal Prods. V. E-J Enters.*, 189 Md. App. 310, 348 (Md. Ct. of Spec. App. 2009) (stating that tortious interference with contract claims require "the subsequent breach by the third party" and collecting cases); *TKA Inc. v. Bowers*, No. 1185, 2019 Md. App. LEXIS 128, at *14 (Md. Ct. of Spec. App. Feb. 11, 2019); *Chrishon-Skinner v. Jones*, No. JKB-25-0315, 2025 U.S. Dist. LEXIS 78609, at *8-9 (D. Md. Apr. 24, 2025) (citing *Lilly v. Balt. Police Dep't*, 694 F.Supp.3d 569, 594 (D. Md. 2023)).

11

Vyne does not plead any specific allegations regarding customers who cancelled their contracts, let alone cancelled them because of HSOne's conduct, which is required for this claim to survive a motion to dismiss. Vyne's arguments to the contrary are misleading (Opp. at 23-24). Vyne offers no detail on the one customer (in a footnote) that would put HSOne on notice of that customer's identity or of their complaint, nor does that allegation provide enough detail for HSOne to determine whether they were even a mutual customer at all. These issues are dispositive.

Vyne's arguments in response to HSOne's position that Vyne has not alleged an independent wrongful act to succeed on a tortious interference claim also miss the mark. Vyne fails to plead a tortious interference claim because the conduct that the FAC outlines is not wrongful. HSOne is not obligated to provide Vyne unfettered access to its system, or to permit Vyne's continued unauthorized access. Accordingly, in order to adequately plead a tortious interference claim, Vyne must plead some other wrongful act, unrelated to HSOne's update to its own software. *See, e.g.*, *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 301 (1994). It has not.

Vyne's arguments against dismissal of these claims further display Vyne's attempts to have it all. Vyne claims that its contracts are harmed because of HSOne, while at the same time refusing to acknowledge that it has no right to access HSOne's systems in the first place. Vyne has no contract with HSOne and, accordingly, HSOne is not obligated to let it in the front door. Any damage to Vyne is a result of its own doing. As HSOne outlines in detail in its motion, but for Vyne's unlawful conduct, HSOne would not have needed to upgrade its security systems to block its access. Vyne pleads as much, outlining the steps HSOne needed to take to protect its own systems in light of affirmative actions taken by Vyne. (*See, e.g.*, FAC ¶32 (stating HSOne's concerns regarding Vyne/the printer driver); ¶36 (stating HSOne considered Vyne's access unauthorized); ¶39 (noting that HSOne characterized Vyne's unauthorized access as 'hostile').)

This conduct is not unlawful or illegal—let alone grounds to sustain a tortious interference claim. Vyne has no right to access HSOne's systems, and any separate agreement Vyne may have had with its customers to backdoor its way into HSOne's systems does not permit this cause of action to withstand a motion to dismiss. *State Auto. Mut. Ins. Co. v. Lennox*, 422 F.Supp.3d 948, 968-71 (D. Md. 2019) (contracts that violate public policy and/or the laws of Maryland are unenforceable).

### D.   Vyne Cannot Plead Sufficient Facts to Maintain an Unfair Competition Claim

Vyne does not plausibly plead dishonest, fraudulent, or deceptive conduct, or actions that substantially interfere with competition on the merits, for this claim to survive HSOne's motion. *M-Edge Accessories LLC v. Amazon.com Inc.*, No. MJG-11-3332, 2015 U.S. Dist. LEXIS 10095, at *11-12 (D. Md. Jan. 29, 2015) ("mere competition by a business rival is not a tortious act.")

Here, Vyne's claim stems from a disagreement with HSOne's lawful business decisions, including its security hardening, product updates, and commercial programs, including API program management. Vyne cannot twist its disagreement on these issues into a cause of action. While Vyne claims that HSOne's actions were pretextual, its FAC also explains the reason HSOne was forced to act. Vyne pleads: HSOne communicated to customers concerns regarding security following investigations (FAC ¶¶8, 34); conducted investigations and monitoring (*id.* ¶¶37-40); communicated repeatedly with Vyne (*id.* ¶¶53-56); offered multiple commercial arrangements and resolutions to Vyne (*id.* ¶¶59-60, 62); and then engaged in thoughtful blocking measures over the course of *months* (*id.* ¶¶63-64, 68-72)—all the while keeping customers informed of steps it was taking to block unauthorized access (*id.* ¶¶41-49, 63-64). As pleaded, these allegations describe a lengthy, collaborative process—not sudden or secretive conduct, let alone conduct that is deceitful, fraudulent, or dishonest that could reasonably rise to the level of unfair competition.

Vyne's Cures Act related allegations are insufficient and misread the law. First, Vyne attempts to manipulate facts to transform HSOne into a "developer of certified IT." (Opp. at 27.)

13

It cannot do so, but in its attempts, it grips on to an expired Cures Act certification pertaining to *software not at issue in this litigation*, and attempts to shift the burden on this claim to HSOne. (Opp. at 27, n.16.) But the certification is not relevant, and it is not HSOne's burden to prove that the *actual products at issue* in this litigation are subject to the Cures Act, it is Vyne's.

The technical inaccuracies proffered by Vyne in trying to characterize HSOne as a HIE or HIN have been extensively briefed here and in the preliminary injunction papers. Vyne's reading is contrary to the plain language of the statute and regulations. In its Opposition brief, Vyne repeats prior assertions and cites HSOne's marketing statements regarding its "API Exchange." Those statements do not come close to pleading facts establishing multi-directional exchange "among" more than two unaffiliated parties, as opposed to discrete bilateral connections. Vyne's theory, if accepted, would impermissibly expand the Cures Act.

Vyne also alleges that HSOne does "not even dispute that its conduct qualifie[d] as facial information blocking." (Opp. at 29.) But HSOne has done that—*repeatedly*. This is yet another thinly veiled attempt by Vyne to mirror the facts to *Real Time*, which turned on concessions not present here. There, the defendant did not dispute coverage or facial information blocking. HSOne disputes coverage, facial blocking, and has articulated security and manner rationales.

Next, Vyne misstates HSOne's exceptions argument, attempting to put forth a perceived procedural leverage point—asserting that the Cures Act exceptions are affirmative defenses and it is HSOne's burden to prove them. (Opp. at 29.) HSOne's argument at this stage has nothing to do with burden, but states that after taking all inferences in Vyne's favor, the FAC inexorably points to the applicability of the exceptions. Absent plausible facts showing inconsistency, discrimination, lack of narrow tailoring, or refusal to pursue alternatives, Vyne's allegations are merely labels to "unfair competition."

14

Vyne's unfair competition theory ultimately seeks a court-order expanding Maryland law to something that it does not recognize: keeping HSOne's platform open to Vyne's chosen method, notwithstanding existing security concerns and product-management choices. Because the law imposes no such duty, and because Vyne fails to allege the type of dishonest, fraudulent, or deceptive conduct the law requires, this claim should be dismissed.

### E. Vyne's Declaratory Judgment Claim Must be Dismissed as Duplicative

The declaratory judgment statute, 28 U.S.C. § 2201(a), is meant to "afford a speedy and inexpensive method of adjudicating legal disputes without invoking [] coercive remedies . . . and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights [.]" *In re Foxwood Hills Prop. Owners Assoc. Inc.*, 625 B.R. 851, 857 (D.S.C. Bankr. Ct. 2020) (internal quotations omitted). "Courts in this district have dismissed counterclaims that duplicate claims or defenses otherwise pleaded in the action." *Freedom Servs., Inc. v. Freedom Servs., LLC*, No. MJM-23-1625, 2024 WL 3089663, at *9 (D. Md. June 21, 2024). Here, there is no useful purpose to be achieved here in deciding Vyne's declaratory judgment claim, particularly given that resolution of HSOne's counterclaims will resolve all of Vyne's declaratory judgment requests. *See, e.g.*, *Hart v. Travelers Prop. Casualty Co. of Am.*, 610 F.Supp.3d 785, 800 (W.D.N.C. 2022); *Freedom Servs.*, 2024 WL 3089663, at *9-10 (dismissing duplicative declaratory judgment claim).

### **CONCLUSION**

For the reasons set forth above and in HSOne's opening memorandum, HSOne's motion to dismiss Vyne's first Amended Complaint in its entirety and with prejudice should be granted.

Dated: January 30, 2026 　　　　　Respectfully submitted,

**GREENBERG TAURIG, LLP**

By: /s/Michael R. Sklaire
　　Michael R. Sklaire (MD Fed. Bar No. 16471)
　　1750 Tysons Boulevard, Suite 1000
　　Tysons Corner, VA 22102
　　Tel: (703) 749-1308
　　Michael.Sklaire@gtlaw.com

　　Michael Burshteyn (*pro hac vice*)
　　Marcelo Barros (*pro hac vice*)
　　Jennifer Bartlett (*pro hac vice*)
　　Candra Connelly (*pro hac vice*)
　　101 Second Street, Suite 2200
　　San Francisco, CA 94105
　　Tel: (415) 655-1300
　　Michael.Burshteyn@gtlaw.com
　　Marcelo.Barros@gtlaw.com
　　Jennifer.Bartlett@gtlaw.com
　　Candra.Connelly@gtlaw.com

　　*Counsel for Defendant Henry Schein One, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of January, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

　　　　　　　　　　　　　　　　　　　　/s/Michael R. Sklaire