**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>Plaintiff/Counter-Defendant,<br><br>- against –<br><br>HENRY SCHEIN ONE, LLC,<br><br>Defendant/Counter-Plaintiff. | **Case No. 1:25-cv-03246-MJM** |

**HENRY SCHEIN ONE, LLC'S RESPONSE TO MOTION TO STRIKE**

Vyne's Motion to Strike manufactures an agreement that does not exist. Vyne does so to attempt to exclude a declaration from Mr. Youssef, acting as HSOne's forensic investigator, showing that Vyne is hacking HSOne's software even after the trial. Vyne did so through continued decryption as well as development of a new hack involving generating an API key to access HSOne's software via API—a hack just as bad or worse than the prior ones.

The record shows that "HSOne's position, as expressed in its meet and confer correspondence, is that the Federal Rules of Civil Procedure regarding expert disclosures are not applicable for purposes of a preliminary injunction hearing. *See, e.g.*, *G.W. Aru, LLC v. W.R Grace & Co.-Conn.*, No. JKB-22-2636, 2023 U.S. Dist. LEXIS 149935, at *5-6 (D. Md. Aug. 23, 2023) (noting the relaxed and less formal evidentiary standards for witness testimony in a preliminary injunction proceeding and reviewing cases). HSOne consequently provide[d] this disclosure as a courtesy to Vyne, but by doing so does not agree to the applicability of Rule 26(a)(2) for purposes of the preliminary injunction proceeding." (*See* Dkt. 153-2, P. 16.)

1

The email thread Vyne attaches shows the supposed agreement Vyne claims existed never did. First, HSOne only said that, as a courtesy, it would provide an expert report and disclosure before the preliminary injunction trial.[1] HSOne did provide a report. HSOne never agreed that Mr. Youssef, who HSOne hired both to provide an expert opinion and also to investigate Vyne's hacking, could not submit supplemental declarations about new hacks or provide testimony about Vyne's new conduct that occurred after he submitted his report. This would make no sense.

Further, Vyne itself has nothing to rely on but a "proposal" that the parties never consummated. Vyne's proposal was that "Each side" will serve "simultaneous" "Opening reports," among other things. (Dkt. 153-2, p. 4.) HSOne did not agree to this, but served a report regardless. Vyne did not. It is important to emphasize this—Vyne itself did not follow this purported 'agreement' it now claims exists. There was no opening report provided by Vyne. Vyne decided instead to issue just a rebuttal expert report. Even though this was not what Vyne itself proposed, and made it so HSOne had almost no time to review Vyne's expert's opinions, HSOne did not complain and try to hold Vyne to any agreement about simultaneous disclosure. Because no such agreement existed.

Vyne is desperate to occlude what it is doing from the public and the Court. It has now resorted to procedural attempts to strike evidence that it is hacking HSOne by generating API keys that it is not permitted to generate—indeed, it left HSOne's API program—and using those API keys to access HSOne's software without authorization. A preliminary injunction should issue on the hearing record alone, but Vyne's continued escalating hacks underscore that HSOne is likely to succeed on its claims and that Vyne—as it has admitted—will pursue any option available to

---

[1] "At the preliminary injunction stage, the case law is clear that the full expert report/process is not required. However, given that we have time before the hearing, we are willing to exchange reports in line with the Rule 26 requirements." (Dkt. 153-2, p.5.)

access HSOne's software without authorization and overcome HSOne's technical security measures. No agreement exists to prevent the Court from considering the evidence of Vyne's post-report hacks. Vyne's unlawful conduct is highly relevant to this proceeding and Vyne's continued efforts to occlude the true nature of that conduct are not meritorious.

A. **The Court should consider the information contained in Mr. Youssef's supplemental declaration.**

The Court should not strike Mr. Youssef's supplemental declaration in which he analyzed information obtained since the conclusion of the hearing. Mr. Youssef submitted his supplemental declaration about information of Vyne's unauthorized access into HSOne's systems since the conclusion of the hearing. Mr. Youssef specifically noted that the most recent Splunk report reflected 1,283,135 events within the 24 hours preceding his report associated with Vyne software attempting to decrypt HSOne binaries. (Supp. Decl. of David Youssef (ECF No. 145).) But Mr. Youssef is simply explaining the latest information of Vyne's unauthorized access documented in more comprehensive versions of the same information introduced at the hearing as HSOne 2 and HSOne 248. Vyne notably does not object to the exhibits on which Mr. Youssef's declaration is based. (Mot. 1.) In other words, Vyne had the opportunity to cross Mr. Youssef about this same type of information.

Although it has no bearing on whether Mr. Youssef's supplemental declaration with evidence of Vyne's latest unauthorized access into HSOne's systems is relevant to the Court's determination of whether HSOne is being irreparably harmed by Vyne's conduct (it is relevant), Vyne resorts to an inaccurate telling of the history of the parties' communications regarding expert disclosures. The complete communications demonstrate the parties did not have an agreement regarding reports and certainly not one that Vyne suggests.

ACTIVE 720310117v1

Vyne cites to an email chain ending November 17, 2025, for its proclamation that "[t]he parties did have an agreement," however, that communication only concerned the potential subjects of Mr. Youssef's testimony, Vyne's objections about an expert witness, postponing Mr. Youssef's deposition, and Vyne's request for an expert report from Mr. Youssef. It did not indicate the parties had an agreement concerning anything Mr. Youssef would say as an expert or as a forensic investigator about Vyne's conduct *after* submission of reports.

HSOne informed Vyne on November 12, 2025, that Mr. Youssef would be its expert witness testifying at the hearing. (ECF No. 153-1.) On December 4, 2025, HSOne informed Vyne that it would provide a report from Mr. Youssef—**solely as a courtesy without agreeing that one was required**. (ECF No. 153-2.) HSOne also noted that Vyne had over a month since the hearing on October 23 to engage an expert in advance of the preliminary injunction hearing and asked if Vyne would be retaining an expert. HSOne proposed (i.e., it did not "agree" as Vyne characterized it) a schedule for expert disclosures and reports: "Assuming Vyne intend[ed] to engage an expert, [HSOne] propose[d] the following schedule and deadlines for experts…" (ECF No. 153-2.) HSOne also noted that it was willing to exchange reports in line with the Rule 26 requirements. HSOne did not represent that its expert could not testify about other matters outside of a report. HSOne also proposed an alternative schedule "[i]n the event Vyne does not want to designate an expert and wishes to wait to determine whether to designate a rebuttal expert…" HSOne asked Vyne to let HSOne know if it would be engaging an expert.

On December 9, 2025, Vyne responded with changes to the proposed schedule, but Vyne did not indicate that it was engaging an expert. (ECF No. 153-2.) Despite there being no requirement for expert disclosures pursuant to Rule 26 for the purpose of a preliminary injunction,

4

HSOne provided its expert disclosures to Vyne on December 22, 2025.  HSOne's expert disclosures noted:

> HSOne discloses the following retained expert witness who may provide an expert report for, or who may testify at the February 10–12, 2026 preliminary injunction hearing (ECF No. 87).  For the avoidance of doubt, this disclosure is submitted solely for purposes of the preliminary injunction hearing. **HSOne reserves all rights.  HSOne's position, as expressed in meet and confer correspondence, is that the Federal Rules of Civil Procedure regarding expert disclosures are not applicable for purposes of a preliminary injunction hearing.** *See, e.g.*, *G.W. Aru, LLC v. W.R. Grace & Co.-Conn.*, No. JKB-22-2636, 2023 U.S. Dist. LEXIS 149935, at *5-6 (D. Md. Aug. 23, 2023) (noting the relaxed and less formal evidentiary standards for witness testimony in a preliminary injunction proceeding and reviewing cases).  **HSOne consequently provides this disclosure as a courtesy to Vyne, but by doing so does not agree to the applicability of Rule 26(a)(2) for purposes of the preliminary injunction proceeding.  The expert witness may use or refer to exhibits at the preliminary injunction hearing, including, but not limited to, the pleadings and memoranda filed in this matter, documents produced in discovery, if any, and deposition testimony**.  The opinions of each expert, retained or otherwise, are to a reasonable degree of professional certainty…This disclosure is made solely for purposes of the preliminary injunction hearing. HSOne expressly reserves the right to supplement, amend, or provide an additional expert report pursuant to Rule 26(a)(2)(B) for merits discovery, trial, or other proceedings. HSOne further reserves the right to supplement this disclosure.

(ECF No. 153-2 (emphasis added).)  Given that Vyne had not informed HSOne that Vyne was intending to engage an expert, there was no agreement in place with respect to expert reports.

On January 10, 2026, Vyne's counsel emailed asking about Mr. Youssef's expert report. It was in that email (almost two months after HSOne disclosed the identity and subject matter of its expert) that Vyne for the first time disclosed it intended to engage a rebuttal expert on Monday, January 12.  (Email chain ending January 15, 2026, attached hereto as Exhibit A.)  Vyne did not disclose an expert on January 12.  But Vyne followed up asking for HSOne's expert report, stating it was past the January 9 deadline the parties had allegedly contemplated HSOne serving a report. (Ex. A.)

ACTIVE 720310117v1

HSOne's counsel responded on January 13 that it would be sending the report, however HSOne made clear that there was no agreement between the parties:

> Hi Daniel, thank you, we do although we may not be able to send it over until early next week, although we may sooner. ***We reserved the right to supplement and also we do not have a record of an agreement by both parties to the schedule.*** We thought you did not intend to oppose the expert after we sent you the courtesy disclosure. ***We also did not think you were going to have an expert on your end since you did not disclose one so far.*** That said, we are available to discuss these issues and think there is a path for experts to be deposed and appear. Please let us know your availability.

(*Id.* (emphases added).) On January 15, Vyne disclosed Paul Clip as its rebuttal expert. (*Id.*)

In short, Vyne tries to manifest an agreement between the parties by characterizing the communications as a "mutual[] contemplat[ion]" (Mot. 3), but the communications demonstrate that is not what occurred.

Vyne also accuses HSOne of refusing to disclose materials Mr. Youssef testified about at the hearing. (Mot. 3.) On January 30, Vyne requested the production of materials cited in Mr. Youssef's report. But as HSOne explained to Vyne:

> [] Mr. Youssef's report did not rely upon a file called "Vyne Dump – 2025-09-16" or any other file called "Vyne Dump." The report relies on, and cites, "VyneApiService.exe.pdf", which is an artifact provided by HSOne to Mr. Youssef showing some of HSOne's initial analysis. Mr. Youssef analyzed the artifact screenshot there, and his report explains what is happening. While Figures 1 & 2 show screenshots from that file, and in the screen shots you can see "ILSpy" and "Vyne Dump" references, Mr. Youssef never analyzed them.

(ECF No. 153-6.) There is no refusal to provide materials.

Then Vyne confusingly quotes Mr. Youssef's deposition testimony where Mr. Youssef explained that his opinions in his report were not based on what he thought Vyne was doing at the time as support for Vyne's contention that Mr. Youssef "was very clear that he would not be providing expert testimony on what Vyne did at the time of the deposition, or today, as that was irrelevant to his opinions." (Mot. 4.). The testimony Vyne cites does not say what Vyne suggests

ACTIVE 720310117v1

it does.  Mr. Youssef was only explaining that the opinions in his report were based on what he had reviewed, and he did not know if Vyne's code was running or not; regardless, it was not relevant to the opinions in his report.  But Mr. Youssef did not testify that he would never be providing additional testimony about Vyne's conduct—whether as an expert or as a forensic investigator investigating Vyne's conduct.

Vyne then says Mr. Youssef's testimony "dramatically changed" at the hearing.  But Mr. Youssef's testimony is not inconsistent with his deposition testimony and Vyne does not actually explain how it is.  Further, Vyne's motion sets forth arguments about Mr. Youssef's testimony and the extent of Mr. Youssef's review that are not relevant to whether the Court should consider his supplemental declaration interpreting the latest events of Vyne's hacking.  (As an aside, Vyne should not be permitted to circumvent the already expanded briefing page limits to further argue about the expert testimony from the hearing, as it does in its brief.)

Vyne's claim it was "sandbagged" at the hearing with new exhibits and testimony never disclosed in the report is also misplaced; Vyne mischaracterizes the exchange of exhibits and, as explained above, the expert disclosure process.  First, although HSOne disclosed HSOne 248 the evening of February 10, Vyne **also** disclosed PX308 the evening of February 10, which it introduced with Mr. Weatherly the following day.  (Exhibit B attached hereto.)  Vyne says HSOne disclosed HSOne 2 and HSOne 123 the evening of February 9, the night before the hearing.  But both parties exchanged their exhibits on February 9.  HSOne, at all times, exchanged information with Vyne as quickly as it could—the information was fresh.  Vyne's position is particularly egregious given that the evidence simply shows Vyne's conduct.  This is unauthorized access that Vyne already knows about.  It is something that Vyne itself is doing intentionally to hack HSOne.

Vyne's protestations regarding exhibits that were not on Mr. Youssef's list are a red herring in any event. Mr. Youssef *did not rely on these exhibits for the opinions in his report*; thus, there was no reason for him to include this in his materials relied upon. HSOne also never represented that his testimony would be limited to his report or the materials relied upon. HSOne in fact said the opposite. This also undercuts Vyne's confusing and misleading argument regarding Mr. Youssef's testimony—his report was based on his opinions formed by reviewing materials he had reviewed to date. Mr. Youssef's testimony in any event did not stray from one of the *subjects* HSOne had identified for his testimony—Vyne's actions in accessing HSOne's systems without authorization. In any event, these exhibits were not only introduced through Mr. Youssef but also through Mr. Rencher. (532:14; 556:12; 577:16 (testifying about HSOne 2, 123, and 248).)

Vyne's calls for the Court to enforce the "agreement" is also questionable in that the complete communications show the parties never formalized any agreement. Vyne acknowledges this when it argues that even if HSOne reserved its rights, the court could still exclude evidence. The cases Vyne cites are not in the context of this early stage of preliminary injunctions and do not apply to the situation here. But it is not only that HSOne reserved rights about what Mr. Youssef could rely upon and testify about, it is that HSOne never formalized an agreement with Vyne—or vice versa.

HSOne has not had "two weeks to put together its new opinions." (Mot. 6) HSOne rather only provided the latest numbers related to Vyne's unauthorized access of HSOne's systems. This is not new material. This is the same information—albeit updated to capture just a 24-hour period last week—that HSOne's witnesses previously informed the Court about at the hearing. Vyne had its chance to meaningfully question Mr. Youssef about this type of information. The only information in Mr. Youssef's declaration are the latest numbers and examples of unauthorized

8

access, but none of that is new.  The only new information relates to new conduct by Vyne—the API key generation it is now doing.  This underscores the need for preliminary injunctive relief.

The Court should deny Vyne's transparent attempt to get another bite at the apple with a surreply supported by a declaration by Mr. Clip.  Mr. Clip did not take the opportunity to review Vyne's source code (655:1–3), never observed Vyne's software as it runs today (656:3–7), and could not independently verify the Vyne-prepared technical documentation he relied upon (657:14–18).  He also acknowledged that he took Vyne's own technical documentation at face value without independent verification.  (657:14–658:10).  Vyne should not be permitted to now have Mr. Clip review the substantive materials and provide opinions he previously had the opportunity to address and failed to do so.

**B.**     **The parties should be able to rely upon deposition testimony for post-hearing briefing.**

The Court has the discretion and is well equipped to consider deposition testimony for the purposes of post-hearing briefing, if it wishes to do so.  There is no reason to hide the deposition testimony from the Court.  It was Vyne who insisted upon the depositions in advance of the hearing.  (ECF No. 53.)  The parties spent the resources taking the depositions and should be able to rely on them for purposes of briefing.

Both parties questioned the witnesses at the hearing about their deposition testimony.  (205:18-19 (Roberts); 335:14 (Nix); 352:4 (Weatherly); 361:24 (Weatherly); 396:13 (Weatherly); 397:19 (Weatherly); 506:15 (Youssef); 615:10 (McDaniel); 619:21 (McDaniel); 656:9-10 (Clip); 658:3 (Clip).)  Vyne's argument that it did not have the chance to cross-examine or redirect on portions of the depositions HSOne cites holds no water.  Vyne had every opportunity to question any HSOne witness on any deposition topic and clean up any testimony it wanted to from its own

9

witnesses.  HSOne should not be precluded from citing to limited portions of the transcripts for post-hearing briefing.

Although HSOne objected to the introduction of the deposition transcripts as exhibits for the hearing when the parties exchanged objections on February 9, the parties did not confer regarding the objections, Vyne did not amend its list to remove them based on HSOne's objections, and the parties did not raise the issue with the Court.  The parties raised any objections about specific exhibits during the course of the hearing, and the Court dealt with them at that time.[2]  That HSOne initially objected to the inclusion of the transcripts on Vyne's exhibit list does not remove them from the scope of the materials the Court may consider for post-hearing briefs.  The Court indeed explained it was not necessarily bound by everything formally presented at the hearing in terms of what the factual record is that the Court would consider for post-hearing briefing:

> MR. BURSHTEYN: No, Your Honor. I did have a question about the court procedure just reading the Court's guidance.
>
> THE COURT: Okay.
>
> MR. BURSHTEYN: *To the extent that we do introduce deposition testimony, does the Court prefer or need that to be actually introduced into the record of the hearing or is the record of the case*, the prior declarations submitted, f*or instance, are those part of the record, if they haven't been objected to, can we just use those* or would the Court like, you know, declarations to be considered exhibits and if a declaration is not, let's say, introduced *and there's post-trial briefing, we wouldn't be allowed to cite to it. I guess that's my question*.
>
> THE COURT: *Meaning whether or not anything that's sort of already in the court  record right now needs to be separately admitted as part of the hearing? I don't see the need for that*. If there's an objection to something that has been presented or attached to a motion or attached to a pleading, I expect the parties to let me know what their objections are, but *I don't see myself necessarily bound by everything that's formally presented here in terms of what the factual record is*.

---

[2] HSOne also objected to many other of Vyne's exhibits (and categories of exhibits) that Vyne introduced at the hearing, including PX 007, PX014, PX015, PX017, PX057, PX197, PX306, and PX307, for example.  (Vyne Ex. G to Mot. to Strike (ECF No. 153-7).)

(26:16-27:13 (emphases added).)

Finally, that Vyne's counsel stated it would not object to the submission of expert deposition transcripts is irrelevant to whether HSOne may attach the fact witness deposition transcripts to its post-hearing briefing and cite to limited portions. The discussion regarding expert deposition transcripts concerned just that—expert deposition transcripts. (663:10.) The parties did not have a discussion about submitting fact witness depositions, and there is no reason they should not be considered part of the record, particularly given the more relaxed evidentiary standards at the preliminary injunction stage. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1833–34, 68 L. Ed. 2d 175 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), vacated and remanded on other grounds, 580 U.S. 1168, 137 S. Ct. 1239, 197 L. Ed. 2d 460 (2017) (finding the lower court abused its discretion by not considering evidence including hearsay on a preliminary injunction); *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 64 , n.6 (D. Md. 2021) ("Because preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted."); *7-Eleven #22360 v. United States*, 560 F. Supp. 3d 892, 905 (D. Md. 2021) (same); *see also W. Sur. Co. v. PASI of LA, Inc.*, 334 F. Supp. 3d 764, 768, n.5 (M.D. La. 2018) ("The Court may consider affidavits and deposition testimony in deciding this motion for preliminary injunction.").

## CONCLUSION

For the foregoing reasons, the Court should deny Vyne's motion.

ACTIVE 720310117v1

Dated: March 17, 2026

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Michael Burshteyn*

Michael Burshteyn *(pro hac vice)*
Marcelo Barros *(pro hac vice)*
Jennifer Bartlett *(pro hac vice)*
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Michael.burshteyn@gtlaw.com
Marcelo.barros@gtlaw.com
Jennifer.bartlett@gtlaw.com

Michael R. Sklaire (MD Fed. Bar No. 16471)
1750 Tysons Boulevard, Suite 1000
Tysons Corner, VA 22102
Tel: (703) 749-1308
michael.sklaire@gtlaw.com

*Counsel for Defendant/Counter-Plaintiff Henry Schein One, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of March, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael Burshteyn*
Michael Burshteyn

12

ACTIVE 720310117v1