## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A VYNE DENTAL, <br><br> *Plaintiff*, <br><br> -against- <br><br> HENRY SCHEIN ONE, LLC, <br><br> *Defendant*. | Case No. 1:25-cv-03246 |

## POST-HEARING REPLY AND OPPOSITION MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
## IN OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

I.     VYNE IS LIKELY TO PREVAIL ON ITS CLAIMS ................................................. 1

II.    HSONE'S CLAIMS ARE LIKELY TO FAIL................................................... 4

    A.   The Computer Fraud and Abuse Act Claims Fail................................................ 4

    B.   The Digital Millennium Copyright Act Claim Fails........................................... 8

    C.   HSOne's Trespass to Chattels Claim Fails ......................................................... 9

    D.   HSOne's Unfair-Competition Claims Fail.......................................................... 10

    E.   HSOne's Tortious Interference Claim Is Waived and Fails ............................. 11

III.   THE REMAINING FACTORS FAVOR VYNE ......................................................... 12

    A.   Vyne Stands To Suffer Irreparable Harm............................................................. 12

    B.   HSOne Has Not Shown It Will Suffer Irreparable Harm ................................. 12

    C.   The Balance of the Equities and Public Interest Favor Vyne ............................. 14

IV.    CONCLUSION................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Abu v. Dickson,*
    107 F. 4th 508 (6th Cir. 2024)................................................................. 6

*ATPAC, Inc. v. Aptitude Solutions, Inc.,*
    2010 WL 1779901 (E.D. Cal. Apr. 29, 2010) ........................................ 7

*Brodsky v. Apple, Inc.,*
    445 F.Supp.3d 110 (N.D. Cal. Apr. 7, 2020) ....................................... 10

*Chambers v. Amazon.com, Inc.,*
    632 F. App'x 742 (4th Cir. 2015)........................................................... 8

*Chamberlain Grp., Skylink Techs., Inc.,*
    381 F. 3d 1178 (Fed. Cir. 2004)......................................................... 8, 9

*Contour Data Solutions LLC v. Gridforce Energy Management LLC,*
    2024 WL 3970455 (E.D. Pa. Aug. 28, 2024) ....................................... 6

*C.R. England v. Swift Transp. Co.,*
    437 P.3d 343 (Utah 2019) ................................................................... 12

*Diamonds Direct, L.C. v. Manly Bands,*
    2024 WL 4818827 (D. Utah Nov. 18, 2024)........................................ 10

*Egilman v. Keller & Heckman, LLP.,*
    401 F.Supp.2d 105 (D.C. Cir. 2005) ..................................................... 9

*Enigma Software Group USA, LLC v. Malwarebytes, Inc.,*
    69 F.4th 665 (9th Cir. 2023)................................................................... 3

*Facebook, Inc. v. Power Ventures, Inc.,*
    844 F.3d 1058 (9th Cir. 2016)............................................................... 6

*Flight Attendants, AFL-CIO v. Skywest Airlines Inc.,*
    2025 WL 3537390 (D. Utah 2025) ...................................................... 10

*Ground Zero Museum Workshop v. Wilson,*
    813 F. Supp. 2d 678 (D. Md. 2011) ....................................................... 9

*IntusCare Inc. v. RTZ Assoc., Inc.,*
    WL 3500667 (N.D. Cal Sept. 18, 2025)................................................. 3

*I.M.S. Inquiry Mgmt. Sys. v. Berkshire Information Sys., Inc.,*
    307 F.Supp.2d 521 (S.D.N.Y.2004)....................................................... 9

*Kirkham v. Widdison*,
    447 P.3d 89 (Utah Ct. App. 2019)..............................................................................10

*League of Women Voters of North Carolina v. North Carolina*,
    769 F.3d 224 (4th Cir. 2014).....................................................................................15

*Lexmark Int'l v. Static Control Components*,
    387 F.3d 522 (6th Cir.2004)........................................................................................9

*Lifestyle Realty, LLC v. Kirn*,
    2024 WL 3784487 (D. Md. Aug. 13, 2024)...............................................................10

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land,*
    915 F.3d 197 (4th Cir. 2019).....................................................................................14

*Nassi v. Hatsis,*
    525 P. 3d 117 (Utah Ct. App. 2023)..........................................................................10

*Oce N. Am., Inc. v. MCS Servs., Inc.,*
    748 F. Supp. 2d 481 (D. Md. 2010) .............................................................................4

*Omega World Travel, Inc. v. Mummagraphics, Inc.,*
    469 F.3d 348 (4th Cir. 2006)......................................................................................10

*Overstock.com, Inc. v. SmartBargains, Inc.*,
    192 P.3d 858 (Utah 2008) ..........................................................................................11

*Paccar Inc. v. Elliot Wilson Cap. Trucks LLC*,
    905 F. Supp. 2d 675 (D. Md. 2012) .............................................................................3

*Phreesia, Inc. v. Certify Glob., Inc.*,
    2022 WL 911207 (D. Md. Mar. 29, 2022) ...................................................................6

*R.C. Olmstead, Inc. v. CU Interface, LLC*,
    657 F.Supp.2d 878 (N.D. Ohio 2009) ..........................................................................9

*Real Time Med. Sys., Inc. v. PointClickCare Techs.,Inc.,*
    131 F.4th 205 (4th Cir. 2025).................................................................................. 2, 3

*Rocky Mountain Bell Tel. Co. v. Utah Indep. Tel. Co.*,
    88 P. 26 (Utah 1906) ..................................................................................................11

*Role Models America, Inc. v. Jones,*
    305 F.Supp.2d 564 (D. Md. 2004) ...............................................................................4

*SecureInfo Corp. v. Telos Corp.*,
    387 F.Supp.2d 593 (E.D. Va. 2005).............................................................................6

*Seidman v. Fishburne-Hudgins Educ. Foundation, Inc.,*
724 F. 2d 413 (4th Cir. 1984) ........................................................................... 10

*State Analysis, Inc. v. American Financial Services Assoc.,*
621 F.Supp.2d 309 (E.D. Va. 2009) ..................................................................... 6

*Stevens-Henager College v. Eagle Gate College et al.,*
248 P.3d 1025 (Utah Ct. App. 2011) ................................................................. 10

*Total Quality Sys., Inc. v. Universal Synaptics Corp.,*
2024 WL 2391163 (D. Utah May 23, 2024) ...................................................... 11

*Winter v. NRDC,*
555 U.S. 7 (2008) .............................................................................................. 13

*Van Buren v. United States,*
593 U.S. 374 (2021) ............................................................................................ 5

*Vox Marketing Grp. v. Prodigy Promos,*
556 F. Supp. 3d 1280 (D. Utah 2021) ............................................................... 10

**Statutes**

17 U.S.C. § 1201(f)(2) ......................................................................................... 9

17 U.S.C. § 1201(f)(2) ......................................................................................... 9

17 U.S.C. § 1201(f)(4) ......................................................................................... 9

18 U.S.C. § 1030(a)(2)(C) .................................................................................... 5

18 U.S.C. § 1030(a)(4) .......................................................................................... 5

18 U.S.C. § 1030(a)(5)(C) .................................................................................... 5

18 U.S.C. § 1030(g) ......................................................................................... 7, 8

Utah Code Ann. § 13-5a-102(4) ......................................................................... 10

**Regulations**

45 C.F.R. § 171.204 (a)(4)(iii) ............................................................................. 3

85 Fed. Reg. 25642 ........................................................................................... 16

88 Fed. Reg. 23746-01 ......................................................................................... 3

The Court has before it two competing preliminary-injunction motions. The first, Vyne's, seeks to *preserve* access for about 7,000 Vyne customers to their own EHI on their own computers, through printer-driver technology used for over 20 years. The second motion, HSOne's, seeks to *disrupt* the workflows of these 7,000 dental practices by blocking *all* Vyne users' access to and use of their EHI, and to proscribe features used by joint customers for many years. HSOne is not shy that this is what it wants: it says it wants to block access to "its systems and patient data from unauthorized third parties—Vyne and others." Opp.24. But the evidence at the hearing established Vyne's entitlement to a status-quo-preserving order, and demonstrated the complete lack of a basis for entering the disfavored, mandatory injunction that HSOne seeks disrupting the status-quo.

## I.      VYNE IS LIKELY TO PREVAIL ON ITS CLAIMS

HSOne does not dispute its key admissions establishing its liability: (i) Vyne integrated with Dentrix for over twenty years with print capture, Weatherly 355:10-12; (ii) HSOne blocked Vyne's print driver, *id.* 355:20-356:4; (iii) HSOne knew this would disrupt Vyne customer workflows and prevent access to their EHI, *id.*; (iv) HSOne did not know of any Vyne security or data breach, *id.* 396:13-23, McDaniel 617:8-16; (v) HSOne made false claims to customers while offering them discounts to switch to Dentrix's new eClaims product, Weatherly 362:1-25; PX002; PX033, PX306; and (vi) all the while, HSOne used print drivers for its own products without telling customers that they posed a security risk, having determined any such risks were tolerable, Weatherly 362:16-363:5. HSOne does not even try to substantiate what it falsely told customers— that Vyne's print capture function poses a security issue. And HSOne's responses are meritless.

**1.** The Cures Act applies to entities with discretion or control over technologies governing access, exchange, and use of EHI among more than two entities. 45 C.F.R. § 171.102. Dentrix does this. As HSOne concedes, dentists use Dentrix "to interact with patients and various entities." Opp.25 (Dkt. 144). Roughly 100,000 dentists exchange EHI with up to 100 third-party vendors.

VBr.16 (Dkt. 130). That is a network. HSOne is just like PointClickCare—which hosts medical records, offers add-on services, and facilitates EHI exchange between nursing homes, patients, and third-parties. *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 214 (4th Cir. 2025). Consider also NCQA, which HSOne concedes is an HIE; it stores EHI from healthcare organizations and exchanges analytics with third parties, Opp.16, just like Dentrix.

**2.** Vyne showed the security exception does not apply because HSOne blocked EHI in a discriminatory way, not tailored to the confidentiality, integrity, or availability of EHI. VBr.19-25. HSOne responds with a single sentence referencing "admissions and evidence" elsewhere in its brief. Opp.26. This does not satisfy HSOne's burden, at all. Contrary to what it told customers, HSOne's brief nowhere shows the print driver poses security issues (*cf.* VBr.19-22), with Youssef having testified that "[t]he printer driver itself … is not on its own malicious." 480:14-23. HSOne is left to argue that VDP, a software package containing the third-party printer driver, *also* has had code allowing database integration. Opp.8-9. So what? Vyne seeks to enjoin interference with *print capture*. As Vyne showed and HSOne nowhere disproves with evidence, this is completely distinct from the database-integration function, used for ODBC access for many years, and more recently used for Quickbills and remediation (all ceased or deprecating). VBr.7-11. Currently, database integration is used optionally, *only* for patient engagement and ledger writeback, and remains distinct from the print-driver. *Id.*; Clip 635:22-636:11. And Youssef conceded that he **did not know** whether "Vyne could use their printer driver alone" without database access. PX312.109:10-16. Regardless, none of this could justify HSOne's conduct in blocking the print driver in April or shutting down Vyne's software in September. VBr.22-24. HSOne does not show otherwise.

**3.** HSOne has not met the manner exception. The sticking point today (*after* the blocking began) is not API fees, as HSOne claims, but HSOne's decision to condition Vyne's EHI access

on Vyne agreeing not to compete with HSOne on certain retail services. HSOne gives up the game when it says it met its burden by offering "a back-end clearinghouse integration." Opp.26-27. Vyne has long offered full RCM—far more than a clearinghouse—and HSOne wants Vyne to stop competing in that space. VBr.11-13. The parties would have a deal if HSOne did not condition it on Vyne agreeing not to compete. *Real Time*, 131 F.4th at 233 (rejecting manner exception in these circumstances); *cf. IntusCare, Inc. v. RTZ Assoc., Inc.*, 2025 WL 3500667, at *1 (N.D. Cal. Sept. 18, 2025) (defendant refused NDA after briefly accessing EHI without plaintiffs' knowledge). That aside, HSOne also failed to meet the exhaustion requirement as it never offered "two alternative[s]"[1] that work—manual entry is not one, nor were adequate API tools offered. McDaniel 619:1-13, 620:24-621:1 (conceding API does not provide claims, imaging, or clearinghouse needs); Roberts 191:18-192:7 (testifying HSOne refused to build API functionality for four of five access points Vyne needed). This exception plainly fails.

**4.** HSOne also competed unfairly independently of the Cures Act, because HSOne is unfairly and "substantially interfering" with Vyne's "ability to compete." *Paccar Inc. v. Elliot Wilson Cap. Trucks LLC*, 905 F. Supp. 2d 675, 691 (D. Md. 2012) ("disparaging remarks" to customers). HSOne's indeed made false statements about a "Vyne security breach" (PX002.2), disabled Vyne's print driver while maintaining its own drivers (including to integrate with other PMS software), and disabled software with a "certificate issued by Vyne" (McDaniel 617:17-23).

**5.** HSOne also interfered with Vyne's business relations. Consider *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, where the Ninth Circuit held a software company could prove tortious interference by showing a competitor falsely labelled its software as a "threat" and "potentially unwanted program," "preselected [its] software for deletion," and "induced []

---

[1] *See* 45 C.F.R. § 171.204(a)(4)(iii) (two-alternatives requirement); 88 F.R. 23746-01 at 23869 (this ensures the manner exception does not reduce "incentive to expand [] capabilities to support access, exchange, or use of EHI").

customers to choose either not to install, or to delete, [its] programs." 69 F.4th 665, 677 (2023). So too here. As HSOne's witnesses admitted, they labelled Vyne's printer driver a threat, blocked it from working, and caused an (ongoing) loss of customers—while continuing to offer its own customers print capture functions. Tellingly, their brief does not even attempt to show otherwise.[2]

## II.       HSONE'S CLAIMS ARE LIKELY TO FAIL

Turning to HSOne's motion, four simple facts doom its claims.[3] *First*, the version of Dentrix at issue is installed on dental practices' computers. McDaniel 614:14-17. *Second,* HSOne does not claim copyright or ownership over data that Vyne reads or writes on those computers, Weatherly 351:1-3; Nix 251:1-14, and HSOne permits dental practices to read and write the same data. Roberts 142:15-143:5, 203:6-10; McDaniel 618:22-25; Clip 638:8-639:1. *Third*, dental practices authorize Vyne's access to their computers and EHI, including to read and write it. Nix 261:21-262:6; 334:19-22; Roberts Dec., Dkt. 6-2 ¶ 8; Clip 649:12-20, 650:22-651:7. *Fourth*, Vyne does not access any HSOne computer, server, or website. Nix 257:15-18, 276:17-21; 343:2-9. As these facts defeat liability, and given limited space, we do not respond to all of HSOne's made-up claims about the record, many of which come without citation and others of which are rebutted by the very evidence HSOne cites. The Court should hold that HSOne is unlikely to prevail.

### A.       The Computer Fraud and Abuse Act ("CFAA") Claims Fail

The CFAA proscribes access unauthorized by the computer owner,[4] and prohibits two

---

[2] HSOne argues Vyne's CEO retracted from the position that select statements were false, which misstates the record. *Compare* Opp.28, *with* Roberts 247:4-8 (testifying HSOne statements Vyne requires "manually attaching images" and "typing in CDT codes" were "false statements about the product"), 82:17-83:11, 183:1-5 (explaining the value Vyne adds today is automating those functions).  Far more false statements, including that Vyne had a "security breach" and "is no longer going to be HIPAA complaint," go unanswered. *See* VBr.2, 13; PX306; PX300.

[3] HSOne's brief abandons its wiretapping claims, which fail on the law (Dkt. 52, 81, 96), and on the record given the undisputed evidence that Vyne is the intended recipient of its customers' EHI. *See infra* 6.

[4] *Oce N. Am., Inc. v. MCS Servs., Inc.,* 748 F. Supp. 2d 481, 485-88 (D. Md. 2010) (despite allegations of software misuse, there is no CFAA liability when defendants accessed computers with the owner's authorization); *Role Models America, Inc. v. Jones,* 305 F.Supp.2d 564, 567 (D. Md. 2004) (same).

types of digital trespass: (i) access *without authorization* which refers to "outside hackers—those who access a computer without any permission at all"; and (ii) access that *exceeds authorization* which refers to "inside hackers—those who access a computer with permission, but then exceed the parameters of authorized access by entering an [unauthorized] area." *Van Buren v. United States*, 593 U.S. 374, 389-90 (2021). Both use a "gates-up-or-down inquiry," as "one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Id.* The claim fails under both theories.

**1.** At the outset, the record debunks any claim that Vyne is anything like an "outside hacker" that accessed computers "without" any authorization of the computer owners. *Id.* As HSOne admits, Dentrix does not own or control any of the computer systems that Vyne accesses. McDaniel 608:10-11, 614:18-20. The Dentrix version at issue is an "on-premises solution" that "stores patient data on a local computer of the dentist." McDaniel 614:14-20; *id.* 608:10-11; Weatherly 351:1-3. That Dentrix version is "ideal for practices that want local installation and access to their data and systems"; it is "[i]nstalled locally on office computers"; and it stores EHI on "practice-managed" servers.[5] Dental practices authorized Vyne to access that EHI on their own computers—including to read and write EHI on Dentrix databases on their own local computers—by licensing and installing the software, and via contract provisions. VBr.5-7; HS066. Vyne Trellis was plainly on computers with their owners' permission, so Vyne is no "outside hacker."

HSOne also cannot show "inside" hacking, namely that Vyne "exceeded" dentists' authorization. HSOne invokes three CFAA provisions, but two of them are plainly inapt. One does not cover claims of access in excess of authority, *see* § 1030(a)(5)(C), while another addresses fraud claims, § 1030(a)(4), but no fraud was shown. That leaves § 1030(a)(2)(C), which targets

---

[5] HSOne, *About Us*, https://www.dentrix.com/about-us/dentrix-or-dentrix-ascend/ (accessed 2-27-2026).

those who "intentionally access[] a computer without authorization or exceed[] authorized access, and thereby obtain[] … information from any protected computer." But HSOne adduces zero evidence that Vyne "obtained … information" that dental practices did not want to send to Vyne.

To the contrary, the record establishes that practices authorized Vyne to read EHI from their computers—by licensing, installing, and operating Vyne Trellis. Roberts 94:20-95:3, Clip 636:12-24, 650:22-651:7; Nix 263:23-264:25, 322:15-25. By contract, the customers "grant[ed] Vyne Dental full agency and authority" to "access, retrieve, use, and export" their data, as well as "to send written data access and interoperability requests directly to third-party vendors, platforms, or custodians of such data on Customer's behalf." HS066. To send EHI via the printer driver, "the dental office [] chooses Vyne, and then routes the claims to the Vyne systems via the printer driver." Clip 649:16-18. The same is true of eTrans, Nix 277:15-278:7, and billing statements, PX311.64 ("By clicking Continue, you are opting to send your statements through Vyne Trellis instead of your existing statement provider."). That is authorization.[6] *And*, though not relevant here as the statute bars "obtain[ing]" information rather than writing it, Vyne had consent for that, too.[7]

**2.** None of HSOne's efforts to salvage its CFAA claim works. *First*, citing three cases, HSOne says it did not give consent and "a practice's consent is not sufficient." Opp.9. These prove Vyne's point, as all three cases did concern access not authorized by the owner of the computer or server.[8] Courts reject HSOne's liability theory. *SecureInfo Corp. v. Telos Corp.*, 387 F.Supp.2d

---

[6] *See, e.g., Abu v. Dickson,* 107 F. 4th 508, 515 (6th Cir. 2024) ("Having 'authorization' means having 'sanction or permission,'" which "might be affected by contracts between the two parties"); *Contour Data Solutions LLC v. Gridforce Energy Management LLC*, 2024 WL 3970455, at *18 (E.D. Pa. Aug. 28, 2024) (holding that due to "contractual authorization to access the information contained in the IT System, any misuse of that information does not give rise to liability under the CFAA."); *SecureInfo Corp. v. Telos Corp.*, 387 F.Supp.2d 593, 609 (E.D. Va. 2005) (finding software licensee authorized access to its computer, notwithstanding breach of its license agreements).

[7] To enable write features—*e.g.,* automatic posting of payments or scheduling reminders—practices sign up, pay for, install, and run those services. Roberts 94:20-95:3, Clip 650:22-651:7; *see also* HS066.

[8] Opp.9-10, citing *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1063, 1066 (9th Cir. 2016) (accessing "Facebook's computers," causing Facebook to send emails "from Facebook" and signed "The Facebook Team"); *Phreesia, Inc. v. Certify Glob., Inc.*, 2022 WL 911207, at *3-5 (D. Md. Mar. 29, 2022) (accessing "the Phreesia

593, 609 (E.D. Va. 2005) (holding software licensee authorized access to software on its computer and private server); *ATPAC, Inc. v. Aptitude Sols., Inc.*, 2010 WL 1779901, at *6 (E.D. Cal. Apr. 29, 2010) (same). Vyne did not access HSOne's "website, computers, or servers." *Id.* at *6.

*Second*, it is also irrelevant that the CFAA grants a right of action to "any person who suffers damage or loss by reason of a violation," § 1030(g). Opp.11. There must still be a violation—*i.e.*, access without (or in excess of) authorization of the computer owner.

*Third*, Vyne does not access HSOne's "cloud infrastructure" (Opp.11-12) or a "Dentrix database" (Opp.2) outside dentists' computers. HSOne's lengthy recitation of alleged misconduct makes that clear, describing access on dentists' computers. Opp.4-9. HSOne's evidence indeed comes from telemetry deployed *on dentists computers* to find out what "software is running next to Dentrix." McDaniel 608:6-11. ███████████████

███████████████████████████████████████

███████████ HSOne says that dentists' computers "communicate" with HSOne's cloud, Opp.11, but even if true, there is zero evidence that Vyne accesses HSOne's servers.

*Fourth*, HSOne's social-engineering argument is preposterous and legally irrelevant. Customers gave Vyne "full agency and authority" to access, read, and write EHI, including by contract, installation, payment, and providing credentials. *Supra* 6. That is not "casually inferred" consent. Opp.10. And HSOne does not dispute Vyne integrates to provide services. Far from being malicious, "Vyne is a healthcare company . . . trying to serve its customers." Clip 650:15-651:7.

*Finally*, as HSOne seeks relief by alleging "Vyne is careless with its systems and actions," Opp.19, the CFAA claim also fails because it is based on "negligent design" of software, § 1030(g).

---

System"—i.e., "its servers"—with fraudulent account); *State Analysis, Inc. v. American Financial Services Assoc.*, 621 F.Supp.2d 309, 314 (E.D. Va. 2009) ("intentionally accessing [plaintiff's] server without authorization").
⁹███████████████████████████████████

### B.    The Digital Millennium Copyright Act ("DMCA") Claim Fails

HSOne's DMCA claim fails because the Fourth Circuit has made clear that any claimed "circumvention" of a "technological measure" must "infringe[] or facilitate[] infringing" a copyright. *Chambers v. Amazon.com, Inc.*, 632 Fed. App'x 742, 744 (4th Cir. 2015). HSOne does not even try to argue it meets this burden, never even using the verbs infringe or copy. That is fatal to its claim. *Id.*; *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1197 (Fed. Cir. 2004) (measure bypassed to access software to permit interoperability; no liability). The Court can stop here and reject the claim, but for completeness, Vyne addresses the other elements.

*First*, HSOne has not identified a DMCA "technological measure"—one that "would have protected a copyright." *Chambers*, 632 Fed.Appx. at 744. HSOne claims it "employs a multi-layered encryption process that controls access to the Dentrix copyrighted software system." Opp.13. But that misstates what the encryption does. It "protect[s] data," including ensuring one user's data cannot be accessed by another, by encrypting dentists' credentials with GUID-padding stored in Windows. McDaniel 598:1-15.

Crucially, HSOne does not claim ownership—"by way of copyright or otherwise"—to that data. Weatherly 351:1-3. That defeats liability, as does the fact that dental practices can read and write the same data directly on their user interfaces. *Supra* 4; *Lexmark Int'l v. Static Control Components*, 387 F.3d 522, 547 (6th Cir.2004) (DMCA "does not naturally extend to a technological measure that restricts one form of access but leaves another route wide open"); *Chamberlain Grp.,* 381 F.3d at 1201 (DMCA does not allow companies to "wrap the copyrighted material in a trivial 'encryption' scheme, and thereby gain the right to restrict consumers' rights to use its products in conjunction with competing products."). And not that it matters, but contrary to HSOne's accusation that Vyne's CTO made "an intentional misstatement" or had "his head in the

sand" as to Vyne's decryption method, Opp.1, the record shows the opposite. In fact, Nix and Rencher both testified to exactly the same effect.[10]

*Second*, HSOne cannot show "circumvention." Use of a measure offered by a copyright holder, such as "a password or security code to access a copyrighted work, even without authorization, does not constitute circumvention under the DMCA." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 692 (D. Md. 2011).[11] Nothing more occurs here.

*Finally*, to the extent HSOne's chameleon claim is now that Vyne is "reverse engineering" software to "access [] the Dentrix software system," that claim is not just unsupported (as explained) but also implicates the safe harbor allowing circumvention to "enabl[e] interoperability of an independently created computer program with other programs." 17 U.S.C. § 1201(f)(2). That complete defense protects "interoperability"—i.e., "the ability of computer programs to exchange information, and of such programs mutually to use the information which has been exchanged." *Id.* § 1201(f)(4); *see also Lexmark*, 387 F.3d at 550-51. That is what HSOne claims Vyne is doing.

### C.    HSOne's Trespass to Chattels Claim Fails

The Fourth Circuit has urged "particular caution" when state courts "appear never to have recognized this tort based upon intangible invasions of computer resources," *Omega World Travel,*

---

[10] *Compare* Nix 264:16-25("[W]hen the office installs [] VyneSync . . . they install it under their credentials on the Windows machine, which then allows them, when VyneSync runs, [] to request the credentials from the dtx.config file from the Windows DP API that has it stored encrypted and get that file back with the credentials in it.  It then processes that with an algorithm that Vyne has, builds a connection stream and connects via ODBC to the database."), *with* Rencher 534:7-13 (explaining "what's happening here is on the machines in the dentist's offices, an executable called VyneSync.service.exe is attempting to grab the [dtx.config] into its memory space and extract credentials").

[11] *See also I.M.S. Inquiry Mgmt. Sys. v. Berkshire Information Sys., Inc.,* 307 F.Supp.2d 521, 532-33 (S.D.N.Y.2004) (holding defendant "used a password intentionally issued by plaintiff to another entity," and the DMCA "do[es] not target this sort of activity"); *Egilman v. Keller & Heckman, LLP.*, 401 F.Supp.2d 105 (D.C. Cir. 2005) (same); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F.Supp.2d 878, 889 (N.D. Ohio 2009) (same).

9

*Inc. v. Mummagraphics, Inc.,* 469 F.3d 348, 359 (4th Cir. 2006), which is the case for Utah. *Vox Marketing Grp. v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1290 (D. Utah 2021).[12]

And the claim fails. To start, there is no chattel, as "trespass to chattels does not protect most intangible property rights." *Lifestyle Realty, LLC v. Kirn*, 2024 WL 3784487, at \*9 (D. Md. Aug. 13, 2024) (Maddox, J.); *see also Kirkham v. Widdison*, 447 P.3d 89, 97 (Utah Ct. App. 2019); *Flight Attendants, AFL-CIO v. Skywest Airlines Inc.*, 2025 WL 3537390, at \*7 (D. Utah Dec. 9, 2025) (information on webpage not a chattel). And the claimed "trespass" here was on dentists' local computers with their consent—there is no HSOne "Dentrix database," cloud or otherwise, at issue. *Supra* 5, 7. The dentists' "[v]oluntary installation runs counter to the notion that the alleged act was a trespass." *Brodsky v. Apple, Inc.*, 445 F.Supp.3d 110, 123 (N.D. Cal. Apr. 7, 2020) (cleaned up) (dismissing claim two-factor authentication was a trespass, as users consent when "voluntarily turn[ing] on 2FA, install[ing] a software update, or creat[ing] a new Apple ID").

### D.    HSOne's Unfair-Competition Claims Fail

HSOne seems to have abandoned its statutory unfair-competition claim. Anyway, "injunctive relief [is] not a remedy under the Unfair Competition Act." *Stevens-Henager College v. Eagle Gate College et al.*, 248 P.3d 1025, 1029 (Utah Ct. App. 2011). There was no evidence of any conduct "lead[ing] to a material diminution in value of intellectual property." Utah Code Ann. § 13-5a-102(4); *Diamonds Direct, L.C. v. Manly Bands*, 2024 WL 4818827, at \*10 (D. Utah Nov. 18, 2024). Nor was there evidence of "(A) malicious cyber activity; (B) infringement of a patent, trademark, or trade name; (C) a software license violation; or (D) predatory hiring practice," Utah Code Ann. § 13-5a-102(4), where "malicious cyber activity" means an "unlawful

---

[12] HSOne's case, *Nassi v. Hatsis*, treats trespass to chattels and conversion the same only because "the parties on appeal have [done so]." 525 P.3d 117, 122, n.10 (Utah Ct. App. 2023).

use of computing resources to intimidate or coerce others." *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 2024 WL 2391163, at *3 (D. Utah May 23, 2024) (dismissing claim).

HSOne also cannot prevail on a common-law claim. In Utah, that claim concerns conduct likely to cause "consumer confusion or deception" as to the source of goods or services, such as "passing off, palming off, or imitating." *Overstock.com, Inc. v. SmartBargains, Inc.*, 192 P.3d 858, 862 (Utah 2008) (citation omitted); *Rocky Mountain Bell Tel. Co. v. Utah Indep. Tel. Co.*, 88 P. 26, 28 (Utah 1906). Citing no law, HSOne newly argues that Vyne competed unfairly by preserving interoperability with Dentrix without paying API fees. This cannot establish liability, and it fails on the facts. As Roberts testified (110:13-18, 140:4-5), Vyne *wants* to join that program and *wants* to pay. But HSOne conditioned it on Vyne agreeing not to compete. *Supra* 2-3. Vyne's choice to compete on the merits—using integration methods it has for many years—is not unfair.[13]

### E.    HSOne's Tortious Interference Claim Is Waived and Fails

HSOne's injunction motion did not claim tortious interference. Dkt. 46-1. Waiver aside, the claim fails. HSOne did not introduce a single HSOne customer contract that it claims Vyne interfered with, and no HSOne witness testified that "[e]very dental practice that installs Vyne's software" is in breach of contract, Opp.15—an assertion the cited declaration and email chain do not support. Nor does HSOne have evidence of Vyne's intent to induce a breach. The record shows Vyne's intent was to continue serving its customers as it has for decades—consistent with Vyne's own economic interest and contracts. That is not tortious interference. *Cf. C.R. England v. Swift Transp. Co.*, 437 P.3d 343, 347 (Utah 2019) (holding this claim "has always required some proof that the alleged interference was done with some level of impropriety").

---

[13] HSOne misstates the record on Vyne using the API program. Opp.15; *cf.* Roberts 214:17-25 (testifying "Vyne acquired a company in 2021 that was a member of the program," and tried to "extend it to include Vyne's software . . . and we were unable to"); McDaniel 621:5-8 (agreeing Vyne "was not using that API to obtain claims data").

11

### III.    THE REMAINING FACTORS FAVOR VYNE

#### A.    Vyne Stands To Suffer Irreparable Harm

Vyne explained why it stands to suffer irreparable harm absent an injunction against HSOne blocking the print-driver and continuing its unfair-competition campaign. VBr.27-30. Vyne would suffer the same injury should the Court enter HSOne's injunction. Indeed, Vyne's core business is at risk. Vyne has already lost 500 joint customers, over 130 of which reported leaving because of HSOne's conduct and hundreds more "didn't say" why they left. Roberts 181:1-12. Far more have taken to social media or calls to Vyne to express their upset, reflecting ongoing damage to Vyne's reputation and goodwill. PX300; PX306; Roberts 124:7-18 (Vyne "received hundreds of inbound phone calls from very frustrated practices feeling like they were being strong-armed into a different solution" by HSOne). HSOne admits it can earn more money by stealing Vyne's customers than by charging API fees. Weatherly 400:3-402:2. And it even asks this Court to help with that. Dkt. 46-1 at 26 (seeking order that Vyne "cooperate" with moving customers to competing products). As Roberts testified, the "core of our product offering" needs interoperability and is at stake. *Id.* 183:1-5. All of this shows irreparable harm under Fourth Circuit law.

#### B.    HSOne Has Not Shown It Will Suffer Irreparable Harm

Before the hearing, HSOne's irreparable-harm arguments fixated on conduct that is no longer occurring or being deprecated: Vyne patching EHI access and using Vyne Sync to enable dentists to use Quickbill to send EHI (the "911911911" issue). Dkt. 46-1 at 23; Nix 280:24-282:5. Today, HSOne can only complain about Vyne's use of its print-driver, and of Vyne Sync for patient engagement and ledger write-back. HSOne has adduced ***no evidence*** of harm to anyone caused by either function, let alone irreparable harm to *itself*. That dooms its motion.

Claiming irreparable harm, HSOne begins by saying, "[i]n cybersecurity, 'you only know what you know and you don't know what you don't know.'" Opp.16 (quoting Youssef 468:7-16).

That tells the Court all it needs to know. HSOne calls the *Winter* standard "familiar," Opp.4n.1, but appears to forget its holding: "Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction" and reliance on "only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy[.]" *Winter v. NRDC*, 555 U.S. 7, 22 (2008). The baseless claim that Vyne "paved the way for other malicious actors" doesn't cut it. Opp.17-20.



Next, HSOne points to a document supposedly showing that, over the course of 24 hours, there were approximately one million instances of Vyne Sync accessing Dentrix databases on dentists' computers.[14] HS248. HSOne insists—without evidence or explanation other than its CTO's say-so—that this proves data corruption or disruption to HSOne systems. But as HSOne's

---

[14] To put this number in perspective, if that is spread out across the 20% of users that Mr. Roberts estimated were using Vyne Sync for patient engagement or ledger write back, this corresponds to approximately 714 times per practice, over the course of 24 hours. That makes sense. Patient engagement alone spans everything from "sending [patients] a reminder or just a campaign saying, hey, it's time to clean your teeth or sending them a notification that their bill's due or a notification about the appointment or providing them . . . information around the office hours." Nix 269:21-370:2. And, another 950,000 points of access were unrelated to Vyne, including HSOne's API. HS248.

CTO admitted, that document only shows that Vyne customers could use Vyne Sync to read or write EHI on their own computers, as they have done for years. HS248; Rencher 570:12-577:15. HSOne speculates that corruption is possible, but it has offered no evidence of it. And HSOne's "access" spreadsheet shows even less: it shows only a competitor's "application present on the machine." *Id.* 577:16-579:7. These exhibits fail to show *any* actual or likely harm whatsoever.

HSOne cites its CTO's testimony that database access caused slowdowns. But there is no corroborating evidence. And again, any slow-down would be on dentists' computers (not HSOne's) based on services those practices authorized. *See Apple, Inc.*, 445 F.Supp.3d at 123. Moreover, if HSOne really believed that providing Vyne ODBC access caused slowdowns, it would not have offered using its API—which uses the same technology. Nix 266:14.

The only harm to itself that HSOne really identifies relates to its own reputation, and the claim that HSOne got blamed for Vyne not working. That is because HSOne *is* to blame: it intentionally disrupted Vyne customers' workflows. That is no basis to enjoin Vyne. In fact, *Winter* dooms HSOne's motion. And if any doubt remained, consider what HSOne's parent company told the markets after the hearing, on February 26, 2026: That HSOne had experienced ***no material cybersecurity incident*** that could be relevant here.[15] So, either its statements to this Court and consumers are greatly exaggerated, or its parent company is committing securities fraud.

### C.    The Balance of the Equities and Public Interest Favor Vyne

The balance of the equities tips sharply in Vyne's favor on both motions. Vyne seeks a preliminary injunction to *preserve* the status quo, while HSOne seeks a "disfavored" "mandatory" order that would *upend* it, immediately preventing Vyne Trellis from operating with Dentrix, not

---

[15] Henry Schein, Inc., SEC 10-K (Feb. 26, 2026), https://bit.ly/40inHIE (disclosing "[s]ecurity risks generally associated with our information systems" as follows: "In addition to immaterial and unrelated incidents at certain of our subsidiaries, in October 2023 Henry Schein experienced a cybersecurity incident that primarily affected the operations of our North American and European dental and medical distribution businesses").

just through ODBC but also the print driver as their joint customers have done for decades. *League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 235-236 (4th Cir. 2014).

*First*, the equities favor preserving Vyne's print driver, enjoining HSOne's anticompetitive conduct, and forcing HSOne to treat Vyne's print-driver functionality in the same way as it treats its own drivers (including the EDS driver). HS One's brief ignores HSOne's single most damning admission: that HS One itself uses print capture. What is good for the goose is good for the gander.

*Second*, the equities also favor denying HSOne's motion for a mandatory injunction blocking Vyne's longstanding ODBC access for patient engagement and ledger write-back. Although Vyne has not used this method of integration for as long as the printer driver, it has done so openly—and with HS One's knowledge—for years. Nix 263:17-269:12; Roberts 220:4-15. As explained, there is *zero* evidence that these functions have ever caused or will cause irreparable harm to HSOne. No evidence showed database corruption or slowed performance to HSOne's own systems—nor would that justify a mandatory, status-quo-altering injunction.

*Finally*, the public interest favors granting Vyne's motion and denying HS One's. The Cures Act was designed to foster safe and open "access, exchange, and use of electronic health information (EHI)." 85 Fed. Reg. 25642, 25643. Blocking Vyne's integrations with Dentrix—and thus their joint customers' access to their own EHI stored on Dentrix—would fundamentally undermine those purposes. That includes, as implementing regulations make clear, when a software publisher tries to undermine the Cures Act by imposing software restrictions alleged to "trigger liability under the Digital Millenium Copyright Act [] or other laws." *Id.* at 25813.

### CONCLUSION

The Court should preserve the status quo. It should enter the prohibitory injunction Vyne requests and deny the mandatory injunction requested by HS One.

Respectfully submitted,

/s/ *Vincent Levy*
Michael Shuster (pro hac vice)
Vincent Levy (pro hac vice)
Charlotte Baigent (pro hac vice)
James Campbell (pro hac vice)
Daniel Fahrenthold (pro hac vice)
Torrell Mills (pro hac vice)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com

K. Nichole Nesbitt (Bar No. 26137)
Derek M. Stikeleather (Bar No. 27815)
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4026
knn@gdldlaw.com
dstikeleather@gdldlaw.com

*Attorneys for Plaintiff National Electronic
Attachment, Inc. d/b/a Vyne Dental*

16