**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

|  |  |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>　　　　　　　　　Plaintiff,<br><br>　　　- against –<br><br>HENRY SCHEIN ONE, LLC,<br><br>　　　　　　　　　Defendant. | **Case No. 1:25-cv-03246-MJM** |

**HENRY SCHEIN ONE, LLC'S RESPONSE TO VYNE'S POST-ARGUMENT MEMORANDUM OF LAW RE: AVOIDING UNDUE HARM IN CRAFTING A WRITE-BACK INJUNCTION**

ACTIVE 722048886v6

## I.    If the Court Enjoins Vyne Write Back, Vyne Could Still Use the Print Driver.

The Court made a clear and direct ask of the parties: can Vyne still use the print driver if the Court enjoins write back access to HSOne's systems. (Tr. 118:23-119:1.) HSOne will answer the question, even if Vyne did not. HSOne also understood the Court's instruction to be for Vyne to submit a proposal explaining how an injunction that prohibits it from writing back to the database should be written. (Tr. (ECF No. 159) 118:21-119:3.) HSOne remains concerned that Vyne's use of the printer driver is not so limited or straightforward as Vyne has portrayed it. Vyne has used the driver as part of its wholesale invasion of HSOne's systems. But to answer the Court's question: it should be technically feasible for Vyne to use the print driver without writing back to HSOne's database. Given that Vyne has used the print driver in nefarious ways, Vyne's continued use of it would benefit from monitoring for enforcement of the injunction. HSOne submits a proposed injunction as Exhibit A that responds to the Court's inquiry, as Vyne did not.

Because Vyne did not follow the Court's instructions, it would be appropriate to strike the legal argument in Vyne's brief. To the extent the Court had questions regarding (a) how to approach the balance of equities in crafting the injunction against Vyne; and (b) whether read access security risks are sufficiently concrete under *Winter* to justify a preliminary injunction, HSOne provides what it believes may be helpful authority for the Court's consideration. HSOne also responds to Vyne's arguments as well.

## II.    Irreparable Harm and Balance of the Equities Weigh in Favor of HSOne.

### A.    The Court Need Not Consider the Harm to Vyne in Its Equities Analysis.

The Court explained that it was inclined to grant a PI to HSOne because HSOne had shown a likelihood of success on the merits of its CFAA claim and irreparable harm had been established. (Tr. (ECF No. 159) 118:12-13, 119:8-10.) Given that Vyne is violating the CFAA, DMCA, tortiously interfering, unfairly competing, and trespassing, among other things, the Court does not

1

need to consider harm to Vyne caused by an injunction that simply orders Vyne to obey the law.

"Before issuing an injunction, the Court must balance the relative hardship to each side. But the Court need not consider the 'hardship' to a defendant whose conduct is 'unlawful.'" *Florida Atl. Univ. Bd. of Trustees v. Parsont*, 465 F. Supp. 3d 1279, 1297 (S.D. Fla. 2020); *see also Di Biase v. SPX Corp.*, 872 F.3d 224, 235 (4th Cir. 2017); *AMF Bowling Centers, Inc. v. Tanase*, No. 3:23-CV-448–HEH, 2025 WL 1132327, at *5 (E.D. Va. Apr. 16, 2025), aff'd, No. 25-1546, 2025 WL 2231843 (4th Cir. Aug. 1, 2025) (permanently enjoined defendant from further breaching the CFAA, noting defendant had "no legitimate interest in continued illicit access and thus, he suffers no hardship from being precluded from doing so.").[1]

In *Splitfish AG v. Bannco Corp.*, the court found the equities tipped in plaintiffs' favor and defendants should not benefit from their wrongful conduct in building their business based on unlawful use of plaintiff's product. *See* 727 F. Supp. 2d 461, 468 (E.D. Va. 2010). In *Synopsys, Inc. v. AzurEngine Techs., Inc.*, the balance of the equities weighed in plaintiff's favor, because "any benefit AzurEngine has received from impermissibly accessing Synopsys' software was ill-gotten. That it may prefer to continue using the software doesn't mean it is entitled as a matter of law to do so." 401 F. Supp. 3d at 1074–75 (S.D. Cal. 2019). Vyne's business model is similarly based on its unlawful access to HSOne's systems. "[I]t is incumbent on parties to ensure they are not violating the law, not on the Court to rescue them when they've done so, and nothing prevents AzurEngine from now lawfully acquiring a license from Synopsys by paying for it." *Id.*; *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 249 (S.D.N.Y. 2000), aff'd as modified, 356

---

[1] *See also Whatsapp Inc. v. NSO Group Techs. Ltd.*, No. 19-CV-07123-PJH, 2025 WL 3688133, at *4 (N.D. Cal. Dec. 19, 2025) (finding "persuasive the 'long-settled principle that harm caused by illegal conduct does not merit significant equitable protection.'")*MediaOne of Delaware, Inc. v. E & A Beepers & Cellulars,* 43 F. Supp. 2d 1348, 1354 (S.D. Fla. 1998) (a defendant suffers no hardship when an injunction "will merely enjoin [the defendant] from conducting a business which is already prohibited by state and federal law"); *YourNetDating, Inc. v. Mitchell*, 88 F. Supp. 2d 870, 872 (N.D. Ill. 2000) (defendants "will suffer no legitimate harm of which they can complain if the [injunction] is granted because they have no honest business hacking [plaintiff's] system and diverting [] customers…").

ACTIVE 722048886v6

F.3d 393 (2d Cir. 2004); *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1027 (S.D. Ohio 1997).

### B.　HSOne has demonstrated irreparable harm based on the risk.

The Court at the hearing asked whether security risk from unauthorized access alone—read or write—was sufficient under *Winter* where a breach had not yet occurred (or been detected).  It is.  "[F]ederal courts around the country agree that the interference with an entity's control of its computer systems constitutes irreparable injury."  *Florida Atl. Univ. Bd. of Trustees*, 465 F. Supp. 3d at 1296; *see also AT&T Services, Inc. et al. v. T-Mobile US Inc.*, Civ. Action No. 3:25-CV-3279-S, N.D. Tex. (ECF No. 30) (Dec. 18, 2025) (irreparable harm includes interference with an entity's right to control its systems and data as well as harm to reputation, noting that although T-Mobile stopped, it did so only because AT&T blocked it and the threat of harm remained because T-Mobile intended to continue).  The Court need not wait for the effects of a catastrophic data breach caused by Vyne's conduct to find irreparable harm.  (HSOne PH-Br. 17-22).

In *Florida Atl. Univ. Bd. of Trustees v. Parsont*, the court found irreparable harm even from read-only access because the defendants' actions would impair the integrity of FAU's "proprietary computer system," noting "[w]ere the Court to permit the Defendants to continue accessing FAU's servers, FAU could never be certain that it was adequately protecting its students' proprietary information….[I]ts failure to protect that information could expose the University to liability."  *See id.* at 1296-97.  The court in *New York v. Trump* also explained that, although the "mere possibility of irreparable harm is insufficient," plaintiffs "need only show that there is a 'threat of irreparable harm, not that irreparable harm already [has] occurred.'"  767 F. Supp. 3d 44, 83 (S.D.N.Y. 2025), opinion modified on denial of reconsideration, 778 F. Supp. 3d 578 (S.D.N.Y. 2025) and modified, 784 F. Supp. 3d 619 (S.D.N.Y. 2025) (citations omitted).  The court found irreparable harm from the risk of "expanded access" that could possibly compromise the systems to become "far more

3

vulnerable to hacking or activities that render the information corrupted or compromised." *See id.* at 83.[2]  In *Am. Fed'n of Gov't Employees, AFL-CIO v. U.S. Office of Pers. Mgmt.*, the court similarly found irreparable harm based on the potential risk created by unsafe access and disclosure of PII, rejecting that OPM abided by safeguards when the evidence showed otherwise, "increasing the risk of cybersecurity breaches." *See* 786 F. Supp. 3d 647, 693 (S.D.N.Y. 2025).  The court explained: "[L]ax cybersecurity is an ongoing risk…That its impact may not be apparent to the public for years does not mean that this risk is not serious or that it does not exist." *Id.* at 693-94. This authority, coupled with Mr. Youssef's testimony and other evidence, supports enjoining all of Vyne's illegal access, read and write.

### III.    The Court Should Enjoin Vyne from All Unauthorized Access.

#### A.    Vyne should be enjoined from any write back or unauthorized access.

Vyne wants to limit any injunction for write functions to the particular ODBC method described at the hearing.  (Vyne Br. 8.)  This is because, as Vyne admits[3], Vyne is already developing and moving on to other ways to access HSOne's database.  Vyne's argument that because there was no showing at the hearing that RPAs are illegal or caused HSOne harm the Court should not enjoin such conduct is wrong.  All of Vyne's arguments like this one here are premised on its purported entitlement to access HSOne's systems.  HSOne needs an injunction to stop any write back because Vyne has shown that it will not stop its unlawful access.

#### B.    The Court should not enjoin HSOne from being able to implement security controls for improper access.

HSOne has offered Vyne a print driver alternative with a ramp up period to continue to use

---

[2] *See Physicians Interactive v. Lathian Sys., Inc.*, 2003 WL 23018270, at *4 (E.D. Va. Dec. 5, 2003) (granting injunction based on risks because "electronic security systems are not foolproof"); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1073 (N.D. Cal. 2000) (injunction merited to stop harm from unauthorized access to database). HSOne also produced evidence of customer confusion and harm.  *Whatsapp Inc. v. NSO Group Techs. Ltd.*, 2025 WL 3688133, at *1 (N.D. Cal. Dec. 19, 2025) (defendant "went far beyond" authorized access by "reverse-engineering").
[3] (Roberts 182:22-183:10.)  Evidence since the hearing also proves this point.  (Tr. 19:11-20:7.)

4

its existing print driver until the alternative is ready, which Vyne rejected because it refuses to accept any limitations on its hacking and wants to unilaterally access Dentrix including unlimited write back and to use RPAs on its own terms. There is no need to condition an injunction on HSOne not disabling Vyne's print driver.

### C. Vyne is not entitled to a compliance period.

Rule 65 does not require courts to provide a transition period to stop the enjoined conduct.[4] Vyne relies on *U.S. Olympic Comm. v. Olympic Supply, Inc.*, (Vyne Br. 9), but that trademark case, which required changing logos on a variety of products shortly before the Olympics is distinguishable. The court also explained that defendant's conduct was not "particularly bold," which would justify denial of a compliance period. *See* 657 F. Supp. 2d 627, 629–30 (D. Md. 2009). Vyne's admitted unauthorized access is the type of "particularly bold" conduct that does not deserve a compliance period.[5] If the Court is inclined to allow a compliance period, the Court could consider putting protocols in place for monitoring Vyne's conduct.

### IV. Vyne's Last-Ditch Effort to Seek a Court-Ordered License to Hack HSOne Fails.

Vyne's arguments are contrary to the law and the facts, even if not stricken.

### A. Restricting HSOne's lawful security controls is not merited.

Vyne concedes that an injunction barring Vyne from writing back would not, itself, impair the print driver. (Vyne Br. (ECF No. 164) At 2.) But Vyne complains that such an injunction would prevent Vyne from writing back to work around any security controls HSOne might implement to prevent Vyne from using the print driver. HSOne has offered Vyne a print driver

---

[4] As Vyne well knows, any reference to Vyne's unauthorized access refers to Vyne's programs—e.g., Vyne Dental Plugin and VyneSync. (HSOne PH-Br. 8-9.)

[5] The other cases Vyne cites are also distinguishable—trademark cases that would require time to transition from the use of the infringing mark for products that were in distribution or perishable. *Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*, 875 F. Supp. 966, 984 (E.D.N.Y. 1994); *Copy Cop, Inc. v. Task Printing, Inc.*, 908 F. Supp. 37, 48 (D. Mass. 1995); *Mexican Food Specialties, Inc. v. Festida Foods, Ltd.*, 953 F. Supp. 846, 854 (E.D. Mich. 1997).

5

ACTIVE 722048886v6

alternative. The only thing stopping Vyne from having continued access to the data it is now getting through a print driver is Vyne. Vyne acknowledges that it will continue to hack Dentrix and make changes to Dentrix if HSOne takes actions to protect its software. Any "harm" from not letting Vyne write back to Dentrix and work around security measures is Vyne's own making.

### B.    An injunction against writing back would not be inequitable.

#### 1.    HSOne's systems should be protected from any write back.

Vyne should not be able to access any protected computer (including any software, or database, or cloud component) in a way that accesses or touches HSOne's database or systems without authorization. As this Court is aware, the CFAA protects HSOne's systems.[6] And a customer's uninformed consent does not excuse Vyne's unauthorized access.[7] Vyne in any event is accessing HSOne's database without HSOne's consent, violating the CFAA. *Phreesia, Inc. v. Certify Glob., Inc.*, No. DLB-21-678, 2022 WL 911207, at *1, 3, 6 (D. Md. Mar. 29, 2022). Vyne's statement that there is no basis to enjoin Vyne from accessing or writing to HSOne's computers, servers, or cloud, because Vyne's software never did[8] (Vyne Br. 3) is false, contradicted by the evidence, and should be struck.[9] (HSOne PH-Br. 4-9, 11-12; HSOne PH-Reply 3-8.)

#### 2.    Evidence of harm caused by Vyne's hacking is not limited to QuickBill.

Vyne distorts the facts surrounding the QuickBill issue to distract from its continued

---

[6] (HSOne Mot. for PI (ECF 46-1) 15-16; Reply ISO Mot. for PI (ECF 62) 3-6; Opp. to Vyne's MTD (ECF 84) 4-7; HSOne PH-Br (ECF 144) 11-12; HSOne PH Reply (ECF 155) 3-4.)

[7] (HSOne Mot. for PI (ECF 46-1) 15-17; Reply ISO Mot. for PI (ECF 62) 5-6; Opp. to Vyne's MTD (ECF 84) 7-10; HSOne PH-Br (ECF 144) 9-11; HSOne PH Reply (ECF 155) 2, 4.) The case Vyne cites (Vyne Br. 2-3) does not involve a CFAA claim and only notes a heightened showing for a mandatory injunction, which HSOne does not seek. See *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC,* 139 F.4th 404, 409 (4th Cir. 2025).

[8] Vyne cites *Fiber Sys. Intern., Inc. v. Roehrs*, 470 F.3d 1150, 1159 (5th Cir. 2006) to say that the court affirmed denial of injunction, "despite CFAA violation, as 'scope of injunctive relief is dictated by the extent of the violation established'" The case is distinguishable in that there, FSI had not shown ongoing or future hacking, which is obviously different that Vyne's ongoing access and its admission that it will continue.

[9] *Van Buren* supports HSOne, not Vyne. The court explained the type of access Vyne is guilty of here—"without any permission at all." *Van Buren v. United States*, 593 U.S. 374, 389-90 (2021).

unauthorized reading and writing.[10]  That was not an issue of customers choosing Vyne instead of QuickBill and then having to call HSOne when they wanted to switch back.  Each of these calls was a customer that used both Vyne and QuickBill or eTrans.  Vyne's CTO admitted that Vyne did not realize that the information it was changing to support its claims workflow was relied on by HSOne for other products, including QuickBill and eTrans and to authenticate a connection between HSOne and its customers' systems for purposes of deploying security patches.  (Nix. Decl. (ECF 40-5) ¶¶ 17-18.)  When a customer called in, HSOne would fix the issue by removing the data Vyne wrote, but every time the customer opened Vyne, Vyne overwrote that fix causing the same problem.  The harm is exemplified by but not isolated to the QuickBill issue.  The harm is Vyne using illegal means to write information to Dentrix and corrupting software processes and data that HSOne controls and protects without understanding the implications of those changes. HSOne also questions whether Vyne has deprecated anything and the scope of any purported deprecation.[11]  (HSOne PH-Br. 8, 15 n.8, 16-17, 18 n.9; HSOne PH Reply 2, 13; JN 291:17-292:14; Rencher 558:3-19; HSOne 2, Row 971.)  Vyne has shown that without an injunction it will continue to write data back to Dentrix, it does not understand the implications of that write back, and write back is likely to, and has, broken Dentrix functionality and caused customer issues.

### 3.    An injunction barring write back is not only equitable, but necessary.

The court should reject Vyne's last-ditch efforts to minimize its actions and point the finger elsewhere to distract from its conduct.  The Court should also reject Vyne's efforts to separate its actions into arbitrary categories (QuickBill, ledger write back, and patient engagement) meant to occlude its hacking.  It is Vyne's wholesale infiltration of HSOne's systems that is the problem,

---

[10] The evidence of Vyne's unauthorized access and corruption is also not limited to QuickBill.  As this Court has heard, Vyne's unauthorized access and writing back has prevented HSOne's security updates to its customers and corrupted the database with private health information in files in cleartext, for example.  (HSOne PH Br. 4-9, 20-22).

[11] This distinguishes this case from those that Vyne cites for its contention that any harm is alleged moot.

causing HSOne irreparable harm and leaving HSOne's systems open to attacks by other malicious actors. As a threshold point, Vyne now admits it does far more than print to PDF; it uses write back to (a) record receipt of payments and (b) assist with patient engagement. (Vyne Br. 4.) Vyne's argument that HSOne has not shown irreparable harm boils down to its own analysis of HSOne's spreadsheet. Vyne argues that it only shows issues with QuickBill, and not with ledger write back and patient engagement, so it should be free to continue those actions. (Vyne Br. 5.) But the record is clear that Vyne's actions go far beyond that and have caused irreparable injury. (HSOne PH-Br. 4-9, 13-15, 16-22; HSOne PH Reply 2-5, 8-9, 13-14; GR 538:6-542:18, 543:14-544:12.) It is of no moment that approximately 1,400 practices use these services. As explained, Vyne's offering to dentists is unlawful in the first instance and any injury to those practices is a direct result of Vyne's unlawful conduct.[12] *Florida Atl. Univ.*, 465 F. Supp. 3d at 1297 ("[T]he balance weighs [] in FAU's favor. [I]f an injunction *does not* issue, FAU will face 'significant harm to the security of its systems and data…On the other, an injunction would interfere only with [] Defendants' *unlawful* access of FAU's computer servers—without any [] interruption of the Defendants' legitimate business.") (emphases in original). Vyne should not be rewarded for it.

### 4. The Court should enjoin write back to local options tables.

Vyne argues against an injunction against write back, claiming it deprecated the re-routing of billing statements and is able to use the print driver because HSOne restored its use. But Vyne now admits that it allows write back to the options table for new payment types. (Vyne Br. 7.) Although there was no evidence at hearing (because this is something HSOne was unaware Vyne is doing), Vyne argues against enjoining this write back to the tables because of this feature. On

---

[12] Unlike in *Benisek v. Lamone*, 585 U.S. 155, 160 (2018), where the party "could have sought a[n] [] injunction much earlier," HSOne was unaware of the extent of Vyne's actions. It is still discovering Vyne's hacks. HSOne did not delay in seeking relief. *Tom Doherty Assocs. V. Saban Ent.*, 60 F.3d 27, 339 (2d Cir. 1995) (citations omitted).

the one hand, Vyne says it is not writing back to tables, but then in the very next paragraph admits that it is in fact doing so and wants to continue. This is one more example of why an injunction is necessary to instruct Vyne that it cannot write back in any form or fashion.

5.     **An injunction that prevents Vyne from accessing HSOne's system without authorization and protects patient data is in the public interest.**

Vyne desperately clings to its argument that HSOne is subject to the Cures Act when HSOne is not. That is because Vyne has admitted to conduct that violates the CFAA, DMCA, and other causes of action. Even if HSOne was subject (which it is not), HSOne is permitted to restrict access on security or manner grounds. The Cures Act's purpose is not to prohibit software providers from securing systems that protect EHI from unauthorized access. An injunction would also not restrict dental offices' use of EHI. Vyne's contention demonstrates that Vyne has used HSOne's systems to build capabilities based on its unauthorized access. That Vyne has unlawfully built its business by hacking HSOne's systems does not entitle it to continue to do so.

## V.     Vyne Has Not Demonstrated Its Entitlement to Any Bond.

Where "the risk of harm is remote, or…circumstances otherwise warrant it, the court may fix the amount of the bond accordingly. In some circumstances, a nominal bond may suffice." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). This includes a nominal bond amount of zero dollars. *D.N.N. v. Liggins*, 2026 WL 632371, at *35 (D. Md. Mar. 6, 2026); *Amazon.com Services LLC v. Perplexity AI, Inc.*, 2026 WL 658407, at *1, 3 (N.D. Cal. Mar. 9, 2026) (denying request for a $1 billion bond, ordering zero). This is particularly true when any harm is low or is caused by the enjoined party's misconduct, or when the likelihood of success is high. *M Corp v. Infinitive, Inc.,* 2024 WL 4696132 (E.D. Va. Nov. 6, 2024) (noting misconduct, ordering $50,000 bond); *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115 (D. Md. 2020) (no harm due to own misconduct, ordering $10,000 bond); *Prosperity Sys., Inc. v. Ali*, No. CIV. CCB-

9

10-2024, 2010 WL 5174939 (D. Md. Dec. 15, 2010) ($5,000 bond where the risk of harm was remote and plaintiff likely to prevail); *Reliable Prop. Services, LLC v. Capital Growth Partners, LLC*, 1 F. Supp. 3d 961, 965–66 (D. Minn. 2014) ($0 bond, finding plaintiff likely to prevail on CFAA claim, noting defendant's misconduct; *Int'l Controls Corp. v. Vesco,* 490 F.2d 1334 (2d Cir. 1974) ($0 bond with no evidence of likelihood of harm); *Arkansas Best Corp. v. Carolina Freight Corp.,* 60 F. Supp. 2d 517 (W.D.N.C. 1999) ($100 bond when likelihood of success was high); *Scherr v. Volpe,* 466 F.2d 1027 (7th Cir. 1972) (no bond due to likelihood of success).

Vyne did not point to any evidence that would allow the Court to estimate an appropriate bond, only relying on its unsupported estimate. At the hearing, it was clear that Vyne could not attribute more than a handful of customer losses to the dispute (SR 181:1-12), which is caused by its own conduct. There was also testimony from Vyne's CEO that its business is far larger than what is tied up with HSOne. (SR 91:5-9, 94:12-95:3; 178:4-180:12; 186:7-25.) The idea that the Court would adopt a venture-capital investment style valuation to set an outlandish bond is not supported by the law or facts any more than the idea that Vyne has an entitlement to access HSOne's systems without authorization. The bond argument, unsupported by any evidence, is another last-ditch effort to try to practically secure Vyne's ability to hack HSOne, nothing more.

## CONCLUSION

Vyne is like a party who has "repeatedly shoplifted from a particular store" where the judge needs to ultimately prohibit the party from entering it again, "saving the store's security guards from the burden of having to follow him around whenever he is there." *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 932–33, 937–38 (9th Cir. 2004). This Court is justified in ordering a broad injunction to stop Vyne from its illegal conduct, which Vyne has made abundantly clear that it does not intend to stop otherwise.

ACTIVE 722048886v6

Dated: April 8, 2026                          Respectfully submitted,

                                              **GREENBERG TRAURIG, LLP**

                                              By: */s/ Michael Burshteyn*

                                                  Michael Burshteyn
                                                  *(pro hac vice)*
                                                  Marcelo Barros
                                                  *(pro hac vice)*
                                                  Jennifer Bartlett
                                                  *(pro hac vice)*
                                                  101 Second Street, Suite 2200
                                                  San Francisco, CA 94105
                                                  Tel: (415) 655-1300
                                                  Michael.burshteyn@gtlaw.com
                                                  Marcelo.barros@gtlaw.com
                                                  Jennifer.bartlett@gtlaw.com

                                                  Michael R. Sklaire (MD Fed. Bar No. 16471)
                                                  1750 Tysons Boulevard, Suite 1000
                                                  Tysons Corner, VA 22102
                                                  Tel: (703) 749-1308
                                                  michael.sklaire@gtlaw.com

                                                  *Counsel for Defendant Henry Schein One, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of April, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                              */s/ Michael Burshteyn*
                                              Michael Burshteyn

11

ACTIVE 722048886v6