**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

|  |  |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>            Plaintiff,<br><br>    - against –<br><br>HENRY SCHEIN ONE, LLC,<br><br>         Defendant. | **Case No. 1:25-cv-03246-MJM** |

**HENRY SCHEIN ONE, LLC'S POST-HEARING SUBMISSION RE:
TECHNICAL FEASIBILITY, COMPLIANCE PERIOD, AND BOND**

HSOne submits this brief to explain (a) how the Court can limit its proposed injunction against HSOne to conform with what Vyne has represented it is doing; and (b) that any injunction against HSOne would be unsupported by the record or law.[1]  This is the first opportunity HSOne has had to address the proposed injunction against HSOne raised at the April 14, 2026 hearing.

### I.  The Proposed Language Enjoining HSOne is Too Broad and Unsupported by the Record or the Law.

**First, the Court's proposed #4 injunction** against HSOne would give Vyne a free license to printer-driver access to HSOne's software systems.  Vyne has already stated on the record that it believes it should pay for printer-driver access. (SR 140:2-5; 191:5-8; PX305.)  The law does not permit granting a property right or contract right where one does not exist, particularly where the record shows the access violates the CFAA, trespass, and other statutes and common law doctrines.  At a minimum, Vyne should be required, and has agreed, to pay for this access.

There is no question that Vyne should be enjoined from hacking and writing to HSOne's systems.  The primary issue has been whether cybersecurity risk is sufficient harm under *Winter* to justify also enjoining read access.  Other courts have found that cybersecurity risk does justify the read-access injunctions, and the record shows Vyne's conduct creates significant risk.  Putting that aside, the Court's uncertainty regarding whether irreparable harm arises from cybersecurity risk does not justify granting Vyne a free license to something that it has agreed it should pay for.[2]

Apart from the payment issue, the injunction would require HSOne to maintain a print-

---

[1] HSOne intends to address the proposed injunction against Vyne in the next brief, including explaining that it would be appropriate that an injunction require Vyne "disable" and not just "deprecate" its write tools.

[2] Vyne stated it would pay "commercially reasonable fees for" the print driver or something that provided the same functionality.  (SR 140:2-5; 191:5-8.)  Even Vyne's term sheet proposed paying $24/location/month for Standard Read API access and $10/location/month for Basic RCM. (PX305.)  If the court orders that Vyne be permitted continued use of the print driver, the order should also include a requirement that Vyne pay reasonable fees.

driver integration in a world where the record shows that (a) Microsoft itself is deprecating its support for third-party print drivers; and (b) HSOne too is moving away from print-driver integration.[3] Such an injunction is no different than requiring a restaurant to keep a food item on a menu that it wishes to change for health reasons. Or requiring a laptop manufacturer to maintain a 20-year old analog VGA port integration instead of moving to more modern USB-C connections (analogized here to HSOne's API, which Vyne insists on hacking around).

Vyne is also likely to misconstrue the proposed scope of "printer-driver access" in "#4" as it has already done repeatedly, to justify more than the print-spooler data and the workflow where dentist offices click to print-to-Vyne just as they would print-to-PDF.[4] The language, without defining "printer-driver", is likely to be used by Vyne to permit all the other unauthorized hacking that it has hidden inside what it calls its printer driver. The Court should hold Vyne to its testimony at the hearing. (See Ex. A.) If the "#4" injunction is granted (which HSOne believes is unsupported), it should be clear that it is limited to data accessible by the print spooler and the workflow Vyne described where dentist offices explicitly click to print. This has the added clarity that it is user-generated, and the user can then take full responsibility for the use of the tool, providing access to a third party and any regulatory or HIPAA-related issues that might arise.

**Second, the Court's proposed #3 injunction** against HSOne would be a sweeping, first of its kind, injunction where a federal court licenses unlawful unauthorized access and prohibits a company from securing its software against hackers. While HSOne understood the Court's intent to be a restriction against HSOne shutting down Vyne's software completely, the proposed

---

[3] (DY 455:19-456:3; GR 544:21-24; BW 360:17-20; 544:13-545:6). The EDS print driver comparison is inapposite because HSOne is in control and can manage any risk. (BW 359:9-12; 397:2-5.) It cannot do the same with Vyne's.

[4] HSOne has offered Vyne better alternatives than the print driver, but Vyne has rejected them because Vyne uses the print driver as a back door.

2

injunction is much broader. The Court noted at the hearing that it did not intend to give Vyne an injunction in favor of all manner of read access, but the language in proposed #3 could be read to do just that. The evidence shows that Vyne has integrated itself deeply within Dentrix well beyond a print driver. If HSOne were to deploy standard security measures within its own platform or issue any type of routine software update, this could impact functional dependencies Vyne has created within Dentrix through unauthorized and hidden integrations and could therefore be deemed an action by HSOne that disabled Vyne software functions. The second clause, requiring HSOne to not disable "software functions that do not write back to Dentrix databases," would give Vyne carte blanche to launch a denial-of-service attack against HSOne. Such an attack would barrage HSOne with reads and harm its systems. HSOne could do nothing against this or other malicious activity. HSOne has no way of knowing the full picture of Vyne's software functions that do not write back to Dentrix databases and how HSOne's upgrades to its own software might interfere with those functions. Vyne intentionally does not cooperate with HSOne on the integration because it seeks to hide its tracks. (Declaration of Kenton McDaniel ¶¶ 5-7.)

There should be no need for any of the proposed injunction in "#3"—the scope of #4 (if defined properly to cover the printer spooler and dentist's clicking "print") should do more than enough to accomplish what the Court appears to be attempting to achieve through its injunction. If the court believes an injunction against HSOne shutting down Vyne's software is required, it should be limited to just that and should not include additional language that may be read to prohibit HSOne from controlling and updating its own software.

## II.     The Broad Scope of the Court's Proposed Injunctions against HSOne is Technically Infeasible, Unlike the Court's Proposed Injunctions against Vyne.

The proposed "#3" injunction against HSOne would prevent it from securing its systems against unauthorized access from not only Vyne but also other malicious actors. It protects Vyne's

3

ability to read indefinitely, by any means (including new hacks), without limitation—even though evidence shows this also harms HSOne and would likely violate the CFAA and other laws.

HSOne's security processes work to address categories and methods of unlawful access regardless of the actor.  If HSOne disables its security controls and updates that might impact Vyne's read access, this could be used as a backdoor by other malicious actors.  (HSOne PH-Br. (ECF 144) 17-20.)  This is additionally problematic because HSOne is not privy to all the things Vyne is doing that could be classified as writing back to HSOne's systems.  HSOne also cannot distinguish Vyne's read access from other unauthorized read access at the network level in real time.  Compliance would require HSOne to predict and exempt all future Vyne access methods. The injunctions as drafted prohibit any security response that could incidentally affect Vyne's integration, regardless of the threat that response is designed to address.  (McDaniel Decl. 5-10.)

Notably, even the print-driver functionality Vyne undertakes writes back to the database. This was established at the hearing when it became clear that Vyne stuffed the write-back software into the printer driver suite of services.  Just limiting to the print-driver itself, Vyne would still need to write to the database to create a new user entry and manipulate HSOne's configurations. That is a write.  Every form of Vyne's access originates from that unauthorized write.  Vyne's process involves writing to configurations and creating users.  It writes to protected computers and file systems to set up its suite of hacking tools.

Vyne admitted it will not stop developing new alternative methods of unauthorized access. (Roberts 183:6-10.)  The "#3" injunction enshrines a free license to Vyne to access HSOne's systems via new hacking strategies.  Vyne has already deployed a new one since the hearing— unlawful API key generation.  It next plans to deploy RPA.  (Roberts 205:1-5).  RPA would not

only read the screen and export data on the screen *en masse*[5] (something other courts have recently enjoined), but it would also inject data through the screen. (Roberts 203:14-19.) While HSOne could try to stop this, it would be difficult if not impossible to disable security for only read access.

Compliance for HSOne would require—at a minimum—6+ months of effort, including understanding what Vyne is doing despite Vyne's intentional efforts to obfuscate and then develop a software development and security plan to allow Vyne to maintain unlimited read-access backdoors while somehow securing its systems against a universe of attackers.

### III. Any Injunction Licensing Vyne's Printer-Driver Access Should be Limited to What a Printer Driver Actually Does and What Vyne Says it Needs, Not Vyne's Expansive Mischaracterizations of its 'Printer Driver'.

At the hearing, Vyne defined the "printer driver" narrowly, representing it only needs basic print to PDF functionality. (Ex. A.) It should be held to that definition. If the Court enjoins HSOne from denying "print driver access," an injunction must be limited to what Vyne says the print driver is: a mechanism that captures print-spooler output and transmits it to Vyne's servers—nothing more. Language that would limit Vyne's access is as follows:

> No Vyne-related code, binary, installer, process, or other function may access (including reading or writing) the Dentrix platform, any HSOne database, configuration file, binary, registry key, process memory, or any other HSOne system or component. The sole permitted exception is receipt of a print payload transmitted through the Windows print spooler from a user-initiated print action within Dentrix's native print interface inside of the Dentrix Office manager and no other modules, functions, or code. Vyne may not inject data into the database or configuration settings to take over the default printer position on any Dentrix customer system. "Human initiated" within Dentrix's native print interface means the print comes from Dentrix and is a user-initiated print action manually executed within the Dentrix Office Manager application.

(McDaniel Decl. ¶ 11.) Any order should also require Vyne to pay for this use, which it has said it would do. (SR 140:2-5; 191:5-8; PX305.) This language could either be a carve-out to the access injunction against Vyne, or could be repurposed if the Court does intend to move forward

---

[5] (Roberts 203:6-13.)

with enjoining HSOne in a way that licenses Vyne's activities.[6]  The order should also clarify that HSOne may include consent and disclosure language for its users relating to sending data through the native print interface to third parties.

### IV.    The Record Does Not Support the Broad Proposed Injunction Against HSOne.

HSOne learned during the hearing on April 14 that the Court was inclined to grant some form of injunction against it.  The feasibility, reasonable compliance period, and bond amounts and/or need for a bond hearing are intimately tied into whether the record or the law supports the contemplated injunction.  Respectfully, it does not. The proposed injunction against HSOne creates an unworkable conflict under the law.  On the one hand, the Court noted it was likely to find that HSOne was likely to prevail on its CFAA claim, which is based on Vyne's unauthorized access. (3/18 Tr. 118:8-119:10.)  But at the same time, the Court is considering an injunction that licenses Vyne's continued unlawful conduct.  This would contravene the premise that a preliminary injunction is meant to preserve the status quo, not create new rights.[7]  *See, e.g.*, *Authenticom, Inc. v. CDK Glob., LLC*, 874 F.3d 1019, 1021-23 (7th Cir. 2017) (setting aside injunction that required software manufacturer to permit continued access to systems/databases at auto dealers without authorization); *United Asset Coverage, Inc. v. Avaya Inc.*, 409 F. Supp. 2d 1008, 1050–51 (N.D. Ill. 2006) (denying mandatory injunction requiring making services available).

---

[6] Vyne should be able to quickly comply with the technical access limitations in the above language.  It is simply a limitation, not a mandatory requirement.  Vyne has to only stop accessing.  Vyne can remove the access code and immediately inform its customers about the changes for submission.  Vyne should be able to update the Court in two weeks.  If it needs more than a month, Vyne should be able to provide sufficient detail explaining why.  HSOne anticipates more fully responding to any concerns Vyne articulates in the next brief, while this brief is more focused on the proposed injunction against HSOne.

[7] Vyne formerly used HSOne's API pursuant to an agreement but stopped, electing to access without authorization and without paying HSOne.  (BW 376:2-9; SR 214:21-215:6; SR Dep. 87:1-9.)  After HSOne realized that Vyne was continuing to access HSOne's systems, including continuing to use the unauthorized print driver feature, HSOne told Vyne to stop.  (BW 376:2-12.)  Vyne did not.  Vyne has refused to enter into an agreement with HSOne because it wants unfettered access without limitation.  (SR 193:15-195:14.)

The status quo is HSOne's right to control access to and the security of its systems—before Vyne's unauthorized access. *United Asset Coverage, Inc.*, 409 F. Supp. 2d at 1050 ("Avaya and UAC were in a 'contested status' before…due to…UAC's unauthorized use of Avaya's MSPs prior to that date…"). Ordering HSOne to allow Vyne's unlawful access and disable any security that would affect Vyne's access would be an impermissible mandatory injunction.

### a. Vyne's unfair competition claim does not provide a legal basis for the proposed injunction against HSOne.

Vyne has not shown that it is likely to prevail on the merits of its unfair competition claim. As HSOne understands it, the proposed basis for an injunction against it would be related to its communications in the spring of 2025 connected with disabling unauthorized print drivers, including Vyne's (4/18 Tr. 30:11-25), indicating it is tied to Vyne's common-law unfair competition claim, not the Cures Act. This theory is not supported by the record.

The email that the Court was concerned about at the March 18 hearing was not false and does not support Vyne's claim. (3/18 Tr. 49:19-25). As HSOne's witnesses testified, Vyne did breach HSOne's security. (BW 357:9-358:7; 395:5-10; 396:4-11; GR 575:17-576:11.) To determine whether statements are actionable, the Court should examine them in light of the context of the communication. And HSOne mentioning its product in the communication is not the type of dishonest, fraudulent, deceptive conduct required for an unfair competition claim. *M-Edge Accessories LLC v. Amazon.com Inc.,* 2015 WL 403164, at *4-5 (D. Md. Jan. 29, 2015). This is particularly true given that HSOne had a legitimate purpose for implementing the security updates.

To the extent that the proposed injunction is based on speech, the injunction targeting HSOne's ability to implement security measures and Vyne's access lacks the requisite nexus and is improper. The Court's injunction must only provide relief of the same character as may be ultimately granted. *SKG Int'l, Inc. v. SKG Italia, S.p.A.*, No. CV 16-14510, 2017 WL 405935, at

7

*7 (E.D. Mich. Jan. 31, 2017) (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).  But even a speech-related injunction would be improper under this record as HSOne's statements were true—Vyne does not have authorization to access HSOne's systems, Vyne has breached HSOne's security controls in accessing HSOne's systems, and Vyne's conduct creates a risk according to cybersecurity experts—inside and outside of HSOne.

The fact that HSOne implemented security in the spring that prevented unauthorized third-party print drivers likewise does not support Vyne's unfair competition claim.  HSOne's security is a legitimate business interest and is not a valid basis for Vyne's claim.  An injunction that then permits Vyne to violate HSOne's security policies would be unprecedented.  Even limited to the printer driver, for courts to place themselves in the position of a company's security team, which must make countless judgment calls per day about risk, is fraught with danger.  HSOne did not deviate from fair and common business practices by trying to prevent unauthorized access, protect its systems from unauthorized third parties, and inform its customers.

The record is replete with examples of Vyne's unlawful conduct and its risks.  (HSOne PH Br. (ECF 144) 1-9, 13-16.); (HSOne PH Br. (ECF 144) 22; DY 459:5-9, 458:5-22, 460:17-22.) The Court's proposed injunction would command HSOne leave an access path open in its own software that any malicious actor could exploit, as noted by FTI.

### b. The Balance of Equities Tilts Sharply in HSOne's Favor Against the Proposed Injunction against HSOne.

An injunction against HSOne would cement Vyne's backdoor and preclude HSOne from making software upgrades or security upgrades because they could potentially interfere with any functionality of Vyne's software that does not write back to Dentrix databases.  HSOne has no way of knowing how Vyne's software operates in each instance, which makes this injunction so

8

broad and difficult for compliance.  These security risks—on their own—constitute irreparable harm to HSOne.  (HSOne's Br. (ECF 166) 1-4.)

Vyne, conversely, has admitted its alleged damages are quantifiable.  (SR 177:8-13; SR 181:4-12.)  There is also no irreparable harm to Vyne from HSOne's alleged actions in the spring of 2025, and "an injunction may not be used for punishment or reparations for past violations." *A Helping Hand, LLC v. Baltimore Cnty., MD*, 355 Fed. Appx. 773, 776 (4th Cir. 2009) (citation and marks omitted); *see also Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 872 (S.D.W. Va. 2014) (websites plaintiffs complained about were no longer active).

Vyne in fact immediately worked around HSOne's security.  (KM 609:5-610:2.)  Vyne removed itself from HSOne's hostile printer list and reset the security check to 2035.  (JN 276:3-12; KM 616:16-22.)  This is not the type of imminent harm that justifies injunctive relief.  That Vyne's business could suffer if it is prevented from continuing its unlawful activity warrants no accommodation.  (HSOne's PI (ECF 46-1) 24; HSOne's Reply ISO PI (ECF 26) 14-15; HSOne's PH-Br. (ECF 144) 23; HSOne's PH Reply (ECF 155) 15; HSOne's Resp. Br. (ECF 166) 1-4.)

Courts have found it is in the public interest to prevent violations of the CFAA and other statutes.  (HSOne's PI (ECF 46-1) 24-26; HSOne's Reply ISO PI (ECF 26) 14-15; HSOne's PH-Br. (ECF 144) 23; HSOne's PH Reply (ECF 155) 15; HSOne's Resp. Br. (ECF 166) 1-4, 9.)  *See also Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 238–39 (D.P.R. 2016); *United States v. Any & All Assets of That Certain Bus. Known As Shane Co.*, 816 F. Supp. 389, 399 (M.D.N.C. 1991) (citation omitted).  The public interest is not served by allowing Vyne's continued unlawful conduct, particularly when dealing with such sensitive data.

Mandatory injunctions are disfavored and may issue only in the most extraordinary circumstances where the right to relief is "indisputably" clear.  *2311 Racing LLC v. Nat'l Ass'n*

9

*for Stock Car Auto Racing, LLC*, 139 F.4th 404, 408–09 (4th Cir. 2025).  The proposed injunction is mandatory because it requires HSOne to configure its systems to accommodate Vyne's unlawful access that violates CFAA and other laws, maintain that configuration indefinitely, and forego security responses it would otherwise be entitled to take. *Id.* at 408–09.  This is not justified here, where Vyne's likelihood of success is far from clear, and the other injunction factors favor HSOne.

> **V.      Vyne Should Post a Bond; HSOne Should Not, and a Hearing Would be Necessary on any Bond Requirement as to HSOne.**

Vyne's request for HSOne to post a bond is unreasonable and unsupported.  (HSOne's Br. (ECF 166) 9-10.)   Vyne's own testimony shows that its business is much broader than that implicated by this dispute.  Its CEO testified that he could not connect customer losses to HSOne's access restrictions.  (SR 181:1-12.)  If the Court orders an injunction against HSOne, Vyne should post a bond, the amount of which HSOne will establish at a hearing.  At the very least, Vyne would need to post a bond in the amount of all fees from its unauthorized access in the past and any continued unauthorized access that the Court allows, as it has agreed that it should do.

## <u>CONCLUSION</u>

HSOne maintains its request that the Court enter an injunction against Vyne for all unlawful unauthorized access.  To the extent that the Court is concerned that stopping Vyne from hacking its way to a print-driver integration hurts Vyne, Vyne should not be permitted to do anything more than what it has represented to the Court that it is doing—allowing dentist offices to click print to Vyne similarly to how they would click print-to-PDF, using the print-spooler driver and nothing more.  Vyne should pay for this access, like anybody else would have to, and should not be given a free license.

10

Dated: April 24, 2026              Respectfully submitted,

                                   **GREENBERG TRAURIG, LLP**

                                   By: */s/ Michael Burshteyn*

                                      Michael Burshteyn
                                        *(pro hac vice)*

Michael Burshteyn
*(pro hac vice)*
Marcelo Barros
*(pro hac vice)*
Jennifer Bartlett
*(pro hac vice)*
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Michael.burshteyn@gtlaw.com
Marcelo.barros@gtlaw.com
Jennifer.bartlett@gtlaw.com

Michael R. Sklaire (MD Fed. Bar No. 16471)
1750 Tysons Boulevard, Suite 1000
Tysons Corner, VA 22102
Tel: (703) 749-1308
michael.sklaire@gtlaw.com

*Counsel for Defendant Henry Schein One, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                             */s/ Michael Burshteyn*
                                             Michael Burshteyn

11