## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A
VYNE DENTAL,

     *Plaintiff*,

  -against-

HENRY SCHEIN ONE, LLC,

     *Defendant*.

Case No. 1:25-cv-03246

**PLAINTIFF'S OPPOSITION TO HENRY SCHEIN ONE, LLC'S MOTION TO STRIKE,
OR IN THE ALTERNATIVE, MOTION FOR DISCOVERY**

Following the Court's order requesting briefing on "reasonable bond amounts," Dkt. 171, Vyne submitted a legal brief on the point, along with supporting fact and expert evidence—including declarations of Dr. Maria Garibotti, Dkt. 175-1, and Vyne's Chief Financial Officer, Eric Markus, Dkt. 175-2.  HSOne responded with a motion to strike the declarations as untimely and supposedly inadmissible.  ("Mot.") Dkt. 181.[1]  The Court should deny this meritless motion.

### ARGUMENT

### I.     VYNE'S BOND DECLARATIONS ARE TIMELY

The Court followed normal procedure in requesting post-hearing submissions on the "bond amounts," Dkt. 171, so striking Vyne's evidence would contravene both the Court's common-sense order and common practice.  Indeed, "[a] litigant naturally would suppose (in the absence of notice) that a hearing on a request for a preliminary injunction will be devoted to the merits of that request, rather than to fixing the amount of bond."  *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 887 (7th Cir. 2000).  Thus, courts habitually receive fact and expert evidence to set the bond that Rule 65 mandates *after* the preliminary injunction hearing is held.  *See id.*[2]   There was no notice that Vyne needed to submit evidence in support of a potential bond earlier, and the Court abided by common-sense and established precedent in requesting briefing on bond amounts.

---

[1] HSOne's representation that Vyne filed the declarations under seal without its consent is incorrect and inapt. The parties agreed that post-hearing briefs could be filed temporarily under seal and that they would confer regarding redactions thereafter, and the parties have proceeded under that approach repeatedly.  *See* Ex. A—C (Representative Samples of Parties' Post-Hearing Sealing and Redactions Arrangement).  Moreover, the declarations are properly designated AEO, as they contain highly competitively sensitive commercial information.  They contain far more confidential information than what HSOne has designated AEO, such as the telemetry HSOne produced on the eve of and during the hearing without notice to Vyne.  *See, e.g.*, Ex. D (designating as AEO HSOne-2 and HSOne-123).

[2] *See, e.g.*, *In re Aflibercept Pat. Litig.*, 2024 WL 3422971, at *53 (N.D. W.Va. June 24, 2024), *aff'd*, 127 F.4th 896 (Fed. Cir. 2025) (ordering parties to confer regarding appropriate security and, if unable to agree, submit proposals "with supporting evidence"); *Jenkinson v. Highmark W. Va., Inc.*, 2019 WL 2341668, at *8 (N.D. W.Va. June 3, 2019) (holding parties may "file additional evidence" on "proper bond amount"); *Oeschger v. GeneThera, Inc.*, 386 F. Supp. 3d 376, 385 (D. Vt. 2019) (granting enjoined party "seven days to file evidence" of appropriate bond after preliminary injunction hearing); *Elgin Fam. Co. v. Paralogia Ultra Lounge, LLC*, 2010 WL 680847, at *6 (W.D. Okla. Feb. 24, 2010) (ordering the parties to make submissions as to reasonable bond amount after deciding on preliminary injunction); *Oberto Sausage Co. v. JBS S.A.*, 2011 WL 939615, at *7 (W.D. Wash. Mar. 11, 2011) (same).

1

HSOne cites no basis in law or fact for revisiting the Court's order or depriving Vyne of the opportunity to present evidence to substantiate a reasonable bond amount.  HSOne indeed cites no authority holding that, contrary to the approach taken by numerous courts, the bond must be set based only on hearing evidence.  *See* Dkt. 180 at 3–4, citing *Steves & Sons, Inc. v. JELD-WEN, Inc.,* 2020 WL 2312030, at *4 (E.D. Va. May 8, 2020) ("When determining the appropriate bond amount, the Court may consider additional evidence."); *Democracy N.C. v. N.C. State Bd. of Elections*, 2020 WL 4288103, at *1, *9–10, *15 (M.D.N.C. July 27, 2020) (striking *merits* evidence); *Harriman v. Hancock Cnty.*, 627 F.3d 22, 30 (1st Cir. 2010) (same); *Range v. Vilsack*, 2015 WL 10985407, at *3, *11 (D.N.M. Nov. 12, 2015), *aff'd* 844 F.3d 1230, 1235 (10th Cir. 2017) (denying *recovery* of actual damages from bond as premature).

Moreover, striking Vyne's bond evidence would deprive it of fair process and cause it irreparable harm; "setting the amount of security" too low—as HSOne seeks by way of striking Vyne's evidence without advance notice that it would be stricken—indeed threatens to "produce[] irreparable injury, because the damages [recovered] for an erroneous preliminary injunction cannot exceed the amount of the bond."  *Mead*, 201 F.3d at 888; *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, 566 F. Supp. 3d 327, 382 (D. Md. 2021), *aff'd*, 2021 WL 6502220 (4th Cir. Nov. 13, 2021) (same); *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021) (same).[3]

## II.     VYNE'S DECLARATIONS ARE ADMISSIBLE BOND EVIDENCE

HSOne also errs in arguing that the Court should exclude Vyne's submissions under the Rules of Evidence.  Mot. 4–19 (conceding "the evidentiary standards applicable at the preliminary injunction stage are less rigorous than at trial" but arguing declarations still fail to satisfy those

---

[3] Nor is the bond requirement onerous; well-capitalized entities like HSOne can buy a surety bond for "a very small fraction of the sum involved."  *Mead*, 201 F.3d at 888; *see also* Henry Schein Inc., Form 10-Q (May 5, 2026) (reporting assets over $11.3 billion), https://shorturl.at/COJO0; LegalClarity, *How to Get Surety Bond in Maryland: Steps & Costs* (Apr. 4, 2026), https://shorturl.at/TEPPP ("Premiums typically run 0.5% to 3% of the bond amount.").

standards).  Mr. Markus and Dr. Garibotti indeed adduce evidence that courts routinely rely upon when setting bonds.  *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) ("[T]he judge usually will fix security in an amount that covers the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period he is prohibited from engaging in certain activities[.]") (citation omitted); *Hansen Beverage Co. v. Cytosport, Inc.*, 2009 WL 5104260, at *26 (C.D. Cal. Nov. 4, 2009) (entering $1.3 million bond based on Vice President's declaration of past sales and projected lost revenue); *Lab'y Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 466 (M.D.N.C. 2015) (calibrating bond to projected gross revenue loss based on employee evidence of average monthly cases and prices per case).  None of HSOne's arguments to strike this evidence withstand scrutiny.

**Markus Declaration**

In line with the case law, Vyne's Chief Financial Officer provides admissible fact evidence relevant to setting a reasonable bond amount, including (Dkt. 175-2):

(i)     a description of Vyne's services directly affected by the Court's anticipated injunctions, including the subscription tiers and transaction fee services, ¶¶ 11–13;

(ii)    the number of customers directly affected by the Court's anticipated injunctions, broken out by those whose subscription tiers as a whole require writing and those whose add-on payment services require writing regardless of tier, ¶¶ 9–10;

(iii)   Vyne's annual revenues from those specific customers: total revenues from those whose tiers need writing and incremental revenues from the rest, ¶¶ 22–23;

(iv)    that Vyne would be "highly likely to lose" all joint customers whose tiers require writing, as "the majority of services" would be barred, ¶¶ 16–17;

(v)     that Vyne's churn rates are historically low, losing only 106 premium tier customers in total in 2023 (not limited to joint Dentrix customers), ¶ 23; and

(vi)    that Vyne needs 14 employees to dedicate 355 hours over approximately four weeks to modify software code, and 20 customer support, onboarding, and support staff to dedicate 2.25 hours per impacted dental office for compliance, ¶¶ 27–28.

HSOne cannot justify striking this declaration.  *First*, HSOne argues that Mr. Markus

supposedly "lack[s] personal knowledge" of the matters in his declaration. *E.g.*, Mot. 1. The declaration itself refutes that assertion. Mr. Markus states under oath that he is "the Chief Financial Officer of Vyne" and "competent to testify as to the matters set forth in this declaration." Dkt. 175-2 at ¶¶ 1, 3. Undoubtedly, a Chief Financial Officer has sufficient knowledge to testify about his company's accounting systems, subscription and transaction revenues, customer subscription tiers, churn rates, and employee compensation, and operational costs reflected in company records. Courts often rely on corporate officer declarations and have held that the party to be enjoined "is in the best position to determine the harm it will suffer." *Kearns*, 84 F. Supp. 3d at 465.

*Second*, HSOne argues Mr. Markus' declaration contains "impermissible lay opinion[s]," because "nothing in his declaration demonstrates [his statements] are based on his personal knowledge as CFO." Mot. 1, 16-17. That argument likewise fails. Mr. Markus states his testimony is grounded in his review of Vyne's business records and his experience overseeing Vyne's financial and operational affairs. Regardless, he could offer opinion testimony based on his perception even if not based on knowledge, and nothing in Mr. Markus' declaration runs afoul of this rule. *E.g.*, *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575 (4th Cir. 2017) (permitting "business employees to opine on accounting projections under Rule 701, so long as their opinions are based on their first-hand experience on the job").[4]

*Third*, HSOne argues the Markus declaration is "speculative," "unreliable," and "conclusory." *E.g.*, Mot. 1, 17. False again. The declaration provides both granular details about where the financial data was obtained (¶¶ 4–8) and granular details about the relevant financial

---

[4] Rule 701 expressly permits lay opinion testimony that is "rationally based on the witness's perception" and not based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. *See also MCI Telecomms. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990) (allowing lay opinion "well founded on personal knowledge as distinguished from hypothetical facts" and derived from "relevant historical or narrative facts that the witness has perceived") (cleaned up); *Lake Ridge Apartments, LLC v. Bir Lakeridge*, LLC, 335 Fed. App'x. 278, 284 (4th Cir. 2009) (admitting lay testimony as to projected costs based on the witness's personal experience with similar projects).

information, like customers and actual associated revenues (¶¶ 9–28).  HSOne argues Vyne failed to produce business records supporting its CFO's evidence, but HSOne never asked Vyne to do so; no rule of law required it; Mr. Markus detailed in his declaration where the information was obtained from (¶¶ 4-8); and HSOne has not cited a single case requiring the disclosure of corroborating documentary evidence at this stage.  *Cf. Cytosport, Inc.*, 2009 WL 5104260, at *26 (awarding bond based on employee declaration as to revenue losses, "not submitted with any financial data"); *Glaxo Group Ltd. v. Leavitt*, 481 F. Supp. 2d 434, 435–36 & n.1 (D. Md. 2007) (allowing recovery against a $3 million TRO bond issued one day after the TRO motion, where limited post-merits discovery later established $3.3 million in actual losses).[5]  And again, courts instruct that, "[w]hen setting the amount of security, district courts should err on the high side," because "[a]n error in setting the bond too high [] is not serious," and the costs of procuring a bond are low for well-capitalized entities like HSOne.  *Mead*, 201 F.3d at 888; *see supra* at 2.

HSOne's other arguments also miss the mark.  For example, HSOne asserts that Mr. Markus' calculations of Vyne's revenue losses from lost existing customers are conclusory, yet Mr. Markus sets out the exact subscription and transaction revenue Vyne actually earns from the specific customers whose subscriptions require writing to Dentrix.  Dkt. 175-2 at ¶¶ 22–23. HSOne also complains that Mr. Markus' evidence as to labor costs is conclusory, ignoring that Mr. Markus states he calculated the labor costs "[b]ased on the salaries of the relevant employees selected for the workstreams and the work hours outlined above."  *Id.* ¶ 27.  And HSOne cannot seriously dispute Mr. Markus' evidence on the number of directly affected joint customers: The hearing record makes clear there are 7,700 joint customers, a subset has write-functions, and the parties exchanged lists of exact joint customer accounts including Vyne's provider subscription

---

[5] *See also Glaxo Group Ltd. v. Leavitt*, 1:06-CV-00469 (D. Md.), Dkt. 2-2 (Feb. 23, 2006) (Motion for TRO), Dkt. 6 (Feb. 24, 2006) (Order Granting TRO & Bond).

customers with write capabilities.  *Compare* Mot. 18, *with* Roberts 178:19-25, 186:16-187:8.

Likewise, HSOne's complaint that Mr. Markus fails to adequately explain expected additional losses that he does not quantify for purposes of Vyne's bond request, such as losses tied to emerging technologies or layoffs (*see* Mot. 19), makes no sense because those losses are *not included* in Vyne's calculations.  Regardless, Mr. Markus explains at length, with proper foundation, why Vyne would likely suffer those additional losses.  Dkt. 175-2 at ¶¶ 18–21, 28.[6]

**Dr. Garibotti**

Likewise, Dr. Garibotti—an expert with a Ph.D. in economics from N.Y.U. and significant experience as a damages expert (*see* Dkt. 175-1, App'x A)—submitted the type of expert opinion that courts often rely on when setting a reasonable bond amount, including (Dkt. 175-1):

(i)     opinions based on an independent review of: "the April 24, 2026 declaration of Mr. Eric Markus, Vyne's CFO; the April 24, 2026 declaration of Mr. James Nix, Vyne's CTO; ***the raw data*** reflecting Vyne's annual subscription and transaction revenues generated from the directly impacted joint customers from Vyne's internal systems; exports from ***Vyne's DOMO database***, including those reflecting Vyne's annual retention, churn, and new bookings by subscription tier; Vyne's ***rate sheet*** with pricing by subscription; and a third-party market analysis of Vyne's customers, services, and business," ¶ 10 (emphasis added);

(ii)    an estimate of Vyne's relevant annual revenues from existing directly impacted joint customers, "based on an analysis of the data available in DOMO, which Vyne Dental collects as part of its ordinary course of business," ¶¶ 23, 30;

(iii)   calculating the net present value of Vyne's lost revenue from losing existing directly impacted customers (or, in some cases, only partial transaction revenue) based on a discounted cashflow analysis, applying the standard discount rate in the Healthcare Information and Technology Industry, ¶¶ 26–30;

(iv)    calculating the present value of Vyne's lost revenue from losing future premium tier joint customers by projecting but-for customer growth based on an independent analysis of new bookings from January 2022 through March 2026, a third-party analysis of projected customer growth to 2030, and economic principles, ¶¶ 32–34;

(v)     adding the labor costs associated with Vyne's compliance efforts based on the

---

[6] Vyne reserves the right to quantify actual losses and damages on additional grounds at a damages phase, notwithstanding that its total bond damages would be limited to the bond amount in place at the relevant time.

employees and hours allocated, as calculated by Vyne's CFO, ¶¶ 35–36; and

(vi)    adding the totals of each quantified category of losses and damages together, ¶ 37.

Again, there is no basis to strike this declaration. HSOne says it violates Rule 702 and *Daubert*, Mot. 4-15, but Dr. Garibotti applied a tried-and-true methodology for calculating the net-present value of an expected income stream, where the income stream is based on fact evidence submitted by a party executive. That approach is common for damages experts. Even at trial, damages experts may take certain facts and assumptions from fact witnesses with knowledge of the finances of a party. *E.g.*, *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 192–94 (4th Cir. 2017) (affirming admission of expert trial testimony on present-value calculations, based on data from company employee on value of premium financing investment); *Syngenta Crop Prot., LLC v. Willowood Azoxystrobin, LLC*, 267 F. Supp. 3d 649, 657 (M.D.N.C. 2017) (admitting expert trial testimony, estimating lost profits based on "sufficient facts and data" about company's budgeting process from employees); *see* FRE 703. And experts may apply their economic training to calculate a net-present value for an income stream, as done here. *Bresler*, 855 F.3d at 196.

HSOne's cases are not to the contrary. In *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, the expert submitted only a "one-page summary" of profits and expenses that assumed, without explanation, a net profit margin of thirty percent. 2020 WL 6119516, at *19 (N.D. Ill. Oct. 16, 2020). In *St. Michael's Media, Inc.*, the Court described the expert opinion as "*ipse dixit*" with "no basis" whatsoever to support its conclusions as to an appropriate bond—*i.e.*, the expert's unexplained subjective belief that "[Steve] Bannon was joking" when Bannon made public remarks that "called for putting the heads of Dr. Fauci and Christopher Wray 'on pikes.'" 566 F. Supp. 3d at 356, 383 (granting "a meaningful bond" nonetheless). In *Steves & Sons*, the Court declined to give full weight to a *non-expert* declaration that had "unsupported assumptions," but did not strike the evidence and still granted a $1 million bond. 2020 WL 2312030, at *10.

7

Here, by contrast, Dr. Garibotti's declaration sets forth the materials relied upon, including raw data and business records as well as facts obtained from Vyne's Chief Financial Officer, and the declaration also explains the standard damages and economic methodologies applied. Dkt. 175-1 at ¶¶ 10, 15, 26, App'x B. Where relevant, Dr. Garibotti also explained alternate assumptions considered. *Id.* at 6 n.12. Again, HSOne's characterization of Dr. Garibotti's work is plainly false, including any assertions she made assumptions without sufficient evidence.[7]

Finally, the Court should reject HSOne's remarkable argument that Dr. Garibotti's declaration should be struck because her calculations assume Vyne's conduct is lawful. Mot. 12-13. She did this because she had to do so. As HSOne *itself* acknowledges, the point of a bond is to account for the risk that the preliminary injunction was improperly entered. Mot. 4. A bond must preserve Vyne's right to recover losses and damages on the assumption—which Dr. Garibotti appropriately makes—that Vyne ultimately proves that it was wrongfully enjoined. *See, e.g.*, *W.R. Grace and Co. v. Local Union 759, Intern. Union of United Rubber, Cork, Linoleum & Plastic Workers of America*, 461 U.S. 757, 770 n. 14 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."); *St. Michael's Media, Inc.*, 566 F. Supp. 3d at 382 (describing Rule 65(c) security "as a prerequisite to the issuance of injunctive relief" (citation omitted)); *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 241 (3d Cir. 2003) (inadequate bond barred full recovery).

---

[7] *Compare e.g.*, Mot. 8 (alleging Dr. Garibotti "blindly relied on unsupported, similarly conclusory statements from Vyne's CFO, rather than examining underlying data"), *with* Dkt. 175-1 at ¶ 23 (discussing "independent review of the raw data from Vyne's internal systems [being] consistent with the declaration of Mr. Eric Markus"); *compare* Mot. 9 (alleging she "fails to explain why subscription fees paid by Vyne Trellis would be affected [] if Trellis is not one of the programs that relies on write back"), *with* Dkt. 175-1 at ¶ 16 (explaining analysis covers services "currently available on Vyne Trellis premium subscription tiers" and "add-on services to lower subscription tiers" that require writing), ¶ 16 n. 5 (listing subscription tiers "with writeback capabilities" and thus "affected").

### III.    HSONE'S ALTERNATIVE DISCOVERY REQUESTS SHOULD BE DENIED

HSOne's alternative requests for bond discovery are improper and should be denied. HSOne conflates the showing required to *obtain a bond* with that required to *obtain damages* from the bond.  Its motion demands a laundry list of discovery requests, such as "all underlying raw data and information related to its bond request, including all documents and information listed on Dr. Garibotti's materials considered list," a rebuttal report for HSOne, depositions of Vyne's declarants, additional briefing, and a hearing to litigate these issues.  Mot. 20.  At the risk of repetition, HSOne cites no case supporting bond discovery and courts frequently set bonds on limited evidence given the purpose of the bond is to protect enjoined parties from wrongful harm, not to litigate actual damages.  *E.g.*, *Cytosport, Inc*., 2009 WL 5104260, at *26 (awarding bond based on employee declaration as to revenue losses, "not submitted with any financial data"); *Glaxo Group*, 481 F. Supp. 2d at 435–36 & n.1 ($3 million TRO bond issued one day after motion).

A bond must be set on a preliminary record—it is "a prerequisite" to an injunction request *before* merits discovery (let alone damages discovery).  *St. Michael's Media, Inc.*, 566 F. Supp. 3d at 382 (citation omitted).  Just as HSOne obtained preliminary relief before producing documents, it must post a bond before obtaining damages documents and discovery.  Indeed, "district courts should err on the high side" in calculating a bond to protect enjoined parties, *Mead*, 201 F.3d at 888, while discovery into actual damages is properly left for later, *Glaxo Group*, 481 F. Supp. 2d at 435–36 & n.1 (permitting limited discovery into actual losses from wrongful restraint *after* finding party was wrongfully restrained).  The Court should follow that practice here and deny HSOne's alternative unsupported discovery requests at the bond stage.

### CONCLUSION

For the foregoing reasons, the Court should deny HSOne's motion to strike, or in the alternative, motion for discovery.

Respectfully submitted,


/s/ *Vincent Levy*
Michael Shuster (pro hac vice)
Vincent Levy (pro hac vice)
Jack Millman (pro hac vice)
Charlotte Baigent (pro hac vice)
Daniel Fahrenthold (pro hac vice)
Torrell Mills (pro hac vice)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com

K. Nichole Nesbitt (Bar No. 26137)
Derek M. Stikeleather (Bar No. 27815)
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4026
knn@gdldlaw.com
dstikeleather@gdldlaw.com

*Counsel for Plaintiff National Electronic*
*Attachment, Inc. d/b/a Vyne Dental*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2026, Plaintiff's Opposition to Henry Schein One, LLC's Motion to Strike, or in the alternative, Motion for Discovery was filed via the Court's ECF system and served upon all counsel of record.

Respectfully submitted,

/s/ *Vincent Levy*
Vincent Levy
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com

*Counsel for Plaintiff National Electronic Attachment, Inc. d/b/a Vyne Dental*

11