**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

|  |  |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL<br><br>    Plaintiff/Counter-Defendant,<br><br>    - against –<br><br>HENRY SCHEIN ONE, LLC,<br><br>    Defendant/Counter-Plaintiff. | **Case No. 1:25-cv-03246-MJM** |

**HENRY SCHEIN ONE, LLC'S REPLY IN SUPPORT OF ITS POST-HEARING MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

**<u>INTRODUCTION</u>**

With every subsequent round of briefing, submission of evidence, and testimony, more light shines on Vyne's conduct. It gets worse and worse. The key facts requiring a preliminary injunction against Vyne are undisputed: Vyne is misappropriating HSOne's decryption keys. It does so by taking multiple secrets from HSOne's source code that nobody outside of HSOne should have. Vyne uses those keys to hack into HSOne's Dentrix database. It also uses them to take over Dentrix's application. It uses that software's access to HSOne's cloud to download updates from the cloud. The Vyne-hijacked application also sends data back up to HSOne's cloud.

This happens across every component of Vyne's software stack that touches Dentrix. There is no such thing as a Vyne printer driver that exists separately from Vyne's decryption key theft. Vyne's CTO Mr. Nix admitted this, HSOne's CISO and CTO confirmed it, as did Mr. Youssef. Vyne's own expert report admits that the files related to the printer driver include the database access code. The opposition brief maintains the printer driver frame, but the distinction completely collapsed at the hearing. It was always, and still is, nothing more than an attempt to deceive Vyne's customers and everyone else about what Vyne is really doing.

Vyne's Opposition is also silent on its witnesses' lack of credibility. Mr. Nix made false statements to the Court in writing and live under oath. In his first declaration, he said the decryption key was public on the machine. Then he admitted it was in the Windows Data Protection API. Then he tried to cover again on cross-examination, claiming that to access the key in the DPAPI, all Vyne needed was dentist Windows credentials. Within 24 hours, HSOne disproved this. Mr. Nix also admitted he does not know the specifics of the source code, so he cannot be relied on to verify what it does and does not do. Mr. Roberts has no credibility either. His testimony made clear that his guiding principle–what he directs his team to do–is to revolutionize the industry through data access by any means necessary.

1

The law is just as bad as the facts, if not worse, for Vyne.  During the pendency of this proceeding, two district courts granted preliminary injunctions and rejected the theory that a customer can consent to use of their credentials.[1]  The latest was just days ago.  The situation here is far past likelihood of success on the merits in favor of HSOne.  It is closer to, if not beyond, the summary judgment standard at this point on HSOne's claims.

The other factors all require a preliminary injunction.  Vyne admits it will keep going.  It will stop at nothing.  It stalled during negotiations to develop new hacks.  During the pendency of these proceedings, Vyne has developed and deployed new hacks.  Vyne's CEO believes that the industry should be revolutionized by any means necessary, and Vyne would have the Cures Act preempt computer hacking laws.  Tellingly, Vyne's Opposition does not defend the database access, which exists in all its packages, and says that does not need to be enjoined because it is being deprecated.  Vyne has zero credibility on this–all evidence points to the opposite.  It is escalating.  Vyne needs write-back.  That is the admitted sticking point in negotiations.  Vyne even folded the write-back sync technology into the package that contains its printer driver.

Vyne's Opposition does not address the serious increase in risk of a catastrophic data security incident that Vyne's reckless conduct causes.  Attackers hide in systems and Vyne is providing them a fertile network of databases to compromise–all they have to do is piggyback off Vyne's hacking.  Blocking HSOne from managing its own software with security controls, not just focused on Vyne but against the universe of attackers, is irreparable harm that cannot be addressed by a money judgment.  The entire industry is moving away from printer drivers, and HSOne is permitted to do so.  Vyne will be fine – it can use the API.  It can accept the print driver alternative

---

[1] *See Amazon.com Services, LLC v. Perplexity AI, Inc.*, No. 25-CV-09514-MMC, 2026 WL 658407, at *3–4 (C.D. Cal. Mar. 9, 2026); *AT&T Services, Inc. et al. v. T-Mobile US Inc.*, Civ. Action No. 3:25-CV-3279-S, N.D. Tex. (ECF No. 30) (Dec. 18, 2025).

HSOne has offered.  If it acknowledges that it needs more than a print driver and wants to continue writing back to HSOne's platform, it can have a clearinghouse integration.  It can get everything it needs to do.  The only reason it has not yet worked out a deal, as Vyne's CEO admitted at the hearing, is that Vyne wants unfettered write-back capability through Robotic Process Automation – it wants to mass-inject and extract data through HSOne's user interface.

Enough is enough.  Vyne should have stopped when HSOne implemented security controls.  Vyne should have stopped when HSOne told it to.  Now only the law can stop Vyne, and it must.

## I.    HSONE WILL SUCCEED ON THE MERITS OF ITS CLAIMS.

### A.    Vyne's Conduct Constitutes Brazen CFAA Violations

#### (I)    Vyne cannot win on the facts

The facts on Vyne's decryption key misappropriation are undisputed.  Vyne's Opposition brief does not address these critical facts–which came to light despite Vyne's CTO's best efforts to occlude them.  Vyne claims its silence is due to a lack of space, but no amount of space will help Vyne here.  Vyne misappropriates multiple secrets, at least three of which are from HSOne's source code, and uses them to decrypt encrypted configuration files and gain unauthorized access to the Dentrix databases HSOne deploys nationwide.  The Supreme Court has made clear that this is a prototypical CFAA violation.  The facts Vyne does purport to advance in its Opposition brief with respect to CFAA all fall apart as well.

**First, HSOne's Dentrix database software is installed on protected computers and Vyne has no authorization to access that database.**  The point is not what kind of computers the Dentrix databases sit on.  Whatever they are, these are protected computers.  Vyne itself alleges that the computers where Dentrix is installed are protected computers in its own Complaint.  (ECF

3

61 ¶91.) ("Vyne's customer's computer systems are 'protected computer[s]' within the meaning of the" CFAA because they are "used in or affect interstate or foreign commerce.")[2]

Vyne mischaracterizes Mr. McDaniel's testimony on this point as well. (Vyne's PH-Opp. at 5 (citing to 608:10-11, 614:18-20).) Mr. McDaniel said nothing more than that dentists' offices can install software on the computers where Dentrix is installed. That does not mean that HSOne authorizes those dentist offices to deploy software that steals decryption keys from Dentrix and uses those keys to access Dentrix without authorization to read and write data. Nowhere in the hearing did any HSOne witness say so, in fact all the testimony was to the contrary, and HSOne's contracts with its customers further prohibit such a thing. (KM Decl. (ECF 46-2) 10; PX35.)

**Second, dental practices do not authorize Vyne's hacking.** No customer even knows what Vyne is doing. Not even Vyne's CTO knew how its key misappropriation and database access worked (unless he did know and made false representations about it). As extensively covered in HSOne's opening brief, the consent is not informed–something that is factually and legally significant. Even if dentists did agree to Vyne's hacks, they have no authority to do so. Vyne's own contract with dentists, which Vyne invokes, stops at permitting Vyne to make written requests. Nowhere does it permit hacking. This is industry standard. Even Vyne requires its customers not access its own software without authorization, something its CEO begrudgingly admitted at the hearing. (SR 167:13-169:21.)

**Third, Vyne does access internet-connected computers and servers that HSOne controls.** Vyne's CTO himself helped to develop the technology by which Dentrix databases at

---

[2] Vyne also mischaracterizes the nature of the Dentrix installations in its brief. The hearing made clear that these systems are not necessarily on computers owned by the dentist's offices. They can be virtualized or even in a cloud infrastructure environment. They are not necessarily on bare metal computers. (JN 341:2-11; 341:17-343:1; DY 453:1-19; KM Decl. (ECF 62-1) ¶¶ 2-9.) This means Vyne's concocted theory under the CFAA that a database installed on a dentist's computer can be hacked, but one installed in a virtualized server or cloud environment cannot, falls apart.

dentists' offices sync to HSOne's cloud infrastructure. (JN 341:17-343:1.) A key part of Vyne's hacking is to access HSOne's cloud servers from the on-premise hijacked software. Vyne mishandles this critical fact in its brief and had no explanation at the hearing on this point. The Dentrix databases on customer premises sync to HSOne's cloud infrastructure–but they can only do so based on administrative credentials that Vyne misappropriates through its decryption key hack. (KM 605:14-606:3; 607:5-15.) Without that, Vyne's hijacked Dentrix databases could not receive updates from HSOne's cloud infrastructure, nor could they send data up to the HSOne cloud infrastructure. Consequently, Vyne's unauthorized access to the Dentrix databases on customer premises allows Vyne to then access, without authorization, the HSOne cloud infrastructure. (KM Decl. (ECF 62-1) ¶¶ 2–10; JN 341:2-11.); (DY 520:12-521:1.)

### (II) Vyne cannot win on the law

**The CFAA's plain statutory text supports a preliminary injunction.** The CFAA does not speak of hardware ownership. It prohibits access to "protected computer[s]" that is "without authorization" or exceeds authorization. 18 U.S.C. § 1030(a)(2)(C). The authorization inquiry is aimed at who controls access through the gate, not who holds title to the underlying hardware. Vyne itself alleges that the computers at issue are protected within the meaning of the statute. (ECF 61 ¶ 91.) Vyne's Opposition also does not refute that HSOne can sue because it suffers "damage or loss by reason of a violation," including for "injunctive relief." Section 1030(g). Vyne's proposition would mean that if a dentist sued it for CFAA violations for Vyne's hack damaging the dentist's computer – which has already happened over 1,000 times – that the dentist could not advance their claim either. This shows that Vyne's argument is not actually about who owns the computer, it is just another way for Vyne to claim they had authorization from the dentists. All of Vyne's arguments boil down to consent, which Vyne cannot establish.

**Case law consensus, apart from the statute, also supports a preliminary injunction.**

Computer ownership.  CFAA defines "protected computer" "broadly." *Vox Mktg. Grp. v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1284 (D. Utah 2021).  HSOne has "rights" to its Dentrix software on premise and consequently can sue under the CFAA based on Vyne's unauthorized access. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004).  Vyne's attempt to "read[] an ownership or control requirement into the Act" invites the District Court to "err[]" and should be rejected.  *Id.*  Vyne's brief is silent on this case, which HSOne has repeatedly referenced.  This situation has arisen in litigation involving MRI machines owned by hospitals (as opposed to the software manufacturer of software embedded in them).  There, like what should happen here, a district court noted that a theory like Vyne's would "foreclose[] relief to a plaintiff proximately harmed by a defendant's unauthorized access to a plaintiff's proprietary data or files stored on another's computer when the computer's owner grants the defendant access to the *computer.*" *Philips Med. Sys. P.R. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 236-37 (D.P.R. 2016) (citation omitted and emphasis in original).  Vyne's reading of the word "authorization" ultimately "strays from the meaning Congress sought to give to the term 'authorization'[.]" *Id.*  Developing software to bypass security measures on the customers' computer, like Vyne does, constitutes intentional access that exceeds authorized level of access, "[e]ven if owners of specific [] systems authorized Defendants to access and service those systems" at a lower level. *203 F. Supp. 3d 221, 234-36 (D.P.R. 2016)*

No consent.  Case after case rejects Vyne's theories that customer credentials permit unauthorized access.[3]  Just in the time that this preliminary injunction has been pending, at least

---

[3] *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1068 (9th Cir. 2016) (consent Power received from Facebook users insufficient); *Phreesia, Inc. v. Certify Glob., Inc.*, 2022 WL 911207, at *6 (D. Md. Mar. 29, 2022) (client-provided access unauthorized where contracts prohibited customers from allowing third-party access); *Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221 (D.P.R. 2016), 203 F. Supp. 3d 221, 234-36

two district courts have granted preliminary injunctions to stop use of customer credentials to access computers without authorization. *See* fn. 1, supra. Vyne's theory boils down to a proposition that if the customer consents to an outcome, then Vyne gets to achieve that outcome by any means necessary–even hacking. This is not the law. The case Vyne cites supports HSOne's position, because the question is "who[] controlled such access." *Oce N. Am., Inc. v. MCS Servs.*, 748 F. Supp. 2d 481, 487 (D. Md. 2010) (citation omitted). That entity is HSOne. Dentists have no way to even retrieve the decryption key needed without Vyne's hack. (DY 434:16-435:4.) Vyne's own terms prohibit the same thing that HSOne's do, as admitted by Mr. Roberts. (SR 167:1-168:23.) Vyne also fails to address the issue of informed consent. Vyne omits what it is doing when it communicates to customers about its integration.[4]

Vyne's stance is made more problematic by the fact that its conduct is ever evolving. Even Vyne's own CEO and CTO could not fully describe their own software. HSOne imposed a gate to third parties who are not part of the API agreement. The dental practice's perfunctory click of installation buttons, without any knowledge of what is actually happening, hardly amounts to lawful opening of the gates.

The vast majority of Vyne's cases on consent precede *Van Buren*, are distinguishable, and do not support Vyne's position. In *Abu v. Dickson*, the IT administrator who entered *his own* credentials was not found to exceed authorization. 107 F. 4th 508, 515 (6th Cir. 2024). In *Contour*

---

(D.P.R. 2016) (defendants exceeded any authorized access by hacking into software without any authorization from plaintiff); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 565–70 (N.D. Ill. 2019) (sufficiently pled unauthorized access even though counter-defendant allegedly had permission of dealers who used counter-plaintiff's data management system and acted as their agent); *State Analysis, Inc. v. Am. Fin. Services Assoc.*, 621 F. Supp. 2d 309, 316 (E.D. Va. 2009) (plaintiff sufficiently pled unauthorized access when it alleged that under the terms of their contract, "only clients were authorized to use [the plaintiff's] subscription services, and that [the defendant] was not so authorized.").

[4] Even in its briefing, this is apparent. The Opposition brief may be one of the most egregious iterations of Vyne claiming that there is something it does that is cabined to just a printer driver–even while in reality there is no standalone printer driver but rather a suite of services that hack the database. (KM 616:9-15.)

*Data Solutions* the parties had an agreement and plaintiff granted Gridforce access to an IT system *built for Gridforce* and "explicitly provided … administrative-level credentials to access the IT System." *Contour Data Sols. LLC v. Gridforce Energy Mgmt. LLC*, No. 20-3241, 2024 U.S. Dist. LEXIS 154824, at *44 (E.D. Pa. Aug. 28, 2024).  Nothing like this happened here.  Dentists do not have access to the administrative-level credentials.  (DY 434:16-435:4.)  *SecureInfo*, which precedes *Van Buren* by sixteen years, is distinct.[5]  Unlike *SecureInfo*, the dental practices cannot sub-authorize access to something they never had access to (or even knew about).  Even *ATPAC*, on which Vyne relies, forecloses Vyne's position: it explicitly did not endorse "third-party defendant us[ing] subterfuge--like using user names and passwords that do not belong to it--to gain access to plaintiff's protected materials on plaintiff's own website, computers, or servers." *AtPac, Inc. v. Aptitude Sols., Inc.*, 2010 U.S. Dist. LEXIS 42109, at *17 (E.D. Cal. Apr. 28, 2010).  Vyne used the same form of subterfuge.

### B.     Vyne Violates DMCA Too

HSOne's multi-layered encryption of its Dentrix configuration files qualifies as a technological measure that "effectively controls access to a work" under the DMCA because, in the ordinary course of its operation, it "requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."  17 U.S.C. § 1201(a)(3)(B).  Vyne does not rebut that its decryption algorithm, or in the words of Mr. Nix, "proprietary algorithm" (JN 315:21-316:1), is accessing HSOne's binaries and source code secrets. These acts constitute, at minimum, decrypting "an encrypted work . . . without the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A).  Vyne also fails to address HSOne's argument that

---

[5] *SecureInfo Corp. v. Telos Corp.*, 387 F.Supp.2d 593, 609 (E.D. Va. 2005).

the runtime patching of the DtxHelp.dll file is an independent DMCA violation.  (HSOne PH-Br. 7; see also JN 275:24-276:12).  This alone merits grant of injunctive relief.

Dentrix, along with its compiled binaries, DLL libraries, configuration files, and related components, is a copyrighted work.[6]  The secrets extracted by VyneSync belong to HSOne–they are not patient data.  Vyne's administrative credentials unlock more than patient records.  Mr. Nix admitted that once VyneSync obtains credentials through its algorithm, "it can access . . . configuration data for Dentrix."  (JN 265:10-265:19.)

**Vyne's DMCA defenses fail.**  The DMCA's anti-circumvention statute creates a right without any infringement-nexus requirement.   Vyne's own cited authority, *Ground Zero*, recognized the split and *declined* to impose a nexus requirement. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 692 n.6 (D. Md. 2011).  Accessing copyrighted binaries to extract and access proprietary software and secrets bears more than a reasonable relationship with the copyright protection afforded by the Copyright Act.  Further, the *Chambers* court dismissed the case because the plaintiff failed to allege any technological measure or act of circumvention. *Chambers*, 632 F. App'x at 744.[7]  That's not the situation here: Vyne admits to circumventing HSOne's blocking measures.  (SR 233:8-234:2; JN 275:24-276:12.)

The case of *Synopsys* is instructive and maps to this case.  *Synopsys, Inc. v. AzurEngine Techs.*, Inc., 401 F. Supp. 3d 1068, 1071 (S.D. Cal. 2019) (granting preliminary injunction based on use of counterfeit license keys to bypass anticircumvention software despite arguments of valid

---

[6] *See, e.g.*, *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1073 (S.D. Cal. 2019) ("[Almost all novel software code constitutes a creative, original work of authorship that is automatically protected under the Copyright Act.") (citing *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1519 (9th Cir. 1992)).

[7] First, *Chambers* is an unpublished, non-precedential opinion. *Chambers v. Amazon.com, Inc.*, 632 F. App'x 742 (4th Cir. 2015).  Thus, there is no Fourth Circuit "burden" to be met. (Vyne's PH-Opp 8.)  Second, Vyne's invocation of the infringement-nexus does not come from *Chambers*, but S*torage Tech*, a Federal Circuit appeal from a First Circuit district court where the Federal Circuit is endorsing Ninth Circuit authority. *See Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Inc.*, 421 F.3d 1307, 1318 (Fed. Cir. 2005).

access).  Like here, it was irrelevant that AzurEngine "believed it had a license to use the software" because AzurEngine circumvented controls.  *Id.* at 1073.

Finally, § 1201(f) safe harbor does not apply.   Vyne has not lawfully obtained the right to use Dentrix and its conduct is not aimed solely at interoperability.  It is aimed at commercializing unauthorized database access and offering ancillary services built on stolen credentials.  Because Vyne is violating other "applicable law," it cannot seek the safe harbor's shelter.  17 U.S.C. § 1201(f)(3).  Vyne's own case recognizes this.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 546 (6th Cir. 2004) ("defenses apply only when traditional copyright infringement does not occur and only when the challenged action . . .would not violate other applicable laws") (quotation marks omitted).

## C.    Vyne's Conduct Satisfies All Elements of Trespass to Chattels.

Courts in both Maryland and Utah have recognized computer systems as chattel under a trespass claim.  *See Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 697 (D. Md. 2011) ("courts in Maryland [] have been willing to recognize claims for [] trespass to chattels involving certain digital things, such as websites and domain names and computer networks).[8]

---

[8] *South Central Utah Telephone Assoc., Inc. v. Auditing Div. of the Utah State Tax Comm'n,* 951 P.2d 218, 223-24 (Utah 1997) (software is "tangible personal property"); *see also Skapinetz v. CoesterVMS.com, Inc.,* No. 8:17-CV-01098-PX, 2019 WL 2579120, at *5 (D. Md. June 24, 2019); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1069-70 (N.D. Cal. 2000); *CompuServe Inc. v. Cyber Promotions, Inc*., 962 F.Supp. 1015, 1027 (S.D. Ohio 1997); *Register.com, Inc. v. Verio, Inc*., 356 F.3d 393, 404 (2d Cir. 2004).

Vyne's cases are distinguishable.  The Fourth Circuit urged caution in *Omega World Travel* because no *Oklahoma* courts had ever recognized the tort based on invasion of computer resources.  *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 359 (4th Cir. 2006).  The defendant there also sent 12 spam emails (*id.* at 350). Utah does recognize the cause of action and that computer systems are tangibles that would be protected.  *See, e.g., Ass'n of Flight Attendants, AFL-CIO v. Skywest Airlines Inc.*, No. 2:23-CV-00723-DBB-DBP, 2025 WL 3537390, at *8–9 (D. Utah Dec. 9, 2025).  The chattel here is not simply data or information, it consists of computer systems courts recognize as tangible property.  *Margae, Inc. v. Clear Link Techs., LLC*, 620 F. Supp. 2d 1284, 1287–88 (D. Utah 2009).

The record reflects thousands of instances of Vyne software accessing and modifying HSOne's database and credentials, including cloud-hosted components, beyond the scope of any customer agreement or intended use.  (*See also* DY 433:23-434:6; DY Supp. Decl. (ECF 145); HSOne 123; SR 94:2-5, 105:5-9, 162:3-165:9; JN 283: 7-22, 297:20-298:19.)

### D.    Vyne's Conduct Establishes Tortious Interference.

Vyne had ample opportunity to address the issue, both at hearing and in supplemental briefing.  If Vyne believed a sur-reply was necessary, it could have requested one.  The Court has discretion to consider these claims, especially as Vyne itself put them at issue.[9]

Vyne admits in its own pleading on information and belief that it has knowledge of HSOne's contracts with its customers.  (ECF 61 ¶ 38; SR Dep. 51:25-52:20); (ECF 6-3 (Nix Declaration alleging "Dentrix's use of EventBridge to collect this information went far beyond what Dentrix's users consented to in Dentrix's [EULA]".)  Vyne's leadership spent years at HSOne and knows about these contracts intimately–Mr. Roberts even enforced them.  Mr. Roberts also admitted HSOne's customer contracts do not permit the kind of unauthorized access Vyne orchestrates. (SR Dep. 51:25-52:20).  He acknowledged HSOne's API licensing terms as well. (*See* [Ex. No. 6-2 (Dentrix Developer Program referenced by Stephen Roberts' declaration] ¶¶ 10, 13 "Fees and Payments"); (SR 122:4-25, 133:6-15).  There can be no dispute—Vyne knows about all of HSOne's contracts with customers and partners.[10]

---

[9] *See Graham v. Santander Consumer USA, Inc.,* No. CV CCB-17-3148, 2018 WL 2462881, at *5 (D. Md. June 1, 2018) ("'the power to decline consideration of' arguments raised for the first time in reply is discretionary, and courts are not precluded from considering such issues in appropriate circumstances,' such as where the opposing party was able to respond to those arguments in a surreply"); *Trillium USA, Inc. v. Bd. of Cnty. Comm'rs of Broward Cnty., Fla.,* 37 P.3d 1093, 1097 n.3 (Utah Sup.Ct. 2001).

[10] Now that Vyne disputes, for the first time in its post-trial brief reply, that it knows about HSOne's contracts (despite issuing a letter referencing hundreds of HSOne customers and making arguments about how HSOne's conduct exceeds the EULA), HSOne attaches it for reference to Mr. McDaniel's declaration.  (ECF 95 n.7); (ECF 61 ¶ 38.)

**Vyne Acted Intentionally to Disrupt HSOne's Contracts and Relationships.** Vyne asserts its intent was only to "continue serving its customers" but the record tells a different story. Vyne chose to abandon the authorized API channel and, when denied further consent, it chose to actively circumvent HSOne's security controls. This is proven through the testimony and technical evidence of ongoing circumvention in over 7,000 shared customer environments. (SR 178:19-179:25; BW 379:4–380:9; PX260.) This is intentional and improper interference, as confirmed by Vyne's own admissions. (SR 224:1-225:22.) Neither Maryland nor Utah law require proof of an actual breach; interference with contractual rights or expectations suffices.[11]

Vyne's assertion that no HSOne witness testified "every dental practice that installs Vyne's software is in breach" is misleading. HSOne does not permit dental practices to read and write the same data that Vyne does. No dental practice is permitted to access the DTX config file through third-party software that decrypts it by misappropriating multiple credentials stored in HSOne's compiled binaries. The consent issue is settled in the CFAA discussion.

### E.    Vyne's Defenses to the Unfair Competition Claim Fail.

Vyne's conduct is textbook example of unfair competition: Vyne continuously "passes off" its unlawful integration methods as legitimate, misleading customers who have no way to discern that Vyne is circumventing security controls, and accessing HSOne's systems without authorization. (BW 379:4–380:9.) Vyne acted with the intent to "intimidate" HSOne into allowing it continued, unfettered access via the methods it wants. (HSOne's PH-Br. (ECF 144) 2.) Vyne's conduct undermines the value and security of HSOne's intellectual property, disrupts service, and damages customer trust. (*See, e.g.,* DY Supp. Decl. (ECF 145) ¶19. Vyne's acts have caused, and

---

[11] *See, e.g., Lake Shore Invs. v. Rite Aid Corp.*, 67 Md. App. 743, 750 (1986) ("action may lie when there has been a wrongful interference with contractual rights or expectations, even if there is no breach"); *St. Benedict's Devel. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991) (stating that one incurs liability for intentional interference with contract by "intentionally and improperly" causing a party not to perform the contract).

continue to cause, actual confusion and reputational harm to HSOne, as customers are left to believe HSOne is responsible for the instability and corruption resulting from Vyne's exploits.[12] Vyne's attempt to shift blame by alleging that HSOne "disabled Vyne's print driver while maintaining its own" is misleading and irrelevant. HSOne's actions were reasonable and targeted security measures necessary to protect its systems and customers from ongoing exploitation. Even Vyne's CEO concedes such controls are standard and appropriate. (SR 167:13-169:21.) The record establishes that Vyne's conduct is intentionally unfair, unlawful, and causes continuing harm to HSOne and the market.

## II.    HSONE SATISFIES THE REMAINING INJUNCTIVE RELIEF FACTORS

### A.    HSOne Faces Irreparable Harm Absent an Injunction

Vyne's Opposition fails to grapple with the significant existential risk of cyberattack that Vyne creates. Evidence of 7,000+ shared customers decrypting as well as over a million accesses in a 24-hour period disproves the deprecation claims. Vyne's witnesses have zero credibility on this issue. Courts reject the deprecation theory too. *F.T.C. v. Agora Fin., LLC*, 447 F.Supp.3d 350 (D. Md. 2020) (rejecting voluntary cessation claim and granting PI).[13] A party "claiming that its voluntary [cessation] moots a case bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017). Here, Vyne only asks the Court to take it for its word. (Vyne's PH-Opp. 13-14.) Even when Vyne's software is removed, the evidence introduced at the

---

[12] *See, e.g., Swig Holdings, LLC v. Sodalicious, Inc.*, No. 2:15-cv-00307 (D. Utah Sept. 8, 2017) (false terminology confused customers and was sufficient to maintain an unfair competition claim); *see also Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1088 (D. Md. 1995) (holding "Microsoft [] demonstrated likelihood of confusion [and] actual confusion [where] one consumer [] believed that it was purchasing *bona fide* Microsoft computer software from Defendants.").

[13] *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (a party's voluntary cessation of a challenged practice does not end the inquiry; if it did, a party would be free to return to his old ways and avoid review); *Norton v. LVNV Funding, LLC*, 396 F.Supp.3d 901, 902 (N.D. Cal. 2019) (voluntary cessation insufficient to deny injunctive relief).

hearing shows that it can still maintain database access–HSOne's customers have complained of this.[14]  Vyne's CEO's testimony, together with Vyne's post-hearing API key generation activity, further confirm that Vyne's conduct will continue absent court order.  (SR 183:6-10, 205:1-5). This merits a preliminary injunction.  See, e.g., *Amazon.com Servs. LLC v. Perplexity AI, Inc.,* No. 25-cv-09514, 2026 WL 658407, at \*4 (C.D. Cal. Mar. 9, 2026).

Vyne's conduct puts HSOne at risk of suffering a catastrophic cybersecurity breach.[15] (HSOne's PH-Br. 2-3,16-18.)  Unfettered database access is also irreparable.[16]  Once patient data and other proprietary intelligence is extracted, the information is out there and the harm is done. No damages calculation can restore the status quo.  For many of the same reasons, HSOne has dealt with a loss of goodwill.  Customers blame HSOne for the issues caused by Vyne.  (BW 379:4-380:9.)  *Synopsys, Inc. v. AzurEngine Techs, Inc.*, 401 F. Supp. 3d 1068, 1074 (S.D. Cal. 2019) (finding that damaging goodwill, risking market share, causing reputational harm and/or enabling third party interference are all "difficult—if not impossible—to quantify, and thus constitute irreparable harm.")[17]  Vyne's claims that the data corruption was negligent only underscore the need for injunctive relief.  More negligent harm will occur because Vyne's hacks are slipshod and thrown together and do not benefit from testing with HSOne's teams. (HSOne-22, ¶¶62-63, 119; GR 538:6-542:18; GR 553:1-10)  Vyne's argument that only dentists and not HSOne are harmed is false too.  (GR 542:19-543:13 (influx of calls/extra work HSOne had to do as a result of Vyne's conduct.)

---

[14] Youssef Declaration dated March 3, 2026, Doc. No. 146; (GR 558:3-19; JN 296:16-24; HSOne-2; HSOne-22.)
[15] The hearing showed that not being able to point it out does not mean it is not in the works.  And Vyne's attempt at a gotcha based on the public disclosure goes nowhere.  Mr. Youssef explained that the biggest breaches often involve lateral movement and hiding in systems.  The point is that unless enjoined, Vyne will likely cause a breach.
[16] *AHS Staffing, LLC v. Quest Staffing Grp.*, 335 F. Supp.3d 856, 873 (E.D. Texas 2018); *CACI, Inc, - Fed. v. U.S. Navy*, 674 F.Supp.3d 257, 278-79 (E.D. Va. 2023); *Beaches MLS, Inc. v. Miami Ass'n of Realtors, Inc.*, No. 15-81194, 2015 WL 11170925, at \*2 (S.D. Fla. Aug. 24, 2015).
[17] Customer trust, once damaged, is not quantifiable.  *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 278-79 fn.7 (4th Cir. 2025).

**B.      The Balance of Equities Favors HSOne and the Public Interest Supports Immediate Injunctive Relief**

HSOne seeks nothing more than to have Vyne follow the law, which does not qualify as "affirmative" and instead maintains the status quo before Vyne started hacking.  Vyne's argument that because it unlawfully accessed HSOne's software at some point in time, it now has indefinite squatters rights is not grounded in law.  *Synopsys, Inc.*, 401 F. Supp. 3d at 1074-75 (granting TRO and PI after comparing irreparable harm caused by unlawful access to plaintiff's software against defendant's "audacious claim" that "an injunction could be devastating because [it had] been using the [] software" for its own sake); see id. ("[a]ny benefit [defendant] received from impermissibly accessing [the] software was ill-gotten").  And, to the extent that Vyne argues that it will suffer losses if it cannot operate within Dentrix, any harm is a result of Vyne's own unlawful conduct.  *Amazon.com Servs. LLC*, 2026 WL 658407, at *2 ("there is a long-settled principle that harm caused by illegal conduct does not merit significant equitable protection") (cleaned up).  The Court should make a similar finding to that in Synopsys when balancing the equities and grant injunctive relief in favor of HSOne.[18]  The public interest, too, supports immediate injunctive relief.  The Cures Act does not provide a license to hack.  And HSOne does not violate it in any event, as shown in prior briefing and in the record.  The "public has an interest in the enforcement of statutes."  *Synopsys, Inc.*, 401 F. Supp. 3d at 1075; see also *Amazon.com Servs. LLC*, 2026 WL 658407, at *3 (public interest in preventing unauthorized access).

For all these reasons, HSOne respectfully requests that the Court grant its preliminary injunction request and require that Vyne follow the law.

---

[18] Vyne omits that HSOne's printer driver has been extensively tested so that it does not cause the same errors that Vyne's does; Vyne's printer driver is both unauthorized and untested.  (BW 359:6-12, 396:24-8.)  As HSOne's CEO testified at the hearing, HSOne is in the process of deprecating its printer driver.  (BW 375:11-16.)

15

Dated: March 11, 2026

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Michael Burshteyn*

Michael Burshteyn *(pro hac vice)*
Marcelo Barros *(pro hac vice)*
Jennifer Bartlett *(pro hac vice)*
Candra Connelly (*pro hac vice*)
Sydney Parks (*pro hac vice*)
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Michael.burshteyn@gtlaw.com
Marcelo.barros@gtlaw.com
Jennifer.bartlett@gtlaw.com
Candra.Connelly@gtlaw.com
Sydney.Parks@gtlaw.com

Michael R. Sklaire (MD Fed. Bar No. 16471)
1750 Tysons Boulevard, Suite 1000
Tysons Corner, VA 22102
Tel: (703) 749-1308
michael.sklaire@gtlaw.com

*Counsel for Defendant/Counter-Plaintiff Henry Schein One, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of March, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael Burshteyn*
Michael Burshteyn

16