**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

NATIONAL ELECTRONIC ATTACHMENT, INC.,
d/b/a VYNE DENTAL

Plaintiff,

- against –

HENRY SCHEIN ONE, LLC,

Defendant.

**Case No. 1:25-cv-03246-MJM**

# HENRY SCHEIN ONE'S OPPOSITION TO VYNE'S MOTION TO STAY INJUNCTION PENDING APPEAL AND REQUEST FOR CLARIFICATION OF THE COURT'S INJUNCTIVE ORDER

## TABLE OF CONTENTS


INTRODUCTION ........ 1

LEGAL STANDARD ........ 5

ARGUMENT ........ 5

I. VYNE HAS NOT MADE A "STRONG SHOWING" THAT IT IS LIKELY TO SUCCEED ON THE MERITS. ........ 5

A. Vyne Accessed a Protected Computer in a Vyne-Controlled Operation Without Authorization. ........ 5

B. Vyne, Not Shared Customers, Accessed the Protected Computers under the CFAA. ........ 12

C. The Court found the requisite causal connection between "access" and "damages." ........ 14

D. The Court's Order is Prohibitory, not Mandatory. ........ 16

E. A "Serious Question" is Not Enough. ........ 16

F. The Fourth Circuit May Consider Independent Theories of Liability That Support the Injunction. ........ 18

II. VYNE CANNOT SHOW THAT IT LIKELY TO SUFFER IRREPARABLE INJURY ABSENT A STAY. ........ 19

III. A STAY WOULD SUBSTANTIALLY HARM HSONE AND THIRD PARTIES WHOSE EHI MUST BE SAFEGUARDED. ........ 21

IV. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH AGAINST A STAY. ........ 23

V. THE COURT SHOULD DENY VYNE'S REQUEST FOR A CATEGORICAL RPA EXEMPTION. ........ 23

VI. THE BOND-SETTING SEQUENCE DOES NOT WARRANT A STAY. ........ 24

CONCLUSION ........ 26




ACTIVE 727292313v7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aggarao v. MOL Ship Management Co.*,
675 F.3d 355 (4th Cir. 2012) ....................20

*Am. Fed'n of State, Cnty. & Mun. Employees, AFL-CIO v. Soc. Sec. Admin.*,
778 F. Supp. 3d 685 (D. Md. 2025), vacated and remanded on other grounds, 172 F.4th 361 (4th Cir. 2026)....................9

*Amazon.com Services LLC v. Perplexity AI, Inc.*,
No. 26-1444, 2026 WL 2237587 (9th Cir. Aug. 4, 2026) .................... *passim*

*Di Biase v. SPX Corp.*,
872 F.3d 224 (4th Cir. 2017) ....................25

*District 17, United Mine Workers v. A & M Trucking, Inc.*,
991 F.2d 108 (4th Cir. 1993) ....................29

*Estes Forwarding Worldwide LLC v. Cuellar*,
239 F. Supp. 3d 918 (E.D. Va. 2017) ....................12

*Florida Atl. Univ. Bd. of Trustees v. Parsont*,
465 F. Supp. 3d 1279 (S.D. Fla. 2020) ....................27

*GSP Financial Services, LLC v. Harrison*,
No. GJH-18-2307, 2021 WL 288172 (D. Md. Jan. 28, 2021)....................12

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
174 F.3d 411 (4th Cir. 1999) ....................29, 30

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) ....................27

*Jensen v. Md. Cannabis Admin*.,
151 F.4th 169 (4th Cir. 2025) ....................23

*Maryland v. United States Dep't of Agric.*,
777 F. Supp. 3d 496 (D. Md. 2025)....................6, 21, 22

*Mead Johnson & Co. v. Abbott Labs.*,
201 F.3d 883 (7th Cir.) ....................29

*Nken v. Holder*,
556 U.S. 418 (2009).................... *passim*

*Oce N. Am., Inc. v. MCS Services, Inc.*,
748 F. Supp. 2d 481 (D. Md. 2010)....................11

*Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Engineers*,
890 F. Supp. 2d 688 (S.D.W. Va. 2012)....................21

*Pashby v. Delia*,
709 F.3d 307 (4th Cir. 2013) ....................23, 29



ACTIVE 727292313v7

*Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*,
203 F. Supp. 3d 221 (D.P.R. 2016)....................11

*Project Vote/Voting for America v. Long*,
275 F.R.D. 473 (E.D. Va. 2011)....................24

*PSEG Renewable Transmission LLC v. Arentz Family, LP*,
No. 25-1730, 2026 WL 2263342 (4th Cir. Aug. 6, 2026)....................22

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*,
575 F.3d 342 (4th Cir. 2009), cert. granted, judgment vacated, 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010) and adhered to in part sub nom. *The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010)....................9, 22

*Rose v. Logan*,
No. BR 12-25471-RAG, 2014 WL 3616380 (D. Md. July 21, 2014)....................21

*SkyHop Technologies, Inc. v. Narra*,
58 F.4th 1211 (11th Cir. 2023)....................12, 19

*Stanley v. Babu*,
No. GJH-19-489, 2021 WL 878356 (D. Md. Mar. 9, 2021)....................21

*Theofel v. Farey-Jones*,
359 F.3d 1066 (9th Cir. 2004)....................11

*U.S. Home Corp. v. Settlers Crossing, LLC*,
No. CIV.A. DKC 08-1863, 2015 WL 3973071 (D. Md. June 29, 2015)....................21

*United States v. Calonge*,
74 F.4th 31 (2d Cir. 2023)....................19

*United States v. Mosby*,
No. 22-CR-00007-LKG, 2024 WL 3877613 (D. Md. Aug. 20, 2024)....................21

*United States v. Texas*,
144 S. Ct. 797 (2024) (Barrett, J., concurring in denial of applications for stay)....................30

**Rules**

Fed. R. Civ. P. 65(c)....................29

**Statutes**

18 U.S.C. § 1030(a)(5)(C)....................10

18 U.S.C. § 1030(e)(8)....................7, 18

# INTRODUCTION

Vyne's request for a stay contradicts its representations to this Court that it is not writing back to Dentrix's database. By its own account, Vyne should need no stay.[1] It seeks one because it is writing back. Even after the Court's Order, Vyne has escalated. HSOne's investigation over the last few days revealed that Vyne is—after the injunction order—developing software called "Vyne Writeback Assistant." The Court should deny a stay.




(Declaration of Kenton McDaniel ("McDaniel Decl.") ¶ 15.)

HSOne's investigation also shows that Vyne has now unlawfully downloaded Dentrix to a Vyne-owned and operated machine.[2] It has created a new tool tied to a ticket number labeled "Vyne RPA web service." And it is creating a new application that attempts to misappropriate Dentrix encryption keys. (McDaniel Decl. ¶¶ 8–16.) (ECF No. 190.)

Vyne's theory of the case is predicated upon the myth that all it needs is access to a printer driver to operate. The Court has issued an order securing Vyne's access to the printer driver at no cost

---

[1] Vyne described its printer-driver integration as "akin to a 'print to PDF' function in Microsoft Word." (ECF No. 6-1 at 3.) Vyne consistently represented that all it needed was the use of the print-driver functionality and that the print driver did not access Dentrix databases. (*e.g.,* Feb. 10 Tr. 101:17, 191:4-5, 32:12-16, 96:2-5, 97:20-25, 108:25-109:4; Feb. 11 Tr. 288:17-19, 293:12-14; Feb. 12 Tr. 649:16-19.) Vyne's counsel told the Court that "the only thing" HSOne was challenging was Vyne's effort "to reintegrate the printer driver through different ways." (Nov. 17, 2025 Tr. (ECF No. 75) 21:5–15.) When the Court asked whether it could restrain read-and-write capability without affecting the printer driver, counsel answered that the functions were separate and that doing so was technically feasible. (Mar. 18, 2026 Tr. (ECF No. 163) 16:2–17:3.) The Court followed that line, taking Vyne "at [its] word." (Mar. 18, 2026 Tr. (ECF No. 163) 16:18–17:1).

[2] To use Dentrix, Vyne assented to be bound HSOne's Terms and Conditions, which it immediately vioalated.

to Vyne (and significant cost to HSOne[3]) while the case is pending. Yet Vyne seeks a stay to do what it says it neither needs nor has been doing. This should not be permitted.

Vyne has a history of making false representations in this proceeding. (Mem. Op. 80-84; ECF No. 164 at 4, 9 (sealed); Feb. 11 Tr. 292:13–293:14; ECF No. 130 at 6; Mot. at 16.) Its executives claimed in open court under oath that it was not misappropriating HSOne's encryption keys and secrets to access HSOne's systems. That was disproven the next day. (ECF No. 52 at 10.)

The Court found an injunction against Vyne warranted. In its motion to delay that injunction further, Vyne fails to make the required "strong showing" that it is likely to prevail on the merits of its appeal. Vyne's fallback that the appeal raises "serious and difficult questions of law" does not satisfy the governing standard. Vyne's motion asks this Court to find, on the same record, that the detailed findings it entered weeks ago following a three-day evidentiary hearing, arguments by counsel, and several post-hearing submissions were likely wrong. Courts in this District have refused this type of rehashing before. *See Maryland v. United States Dep't of Agric.*, 777 F. Supp. 3d 496, 500 (D. Md. 2025) ("The Court is well aware, of course, that the questions presented in this case are complex and involve issues of first impression. But in its Motion to Stay, the Government simply rehashes the same arguments that the Court considered in detail and rejected in the Memorandum accompanying the Preliminary Injunction Order."). This Court should do the same.

With respect to the CFAA, the Court found that HSOne's cloud system that interacts and syncs with Dentrix databases is a protected computer. (Mem. Op. 77-79.) Vyne's CTO admitted that Vyne's access extends to HSOne's cloud sync system, which he helped develop when he worked at HSOne. (JN 341:2-11.) The Court made detailed findings about how Vyne accessed a protected computer.

---

[3] HSOne intends to appeal the Court's Order as well, but does not seek a stay pending the appeal given the harms that will result if Vyne is not enjoined. HSOne is already in compliance with the injunction.

(Mem. Op. 77-84.)

The Court found that Vyne—not its customers—accessed Dentrix and HSOne's systems. Customer installation and use of Vyne's software does not save Vyne. The record shows that Vyne accessed the systems intentionally, and the Court rejected its customer-consent theory. (Mem. Op. at 79–81 & n.9.) The Court found that Vyne "caused its software to connect and integrate with the Dentrix databases installed on the computers of the parties' shared customers and those local installations synchronized with HSOne's cloud infrastructure," and Vyne's conduct was "akin to the '*outside* hackers' contemplated in the CFAA." (Mem. Op. 78-79.)

The Court found race conditions, errors, loss of record and data integrity, failed accounts, and database-performance problems—more than enough to establish damage under the CFAA. 18 U.S.C. § 1030(e)(8).

Nor is the injunction mandatory. It only keeps in place a situation where Vyne was never authorized to write back. Vyne represented that it was deprecating writeback functionality. It has also insisted that it needs only printer-driver access and access through HSOne's API program (Feb. 10 Tr. 191:4-5 ("We'll sign up for this API program today if you don't prevent the use of print capture.")) Vyne also testified that the print driver "does not use database access." (Feb. 11 Tr. 293:12-14 ("Print capture itself does not use database access. It never has. That's not necessary for print capture.").)

Further, Vyne has not demonstrated it will suffer irreparable harm. Again, Vyne claims it is not doing the thing that the Court is enjoining it from doing and, if it was, it is stopping. Vyne's cited evidence does not establish that its asserted customer harms are likely or irreparable. Nor must the

Court credit hardship flowing from conduct it found unlawful.[4]

A stay would compound HSOne's irreparable harm. The Court already found Vyne's methods of decryption of administrator-level credentials and circumvention of HSOne's security measures have placed the Dentrix system in a vulnerable state and at substantially increased risk of a data security breach by malicious actors. That vulnerability threatens the public disclosure of sensitive patient data stored in Dentrix. (Mem. Op. 84.) The court explained that "it cannot be the case that a litigant must suffer such a catastrophic breach before it is entitled to an injunction against conduct that places data security at substantial risk." (Mem. Op. 85.) Those findings weigh against a stay.

Finally, the balance of the equities and the public interest weigh heavily in HSOne's favor. Controlling unauthorized access to databases and systems which house and process sensitive patient health records is in the public interest. Vyne cannot base equitable relief on conduct the Court found unlawful.

Vyne wishes to escalate its unauthorized access in the face of a Court-ordered injunction through RPA. Its clarification request ignores the fact that Vyne is already developing a writeback that includes both encryption key misappropriation and RPA. HSOne's evidence shows that RPA can perform the same writeback function. The Court should reject Vyne's latest attempt to circumvent the injunction. The record already establishes that this would "create additional risks and vulnerabilities, including changing or deleting data (even unintentionally) and slowing Dentrix to the point it is no longer useful." (McDaniel Decl. (ECF No. 180-1) 1.)

[4] Not only can the Court order a zero dollar bond because the harm to Vyne is caused by Vyne's own misconduct, but it can modify the injunction to include any required bond decided at the bond hearing.

## LEGAL STANDARD

A stay pending appeal is "not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). It is instead "an exercise of judicial discretion" the propriety of which "is dependent upon the circumstances of the particular case." *Id.* (citation omitted). The court's discretion is guided by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (citation omitted). The stay factors overlap substantially with the preliminary injunction standard the Court just applied; they are, in fact, "one and the same." *Id.* at 434-35.

The first two factors—merits and irreparable harm—"are the most critical," and neither is met by "more than a mere possibility." *Nken*, 556 at 418, 434-35 (2009). "To meet the first requirement, the plaintiffs must 'clearly demonstrate that [they] will likely succeed on the merits," rather than present a mere "grave or serious question for litigation.'" *Am. Fed'n of State, Cnty. & Mun. Employees, AFL-CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685, 758–59 (D. Md. 2025), vacated and remanded on other grounds, 172 F.4th 361 (4th Cir. 2026) (quoting *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009)). Vyne must make a "strong showing" that the injunction is likely to be reversed, and must show that irreparable injury is likely, not merely possible. *Id*. at 434–35.

## ARGUMENT

### I. Vyne Has Not Made a "Strong Showing" that It Is Likely to Succeed on the Merits.

#### A. Vyne Accessed a Protected Computer in a Vyne-Controlled Operation Without Authorization.

##### 1. Vyne's access to Dentrix, which syncs with HSOne's cloud server, is access of a protected computer under the CFAA.

The Court's CFAA ruling is right down the middle of the law.

Vyne tries to separate its conduct from HSOne's systems, but the evidence shows Vyne's software, created and controlled by Vyne, infiltrated HSOne's systems at every level. Vyne's software operated in the Dentrix databases installed at customers' premises that interact in real time with HSOne's cloud system server (all of which can be the "protected computer"). Vyne intended that access. (Mem. Op. 77-82.) Vyne's argument is contrary to the law and the facts.

The Court held that "HSOne has clearly demonstrated that Vyne likely violated 18 U.S.C. § 1030(a)(5)(C) by 'intentionally access[ing] a protected computer without authorization, and[,] as a result of such conduct, caus[ing] damage and loss.'" (Mem. Op. 77.) The Court found that HSOne's "cloud based software system" likely constitutes a "protected computer" under the CFAA. (Mem. Op. 77.) The Court also found a clear likelihood that Vyne accessed the Dentrix cloud system "without authorization" when Vyne "caused its software to connect and integrate with the Dentrix databases installed on the computers of the parties' shared customers and those local installations synchronized with HSOne's cloud infrastructure." (Mem. Op. 78-79.)

Evidence supports the Court's finding that Vyne accessed HSOne's cloud system intentionally. (Mem. Op. 80.) The Court noted that Vyne's CTO, when he worked previously at HSOne, served as a lead developer and chief architect of technology that HSOne has used to transmit and synchronize data between Dentrix databases and HSOne's cloud system. (Mem. Op. 80). The Court described Vyne's unauthorized access to the protected computer including the following: its software connected directly to the Dentrix system to collect patient health information. The software reads and writes to the databases, allowing it to alter data. Vyne removed its printer driver from HSOne's list of hostile printers. Vyne used software that decrypts, extracts, and uses secret administrator-level credentials to gain a greater degree of access to the Dentrix system than what customers are permitted or equipped

to achieve through their own credentials. Decrypting those credentials allowed Vyne to write back to the Dentrix database stored on customers' local installations and on the cloud system controlled by HSOne through synchronization. Vyne attained that access through reverse engineering or insider knowledge of HSOne's source code. Vyne inserted and altered data in customers' Dentrix databases, which were then synchronized and stored in the Dentrix cloud system. (Mem. Op. 80-82.).

Vyne directly interacts with protected and controlled HSOne technology, HSOne databases, and HSOne's technology stack (DY 453:1-19)—all of which constitute a "protected computer" under the CFAA. And Vyne knows the access is not limited to customers' computers. (JN 341:2-11 (CTO testifying that he knew about claims and billing statements being sent to the cloud and how the cloud updates the Dentrix software).) Further, the Dentrix databases on customers' computers are also "protected computers" under the CFAA—there is no ownership requirement, which further undercuts Vyne's misplaced access theory. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004); *Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 231 (D.P.R. 2016); *see also Oce N. Am., Inc. v. MCS Services, Inc.*, 748 F. Supp. 2d 481, 487 (D. Md. 2010) (citation omitted). Indeed, the Court observed in reviewing customer computers in the context of Vyne's software that those are protected computers.[5]

In the face of the Court's findings and applicable law, Vyne tries to distance itself from its access of the protected computer by claiming its access to Dentrix databases could not constitute

---

5 The Court in finding Vyne sufficiently pled a CFAA claim determined customers' computers were protected and covered under CFAA without a finding that they accessed Vyne through the cloud: "the devices at issue - Vyne's customer's computers - host software used to store, process, and transmit patient data, which readily brings them within the CFAA's broad definition of computer. (Mem. Op. 26.) The same should apply in HSOne's CFAA claim against Vyne. Vyne's software additionally accesses HSOne's cloud server through its interaction with Dentrix, which should reinforce and expand the Court's finding that the customers' computers are also protected computers under the CFAA.

access to HSOne's cloud system. Its cited evidence and authority do not support that theory. Relying on inapposite hypotheticals and the distinguishable *Perplexity* case, Vyne fails to demonstrate that it is likely to succeed on the merits of its appeal.

**2. Cloud access is not a novel issue.**

Vyne calls the CFAA's application to Trellis' access of HSOne's cloud servers novel.[6] But access to a cloud-hosted system is not a "novel" issue. A cloud-hosted system qualifies as a "protected computer" under the CFAA. *See, e.g.*, *SkyHop Technologies, Inc. v. Narra*, 58 F.4th 1211, 1227 (11th Cir. 2023) (holding that Amazon-owned, cloud-based AWS servers qualified as protected computers because users could reach data on them over the Internet and the servers therefore were used in interstate commerce); *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 926–27 (E.D. Va. 2017) (finding plaintiff sufficiently pled access to a protected computer with a Google Drive account "located exclusively on the Internet, in the cloud"); *GSP Financial Services, LLC v. Harrison*, No. GJH-18-2307, 2021 WL 288172, at *3 (D. Md. Jan. 28, 2021) (holding that Internet-connected systems maintained by out-of-state financial institutions and cloud-based service providers were protected computers).

**3. *Perplexity* is materially distinguishable and expressly reserved the provider-control question presented here.**

---

[6] To Vyne counsel's knowledge, the Motion states, "no court has ever endorsed the theory that a software developer commits a federal crime by selling software if (1) customers use it to modify data on other software stored on those customers' computers and (2) a competing software developer then uploads that data to its own servers." (Mot. 7.) Neither of those things have happened here. First, this Court did not find that Vyne committed a federal crime by selling software that customers used to modify data on other software stored on those customers' computers (presumably HSOne's Dentrix). The Court expressly found that Vyne's (i.e., Vyne) software modified data. (Mem. Op. 80-82.) Second, the Court did not find that Vyne committed a crime by selling software that a competing software developer (presumably HSOne, although it is difficult to determine) then uploaded data (although Vyne's hypothetical is not clear what data it means) to its own servers.

Vyne's reliance on *Perplexity* fails for a straightforward reason: *Perplexity* was dealing with novel technology (agentic AI) and expressly reserved the materially distinct record presented here.

Vyne calls its connection to the protected computer "even more attenuated" than the one in *Perplexity*. (Mot. at 7.) Not so. There, a user chose a task for a general-purpose browser assistant that operated through the user's Amazon account. *See Perplexity*, 2026 WL 2237587 at *2-3, 5-6. The browser took screenshots, transmitted them to Perplexity, received navigation instructions, and then interacted locally with Amazon's website. *Id.* at *5-6. On that record, the Ninth Circuit held that the user—not Perplexity—gained entry to Amazon's servers. *Id.* at *6. But the court carefully limited its holding to the facts presented noting: "We do not address whether, on a different record or new facts, Perplexity may exercise control over the Assistant in such a way as to gain entry to Amazon's servers." *Id. at* *6. The Court found precisely that greater control here.

Vyne did not create a neutral, agnostic tool and then stood apart while a customer independently chose how to use the tool in unanticipated or surprising ways. The customers did not design or control the behind-the-scenes operations that the Court found unauthorized. Perplexity's AI agent is capable of many tasks, some of which are not envisioned by the developer. That is not the case with Vyne's software. Vyne designed software to decrypt and infiltrate Dentrix without authorization. Vyne reverse engineered and designed Vyne Trellis with Dentrix in mind. Vyne hardcoded decryption secrets into its source code to obtain administrative credentials. And the Court expressly noted that Vyne intended these actions. (Mem. Op. 80-84.)

Vyne's actions far exceed the control of the user-directed Assistant in *Perplexity*. No dentist chose the credential, designed the calls, selected the fields, or directed a single unauthorized write. Vyne did. As Vyne's own witness acknowledged, dental offices would not understand the

integration's technical details (Feb. 11 Tr. 334:13-18), and the Court found that the governing interoperability provision did not authorize Vyne's write-back functionality. (Mem. Op. 81, n.9, 83.)

The two records also differ on irreparable harm and damages. *Perplexity* described Amazon's proof of cyber risk as "weak" and did not decide the remaining CFAA elements. *See Perplexity*, 2026 WL 2237587, at *6–7. The Court here found actual overwrites, balance errors, referential-integrity problems, QuickBill interference, held-open connections, performance degradation, upgrade complications, and a persistent write-capable connection, together with loss of control and concrete data-security risk. (Mem. Op. 82–86.) The Court also preserved Vyne's print-to-file functionality while restraining the write-capable conduct tied to those harms. (*Id*. at 88–92; Order 2 at ¶ 8(a).) The record-specific concerns that drove *Perplexity* are therefore absent.

***Perplexity* supports the injunction.** It contained express reservations as to the limits of its decision, which dealt with agentic AI, a novel technology. Perplexity does not establish a categorical escape hatch that a "software provider never accesses the server," much less a cloud-synchronization exemption from the CFAA. Perplexity is no basis for a "strong showing" of likely success that a stay requires. *Nken*, 556 U.S. at 434.

**4. The Court should disregard Vyne's distinguishable hypotheticals.**

Vyne's hypotheticals misstate the Court's ruling. The Court did not hold that every local edit that later synchronizes creates CFAA liability as Vyne suggests. It identified an HSOne-controlled protected computer and authorization gate, found Vyne-designed and intended operations using a privileged and unauthorized method, and traced those operations to data impairment, cloud-upgrade interference, loss of control, and response costs—all caused by Vyne. (Mem. Op. 77–86.).

Vyne's hypotheticals also posit that an unaware software vendor whose ordinary local edit produces an accidental consequence through a separate synchronization service would violate the CFAA. (Mot. 2-4, 10.) That is not the operation or circumstance the Court found. The downstream

cloud effect was not an unanticipated event outside of the control of the software vendor. Vyne's CTO helped architect HSOne's synchronization technology. (Mem. Op. 80.) Vyne knew what would happen and plowed ahead anyway.

Vyne's hypotheticals also fail because the Court identified Vyne as the actor. The Court found that Vyne wrote and deployed Dentrix-specific code that connected directly to Dentrix through ODBC, had intended read-and-write functionality, and removed its printer driver from HSOne's hostile-driver list after HSOne blocked it. (Mem. Op. 80-81.) VyneSync decrypted and used HSOne's secret administrator-level credential to obtain what the Court called "unfettered" access—greater access than customers were permitted. Vyne's CEO and CTO knew of and intended the read-and-write operation. (Mem. Op. 81.) That a user is the one installing the software or performing the last step in this intended process is immaterial. The dentist's installation or click does not have anything to do with the party who selected the target, supplied the privileged method, authored the commands, determined the writes, defeated the security control, and continued after notice. Vyne did those things.

Vyne's OneDrive and Adobe examples omit the facts defining the CFAA gate here: Dentrix-specific code, a decrypted secret credential, access beyond ordinary customer credentials, direct database writes, a separate cloud software platform owner that withheld permission, express notice, and intentional continuation. (Mem. Op. 78–82; Mot. 7–10.) A user editing their own files through an authorized application does not confer a software vendor's reserved administrator privilege or heightened permissions. Thus the proper OneDrive-Adobe analogy would require Adobe to decrypt Microsoft's reserved administrator credential, issue Microsoft-specific database commands, defeat Microsoft security blocks, persist after revocation, and cause write-backs. Vyne developed software that interacts with Dentrix and affects HSOne's cloud server, not some third-party system.

After pruning Vyne's distortions, the Court's ruling is narrow. Vyne designed and controlled code targeting Dentrix, gained administrator-level access it was never entitled to, and wrote to Dentrix databases without authorization. It did so knowing the data would reach HSOne's cloud. On those facts, the Court found a likely CFAA violation.

**B. Vyne, Not Shared Customers, Accessed the Protected Computers under the CFAA.**

Relying again solely on *Perplexity*, Vyne's excuse that customers accessed, not Vyne, fares no better. Vyne claims that it did not "access" a protected computer "because it is the *dentists*, not Vyne, that use Vyne Trellis." (Mot. 10 (emphasis in original).) Vyne's theory would let it create and sell code that accesses sensitive health data in a competitor's database without customers' knowledge of the behind-the-scenes operations—access Vyne had no right to obtain. The code decrypts encryption keys and blocks security updates. It modifies data and reads and writes to the database that syncs with the database company via a cloud server. That conduct is not ordinary customer use of a neutral tool. A customer's click does not insulate Vyne from liability.

The Court detailed Vyne's access: Vyne caused its software to connect and integrate with the Dentrix databases and those local installations synchronized with HSOne's cloud infrastructure. Vyne's CTO served as the architect of technology that HSOne has used to transmit and synchronize data between Dentrix databases and HSOne's cloud system. Vyne deployed "VyneSync" to connect directly to Dentrix and collect patient health information from the database (which it had no authorization or right to access). VyneSync connects to customers' Dentrix databases and accesses the data. Vyne's software has read-and-write functionality, allowing it to alter data in the database. Vyne used VyneSync's write functionality to remove its printer driver from HSOne's list of unauthorized printers in Dentrix; VyneSync "decrypts, extracts, and uses secret administrator-level credentials to gain a greater degree of access to the Dentrix system than what customers are permitted

or equipped to achieve through their own credentials;" Vyne obtained its decryption method through either reverse engineering or insider knowledge. In short, through VyneSync, Vyne "inserted and altered data in its customers' Dentrix Database installations and was then synchronized and stored in the Dentrix cloud system." (Mem. Op. 78–83.)

Vyne's reliance on *Perplexity* does not help. Vyne contends that because *Perplexity* stated the "CFAA contemplates access by a *person*" and the agentic AI tool was a "tool not a person for statutory purposes," Vyne through its Vyne Trellis software that its customers use cannot be the party that accesses a protected computer. (Mot. 10.) Vyne's argument fails on many levels. First, the Ninth Circuit clearly limited its holding to the facts presented and suggested that if additional facts showed Perplexity's control over the tool in such a way to gain entry to Amazon's servers (like Vyne has done here), its holding might be different. *See Perplexity AI, Inc.*, 2026 WL 2237587, at *6. Second, Vyne's conduct here provides the control missing in *Perplexity*. A customer's decision to install or enable Vyne's software is not the customer selecting the target, authoring and controlling the commands, supplying the privileged access method, choosing the write functions, altering the security control, and causing the software to persist on systems after Vyne supposedly deprecated it. Nor could they have accomplished the reverse engineering and stealing of secrets by Vyne. (Mem. Op. 80-82.) There is no evidence showing customer knowledge of, or authority to confer, secret administrator credential, security privileges, or cloud permission. (Mem. Op. 78–83.) That alone defeats Vyne's proposed analogies that it was somehow not the party who "accessed" without authorization. Third, under Vyne's interpretation of *Perplexity*, any company that created a software program and installed code that effected certain tasks—including hacking into computer systems to steal data that the company directed through its code—would avoid all liability because the software was operating on

customers' computers and the customers were pushing buttons without any idea of the behind-the-scenes technology. That cannot be the law.

Vyne invokes the limited injunction to argue that the Order has a "disconnect": it bars Vyne from marketing, selling, or distributing software that writes back but does not separately order Vyne to cease access. (Mot. 11.) But the Court's Order also includes write back on the software of current customers for whom Vyne pushes out updates to software that writes back. The Court found that unauthorized access through Vyne's control and conduct. That is enough.

### C. The Court found the requisite causal connection between "access" and "damages."

Vyne next challenges the causation element of the Court's CFAA ruling by claiming that local damages on customers' databases (even though caused by Vyne's operations), are not CFAA damages because they are not "as a result of" Vyne's access to HSOne's cloud. (Mot. at 12–19.) Vyne contends that none of the damages set forth in the Court's Order: (1) relates to "'data, a program, a system, or information' that was on the protected computers supposedly being accessed here (i.e., HSOne's servers)" and (2) "was 'caused' by the supposed 'access' to HSOne's servers." (Mot. 13.) Vyne's argument fails.

Vyne's argument relies on a limited interpretation of the CFAA unsupported by the law. Damage under the CFAA is "any impairment to the integrity or availability of data, a program, a system, or information[.]" 18 U.S.C. § 1030(e)(8). The Court found damage in the form of: Vyne's practice of writing back created race conditions and errors in balances recorded in the ledger and undermined the ledger's integrity from an accounting perspective (Mem. Op. 82.); Vyne's "access enabled through VyneSync allowed Vyne to 'overwrite' certain data" (Mem. Op. 83); Vyne's "writing back to the Dentrix database without coordination with HSOne also disrupted referential integrity within the database," and "caused database performance issues" (Mem. Op. 83). Despite these

damages that impaired the integrity of data and impaired the integrity of "a program [or] a system" (i.e., Dentrix), Vyne says they do not matter because it was not HSOne's cloud server that was damaged. Vyne tellingly does not cite any legal authority for its limited proposition. (Mot. 13-15.) The authority is to the contrary.

"[D]amage" under the CFAA in a distributed system is not confined to the physical location of the stored data, i.e., the cloud servers. In *United States v. Calonge*, 74 F.4th 31, 36–37 (2d Cir. 2023), the deletion of data housed on AWS servers in Virginia and California also damaged a protected computer in New York because it impaired that computer's access to the data. Damage thus need not be tethered to where the affected data physically resides. *See also, e.g., SkyHop Technologies, Inc.*, 58 F.4th at 1225–27 (holding that a diminished ability to access and control cloud-hosted software can "damage" even when the software keeps serving customers, and that cloud servers are protected computers regardless of who owns them).

Even if the damage had to be to HSOne's cloud server for it to fall under CFAA (which it does not), the Court's Order covered it. The Court found that Vyne's uncoordinated write activity "interfered with HSOne's ability to disseminate upgrades to Dentrix software through its cloud infrastructure." (Mem. Op. 83.) That is impairment of an HSOne-controlled cloud function, not merely a local consequence. The Court separately found that VyneSync inserted and altered data in local Dentrix installations that "was then synchronized and stored in the Dentrix cloud system." (Mem. Op. 81–82.) The same operation tied the statutory damage and loss.

Vyne intentionally operated Dentrix-specific code to obtain administrator-level access, allowing for uncoordinated writes that altered data synchronized into HSOne's protected cloud and impaired the availability and integrity of data. (Mem. Op. 80–84.) These are appropriate damages and had the requisite causal connection under the CFAA.

**D. The Court's Order is Prohibitory, not Mandatory.**

The Order against Vyne requires Vyne to not distribute, sell, or market software (which HSOne submits includes updates Vyne pushes to paying customers) that writes back to HSOne's Dentrix databases or systems. That prohibition reaches software on customer machines that writes back—conduct Vyne was never authorized to perform. The injunction is therefore prohibitory.

The Fourth Circuit defines the status quo as "the last uncontested status between the parties which preceded the controversy," not whatever conditions happened to exist when litigation began. *See Aggarao v. MOL Ship Management Co.*, 675 F.3d 355, 378 (4th Cir. 2012) (citation omitted). The last mutually uncontested relationship status was when Vyne was involved in an API agreement with HSOne and paying associated licensing fees. (Feb. 11 Tr. 376:2-15.) Since early 2024 when Vyne stopped reporting usage under the API, HSOne has disputed Vyne's actions with its unauthorized access to Dentrix and HSOne's systems. HSOne never allowed or authorized Vyne undisclosed privileged-credential write-back. (Mem. Op. 90.) The Court found that HSOne did not discover the damage from Vyne until March and April 2025. (Mem. at 90.) That Vyne may have been accessing Dentrix's database surreptitiously since as far back as 2021 does not make Vyne's access—whatever it included—uncontested.

**E. A "Serious Question" is Not Enough.**

Vyne seeks to avoid its burden to show that it is likely to prevail on the merits by claiming the "appeal need only 'raise serious and difficult questions of law." (Mot. 5.) But the Fourth Circuit in *Real Truth About Obama, Inc. v. Fed. Election Commission* dispensed with that more lenient standard in the preliminary injunction context after *Winter*. *See Real Truth About Obama, Inc.* 575 F.3d at 345–47 (noting that *Blackwelder's* and its progeny's standard permitted a more flexible determination of whether there was a serious question involved to satisfy the merits requirement, but finding those conflicted with *Winter*) (citations omitted).

Courts in this Circuit and District have followed, recognizing that same standard applies to whether to grant a stay. *See Rose v. Logan*, No. BR 12-25471-RAG, 2014 WL 3616380, at *2-3 (D. Md. July 21, 2014) ("[B]ecause a preliminary injunction and stay pending an appeal are both forms of preliminary equitable relief, this Court and other courts have applied the preliminary injunction test established in *Real Truth* when considering a stay pending appeal.") (citations omitted); *Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Engineers*, 890 F. Supp. 2d 688, 692–93 (S.D.W. Va. 2012) ("[T]his Court rejects application of *Blackwelder's* balance-of-hardship test to stays pending appeal, and also Plaintiffs' argument that, as to the first prong, they must merely show serious questions going to the merits, rather than a likelihood of success on appeal.").

Even if the appeal presents "serious and difficult questions of law," that is not a substitute for *Nken*'s required showing, particularly if the other stay factors do not support relief. *See U.S. Home Corp. v. Settlers Crossing, LLC*, No. CIV.A. DKC 08-1863, 2015 WL 3973071, at *6 (D. Md. June 29, 2015) (purchaser did not show a "strong likelihood of success" on appeal but identified specific legal findings that raise "serious questions of law, and because the balance of hardships and the interest of efficiency weighed in favor of an injunction, the showing was sufficient); *see also Maryland v. United States Dep't of Agric.*, 777 F. Supp. 3d 496, 500–01 (D. Md. 2025) ("[E]ven assuming that the Government has identified an 'admittedly difficult legal question,' and assuming further that this showing would suffice to satisfy the first stay factor under *Nken*, the Court would *still* deny the Government's request" because it failed to show the other factors weighed in favor of a stay); *United States v. Mosby*, No. 22-CR-00007-LKG, 2024 WL 3877613, at *3–4 (D. Md. Aug. 20, 2024) (finding although a movant showed the appeal presented "an admittedly difficult legal question," the movant did not show the remaining factors supported a stay); *Stanley v. Babu*, No. GJH-19-489, 2021 WL 878356, at *4, n.6 (D. Md. Mar. 9, 2021) (denying stay, noting "[t]his is not to say, however, that

every time a case presents difficult questions of law a stay should be entered. Rather, such a showing only satisfies the first factor of the stay standard" when the other factors weigh in favor of a stay).

A serious and difficult question of law does not present itself for a stay determination where the court already addressed and decided the arguments. Vyne's primary argument that the appeal will "raise serious and difficult questions of law" is based on the Court's holding that Vyne accessed a protected computer—i.e., HSOne's cloud-based servers. (Mot. to Stay 1.) Vyne contends: (1) access to Dentrix is not access to HSOne's servers; (2) HSOne's customers, not Vyne, access Dentrix; and (3) there is no connection between the "access" and the "damage." (Mot. to Stay 6-15.). The Court already considered the parties' arguments regarding protected computers, access, and damage. (Mem. Op. 77-84.) That Vyne disagrees with the Court's findings and Order does not make Vyne's argument concerning access a "serious and difficult question[] of law." *See Maryland*, 777 F. Supp. 3d at 501.

Vyne identifies no serious legal question that warrants a stay. But in any event, this Court should follow the Fourth Circuit's guidance in *Real Truth About Obama, Inc. v. Fed. Election Comm'n*[7] and other cases in the circuit that require a clear showing that a stay movant is likely to prevail on the merits and cannot dispense with that requirement.

### F. The Fourth Circuit May Consider Independent Theories of Liability That Support the Injunction.

Even accepting Vyne's position that the Court's ruling raised serious and difficult questions, the Court made ample findings that support independent bases for CFAA liability. The Fourth Circuit may further "affirm a preliminary injunction 'on any ground appearing in the record, including theories not relied upon or rejected by the district court.'" *PSEG Renewable Transmission LLC v. Arentz*

[7] Counsel has found no Fourth Circuit case post-*Real Truth* that suggests anything other than the standard factors apply—including a showing that a movant will prevail on the merits.

*Family, LP*, No. 25-1730, 2026 WL 2263342, at *5 (4th Cir. Aug. 6, 2026) (quoting *Jensen v. Md. Cannabis Admin*., 151 F.4th 169, 174 (4th Cir. 2025)); *Pashby v. Delia*, 709 F.3d 307, 322–23, 330–31 (4th Cir. 2013) ("[I]t is well-settled that we 'review judgments, not opinions,' which allows us to 'affirm the district court on any ground that would support the judgment in favor of the party prevailing below.'") (citation omitted).

One such independent route is Vyne's decryption of Dentrix, which it hardcoded into Trellis' source code, to gain administrative-level credentials. This is what the Court referenced as likely reverse engineering or insider knowledge. (Mem. Op. 81.) Another is Vyne's unauthorized use of administrator-level credentials to write back to Dentrix databases on dental-office computers. Those computers are "protected computers" for purposes of the CFAA.

Vyne's improper merits argument assumes that because dentists installed Trellis and consented to its use, Vyne acted with authorization, but the Court already rejected that argument. (Mem. Op. 81, n.9.) A customer "can only authorize Vyne to request [interoperability] access," but it "did not—and could not—include authorization to access … the Dentrix cloud system HSOne controls." (Mem. Op. 79–80.) The Court said the same thing from the bench: Vyne does not "have any authorization to write back to the databases." (Apr. 14, 2026 Tr. at 19:2–6.)

That the Court framed its opinion around HSOne's cloud systems does not confine the record. Vyne's likelihood-of-success challenge fails even without any reference to the cloud. The injunction may be sustained on any ground the Court's findings support.

## II. Vyne Cannot Show that It Likely to Suffer Irreparable Injury Absent a Stay.

Vyne has not shown that irreparable injury is likely rather than possible—a "critical" stay factor. *Nken*, 556 U.S. at 434-35. But even if Vyne could show that it will suffer some irreparable harm, that is not enough, as a stay is "not a matter of right." *Nken*, 556 U.S. at 433. The applicant

must satisfy each stay factor. *Id*. at 434. The record does not establish likely irreparable harm from the Order.

Vyne contends that the Order compels an immediate rewrite and removal campaign across 1,400 practices, and that the resulting disruption will drive those practices permanently to HSOne. (Mot. 19–20.) The cited evidence does not establish that result. Vyne lists possible customer harms but does not show they are likely. (Mot. 18-19.) Nor does Vyne connect those projected customer harms to irreparable injury of its own.

The Court already considered Vyne's evidence and determined that any hardship to Vyne did not outweigh the hardship to HSOne should Vyne not be enjoined. (Mem. Op. 91-92.) The Court's findings also cut against Vyne's irreparable harm theory. The affected write-back functions are not Vyne's core business, are used by a minority of shared customers, are separable from the printer-driver workflow, which the reciprocal injunction preserves, and are replaceable through a non-write solution or an authorized commercial arrangement. (Mem. Op. 91–92; Order 2 at ¶ 8(b).)

Vyne's customer-loss and goodwill theory assumes a right to write back that it never had. That premise cannot establish irreparable harm. The Order preserves the printer driver needed for Vyne's core claims business. (Order 2 at ¶ 8(b); Mem. Op. 89–91.) The Court also found that the write-back patient-engagement functions are non-core, used by a small minority of shared customers, separable from the printer driver, and replaceable through a non-write solution or authorized commercial arrangement. (Mem. Op. 91–92.) Speculative customer-loss and goodwill projections do not show likely injury and cannot support a stay. *Nken*, 556 U.S. at 434-35.

Vyne's cases are inapposite. In *Project Vote/Voting for America v. Long*, the entered judgment required approximately *six months* and $78,500 of implementation work and irreversible disclosure of "voter registration applications with the social security numbers ("SSN") redacted." 275 F.R.D. 473,

474-75 (E.D. Va. 2011). Nothing of the kind is at play here. *Di Biase v. SPX Corp.* supports HSOne. The Fourth Circuit there rejected asserted irreparable harms that were unsupported and non-imminent and reaffirmed that expenditures of time, money, and energy are insufficient. 872 F.3d 224, 230, 235–36 (4th Cir. 2017) (citation omitted).

Finally, much of the hardship Vyne forecasts is self-inflicted and compensable, both of which weigh against a finding of irreparable harm. That disruption exists only because Vyne built its customers' workflows around the very access methods the Court found likely unauthorized and damaging. (Mem. Op. 80–82, 86.) Self-inflicted harm of that kind cannot supply the irreparable injury element required. *Di Biase*, 872 F.3d at 235 (finding no irreparable harm where plaintiffs had opportunities to secure insurance even if it would have been confusing and time consuming to do so but did not). Harm that can be compensated by an award of money damages is also not irreparable. And Vyne's CEO testified as to the compensable, quantifiable nature of Vyne's alleged harm. (Feb. 10 Tr. 177:8-13, 182:2-16.)

## III. A Stay Would Substantially Harm HSOne and Third Parties Whose EHI Must be Safeguarded.

Vyne contends that a stay will not cause HSOne any undue or substantial harm. (Mot. 20.) The Court found otherwise. (Mem. Op. 84-86.) The Court found that "Vyne's methods of decryption of administrator-level credentials and circumvention of HSOne's security measures have likely placed the Dentrix system in a vulnerable state and at substantially increased risk of a data security breach by malicious actors, which threatens the public disclosure of sensitive patient data stored in Dentrix." (Mem. Op. 84.) The Court further noted that "it cannot be the case that a litigant must suffer such a catastrophic breach before it is entitled to an injunction against conduct that places data security at substantial risk." (*Id.* 85.) The Court found that "HSOne has made a showing that Vyne's conduct places the confidentiality of personal, medical, and financial information belonging to dental patients

at substantial risk." (*Id.*) And that "HSOne stands to suffer pronounced reputational harm and damage to their goodwill if Vyne's conduct in the Dentrix system continues unabated and a major data breach occurs as a result." (*Id.*) "Vyne's unsecure and uncoordinated integration with the Dentrix database has already caused problems for customers in the use of Dentrix and resulted in many complaints to HSOne, which portends a greater loss of goodwill and more pronounced reputational harm to HSOne without an injunction to curb Vyne's conduct." (*Id.* 85-86.) The Court importantly found that "[t]he impairment and loss of HSOne's ability to monitor, control, and secure the Dentrix system that resulted from Vyne's unauthorized access is sufficient to demonstrate irreparable harm for purposes of a preliminary injunction motion." (*Id.* 86.) Those harms cannot be compensated by a monetary judgment. (Mem. Op. 84–85 (substantial increase in the risk of malicious actors due to Vyne's decryption and circumvention methods, HSOne's deprivation of control to secure its software, and resulting customer reputation and goodwill).)

Vyne cannot carry its burden on the third stay factor by relitigating findings the Court made after a multi-day evidentiary hearing. The Court pointed out that it could not rely on Vyne's voluntary cessation. It found that Vyne had not deprecated every function capable of writing to Dentrix, did not intend to cease all write-back functionality voluntarily, and had been "persistent and adaptive" in decrypting and circumventing HSOne's security measures. (Mem. Op. 86.) Because the Order does not require Vyne to remove functionality already installed on customer computers, a stay would not preserve the existing state of affairs. It would eliminate the remaining restraint against expanding the very functionality the Court found had caused actual damage and threatened continuing irreparable harm. (Mem. Op. 84-86.) Vyne's own motion proves the point. Vyne seeks to develop RPA technology to moot the restraints against it. The risk is evolving and the harms HSOne has experienced would worsen if the Court entered a stay. (McDaniel Decl. ¶¶ 18–30.)

## IV. The Balance of the Equities and the Public Interest Weigh Against a Stay.

The public interest weighs against a stay for the same reasons HSOne is harmed. A stay would only work to increase the risk of harm to HSOne's systems, the customers' databases, and the public's EHI. Nor must the Court credit hardship from an injunction that requires compliance with the law. As the Court explained, it "need not consider the 'hardship' to a defendant whose conduct is 'unlawful.'" (ECF No. 166 1-3 (citing *Florida Atl. Univ. Bd. of Trustees v. Parsont*, 465 F. Supp. 3d 1279, 1297 (S.D. Fla. 2020) and other cases).)

Vyne frames the public interest too generally and revives competition and Cures Act arguments the Court already weighed and rejected. (Mot. 21–22.)[8] The Court balanced both sides of the public interest, restraining only write-capable software shown to damage Dentrix and endanger patient EHI. It preserved dental practices' EHI access through the protected printer driver. (Mem. Op. 87–88.) As the Court explained, the injunction does not restrict any practice's use of its EHI; it "would only preclude Vyne from providing software capable of accessing and using EHI in Dentrix in a manner that has been shown to damage the Dentrix system." (Mem. Op. 88, n.11.)

The Court's Order, on balance, defeats Vyne's claim that the order entrenches HSOne or eliminates consumer choice. Consumers will be able to use the print driver Vyne represented as key to its business. (Order ¶ 8(b).) A stay would invert that balance and reintroduce the very risk to patient information the Court found the public interest requires restraining.

## V. The Court Should Deny Vyne's Request for a Categorical RPA Exemption.

Vyne's RPA request underscores why the Court should reject a categorical exemption for an undeveloped technology. Vyne repeatedly described this dispute as a fight over its customers' ability

---

[8] Vyne's contrary authority is a non-binding, distinguishable Ninth Circuit consumer-choice case that cannot overcome the Court's tailored, record-based balance. (Mot. 21 (citing *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993)).)

to print to PDF. The Court protected that functionality. (Order 2 at ¶ 8(b).) Vyne now says that is not enough. It asks the Court to declare a still-untested technology under development categorically outside the injunction's reach. Vyne admits that it "has never employed RPA" for Dentrix customers and is only "considering accelerating the beta testing" because of the Court's ruling. (Mot. 22–24.) That request shows the dispute was never confined to the printer driver. Vyne seeks freedom to replace one technical pathway with another without first telling the Court what the replacement will entail.

HSOne's evidence shows that an RPA performing writeback falls within the Order's functional terms. (McDaniel Decl. ¶ 18.) This functional reading of the Order aligns with the Court's discussions at the April hearing and the Court's refusal to limit the injunction to ODBC integration as Vyne had requested. Vyne argued that RPA had not yet been used, that the record was therefore cabined to the "Quick Bill issue" but the Court refused this limitation, stating that "the harm . . . is broader than that. It's writing back in general because that's what the evidence showed caused data integrity issues and interferes with the functionality of HSOne's systems." (Apr. 14 Tr. 15:8-16:17.) A categorical RPA exemption would give Vyne now the ODBC-specific limitation it requested and did not obtain at the hearing.

In any case, the record points to the contrary conclusion regarding RPA. HSOne's evidence shows that unauthorized RPA use can cause harms different from, and in some respects greater than, unauthorized API use. (McDaniel Decl. ¶ 19.) RPA would be a form of write back that would create additional risks and vulnerabilities, including changing or deleting data (even unintentionally) and slowing Dentrix to the point it is no longer useful. (*Id.* ¶ 18.) The Court should deny Vyne's request.

## VI. The Bond-Setting Sequence Does Not Warrant a Stay.

Vyne's final argument concerns bond sequencing. It contends that the injunction is defective because the Court did not set a bond before issuing the injunction and because the injunction will go

into effect before the Court sets the bond. (Mot. 22.) That argument identifies, at most, a narrow and readily curable sequencing issue, not a basis to stay the injunction.

Vyne's authorities are inapposite because each involved absent or materially deficient consideration of security. *District 17, United Mine Workers v. A & M Trucking, Inc.*, 991 F.2d 108, 110 (4th Cir. 1993) (vacating an injunction where the district court "made no mention whatsoever of" Rule 65(c)'s security requirement); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999) (remanding where the district court "ignored altogether the issue of security for the injunction"); *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 887 (7th Cir. 2000) (criticizing the district court for providing no advance notice that bond would be determined at the preliminary-injunction hearing and then "ignoring a cost that was sure to be large").

In stark contrast to those cases, this Court expressly invited each party to brief "reasonable bond amounts and/or need for a bond hearing." (ECF NO. 171 at 1.) The parties accepted that invitation, filing two rounds of bond submissions. (ECF No. 174–175, 178, 180.) The Court noted in its Opinion that it would be scheduling a bond hearing (Mem. Op. 92-94), which it did—for September 16, 2026. (ECF No. 195.) That is the opposite of silence.

In any event, the remedy for a sequencing issue is to cure the sequencing, not to stay the injunction or vacate the injunction. *Pashby v. Delia*, 709 F.3d 307, 331–32 (4th Cir. 2013) (remanded without vacating the order, directing the district court to cure the defects while the injunction remained

in force).[9] The Court can modify its Order to include a bond amount, if any, and can extend the compliance date until after the hearing. That sequencing issue does not support a stay.[10]

## CONCLUSION

Vyne has had enough bites of the apple. It has been hacking HSOne's system uninterrupted for over a year. It hid the true nature of its conduct even in open court under oath. Even now, Vyne prepares to violate the injunction. Now that the truth is out, and the record clearly shows Vyne's misappropriation of encryption keys to write back to HSOne's database, it should not be permitted to continue. The record shows that Vyne will take any daylight to push the envelope—a stay will embolden Vyne and result in new unlawful conduct that will irreparably harm HSOne. Vyne has a right to appeal. To continue unlawful access to HSOne's systems pending that appeal, Vyne has no right. Vyne itself has represented over and over that all it needs is the printer driver. For now, pending HSOne's forthcoming appeal, Vyne has a Court ordered lane to keep the printer driver going. That, per Vyne's own insistence, is enough. The motion should be denied.

---

9 *Hoechst Diafoil*, the case Vyne cites in its motion (Mot. at 22), remanded so the lower court could address the "ignored altogether" issue of security but otherwise left the "injunction intact pending the district court's decision on remand." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 424 (4th Cir. 1999).

10 The Court should also dissolve the administrative stay and should deny any additional requests. Administrative stays are a procedural mechanism for the court to buy some time to make a decision on the motion to stay pending appeal. Thus, it necessarily "precedes a ruling on a stay pending appeal" and "should last no longer than necessary to make an intelligent decision on the motion for a stay pending appeal." *United States v. Texas*, 144 S. Ct. 797, 799 (2024) (Barret, J., concurring in denial of applications for stay). Vyne asks precisely the opposite. It asks for an indefinite stay tethered to the Fourth Circuit's docketing timeline. This is improper.

Dated: August 18, 2026

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Michael Burshteyn*

Michael Burshteyn *(pro hac vice)*
Marcelo Barros *(pro hac vice)*
Jennifer Bartlett *(pro hac vice)*
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Michael.burshteyn@gtlaw.com
Marcelo.barros@gtlaw.com
Jennifer.bartlett@gtlaw.com

Michael R. Sklaire (MD Fed. Bar No. 16471)
1750 Tysons Boulevard, Suite 1000
Tysons Corner, VA 22102
Tel: (703) 749-1308
michael.sklaire@gtlaw.com

*Counsel for Defendant Henry Schein One, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of August, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael Burshteyn*
Michael Burshteyn