**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A VYNE DENTAL,

*Plaintiff*,

-against-

HENRY SCHEIN ONE, LLC,

*Defendant*.

Case No. 1:25-cv-03246

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A STAY PENDING APPEAL AND FOR CLARIFICATION**

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151

GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4000

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................ 1

I. HSOne Misconstrues the Nature of This Stay Motion. ........................................ 1

II. HSOne Misstates the Relevant Legal Standard. ............................................... 3

III. HSOne Has No Meaningful Response to Vyne's Merits Arguments on Appeal. .............. 4

A. Vyne never "accessed" HSOne's cloud servers. ............................................ 5

B. Distributing software is not "access." ..................................................... 7

C. The damage and access are disconnected. .................................................. 9

IV. The Injunction Against Vyne Is Mandatory. .................................................. 10

V. Vyne Would Suffer Irreparable Injury Without a Stay. ....................................... 11

VI. The Stay Would Not Injure HSOne and Would Protect the Public Interest. ................ 12

VII. The Court Should Clarify That RPA Is Not Prohibited. .................................... 13

CONCLUSION ........................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ala. Ass'n of Realtors v. HHS*,
539 F. Supp. 3d 211 (D.D.C. 2021) ........ 7

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
172 F.4th 361 (4th Cir. 2026) ........ 2, 14

*Amazon.com Servs. LLC v. Perplexity AI, Inc.*,
2026 WL 2237587 (9th Cir. Aug. 4, 2026)........ 7, 8, 9, 12

*Ced's Inc. v. EPA*,
745 F.2d 1092 (7th Cir. 1984) ........ 2

*Di Biase v. SPX Corp.*,
872 F.3d 224 (4th Cir. 2017) ........ 12

*Estes Forwarding Worldwide LLC v. Cuellar*,
239 F. Supp. 3d 918 (E.D. Va. 2017) ........ 5, 6

*Grimmett v. Freeman*,
59 F.4th 689 (4th Cir. 2023) ........ 2

*GSP Fin. Servs., LLC v. Harrison*,
2021 WL 288172 (D. Md. Jan. 28 2021)........ 9

*GSP Fin. Servs., LLC v. Harrison*,
2021 WL 288172 (D. Md. Jan. 28, 2021)........ 5

*Ill. Republican Party v. Pritzker*,
973 F.3d 760 (7th Cir. 2020) ........ 3

*In re Naranjo*,
768 F.3d 332 (4th Cir. 2014) ........ 3

*In re Wellington*,
631 B.R. 833 (Bankr. M.D.N.C. 2021)........ 4

*Maryland v. U.S. Dep't of Agriculture*,
777 F. Supp. 3d 496 (D. Md. 2025)........ 4

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*,
756 F.2d 1048 (4th Cir. 1985) ........ 11

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
769 F. Supp. 3d 465 (D. Md. 2025) ........ 2, 14

*Oce N. Am., Inc. v. MCS Servs., Inc.*,
748 F. Supp. 2d 481 (D. Md. 2010) ........ 5

*Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*,
203 F. Supp. 3d 221 (D.P.R. 2016) ........ 5

*Power Controls Corp. v. Hybrinetics, Inc.*,
806 F.2d 234 (Fed. Cir. 1986) ........ 2

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
131 F.4th 205 (4th Cir. 2025) ........ 12

*Real Truth About Obama, Inc. v. FEC*,
575 F.3d 342 (4th Cir. 2009) ........ 3

*Salomon & Ludwin, LLC v. Winters*,
150 F.4th 268 (4th Cir. 2025) ........ 11

*SkyHop Techs., Inc. v. Narra*,
58 F.4th 1211 (11th Cir. 2023) ........ 5

*Su v. Med. Staffing of Am., LLC*,
2023 WL 3735221 (4th Cir. 2023) ........ 13

*Theofel v. Farey-Jones*,
359 F.3d 1066 (9th Cir. 2004) ........ 5

*U.S. Home Corp. v. Settlers Crossing, LLC*,
2015 WL 3973071 (D. Md. June 29, 2015) ........ 1, 3, 4

*United States v. Calonge*,
74 F.4th 31 (2d Cir. 2023) ........ 10

*United States v. Mosby*,
2024 WL 3877613 (D. Md. Aug. 20, 2024) ........ 4

*Van Buren v. United States*,
593 U.S. 374 (2021) ........ 6

*WEC Carolina Energy Sols. LLC v. Miller*,
687 F.3d 199 (4th Cir. 2012) ........ 6, 8

*West Virginia v. EPA*,
90 F.4th 323 (4th Cir. 2024) ........................................................................................ 3

**Statutes**

18 U.S.C. § 1030(a)(5)(C) ........................................................................................... 9

## INTRODUCTION

HSOne's opposition does nothing to dispel the "serious and difficult questions of law" that Vyne will raise on appeal. It offers no case law that supports the novel statutory interpretations underlying the Court's finding of a likely Computer Fraud and Abuse Act (CFAA) violation. And HSOne cannot dispute that, were the Fourth Circuit to affirm, it would create a split of authority with the Ninth Circuit. Instead, HSOne seeks to introduce new evidence, repeatedly asks the Court to make new factual findings and to pivot to a new legal theory concerning access to customer computers, and ultimately speculates that the Fourth Circuit might affirm on alternative grounds. The Court should reject these arguments and stay its injunction against Vyne pending appeal.[1]

## ARGUMENT

### I. HSOne Misconstrues the Nature of This Stay Motion.

In considering HSOne's CFAA claim on this stay motion, the question is whether Vyne has made "a strong showing of likely success on the merits *of [its] appeal*," meaning a demonstration that "*[its] appeal*" will "raise serious and difficult questions of law." *U.S. Home Corp. v. Settlers Crossing, LLC*, 2015 WL 3973071, at *6 (D. Md. June 29, 2015).[2] On that appeal, the Fourth Circuit will assess whether each of the elements for a preliminary injunction have been met, based only "on the record before the district court when it entered this preliminary injunction." *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 374 (4th

---

[1] As noted in Vyne's opening brief, Vyne intended to seek expedited review of its appeal before the Fourth Circuit given HSOne's claim that it will suffer irreparable harm in the event of a stay pending appeal. Vyne has since learned that HSOne intends to oppose any motion to expedite the appeal, which undermines any assertion that they would be irreparably harmed by a stay of the preliminary injunction. In any event, given HSOne's position, Vyne will not seek expedited review unless it is a condition of any stay entered by this Court. The current deadlines require Vyne to file its opening brief on September 21, 2026, and HSOne to file its responsive brief on October 20, 2026, with any reply due 21 days after HSOne's responsive brief.

[2] Alterations are adopted, quotations omitted, emphases added, and citations cleaned up.

Cir. 2026). Moreover, the appellate arguments previewed in (and underlying) Vyne's stay motion address pure questions of law, including as to interpreting the CFAA, and the Fourth Circuit will consider those legal questions *de novo*. *Grimmett v. Freeman*, 59 F.4th 689, 692 (4th Cir. 2023).

Because "the timely filing of a notice of appeal transfers jurisdiction to the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal," the Fourth Circuit will not consider any "substantive amendment to the [p]reliminary [i]njunction." *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 769 F. Supp. 3d 465, 467 (D. Md. 2025). Thus, the Fourth Circuit will not consider "additional [legal] grounds in support of . . . [an] injunction" found by the district court following a notice of appeal. *Ced's Inc. v. EPA*, 745 F.2d 1092, 1095–96 (7th Cir. 1984) (vacating district court's supplemental opinion and reversing preliminary injunction). The same applies to new findings of fact. *See Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 237 (Fed. Cir. 1986) ("[A] district court has no jurisdiction to amend its findings of fact and conclusions of law after a notice of appeal has been filed.").

Despite these well-established rules, HSOne does little to justify the injunction based on the "record before the district court when it entered this preliminary injunction," *Am. Fed'n*, 172 F.4th at 374, or the Court's legal rationale. Instead, from the very first page of its brief, HSOne cites new evidence, Dkt. 201 ("Opp'n"), at 1, repeatedly argues that the Court should make new factual findings—for example, that Vyne supposedly controls Vyne Trellis on dentists' computers, Opp'n 9–10—and pivots to alternate legal theories not adopted by the Court, including by arguing that it is a crime to interact with a competitor's *software* without consent, when the CFAA protects only computers (not software), Opp'n 7, 19. Indeed, by the end of its brief, HSOne speculates that it may win "even without any reference to the cloud," Opp'n 19—that is, without reference to the "protected computer" and the theory of access underpinning the Court's ruling—because the

Fourth Circuit supposedly could adopt a new rationale for the injunction, based on facts that this Court did not find. But the Fourth Circuit "should not and cannot" "make a factual finding . . . in the first instance," *In re Naranjo*, 768 F.3d 332, 351 (4th Cir. 2014), so it will not accept HSOne's invitations to find that Vyne committed "reverse engineering" or unlawfully accessed "Dentrix databases on dental-office computers," Opp'n 19.

In sum, the Court should ignore HSOne's effort to introduce new facts and alternate legal theories, because those are irrelevant to whether Vyne has identified "serious and difficult questions of law" on appeal of the Court's ruling. *U.S. Home*, 2015 WL 3973071, at *6.

## II. HSOne Misstates the Relevant Legal Standard.

Next, HSOne misstates the legal standard that Vyne must satisfy to justify a stay. Citing the Fourth Circuit's decision in *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342 (4th Cir. 2009), it claims that Vyne must show "the injunction is likely to be reversed." Opp'n 5, 16–18. Vyne respectfully believes that it meets that standard, but *Real Truth* did not impose such a standard to obtain a stay; it merely aligned the Fourth Circuit's test for a preliminary injunction with the Supreme Court's decision in *Winter*, under which the various factors for a preliminary injunction could no longer be "conditionally redefined as other requirements are more fully satisfied." *Real Truth*, 575 F.3d at 346–47; *see also Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020) (explaining distinction between *Winter* and *Nken* standards).

Moreover, HSOne is simply wrong that "no Fourth Circuit case post-*Real Truth*" suggests that "anything other than the standard factors apply—including a showing that the movant will prevail on the merits." Opp'n 18 n.7. For example, in 2024, the Fourth Circuit granted a stay pending appeal of an EPA final action under *Nken* upon concluding that the likelihood of success on appeal was only "*neutral*." *West Virginia v. EPA*, 90 F.4th 323, 331 (4th Cir. 2024) ("Applying the first factor—whether West Virginia is likely to succeed on the merits—we conclude that it is

neutral. West Virginia has set forth plausible grounds in support of its petition, but so also has the EPA in support of its position."). Vyne has shown far more than "plausible grounds" for success.

Belying its own position, HSOne cites several cases in which district courts in the Fourth Circuit *did not* require certainty of success on appeal to grant a stay. Opp'n 17–18. As judges in this District have explained (all after *Real Truth*), a lesser standard "makes good sense"—"the Court need not change its mind as to the correctness of its prior ruling; it need merely determine whether the Defendant's appeal presents an admittedly difficult legal question," because "otherwise, a district court would *never* stay an order pending appeal, as every court that renders a judgment does so in the belief that its judgment is the correct one." *Maryland v. U.S. Dep't of Agriculture*, 777 F. Supp. 3d 496, 500 (D. Md. 2025); *see also, e.g.*, *United States v. Mosby*, 2024 WL 3877613, at *3 (D. Md. Aug. 20, 2024) (applying "admittedly difficult legal question" standard). And, as other courts have explained, a stay is particularly warranted where the movant shows that "the issue to be appealed is an issue of first impression in the circuit," as Vyne's appeal of the injunction clearly will be. *In re Wellington*, 631 B.R. 833, 839–40 (Bankr. M.D.N.C. 2021); *see also U.S. Home*, 2015 WL 3973071, at *6 (stay warranted, in part, because "the issues [movant] plans to raise on appeal . . . will be reviewed *de novo* by the Fourth Circuit").

## III. HSOne Has No Meaningful Response to Vyne's Merits Arguments on Appeal.

As explained, Vyne will argue that the injunction rests on at least three legal errors: *First*, that accessing a local computer can constitute unauthorized access to any cloud server that the local computer syncs data to or from. *Second*, that a software company unlawfully accesses a computer when a customer uses its software. *Third*, that "damage" on a local computer equates to "damage" on a separate server. Dkt. 193-1 ("Mot.") 5–15. These are all "issue[s] of first impression in the circuit," *Wellington*, 631 B.R. at 839–40, and affirmance in the Fourth Circuit would create a circuit split, thus plainly justifying a stay. HSOne offers no meaningful response.

### A. Vyne never "accessed" HSOne's cloud servers.

As HSOne puts it, the Court's liability holding was based on the finding that "Vyne inserted and altered data in customers' Dentrix databases, which were then synchronized and stored in the Dentrix cloud system." Opp'n 7.[3] But this attenuated theory of "access" under the CFAA is novel and contrary to the statute, and Vyne has not identified any case that endorses it. Mot. 6–10. Nor did the Court cite cases supporting its approach. Dkt. 189 ("Op."), at 78–79.

HSOne's effort to come up with supporting authority also comes up empty. *SkyHop* did not involve "access" at all, given that it relied on a different CFAA subsection, § 1030(a)(7)(A), that does not require access. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1224 (11th Cir. 2023). In *Estes* the defendant personally logged into a Google Drive account (the protected computer at issue there). *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 921 (E.D. Va. 2017). In *GSP*, the defendant logged directly into her company's computers (the protected computer). *GSP Fin. Servs., LLC v. Harrison*, 2021 WL 288172, at *1 (D. Md. Jan. 28, 2021). Similarly, in *Philips*, the relevant computers were "*locally*—rather than remotely—accessed multiple times." *Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 232 (D.P.R. 2016). And in *Theofel* the defendants gained access to a computer through a fraudulent subpoena. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071–72 (9th Cir. 2004).[4]

---

[3] HSOne continuously asserts that customer computers are "protected computers." *E.g.*, Opp'n 7. That assertion is irrelevant because the injunction relies on a theory of unauthorized access to HSOne's servers, not the computers housing dental practices' Dentrix databases, and HSOne has never shown that Vyne committed "unauthorized access" to dental practices' computers. *See, e.g.*, Mot. 7 n.5.

[4] HSOne also cites *Oce*, which rejected liability and undercuts HSOne's alternate customer-computer theory: "the access to the computers [must] be unauthorized by whoever controlled such access," *i.e.* the customers, not HSOne. *Oce N. Am., Inc. v. MCS Servs., Inc.*, 748 F. Supp. 2d 481, 487 (D. Md. 2010).

Thus, none of HSOne's cases support anything close to the legal theory that a defendant can intentionally and unlawfully access a server by accessing another local computer, merely because the server syncs with that local computer. Access under the CFAA "means to obtain, acquire, or to gain admission to." *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012). It refers to "the act of entering a computer system itself." *Van Buren v. United States*, 593 U.S. 374, 388 & n.6 (2021). The Fourth Circuit has given the CFAA "a narrow reading," holding that it applies "only when an individual accesses a computer without permission or obtains or alters information on a computer beyond that which he is authorized to access." *WEC*, 687 F.3d at 206. HSOne offers no explanation for how editing information on a local computer becomes "gain[ing] admission to" or "entering" an independent server due to syncing—particularly where it was undisputed that *HSOne* (not Vyne) controlled that synchronization. Opp'n 7 (referring to "the cloud system controlled by HSOne through synchronization"); Mot. 9 (collecting record evidence); Op. 80. Nor does HSOne try to reconcile this interpretation with the rule of lenity.

HSOne tries to find limiting principles to narrow the Court's interpretation of the CFAA, claiming that Vyne "omit[s] the facts defining the CFAA gate here." Opp'n 11. But under the CFAA, "access" completes the criminal offense, not the various irrelevant items like "direct database writes" that HSOne lists as defining the gate. *Id.* That is why a CFAA violation can be premised on, for example, simply logging into a Google Drive account with an old password. *Estes*, 239 F. Supp. 3d at 924–25. There is no need to show "a decrypted secret credential," "direct database writes," or HSOne's other "facts," even assuming those facts are present here. Opp'n 11. And indeed, the Court cited none of that information in concluding that Vyne "accessed" HSOne's servers. Op. 77–79. Instead, the Court's holding required only that "local installations

synchronize[] with . . . cloud infrastructure," Op. 79, a holding that would apply across the board under the CFAA, without regard to the "gates" HSOne cites—only illustrating why that holding cannot be correct.[5]

The Court's holding thus raises an open and serious issue of law in the Fourth Circuit.

**B. Distributing software is not "access."**

Vyne also explained how the Court's interpretation of the CFAA improperly imposes secondary liability on Vyne for selling and distributing software that its customers then use to interact with their data and software on their own computers—further showing that Vyne's conduct is untethered to any possible interpretation of computer "*access*" by Vyne itself. Mot. 10–12.

In this regard, the Court's ruling conflicts with the Ninth Circuit's recent ruling rejecting much the same theory of liability. *Perplexity* instructs that the CFAA "contemplates access by a *person*," not a software program. *Amazon.com Servs. LLC v. Perplexity AI, Inc.*, 2026 WL 2237587, at *5–6 (9th Cir. Aug. 4, 2026). *Perplexity* thus rejected the imposition of CFAA liability on a distributor of an AI bot which operated locally on customers' computers to help them access information on Amazon's servers. *Id.*; *see also* Mot. 11–12. The conflict between the Court's ruling and *Perplexity* is more than enough to satisfy the necessary showing on the merits—namely, the existence of a serious question—particularly as the courts of appeals are hesitant to create circuit splits. *Ala. Ass'n of Realtors v. HHS*, 539 F. Supp. 3d 211, 216–17 (D.D.C. 2021) (granting stay despite finding that the movant "has not shown a likelihood of success on the merits" "[g]iven

[5] The fact that HSOne's cloud servers are "protected by technical security measures devised by HSOne," Op. 78, is no limiting principle either, as every reputable cloud operator does the same—and yet the Court's holding would make editing any data that syncs to those servers a potential CFAA violation. *E.g.*, Microsoft, "How OneDrive safeguards your data in the cloud" (last accessed Aug. 21, 2026), *available at* https://support.microsoft.com/en-us/onedrive/how-onedrive-safeguards-your-data-in-the-cloud; *see* Mot. 3–4, 10 (explaining how the Court's interpretation of the CFAA would sweep in ordinary cloud syncing services).

the diverging rulings" of other courts on the issue). That is especially so here, as the Fourth Circuit also held that the CFAA applies "when an *individual* accesses a computer without permission." *WEC*, 687 F.3d at 206.

Seeking to distinguish *Perplexity*, HSOne argues that "Vyne's software" was "created and controlled by Vyne" when it supposedly "infiltrated HSOne's systems at every level." Opp'n 6, 9–10, 12–13. But the fact that a software company creates software is irrelevant to whether it accesses a computer. And the Court *never* found that Vyne controlled Vyne Trellis (to any extent) when customers used it (Vyne did not use it), or that Vyne was operating every instance of Vyne Trellis when dentists used the program to interact with their own Dentrix databases. *See* Mot. 11 (collecting evidence that dentists "are the ones who elect to have . . . Vyne Trellis (the software) write data to databases stored on their machines"). Indeed, the Court's opinion, consistent with the record, reflects that Vyne had *less control* over Vyne Trellis than the AI bots in *Perplexity*, the latter of which "receive[d] instructions from Perplexity's servers" when extracting information from Amazon, 2026 WL 2237587, at *2. Ultimately, HSOne does not seem to seriously believe its control theory either, eventually acknowledging that "a user is the one installing the software" and "performing the last step" in interacting with Dentrix databases. Opp'n 11.

HSOne then pivots to arguing that the user's control over Vyne Trellis is irrelevant because dental practices do not have an in-depth understanding of how Trellis functions. Opp'n 13–14. It is unclear how that would mean Vyne (rather than dental practices) is the one accessing a computer, or how this would distinguish *Perplexity*, or why that would make Trellis different from nearly every other commercial software in the world, because most companies do not require their customers to have an "idea of the behind-the-scenes technology" in order to use their programs. Opp'n 14. Alternatively, HSOne claims that Vyne should be liable because it designed the

software functions at issue, Opp'n 12–13, which is, again, true of every software developer, and plainly does not mean that Vyne is the one doing the supposed computer access.

None of HSOne's arguments refute Vyne's point—that the Court's interpretation of the CFAA criminalizes software distribution, rather than "unauthorized access." Mot. 11–12. In fact, HSOne embraces the position, asserting that it "cannot be the law" that "any company that created a software program and installed code that effected certain tasks" could escape "all liability" because "the software was operating on customers' computers and the customers were pushing buttons." Opp'n 13–14. The Ninth Circuit disagreed, *Perplexity*, 2026 WL 2237587, at *6, and the Fourth Circuit likely will too. Again, the statute imposes liability for a person "access[ing]" a computer; selling software to enable customers to "access" computers is not itself access; and the CFAA does not create a private civil action for aiding and abetting someone else's access.

**C. The damage and access are disconnected.**

Lastly, Vyne explained that the injunction is at odds with the CFAA because there is no "causal connection between HSOne's asserted 'damage' and the unlawful access." Mot. 12. The statute requires the identification of "damage and loss" that is "a result of" the unlawful access, 18 U.S.C. § 1030(a)(5)(C), meaning the statutory damages must be "caused by the CFAA violation." *GSP Fin. Servs., LLC v. Harrison*, 2021 WL 288172, at *5 (D. Md. Jan. 28, 2021). Here, the "damage" the Court identified occurred on dental practices' computers, and resulted from *lawful* access to those computers, and not any purported access to any HSOne cloud server. Mot. 13–15.

HSOne responds by misconstruing Vyne's argument, asserting that "[d]amage under the CFAA in a distributed system is not confined to the physical location of the stored data, i.e., the cloud servers." Opp'n 15. Vyne's point is that the statute requires "damage" "caused" by the unlawful access. HSOne cites *Calonge*, which only illustrates the point. There, the Second Circuit held that the government showed damage to a computer in New York when the defendant accessed

and deleted data from a cloud server in Virginia and California, because the unlawful access and deletion resulted in damage: it "impaired the availability of data" on the victim's computer in New York when she attempted to access that data on the remote server. *United States v. Calonge*, 74 F.4th 31, 34, 36–37 (2d Cir. 2023). The Court here did not make a comparable finding, because HSOne did not make a comparable showing. The Court indeed did not find that Vyne deleted data from HSOne's cloud servers, or otherwise impaired the data on HSOne's computers in any way—instead, it held that Vyne "accessed" those computers "through synchronization," Op. 78–79, 81—and that, *separately*, Vyne Trellis's interactions with Dentrix databases on local computers affected data on those local computers, Op. 82 (finding "Vyne likely impaired the integrity and availability of data *stored in the Dentrix system*," *i.e.*, locally). But any access to the cloud servers (if it existed) was entirely peripheral to that "damage" on local databases. Mot. 13–15.[6]

## IV. The Injunction Against Vyne Is Mandatory.

The injunction will massively upset the status quo, mandating Vyne to cease distributing a core product it has offered for years in competition with HSOne's, and requiring Vyne to rewrite code and transition its customers to maintain its commercial activities with a large proportion of its customer base. Mot. 16–18. HSOne ignores these points and maintains that the injunction is only prohibitory because it requires Vyne to reverse years of software design. Opp'n 16.

That the injunction is mandatory with respect to Vyne is demonstrated clearly by contrasting its impact on Vyne and its impact on HSOne. Vyne must change its product offering

[6] HSOne points to the Court's finding that Vyne "interfered with HSOne's ability to disseminate upgrades to Dentrix software through its cloud infrastructure." Opp'n 15. As Vyne already explained, this too was damage caused by accessing local Dentrix databases, not by any synchronization to HSOne cloud servers, as the witnesses made clear. Mot. 15. And the Court held that it was "Vyne's writing back to the Dentrix database" on local computers that "interfered with HSOne's ability to disseminate upgrades," Op. 83, not Vyne's access to any cloud server.

and cease distributing software with features it has offered for years, potentially disabling one of the core offerings it provides to customers, and likely requiring it to work with many to transition to a competitor's software system. Mot. 18–20.

By contrast, HSOne is required to do nothing except to stop disabling Vyne's software. Indeed, HSOne has represented that it "is already in compliance with the injunction" against it, Opp'n 2 n.3, a statement starkly at odds with its prior representation that "it would need at least six months to comply with an injunction against disabling Vyne software," Op. 92; *see* Dkt. 174 at 5 ("Compliance for HSOne would require—at a minimum—6+ months of effort."), but one that highlights the difference between the two injunctions.

## V. Vyne Would Suffer Irreparable Injury Without a Stay.

HSOne argues that Vyne "has not shown that irreparable injury is likely rather than possible" in the face of an injunction that would require Vyne to discontinue distributing software functions it currently offers to approximately 1,400 customers. Opp'n 19–20. It cannot be seriously questioned that Vyne stands to lose customers under the injunction, and indeed the Court recognized there was likely "harm to Vyne's legitimate business" from the injunction. Op. 91. HSOne readily acknowledges that "loss of goodwill" and "reputational" harms "cannot be compensated by a monetary judgment"—at least when the customers at issue are HSOne's. Opp'n 22. And the fact that the services at issue are used by a "minority" of Vyne's customers does not make it less irreparable. *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 274, 278 n.7 (4th Cir. 2025) (loss of 30% of customers showed irreparable harm). The Court itself correctly found that Vyne's loss of 500 customers—less than half of those who currently license affected software—represented irreparable harm sufficient to justify an injunction to protect Vyne's printer driver. Op. 76; *accord Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985) (discussing how "the loss of [] customers" is irreparable harm).

Ultimately, HSOne's arguments collapse with its position on the merits. For instance, HSOne argues the harm is self-inflicted because it rests on unlawful methods (Opp'n 20–21) but this assumes the conclusion, and the case HSOne cites is inapposite. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 235 (4th Cir. 2017) (noting individuals could have avoided irreparable harm (loss of insurance) by purchasing insurance via another method). Moreover, as explained above and in Vyne's opening motion, HSOne's position on the merits of the appeal is doubtful. Vyne should not be forced to lose customers—a loss that is universally acknowledged as irreparable—while the Fourth Circuit considers whether to endorse a novel expansion of a federal criminal statute.

## VI. The Stay Would Not Injure HSOne and Would Protect the Public Interest.

HSOne fails to demonstrate that it would suffer any harm that justifies denying the stay. HSOne relies on purported security risks, Opp'n 22, but it has never given any evidence of any security risk to Dentrix or patient data beyond its own witness's say-so, which is not sufficient. *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 240 (4th Cir. 2025) (rejecting "broad-strokes evidence that bots pose a risk to [defendant's] systems"); *Perplexity*, 2026 WL 2237587, at *7 ("Amazon's cyber-risk harm argument is also weak.").

Vyne has used a decryption algorithm since 2021 without any cybersecurity incidents, Hearing Tr. (Nix) 310:16–25, and HSOne waited over six months from when it purports to have learned of that decryption algorithm, Op. 90, before it brought suit against Vyne. A further ten months have passed since then. No evidence indicates that HSOne will suffer any meaningful security risk in the limited time it would take for the Fourth Circuit to decide an appeal. As *Real Time* and *Perplexity* make clear, simply referencing the possibility of a catastrophic data breach is not enough for HSOne to carry its burden.

HSOne's arguments on the balance of the equities and the public interest fail as well. As with its response to Vyne's showing on irreparable harm, HSOne leans on the merits, presupposing

that Vyne's conduct is illegal to justify ignoring Vyne's harm from the injunction. Opp'n 23. As to the public interest, Vyne explained that an injunction eliminates consumer choice and ties dental practices to Dentrix, Mot. 21–22, which is exactly what HSOne set out to do in the first place by targeting Vyne's software, Op. 89. HSOne's only response is that customers will still "be able to use the print driver," Opp'n 23, but that is only one Vyne functionality and only one area in which the parties compete, Op. 91–92. For the services Vyne provides with write-back functionality, the injunction leaves dental practices with only one choice—HSOne.

HSOne filed its injunction application ten months ago. There is no reason to deprive Vyne of the ability to appeal this Court's ruling without having to change its business practices in the interim, nor to deprive the Fourth Circuit of the time needed to consider that appeal.

## VII. The Court Should Clarify That RPA Is Not Prohibited.

As Vyne set out in its motion, there was no factual record on which the Court could base a prohibition of Robotic Process Automation at the time of the injunction, and the Court declined HSOne's invitation to prohibit it expressly. Mot. 22–24. It also expressly stated that Vyne was free to use other technologies (beyond the write function in VyneSync expressly addressed in the testimony and the Court's opinion). Op. 91. The Court should therefore clarify that the injunction does not prohibit selling software with RPA features, not least because any such injunction (entered without reasoning or factual findings) would be improper under Rule 65(d). *See Su v. Med. Staffing of Am., LLC*, 2023 WL 3735221, at *2 (4th Cir. 2023) (vacating injunction that did not "describe in reasonable detail the act or acts restrained or required," noting that Rule 65(d) was

"designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood").[7]

Demonstrating the point, HSOne now submits a nine-page-long declaration to try to fabricate a record supporting an injunction against RPA. HSOne's submission is both improper and too late, since the injunction must be based "on the record before the district court when it entered this preliminary injunction." *Am. Fed'n*, 172 F.4th at 374. The submission makes obvious that there was no factual showing by HSOne for the Court to make the required findings to enjoin the sale of software with RPA features. If HSOne has a basis later to seek a new injunction addressing RPA or other technologies that were not the subject of the hearing, HSOne may do so then, subject to the respective rules of procedure, and Vyne will respond as appropriate.[8]

**CONCLUSION**

The Court should stay its injunction pending appeal and clarify that the injunction does not apply to RPA.[9] If the Court denies the stay, it should enter an administrative stay to permit Vyne to move for a stay from the Fourth Circuit.

---

[7] Although Vyne's notice of appeal deprives the Court of the ability to amend its opinion and make new factual findings, it does have authority to clarify that its injunction does not cover RPA. *Diversity Officers*, 769 F. Supp. 3d at 467 (distinguishing between "substantive amendments" to an injunction on appeal, which are not allowed, and "clarifications").

[8] For the avoidance of doubt, Vyne rejects HSOne's assertions. RPA is an automation tool that would assist customers in managing patient data through the existing Dentrix user interface, and it has been widely adopted by other software companies. *E.g.*, IBM, "What is robotic process automation (RPA)?" (last accessed Aug. 21, 2026), *available at* https://www.ibm.com/think/topics/rpa (describing the technology and its use cases). A holding that selling software with RPA functions violates the CFAA, in addition to being wholly unsupported by the record, would put into question a wide variety of software integration methods.

[9] HSOne concedes that the absence of a ruling on the bond requirement is a "sequencing issue," and suggests the Court should somehow "cure" that sequencing issue without staying the injunction. Opp'n 25–26. As Vyne explained, the injunction cannot be issued or go into effect

DATED: August 21, 2026

Respectfully submitted,

*/s/ Vincent Levy*

Vincent Levy (pro hac vice)
Jack L. Millman (pro hac vice)
Charlotte Baigent (pro hac vice)
Daniel Fahrenthold (pro hac vice)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com

K. Nichole Nesbitt (Bar No. 26137)
Derek M. Stikeleather (Bar No. 27815)
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4026
knn@gdldlaw.com
dstikeleather@gdldlaw.com

*Attorneys for Plaintiff*
*National Electronic Attachment, Inc. d/b/a Vyne Dental*

---

until a decision is reached on the bond requirement. Mot. 22. The only solution to this "sequencing issue" is to stay the injunction at least until the Court resolves the bond issue.