HOLWELL SHUSTER & GOLDBERG LLP

September 11, 2026

VIA ECF

Hon. Matthew J. Maddox
U.S. District Court for the District of Maryland
101 West Lombard Street
Baltimore, MD 21201

Re: *National Electronic Attachment, Inc., d/b/a Vyne Dental v. Henry Schein One, LLC*, No. 25-cv-03246-MJM (D. Md. 2025)

Dear Judge Maddox,

National Electronic Attachment, Inc., d/b/a Vyne Dental ("Vyne") writes in response to the letter-motion by Henry Schein One, LLC ("HSOne") of September 9, 2026, Dkt. 218 (the "Letter-Motion"), which challenges Vyne's designation of highly sensitive commercial information as Attorneys' Eyes Only ("AEO") with respect to two categories of documents: (1) the Nix, Markus, and Dr. Garibotti declarations plus portions of Vyne's memorandum regarding the feasibility of the injunction and bond issues, all submitted on April 24, 2026; and (2) the documents that Dr. Garibotti relied on for her declaration, which Vyne plans to designate as AEO but have not yet been produced to HSOne.[1]

Most of the documents and information at issue in HSOne's motion were designated as AEO and produced to HSOne's counsel on April 24, 2026, nearly five months ago. HSOne has been aware that the Court would hold a hearing on the bond amount for the preliminary injunction order since August 4. HSOne had an obligation to act "promptly after becoming aware of the grounds of the dispute"—which was in April—and to bring this dispute "to the Court's attention promptly after efforts to resolve it have been unsuccessful." D. Md. Local Rules, Appendix A, Guideline 1(f). HSOne did neither, and waited to raise these issues until the eve of the bond hearing, which—alongside its improper demand to call a witness at the bond hearing after expressly stating to Vyne's counsel that it would not do so and did not reserve the right to do so—has forced the Court to postpone the bond hearing. The Local Rules make clear HSOne's failure to raise these disputes on a timely basis "may result in a determination by the Court that the dispute must be rejected as untimely." *Id.* The Court should make such a determination here.

Nevertheless, in an effort to facilitate the Court's consideration of HSOne's nearly 6,000-word Letter-Motion, and to enable the parties to move quickly to prepare for the bond hearing, Vyne has elected to re-designate substantial portions of its brief, the Nix and Markus declarations, and Dr. Garibotti's Declaration as Confidential, rather than AEO. Vyne has done this despite its significant concern about the risk of misuse or disclosure of the re-designated information. Vyne

---

[1] HSOne's Letter-Motion is not clear whether it is preemptively challenging the AEO designations for the documents that Dr. Garibotti relied upon or is just challenging Vyne's proposal to have certain of those documents be produced view-only. In any event, as discussed below, both the AEO designations and the view-only production for certain documents are justified.

has provided these updated designations to HSOne's counsel contemporaneously with the filing of this letter-response.

The sensitive information underlying the remaining AEO designations are described in the Supplemental Declaration of Vyne's CFO Eric Markus, filed alongside this letter. Under the new designations, of the already produced material challenged in HSOne's Letter-Motion, only (i) specific information about Vyne customers, including customer growth rates and the number of customers that would be affected by the injunction broken down across various Vyne services;[2] and (ii) details of Vyne's revenue and pricing structure[3] remain designated as AEO. Vyne also maintains its AEO designation of the nonpublic information that Dr. Garibotti relied upon in her declaration, and continues to take the position that view-only production for some documents is appropriate given how sensitive the information in those documents is. *See* Letter-Motion at 1.

As described further in the Supplemental Markus Declaration and below, the remaining information—which is not specifically challenged by HSOne in its Letter-Motion—is extremely commercially sensitive, and disclosure of this information to HSOne's business teams would be devastating to Vyne. The Court should order their protection and deny HSOne's motion.

## I. The Court Should Apply the AEO Standard Set in HSOne's Proposed Protective Order.

On November 15, 2025, counsel for HSOne shared a draft protective order with Vyne, which provided for two tiers of confidentiality designations—"Confidential Information" and "Attorneys' Eyes-Only Information." Under this proposal, AEO information would include, among other things, "sensitive business information, including highly sensitive financial or marketing information and the identity of, and business arrangements with . . . potential or actual customers"; "competitive business information, including non-public financial or marketing analyses or comparisons of competitor's products, and strategic product planning"; and "any information that may be used by a party . . . to assist a party to compete against the designating party." While the parties negotiated the draft protective order in the fall of last year, each also made designations of the deposition transcript of its witnesses as AEO. In fact, HSOne disputed Vyne's designations of Mr. Nix's testimony because HSOne claimed that the information did not "deserve AEO protection *under the draft protective order*." Ex. A at 9. Vyne therefore understood that the parties were making AEO designations consistent with the substantive standard set out in the draft protective order.

Vyne provided comments on the draft protective order on December 1, 2025. *Id.* at 7–8. On January 22, 2026, HSOne reverted with a redline. *Id.* at 5–6. HSOne specifically rejected edits Vyne had made to streamline the definition of information that would be subject to AEO designation, asserting that it was HSOne's "position that *all sensitive business information (regardless of whether it is competitive)* is deserving of AEO protection" and that "*all 'competitive business information,'* not just 'non-public financial or marketing analysis or comparisons of competitor's products, and strategic product planning,' qualifies for AEO protection." *Id.* at 6 (emphasis added). Thus, HSOne substantially *broadened* the AEO definition that Vyne was willing to agree to. Vyne responded with limited further comments on February 5, 2026, none of which

[2] *See* Letter-Motion at 11, rows 1 and 5.

[3] *See* Letter-Motion at 10, row 4.

related to the proposed definition for AEO protection. *Id.* at 4. HSOne did not respond to Vyne's comments.

Last week, when HSOne informed Vyne that it intended to move the Court to remove Vyne's AEO designations, Vyne noted to HSOne that it had never responded to Vyne's February comments on the draft protective order, and stated that it was open to negotiating in good faith a draft protective order. Dkt. 219-2 at 2; Dkt. 219-3 at 6. Noting that HSOne's Letter-Motion appears to contemplate the existence of a protective order at the time of production, *see* Letter-Motion at 8, Vyne renewed this offer yesterday, September 10, asking HSOne to confirm whether it would be willing to continue negotiations for a stipulated protective order and for clarity as to whether HSOne was disavowing its previous definition of AEO materials—a definition that HSOne itself applied when designating portions of the McDaniel deposition transcript. Ex. A at 3.

Today, HSOne's counsel responded, maintaining its objection to Vyne's designations but stating that HSOne would "circulate [] edits to the protective order soon." *Id.* at 2. HSOne's counsel also acknowledged that they "indeed noted early in our discussions about the proposed terms of a protective order that [they] thought 'all "competitive business information"' should 'qualif[y] for AEO protection,'" and indicated that information "qualifies for AEO protection" if it is "actually competitive or sensitive business information." *Id.* at 2.[4]

Vyne understands from this exchange and from the parties' past conduct that there is mutual agreement on the types of information that can qualify as AEO material, as expressed in section 4 of HSOne's draft protective order (although the parties are continuing to negotiate toward agreement on other elements of the draft protective order). This provision, as shown in the redline draft sent by HSOne's counsel on January 22, 2026 and attached as Exhibit B, allows the parties to designate as AEO any:

- "[S]ensitive business information, including highly sensitive financial or marketing information and the identity of, and business arrangements with, suppliers, vendors, . . . and potential or actual customers";
- "[C]ompetitive business information, including non-public financial or marketing analyses or comparisons of competitor's products, and strategic product planning"; and
- "[N]on-public information that may be used by a party to . . . assist a party to compete against the designating party."[5]

Ex. B § 4. Although the AEO-designated materials are plainly protected under either the default standard or any of HSOne's proposed standards, the Court should apply the above AEO definition

[4] At 6:41pm on the date of this filing, HSOne proposed extensive new language for the AEO provision which it described as an "added standard" that "requires a particularized showing of identifiable, significant harm and explains why a Confidential designation or other narrower protection would be inadequate." This "added standard" seems transparently designed to benefit HSOne's motion, and it is not clear this new language is consistent with HSOne's prior AEO designations. In any event, the parties will continue to confer.

[5] HSOne's latest proposed protective order maintains this language, albeit with the "added standard" described *supra* n.4.

to the present dispute—particularly where the designations were made by Vyne only weeks after the parties' exchange on draft terms for the protective order in February 2026, at which point the above standard was undisputed.

Vyne is hopeful that the parties will come to an agreement on a stipulated protective order (or, if needed, submit competing proposals to the Court) soon, in order to minimize future disputes.

## II. The Designated Materials Are Extremely Sensitive and Merit Protection.

Whether under the draft protective order or under the default standard in Federal Rule of Civil Procedure 26(c)(1)(G), the materials over which Vyne maintains its AEO designations plainly merit protection.

"Courts commonly issue protective orders limiting access to sensitive information to counsel and their experts." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007); *Progress Solar Sols., LLC v. Fire Prot., Inc.*, 2018 WL 11281543, at *2 (E.D.N.C. Sept. 24, 2018) ("The inclusion of provisions limiting production of certain information (including documents) to attorneys only is not uncommon in cases involving the exchange of highly sensitive proprietary information."). Protective orders providing for AEO protection "represent judicial efforts to strike a proper balance between 'the philosophy of full disclosure of relevant information' and the need for 'reasonable protection against harmful side effects,' such as the risk that disclosure will result in competitive harm." *Nutratech*, 242 F.R.D. at 555.

These heightened protections under a protective order are appropriate "especially in cases between direct competitors," such as this case. *Walker Sys., Inc. v. Hubbell Inc.*, 188 F.R.D. 428, 429 (S.D.W. Va. 1999). This is because courts "presume[] that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *Am. Standard, Inc. v. Pfizer*, 828 F.2d 734, 741 (Fed. Cir. 1987); *see also, e.g.*, *Oakwood Prods., Inc. v. SWK Techs., Inc.*, 2023 WL 12208593, at *6 (D.S.C. Sept. 19, 2023) (protective order "giv[ing] even greater protection with an AEO designation is common in suits between economic competitors").

The AEO designations that Vyne has maintained protect extremely sensitive financial and commercial information. Suppl. Markus Decl. ¶¶ 4–5. The designated information falls within two categories. *First*, the designated material constitutes or describes "detailed information regarding Vyne's customer relationships, including customer subscription statuses (in the aggregate, across specific product lines, and at the individual customer level), current and recent historical customer churn, and Vyne's recent customer growth." *Id.* ¶ 5.[6] For example, one document shows the "annual churn in Vyne customers across various premium Vyne Trellis products," from "January 31, 2021 until March 31, 2026," while another lists "the subscription plan and monthly revenue for every individual Vyne customer using Dentrix, with descriptions of any changes the customer made to its subscription plan" during that period. *Id.* ¶ 6(d)–(e). Designated passages of the Markus Declaration and Garibotti declaration describe these customer figures, including customer losses in 2025, Markus Decl. ¶ 24, or customer growth projections based on confidential historical data, Garibotti Decl. ¶¶ 13, 32–33. This detailed customer

[6] For this category, the relevant designated portions of the Markus Declaration and the relevant designated documents are identified in the Supplemental Markus Declaration, ¶ 6. The relevant designated passages of the Garibotti Declaration are paragraphs 9, 12, 13, 30, 32, and 33, portions of tables 1 through 3, and footnotes 2, 8, 11, 12, 23, and 26.

information merits protection. *E.g.*, *Specialty Auto Parts USA, Inc. v. Holley Performance Prods., Inc.*, 2020 WL 1914817, at *6 (W.D. Ky. Apr. 20, 2020) ("pricing information" and "customer lists" merited protection); *Nutratech*, 242 F.R.D. at 555 ("supplier and customer lists").

*Second*, the protected material covers "financial information, including monthly and yearly revenue figures for Vyne's customers across its various subscription tiers (again, at aggregate, product, and individual customer levels), pricing information and revenue models, and sales figures." Suppl. Markus Decl. ¶ 7.[7] The designated passages of the Markus Declaration describe these revenue figures in great detail, Markus Decl. ¶¶ 22–23, as does Dr. Garibotti, who uses those figures to form her assessment of the potential impact on Vyne from the injunction, Garibotti Decl. ¶¶ 29–30, 34, tbls. 1–6. The documents underlying the Garibotti Declaration provide extremely granular detail about Vyne's revenues and the value of its various subscription tiers and products, including "pricing models for various products and services [Vyne] offers for different participants in the dental industry," and "the subscription plan, monthly recurring revenue, transaction volume, and associated transaction revenue for each Vyne customer using Dentrix." Suppl. Markus Decl. ¶¶ 8(c), (e). This information is regularly protected as AEO—even where the parties have not agreed on a more liberal definition of what information should receive AEO protection. *E.g.*, *Parker Compound Bows, Inc. v. Hunter's Mfg. Co., Inc.*, 2014 WL 12462305, at *3 (W.D. Va. 2014) (protecting "underlying cost and sales figures"); *M-Edge Accessories LLC v. Amazon.com Inc.*, 2013 WL 12241898, at *2–3 (D. Md. May 14, 2013) ("defendant's preferred vendor program, competitive analysis of products and other manufacturers, and defendant's profits" merited protection); *Tinn v. EMM Labs, Inc.*, 556 F. Supp. 2d 1191, 1196 (D. Or. 2008) (denying motion to de-designate as AEO documents containing "sensitive pricing information"); *see also Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 246–47 (E.D.N.C. 2010) (denying motion to de-designate AEO information regarding "Defendant's sales," including "total gross dollar sales, number of units sold, and date range of sales" because it was "the type of information the parties agreed could be protected under the Consent Protective Order").[8]

The competitive dynamic only raises the sensitivity of this information. As the Court recognized, HSOne's "software bundle . . . directly competes with Vyne's platform." Dkt. 189 at 1. The parties are indisputably direct competitors, and indeed HSOne has recognized the need for AEO protection over a broad variety of materials given that dynamic, including sensitive business and commercial information. *See supra* 2–3.

Moreover, the need for heightened protection is far greater here than in a standard dispute between competitors, because (as the Court has found to be likely) HSOne has a track record of unlawfully competing against Vyne. The Court found that Vyne has "made a clear showing that HSOne [likely] substantially interfered with Vyne's ability to compete on the merits of its products by blocking the parties' mutual customers' ability to use Vyne's software while, at the same time,

---

[7] For this category, the relevant designated passages of the Garibotti Declaration are paragraphs 12, 29, 30, 34, portions of tables 1 through 6, and footnote 14. *See also* Suppl. Markus Decl. ¶ 8 (identifying the relevant passages of the Markus Declaration and the relevant designated documents).

[8] The Supplemental Markus Declaration likewise explains that Vyne takes measures to keep the designated information confidential, including restricting its distribution within Vyne. Suppl. Markus Decl. ¶ 11.

promoting HSOne's own competing product." Dkt. 189 at 73–74. The need for special protections for Vyne's sensitive commercial information is self-evident in a case where the Court has already made factual findings that HSOne likely intentionally and unlawfully "disrupted the mutual customers' workflows by blocking Vyne Trellis's printer-driver function," and "then targeted the same set of customers to promote HSOne's own competing bundled electronic insurance claims submission protect," including through communications that "likely misrepresented the functionality of Vyne Trellis" and "offered a discount for HSOne's eClaims bundle to customers who switched from Vyne." *Id.* at 74–75; *see also id.* at 76 ("HSOne likely gained an unfair competitive advantage by disrupting Vyne Trellis's normal operations and using that disruption to persuade customers to switch from Vyne Trellis to HSOne's eClaims bundle.").

Even HSOne's Letter-Motion appears to accept the legitimacy of protecting Vyne's detailed financial and customer information. HSOne premises its challenge to Vyne's designations on the assertion that the documents are *not* "account-level revenues," "Vyne's underlying venue and churn data," documents that "identify . . . individual customers []or account-level revenues," or "supporting bookings and churn data." Letter-Motion at 4–5, 11. The remaining designations do cover information of that nature, which should be protected. And while it is not clear if HSOne is preemptively challenging the forthcoming AEO designations for the documents that Dr. Garibotti relied on, the nonpublic information in these documents contains exactly the type of extremely detailed information HSOne implicitly concedes should be AEO.

Lastly, the Court should reject HSOne's motion to de-designate the two categories of information that remain subject to specific challenge in HSOne's Letter-Motion. As noted, these challenges target specific information about Vyne customers, including customer growth rates and the number of customers that would be affected by the injunction broken down across various Vyne services, as set out in, for example, paragraphs 9 of the Markus Declaration and 33 of the Garibotti Declaration. *See* Letter Motion at 11. With respect to the customer counts, the number of customers using each of Vyne's products is unquestionably commercially sensitive, as it would allow HSOne to derive competitive insights and revenue and sales information from those figures. Suppl. Markus Decl. ¶¶ 14–15. HSOne claims it "needs" these figures "to assess the asserted affected population," Letter-Motion at 11, but the total number of affected customers—approximately 1,400—was already disclosed, and HSOne identifies no need for a more detailed breakdown of Vyne's premium-tier customer base.[9] And the customer growth figure that HSOne challenges, *see* Letter-Motion at 11, is derived from prior customer bookings and churn data and from Vyne's recent revenue growth, as Dr. Garibotti explains (¶¶ 32–33 & n.26). There is therefore no way to distinguish that figure from the "supporting bookings and churn data" that HSOne concedes is protectible. Letter-Motion at 11. As to the details of Vyne's revenue and pricing structure, *see id.* at 10, row 4; Markus Decl. ¶¶ 13–14, Vyne's commercial strategies are sensitive information that HSOne could exploit to compete against Vyne, Suppl. Markus Decl. ¶¶ 13, 15. HSOne simply asserts that this information is "already known to HSOne," but it provides no evidentiary basis at all for that claim. Letter-Motion at 10. Obviously a party cannot overcome a showing of confidentiality and commercial sensitivity by baldly asserting that it already knows it all.

---

[9] *See* Letter-Motion at 11, rows 1 and 5.

**III. Without AEO Protections, Inadvertent Disclosure or Misuse Is Certain.**

Courts in the Fourth Circuit have explained that "the relevant determination for denial of access under a protective order is '[w]hether an unacceptable opportunity for inadvertent disclosure exists.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 500–01 (W.D. Va. 2014) (alteration in original). This "determination often turns on the extent to which the person to whom the information is disclosed is involved in 'competitive decision-making' with the client," with courts limiting disclosure to "those individuals [who] are segregated from the competitive day-to-day business decisions of the company." *Id.*; *see Progress*, 2018 WL 11281543, at *2 ("[C]ourts should conduct an individualized factual assessment with a 'crucial factor' being 'whether the information would be disclosed to someone involved in competitive decision-making.'").

Under HSOne's "compromise," Vyne's sensitive commercial information would be disclosed to "HSOne witnesses who have already testified in this action," plus its unidentified "bond witness," and even more unidentified "support staff" to those witnesses. Letter-Motion at 8. This is not a compromise at all. It would "create exactly the unacceptable opportunity for inadvertent disclosure" that the case law aims to prevent. *McAirlaids*, 299 F.R.D. at 501. HSOne's proposal would be that Vyne's most sensitive commercial data, including the individualized monthly revenue figures and subscriptions for every single one of its Dentrix customers, would be disclosed to HSOne's *Chief Executive Officer*, who was responsible for guiding HSOne's policy of unfairly competing against Vyne, plus its Chief Technology Officer, who is also substantially involved in HSOne's business and its efforts to compete against Vyne.[10] HSOne is a "direct competitor," and in such cases "the potential for abuse and competitive loss" is "real." *McAirlaids*, 299 F.R.D. at 501. Handing over highly sensitive commercial information to those individuals responsible for the competitive decision-making of a competitor is a nonstarter, as courts recognize. *M-Edge Accessories*, 2013 WL 12241898, at *3 (rejecting proposal that AEO documents should be shared with plaintiff's "co-founder and CFO" who was "involved in directing plaintiff's 'operations, growth and profitability'" and stating unequivocally that the designee would "not be allowed to access documents regarding how defendant makes the type of decisions that [designee] makes for plaintiff"); *Nutratech*, 242 F.R.D. at 555–56.

Even assuming that every witness with access to Vyne's data would endeavor to abide by a prohibition on misuse or disclosure of that data—and it is not clear that this presumption should apply when the Court has already found that HSOne likely unfairly competed against Vyne and targeted its customers with misrepresentations and more—misuse or disclosure would be inevitable. "[C]ourts have recognized that there are circumstances where 'even the most rigorous efforts of the recipient of such information to preserve confidentiality' may not prevent inadvertent disclosure." *McAirlaids*, 299 F.R.D. at 501. This includes cases, like this one, between direct competitors, because "highly confidential information cannot later be removed from the thought process of the [recipient's] competitive decision-makers as they manage the business operations

[10] HSOne's proposal that unidentified employees should receive access can be dismissed out of hand, because HSOne "has not made a specific proposal in this regard such that the Court could engage in the appropriate analysis of whether the proposed contact is sufficiently removed from competitive decision-making so as to offset the risk of inadvertent disclosure." *BioConvergence LLC v. Emergent Biosolutions, Inc.*, 2023 WL 3866411, at *4 (D. Md. June 7, 2023).

of the company." *Id.* ("It is very difficult for the human mind to suppress information once learned, no matter how well-intentioned the effort may be to do so."); *see also, e.g.*, *Parker*, 2014 WL 12462305, at *3 (same); *M-Edge Accessories*, 2013 WL 12241898, at *3 ("The fact that [designee] will be bound by the confidentiality order cannot alleviate this risk. Once [designee] sees defendant's confidential information, it would be impossible for him to compartmentalize that information."); *Specialty Auto*, 2020 WL 1914817, at *9 ("[I]t would be naïve to believe that information gained by Specialty about Holley's trade secrets would not, to some degree, inform Specialty's own business decisions, whether intentional or not."). Moreover, "[a]ny violation of a 'confidential' designation that bars the use of information and documents outside of this litigation could be incredibly difficult to prove and, thus, not easily remedied." *Specialty Auto*, 2020 WL 1914817, at *9.

The Supplemental Markus Declaration describes the substantial risks Vyne would face in the event of disclosure of the designated information to HSOne. Suppl. Markus Decl. ¶¶ 12–16. HSOne would gain detailed knowledge of Vyne's commercial position, customer relationships, and sales strategies. The data could reveal "Vyne's approaches for attracting new customers and for selling add-on and premium subscription products to its existing customers." *Id.* ¶ 13. It would show HSOne "which Vyne products do best to attract and keep customers," as well as the "revenue mix Vyne derives from [its] different products," giving HSOne information to "direct its product development and sales strategies to prioritize its own competing products and services," to "identify Vyne's most valuable customer types," and to "target those customers with marketing outreach and special offers designed to inflict the maximum commercial damage on Vyne." *Id.* ¶¶ 14–16. HSOne even admits it wants to give Vyne's data to its employees who "possess unique knowledge" about "customer purchasing behavior," "revenue-cycle-management products," and "*market competition*." Letter-Motion at 7. Given the risks involved, an AEO designation is necessary to prevent HSOne's most senior decisionmakers from learning and exploiting—intentionally or not—this information to Vyne's detriment. *See, e.g.*, *Parker*, 2014 WL 12462305, at *2–3 (granting AEO protection of "cost to manufacture and sales information" in case involving competitors because disclosure of the information "would allow [plaintiff] to determine [defendant's] profit margin," which would enable plaintiff to "adjust the pricing of its [products] in the same markets as [defendant's products] to undercut [defendant's] sales").

## IV. HSOne Has Not Shown It Would Be Prejudiced by AEO Restrictions.

"Once it has been established that discovery in this case involves potential disclosure of sensitive business information to its competitor, the burden shifts to plaintiff to show that disclosure is relevant and necessary." *M-Edge Accessories*, 2013 WL 12241898, at *3; *see also* 8A Fed. Prac. & Proc. Civ. § 2043 (3d ed.) ("If it is established that confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information.").

HSOne asserts that it "cannot adequately test Vyne's assertions" without sharing Vyne's data with its witnesses (who, again, run HSOne's directly competing business). Letter-Motion at 7–8. HSOne offers no more than an unsupported assertion that AEO restrictions would "materially impair[]" its ability to make its case, *id.* at 8, which is not enough to carry its burden. The Court should reject HSOne's "conclusory" argument that its most senior management should be given access to Vyne's competitive information because "[t]here is no reason to doubt that outside

counsel can competently represent [HSOne]." *M-Edge Accessories*, 2013 WL 12241898, at *3. Here, the lawyers will have access to the evidence and can cross-examine Vyne's bond witnesses as needed to challenge their assertions supporting Vyne's bond request. HSOne does not need to have business people review sensitive information to facilitate these cross-examinations.

In any case, AEO protection is appropriate even if it will "present some challenges" to the receiving party. *Parker*, 2014 WL 12462305, at *3. The Court must balance these challenges against the "risk of harm to [Vyne] that could result through inadvertent disclosure of its confidential information." *Id.* (denying access to "cost and sales information" even though it related to "the amount of potential damages" at issue). Particularly given Vyne's substantial re-designation of disputed materials, HSOne's counsel can "present" the issues "in a non-confidential manner to the client for decision-making purposes," which "does not create an undue or unacceptable hardship" for HSOne. *McAirlaids*, 299 F.R.D. at 501.

And further precautionary measures are necessary to preserve the most sensitive data. Vyne's proposal that HSOne's counsel be permitted to view some extremely sensitive data—such as the discrete customer-level data—via a read-only platform reasonably balances HSOne's ability to advance its arguments as against the serious risk of inadvertent disclosure and the significant harm Vyne would suffer in the event of such a disclosure.[11] Other courts in this District have employed similar means to prevent disclosure. *See, e.g.*, *BioConvergence*, 2023 WL 3866411, at *4 (approving imposition of "an extensive electronic information barrier to combat inadvertent disclosure" of AEO material, providing that "AEO material will be (1) accessible only by named in-house counsel, (2) placed on a secure server, and (3) be password protected," and only after concluding that the in-house counsel who would receive the information were "without any involvement in competitive decision-making"). HSOne offers no more than the conclusory assertion that its counsel "must be able to retain and work with copies," Letter-Motion at 8, without explaining how a version hosted online with view-only restrictions would somehow impair HSOne's defense.

Respectfully submitted,

*<u>/s/ Vincent Levy</u>*

Vincent Levy (pro hac vice)
Jack L. Millman (pro hac vice)
Daniel Fahrenthold (pro hac vice)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

---

[11] Indeed, although Vyne did not raise it with the Court at the time, HSOne's counsel informed Vyne during the February evidentiary hearing that it had inadvertently breached the parties' confidentiality arrangements by sharing a demonstrative from Vyne's expert with its own expert while the latter was sequestered. Vyne has no doubt that the disclosure was inadvertent, but the mistake illustrates the risks—and would be far more consequential with respect to the data involved here.

vlevy@hsgllp.com

K. Nichole Nesbitt (Bar No. 26137)
Derek M. Stikeleather (Bar No. 27815)
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
(410) 783-4026
knn@gdldlaw.com
dstikeleather@gdldlaw.com

*Attorneys for Plaintiff*
*National Electronic Attachment, Inc. d/b/a Vyne Dental*