**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NATIONAL ELECTRONIC ATTACHMENT, INC., D/B/A VYNE DENTAL,<br>*Plaintiff*,<br>-against-<br>HENRY SCHEIN ONE, LLC,<br>*Defendant*. | Case No. 1:25-cv-03246 |

**SUPPLEMENTAL DECLARATION OF ERIC MARKUS**

I, Eric Markus, declare under penalty of perjury as follows:

1. I am an adult citizen of the United States and am competent to testify as to the matters set forth in this declaration.

2. I am the Chief Financial Officer of National Electronic Attachment, Inc., d/b/a Vyne Dental ("Vyne").

3. On April 24, 2026, I submitted a declaration to provide information to the Court on the losses that Vyne would suffer from the Court's then-proposed injunction against Vyne.

4. I provide this further declaration to describe the competitive injuries that Vyne would suffer if the designated information in my declaration and in related documents were disclosed to Henry Schein One, LLC ("HSOne").

**A. The designated information is highly sensitive and kept confidential by Vyne.**

5. The information that has been designated as Attorneys' Eyes Only ("AEO") in Vyne's bond submission falls into two categories.[1] The first is detailed information regarding

[1] I understand that Vyne has recently narrowed the scope of its AEO designations.

Vyne's customer relationships, including customer subscription statuses (in the aggregate, across specific product lines, and at the individual customer level), current and recent historical customer churn, and Vyne's recent customer growth. For example, one designated document sets out the current subscription status of every Vyne customer using Dentrix.

6. The following designated information falls within this category:

a. Paragraphs 9, 10, 17, 20, 24 and 25 of my declaration;

b. The document titled "Vyne Dental Data on Historic New Bookings," reflecting output from Vyne's DOMO data analytics system and showing quarterly Vyne premium-tier booking units from Q1 2022 until Q1 2026;

c. The document titled "Vyne Dental Data on Transactions rates," an Excel spreadsheet showing, as of March 31, 2026, the subscription plan, monthly recurring revenue, transaction volume, and associated transaction revenue for each Vyne customer using Dentrix;

d. The document titled "Vyne Dental Subscription Churn Data Stored on DOMO from 2021 to the end of March 2026," reflecting output from Vyne's DOMO data analytics system and showing the annual churn in Vyne customers across various premium Vyne Trellis products, including Trellis Activate and Trellis Intake, from January 31, 2021 until March 31, 2026;

e. The document titled "Vyne Dental Data Stored on DOMO Including Revenue by Practice and Subscription Tier," an Excel spreadsheet showing, for each month from January 31, 2025 through March 31, 2026, the subscription plan and monthly revenue for every individual Vyne customer using Dentrix, with descriptions of any changes the customer made to its subscription plan; and

f. The document titled "Vyne Dental Data on Trellis Premium Mix stored on DOMO," reflecting output from Vyne's DOMO data analytics system and showing, on a quarterly basis from Q1 2022 through Q2 2026, the mix of Vyne subscription units between core and premium tiers.

7. The second category is financial information, including monthly and yearly revenue figures for Vyne's customers across its various subscription tiers (again, at aggregate, product, and individual customer levels), pricing information and revenue models, and sales figures. As an example, this category includes a document setting out monthly recurring revenue for each individual Vyne customer using Dentrix for every month from January 2025 through March 2026.

8. Noting that some of the designated documents contain sensitive customer information as well (*see supra* ¶ 6), the following designated information falls within this category:

a. Paragraphs 13, 14, 22 and 23 of my declaration;

b. The relevant slide from the document titled "Final Presentation for Vyne," a presentation prepared for Vyne by an outside consulting firm, describing Vyne's year-on-year revenue growth;

c. The document titled "Vyne Dental Data on Transactions rates," an Excel spreadsheet showing, as of March 31, 2026, the subscription plan, monthly recurring revenue, transaction volume, and associated transaction revenue for each Vyne customer using Dentrix;

d. The document titled "Vyne Dental Data Stored on DOMO Including Revenue by Practice and Subscription Tier," an Excel spreadsheet showing, for each month from January 31, 2025 through March 31, 2026, the subscription plan and monthly

revenue for every individual Vyne customer using Dentrix, with descriptions of any changes the customer made to its subscription plan; and

e. The document titled "Vyne Dental Pricing (Active Services), Vyne Dental Internal Data," showing Vyne's pricing models for various products and services it offers for different participants in the dental industry.

9. Each of these documents contains highly sensitive and detailed information about Vyne's position in the market, its relationship with its customers, the revenue it derives from the sale of its different products and services, the relative value of those products and services, and long- and short-term trends in Vyne's customer bookings, sales, and revenue.

10. The designated passages of my declaration reflect or analyze this sensitive information. For example, paragraphs 22 and 23 of my declaration provide a detailed breakdown of the revenue Vyne receives from each of its relevant product lines, and analyzes the losses of revenue that would result from the injunction based on those figures. Paragraphs 13 and 14 describe Vyne's revenue and sales model. Other paragraphs, such as 17 and 20, describe current customer figures for different Vyne product lines and recent Vyne booking data for new customers.

11. Vyne carefully controls access to this information. Only limited members of my team and of high-level leadership in Vyne have access to, for example, the DOMO system that contains Vyne's customer and revenue information. Generally, Vyne secures this commercial data and restricts its distribution within Vyne on a need-to-know basis. Vyne does not share this data with third parties except where necessary, and does so only subject to confidentiality protections such as non-disclosure agreements.

**B. Disclosure of this information to HSOne would benefit HSOne and harm Vyne.**

12. HSOne and Vyne are direct competitors across several of Vyne's products and subscription tiers—including, for example: claims management, electronic attachments, insurance

eligibility, patient scheduling and intake workflow, patient payments, and more. If HSOne possessed the information set out in the documents described above, it could make use of that information to benefit its competitive position at Vyne's expense.

13. If HSOne had access to this data, it could, for example, derive Vyne's sales strategies, learning Vyne's approaches for attracting new customers and for selling add-on and premium subscription products to its existing customers. By observing the subscription and transaction history of Vyne's customers for the period detailed in the above documents, HSOne could understand the success of Vyne's sales strategies during recent months and years. Knowledge of Vyne's sales strategies would give HSOne an unfair advantage in its competition against Vyne, giving it insight into Vyne's customers' habits that only Vyne knows, and that goes well beyond what could be gleaned from ordinary market intelligence.

14. Similarly, HSOne could use this information to understand how well Vyne retains customers on its different product and subscription tiers, learning which Vyne products do best to attract and keep customers, and it could direct its product development and sales strategies to prioritize its own competing products and services. This information would be especially damaging in connection with other data that Vyne has designated AEO which would show HSOne how many customers use each of Vyne's various products, and the revenue associated with those customer relationships. Information about Vyne's customers' habits and preferences could be used to predict their future purchasing decisions, distorting the competitive dynamic between HSOne and Vyne.

15. And HSOne would gain detailed knowledge of Vyne's revenues and pricing structure, including the value of its various subscription levels and the revenue mix Vyne derives from those different products. With knowledge of this pricing and revenue, HSOne could identify

precisely how to undercut Vyne's commercial position on critical products. In the hands of a competitor, the data reveals Vyne's product-level economics and commercial priorities.

16. HSOne could use the information in the documents described above to identify Vyne's most valuable customer types, and then target those customers with marketing outreach and special offers designed to inflict the maximum commercial damage on Vyne. This targeted solicitation would plainly be detrimental to Vyne.

Executed this 11th day of September, 2026, in Lindon, Utah.

ERIC MARKUS
Chief Financial Officer
National Electronic Attachment, Inc., d/b/a Vyne Dental