IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

NATIONAL ELECTRONIC ATTACHMENT, INC., d/b/a VYNE DENTAL,

Plaintiff/Counter-Defendant,

v.

HENRY SCHEIN ONE, LLC,

Defendant/Counter-Claimant.

Case No. 1:25-cv-03246-MJM
**REDACTED VERSION**

**COUNTER-CLAIMANT HENRY SCHEIN ONE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE FIRST AMENDED COUNTERCLAIMS AND FOR EXCESS PAGE LIMITS**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

RELEVANT PROCEDURAL BACKGROUND..................................................................... 3

ARGUMENT ........................................................................................................ 5

A. Roberts and Nix Should Be Added as Counter-Defendants. ........................................... 5

1. The Claims Arise from an Overlapping Course of Conduct.......................................... 5

2. Joining Roberts and Nix Will Not Cause Undue Prejudice. ......................................... 8

B. The New Counts 11–13 State Claims for Misappropriation and Breach of Contract. ....... 9

1. Counts 11 and 12 – Trade-Secret Misappropriation Under Federal and Utah Law. ...... 9

2. Count 13 – Roberts and Nix Breached Their Confidentiality Agreements. ................. 12

C. Counts 3, 7, 8, and 14 Cure the Defects in the Dismissed Claims Against Vyne. ........... 12

1. Count 3 – Unfair Competition and Deceptive Trade Practices.................................... 12

a. Vyne Devalued Dentrix and Passed Off Its Billing Functions as HSOne's. ............ 12

b. Alternative Grounds for Relief Under Other States' Laws..................................... 14

2. Count 7 – Vyne Misled Practices in Violation of the UTAA ...................................... 16

3. Count 8 – Vyne's Print-Based Claim Violated the Lanham Act ................................. 18

4. Count 14 – Vyne Falsely Accused HSOne of Inventing Security Concerns ................ 19

D. The Hearing and Later Investigation Support Timely Amendment ................................ 20

E. Vyne Can Test the Amended Claims on the Existing Schedule ...................................... 23

REQUEST TO EXCEED THE PLEADING PAGE LIMIT ...................................................... 24

CONCLUSION ..................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887 (11th Cir. 2025)............ 15

*Balt. Bedding Corp. v. Moses*, 34 A.2d 338 (Md. 1943) ........................................................... 15

*Bedrock Quartz Surfaces, LLC v. Rock Tops Holdings LLC*, 2023 WL 8481417 (D. Utah Dec. 7, 2023) ........................................................................................................................... 13

*Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir. 1980)................................................. 5, 23

*Design Resources, Inc. v. Leather Industries of America*, 789 F.3d 495 (4th Cir. 2015)............ 19

*Diggs v. Housing Authority of the City of Frederick*, 67 F. Supp. 2d 522 (D. Md. 1999) ....... 8, 23

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................................ 3

*Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678 (D. Md. 2011) ........................ 8

*Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017)....................................... 16

*In re Dealer Management Systems Antitrust Litigation*, 362 F. Supp. 3d 558 (N.D. Ill. 2019)... 11

*In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743 (4th Cir. 2021)............................................ 5

*InnoSys, Inc. v. Mercer*, 2015 UT 80, 364 P.3d 1013.................................................................. 9

*Int'l Star Registry of Illinois, Ltd. v. RGIFTS Ltd.*, 2025 WL 2766304 (N.D. Ill. Sept. 26, 2025) ........................................................................................................................................ 15

*Johnson v. Oroweat Foods Co.*, 785 F.2d 503 (4th Cir. 1986)............................................... 5, 16

*Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) ..................................................................... 5, 23

*Nourison Rug Corp. v. Parvizian*, 535 F.3d 295 (4th Cir. 2008) ............................................... 21

*Phreesia, Inc. v. Certify Global, Inc.*, No. DLB-21-678, 2022 WL 911207 (D. Md. Mar. 29, 2022) ........................................................................................................................................ 11

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205 (4th Cir. 2025).......... 15

*Robert J. DeBry and Associates, P.C. v. Qwest Dex, Inc.*, 144 P.3d 1079 (Utah 2006) ............. 17

*Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125 (2020)................................................. 16

*Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465 (5th Cir. 2000) ................................................. 15

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32 (2d Cir. 2019).................. 15

*Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496 (4th Cir. 1987)........... 24

*West v. Thomson Newspapers*, 872 P.2d 999 (Utah 1994) ........................................................ 20

**Statutes**

18 U.S.C. § 1836.......................................................................................................... 9, 11

18 U.S.C. § 1839(5) .......................................................................................................... 9

815 ILCS 510/2.............................................................................................................. 15

815 ILCS 510/3.............................................................................................................. 15

Cal. Bus. & Prof. Code § 17200 ...................................................................................... 16

Cal. Bus. & Prof. Code § 17203 ...................................................................................... 16

Cal. Bus. & Prof. Code § 17204 ...................................................................................... 16

Cal. Penal Code § 502..................................................................................................... 16

Fla. Stat. § 501.204 ......................................................................................................... 15

Fla. Stat. § 501.211 ......................................................................................................... 15

Lanham Act.............................................................................................................. 2, 4, 18

Md. Code, Crim. Law § 7-302......................................................................................... 15

N.Y. Gen. Bus. Law § 349............................................................................................... 15

Tex. Civ. Prac. & Rem. Code § 143.001 ......................................................................... 15

Tex. Penal Code § 33.02(a)............................................................................................. 15

Utah Code § 13-11a-3(1) .......... 4, 16, 17

Utah Code § 13-24-1 et seq. .......... 9, 11

Utah Code § 13-24-2 .......... 9

Utah Code § 13-5a-102(4) .......... 4, 12, 13

Utah Code § 13-5a-103 .......... 12

**Rules**

D. Md. Loc. R. 103.1(d) .......... 24

D. Md. Loc. R. 103.6 .......... 1, 3

Fed. R. Civ. P. 12(b)(6) .......... 5

Fed. R. Civ. P. 13(h) .......... 6

Fed. R. Civ. P. 15 .......... 3, 5, 12

Fed. R. Civ. P. 16(b)(4) .......... 21

Fed. R. Civ. P. 20 .......... 3, 5

Fed. R. Civ. P. 21 .......... 3

## INTRODUCTION

Henry Schein One, LLC ("HSOne") seeks leave to amend its Counterclaims based on new information gained from its continuing investigation as well as admissions and evidence in this proceeding.

**HSOne has claims against Stephen Roberts and James Nix.** HSOne seeks to join these former HSOne employees as counter-defendants based on their breach of their contractual obligations to HSOne as well as their misappropriation of HSOne's confidential information and intellectual property. Counts 11 and 12 allege that Vyne and both officers misappropriated Dentrix trade secrets under federal and Utah law. HSOne alleges that Roberts and Nix took the same confidential technical information and trade secrets and used their Dentrix knowledge together to design and develop Vyne's system for accessing Dentrix. Each used that information for Vyne in breach of his own contractual duties to protect it and restrict its use. (Ex. A ¶¶ 9–10, 146–165).[1]

Nix's testimony on these issues has been inconsistent and inaccurate. Before the hearing, Nix swore that Vyne accessed "customers' own log-in credentials, not any proprietary or copyrighted HS One material." (ECF No. 52-1 ¶ 11). Nix had reviewed Vyne's access code and knew that account was false—his knowledge of HSOne's systems alone would have made it obvious that what he claimed was not possible. (Tr. 313:10–17, 342:1–5). On cross, he admitted that access required more than a customer's username and password. (Tr. 313:7–14). The next day, HSOne's forensic expert David Youssef disproved Vyne's account. (Tr. 434:18–435:4, 521:2–5; Ex. A ¶ 46). The Court found that both officers knew VyneSync could read and write to Dentrix and "intended for it to operate in that manner." (ECF No. 189 at 81).

---

[1] National Electronic Attachment, Inc. does business as Vyne Dental ("Vyne"). Exhibit A to the motion sets out the proposed pleading. Exhibit B shows the changes from HSOne's operative counterclaims. D. Md. Loc. R. 103.6(c).

Regarding the method Vyne used to decrypt HSOne's credentials, the Court credited expert testimony identifying "either reverse engineering or insider knowledge, such as knowledge of HSOne's source code." (ECF No. 189 at 81). [redacted]

**HSOne also seeks leave to plead additional state-law claims for unfair competition.** Nix admitted that Vyne shipped software capable of changing patient ledgers as part of the package it marketed as a print solution. (Tr. 265:10–19, 288:17–289:17, 294:14–295:9; Ex. A ¶¶ 36–37). Vyne's August 21, 2025 access request identified 409 practice locations in 45 states. (ECF No. 37, Ex. 10 at 133–41). HSOne alleges on information and belief that Vyne's sales pitch reached shared practices in each listed state. Count 3 pleads each applicable state's law in the alternative for passing off billing functions as HSOne-approved to divert claims business. (Ex. A ¶¶ 25, 88, 93–104).

**HSOne further seeks leave to replead the four counterclaims the Court dismissed without prejudice.** (ECF No. 190 ¶ 5). Count 3 explains how Vyne impaired the operation and value of Dentrix's access controls and why it imitated Dentrix—to induce practices to buy claims processing from Vyne instead of HSOne. (ECF No. 189 at 56–57; Ex. A ¶¶ 84–88). Count 7 specifies which Utah advertising provisions Vyne violated and how its pitch misled practices. Count 8 identifies the misleading commercial statement under the Lanham Act. Vyne compared its integration to e-fax or PDF creation while concealing that the package could change patient ledgers. That difference mattered to practices choosing a billing service. (ECF No. 189 at 63–66; ECF No. 45-2 at 2; Ex. A ¶¶ 36–39, 119–137).

Count 14, formerly Count 9, concerns a March 28, 2025 letter that Vyne's president, James Grover, sent to Vyne customers. Grover accused HSOne of invoking security as a pretext to block a competitor. (ECF No. 6-2 at 18; Ex. A ¶ 166). Vyne knew its software could change patient ledgers. HSOne lost goodwill and incurred expense correcting that attack on its honesty with customers. (ECF No. 189 at 66–68; Ex. A ¶¶ 36–39, 166–168). In its August 11, 2025 customer letter, Vyne likened its print integration to an e-fax or PDF tool. It later assured Remote Lite users that they could continue submitting claims and statements without changing their setup. (ECF No. 45-2 at 2; ECF No. 259-1 at 2). On information and belief, those communications and Grover's March letter are examples of many similar messages Vyne continues to send customers about its Dentrix integration and HSOne's restrictions. (Ex. A ¶¶ 25, 36–39, 93; ECF No. 259-1 at 2).

The Court set November 23 as the deadline for motions to amend pleadings or join parties. Fact discovery will remain open through May 28, 2027. (ECF No. 247 at 1–2). Vyne and the proposed counter-defendants have time to test the allegations within that schedule. Rule 15(a)(2) calls for leave to be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962).[2]

The Court should grant leave and deem the First Amended Counterclaims filed. D. Md. Loc. R. 103.6(a).

## RELEVANT PROCEDURAL BACKGROUND

Vyne filed its complaint on September 30, 2025, and moved for a temporary restraining order and preliminary injunction on October 2. (ECF Nos. 1, 6). On October 22, 2025, HSOne moved to dismiss Vyne's complaint. (ECF No. 42). On October 23, 2025, HSOne filed its

[2] Fed. R. Civ. P. 21 allows the Court to add a party at any time on just terms. Fed. R. Civ. P. 20(a)(2) permits joinder when the plaintiff seeks relief against the defendants jointly, severally, or in the alternative, the claims arise from the same transaction, occurrence, or series of transactions or occurrences, and the action presents a common question of law or fact.

counterclaims and moved for its own temporary restraining order and preliminary injunction. (ECF Nos. 45, 46).

The Court denied both requests for temporary restraining orders. (ECF No. 189 at 15–16). Vyne amended its complaint. (ECF No. 61). Each party moved to dismiss. (ECF Nos. 66, 85). The Court heard testimony on the competing preliminary injunction motions on February 10–12, 2026. (ECF No. 189 at 16). On July 31, 2026, the Court granted each side preliminary relief in part, denied HSOne's dismissal motion, and granted Vyne's in part. (ECF No. 190 ¶¶ 3–7).

The Court dismissed four counterclaims without prejudice. (ECF No. 190 ¶ 5). Regarding Count 3, the Court determined HSOne had not explained how Vyne diminished the value of its intellectual property under the Utah Unfair Competition Act ("UUCA"). (ECF No. 189 at 56–57). On Count 7, the Court determined HSOne had not identified the subsection of the Utah Truth in Advertising Act ("UTAA") Vyne violated or explained how its statements would likely confuse customers. (ECF No. 189 at 63–65). On Count 8, the Court determined HSOne had not identified a false or misleading advertising statement under the Lanham Act. (ECF No. 189 at 65–66). On former Count 9, it found the allegations insufficient to identify a verifiably false and defamatory statement, explain Vyne's fault in publishing it, or connect the publication to HSOne's injury. (*Id.* at 66–68).

HSOne seeks to add Roberts and Nix as counter-defendants. The amendment alleges that the officers misappropriated confidential Dentrix information for Vyne and breached their confidentiality agreements.[3] HSOne seeks to replead the four dismissed claims in proposed Counts 3, 7, 8, and 14. Count 3 includes the alternative state-law grounds for unfair competition and

[3] The officers' personal direction of Vyne's continued access also bears on HSOne's CFAA, DMCA, and trespass claims. Roberts instructed the team to restore and preserve access. Nix directed the engineering response to an unauthorized-access warning and decided which code to retain. (Ex. A ¶¶ 13–14, 46–49; Tr. 125:12–18, 132:17–24, 270:8–271:14, 308:12–309:13; ECF No. 189 at 81).

deceptive trade practices. Count 14 repleads former Count 9 for business libel and defamation. (Ex. A ¶¶ 9–15, 84–104, 146–168). Proposed Counts 9 and 10 concern federal and Utah interception. (Ex. A ¶¶ 138–145).[4]

**ARGUMENT**

Rule 15(a)(2) directs courts to give leave to amend freely when justice so requires. The Fourth Circuit identifies three grounds to deny leave: prejudice to the opposing party, bad faith by the movant, or futility. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

Overlapping facts are at issue in the claims against Vyne and in the claims against Roberts and Nix. HSOne identifies the confidential information the officers—former HSOne employees—allegedly used together to develop Vyne's system, the agreements that restricted its use, and the use Vyne made of it. The proposed pleading also identifies how Vyne impaired Dentrix and what Vyne represented to the practices that used it. HSOne seeks leave within the Court's deadline, with fact and expert discovery still ahead. (Ex. A ¶¶ 9–15, 36–57, 146–165; ECF No. 247 at 1–2).

A proposed amendment is futile when it is "clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). The futility inquiry asks whether the proposed pleading states a claim under Rule 12(b)(6). *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). The proposed pleading identifies the conduct and injury underlying each new claim and supplies the missing facts for the four repleaded claims. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

**A. Roberts and Nix Should Be Added as Counter-Defendants.**

**1. The Claims Arise from an Overlapping Course of Conduct.**

HSOne seeks to join Roberts and Nix because the proposed claims arise from the officers' joint use of the same confidential Dentrix information for Vyne. Fed. R. Civ. P. 20(a)(2). Fed. R.

[4] Counsel met and conferred on November 20, 2026. On November 23, Vyne confirmed that it opposes HSOne's proposed amendments.

Civ. P. 13(h) makes Rule 20 applicable to the joinder of additional counter-defendants. The claims against the officers concern the same access methods challenged against Vyne. (Ex. A ¶¶ 9–15, 50, 154, 163). Roberts identified at least 165 Maryland customers shared by Vyne and HSOne. (ECF No. 6-2 ¶ 7; Ex. A ¶ 14). McDaniel testified that he worked with Nix on cloud synchronization at HSOne and that Nix was one of the chief architects and lead developers of eSync. (Tr. 607:18–25). Nix reported that Vyne had acted to restore functionality after an update that, on his information and belief, affected at least seven Maryland practices. (ECF No. 6-3 ¶¶ 16, 19; Ex. A ¶ 13). HSOne alleges on information and belief that Roberts and Nix worked together to develop the integration Vyne deployed at those Maryland practices, using the same protected Dentrix information. (Ex. A ¶¶ 9–15, 50). HSOne preserves its venue objection and its right to renew its motion to transfer to Utah as the case approaches closer to trial. (Ex. A ¶ 18).

The proposed pleading identifies their prior work on Dentrix and alleges that they put that knowledge to use together at Vyne. (Ex. A ¶¶ 9–10, 49–50). Roberts and Nix personally directed Vyne's continued unauthorized access to Dentrix. Roberts instructed the technical team to investigate and restore access and "to ensure that our capabilities would endure." He confirmed that Vyne would continue developing alternative ways to access Dentrix. Asked about robotic process automation, Roberts testified, "We intend to preserve our right to use that mechanism when there aren't other methods." (Tr. 125:12–18, 132:17–24, 182:17–183:15, 204:7–205:17; Ex. A ¶¶ 9, 14, 49). On information and belief, Vyne is now developing an RPA application that will perform excessive unauthorized reads of Dentrix data as well as unauthorized write-back. Rencher explained that excessive reads can hold database connections open, delay a practice's own updates, and corrupt its records. (Tr. 576:2–10, 15–23; ECF No. 203 ¶¶ 7, 12, 17; Ex. A ¶ 26). HSOne recently detected Vyne's Writeback Assistant running on two of Vyne's development machines.

(ECF No. 201-1 ¶¶ 9–11, 14–16; Ex. A ¶¶ 55–56). In his supplemental declaration, Youssef reported that he had "validated that Vyne is developing an RPA application designed to access Dentrix." (ECF No. 203 ¶ 27).

[redacted]

Nix personally directed the engineering work on VyneSync. When a practice reported an unauthorized-access warning, Nix instructed the engineering team to investigate. He described the May VyneSync release that restored access after HSOne intervened. Nix also directed his engineers to retain code already shipped to practices and later told them to remove unused code. (Tr. 249:11–20, 270:8–271:14, 276:3–21, 308:12–309:13; Ex. A ¶¶ 10, 13, 49). The Court credited the evidence that both men knew of and intended VyneSync's read and write access. (ECF No. 189 at 81). HSOne also alleges on information and belief that Nix recruited at least three HSOne employees with knowledge of Dentrix's security, database, and engineering. (Ex. A ¶ 10). The officers' testimony and their alleged joint use of Dentrix information concern the same integration already at issue in HSOne's claims against Vyne.

The same witnesses, code, and records bear on what Vyne did, what its officers directed, and what access HSOne authorized. The officers' agreements identify what information each could use or disclose. Evidence of how Vyne obtained and used the information bears on its access and

on each officer's alleged misappropriation and breach. (Ex. A ¶¶ 9–15, 50, 150–154, 161–164). Joining the officers lets the parties take that discovery once.

**2. Joining Roberts and Nix Will Not Cause Undue Prejudice.**

The officers' hearing admissions made clear that they themselves directed Vyne's continued access based on the confidential information that belonged to HSOne. HSOne's later investigation showed that Vyne possessed protected Dentrix information no practice could have supplied. Together, those developments support the allegations against Roberts and Nix. (Ex. A ¶¶ 46–53, 150–154; ECF No. 189 at 81). Merits discovery has just begun. The Court set April 2, 2027, for substantial completion of document discovery and May 28 for the close of fact discovery. (ECF No. 247 at 1–2). All parties can take discovery on the new allegations within that schedule. *Diggs v. Housing Authority of the City of Frederick*, 67 F. Supp. 2d 522, 529–30 (D. Md. 1999) (allowing addition of a plaintiff after evidence presented at the preliminary injunction hearing, finding no prejudice and noting defendants would have the opportunity to conduct discovery prior to trial).

The discovery will address what Roberts and Nix knew about Dentrix, how they used its protected information together, and how Vyne used it. The parties and the officers can obtain that evidence on the existing schedule. (Ex. A ¶¶ 9–15, 50, 150–154, 161–164; ECF No. 247 at 1–2).

This District granted leave to add counterclaims based on new discovery even after the deadline, because the opposing parties could take discovery on the new claims and then seek summary judgment. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 707–08 (D. Md. 2011). Roberts and Nix have those opportunities under the order already in place. Each can obtain the relevant employment records and test HSOne's evidence that they used its protected information together. (ECF No. 247 at 1–2; Ex. A ¶¶ 9–10, 150–154, 161–165).

### B. The New Counts 11–13 State Claims for Misappropriation and Breach of Contract.

The new claims arise from evidence about the scope of the access challenged in HSOne's original counterclaims. (ECF No. 45 ¶¶ 6–11). The hearing showed what Vyne did with credentials the practices could not supply. Vyne changed Dentrix data on practice computers, and those changes synchronized to HSOne's cloud. (ECF No. 189 at 81–82; Ex. A ¶¶ 46–48). HSOne's investigation traced the workarounds Vyne continued to develop and deploy after HSOne told it the access was unauthorized. (Ex. A ¶¶ 48, 53–56). The trade secret claims identify confidential Dentrix technology that Vyne allegedly acquired and used to compete. (Ex. A ¶¶ 51–53, 146–152, 157–159).

#### 1. Counts 11 and 12 – Trade-Secret Misappropriation Under Federal and Utah Law.

Counts 11 and 12 assert claims against Vyne, Roberts, and Nix under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the Utah Uniform Trade Secrets Act ("UUTSA"), Utah Code Ann. § 13-24-1 *et seq.*[5] Those claims arise from evidence concerning the confidential technical information used by Vyne to obtain and maintain access to Dentrix.

[redacted] HSOne identifies both individual secret values and nonpublic combinations. (Ex. A ¶¶ 51–52). It describes the measures it took to protect them. (Ex. A ¶¶ 53, 148). HSOne alleges that Vyne used this information to provide competing services. (Ex. A ¶¶ 151–152).

[5] 18 U.S.C. § 1839(5)(A), (B)(i); Utah Code § 13-24-2; *InnoSys, Inc. v. Mercer*, 2015 UT 80, ¶ 24, 364 P.3d 1013 (requiring a trade secret and misappropriation by the defendant).

HSOne alleges that Vyne acquired and used the confidential information through improper means, including unauthorized access, reverse engineering accomplished through electronic espionage, misrepresentation, or breach or inducement of breach of a duty to maintain secrecy, decryption of protected files, extraction of administrator-level credentials, circumvention of technological protection measures, and exploitation of nonpublic technical information. (Ex. A ¶¶ 149, 159). The proposed counterclaims further allege that Vyne used the information to obtain and maintain access to Dentrix, generate authentication credentials, defeat security controls, circumvent remediation measures, and develop alternative, unauthorized means of interacting with Dentrix. (Ex. A ¶¶ 151–153). The counterclaims independently allege, on information and belief, unauthorized disclosure or use without HSOne's consent by persons who knew or had reason to know that the information was acquired under circumstances imposing duties to preserve secrecy or limit use, or was derived from persons owing such duties. (Ex. A ¶¶ 150, 154, 157–159). The limits on a practice's license matter independently of [redacted]. HSOne licenses Dentrix to a practice for its internal use. A contractor must agree in writing to the applicable restrictions, and the license bars a practice from permitting unauthorized modification or disclosure. Even if a practice permitted Vyne to work on its behalf, HSOne alleges that using its protected information to maintain Vyne's competing services exceeded that permission. (Ex. A ¶¶ 48, 150–152).

The proposed counterclaims identify the alleged trade secrets with the requisite specificity, including confidential information concerning Dentrix's encryption architecture, authentication methodologies, credential-generation mechanisms, protected decryption inputs, API-key generation processes, source code embedded security controls, proprietary credentials, and related technical information concerning Dentrix's security architecture. (Ex. A ¶¶ 51–53, 158). HSOne

alleges that this information is not publicly available or accessible through ordinary customer use of Dentrix and derives economic value from its secrecy. (Ex. A ¶¶ 52, 147). HSOne protects the information through contractual restriction, encryption, authentication and access control, source-code protections, technological protection measures, telemetry, and related cybersecurity measures. (Ex. A ¶¶ 48, 53, 148). [redacted]

In this District, a healthcare software company stated a trade-secret claim by identifying the functions of its proprietary software and the distinctive coding workarounds that appeared in a competitor's product. *Phreesia, Inc. v. Certify Global, Inc.*, No. DLB-21-678, 2022 WL 911207, at *12 (D. Md. Mar. 29, 2022). A dealer-management software vendor likewise stated a trade-secret counterclaim by identifying its own forms, accounting rules, and tools and distinguishing them from third-party data housed in the same system. *In re Dealer Management Systems Antitrust Litigation*, 362 F. Supp. 3d 558, 574–75 (N.D. Ill. 2019). HSOne draws that same distinction. [redacted]

Accordingly, HSOne has plausibly alleged the existence of identifiable trade secrets, that it took reasonable measures to preserve and protect their secrecy, Vyne's acquisition and use through improper means and, alternatively, unauthorized disclosure or use in violation of duties to maintain secrecy or limit use, and resulting injury. HSOne alleges on information and belief that Roberts and Nix took the same confidential information about Dentrix integration, access controls, synchronization, connectivity, and security. They used those trade secrets together to design and

develop Vyne's access to Dentrix. (Ex. A ¶¶ 9–10, 50, 154, 159). Both claims clear Rule 15's futility threshold.

**2. Count 13 – Roberts and Nix Breached Their Confidentiality Agreements.**

Roberts and Nix promised to protect the confidential Dentrix information they learned in their prior work and to use it only for that work. They breached those promises when they took the information to Vyne and used it together to build Vyne's unauthorized access to Dentrix. HSOne incurred costs investigating that access and restoring HSOne's controls over its security. It seeks damages for those breaches and an injunction against further use or disclosure, with a single recovery for any injury that overlaps with the trade secret claims. (Ex. A ¶¶ 9–10, 161–165).

**C. Counts 3, 7, 8, and 14 Cure the Defects in the Dismissed Claims Against Vyne.**

The proposed pleading responds to the Court's dismissal ruling. It identifies the intellectual property that lost value and explains how Vyne impaired it. It identifies the representations Vyne made, the practices that received them, why those statements mattered, what Vyne knew when it made them, and how they harmed HSOne.

**1. Count 3 – Unfair Competition and Deceptive Trade Practices**

**a. Vyne Devalued Dentrix and Passed Off Its Billing Functions as HSOne's.**

The Court dismissed the Utah statutory claim because the original pleading did not explain how Vyne materially diminished the value of HSOne's intellectual property. The Court also found that the common-law allegations did not explain how Vyne's imitation induced practices to buy from Vyne. (ECF No. 189 at 56–57).

Utah law gives a person injured by unfair competition a claim against the person who engaged in it. Utah Code Ann. § 13-5a-103. Count 3 alleges an intentional business practice that was unlawful, unfair, or fraudulent and led to a material diminution in the value of intellectual property. Utah Code Ann. § 13-5a-102(4); ECF No. 189 at 56–57.

Count 3 identifies what lost value and how. HSOne built controls into Dentrix to govern access to its software and data. (Ex. A ¶¶ 20, 22, 85). Vyne defeated those controls and changed Dentrix software, security settings, and database contents so that protections no longer worked as designed. (Ex. A ¶¶ 33–34, 46–47, 85–86). Those alterations independently impaired the operation, integrity, and protective functions of HSOne's software. (Ex. A ¶ 85). Of 158 failed Dentrix updates, 113 had usable telemetry. HSOne identified 43 failures at practices with Vyne software installed. Its investigation attributed those failures to Vyne's interactions with Dentrix configuration files. (ECF No. 211 ¶¶ 5–8; Ex. A ¶ 57). HSOne alleges costs incurred to investigate and restore affected installations. (Ex. A ¶ 45). Count 3 pleads malicious cyber activity under the Utah Unfair Competition Act, Utah Code § 13-5a-102(4)(a)(ii)(A). (Ex. A ¶ 86). Count 3 also rests on a software-license violation under subsection (C). A practice licensed Dentrix for its internal business. HSOne alleges that Vyne altered the software and used it to deliver its own competing services, exceeding the rights the practice could extend to it. (Ex. A ¶¶ 48, 85–87). This ground for relief turns on the limits of the license and the resulting loss in value of HSOne's software. HSOne can prove both without establishing that the information Vyne used qualifies as a trade secret. On the common-law claim, Vyne made its billing functions appear to come from HSOne and urged practices to keep sending claims through Vyne. HSOne alleges that the disguise persuaded practices to send Vyne billing business that otherwise would have gone to HSOne. By bypassing HSOne's API, Vyne also saved millions of dollars a year in per-location fees and could charge less than vendors that paid them. (Ex. A ¶¶ 21, 36, 88, 91).

The defect the Court identified was a failure to plead what the intellectual property itself had lost. (ECF No. 189 at 56–57). In *Bedrock Quartz Surfaces, LLC v. Rock Tops Holdings LLC*, 2023 WL 8481417, at *5 (D. Utah Dec. 7, 2023), lost sales and general financial damage said

nothing about the value of the mark itself. Here the product lost a function HSOne licenses. Its controls no longer governed access at affected installations, and HSOne traced 43 failed updates to Vyne's interference. Repair expense followed that functional injury.

On the common-law claim, the missing allegation was intent to divert purchases. (ECF No. 189 at 57). Vyne also argued that practices knew whose billing service they bought. (ECF No. 81 at 20–22; ECF No. 96 at 10–12). Knowing who sold the billing service did not tell a practice whether HSOne had approved the connection. Count 3 alleges that Vyne imitated Dentrix and continues to conceal its unauthorized access to induce practices to buy claims processing from Vyne instead of HSOne. Vyne kept the benefit of apparent approval without paying partner fees. (Ex. A ¶¶ 21–25, 36–39, 57, 85–88, 91).

**b. Alternative Grounds for Relief Under Other States' Laws**

Count 3 traces the effects of Vyne's representations and access to the practices it served. (Ex. A ¶¶ 93–104). The practices listed on Vyne's August 21 access request included at least 18 in Texas, seven in Maryland, 17 in Florida, 16 in New York, seven in Illinois, and 33 in California. (ECF No. 37, Ex. 10 at 134–41; Ex. A ¶¶ 23, 93). HSOne alleges on information and belief that Vyne made its components appear to perform functions HSOne approved and concealed how it obtained access. Even practices that kept their Dentrix licenses could send competing billing transactions to Vyne. When integrations failed, practices blamed Dentrix. HSOne lost business and goodwill and paid to restore service and correct the misinformation. (Ex. A ¶ 93).

Count 3 pleads each state's law in the alternative for the conduct and injury it governs. Count 3 includes Utah among the states where Vyne competed unfairly. (Ex. A ¶ 93). Count 7 separately addresses deceptive advertising under Utah law. (Ex. A ¶¶ 119–127). In ten states, HSOne seeks to enjoin Vyne from passing off its components as functions HSOne supplied or approved and seeks damages for resulting local losses where allowed. (Ex. A ¶ 99). The computer-

access theories concern unauthorized access to or alteration of Dentrix programs. The interception theories in Arizona, Idaho, Pennsylvania, Wisconsin, and Wyoming concern the capture of communications in transit and diversion of HSOne-bound transactions. (Ex. A ¶¶ 101–102).

Texas illustrates the distinction between the wrong and the resulting loss. HSOne alleges that Vyne accessed Dentrix systems without effective consent under Texas Penal Code § 33.02(a). It seeks damages for common-law unfair competition and actual damages under the civil computer-access statute. (Ex. A ¶¶ 99, 101).[6] In Maryland, concealment impaired HSOne's goodwill. Unauthorized access also caused the direct expense of identifying and repairing Vyne's changes. (Ex. A ¶¶ 99, 101).[7] In Florida, HSOne seeks a statutory declaration and injunction against deception and common-law damages for passing off. (Ex. A ¶ 97).[8]

In New York, HSOne alleges bad-faith appropriation of its investment in Dentrix and public-facing deception concerning software that handles patient and billing data. (Ex. A ¶ 97).[9] In Illinois, HSOne seeks a statutory injunction against false claims of approval and common-law damages for interference with expected billing business. (Ex. A ¶¶ 93–94, 99).[10] In California, HSOne alleges that Vyne obtained an unfair competitive advantage through unauthorized access and deceived purchasers about its integration. HSOne identifies investigation and repair costs as its economic injury under § 17204. HSOne seeks an injunction under § 17203 and asks the Court,

[6] *See Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (requiring an independent tort that interferes with the plaintiff's ability to conduct its business). *See also* Tex. Civ. Prac. & Rem. Code § 143.001.

[7] *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 225 (4th Cir. 2025) (recognizing a claim when a defendant harms or threatens another's business through "fraud, deceit, trickery or unfair methods of any sort" (quoting *Balt. Bedding Corp. v. Moses*, 34 A.2d 338, 342 (Md. 1943))). *See also* Md. Code, Crim. Law § 7-302.

[8] Fla. Stat. § 501.204 (prohibiting unfair competition and unfair or deceptive practices). For the distinct common-law theory, *see Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 898 (11th Cir. 2025) (requiring direct competition and deception that caused buyers to mistake the defendant's goods for the plaintiff's). *See also* Fla. Stat. § 501.211.

[9] *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50–51 (2d Cir. 2019) (requiring bad-faith appropriation of another's work and investment). *See also* N.Y. Gen. Bus. Law § 349.

[10] *Int'l Star Registry of Illinois, Ltd. v. RGIFTS Ltd.*, 2025 WL 2766304, at *6 (N.D. Ill. Sept. 26, 2025) (recognizing common-law claims for interference with third-party relations or conduct that shocks judicial sensibilities and violates standards of commercial morality). *See also* 815 ILCS 510/2(a)(2), (3), (5), (8), (12), 510/3.

as part of that relief, to require Vyne to notify customers who received the challenged statements. It separately seeks damages for unauthorized program alterations. (Ex. A ¶¶ 100–101, 103).[11]

Count 3 seeks compensatory recovery for each distinct loss and additional remedies only as the governing law permits. (Ex. A ¶¶ 103–104). These allegations demonstrate that the proposed claims are not "clearly insufficient or frivolous on [their] face." *Johnson*, 785 F.2d at 510.

**2. Count 7 – Vyne Misled Practices in Violation of the UTAA**

The Court dismissed HSOne's Utah Truth in Advertising Act claim because HSOne failed to identify the subsections on which it relied or allege facts showing how Vyne's statements were likely to mislead customers. (ECF No. 189 at 63–65).

On August 11, 2025, Vyne told dental practices that it submitted claims for thousands of practices through a print-based integration "comparable to e-fax transmission or PDF-creation tools." (ECF No. 45-2 at 2). The letter described the integration a practice would use to submit claims. At the hearing, Nix distinguished the Windows print driver from the package Vyne supplied to customers. He acknowledged that the package historically included VyneSync, that approximately 130 customers still used it, and that it could read Dentrix data and write entries back to the ledger. (Ex. A ¶ 37; Tr. 265:10–19, 288:17–289:17, 294:14–295:9). Roberts acknowledged that the software Vyne marketed as a print solution also extracted claims and statement data, a function a traditional print driver could not perform. (Ex. A ¶ 37).

To properly plead a claim for deceptive trade practices under the UTAA, HSOne must allege that Vyne:

[11] Cal. Bus. & Prof. Code § 17200 (prohibiting unlawful, unfair, or fraudulent business practices); *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1135–36 (Cal. Ct. App. 2020) (requiring likely public deception under the fraudulent prong and a predicate statutory or regulatory violation under the unlawful prong); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (an unfairness claim fails when it depends entirely on failed fraud and unlawfulness theories). *See also* Cal. Bus. & Prof. Code §§ 17203–17204 and Cal. Penal Code § 502.

> (b) cause[d] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (c) cause[d] likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another; . . .
>
> (e) represent[ed] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that [Vyne] has a sponsorship, approval, status, affiliation, or connection that [it] does not have; . . .
>
> (h) disparage[d] the goods, services, or business of another by false or misleading representation of fact; [or] . . .
>
> (t) engage[d] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.
>
> Utah Code Ann. § 13-11a-3(1)(b), (c), (e), (h), (t).

The Court previously held that no statements in HSOne's initial counterclaims established that statements attributable to Vyne were likely to cause confusion or misunderstanding in the marketplace, or that such statements were otherwise actionable under UTAA.

Count 7 ties the challenged messages to the provisions they violated and explains what practices understood. (Ex. A ¶¶ 119–124). The August 11 letter told practices that enrollment in the developer program would foreclose alternative integrations, including its print-based method. (ECF No. 45-2 at 2; Ex. A ¶ 38). Another customer message characterized HSOne's security concerns as excuses for blocking Vyne. (ECF No. 45-2 at 4; Ex. A ¶ 38). HSOne alleges that it offered Vyne secure JSON and clearinghouse alternatives and that Vyne declined them. (Ex. A ¶¶ 24, 38). HSOne alleges that Vyne's account led practices to understand the challenged access as an ordinary and necessary way to submit claims. (Ex. A ¶¶ 39, 124). HSOne gave Vyne notice and an opportunity to correct those representations, but Vyne did not correct them. (Ex. A ¶ 126).

A practice could know it bought Vyne's service and still be misled about what that service did. That answers Vyne's objection and the Court's concern about likely confusion. (ECF No. 96 at 12–13; ECF No. 189 at 63–65). In *Robert J. DeBry and Associates, P.C. v. Qwest Dex, Inc.*, 144 P.3d 1079, 1083 (Utah 2006), accurate local phone numbers without addresses said nothing false

about the listed services. Vyne told its customers to think of e-fax or PDF creation. The package it supplied could change a patient ledger. (Ex. A ¶¶ 36–39, 119–125). The Court also required advertising aimed at Utah consumers. (ECF No. 189 at 62). Vyne listed practices in West Jordan, Salt Lake City, and Ogden. HSOne alleges that Vyne reached shared customers in each listed state. (ECF No. 37, Ex. 10 at 134–36, 138–41; Ex. A ¶ 93).

### 3. Count 8 – Vyne's Print-Based Claim Violated the Lanham Act

The Court previously dismissed HSOne's claim for Lanham Act violations because HSOne failed to "identify any advertising or promotional statement Vyne made that is either false on its face or otherwise actionably misleading or confusing." (ECF No. 189 at 65–66).

Count 8 identifies the commercial statement the Court found missing. (ECF No. 189 at 65–66). On August 11, Vyne described its integration to practices deciding whether to adopt or retain its service. (Ex. A ¶¶ 36, 120, 129). Vyne reached practices in multiple states through mass emails, public interviews, and direct communications. Roberts put the joint customer base at about 7,700 in February 2026. (Tr. 94:12–14, 179:17–18; Ex. A ¶¶ 36, 135). HSOne alleges Vyne's description was false as applied to the integration Vyne supplied. Even a practice that understood how the print driver worked could take the letter to mean the installed package did no more than capture print output and had HSOne's authorization. (Ex. A ¶¶ 37, 130–133). Nix said practices knew Vyne accessed the database. As for the technical details, he testified, "We had a hard time explaining it here." (Tr. 334:13–25). A practice told that Vyne was decrypting configuration files HSOne had encrypted to protect Dentrix would have recognized the lack of HSOne's approval, questioned whether its patients' records were safe, and declined the service. (Ex. A ¶¶ 4, 31, 39, 65, 132). The Court found at the preliminary-injunction stage that Roberts and Nix knew VyneSync could read and write to Dentrix and intended it to do both. (ECF No. 189 at 81; Ex. A ¶¶ 13–14, 46–49).

HSOne alleges that these representations confused customers and required it to respond to inquiries and correct misinformation. (Ex. A ¶¶ 39, 125). Practices blamed HSOne for failures it attributes to Vyne. (Ex. A ¶ 45; Tr. 380:7–9). HSOne also alleges diverted business, lost business opportunities, and diminished goodwill. (Ex. A ¶¶ 45, 136).

Vyne argued that its letter expressed an opinion, that it owed no duty to disclose its engineering, and that the audience was too narrow. (ECF No. 81 at 16–19; ECF No. 96 at 8–10). The Court found no actionable advertising statement in the original pleading. (ECF No. 189 at 65–66). Count 8 identifies one. Vyne described the integration it sold to practices whose claims business it wanted to retain. In *Design Resources, Inc. v. Leather Industries of America*, 789 F.3d 495, 502–04 (4th Cir. 2015), a generic reference to upholstery suppliers identified neither the plaintiff nor its product, and the survey failed to show confusion about that product. Vyne identified its own product. Whether it could change a patient ledger is a testable fact. Count 8 identifies the buyers who had reason to care, the customer inquiries, and the effect on purchasing decisions. (Ex. A ¶¶ 36–39, 128–136).[12]

**4. Count 14 – Vyne Falsely Accused HSOne of Inventing Security Concerns**

Count 14 identifies the speaker, the audience, and the accusation. On March 28, 2025, Vyne's president, James Grover, sent customers a letter accusing HSOne of invoking security, performance, and reliability as a pretext to block Vyne. He urged those practices to complain to HSOne. Vyne knew by then that HSOne had raised security concerns and that Vyne's package could access practice data and change patient ledgers. The accusation called HSOne's honesty into question with the practices that entrusted it with patient and billing records. HSOne alleges it lost

[12] Vyne invoked Maryland's anti-SLAPP statute based on Roberts's public-policy interview. HSOne objected that Vyne had not moved for dismissal under the statute and that a state procedural standard could not displace Rule 12(b)(6). (ECF Nos. 81 at 14–16, 84 at 19–20, 96 at 10). The Court dismissed the original advertising count on pleading grounds and did not reach the anti-SLAPP issue. (ECF No. 189 at 65–66). Count 8 rests on Vyne's pre-suit sales pitch to dental practices and the claims business HSOne lost as a result. (Ex. A ¶¶ 36–39, 128–136).

goodwill and paid to answer those customers' questions and correct the misinformation. (Ex. A ¶¶ 36–39, 166–168; ECF No. 6-2 ¶¶ 15–16 and Ex. A at 18). HSOne seeks damages under Utah law or, in the alternative, the law governing a publication where customers received Vyne's accusation and HSOne suffered injury, including states on Vyne's schedule. (Ex. A ¶¶ 93, 168). Those allegations address the defects the Court identified in the former Count 9. (ECF No. 189 at 66–68).

Vyne defended the August letter as an expression of concern about provider choice. (ECF No. 96 at 15). The Court expressly recognized the original allegation that Vyne omitted its own conduct. It required facts showing a verifiably false and defamatory statement, fault, and injury caused by publication. (ECF No. 189 at 66–68). Count 14 rests on the accusation Grover published to Vyne's customers on March 28. In *West v. Thomson Newspapers*, 872 P.2d 999, 1008–12 (Utah 1994), a newspaper editorial criticized a politician for manipulating the press. Practices reading Grover's letter would understand him to accuse HSOne of inventing a security reason to block a competitor. Vyne knew its software could change patient ledgers. Vyne thus knew HSOne had a genuine security reason when it urged practices to complain. HSOne incurred expense answering customers and correcting the accusation. Those allegations identify falsity, fault, and injury from the publication. (Ex. A ¶¶ 36–39, 166–168).

**D. The Hearing and Later Investigation Support Timely Amendment**

Here there has been no delay at all. In its July 31, 2026 preliminary-injunction opinion, the Court credited evidence that Vyne used secret administrator credentials to obtain access beyond what dental practices' own credentials allowed. (ECF No. 189 at 81–82). Both sides appealed the preliminary injunctions. (ECF Nos. 191, 204). HSOne continued to investigate. On August 14, its telemetry showed Vyne's Writeback Assistant running on two Vyne development machines. (ECF No. 201-1 ¶¶ 14–16). The parties held their Rule 26(f) conference on October 5, 2026. HSOne

seeks leave just weeks later, at the outset of merits discovery and within the Court's amendment deadline.

The Court set November 23 as the deadline for motions to amend or join parties. (ECF No. 247 at 1). Rule 16(b)(4) requires good cause to modify a schedule. In *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 297–99 (4th Cir. 2008), counsel recognized an existing release defense while preparing to oppose summary judgment, after the amendment deadline had passed. Here the officers testified in February, the Court identified pleading defects in July, and both sides put further customer communications before the Court in November. (ECF No. 189 at 16, 56–57, 63–68; ECF Nos. 259, 260). HSOne moves within the deadline and asks for no change to the schedule.

When HSOne filed its original counterclaims, it had Vyne's customer letter and list of affected practices. (Ex. A ¶¶ 23, 36, 93). It did not yet have the officers' hearing testimony about their decisions, the expert evidence this Court later credited identifying reverse engineering or insider knowledge as possible sources of Vyne's decryption method, [redacted] (ECF No. 189 at 81; Ex. A ¶¶ 9–14, 49–53). The schedule identified customer locations. [redacted] Those facts bear on the use of protected information alleged in the trade-secret and contract counts. (Ex. A ¶¶ 150–154, 161–164).

The Court struck Youssef's new expert opinions for purposes of deciding preliminary relief. Vyne had no opportunity to cross-examine him on those opinions. (ECF No. 163, Mar. 18 Tr. 9:7–10:6; ECF No. 189 at 16). The same investigation gave HSOne a concrete basis to amend. [redacted]

[redacted] The parties can test that allegation in merits discovery. [redacted]

Vyne addressed the updated telemetry on March 18. Its counsel told the Court, "we have no objection to that coming in." (ECF No. 163, Mar. 18 Tr. 7:6–19). McDaniel then reported in April, "When HSOne has taken steps to close one vector, Vyne has developed another. That pattern continued during this litigation." (ECF No. 174-2 ¶ 7). The original customer letter could not tell HSOne who directed those changes or whether Vyne kept developing them after the hearing. Its officers supplied the first answer. HSOne's later observations supplied the second. (Tr. 125:12–18, 132:17–24, 270:8–271:14, 308:12–309:13; ECF No. 201-1 ¶¶ 9–11, 14–16).

HSOne continued investigating with its forensic expert after the July ruling. HSOne recently detected the Writeback Assistant on two Vyne development machines. Vyne's existing applications generated more than 8.2 million Dentrix access events in the seven days ending August 24, an average of more than one million a day. (Ex. A ¶¶ 55–56; ECF No. 201-1 ¶¶ 8–16; ECF No. 203 ¶¶ 17, 20–27). By September 1, HSOne had usable telemetry for 113 of 158 failed Dentrix updates. It identified 43 failures at practices with Vyne software and attributed those failures to Vyne's interactions with Dentrix configuration files. (ECF No. 211 ¶¶ 5–8; Ex. A ¶ 57).

Vyne continues to mislead practices to keep their claims business. It recently told Remote Lite users, "You will not need to change your setup for continued claims and statements delivery." (ECF No. 259-1 at 2). That assurance omitted the order's separate bar on selling or supporting software capable of writing to cloud-hosted or cloud-connected Dentrix databases. (ECF No. 259 at 2; ECF No. 190-1 ¶ 8(a)–(b)). Vyne responded that its assurance concerned only its print-based

integration. (ECF No. 260 at 10–11). The email never told buyers which parts of their existing setup fell outside that protection.

**E. Vyne Can Test the Amended Claims on the Existing Schedule**

The nature of an amendment and when it is offered determine prejudice. *Laber*, 438 F.3d at 427. The absence of prejudice ordinarily favors granting leave. *Davis*, 615 F.2d at 613. The parties here litigated competing requests for preliminary relief. Merits discovery has just begun.

The proposed pleading leaves the existing discovery deadlines intact. Vyne, Roberts, and Nix have until May 28, 2027, for fact discovery and August 27, 2027, for expert discovery. (ECF No. 247 at 1–2). Vyne also intends to amend its complaint.

The officers' admissions and HSOne's later investigation supplied the facts underlying Counts 11–13. The same witnesses and technical records bear on how Vyne obtained access, how the officers used the same protected Dentrix information together, and how Vyne used it. Count 13 adds the officers' agreements and the obligations each officer breached by using that information for Vyne. The parties can address those subjects in the merits discovery now underway. (Ex. A ¶¶ 9–15, 46–57, 146–165; ECF No. 247 at 1–2).

Counts 3, 7, 8, and 14 concern conduct already at issue. The proposed pleading adds facts about the impairment of Dentrix's protections, Vyne's statements to dental practices, and the injury HSOne attributes to those statements, including the March 28 accusation sent to practices. (Ex. A ¶¶ 38–39, 45, 84–104, 119–137, 166–168). Vyne identified its customer locations in its August 21 schedule, which bears on the alternative state-law grounds in Count 3. (Ex. A ¶¶ 93–104). The preliminary injunction hearing addressed the capabilities Vyne described to customers and the changes its software made to Dentrix. (Ex. A ¶¶ 36–37, 46–47). *See Diggs*, 67 F. Supp. 2d at 529–30.

Vyne has the facts related to these claims in its possession, and leave is warranted. *Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496, 497–98 (4th Cir. 1987). Its officers testified about the integration, it supplied the list of practices, and it sent the challenged messages. The schedule leaves more than six months for fact discovery, followed by expert discovery. (ECF Nos. 6-2 ¶¶ 7, 15–16, 6-3 ¶¶ 16, 19, 247 at 1–2; Ex. A ¶¶ 9–14, 23, 36–39, 46–53).

## REQUEST TO EXCEED THE PLEADING PAGE LIMIT

Extraordinary circumstances warrant leave under Local Rule 103.1(d) to file the 46-page pleading, six pages over the 40-page limit. HSOne seeks to join Roberts and Nix and must plead the officers' joint use of the same confidential information and the obligations each undertook in his own agreement. (Ex. A ¶¶ 9–10, 154, 161–165.) The dispute is nationwide. Vyne alleged that more than 8,000 dental offices used Trellis with Dentrix. Its August 21 access request identified practices in 45 states. (ECF No. 61 ¶ 6; Ex. A ¶¶ 23, 93.) The amended allegations also reflect the evidence presented at the Court's three-day preliminary-injunction hearing. Nix's testimony that software distributed with Vyne's print driver could read practice data and write to the ledger, for example, explains why HSOne alleges that Vyne misled customers by comparing its integration to a PDF-creation tool. (Tr. 265:10–19, 288:17–289:17; Ex. A ¶¶ 36–37.)

## CONCLUSION

HSOne asks the Court to grant leave to file the First Amended Counterclaims submitted as Exhibit A to the motion and to deem them filed.

Dated: November 23, 2026

Respectfully submitted,

**BURSHTEYN POLIN LLP**
*/s/ Michael Burshteyn*
Michael Burshteyn *(pro hac vice)*
Jonathan Williamson *(pro hac vice)*
1212 Broadway Plaza, Suite 2100
Walnut Creek, CA 94596
Telephone: (925) 238-3119
Mike@BurshteynPolin.com

**GREENBERG TRAURIG, LLP**
Jennifer Bartlett *(pro hac vice)*
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
Telephone: (214) 665-3729
Jennifer.Bartlett@gtlaw.com

*Counsel for Defendant/Counter-Claimant*
*Henry Schein One, LLC*